VENABLE LLP
  Angel A. Garganta (163957)
    agarganta@venable.com
  Jessica L. Grant (178138)
    jgrant@venable.com
  Amit Rana (291912)
    arana@venable.com
  Yuhan Chi (324072)
    achi@venable.com
  101 California Street, Suite 3800
  San Francisco, CA 94111
  Telephone:    (415) 653-3750
  Facsimile:     (415) 653-3755

Attorneys for Defendant
PREMIER NUTRITION CORPORATION
f/k/a JOINT JUICE, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT D. MULLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant.<br><br>**[THIS DOCUMENT APPLIES TO ALL RELATED ACTIONS]** | Lead Case No. 3:13-cv-01271-RS<br><br>Related to:<br>3:16-cv-06685-RS (Caiazzo-FL)<br>3:16-cv-06703-RS (Lux-CT)<br>3:16-cv-06704-RS (Ravinsky-PA)<br>3:16-cv-06708-RS (Sandoval-NM)<br>3:16-cv-06721-RS (Dent-IL)<br>3:16-cv-07078-RS (Simmons-MI)<br>3:16-cv-07090-RS (Spencer-MD)<br>3:16-cv-06980-RS (Fishon-NY)<br>3:17-cv-00054-RS (Schupp-MA)<br>3:19-cv-00875-RS (Bland-CA)<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><u>CLASS ACTION</u><br><br>Date:              August 22, 2019<br>Time:             1:30 p.m.<br>District Judge:  Hon. Richard Seeborg<br>Courtroom:    3, 17th Floor, SF |

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 22, 2019 at 1:30 p.m., in Courtroom 3 of the above captioned Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Defendant Premier Nutrition Corporation ("Premier") will and hereby does move this Court for an order entering judgment against Plaintiffs in the above captioned matters pursuant to Federal Rule of Civil Procedure 12(c).

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support of the Motion, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated:  July 18, 2019

VENABLE LLP

By:        */s/ Angel A. Garganta*
ANGEL A. GARGANTA

101 California Street, Suite 3800
San Francisco, CA 94111
Tel:  (415) 653-3750
Fax:  (415) 653-3755
aagarganta@venable.com

*Attorneys for Defendant*

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   FACTUAL BACKGROUND ...................................................................2

      A.    The Joint Juice Product ..............................................................2

      B.    Procedural History ......................................................................3

      C.    Plaintiffs' Claims .......................................................................4

III.  ARGUMENT ...........................................................................................6

      A.    Legal Standard .............................................................................7

      B.    Plaintiffs' State Law Claims Are Expressly Preempted .............7

            1.    The Challenged Label Statements Are Permissible
                  Structure/Function Claims ................................................7

            2.    Plaintiffs' Theory of the Case Is Inconsistent With and
                  Contradicts Federal Law ................................................12

IV.   CONCLUSION......................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bland v. Premier Nutrition Corporation,*

5

    19-cv-00875-RS ...................................................................................................1, 4, 6

6

*Cafasso v. General Dynamics C4 Sys., Inc.,*

7

    637 F. 3d 1047 (9th Cir. 2011) ................................................................................7

8

*Caiazzo v. Premier Nutrition Corporation,*

9

    16-cv-06685-RS ......................................................................................................6

10

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*

11

    475 F. App'x 113 (9th Cir. 2012) .........................................................................13

12

*Dachauer v. NBTY, Inc.,*

13

    913 F.3d 844 (9th Cir 2019) .........................................................................*passim*

14

*Dent v. Premier Nutrition Corporation,*

15

    16- cv-06721-RS ......................................................................................................6

16

*Eckler v. Wal-Mart Stores, Inc.,*

17

    2012 WL 5382218 (S.D. Cal. Oct 31, 2012) ..........................................................4

18

*Fishon v. Premier Nutrition Corporation,*

19

    16-cv-06980-RS ......................................................................................................6

20

*In re Ford Tailgate Lit.,*

21

    11-cv-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ............................16

22

*Korolshteyn, v. Costco Wholesale Corp.,*

23

    2019 WL 2617043 (S.D. Cal. June 25, 2019) (appeal filed) ...........................14, 15

24

*Kroessler v. CVS Health Corp.,*

25

    2019 WL 2164054 (S.D. Cal. May 16, 2019) (appeal filed) ...........................*passim*

26

*Lux v. Premier Nutrition Corporation,*

27

    16-cv-06703-RS ......................................................................................................6

28

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

MOTION FOR JUDGMENT ON THE PLEADINGS

*Min Sook Shin v. Umekin USA, Inc.*,

  2019 WL 2338467 (9th Cir. June 3, 2019) (unpublished) ........................................16

*Mullins v. Premier Nutrition Corporation*,

  No. 13-cv-01271-RS ........................................................................................3

*Murray v. Elations Co. LLC*,

  2014 WL 3849911 (S.D. Cal. Aug 4, 2014) ...............................................................4

*Padilla v. Costco Wholesale Corp.*,

  2013 WL 195769 (N.D. Ill. Jan 16, 2013) ................................................................4

*Qwest Commc'ns Corp. v. City of Berkeley*,

  208 F.R.D. 288 (N.D. Cal. 2002) ...........................................................................7

*Ravinsky v. Premier Nutrition Corporation*,

  16-cv-06704-RS ...............................................................................................6

*Robinson v. Bank of Am., NA*,

  525 F. App'x 580 (9th Cir. 2013) .........................................................................7

*Sandoval v. Premier Nutrition Corporation*,

  16-cv-06708-RS ...............................................................................................6

*Schupp v. Premier Nutrition Corporation*,

  17-cv-00054-RS ...............................................................................................6

*Simmons v. Premier Nutrition Corporation*,

  16-cv-07078-RS ...............................................................................................6

*Spencer v. Premier Nutrition Corporation*,

  16-cv-07090-RS ...............................................................................................6

*Taylor v. Premier Nutrition Corporation*,

  Case No. 3:16-cv-07097-RS ................................................................................6

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

iii

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Premier Nutrition Corporation ("Premier") respectfully submits this Memorandum in support of its Motion for Judgment on the Pleadings.[1]

## I.   INTRODUCTION

Joint Juice is a dietary supplement that helps support joint health.  Joint Juice's labels and advertisements state that the product can provide certain joint health benefits such as to "keep cartilage lubricated and flexible," "keep joints healthy and flexible," and "maintain healthy and happy joints."  The Joint Juice labels expressly state that the product "is not intended to diagnose, treat, cure, or prevent any disease."  Nowhere on the product or relevant advertisements are the words "joint pain" ever used as the product does not claim to relieve joint pain.

Dietary supplements, like Joint Juice, are regulated as a type of food by federal laws and regulations.  Dietary supplements are not drugs.  Accordingly, federal law allows manufacturers/sellers of dietary supplements to make claims that consuming them will support and maintain the healthy structure and functioning of the body (so called "structure/function" claims).  21 U.S.C. § 343(r)(6).  However, dietary supplements may not make claims regarding the prevention, cure, mitigation or treatment of any disease (*e.g.*, protecting against developing cancer).

Plaintiffs are residents of ten states who seek to represent classes of Joint Juice purchasers in their respective states.  Plaintiffs contend they were misled by Joint Juice's labeling and advertising because they make representations regarding general joint health but in reality do not actually "improve the health of joints and relieve joint pain."  (Related Action Compls. ¶ 4 (emphasis added)).[2]  Under recent authority from the Ninth Circuit, however, Plaintiffs' theory of liability is barred because it is inconsistent with and thus preempted by federal law.  *Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir 2019).

---

[1] The instant Motion applies to all the above-captioned related cases.  The factual allegations in the related cases are identical with the exception of *Bland*.  This Motion cites to paragraph numbers, which are the same across all Complaints except Bland, as "Related Action Compls."  The Motion cites separately to the relevant paragraph number in the *Bland* Complaint as "Bland Compl."

[2] Similarly, the *Bland* Complaint alleges that among other benefits, Premier "consistently conveyed to consumers that drinking Joint Juice . . . reduces joint pain . . ." (Bland Compl. ¶ 18.)

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

In *Dachauer*, a case decided earlier this year, the Ninth Circuit addressed the important bright line between permissible "structure/function" claims and prohibited "disease claims." *Dachauer*, 913 at 848. Plaintiffs in that case alleged that certain representations regarding "heart health" and "immune health" were false and misleading because the challenged products did not actually "treat or prevent cardiovascular disease." *Id*. at 846. The Ninth Circuit held that this theory of liability was preempted, because plaintiffs may not require a valid structure/function claim to be supported by proof that the product treats or prevents a disease. *Id*. at 848. The court explained that such a theory of liability is inconsistent with federal law because it would "vitiate [federal law's] distinction between disease claims and structure/function claims." *Id.* Emphasizing that the distinction between the requirements for "structure/function" and "disease" claims "matters very much," the Ninth Circuit affirmed judgment against plaintiffs on the basis of preemption. *Id.*

Here, Plaintiffs' lawsuits attempt to do precisely what the Ninth Circuit in *Dachauer* held is expressly preempted, namely, alleging that Premier's valid general joint health structure/function claims are allegedly false and misleading because the product does not relieve "joint pain" and other symptoms of arthritis. Thus, Plaintiffs improperly seek to impose an obligation that Joint Juice actually treat or prevent a disease simply because the product makes permissible structure/function claims regarding general joint health. As the Ninth Circuit held in *Dachauer*, "[t]hat requirement 'is not identical to the requirement of [federal law]'" and would "vitiate [federal law's] distinction between disease claims and structure/function claims." *Dachauer, Inc.*, 913 F.3d at 848. Accordingly, Plaintiffs' claims are preempted and judgment should be entered against them.

## II.   FACTUAL BACKGROUND[3]

### A.  The Joint Juice Product

Joint Juice is a dietary supplement beverage that is marketed to help support joint health. Its main ingredients include glucosamine hydrochloride ("glucosamine"), chondroitin sulfate ("chondroitin"), and other vitamins and minerals. (Related Action Compls. ¶¶ 20-21; Bland Compl. ¶¶ 14-15.) Joint Juice represents that it provides general joint health benefits including that it can

---

[3] The allegations of fact stated herein are taken from Plaintiffs' Complaints and other materials of which the Court may take judicial notice or otherwise rely on for purposes of this Motion.

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1   help keep cartilage "lubricated and flexible" (Related Action Compls. ¶ 36; Bland Compl. ¶ 26),

2   provide "healthy and happy joints" (Related Action Compls. ¶ 32; Bland Compl. ¶ 23), and

3   "maintain joint function." (Related Action Compls. ¶ 34.)  Joint Juice's labels state that the product

4   "is not intended to diagnose, treat, cure, or prevent any disease."  (Related Action Compls. ¶ 37;

5   Bland Compl. ¶ 27.)  The challenged Joint Juice products include ready to drink supplement drinks,

6   on-the-go drink mixes, and easy shot supplements.  (Related Action Compls. ¶ 2, note 1; Bland

7   Compl. ¶ 1, note 1.)  Plaintiffs contend that the supposed deception is uniform across all Joint Juice

8   products.  (Related Action Compls. ¶ 3; Bland Compl. ¶ 2.)  Plaintiffs do not allege that the words

9   "joint pain" appear on any of the challenged product labels or advertising.  (*See* Related Action

10  Compls. ¶ 37; FNs 4 & 5; Bland Compl. ¶ 27.)

11          **B.  Procedural History**

12          Plaintiffs' lawyers filed their first action against Premier in 2013.  *See Mullins v. Premier*

13  *Nutrition Corporation*, No. 13-cv-01271-RS (the "Lead Case").   In 2016, the Court granted

14  certification of a limited California class in the Lead Case but declined to extend the class to

15  consumers nationwide.  (*See* Lead Case Dkt Nos. 134, 137.)  The Court also denied Premier's

16  motion for summary judgment finding that there was evidence from which a jury could decide that

17  the Joint Juice labeling and advertisements were false or misleading.  (*See* Lead Case Dkt No. 133.)

18  On April 17, 2018, the Court entered an order dismissing the Lead Case.  (*See* Lead Case Dkt No.

19  246.)  Plaintiff in the Lead Case filed an appeal, which is currently pending before the Ninth Circuit.

20  (*See* Lead Case Dkt No. 253.)   After this Court's rulings on class certification and summary

21  judgment in the Lead Case, Plaintiffs' lawyers filed additional actions with named plaintiffs from

22  various states in this Court.[4]  Between November 18, 2016 and January 15, 2019, Plaintiffs' lawyers

23  filed 10 actions in this Court asserting identical factual allegations against Premier with named

24

25  ─────────────────────
    [4] Plaintiffs' lawyers have also filed numerous other cases against other manufacturers making virtually
26  identical allegations about glucosamine dietary supplements in other jurisdictions, many of which have
    been dismissed.  *See Murray v. Elations Co. LLC*, 2014 WL 3849911, * 7 (S.D. Cal. Aug 4, 2014)
27  (dismissing claims regarding glucosamine dietary supplements); *Padilla v. Costco Wholesale Corp.*, 2013
    WL 195769, *4 (N.D. Ill. Jan 16, 2013) (same); *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218 (S.D.
28  Cal. Oct 31, 2012) (same).

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1    plaintiffs purporting to represent classes of consumers from ten different states. [5]

2          **C.  Plaintiffs' Claims**

3          Plaintiffs are residents of California, Connecticut, Florida, Illinois, Maryland,

4    Massachusetts, Michigan, New Mexico, New York and Pennsylvania.  Each plaintiff purports to

5    represent "[a]ll persons who purchased in [their state] any Joint Juice Product." (Related Action

6    Compls. 70; Bland ¶ 66.)

7          Plaintiffs allege that the following claims made on Joint Juice's labeling, packaging, online

8    marketing, and advertisements are false or misleading:

9    • "originally developed for pro athletes by orthopedic surgeon Kevin R. Stone, M.D. to
10      keep joints healthy and flexible" (Related Action Compls. ¶ 30; Bland Compl. ¶ 21.)

11   • "for healthy, flexible joints" (Related Action Compls. ¶ 36; Bland Compl. ¶ 26.)

12   • "helps keep cartilage lubricated & flexible" (Related Action Compls. ¶ 36; Bland
       Compl. ¶ 26.)

13

14   • "a bottle a day keeps your joints in play" (Related Action Compls. ¶ 36; Bland Compl.
       ¶ 26.)

15   • "Glucosamine works to lubricate your joints by helping cartilage tissue absorb water.
16     This helps cartilage perform its job of cushioning and mobility" (Related Action
       Compls. ¶ 31; Bland Compl. ¶ ¶ 22.)

17

18   • "Taking glucosamine and chondroitin together—in the liquid formula found only in
       Joint Juice products—ensures that you get a full day's supply of glucosamine
19     (1,500 mg) and chondroitin to maintain healthy and happy joints" (Related Action
       Compls. ¶ 32; Bland Compl. ¶ 23.)

20

21   • "my joints have gotten a little stiff lately and at first I thought I had to live with it
       because of pro football and just getting older . . . the glucosamine and chondroitin
22     lubricates and cushions the cartilage in my joints so I can move more easily . . . it
       works great for anyone who likes to keep moving. . . glucosamine and chondroitin

23

24

25

26   ─────────────────
     [5] *Bland v. Premier Nutrition Corporation*, 19-cv-00875-RS was originally filed in the Superior Court of
27   California, County of Alameda on January 15, 2019. Premier removed the action to this Court on February
     19, 2019. (Bland Dkt No. 1.)  Plaintiff Bland's deadline to file a motion to remand the action to Superior
28   Court is July 25, 2019.  (*See* Bland Dkt. No 33.)

─────────────────
4
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

have been proven to help <u>maintain joint function and mobility</u>" (Related Action Compls. at ¶ 34: Joe Montana ad).[6]

Based on the products' labels and advertising, Plaintiffs contend that they were misled into believing that the "[p]roducts will improve the health of joints and relieve joint pain." (Related Action Compls. ¶ 4; *see also* Bland Compl. ¶¶ 17-18.) Plaintiffs define the "joint health benefit representations" in their Complaints as the product's ability to conjunctively "improve the health of joints *and* <u>relieve joint pain</u>." (Related Action Compls. ¶ 4 (emphasis added).)

Plaintiffs further contend that the products are "false and deceptive" because glucosamine is not effective in providing the "represented joint health benefits," *i.e.*, <u>relief of joint pain</u>. (Related Action Compls. ¶ 38; Bland Compl. ¶ 28.) Plaintiffs also allege that the clinical studies relied on in the Complaints (Related Action Compls. ¶¶ 39-64; Bland Compl. ¶¶ 29-60) show that the products are "ineffective in providing the joint health benefits"[7] (Related Action Compls. ¶ 67; Bland Compl. ¶ 63); that the source of the deception is the false "joint health benefit representations" (Related Action Compls. ¶ 68; Bland Compl. ¶ 64); that they relied on the "joint health benefit representations" in making their purchases (Related Action Compls. ¶ 68; Bland Compl. ¶ 64); and that the "only purpose for purchasing Joint Juice is to obtain the represented joint health benefits." (Related Action Compls. ¶ 69; Bland Compl. ¶ 65.) Accordingly, Plaintiffs' theory of liability is based entirely on their supposed belief that Joint Juice would somehow relieve joint pain or otherwise treat symptoms of arthritis. Based on this theory of liability, Plaintiffs bring actions asserting the following claims:

1.  *Spencer v. Premier Nutrition Corporation*, 16-cv-07090-RS (claims for violation of **Maryland** Consumer Protection Act Md. Comm. Law Code §§13-301;

---

[6] Plaintiffs also complain that Premier donates part of its proceeds to the Arthritis Foundation and includes the Arthritis Foundation Logo on certain product packaging to explain to consumers its charitable giving. The foundation logo is just that—an endorsement logo and not an objective representation regarding the product's "intended use."

[7] The clinical studies cited in the Complaints all concern the effectiveness of glucosamine and/or chondroitin as treatments for <u>joint pain and other symptoms of osteoarthritis</u>. *See* Request for Judicial Notice ("RJN") filed herewith.

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

2.    *Sandoval v. Premier Nutrition Corporation*, 16-cv-06708-RS (claims for violation of **New Mexico** Unfair Practices Act (NMUPA), N.M. Stat. § 57-12-3);

3.    *Lux v. Premier Nutrition Corporation*, 16-cv-06703-RS (claims for violation of **Connecticut** Unfair Trade Practices Act (CUTPA), C.G.S.A. § 42-110b);

4.    *Caiazzo v. Premier Nutrition Corporation*, 16-cv-06685-RS (claims for violation of **Florida** Deceptive and Unfair Trade Practices Act (FDUTPA) § 501.201);

5.    *Dent v. Premier Nutrition Corporation*, 16- cv-06721-RS (claims for violation of **Illinois** Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2);

6.    *Simmons v. Premier Nutrition Corporation*, 16-cv-07078-RS (claims for violation of **Michigan** Consumer Protection Act § 445.903, Implied Warranty of Merchantability § 440.2314, Magnuson-Moss Warranty Act 15 U.S.C. § 2301, Unjust Enrichment);

7.    *Ravinsky v. Premier Nutrition Corporation*, 16-cv-06704-RS (claims for violation of **Pennsylvania** Unfair Trade Practices and Consumer Protection Law. 73 Pa. St § 201-1, Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Magnuson-Moss Warranty Act 15 U.S.C. § 2301, Unjust Enrichment);

8.    *Schupp v. Premier Nutrition Corporation*, 17-cv-00054-RS (claims for violation of **Massachusetts** Consumer Protection Act, Mass. Gen. Laws 93A § 2);

9.    *Fishon v. Premier Nutrition Corporation*, 16-cv-06980-RS (claims for violation of **New York** General Business Law § 349); and

10.   *Bland v. Premier Nutrition Corporation*, 19-cv-00875-RS (claims for violation of **California** Consumer Legal Remedies Act, Unfair Competition Law, unjust enrichment).[8]

## III.   <u>ARGUMENT</u>

The Court should enter judgment on the pleadings pursuant to Rule 12(c) because Plaintiffs' theory of liability is preempted by federal law.  First, the FDA has issued clear regulations that the challenged claims are structure/function claims and not implied or express disease claims.  Second, as noted above, recent Ninth Circuit authority prohibits Plaintiffs from challenging permissible structure/function claims based on a product's inability to treat disease (*i.e.*, arthritis) or characteristic symptoms of disease (*i.e.*, joint pain).  Accordingly, based on these principles, Plaintiffs fail to state a cause of action under any theory of liability and judgment must be entered

---

[8] Plaintiffs' lawyers also filed an eleventh identical action, *Taylor v. Premier Nutrition Corporation*, Case No. 3:16-cv-07097-RS, but that case has been dismissed pursuant to stipulation of the parties.

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

against them.

## A. Legal Standard

"Rule 12(c) is 'functionally identical' to Rule 12(b)(6)." *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F. 3d 1047, 1054 n.4 (9th Cir. 2011) (*Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) ("Rules 12(b)(6) and 12(c) are substantially identical; both permit challenges to the legal sufficiency of the opposing party's pleadings"). State law claims that are preempted by federal law lack legal sufficiency. Thus, a court may enter judgment on the pleadings where a plaintiff's claims are preempted by federal law. *Robinson v. Bank of Am., NA*, 525 F. App'x 580, 582 (9th Cir. 2013) (affirming judgment on the pleadings for state law claims that are preempted by federal law).

## B. Plaintiffs' State Law Claims Are Expressly Preempted

Plaintiffs' claims are inconsistent with and contradict federal law and are thus preempted. Subsection § 343(r)(6) of the Food Drug & Cosmetics Act ("FDCA") provides that dietary supplement labels can make structure/function claims but not disease claims. 21 U.S.C. § 343(r)(6)(A). The FDCA contains an express preemption provision that prohibits state-law food labeling requirements that are "not identical to the requirements of section 343(r)." 21 U.S.C. § 343-1(a)(5).[9] The Ninth Circuit recently clarified that structure/function claims are permissible on dietary supplements, and thus cannot be challenged under state consumer protection laws based on a product's alleged inability to treat disease or disease symptoms. *Dachauer, Inc.*, 913 at 846 (FDCA preempts state law false advertising claims because challenged statements on supplement labels were permissible structure/function claims).

### 1. The Challenged Label Statements Are Permissible Structure/Function Claims

The challenged label statements and advertisements are quintessential structure/function claims. As noted above, the FDCA distinguishes between permissible "structure/function claims" and impermissible disease claims. 21 U.S.C. § 343(r)(6). A structure/function claim "describes

---

[9] This provision applies to supplements because supplements are deemed to be "food" for purposes of the FDCA. 21 U.S.C. § 321(ff).

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," or "characterizes the documented mechanism by which a nutrient of dietary ingredient acts to maintain such structure or function," but "may not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases."   21 U.S.C. § 343(r)(6).   "A disease claim, conversely, 'claims to diagnose, mitigate, treat, cure, or prevent disease,' either explicitly or implicitly (such as by claiming that a product treats a disease's 'characteristic signs or symptoms')." *Dachauer*, 913 F.3d at 846 (citing 21 C.F.R. § 101.93(g)(2)(ii)). The FDA has issued a Final Rule clarifying the distinction and providing real world examples of structure/function claims.[10]   For example, a dietary supplement cannot claim to "prevent bone fragility in post-menopausal women" because bone fragility is a characteristic symptom of osteoporosis.  FDA Final Rule, 65 Fed. Reg. at 1013.   But a claim that a dietary supplement "helps build strong bones" is a permissible structure/function claim.  *Id.* at 1033.

The challenged claims here are not disease claims.  Just as claims that supplements maintain "a healthy circulatory system," "bowel regularity," or "healthy lung function" are permissible structure/function claims, so too are the challenged claims on Joint Juice products, *e.g.*, "keep joints healthy and flexible" and "helps keep cartilage lubricated and flexible."  Despite Plaintiffs' alleged belief that Joint Juice would "relieve joint pain," *the challenged claims themselves do not actually claim to diagnose, treat, cure, mitigate or prevent any disease – either expressly or impliedly*. The FDA published its Final Rule in the Federal Register related to permissible structure/function claims to clarify the distinction between structure/function claims and disease claims. FDA Final Rule, 65 Fed Reg. at 1000 ("the final rule contains criteria to determine when a labeling statement made about a dietary supplement constitutes a structure/function claim for which no prior FDA review is required and when it constitutes a disease-related claim").

Indeed, the FDA so clearly intended that claims regarding general joint health, such as those challenged here, be considered structure/function claims that it used the distinction between treating "joint pain" and helps "support cartilage and joint function" as an example of the bright line

---

[10] *See* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000-01 (Jan. 6, 2000) (the "FDA Final Rule").

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

between impermissible disease claims (the former) and permissible structure/function claims (the later). *See* FDA File Rule, 65 Fed. Reg. at 1016-17 ("FDA also believes that 'joint pain' is characteristic of arthritis. According to the Merck Manual, joint tenderness is the most sensitive physical sign of rheumatoid arthritis [internal citation]. The claim 'helps support cartilage and joint function,' on the other hand, would be a permissible structure/function claim, because it relates to maintaining normal function rather than treating joint pain."). Elsewhere in the Final Rule, the FDA plainly states that "claims related to maintenance or support of joints" are proper structure/function claims. FDA Final Rule, 65 Fed. Reg. at 1030. The Final Rule also explicitly confirms that dietary supplements may use general terms such as "strengthen," "improve," and "protect," as part of a permissible structure/function claim. FDA Final Rule, 65 Fed Reg. at 1000-01; *see also Dachauer*, 913 F.3d. at 847.

Thus, pursuant to the regulatory regime specifically related to structure/function claims, including the FDA's Final Rule that applies to the virtually identical structure/function general joint health claims at issue in Plaintiffs' Complaints, all of the representations challenged by Plaintiffs are permissible structure/function claims:

| **Challenged Claims** | **Federal Regulation Permitting Permissible Structure Function Claim[11]** |
|---|---|
| "originally developed for pro athletes by orthopedic surgeon Kevin R. stone, M.D. to keep <u>joints healthy and flexible</u>" (Related Action Compls. ¶ 30; Bland Compl. ¶ 21) | "[t]he claim 'helps support cartilage and joint function,' . . . would be a permissible structure/function claim, because it relates to maintaining normal function rather than treating joint pain." 65 Fed. Reg. at 1016–17 |
| "<u>for healthy, flexible joints</u>" "drink daily for <u>healthy, flexible joints</u>" (Related Action Compls. ¶ 36; Bland ¶ 26) | "claims related to maintenance or support of joints . . . are appropriate structure/function statements [so long as not used in conjunction with a brand name that includes the term 'pain']" *Id.* at 1030 |
| "helps keep <u>cartilage lubricated & flexible</u>" (Related Action Compls. 36; Bland Compl. ¶ 26) | "[t]he claim 'helps support cartilage and joint function,' . . . would be a permissible structure/function claim, because it relates to maintaining normal function rather than treating joint pain." *Id.* at 1016–17 |

---

[11] Citations are to the FDA Final Rule.

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

| | |
|---|---|
| "a bottle a day keeps your <u>joints in play</u>" (Related Action Compls. ¶ 36; Bland ¶ 26) | "[t]he claim 'helps support cartilage and joint function,' . . . would be a permissible structure/function claim, because it relates to maintaining normal function rather than treating joint pain." *Id.* at 1016–17 |
| "Taking glucosamine and chondroitin together—in the liquid formula found only in Joint Juice products—ensures that you get a full day's supply of glucosamine (1,500 mg) and chondroitin to <u>maintain healthy and happy joints</u>" (Related Action Compls.¶ 32; Bland ¶ 23) | "claims related to maintenance or support of joints . . . are appropriate structure/function statements [so long as not used in conjunction with a brand name that includes the term 'pain']" *Id.* at 1030 |
| "My joints have gotten a little stiff lately and at first I thought I had to live with it because of pro football and just getting older . . . the glucosamine and chondroitin lubricates <u>and cushions the cartilage</u> in my joints so I can move more easily . . . it works great for anyone who likes to keep moving. . . glucosamine and chondroitin have been proven to help <u>maintain joint function and mobility</u>" (Related Action Compls.¶ 34:  Joe Montana ad) | Unlike "joint pain" which is a characteristic of arthritis, "support cartilage" is a "permissible structure/function claim, because it relates to maintaining normal function rather than treating joint pain."  *Id.* at 1016-17 |
| "Glucosamine <u>works to lubricate your joints</u> by helping cartilage tissue absorb water.  This helps cartilage perform its job of cushioning and mobility."  (Related Action Compls.¶ 31; Bland ¶ 22) | "claims related to maintenance or support of joints . . . are appropriate structure/function statements [so long as not used in conjunction with a brand name that includes the term 'pain']" *Id.* at 1030 |

The FDA also expressly considered the issue of when a structure/function claim nonetheless can imply an impact on disease so as to constitute an "implied disease" claim.  In doing so, the FDA determined that "[i]mplied disease claims do not mention the name of a specific disease, but refer to identifiable characteristics of a disease from which the disease itself may be inferred."  FDA Final Rule, 65 Fed. Reg. at 1012.  For example, the FDA Final Rule provides examples of such implied disease claims where explicit terms including "reduces joint pain" are used.  *Id.* at 1015.

***Here, Plaintiffs do not allege anywhere in their respective Complaints that the words "joint pain" appear on any Joint Juice product labels or advertisements***.  Plaintiffs' claimed

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

10

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1    subjective belief that Joint Juice would "relieve joint pain" requires an implausible inference that

2    it would perform in the exact opposite way in which the product is advertised (*i.e.*, that the products

3    do not diagnose, treat, cure or prevent a disease).   Importantly, the FDA Final Rule rejects

4    Plaintiffs' attempt to transmute a permissible structure/function claim into a disease claim based on

5    nothing more than a consumer's subjective beliefs.   Specifically, the FDA clarified that consumer

6    recognition or consumer surveys are "not required" and would be "impractical and inefficient" in

7    the determination of whether a claim is a structure/function claim or a disease claim.  65 Fed. Reg.

8    at 1007-08.  The *proposed* rule sought to include such subjective indicia but the *final* rule eliminated

9    "reference to recognition of signs and symptoms by consumers or health professionals because

10   many comments objected that this standard would appear to require consumer testing. FDA has

11   replaced the recognition standard with an objective standard."   *Id.*   The FDA Final Rule also

12   contemplated that some consumers may misunderstand the claim but that should not transform a

13   permissible structure/function claim into a disease claim:   "the criteria will not satisfy everyone.

14   For example, some of the claims considered to be structure/function claims may imply specific

15   disease prevention to some consumers." *Id*. at 1011; *see also id.* at 1006 ("[t]he fact that some

16   consumers used a dietary supplement for medicinal purposes would not by itself be sufficient to

17   establish intended use as a drug.").   In the end, the FDA Final Rule created a uniform objective

18   standard of what constitutes a structure/function claim versus a disease claim.   *Id*. at 1009 (the

19   "final rule creates uniform, enforceable requirements for structure/function claims.").

20        The Southern District of California recently relied on the FDA Final Rule on this precise

21   issue and determined that joint health representations virtually identical to those challenged here

22   "are proper structure/function claims according to the federal requirements."   *Kroessler v. CVS

23   Health Corp*., 2019 WL 2164054, at *14 (S.D. Cal. May 16, 2019) (appeal filed).  In *Kroessler*, a

24   case brought by the same lawyers representing Plaintiffs here, the plaintiff challenged claims for a

25   glucosamine product.   The challenged representations included "Joint Health," "Supports

26   flexibility & range of motion," "Glucosamine and Chondroitin help support and maintain the

27   structure of joints," and "Glucosamine and Chondroitin work to support joint comfort while helping

28   to promote mobility."  *Id.* at *3-4.  Relying on the Ninth Circuit's holding in *Dachauer*, Judge

Bencivengo emphasized the importance of drawing a distinction between structure/function claims and disease claims holding that "it matters very much." *Id.* at *5 (citing *Dachauer*, 913 F.3d at 848). The court compared the challenged claims to those in the FDA Final Rule and confirmed that all were "proper structure/function claims according to the federal requirements" and "do not suggest treatment or prevention of a disease." *Id.* (citing FDA Final Rule, 65 Fed. Reg. at 1016-17).

The same is true in the instant cases. The plain reading of the FDA Final Rule, the overwhelming weight of the FDA guidance on virtually identical claims, and authority from the Ninth Circuit and district courts all confirm that the challenged claims are permissible structure/function claims.

### 2. Plaintiffs' Theory of the Case Is Inconsistent With and Contradicts Federal Law

Plaintiffs' Complaints are based on the theory that Joint Juice's labeling and advertising is false and misleading because Joint Juice does not relieve joint pain or other characteristic symptom of arthritis. As the Ninth Circuit recently held, this is a textbook case of preemption. *Dachauer*, 913 F.3d at 848 ("We hold that § 343-1(a)(5) preempts Plaintiff's claims to the extent that he argues that Defendants' structure/function claims are false or misleading because their supplements do not prevent cardiovascular disease.").

As explained above, the FDCA includes express preemption language precluding any state law imposed standard not identical to the federal law. 21 U.S.C. § 343-1(a)(5) ("no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" any "requirement respecting any claim of the type described in section 343(r)(1) ... that is not identical to the requirement of section 343(r) ...."); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.,* 475 F. App'x 113, 115 (9th Cir. 2012) (plaintiff "seeks to enjoin and declare unlawful the very statement that federal law permits and defines. Such relief would impose a burden through state law that is not identical to the requirements under section 343(r). These claims are therefore expressly preempted."). Therefore, Plaintiffs' state law claims that Joint Juice's labeling and advertising are false or misleading because Joint Juice does not treat joint pain

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

or other characteristic symptoms of arthritis impose additional and inconsistent requirements from federal law, and are thus preempted.

The Ninth Circuit's recent decision in *Dachauer v. NBTY, Inc.* is instructive.  In *Dachauer*, plaintiffs sued the maker of vitamin E supplements, alleging that claims that the supplements "promote and support cardiovascular, circulatory, and heart health" were false and misleading because the supplements do not prevent cardiovascular disease.  *Dachauer*, 913 F.3d at 849.  The challenged representations included "support cardiovascular health," "promote[] immune function," "immune health," "heart health," and "circulatory health."  *Id*. at 846.  The Ninth Circuit held that the labels "do not claim that [the products] treat or prevent cardiovascular disease" and thus were structure/function claims pursuant to federal regulations.  *Id*. at 848.  The Ninth Circuit emphasized the important distinction between the two types of claims, holding that the FDCA "allows manufacturers of supplements to make general claims—such as 'promotes heart health'—and to substantiate them with evidence that a supplement has some structural or functional effect on a given part of the human body," but does ***not*** require manufacturers also have evidence that those structural or functional effects are effective to treat or prevent disease.  *Id*. at 848.  The Court further held that plaintiffs' contention that the structure/function claims were "false because the supplements do not prevent cardiovascular disease . . . impose[d] a requirement under California law that structure function claims . . . require proof that the supplement treats or prevents cardiovascular disease"  *Id*. at 848.  Because "structure/function claims *do not* and *may not* claim to treat or prevent disease[,]" arguments that the labels were false or misleading because the supplements did not reduce heart disease or mortality were preempted by federal law as "not identical to the requirements of [the FDCA]"  *Id*.

The same result must follow here.  Plaintiffs explicitly claim that the "joint health benefits" that were not obtained from Joint Juice include the ability to "relieve joint pain" (a characteristic symptom of arthritis).  (Related Action Compls. ¶ 4; *see also* Bland Compl. ¶ 17-18.)  But they do not (and cannot) identify a single representation that actually promises to "relieve joint pain" or any other symptom of arthritis.  Nonetheless, more than twenty-five paragraphs of their Complaint is devoted to listing the evidence they claim shows that glucosamine (and/or chondroitin) are

13

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1    supposedly not effective for the treatment of osteoarthritis or characteristic symptoms of

2    osteoarthritis.  (Related Action Compls. ¶¶ 39-64; Bland Compl. ¶¶ 29-60; *see also* RJN.)  Thus,

3    when Plaintiffs state that "glucosamine, alone or in combination with other ingredients including

4    chondroitin sulfate, is not effective in providing the *represented joint health benefits*" (Related

5    Action Compls. ¶ 38; Bland Compl. ¶ 28 (emphasis added)), they are demanding that Joint Juice

6    actually be effective at treating or preventing disease or characteristic disease symptoms (*see*

7    Related Action Compls. ¶ 4; Bland Compl. ¶¶ 17-18), a requirement inconsistent with and

8    contradictory to the federal regulatory scheme. *See Dachauer,* 913 F.3d at 849.

9         Plaintiffs also contend that they relied on the "joint health benefits" in making their purchase

10   decisions (Related Action Compls. ¶ 12; Bland Compl. ¶ 7) and that is the reason they have "been

11   and will continue to be deceived or misled by Defendant." (Related Action Compls. ¶ 68; Bland

12   Compl. ¶ 64.)  Plaintiffs' entire Complaints are therefore premised on their demands for disease-

13   level proof (*i.e.*, that the product relieve joint pain) for claims that are in actuality, permissible

14   structure/function claims.  However, as the Ninth Circuit held in *Dachauer*, that theory of liability

15   is "not identical to the requirements of section 343(r)(6)" and is thus preempted.  *Dachauer,* 913

16   F.3d at 849.

17        To Premier's knowledge, every district court that has addressed this same question of

18   preemption subsequent to *Dachauer* has found the claims to be preempted by federal law.  *See*

19   *Korolshteyn, v. Costco Wholesale Corp.*, 2019 WL 2617043, at *1 (S.D. Cal. June 25, 2019) (appeal

20   filed); *Kroessler*, 2019 WL 2164054, at *4.  In *Kroessler v. CVS Health Corp.* for example,

21   plaintiffs challenged general joint health representations on a glucosamine product. *Kroessler*, 2019

22   WL 2164054, at *4.  As discussed above, the court first relied on federal regulations and the FDA

23   Final Rule to determine that the challenged claims were plainly structure/function claims.  *Id.* at

24   *5.  The court held that the distinction between structure/function claims and disease claims

25   "matters very much" because plaintiff's argument that the distinction is irrelevant to her state law

26   claims "would vitiate the FDCA's distinction between disease claims and structure/function

27   claims." *Id.* at *5 (citing *Dachauer*, 913 F.3d 848).  The court further held that the FDA only

28   requires that a manufacturer have "competent and reliable scientific evidence" of a

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

14

structure/function claim and "citation to studies does not equate to Defendant lacking competent and reliable scientific evidence of its own." *Id.* at *4. The court concluded that because plaintiff's theory of liability was inconsistent with federal law, all of plaintiff's claims were therefore preempted. *Id.* at *5 ("Plaintiff's state law false advertising claims . . . are preempted and therefore are dismissed with prejudice.").

Similarly, in *Korolshteyn, v. Costco Wholesale Corp.*, plaintiff sued a manufacturer of Gingko supplement products alleging the labeling was false and misleading. *Korolshteyn*, 2019 WL 2617043, at *1. The court held that that challenged claims were "permissible structure/function claims pursuant to the FDA's guidance . . . [because] they do not suggest disease prevention or treatment."[12] The court held that plaintiffs' claims would "alter or add to the requirement that the manufacturer has substantiation . . . [and] directly or indirectly impose obligations or contain provisions not identical to the federal requirements." *Id.* at *4.[13] Accordingly, plaintiff's state law claims were held preempted and judgment was entered against plaintiff. *Id.*

The same is true here. Under *Dachauer*, *Kroessler*, and *Korolshteyn*, Plaintiffs' theory that the general joint health structure/function claims are false and misleading because they fail to relieve joint pain or other characteristic symptoms of arthritis are preempted. Accordingly, Premier

---

[12] The challenged claims in *Korolshteyn* included representations that the product "supports alertness & memory," "can help with mental clarity and memory," "maintain healthy blood flow to the brain and assist metal clarity and memory, especially occasional mild memory problems associates with aging." *Id.* at *1.

[13] The court also clarified that the existence of conflicting scientific evidence might conceivably create a genuine dispute of material fact for a fact-finder, it does "not foreclose a finding that Plaintiff's claims are preempted under the NLEA and the Court must first address the issue of preemption." *Id.* at *3.

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1   is entitled to judgment on the pleadings on all of Plaintiffs' claims.[14]

## IV.   CONCLUSION

For the foregoing reasons, the Court should enter judgment against Plaintiffs on the grounds that their claims are preempted by federal law.

Dated:  July 18, 2019

VENABLE LLP

By:        */s/ Angel A. Garganta*

ANGEL A. GARGANTA

Angel A. Garganta (163957)
Jessica L. Grant (178138)
Amit Rana (291912)
Yuhan Chi (324072)
101 California Street, Suite 3800
San Francisco, CA  94111
Tel: (415) 653-3750

*Attorneys for Defendant*

---

[14] Plaintiffs' claims for breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, and unjust enrichment.  (Ravinsky Compl. (16-cv-6704) at ¶¶ 78-84, 92-119; Avery Comp. (16-cv-7078) Compl. at ¶¶ 87-114; Bland Compl. at ¶¶ 99-104) are premised on the identical factual allegations and the same defective theory that Premier must have disease-level proof to support its structure/function claims.  Thus, these claims fail for the same reasons discussed above.  *See, e.g.*, *Kroessler*, 2019 WL 2164054 at *5 (finding plaintiff's express warranty claim to be also preempted where it is "premised on the same theory" as the plaintiff's preempted CLRA and UCL claims); *In re Ford Tailgate Lit.*, 11-cv-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("To the extent unjust enrichment is available as an independent claim . . . it will not stand where the claim simply mirrors other statutory or tort claims."); *see also Min Sook Shin v. Umekin USA, Inc.*, 2019 WL 2338467, at *1 (9th Cir. June 3, 2019) (unpublished) (affirming lower court's dismissal of MMWA claim, because, while the plaintiff "purports to bring an MMWA implied warranty claim, [] the claim relies upon facts stated in [supplement-maker-defendant's] *written* statements.  The federal Food, Drug, and Cosmetic Act . . . not the MMWA, governs 'the making or content of' written warranties on [defendant's] products.").

16

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 18, 2019.

*/s/ Angel A. Garganta*

ANGEL A. GARGANTA

VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA  94111
Tel:  (415) 653-3750
Fax:  (415)653-3755
agarganta@venable.com

CERTIFICATE OF SERVICE