MORRISON & FOERSTER LLP
Jessica L. Grant (SBN 178138)
JGrant@mofo.com
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000

VENABLE LLP
Angel A. Garganta (SBN 163957)
agarganta@venable.com
Steven E. Swaney (SBN 221437)
seswaney@venable.com
Amit Rana (SBN 291912)
arana@venable.com
Antonia I. Stabile (SBN 329559)
aistabile@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: 415.653.3750

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC FISHON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>Defendant. | Case No.   3:16-cv-06980-RS<br><br>**REPLY IN SUPPORT OF MOTION TO EXCLUDE INADMISSIBLE EXPERT OPINIONS OF MICHAEL DENNIS, PH.D. PURSUANT TO RULE 702**<br><br>Date:   April 21, 2022<br>Time:   1:30 p.m.<br>Ctrm:   3 – 17th Floor<br>         Hon. Richard Seeborg<br><br>Complaint Filed: December 5, 2016<br>Trial Date:        May 23, 2022 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 1

I.    IN ORDER TO BE ADMISSIBLE, DR. DENNIS'S SURVEY MUST ADHERE TO ACCEPTED PRINCIPLES OF SURVEY DESIGN AND PRODUCE RELIABLE RESULTS. ................................................................................................... 1

II.    WHEN A SURVEY HAS SEVERAL DESIGN FLAWS, THE CUMULATIVE EFFECT RENDERS THE SURVEY INADMISSIBLE. .................................................. 3

ARGUMENT .................................................................................................................................. 4

III.    THE DENNIS SURVEY'S EXCLUSIVE RELIANCE ON LEADING CLOSED-ENDED QUESTIONS DEVIATES FROM ACCEPTED PRINCIPLES OF SURVEY DESIGN ........................................................................................................... 4

    A.    Using exclusively closed-ended questions is not accepted as proper consumer perception survey design .......................................................................... 4

    B.    Plaintiff does not address the flaws with the specific closed-ended leading questions used in the Dennis Survey........................................................................ 7

    C.    The Dennis Survey Is Not Reliable Because It Failed to Use A Control Group ........................................................................................................................ 10

    D.    Consumer false advertising case surveys do require control groups .................... 11

    E.    Dr. Dennis could have designed a control group for his survey ........................... 13

    F.    Dr. Dennis's Admitted Manipulation of the Data Is Grounds Alone to Exclude His Survey................................................................................................ 13

CONCLUSION ............................................................................................................................. 15

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  2010 WL 5186393 (D. Utah Dec. 15, 2010)..................................................................6, 7

*In re 5-Hour Energy Marketing and Sales Practices Litig.*,
  2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ....................................................................9

*Bruno v. Bozzuto's, Inc.*,
  311 F.R.D. 124 (M.D. Pa. 2015) ........................................................................................3

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001)............................................................................................1

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)............................................................................................................2

*Dongguk Univ. v. Yale Univ.*,
  2012 WL 1977978 (D. Conn. June 1, 2012) ......................................................................2

*Edmondson v. RCI Hosp. Holdings, Inc.*,
  2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ....................................................................3

*In re Elysium Health-ChromaDex Litig.*,
  2022 WL 421135 (S.D.N.Y. Feb. 11, 2022) .......................................................................3

*Fortune Dynamic Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010)............................................................................................2

*FTC v. On Point Global LLC*,
  2021 WL 4891334 (S.D. Fla. Sept. 22, 2021) ..................................................................12

*Icon Enterprises Int'l, Inc. v. Am. Prods. Co.*,
  2004 WL 5644805 (C.D. Cal. Oct. 7, 2004).......................................................................3

*J & J Snack Foods Corp. v. Earthgrains Co.*,
  220 F. Supp. 2d 358 (D.N.J. 2002) ....................................................................................3

*Kars 4 Kids, Inc. v. Am. Can!*,
  2019 WL 1755912 (D.N.J. Apr. 18, 2019).........................................................................3

*Korolshteyn v. Costco Wholesale Corp.*,
  2017 WL 1020391 (S.D. Cal. Mar. 16, 2017) ..................................................................12

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   7 F.Supp.3d 955 (N.D. Cal. 2014),
   *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015) ....................................................6

*Plavin v Grp. Health Inc.*,
   146 N.E.3d 1164 (N.Y. 2020) ..............................................................................................12

*Reinsdorf v. Skechers U.S.A.*,
   922 F. Supp. 2d 866 (C.D. Cal. 2013) ....................................................................................2

*Rikos v. P&G*,
   799 F.3d 497 (6th Cir. 2015) ................................................................................................12

*Senne v. Kansas City Royals Baseball Corp.*,
   315 F.R.D. 523 (N.D. Cal. 2016) ...........................................................................................9

*Sentius Int'l, LLC v. Microsoft Corp.*,
   2015 WL 331939 (N.D. Cal. Jan. 23, 2015) ..........................................................................6

*Simon Prop. Group LP v. MySimon Inc.*,
   104 F. Supp. 2d 1033 (S.D. Ind. 2000) ..................................................................................2

*Spangler Candy Co. v. Tootsie Roll Indus., LLC*,
   372 F. Supp. 3d 588 (N.D. Ohio 2019) ..................................................................................2

*Starter Corp. v. Converse, Inc.*,
   170 F. 3d 286 (2d Cir. 1999) ................................................................................................10

*Strumlauf v. Starbucks Corp.*,
   2018 WL 306715 (N.D. Cal. Jan 5, 2018) ........................................................................9, 10

*Townsend v. Monster Bev. Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ..................................................................................2

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
   746 F.2d 112 (2d Cir. 1984) ................................................................................................10

**Other Authorities**

Fed. R. of Evid. 403 ......................................................................................................................10

Federal Judicial Center, *Reference Manual on Scientific Evidence* (3d ed. 2011) .........................5

Norman M. Bradburn, Seymour Sudman, & Brian Wansink, *Asking Questions:
   A Practical Guide to Questionnaire Design* (2004) ..............................................................5

**INTRODUCTION**

Premier's motion to exclude the inadmissible testimony of Michael Dennis details the voluminous scientific literature and case law confirming that Dr. Dennis's survey (the "Dennis Survey") constitutes such a fundamental departure from accepted principles of survey design that its results are unreliable and would be highly prejudicial to put before a jury. In response, Plaintiff fails to address Premier's arguments in any meaningful way.

First, Plaintiff does not put forward any compelling arguments as to why the Court should permit the Dennis Survey's impermissible, suggestive, and leading closed-ended questions, when the scientific literature—upon which Dr. Dennis himself relies—makes it clear that such questions are improper when measuring consumers' perceptions. Second, Plaintiff does not address why Dr. Dennis failed to use an adequate control group for his survey. Finally, Plaintiff fails to explain why Dr. Dennis manipulated the results of his survey by excluding a significant portion of the relevant universe of respondents—those under the age of 35.

None of Plaintiff's arguments provide any rational explanation for why the Dennis Survey deviated so significantly from accepted principles of survey design. And none of Plaintiff's arguments explain why such deviations, which render the survey results unreliable, should be ignored at this "gatekeeper" stage of the proceeding, allowing this flawed survey to be put before a jury. Contrary to Plaintiff's arguments, these deviations from the accepted principles of survey design do not just go to the weight of Dr. Dennis's opinions. These deviations, both on their own and especially taken together, render the Dennis Survey unreliable and inadmissible under Rules 403 and 702. Thus, the Dennis Survey and Dr. Dennis's opinions should be excluded in their entirety.

**LEGAL STANDARD**

**I.     In Order to Be Admissible, Dr. Dennis's Survey Must Adhere to Accepted Principles of Survey Design and Produce Reliable Results.**

Plaintiff does not dispute that in the Ninth Circuit, consideration of the admissibility of survey evidence is a two-step process. (ECF No. 126 ("Mot.") at 5); *see Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). As a threshold inquiry, the Court must

determine if the survey is "admissible, relevant, and conducted according to accepted principles." *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013). In other words, the proponent of the expert must first show that the survey being offered is reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."). Only after the Court has determined the reliability of the survey does the Court proceed to the second step, determining what weight (if any) to ascribe to the survey. "Unless survey evidence is conducted according to accepted principles, it is not admissible in the first instance." *Reinsdorf*, 922 F. Supp. 2d at 878.[1]

In its opposition, Plaintiff claims the flaws with Dr. Dennis's survey "go[] to weight and not admissibility." (ECF No. 147 ("Opp.") at 19.) However, "if a survey suffers from substantial methodological flaws, it can be excluded under both Rule 403 and Rule 702." *Dongguk Univ. v. Yale Univ.*, 2012 WL 1977978, at *3 (D. Conn. June 1, 2012). Courts routinely recognize that a survey's methodological flaws can render it inadmissible. As one court aptly noted:

> The Court need not and should not respond reflexively to every criticism by saying it merely "goes to the weight" of the survey rather than to its admissibility. If the flaws in the proposed survey are too great, the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial.

*Simon Prop. Group LP v. MySimon Inc.*, 104 F. Supp. 2d 1033, 1039 (S.D. Ind. 2000) (citing *Starter Corp. v. Converse, Inc.*, 170 F. 3d 286, 297 (2d Cir. 1999)); *see also Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F. Supp. 3d 588, 596 (N.D. Ohio 2019) (same).

---

[1] Plaintiff mischaracterizes *Fortune Dynamic Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010), to suggest that "[t]he admissibility threshold for survey evidence in the Ninth Circuit is notably low. The offering party need only show that the survey is relevant and conducted according to accepted principles." (Opp. at 5.) This quote actually comes from *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1025 (C.D. Cal. 2018), not the Ninth Circuit.

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

2

**II.     When A Survey Has Several Design Flaws, the Cumulative Effect Renders the Survey Inadmissible.**

Where, as here, a survey deviates from accepted principles of survey design in several material ways, courts often exclude the survey, as any minimal probative value is substantially outweighed by the prejudice of presenting a methodologically flawed survey to the jury. *See J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 369 (D.N.J. 2002) ("[W]hen the deficiencies are so substantial that they render the survey's conclusions untrustworthy, the court should exclude the survey from evidence."); *Edmondson v. RCI Hosp. Holdings, Inc.*, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Federal Rules of Evidence 702 and 403 require the court to look at the cumulative effect of all of the flaws in a survey in determining its admissibility.") (internal quotation marks omitted); *see also Icon Enterprises Int'l, Inc. v. Am. Prods. Co.*, 2004 WL 5644805, at *28 (C.D. Cal. Oct. 7, 2004) ("[T]he results of the survey are not only less reliable, but admitting the survey would raise questions that should not properly be before the jury."); *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 140 (M.D. Pa. 2015) ("[B]ecause there are insufficient ways to sufficiently tailor the flaws in the contested reports and testimony and because admission would risk unduly prejudicing and confusing the jury, the instant dispute is more appropriately framed as a question of threshold admissibility.").

Thus, "[w]hile any individual flaw . . . may not, by itself, be sufficient to justify excluding the survey evidence, the totality of those deficiencies leads the Court to find that the prejudicial effect of [plaintiff's] survey substantially outweighs its diminished probative value, making it of little use to the jury." *Kars 4 Kids, Inc. v. Am. Can!*, 2019 WL 1755912, at *9 (D.N.J. Apr. 18, 2019).[2]

---

[2] *See also In re Elysium Health-ChromaDex Litig.*, 2022 WL 421135, at *15 (S.D.N.Y. Feb. 11, 2022) ("In this instance, the survey's failure to correct for the potential focalism as well as the fact that survey respondents may have reacted to feeling deceived rather than to the nature of the test messages in considering whether learning those messages were false would affect their purchasing decisions, as well as the survey's vague questions which render it impossible to determine whether the aspect of the message that is alleged to be false itself is material, make the survey so flawed as to be completely unhelpful to the trier of fact and its probative value is substantially outweighed by its prejudicial effect.") (internal quotation marks omitted).

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

3

For example, the court in *Icon Enterprises* considered the risk of presenting flawed survey data to the jury at the motion in limine stage. In assessing design flaws in a consumer survey, the court explained that forcing the jury to compare definitions of specific terms compared in the survey will only confuse and confound the jury; it held that while the survey may have some probative value, that value was "substantially outweighed by its potential to confuse and mislead the jury." *Id*. The Court here should similarly exclude the Dennis Survey given the cumulative effects of the multiple design flaws, which are likely to confuse and mislead the jury.

## ARGUMENT

Plaintiff has failed to meet the initial burden of showing that the Dennis Survey was conducted according to accepted principles of survey design. Plaintiff does not dispute that Dr. Dennis failed to use open-ended, non-suggestive questions, use a proper control group, or survey the proper universe of survey respondents. Plaintiff does not explain how Dr. Dennis's failure at each of these accepted methodological steps could still render his survey reliable. Each of these failures ***alone*** is enough to render the Dennis Survey inadmissible. But the cumulative effect of these fatal design flaws makes the Dennis Survey not only inadmissible, but confusing, misleading and prejudicial because the jury could base their verdict on survey data that does not adhere to the accepted principles of survey design.

**III.    The Dennis Survey's Exclusive Reliance on Leading Closed-Ended Questions Deviates from Accepted Principles of Survey Design**

    **A.    Using exclusively closed-ended questions is not accepted as proper consumer perception survey design**

Premier's motion detailed the overwhelming scientific consensus confirming that a survey measuring consumer perception should not exclusively rely on closed-ended questions, as the Dennis Survey did here. (Mot. at 7-8.) That scientific support is corroborated by three experts in this case, including Plaintiff's own marketing expert. In its opposition, Plaintiff cites to its own literature, *all of which confirms* that open-ended, non-leading questions are the accepted principles of survey design—not the closed-ended, leading questions used by Dr. Dennis:

- "A potentially valuable part of any survey questionnaire consists of *open-ended questions*. Respondents answer open-ended questions in their own words, rather than

just tick one of the limited list of alternatives provided by the surveyor." Norman M. Bradburn, Seymour Sudman, & Brian Wansink, *Asking Questions: A Practical Guide to Questionnaire Design*, p. 153 (2004) (emphasis added).

- "In many instances an *open-ended format* can also produce vignettes of considerable richness and quotable material that will enliven research reports. It is an invaluable tool when you want to go deeply into a particular topic, and it is an absolutely essential tool when you are beginning work in an area and need to explore all aspects of an opinion area." *Id*. at 154 (emphasis added).

- "*[O]pen*-ended questions are more appropriate when a survey is attempting to gauge what comes first to a respondent's mind, but closed-ended questions are more suitable for assessing choices between well-identified options or obtaining ratings on a clear set of alternatives." Federal Judicial Center, *Reference Manual on Scientific Evidence*, p. 394 (3d ed. 2011) (emphasis added).

These citations are consistent with the scientific authorities cited in Premier's motion that explain if a survey purports to gauge a consumer's perceptions of a stimuli, it should ask them "in their own words" (Bradburn et al. at 153) what "comes first to [their] minds" (*Reference Manual* at 394) **without suggesting the answer to them**. Particularly here, open-ended questions are "an absolutely essential tool" to analyze the opinions and perceptions of consumers. (Bradburn et al. at 154.) Even Dr. Dennis's rebuttal report confirms the importance of this principle when he explains that open-ended questions require the respondent to be "motivated, literate, and expressive." (ECF No. 147-2 ("Dennis Rebuttal Rep.") ¶ 65.) Without that, respondents would simply "tick one of the limited list of alternatives provided by the surveyor." (Bradburn et al. at 153.)

Plaintiff next responds by suggesting that open-ended questions are not appropriate because they are too hard to code. (Opp. at 8.) But Dr. Dennis is presumably capable of coding responses to his own survey. If Plaintiff is suggesting that Dr. Dennis is not capable of coding responses to his surveys or designing a proper survey that can accurately estimate consumer perception without relying on suggestive questions, Plaintiff has conceded that it cannot meet its burden of establishing that the Dennis Survey adheres to the accepted principles of survey design.

Plaintiff cites several cases to argue that courts have criticized the use of open-ended questions. But these cases are irrelevant to the present issue because none of them addressed the use of open-ended questions in surveys designed to test consumer perception of product

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

5

advertising. *See Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 331939, at *2 (N.D. Cal. Jan. 23, 2015) (discussing a survey designed to test the customer's preference regarding the spelling and grammar functions of computer products); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F.Supp.3d 955, 975 (N.D. Cal. 2014), *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015) (discussing one suggestive open-ended question that primed respondents to think about illicit payments towards college athletes).

One case upon which Plaintiff relies, *1-800 Contacts, Inc. v. Lens.com, Inc.*, 2010 WL 5186393 (D. Utah Dec. 15, 2010), showcases why surveys made up of close-ended, leading questions do not comport with accepted principles of survey design. In *1-800 Contacts*, the court discussed the admissibility of a consumer-confusion survey in a trademark infringement case. As Plaintiff notes, the court held that an open-ended question was unnecessary for the particular type of consumer-confusion issue. *Id.* at *7. However, the court explained why the closed-ended questions at issue were still improper:

> The problem, however, is not the failure to use an open-ended question, but the failure to design a close-ended question that offers exhaustive alternative responses. Here, the form of the question strongly suggested the response. A close-ended question, to maintain the objectivity of the survey, must allow the respondent the unbiased choice from a reasonable list of choices.

*Id*. The court described several issues with the survey, including suggestive closed-ended questions, lack of question clarity, ambiguous terms, and lack of data in the expert report. *Id*. at *7-8. Ultimately, the court excluded the survey, holding that "the flaws in this survey's universe and crucial questions are so substantial as to render the survey unreliable." *Id*. at *8.

Plaintiff next claims that Premier's expert, Hal Poret, agrees with Dr. Dennis's use of open-ended questions. (Opp. at 8.) This argument lacks merit. Mr. Poret's survey tests whether consumers bought Joint Juice as a result of its advertising—a completely different issue from that tested by Dr. Dennis. The Poret Survey shows the various reasons why consumers purchased Joint Juice, a critical element of Plaintiff's claim that Dr. Dennis did not evaluate. And the Poret Survey utilized both open-ended and closed-ended questions, which is explicitly based on

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

6

scientific authority and adheres to accepted principles of survey design for the type of survey conducted by Mr. Poret—which again, was not a consumer perception survey. (Poret Rep. at 8, n. 4 (citing Malhotra, Naresh, "Questionnaire Design and Scale Development," in The Handbook of Marketing Research (Sage Publications, Inc. 2006) pp. 86-88 (discussing combined use of open-ended and closed-ended questions to elicit valid data regarding consumer experience and opinion)).) The cherry-picking of portions of Mr. Poret's deposition do nothing to rescue the fatal flaws in the consumer perception survey designed by Dr. Dennis.

Plaintiff also argues that the leading questions could not have been a problem in the Dennis Survey because the survey "disguised the research objectives" by including questions about "good taste," for example. (Opp. at 8.) Again, Plaintiff's example proves Premier's point. 58.1% of respondents said that the package was communicating good taste, and 64.1% of respondents said they were more likely to purchase the product "because [they] believe[d] the packaging is communicating that this product will taste good." (ECF No. 126-3 ("Dennis Rep."), Attachment F.) The packaging says nothing about taste, and sends no message about whether the product will taste good. Thus, Plaintiff's example proves that the survey design that deviated from well-accepted principles was so flawed that respondents were simply saying "yes" to every question regardless of its content. These flawed responses came through despite Dr. Dennis's addition of a "Don't know/not sure" answer in his survey questions. Simply adding a third option to a suggestive, closed-ended question does not render the question proper. As Plaintiff's own cited case law requires, the closed-ended questions "must allow the respondent the unbiased choice from a reasonable list of choices." *1-800 Contacts*, 2010 WL 5186393, at *7. By failing to do so, Dr. Dennis created a survey that does not adhere to accepted principles of survey design and thus produces unreliable results.

**B.    Plaintiff does not address the flaws with the specific closed-ended leading questions used in the Dennis Survey**

Premier's motion also detailed the reasons that the type of questions used in the Dennis Survey deviate from accepted principles of survey design. (Mot. at 9-15.) Plaintiff's response is to mischaracterize Premier's argument by suggesting that Premier contends that all "closed-ended

questions 'alone' are improperly leading." (Opp. at 9.) Premier has never made that argument. Instead, Premier has (correctly) stated that a closed-ended question *that gives the respondent the very answer the survey sponsor is hoping for* in underlined text set apart from the rest of the question and asks for a "yes/no/I don't know" response is improper. Lacking any rational response to Premier's actual argument, Plaintiff makes several irrelevant arguments.

First, Plaintiff fails to address the numerous references in Premier's motion to scientific authorities explaining why questions with presuppositions about a label's communicated message deviate from the standard accepted principles of survey design. (Mot. at 9-10.) Instead, Plaintiff relies on its own unsupported assertions to simply claim that the questions were not leading. For example, Plaintiff contends that adding the phrase "Based on the packaging labels" at the beginning of the questions focused the respondents' attention on the packaging in front of them. (Opp. at 11.) But Plaintiff ignores that these questions all came *after* several questions about glucosamine products generally, including the respondents' history with glucosamine products. (Dennis Rep., Attachment D, at 4-10.) Thus, the respondents were already improperly primed to think about glucosamine products in a certain way before they ever saw the phrase "Based on the packaging labels" in the survey.

Second, Plaintiff claims that the "cognitive interviewing" Dr. Dennis did would have revealed issues with the survey. However, suggestive or "leading question[s] are invisible and respondents rarely recognize them except in the most obvious of cases." (ECF No. 126-4 ("Steckel Rep.") ¶ 60.) Plaintiff fails to explain how the cognitive interviewing, which merely asked whether the participants themselves believed the survey questions were "leading or biased in any way" (Dennis Rep. at 9), would have identified an issue with the survey that is recognized as almost impossible to identify by an ordinary respondent.

Plaintiff also relies on Premier's internal market research studies to argue that the suggestive leading questions in the Dennis Survey are somehow not improper. However, this argument fails for several reasons. First, none of Premier's internal market research studies constitutes a consumer perception survey, nor do they test what messages—let alone implied messages—consumers take away from Joint Juice's advertising. The connection between

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

8

Premier's marketing research and the flawed Dennis Survey is too attenuated to make any reasonable connection or conclusion.

Plaintiff next claims that Premier mischaracterizes Question 1_1_2 because that follow-up question was only asked to certain respondents. (Opp. at 13.) Question 1_1_2 asks: "Based on your understanding of the packaging labels we showed you, please select the ways that you think the product will or will not help reduce joint pain/joint discomfort." (Dennis Rep., Attachment D at 19.) Plaintiff does not even try to explain how this question does not impermissibly suggest to the respondent how he/she should answer. Asking a question to only certain respondents does not render that question proper or admissible. Plaintiff has cited no authority to the contrary, and has failed to address Premier's substantive arguments.

Finally, Plaintiff offers no reasonable explanation why this Court should accept the same flawed survey design that several other courts in this district have deemed unreliable.[3] Plaintiff attempts to distinguish the Dennis Survey from his survey in *5-Hour Energy*. First, Plaintiff claims that the only words underlined in the Dennis Survey are in the negative responses. (Opp. at 12.) Yet that is demonstrably false. In questions 1_1 to 1_7, each question contains an entirely underlined positive response (e.g., The product will help reduce joint pain/joint discomfort, The product will help reduce joint stiffness, and The product will help prevent joint problems/issues) (Dennis Rep., Attachment D at 11-18.) Those are just a sample of the numerous suggestive questions containing underlined responses. Just like Dr. Dennis's survey in *5-Hour Energy*, the Dennis survey "cannot be used" because the questions are so leading that each "question answers itself." 2018 WL 11354864, at *8.

Plaintiff also contends that the survey here did not repeat the answers desired. (Opp. at 13.) Again, this is false. Question 1_1_2, discussed *supra*, asks respondents whether Joint Juice will "help reduce joint pain/joint discomfort." (Dennis Rep., Attachment D at 19.) Immediately

---

[3] *See In re 5-Hour Energy Marketing and Sales Practices Litig.*, 2018 WL 11354864, at *8 (C.D. Cal. Jan. 24, 2018); *Strumlauf v. Starbucks Corp.*, 2018 WL 306715, at *6 (N.D. Cal. Jan 5, 2018); *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523 (N.D. Cal. 2016), *on reconsideration in part*, 2017 WL 897338 (N.D. Cal. Mar 7, 2017).

after that, respondents see the answer "Reduce pain" followed by check boxes for "will help," "will not help," and "not sure." (*Id.*) This is a design flaw that courts have identified in Dr. Dennis's previous surveys, as it "elicits responses which are suggested by the question itself." *Strumlauf,* 2018 WL 306715, at *7.

Plaintiff also attempts to distinguish the Dennis Survey from *Strumlauf*, claiming that Judge Gonzalez-Rogers did not exclude Dr. Dennis's survey but "did not accord it much weight." (Opp. at 13.) But Plaintiff mischaracterizes Judge Gonzalez-Roger's holding. In *Strumlauf*, Judge Gonzalez-Rogers explicitly declined to rule on the request to exclude the survey, as she had already found that the survey was so fundamentally flawed that defendant was entitled to summary judgment. 2018 WL 306715, at *7 n.13. In considering the survey on summary judgment, she afforded it "little weight." *Id*. at *7. This makes sense, as the judge is the relevant fact finder at summary judgment. However, this Court has another consideration: whether Dr. Dennis's flawed survey can properly be presented to the jury. The Court can and should exclude the Dennis Survey not only if it fails to adhere to accepted principles, but also because its probative value is substantially outweighed by a danger of misleading the jury. Fed. R. Evid. 403. Here, the Dennis Survey will undoubtedly mislead the jury given its flawed, leading questions. Given the substantial likelihood that the jury could base its verdict on unreliable and flawed survey data, the Court should exclude the survey. *See Starter Corp*, 170 F.3d at 297 (finding that the "district court did not abuse its discretion [in excluding survey] because it found the probative value of the survey so slight that it was easily outweighed, under a Rule 403 analysis, by the danger of confusion of the issues"); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984) (finding survey "so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion").

**C.     The Dennis Survey Is Not Reliable Because It Failed to Use A Control Group**

As noted in Premier's motion, the scientific consensus is that if a study purports to attribute consumer perception to a particular stimulus—in this case the Joint Juice advertising—it is critical to isolate the impact of the causal element (i.e., exposure to the joint health claims made on the packaging). Every expert in this case (including Dr. Dennis) agrees that consumers bring a

1  variety of pre-existing beliefs to the marketplace. Yet Dr. Dennis admits that his survey does not
2  control for those pre-existing beliefs. Thus, his survey has no ability to attribute the purportedly
3  measured consumer perceptions to the Joint Juice advertising, as opposed to some other source.
4      Plaintiff's response is that the accepted principle of survey design that requires a control
5  group does not apply in a consumer false advertising case and that a control is not possible in this
6  case. (Opp. at 14.) Once again, Plaintiff is wrong and intentionally ignores accepted principles of
7  survey design.

### D. Consumer false advertising case surveys do require control groups

9      First, Plaintiff claims that Premier cited to out-of-context portions of the Reference Guide
10 on Survey Research in Reference Manual on Scientific Evidence (3d ed. 2011) (the "Reference
11 Guide on Survey Research"), arguing that it does not apply to consumer false advertising cases.
12 (Opp. at 14.) Not so. Indeed, the portions of the Reference Guide on Survey Research that
13 Plaintiff cites in opposition are clearly related to false advertising. (*See id*. (citing the Reference
14 Guide on Survey Research at 397 ("For example, how does a trademark *or the content of a*
15 *commercial* affect respondents' perceptions or understanding of a product or commercial?")
16 (emphasis added); ("The difficulty is that the consumer's response to any question on the survey
17 may be the result of information or misinformation from sources other than the trademark the
18 respondent is being shown *or the commercial he or she has just watched.*") (emphasis added).
19 The only argument Plaintiff presents to support that the Reference Guide on Survey Research
20 does not apply to consumer false advertising cases is Dr Dennis's own improper *ipse dixit*. (Opp.
21 at 15.) Dr. Dennis's *ipse dixit* is immaterial. The standards set forth in the Reference Guide
22 clearly apply to Dr. Dennis's survey—as he himself admits.
23     Additionally, Lanham Act cases often challenge implied messages on product labeling, as
24 Plaintiff does here. It makes no sense for Plaintiff to claim that the Reference Guide on Survey
25 Research, the preeminent authority on survey design, would apply in Lanham Act cases but not
26 apply in consumer class actions with claims based on the same theory of liability. Plaintiff's
27 argument is clearly an attempt to obfuscate the fact that it lacks any legitimate explanation for
28 why Dr. Dennis deviated from the accepted principle of including a control group in a consumer

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

11

perception survey.

The case law that Plaintiff cites is inapposite. *See FTC v. On Point Global LLC*, 2021 WL 4891334, at *6-7 (S.D. Fla. Sept. 22, 2021) (discussing a survey expert's qualifications and methodology in the context of her specific expertise in security and privacy, and how that qualified her to conduct a survey related to whether consumers were deceived into providing payment and personal information to third parties); *Korolshteyn v. Costco Wholesale Corp.*, 2017 WL 1020391 (S.D. Cal. Mar. 16, 2017) (applying California law at the class certification stage, containing no discussion of surveys or control groups within the opinion); *Rikos v. P&G*, 799 F.3d 497, 510–12 (6th Cir. 2015) (similarly not discussing the controls needed for a consumer perception survey).

Plaintiff once again attempts to obscure the fact that all of the relevant authority on survey design agrees that a control group is required in consumer perception surveys, particularly where, as here, the survey utilizes leading, closed-ended questions. *See*, *e.g.*, Reference Guide on Survey Research at 399 ("The ability to evaluate the effect of the wording of a particular question makes the control group design particularly useful in assessing responses to closed-ended questions, which may encourage guessing or particular responses.").

Finally, Plaintiff relies on this Court's previous rulings in related cases, claiming that the Court has already rejected Premier's argument. (Opp. at 16.) But this Court **has never considered** the requirement of a control group in a consumer perception survey in any prior rulings. Moreover, Plaintiff's cited cases analyzing California law are irrelevant. Plaintiff argues that "it does not matter why a reasonable consumer was influenced to purchase Joint Juice over a competitor's product or the origins of a consumer's belief about glucosamine/chondroitin supplements. Instead, what matters is whether Premier conveyed a joint health message that was false or misleading." (Opp. at 17.) Plaintiff's argument is false under New York law, which applies to this case. Under the New York claims Plaintiff asserts, Plaintiff must demonstrate that the class was injured *as a result of* the allegedly deceptive or misleading advertising. *See Plavin v Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020). Without a control group, the Dennis Survey did not and cannot control for the effect of respondents' pre-existing beliefs about the

joint health benefits of glucosamine, and thus does not follow the accepted principles of survey design.

### E. Dr. Dennis could have designed a control group for his survey

Plaintiff next argues that a control group would be useless and not feasible because "the entire label is being tested." (Opp. at 14.) This argument overlooks the fact that in a consumer perception survey like the Dennis Survey—where respondents have prior experience with the product and pre-existing beliefs about its benefits—accepted principles of survey design require a control group to isolate those beliefs that are related to the message being tested versus beliefs that are pre-existing and thus unrelated to the product advertising at issue.

Plaintiff claims that because the Joint Juice labels contain certain phrases and images, including "glucosamine + chondroitin," a control label would need to be blank. (Opp. at 17.) But Plaintiff does not challenge the words "Glucosamine" or "Chondroitin" on Joint Juice's label. Rather, Plaintiff challenges the advertised "promised joint health benefits," such as "Drink Daily for Healthy, Flexible Joints," and "HELPS KEEP CARTILAGE LUBRICATED AND FLEXIBLE." *See* ECF No.135 at ¶ 36.

A control group is even more necessary in this case because of how the Dennis Survey primed respondents to answer a specific way prior to the substantive questions. As Premier discussed extensively in its motion, the Dennis Survey had several pages of preliminary questions which included information about glucosamine and chondroitin products. After priming the respondents to think about glucosamine, Dr. Dennis could and should have designed a control to legitimize his survey results. He did not do so. This failure alone goes against every authority on survey design principles, and renders the entire Dennis Survey inadmissible.

### F. Dr. Dennis's Admitted Manipulation of the Data Is Grounds Alone to Exclude His Survey

In its motion, Premier identified the ways in which Dr. Dennis categorically excluded hundreds of responses from younger respondents so he could give outsized weight to older respondents and manipulate the survey results. (Mot. at 19-21.) Plaintiff's only response is that it does not matter that Dr. Dennis intentionally skewed the results in Plaintiff's favor because a

handful of internal Premier documents show that one of its target buyers is between the ages of 35-64. (Opp. at 18-19.) This argument fails for several reasons. First, it ignores that the certified class in this case is: all Joint Juice purchasers in New York from 2013 to 2021. As Premier noted in its motion, this would obviously include consumers under the age of 35. Yet the Dennis Survey intentionally excluded that population. Plaintiff's only argument to explain this blatant and improper manipulation is to shift the attention to Mr. Poret's survey, claiming that he "skew[ed] the results" because 40% of Mr. Poret's survey population was between the ages of 18-34. (Opp. at 19.) But yet again, Plaintiff misses the mark; the issue here is *whether the Dennis Survey reliably measures the perception of consumers within the class*. Mr. Poret's causation survey is irrelevant to the design flaws of Dr. Dennis's survey.[4]

Neither Dr. Dennis nor Plaintiff can justify why Dr. Dennis relies on Premier's internal documents to exclude respondents younger than his perceived "target" audience, but then completely disregards the internal documents when he includes respondents older than the perceived "target" audience. Dr. Dennis's manipulation of the survey respondents in order to give outsized weight to older respondents is obvious from the survey results, which show that 36% of respondents were over 70 years old:

**D_AGE: What is your age?**

| | | Frequency | Percent | Valid Percent | Cumulative Percent |
|---|---|---|---|---|---|
| Valid | 35-54 | 224 | 22.3 | 22.3 | 22.3 |
| | 55-69 | 413 | 41.1 | 41.1 | 63.3 |
| | 70 AND OVER | 369 | 36.7 | 36.7 | 100.0 |
| | Total | 1006 | 100.0 | 100.0 | |

(Dennis Rep., Attachment F.) (emphasis added)

There is no evidence that this sample is anywhere close to consistent with Joint Juice purchasers in New York. Therefore, the Dennis Survey and its manipulated responses are

---

[4] The fact that the Poret Survey population contained a wide age-range of respondents does not indicate that its results are skewed. Mr. Poret's causation survey analyzes the reasons why consumers, regardless of age, purchase Joint Juice. This is substantially different from Dr. Dennis's survey, which samples a specific older population of respondents to analyze their perception of the Joint Juice labels.

unreliable and have no probative value. And because it deviates so significantly from accepted principles of survey design, it would also be highly prejudicial to put it before a jury who could improperly base its verdict on unreliable and flawed survey data. The Dennis Survey should therefore be excluded pursuant to Rule 702 and 403.

## CONCLUSION

Premier has identified several fundamental areas where the Dennis Survey violates all accepted principles of survey design. The Dennis Survey (1) used improper closed-ended and leading question that presented respondents with the exact answers that Plaintiff and Dr. Dennis wanted from respondents; (2) failed to include a control group to rule out the effect of respondents' pre-existing beliefs about the benefits of glucosamine, despite Dr. Dennis having the ability to create one; and (3) intentionally manipulated sample data by excluding younger respondents to skew the results in Plaintiff's favor. Each of these methodological flaws alone is grounds to exclude the Dennis Survey, and the cumulative effect of these flaws renders it even more unreliable. The risk of misleading the jury is also high, as is the very real possibility that it could base its verdict on unreliable and flawed survey data. Accordingly, the Court should grant Premier's motion and exclude the Dennis Survey under both Rules 702 and 403.

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702
Case No. 3:16-cv-06980-RS

15

| | | |
|---|---|---|
| 1 | Dated: April 7, 2022 | MORRISON & FOERSTER LLP |
| 2 | | |
| 3 | | By: _____ |
| 4 | | JESSICA L. GRANT |
| 5 | | 425 Market Street<br>San Francisco, CA 94105<br>Telephone: 415.268.7000 |
| 6 | | |
| 7 | | VENABLE LLP |
| 8 | | Angel A. Garganta<br>101 California Street, Suite 3800<br>San Francisco, CA 94111 |
| 9 | | Telephone: 415.653.3750 |
| 10 | | Attorneys for Defendant<br>PREMIER NUTRITION COMPANY, LLC |

REPLY IN SUPPORT OF PREMIER NUTRITION'S MOTION TO EXCLUDE INADMISSIBLE
EXPERT OPINIONS OF MICHAEL DENNIS, PH.D PURSUANT TO RULE 702           16
Case No. 3:16-cv-06980-RS