UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY BETH MONTERA,

Plaintiff,

v.

PREMIER NUTRITION CORPORATION,

Defendant.

Case No. 16-cv-06980-RS

**ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY AND MOTION TO DECERTIFY CLASS**

## I. Introduction

In this false advertising class action averring violations of New York's General Business Law ("GBL") §§ 349 and 350, Lead Plaintiff Mary Beth Montera and Defendant Premier Nutrition Corporation ("Premier") each bring motions to exclude the testimony of various expert witnesses. For all the foregoing reasons, Defendant's motion to exclude certain opinions of Dr. Farshid Guilak is granted, and Defendant's motion to exclude some of the opinions of Dr. Derek Rucker is granted in part and denied in part. Defendant's other motions to exclude testimony are denied. Plaintiff's motions to exclude the expert testimony of Dr. Kevin Stone and Lance Palumbo are granted. The motions to exclude the testimony of Dr. Stuart Silverman and Dr. Daniel Grande are granted in part and denied in part. The motions to exclude testimony of Dr. Joel Steckel, Dr. William Choi, and Hal Poret are denied.[1]

---

[1] Plaintiff also brought two administrative motions to file materials under seal pursuant to Civil Local Rule 79-5(e). *See* Dkt. Nos. 118, 146. Plaintiff explains that the sealed material contains

Defendant also brings a motion to decertify the class, arguing Plaintiff does not have common proof to establish Article III standing, causation under the relevant New York laws, or damages, and thus the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is not satisfied. Plaintiff has, however, adduced common proof one these topics and individual questions will not predominate over common issues. The motion to decertify the class is therefore denied.[2]

## II. Procedural Background[3]

This case is one of numerous certified class actions pending before this Court alleging false advertising and other claims in Defendant Premier Nutrition's promotion of Joint Juice, a line of joint health dietary supplements. Each class action concerns a set of plaintiffs in a different state; this action concerns consumers in New York. In November 2021, the Court set this case for trial on May 23, 2022, the first of these related cases to proceed to trial. Defendant brings four motions to exclude expert testimony; Plaintiff brings seven motions. Defendant also brings a motion to decertify the class, relying on the expert reports it proffers and noting perceived absences in the evidence proffered by Plaintiff.

## III. Legal Background and Standards

### A. New York's General Business Law §§ 349 and 350

New York General Business Law § 349(a) declares unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" GBL § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade

---

information Defendant had designated as confidential. Defendant does not oppose denying the administrative motions to file under seal, *see* Dkt. Nos. 131, 148, and therefore the motions are denied. Plaintiff is directed to file unredacted versions of all the redacted materials on the public docket within five days of this order.

[2] As the Court noted during the hearing on the motions to exclude testimony of expert witnesses, this matter is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b) and the hearing scheduled for May 5, 2022 is vacated.

[3] The Court provides only a brief background, as other orders in this case and the related cases detail the factual and procedural background of these class actions.

United States District Court
Northern District of California

or commerce or in the furnishing of any service in this state[.]" "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002). "To successfully assert a claim under General Business Law § 349 (h) or § 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice[.]" *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (internal quotation marks and citation omitted). Although "[i]ntent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim[,]" to recover compensatory damages the plaintiff must show "that a material deceptive act or practice caused actual, although not necessarily pecuniary, harm[.]" *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999) (internal quotation marks, citation, and emphasis omitted).

### B. Legal Standard for Motions to Exclude Expert Witnesses

To testify at trial as an expert, Rule 702 of the Federal Rules of Evidence requires that the witness be qualified by "knowledge, skill, experience, training, or education." Fed R. Evid. 702. Even if a witness is qualified as an expert in a particular field, any scientific, technical, or specialized testimony is admissible only if it (a) "will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "is based upon sufficient facts or data," (c) "is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

Rule 702 does not permit irrelevant or unreliable testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Expert opinions are relevant if the knowledge underlying them has a "valid connection to the pertinent inquiry." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (internal quotation marks and alteration omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 590. Expert opinion testimony is reliable if such knowledge has a "basis in the knowledge and experience of [the relevant] discipline." *Id.* at 592. Courts should consider the following

United States District Court
Northern District of California

factors when evaluating whether an expert's proposed testimony is reliable: (1) "whether a theory or technique . . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication[,]" (3) the known or potential error rate of the particular scientific theory or technique, and (4) the degree to which the scientific technique or theory is accepted in a relevant scientific community. *Id.* at 593-94. This list is not exhaustive, however, and the standard is flexible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). The *Daubert* inquiry "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141.

The task is not to "decid[e] whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013). Courts may not exclude testimony because it is impeachable. *Id.* at 969. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The focus of the inquiry is thus on the principles and methodology employed, not the conclusions reached by the expert. *See id.* at 595. Ultimately, the purpose of the assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho*, 526 U.S. at 157 (internal quotation marks and citation omitted).

### C. Legal Standard for Motion to Decertify Class

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The standard used to review a motion to decertify is the same standard used when reviewing a motion for class certification. *Ries v. Arizona Bev. USA LLC*, No. 10-01139, 2013 WL 1287416, at *3 (N.D. Cal. March 28, 2013); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). Still, a motion for decertification will generally only succeed where there has been some change in

United States District Court
Northern District of California

the law or facts that justifies reversing the initial certification decision. *In re Myford Touch Consumer Litig.*, No. 13-cv-03072, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018).

A plaintiff seeking class certification must satisfy all four requirements set forth in Rule 23(a) and must also satisfy the requirements of Rule 23(b)(1), 23(b)(2), or 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). A plaintiff seeking to satisfy Rule 23(b)(3) must specifically establish (1) common questions predominate over questions affecting only individual class members, and (2) class action is superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### IV. Premier's Motions to Exclude Expert Witness Testimony

#### A. Farshid Guilak, Ph.D.

Plaintiff offers the opinions of Farshad Guilak, Ph.D., an osteoarthritis researcher. Premier moves to exclude Dr. Guilak's opinions concerning studies he performed on pig cartilage, in which he refined off-the-shelf pills from other glucosamine and chondroitin supplements into a liquid form, and injected the ingredients into the pig cartilage to study the supplements' effects.[4] Premier argues that these opinions should be excluded because (1) his methods were developed solely for litigation and have never been peer-reviewed or published; (2) he did not apply his methodology reliably to this case, because he used pills from other glucosamine supplement brands which did not contain the same formulation of ingredients as Joint Juice; and (3) his opinions are irrelevant because he did not test the formulation of ingredients present in Joint Juice.

Defendants first argue that Dr. Guilak's opinions should be excluded because his methods were developed solely for litigation, have not been published or subject to peer review, and are not generally accepted in the scientific community. As a threshold matter, that Dr. Guilak developed this specific methodology for litigation cannot alone make it unreliable. *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2017 U.S. Dist. LEXIS 231091, at *60 (N.D. Cal. July 24, 2017)

---

[4] Plaintiff notes that Premier has not challenged Dr. Guilak's opinions about the physiology of joints or the opinions in his Rebuttal Report, and thus these opinions are not excluded.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  ("An opinion that relies on established and accepted scientific methods is not made unreliable

2  simply because it was prepared for the purposes of litigation — all expert reports are prepared for

3  litigation."). Dr. Guilak's report provides support for Plaintiff's assertion that his in vitro culture

4  experiments are a well-accepted scientific method. Plaintiff does not have support, however, for

5  Dr. Guilak's process of taking off-the-shelf pills and turning them into liquid formulations. Dr.

6  Guilak describes that he is following a process, and his process involves much more than simply

7  grinding up pills, contrary to what Defendant suggests. But Plaintiff fails to identify any specific

8  study in which Dr. Guilak's method or a similar procedure has been used to dissolve off-the-shelf

9  pills.

10  When an expert's "testimony is not based on 'pre-litigation' research or if the expert's

11  research has not been subjected to peer review, then the expert must explain precisely how he

12  went about reaching his conclusions and point to some objective source, a learned treatise, the

13  policy statement of a professional association, a published article in a reputable scientific journal

14  or the like, to show that he has followed the scientific method, as it is practiced by (at least) a

15  recognized minority of scientists in his field." *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d

16  1104, 1107 (S.D. Cal. 2012) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311,

17  1318-19 (9th Cir. 1995) ("*Daubert II*")). The proponent of the testimony bears the burden of

18  establishing its admissibility. *Id.* It is certainly possible that Dr. Guilak's process for dissolving

19  off-the-shelf pills for use on cartilage explants is reliable and accepted in the scientific community.

20  Plaintiff, however, fails to meet her burden of providing evidence to demonstrate such reliability

21  and acceptance. Defendant's motion to exclude the opinions of Dr. Guilak concerning his studies

22  of other glucosamine and chondroitin supplements on pig cartilage is therefore granted.

23  **B.  J. Michael Dennis, Ph.D.**

24  Premier argues that Dr. Michael Dennis's survey deviates from accepted principles of

25  survey design because it "relies on improper closed-ended and leading questions, lacks a control,

26  and manipulates the sample to an incorrect universe of respondents." Motion to Exclude Michael

27  Dennis, at pg. 1. Plaintiff argues that any concerns regarding the survey go to weight, not

28

United States District Court
Northern District of California

admissibility. Defendant points to numerous cases in which courts have excluded surveys conducted by Dr. Dennis due to unreliable methodology, and Plaintiffs in response point to a considerable number of courts which have admitted his surveys using similar methodologies to the one proffered in this case.[5]

The general rule is that "as long as [the survey} is conducted according to accepted principles and is relevant," the "technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (internal quotation marks, citation, and alterations omitted). Effective cross-examination will expose the weaknesses of a survey and conclusions drawn from those results. Courts, however, still review surveys to determine whether they are conducted according to accepted principles. "Substantial deficiencies in the design or execution of a survey of individuals is grounds for its complete exclusion." *In re Autozone*, No. 10-md-02159-CRB, 2016 WL 4208200, at *16 (N.D. Cal. Aug 10, 2016) (internal quotation marks and citation omitted). A court can exclude a survey suffering from substantial methodological flaws under either Rule 403, which concerns relevance, or Rule 702. *Dongguk Univ. v. Yale Univ.*, No. 3:08CV441 TLM, 2012 WL 1977978, at *3 (D. Conn. June 1, 2012).

First, the survey's reliance on closed-ended questions does not merit exclusion. Plaintiff and Defendant set forth various guidelines in support of or against the use of closed-ended questions. *See, e.g.,* Federal Judicial Center, *Reference Manual on Scientific Evidence*, p. 394 (3d

---

[5] The cases in which Dr. Dennis's testimony has been excluded or a court has declined to consider the testimony include *In re 5-Hour Energy Marketing and Sales Practices Litig.*, 2018 WL 11354864, at *8 (C.D. Cal. January 24, 2018), and *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 561 (N.D. Cal. 2016*), on reconsideration in part*, 2017 WL 897338 (N.D. Cal. Mar 7, 2017). The cases in which Dennis's testimony has been admitted include *Pettit v. P&G*, No. 15-cv-02150-RS, 2017 U.S. Dist. LEXIS 122668, at *10 (N.D. Cal. Aug. 3, 2017); *Sharpe v. A&W Concentrate Co.*, No. 19- cv-768, 2021 U.S. Dist. LEXIS 160177, at *22-23 (E.D.N.Y. July 23, 2021); *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS); 2021 U.S. Dist. LEXIS 185896, at *48-51 (S.D. Cal. Sept. 28, 2021); *In re Scotts EZ Seed*, No. 12 CV 4727 (VB), 2017 U.S. Dist. LEXIS 125621, at *21-22 (S.D.N.Y. Aug. 8, 2017).

ed. 2011) ("Open-ended questions are more appropriate when the survey is attempting to gauge what comes first to a respondent's mind, but closed-ended questions are more suitable for assessing choices between well-identified options or obtaining ratings on a clear set of alternatives."); Federal Judicial Center, *Manual for Complex Litigation*, p. 103 (4th ed. 2004), ("Manual for Complex Litigation") ("[I]n assessing the validity of a survey, the judge should take into account . . . whether the questions asked were clear and not leading[.]"). Unlike in cases in which a survey created by Dr. Dennis has been excluded, the questions here do not appear to "ultimately test[] reading comprehension and common sense rather than the likelihood of consumer [beliefs]." *Strumlauf v. Starbucks Corp.*, No. 16-CV-01306-YGR, 2018 WL 306715, at *7 (N.D. Cal. Jan. 5, 2018). Although the questions are closed-ended, they are written in clear language and give the reader the opportunity to respond affirmatively or negatively. Defendant may cross-examine Dr. Dennis about his choice to use closed-ended questions, but the survey will not be excluded on that basis.

Second, Dr. Dennis's survey and opinions should not be excluded because of the failure to include a control group. It is unclear how a control group could be structured for this survey, which showed respondents the entire Joint Juice label, including the product name, ingredients, and images. Defendant argues the survey should have controlled for preexisting beliefs. But as Plaintiff rebuts, "[i]f advertising reinforces an incorrect belief, it is still false advertising." Opposition to Motion to Exclude Michael Dennis, at pg. 17; *see also Alvarez v. NBTY, Inc.*, 331 F.R.D. 416, 424 n.2 (S.D. Cal. 2019) ("No matter what prompted a consumer to go to the store to buy the Product, that consumer was still subjected to the same advertising on the label.").

Third, Dr. Dennis's choice to exclude respondents below the age of 35 does not render his survey unreliable based on a manipulated sample. Deposition testimony of Premier employees and Premier's internal documents repeatedly show that the typical joint juice consumer—and the type of consumer targeted by Premier—was in their forties, fifties, and sixties. Dr. Dennis's choice of respondents was not a random or entirely illogical choice, and in any event his choice of sample size is a proper grounds for cross-examination, rather than rendering the survey inadmissible. *See*

*Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-618-BAS (JLB), 2018 U.S. Dist. LEXIS 62360, at *9 (S.D. Cal. Apr. 12, 2018) ("The selection of an inappropriate universe generally affects the weight of the resulting survey data, not its admissibility."). In short, the motion to exclude Dr. Dennis's survey is denied. Any concerns about the methodology of the survey go to weight, not admissibility, and Premier may explore these issues on cross-examination.

### C. Derek Rucker, Ph.D.

Derek Rucker, Ph.D., is a professor of marketing who Plaintiff has retained to opine about the marketing and advertising of Joint Juice, and how the "message" from Joint Juice advertising influences consumers. Rucker's testimony both synthesizes Defendant's internal documents about marketing strategies, and opines how consumers interpreted Defendant's marketing. Premier argues that Dr. Rucker's analysis is not based on any methodology or recognized scientific principle. Premier also argues that Dr. Rucker's opinion is cumulative of Dr. Dennis's, and that Dr. Rucker merely parrots back the conclusions of the Dennis survey.

Dr. Rucker's testimony concerning general marketing principles, the marketing strategies at play for Joint Juice, and Defendant's intended message and target audience are admissible. Contrary to Defendant's position, Plaintiff has demonstrated that Defendant applied reliable methods to his analysis of Defendant's internal documents and how Defendant chose target audiences for its marketing. Further, as the cases cited by both Defendant and Plaintiff show, courts regularly admit marketing testimony that explains what a company intended to convey through their marketing.[6] *See Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945 (JBW), 2005 WL 2401647, at *5 (E.D.N.Y. Sept. 29, 2005) (allowing expert testimony as to how defendant's advertising activities "were designed to influence the beliefs and activities of consumers" because

---

[6] Although Defendant argues that this portion of Dr. Rucker's testimony is inadmissible, when discussing why Dr. Rucker's opinions on consumer perceptions are inadmissible, Defendant concedes that courts may allow expert testimony on a company's marketing method. *See* Reply in Support of Motion to Exclude Derek Rucker, at pg. 4 ("[W]hile a marketing expert may opine as to a defendant's marketing scheme in general, or intended marketing message, he may not opine as to consumers' perceptions as Dr. Rucker has done here.").

United States District Court
Northern District of California

"[a]dvertising methodologies are esoteric [and] the average juror could be helped by an explanation of how they work and were used by defendants"); *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2021 WL 3578011, at *3 (S.D. Fla. Aug. 13, 2021) (allowing expert testimony concerning defendant's "marketing strategy, tactics, and execution"). Further, Rucker's proposed testimony "offers [] more than a factual narrative of [Premier's] documents." *Johns v. Bayer Corp.*, No. 09CV1935 AJB DHB, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013)

In contrast, Dr. Rucker's testimony concerning how consumers interpreted the intended message is not admissible. Dr. Rucker provides little support for his opinion on how consumers actually interpreted the messages beyond the results of the Dennis Survey, results Plaintiff may introduce via Dr. Dennis himself. Other courts have distinguished between a marketing expert's testimony on a company's marketing strategies and testimony on how those messages were actually received. *See Schwab*, 2005 WL 2401647, at *4 (explaining that an expert's proposed testimony was "not about smokers' reactions to 'light' cigarette advertising, but about the design and intent of the industry in dealing with the use of 'light' and 'low tar' issues in its contacts with consumers"). Defendant's motion is therefore granted as to his opinion about how the intended marketing message was interpreted by consumers, and denied as to all other opinions.

**D. Colin Weir**

Weir is an economist Plaintiffs retained to provide calculations on statutory damages. Premier argues that Weir's calculation of statutory damages relies on incorrect assumptions concerning the relevant New York statutes, GBL §§ 349(h) and 350-e. Section 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action … to recover his actual damages or fifty dollars, whichever is greater[.]" N.Y. Gen. Bus. L. § 349(h). Section 350-e(3) similarly states "[a]ny person who has been injured by reason of any violation of section [350] . . . may bring an action . . . to recover his or her actual damages or five hundred dollars, whichever is greater[.]" *Id.* at § 350-e(3). Premier argues that New York consumer protection statutes dictate that statutory damages are awarded on a per person basis, rather than a per transaction or unit basis, and that Weir's testimony presumes the availability of

United States District Court
Northern District of California

per unit statutory damages. Plaintiff argues New York law allows statutory damages on a per unit basis.

None of the cases cited by either Plaintiff or Defendant is particularly helpful, and courts across the country have reached different answers as to the legal question of whether GBL §§ 349(h) and 350-e allow damages on a per person or per unit basis. The two Northern District of California cases cited by Premier, *Sharpe v. Puritan's Pride*, Inc., No. 3:16-cv-06717-JD, 2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017) and *Farar v. Bayer AG*, No. 14-CV-04601-WHO (N.D. Cal. Oct. 26, 2018), are of only limited persuasive value, because neither discussed the reasoning underlying their conclusion that only per person statutory damages are available. In *Puritan's Pride*, the court simply stated that GBL 349(h) "provides for the greater of actual damages or $50 in statutory damages per person." *Puritan's Pride*, 2017 WL 475662, at *2. In *Farar v. Bayer*, the court reached the conclusion that statutory damages are awarded on a per person basis in a minute order with no citations to any authority.[7]

The cases Defendant cites from within the Second Circuit are similarly of limited value. In *Sykes v. Mel S. Harris & Associates*, 780 F.3d 70 (2d Cir. 2015), the Second Circuit stated that when reviewing a district court's class certification analysis that "statutory damages under GBL § 349 can be assessed on the basis of common proof, as they are capped at $50." *Id.* at 87. The Second Circuit did not provide an explanation for its reasoning, nor did it specify that damages were capped on a per person basis, rather than a per purchase basis.[8] Similarly, the courts in

---

[7] The full analysis by the district court in *Farar* is as follows: "Considering the language of the relevant statutes (New York General Business Law Sections 349(h) & 350-e), the Court holds that statutory damages are available only on a per person, not a per transaction, basis. The conclusion is supported by the plain text of the statutes, including the New York Legislature's use of broader 'for each violation' language with respect to the Attorney General's ability to seek statutory damages, as well as the legislative history." *Farar v. Bayer AG*, No. 14-CV-04601-WHO (N.D. Cal. Oct. 26, 2018).

[8] District courts within the Second Circuit following *Sykes* have stated that damages are allowed on a per purchase basis—similarly with little analysis—indicating that courts have not treated *Sykes* as establishing that statutory damages under sections 349 and 350 are available on only a per person basis. *See Chery v. Conduent Educ. Servs., LLC*, No. 1:18-CV-75, 2022 WL 179876, at *10 (N.D.N.Y. Jan. 20, 2022); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 526 (E.D.N.Y.

1    *Allegra v. Luxottica Retail North America*, No. 17-CV-5216 (PKC) (RLM), 2022 WL 42867, at *8

2    (E.D.N.Y. Jan. 5, 2022), and *Madden v. Midland Funding*, 237 F.Supp.3d 130, 161 (S.D.N.Y.

3    2017), stated without analysis that statutory damages were capped on a per person basis.

4         A case Plaintiff cites, *Chery v. Conduent Educ. Servs., LLC*, No. 1:18-CV-75, 2022 WL

5    179876 (N.D.N.Y. Jan. 20, 2022), provided more analysis but is also distinguishable from this

6    case. In *Chery*, which concerned a loan servicer's failure to process a certificate in a timely

7    manner resulting in additional months of loan payments for consumers, the district court

8    concluded that "a Section 349 violation in this case occurred every payment period for every loan

9    packet delayed[,]" and awarded statutory damages for each violation. 2022 WL 179876, at *10

10   (internal quotation marks omitted). Although *Chery* is not a consumer goods case and thus is not

11   directly analogous, the court reasoned that one person could experience a section 349 violation

12   multiple times, and thus be entitled to statutory damages for each of those violations.

13        Other cases cited by Plaintiff state that damages are available on a per purchase basis, but

14   do not provide an analysis for their conclusions. *See, e.g., Kurtz v. Kimberly-Clark Corp.*, 321

15   F.R.D. 482, 526 (E.D.N.Y. 2017) ("The statutory damages for many multiple purchasers is

16   potentially enormous: it is $50 or $500 per purchase plus attorneys' fees."); *Koch v. Greenberg*,

17   14 F.Supp.3d 247, 262 (S.D.N.Y. 2014) (letting stand a jury verdict returning statutory damages

18   on a per bottle basis, in a case involving the sale of 24 counterfeit bottles of wine); *In re Amla*

19   *Litig.*, 328 F.R.D. 127, 136 (S.D.N.Y. 2018) (noting that "the damages methodology proposed by

20   plaintiffs - multiplying the number of New York purchases of the product by $50 - is quite

21   reliable, since NYGBL § 349 provides for statutory damages"); *Famular v. Whirlpool Corp.*, No.

22   16 CV 944 (VB), 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019) ("The statutory damage

23   calculation is the number of units sold in New York (15,380) multiplied by the $50 statutory

24   minimum for GBL Section 349 violations and $500 statutory minimum for GBL Section 350

25   violations, which equals $769,000 and $7,690,000, respectively").

26   _____

27   2017); *In re Amla Litig.*, 328 F.R.D. 127, 136 (S.D.N.Y. 2018).

28                                        ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY AND MOTION TO DECERTIFY CLASS
                                          CASE NO. 16-cv-06980-RS

United States District Court
Northern District of California

Plaintiffs also cite to a Second Circuit case discussing GBL sections 349 and 350 in another context, *Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015). In *Orlander*, the court explained that to state a false advertising claim in a consumable goods case, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Id.* at 302. Plaintiff construes this language in *Orlander* to mean "[t]he injury to the consumer occurs at the time of purchase." Opposition to Motion to Exclude Colin Weir, at p. 3. Plaintiff's interpretation of the language in *Orlander* requires a bit of a jump in logic, but it nonetheless makes sense in the context of the statute. After all, when a consumer makes a purchase of Joint Juice or another consumable good, the consumer is presented with the label, and then makes the purchase. The conveyance of false messages on the label happens at the time of purchase.

Defendant's strongest support comes from legislative history it points to, and the provisions of GBL § 350 which concern the New York attorney general's authorization to bring a lawsuit under the section. Defendant points out that GBL § 350-d allows "the New York attorney general to bring an action of "not more than five thousand dollars for each violation[,]" and that neither of the private rights of action codified at GBL §§ 349(h) and 350-e use the "for each violation" language. Defendant also cites a floor debate in the New York Assembly in which a legislator indicated that a person could only recover $50 in statutory damages for a violation of section 349(h). But the language in the floor debate does not specify whether the cap exists for a single violation or multiple violations of the statute, and thus suffers from the same lack of clarity as much of the cited caselaw.

Plaintiff counters that the plaint text of the statute supports her position. "The text of a statute is the clearest indicator of [] legislative intent and courts should construe unambiguous language to give effect to its plain meaning[.]" *Avella v. City of New York*, 29 N.Y.3d 425, 434 (2017) (internal quotation marks and citation omitted). Plaintiff notes that sections 349(h) and 350-e(3) both utilize the phrase "any violation" when discussing when a person may recover statutory damages. Further, Plaintiff points out that Premier concedes that actual damages would

United States District Court
Northern District of California

be allowed for each unit of Joint Juice a consumer purchased—meaning that a consumer is not harmed just the first time a product is purchased, but rather every time.

The answer to the question of whether statutory damages are allowed on a per person or per unit basis does not have a clear answer, as shown by the divergence of views amongst highly regarded district courts across the country. When considering all of the authorities laid out by Plaintiff and Defendant, the Plaintiff's position is more compelling. A violation of sections 349 and 350 occurs when a consumer views the label and purchases the product. This means a plaintiff may experience multiple violations of the statutes. Indeed, Premier marketed its product to encourage consumers to drink the product regularly and to make multiple purchases. Consumers were repeatedly exposed to the label, and repeatedly made the choice to buy the product. A reading of sections 349 and 350 that recognizes a plaintiff experiences a violation each time the product is purchased is consistent with the text and intent of the statute. Thus, GBL §§ 349(h) and 350-e allow statutory damages on a per unit basis. The motion to exclude the portion of Weir's testimony concerning per unit damages calculations is therefore denied.

### V. Plaintiff's Motions to Exclude Expert Witness Testimony

### E.  Stuart L. Silverman, M.D.

Dr. Stuart Silverman is a rheumatologist Premier offers to provide testimony on health benefits of Joint Juice. Plaintiff seeks to exclude his testimony, raising a variety of objections to his report. First, Plaintiff critiques the studies Dr. Silverman cites in support of his opinions, such as his purported failure to account for contrary evidence, along with his reliance on biomarker, animal, and small sample size studies. Second, Plaintiff argues his personal observations are irrelevant, unreliable, and prejudicial, since Dr. Silverman does not have recorded data of his patients' experiences with glucosamine supplements. Third, Plaintiff argues Dr. Silverman's opinions on bioavailability and microbiota lack a connection to the science in this case. Fourth, Plaintiff argues that Dr. Silverman is not qualified to opine about governmental regulations and the approval for use of glucosamine by a regulator abroad. Fifth, Plaintiff argues Dr. Silverman cannot opine about the safety of standard treatments for glucosamine and the need for alternative

United States District Court
Northern District of California

treatments.

Dr. Silverman's failure to address certain studies goes to the weight, not admissibility, of his testimony. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (explaining that "lack of textual authority for [an expert's] opinion[] go[es] to the weight, not the admissibility, of his testimony"). Similarly, Dr. Silverman's opinion that there is scientific support for health benefits of glucosamine and chondroitin is admissible, and Plaintiff's counsel may cross-examine him on the weaknesses of the studies he cites in support of his opinion, whether that concerns how much one can learn from biomarker studies, the use of animal studies, or the small sample sizes used in many of the cited studies.

The result is different for Dr. Silverman's opinions on microbiome and bioavailability studies. Just because Dr. Silverman is qualified to testify about osteoporosis, bone health, and related issues does not mean he is qualified to testify on all other medical topics. *See Rogers v. Raymark Indus.*, Inc., 922 F.2d 1426, 1431 (9th Cir. 1991) ("A person qualified to give an opinion on one subject is not necessarily qualified to opine on others."). At best, Dr. Silverman has stated in his deposition that he is "aware" of the microbiome and that rheumatologists like himself should take information about the microbiome into account in their rheumatology practices. Awareness of and appreciation for an area of knowledge, however, is insufficient to render someone an expert. Similarly, Defendant offers no basis to conclude that Dr. Silverman has any expertise in bioavailability, which concerns the absorption and distribution of a substance throughout the body. Defendant has failed to demonstrate how Dr. Silverman is qualified to testify about the gut microbiome and bioavailability, and thus his opinions on those topics are excluded.

Next, Dr. Silverman's opinions concerning regulatory approvals abroad are excluded. In his report, Dr. Silverman provided no support for his assertion that glucosamine has received regulatory approval in Taiwan, and Premier has agreed not to raise this purported approval at trial. *See* Opposition to Motion to Exclude Stuart Silverman, at pg. 21 n.14. The only remaining regulatory approval listed in Dr. Silverman's opinion concerns a 2006 document from the European Medicines Agency ("EMEA") that recommended approval of glucosamine in the EU.

United States District Court
Northern District of California

Dr. Silverman, however, does not provide any information about the EMEA's regulatory authority, the weight a recommendation from the EMEA carries, or any other context to understand the "recommendation" found in this document. Dr. Silverman's opinions about regulatory approval abroad are therefore unreliable and are excluded.

Further, Dr. Silverman's opinions on the effectiveness of glucosamine from his clinical observations are also excluded. Although an expert may testify based on their "personal knowledge or experience[,]" *Kumho Tire*, 526 U.S. at 150, courts have excluded doctors' observations about rates of patient outcomes "where the expert was unable to provide verifiable data from the expert's practice." *Rose v. Bos. Sci. Corp.*, No. 2:20-CV-00716-BJR, 2020 WL 4195470, at *1 (W.D. Wash. July 21, 2020). Here, Dr. Silverman has conducted no tracking of his patients' use of glucosamine supplements, their outcomes, or the outcomes of his colleagues' patients. These personal observations thus lack support, and are excluded.

Finally, Dr. Silverman's opinions about the safety of standard osteoarthritis treatments are excluded. Dr. Silverman opines that the adverse effects of some standard treatments, such as NSAIDs or opioids, creates a need for alternative treatments for osteoarthritis. This opinion is irrelevant to the crux of this case: whether the advertising of Joint Juice is false or misleading. Glucosamine is only a viable alternative to other osteoarthritis treatments if it has positive effects for osteoarthritis patients. That second question—and not Dr. Silverman's opinions about other osteoarthritis treatments—is the relevant question for trial.

In summary, the motion to exclude Dr. Silverman's testimony is granted as to his opinions on microbiome and bioavailability studies, the effectiveness of glucosamine from his clinical observations, and the importance of developing alternative osteoarthritis treatments. The motion is denied as to the other challenges to his testimony.

## F. Daniel A. Grande, Ph.D.

Dr. Grande is a specialist in cartilage repair and regeneration, offered by Premier to opine on scientific studies about the effects of glucosamine. Plaintiff seeks to exclude his opinions for reasons similar to the reasons for which she sought to exclude Dr. Silverman: that he relies too

heavily on biomarker studies, he ignores clinical trial studies in favor of discussing the

microbiome and prebiotics, and he relies on studies such as animal and in vitro studies that are

unreliable.[9]

Just as with Dr. Silverman, Plaintiff's concerns about the studies he relies on largely go to

weight, not admissibility. Plaintiff may cross-examine Dr. Grande about the perceived weaknesses

of biomarker, animal, and in vitro studies, and his failure to address other studies she finds more

reliable, but Dr. Grande's opinions on those studies are not excluded. As for Dr. Grande's

opinions on the microbiome and bioavailability, Dr. Grande cannot offer opinions on either

subjects. Premier concedes that Dr. Grande is not an expert on the gut microbiome, and has agreed

not to offer any opinions on studies of the microbiome. *See* Opposition to Motion to Exclude

Daniel Grande, at pg. 9 n.4. As for bioavailability, the studies Dr. Grande relies upon offer no

more than speculation, and thus his opinions on the subject are not reliable. For example, one of

the studies upon which Dr. Grande bases his opinion concludes that "[t]he results of this study

*suggest* that differences in the pharmacokinetic parameters of glucosamine and resulting plasma

concentrations *could, at least in part, be a possible reason* for the observed discrepancy in clinical

outcomes in patients with [osteoarthritis]." *See* Declaration of Jessica Grant in Support of

Opposition of Motion to Exclude Testimony of Daniel Grande, Ex. H, Asthana (2020) (emphasis

added). This statement is couched in numerous qualifiers minimizing the certainty of the

conclusion. Further, the studies Dr. Grande relies on were pilot studies designed to evaluate

whether more in-depth study is warranted. These studies thus provide the kind of speculation that

[9] Plaintiff also sought to exclude opinions previously excluded by this Court. In *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867 (N.D. Cal. 2016), this Court excluded Grande's testimony as to "(1) opinions about clinical studies or practices and the treatment protocols for cartilage degeneration; (2) his view that consumers can drink Joint Juice 'daily for healthy, flexible joints'; and (3) his stance that the statement 'originally developed for pro athletes by orthopedic surgeon Kevin R. Stone' is not misleading." *Id.* at 904. Plaintiff argues that Grande reoffers those same stricken opinions, and that his additional opinions should be excluded as well. Premier states that despite Grande's Supplemental Expert Report incorporating his 2017 Expert Report, which contained the previously excluded opinions, Premier does not seek to offer those opinions at trial. To the extent any previously excluded opinions are offered in this trial, they will be excluded.

is inadmissible under *Daubert*. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 677 (6th Cir. 2010) ("[W]hat science treats as a useful but untested hypothesis the law should generally treat as inadmissible speculation."). Plaintiff's motion is therefore granted as to Dr. Grande's opinions on the microbiome and bioavailability, and denied as to the other grounds.

**G.  William S. Choi, Ph.D.**

Dr. Choi is a rebuttal expert offered by Premier to opine on damages. Plaintiff argues his testimony must be excluded because (1) he is not a proper rebuttal witness, as his testimony does not respond to other experts; (2) his opinions on damages are irrelevant, because they concern the actual price class members paid for Joint Juice rather than the higher statutory damages amounts allowed; and (3) if his rebuttal is proper and his opinions are relevant, his opinion is nonetheless based on a flawed methodology.

A rebuttal expert's role is limited, as the evidence they present must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party[.]" Fed. R. Civ. P. 26(a)(2)(D)(ii). "Although a defendant need not put forth expert opinions to challenge affirmative theories on which the plaintiff bears the burden of proof, such as damages, a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." *Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015). Failure to disclose information required by Rule 26(a) within the time requirements means a party may not use that information at trial, unless the failure is harmless. Fed. R. Civ. P. 37(c)(1).

Dr. Choi was not disclosed until after the deadline to disclose initial expert reports, and thus his opinion may only be considered if the report is properly considered a rebuttal report, or if any failure to disclose his opinion in a timely manner was harmless. Defendant argues that Dr. Choi's opinion rebuts Colin Weir's report, in which Weir calculated the number of Joint Juice units sold, the average retail price, and the total sales. Dr. Choi does not contest Weir's calculation; instead he opines that consumers place economic value on the other attributes of Joint Juice, which should be reflected in the damages. In effect, he advances a price premium theory, in

United States District Court
Northern District of California

which Plaintiffs would not be entitled to a full refund.

As described in the discussion of Defendant's decertification motion, the question of whether Plaintiff may pursue a full refund damage theory is a legal question—and the answer is yes—but it is a question of fact for the jury whether Joint Juice was valueless for its advertised purpose. Plaintiffs will need to prove that question of fact to be entitled to full refund damages. Since Dr. Choi's report is related to rebutting and refuting an opinion set forth by Plaintiff's expert on a topic for which Plaintiff has the burden of proof, Dr. Choi's report is properly considered a rebuttal report.

Plaintiff also argues that Dr. Choi's opinion is irrelevant because statutory damages will be higher than actual damages, and his opinion concerns the measure of damages for actual damages. As explained in the discussion of the motion to exclude testimony of Colin Weir, statutory damages are available on a per unit basis, and thus it is almost certain that statutory damages will exceed actual damages. The statute, though, allows for the greater of actual damages or statutory damages. *See* GBL §§ 349(h), 350-e(e). To award statutory damages, there must still be evidence at trial of the amount of actual damages, so that a determination can be made based on the evidence that statutory damages are indeed higher. Thus, evidence concerning actual damages is relevant. Finally, as for Plaintiff's concerns with Dr. Choi's methodology, those concerns are properly addressed on cross-examination, rather than being grounds for exclusion. The motion to exclude testimony of Dr. Choi is therefore denied.[10]

**H. Hal Poret**

Hal Poret created a survey which addressed why consumers purchase Joint Juice as compared to other glucosamine products. Plaintiff challenges Poret's survey under both Rule 702 and Rule 401, arguing that the survey is irrelevant based on unreliable methods. Concerning

---

[10] The Court notes that it has made a determination that a full refund measure of damages is available if Joint Juice was valueless for its advertised purpose. Thus, Dr. Choi's testimony should be limited to the facts of this case and his views on the value consumers derived from aspects of the Joint Juice product, rather than on opining on the appropriateness of full refund measures of damages at large.

United States District Court
Northern District of California

1   relevancy, Plaintiff argues that Poret's survey is irrelevant because it addresses why people who

2   choose to purchase a glucosamine supplement choose Joint Juice over other supplements, and thus

3   does not address the question at issue in this litigation.

4          Rule 702(a) requires that the expert's "knowledge will help the trier of fact to understand

5   the evidence or to determine a fact in issue[.]" "Expert opinion testimony is relevant if the

6   knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598

7   F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (internal quotation marks and citation

8   omitted). Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to

9   make a fact more or less probable than it would be without the evidence; and . . . the fact is of

10  consequence in determining the action." Fed. R. Evid. 401.

11         Recognizing that "[t]he relevancy bar is low," *Messick v. Novartis Pharms. Corp.*, 747

12  F.3d 1193, 1196 (9th Cir. 2014), Poret's survey appears to have limited probative value in this

13  case, but is nonetheless relevant. Plaintiff has presented numerous arguments about the

14  shortcomings of the survey in terms of questions not asked and assumptions made, but these issues

15  may be addressed on cross-examination. Similarly, any concerns about the methodology are

16  grounds for cross-examination, not exclusion. The motion to exclude the testimony of Poret is

17  therefore denied.

18     **I.   Joel Steckel, Ph.D.**

19         Plaintiff moves to exclude three opinions advanced by rebuttal expert Dr. Joel Steckel,

20  who responded to the Dennis Survey: (1) his view that had Dr. Dennis used open-ended questions,

21  survey respondents would have responded differently; (2) his opinion about Dr. Dennis's failure to

22  use a control group to account for survey respondents' preexisting knowledge about the

23  glucosamine market; and (3) that materiality questions in the Dennis Survey suffer from order

24  effects, the phenomenon that the order in which questions are asked may influence answers.

25  Plaintiff argues these opinions "amount to nothing more than untested hypotheses and theories" as

26  they are couched with the terms "might," "possible," and "potentially." Motion to Exclude

27  Testimony of Joel Steckel, at pg. 3. Plaintiff argues these opinions do not meet the criteria of Rule

28

United States District Court
Northern District of California

702 and *Daubert*.

Although Dr. Steckel did not conduct his own testing or survey, he supports each of the challenged opinions with citations. Notably, his role in this case is limited—as he is a rebuttal witness—and Plaintiff does not challenge his qualifications. His testimony is relevant to evaluating the reliability of the Dennis Survey, and thus is relevant to a factual matter in this case. Any concerns about Dr. Steckel's failure to produce his own survey or data may be addressed on cross-examination. Thus, Plaintiff's motion to exclude three of Dr. Steckel's opinions is denied.

### J.   Kevin Robert Stone, M.D.

Plaintiff seeks to exclude the expert testimony of Dr. Kevin R. Stone, an orthopedic surgeon who created the Joint Juice product and founded Premier Nutrition. Defendant seeks to offer Dr. Stone, who was affiliated with the company until 2013, as a non-retained expert witness. Plaintiff argues that (1) Defendant did not provide an adequate summary of his proposed testimony; (2) the types of opinions for which Defendant seeks to offer Dr. Stone require that he provide a full written report; and (3) that expert testimony offered by Dr. Stone should be excluded because it is unreliable and cumulative.

First, Dr. Stone's summary of the opinions he plans to provide is insufficient. Federal Rule of Civil Procedure 26(a)(2)(C) requires expert witnesses who are not required to provide a written report to state "the subject matter on which the witness is expected to present evidence" and to provide "a summary of the facts and opinions to which the witness is expect to testify." Dr. Stone provides only general categories of topics, such as "experience and expertise relating to the efficacy, methods of action, and benefits provided by glucosamine and chondroitin in general" and "the joint health benefits provided by the ingredients of Joint Juice." The summary "fails to include any facts on which [Dr. Stone] will rely, nor does it state the opinions to which [he is] expected to testify. *Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 523 (N.D. Cal. 2012); *see also Christensen v. Goodman Distribution, Inc.*, No. 2:18-CV-2776-MCE-KJN, 2021 WL 71799 (E.D. Cal. Jan. 8, 2021) (excluding non-retained expert witnesses as disclosures "fail[ed] to summarize the experts' actual opinions").

1    Further, Defendant's failure to provide a proper summary is not "'substantially justified' or

2  'harmless[,]'" *id.* (citing Fed. R. Civ. P. 37(c)(1)), so as to prevent exclusion. Defendant argues the

3  admission of Stone's opinions would be harmless because "Plaintiff has deposed Dr. Stone twice,

4  at length, about his opinions related to the efficacy of glucosamine and chondroitin." Opposition

5  to Motion to Exclude Testimony of Kevin Stone, at pg. 7. However, just because Plaintiff has

6  deposed Dr. Stone before does not mean Plaintiff is on notice of the specific opinions Dr. Stone

7  seeks to provide at trial. *See Monster Energy Co. v. Integrated Supply Network, LLC*, No. ED CV

8  17-548-CBM-RAO, 2018 U.S. Dist. LEXIS 226883, at \*4 (C.D. Cal. Aug. 23, 2018) ("The fact

9  that [a non-retained expert] was previously deposed, however, does not satisfy Defendant's expert

10  disclosure obligations under Rule 26(a)(2)(C).") Therefore, exclusion is warranted.

11    Second, even if exclusion was not proper for the reasons described above, to the extent

12  Defendant seeks to have Dr. Stone opine on studies that he only reviewed in preparation for

13  litigation, Dr. Stone would have needed to provide a written report. "[T]he critical distinction

14  between retained and non-retained experts is the nature of the testimony the expert will provide,

15  and whether it is based only on percipient knowledge or on information reviewed in anticipation

16  [of] trial." *Shrader v. Pape Trucks, Inc.*, No. 218CV00014KJMCKD, 2020 WL 5203459, at \*2

17  (E.D. Cal. Sept. 1, 2020) (internal quotation marks and citation omitted). Here, Dr. Stone testified

18  in his deposition that he had only reviewed some studies after Premier's attorneys had provided

19  them to him. To the extent Defendant sought to have Dr. Stone testify about matters that he

20  learned of in anticipation of litigation rather than through percipient knowledge, he was required

21  to provide a written report, and any such opinions concerning those studies is excluded from trial.

22  **K.  Lance Palumbo**

23    Palumbo is a former Brand Director of Joint Juice. Premier offers Palumbo as a non-

24  retained expert witness, and Plaintiff seeks to exclude him for reasons similar to the exclusion of

25  Dr. Stone. As with Dr. Stone, the provided summary lists a variety of topics but "fails to include

26  any facts on which [Palumbo] will rely, nor does it state the opinions to which [Palumbo] expected

27  to testify." *Pineda*, 280 F.R.D. at 523. Further, exclusion is warranted because the fact Plaintiff

28

1    deposed Palumbo in 2014 does not mean the failure to give notice of the specific opinions and

2    facts at issue is substantially justified or harmless.

3           Additionally, even if his proposed expert testimony was not excluded, Palumbo would not

4    be qualified to opine on scientific matters. Defendant proposes that he will "testify regarding

5    studies on the efficacy of glucosamine and/or chondroitin" and "the benefits of Joint Juice[.]" It is

6    unclear how Palumbo has any of the requisite scientific experience to opine about scientific

7    studies in front of the jury. *See* Fed. R. Evid. 702(a) (requiring "scientific, technical, or other

8    specialized knowledge" for an expert to provide opinion testimony). Thus, even if Palumbo were

9    allowed to provide expert testimony, any expert testimony concerning scientific matters and

10   studies would be excluded pursuant to Federal Rule of Evidence 702.

## VII. Motion to Decertify the Class

12          Following the close of discovery, Premier argues that Plaintiff does not have common

13   evidence of causation necessary for both the causation element of her substantive claims and

14   Article III standing, and thus individualized issues will defeat predominance. Further, Defendant

15   also argues that Plaintiff has no evidence to support a "full refund" measure of damages under

16   New York law, and thus individual issues will predominate as to damages.

### A.  Causation under GBL §§ 349 and 350

18          Defendant argues that the class must be decertified because common evidence does not

19   predominate as to Plaintiff's proof of causation necessary for her claims under GBL §§ 349 and

20   350. Defendant argues that Plaintiff's theory of causation is not viable under New York caselaw,

21   and that Plaintiff has not advanced common proof of causation.

22          First, Plaintiff has alleged a causal nexus within the meaning of GBL sections 349 and 350.

23   Defendants argue that *Small v. Lorillard Tobacco Co.* controls this case and forecloses Plaintiff's

24   theory of causation, but Defendant's reading of *Small* goes too far. In *Small*, purchasers of

25   cigarettes averred they would not have purchased cigarettes had they known that cigarettes were

26   addictive, but did not advance a theory that they had actually become addicted. *Small*, 94 N.Y.2d

27   at 56. The plaintiffs framed their injury as "that defendants' deception prevented them from

making free and informed choices as consumers." *Id.* The Court of Appeals of New York held that "[w]ithout addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product." *Id.* "*Small* stands for the simple proposition that one cannot recover merely for having been deceived – the deception must have caused an injury." *In re AMLA Litig.*, 320 F.Supp.3d 578, 595 (S.D.N.Y. 2018) (citing *Small*, 94 N.Y.2d at 56). "[T]he plaintiffs in [*Small*] did not 'allege that the cost of cigarettes was affected by the alleged misrepresentation[.]'" *In re Amla Litig.*, 328 F.R.D. at 135 (quoting *Small*, 94 N.Y.2d at 56). In contrast to the plaintiffs in *Small*, Montera avers that she and class members purchased Joint Juice for joint health benefits that Premier advertised but they never received, making the injury "not Premier's deception, but the money spent on the product that did not do what it was sold to do." Opposition to Motion to Decertify, p. 14. Plaintiff alleges that the cost of Joint Juice was affected by the alleged misrepresentation, and thus has alleged a cognizable injury and theory of causation under GBL §§ 349 and 350.

Second, contrary to Defendant's argument, Plaintiff has presented common evidence that Premier's marketing statements caused class members to purchase Joint Juice. This Court's previous orders on class certification and summary judgment details common evidence about Premier's advertising and marketing, and that Joint Juice users purchase the product to obtain joint health benefits. *See Mullins*, 2016 U.S. Dist. LEXIS 51140, at *8-10, 13-17; *Mullins*, 178 F. Supp. 3d at 877-80. At class certification, the Court noted the "hundreds of pages of factual discovery demonstrating that Premier engaged in a coordinated advertising campaign which caused customers to buy Joint Juice because of its purported health benefits." *See Mullins*, 2019 U.S. Dist. LEXIS 229365, at *4. This evidence is further bolstered by expert evidence Plaintiff has proffered specifically for this New York case, such as Dr. Dennis's survey about how consumers interpret Joint Juice's label. Common evidence will therefore predominate over individual issues as to proof of causation under GBL §§ 349 and 350.[11]

---

[11] Poret's survey does not change the calculus here. Poret's survey looked to the reasons beyond joint health a consumer would purchase Joint Juice, and he testified in his deposition that people

**B. Article III Standing**

Defendant relies on *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021), to argue that Plaintiffs have not shown that each class member has Article III standing. Article III standing requires a "causal connection between the injury and the conduct complained of[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Because the Supreme Court has clarified that '[e]very class member must have Article III standing in order to recover individual damages,' Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions[.]" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2022 WL 1053459, at *9 n.12 (9th Cir. Apr. 8, 2022) (quoting *TransUnion*, 141 S.Ct. at 2208).

As explained above, Plaintiff has provided common evidence of causation necessary to prove violations of GBL §§ 349 and 350. This common evidence would also naturally demonstrate the required "causal connection between the injury and the conduct complained of[.]" *Lujan*, 504 U.S. at 560. Thus, "individualized inquiries into this standing issue" will not predominate over common questions. *See Olean*, 2022 WL 1053459, at *9 n.12.

**C. Damages**

Defendants next argue that predominance is no longer satisfied because Plaintiffs cannot pursue a full refund theory of liability, and individual issues will predominate as to damages. Repeating earlier arguments, Defendants assert that Plaintiffs have not put forth evidence that all class members purchased Joint Juice for its joint health benefits, and that some purchasers bought Joint Juice for its other attributes, like the vitamins included in the drink. Defendants argue that even if Plaintiffs establish that all class members bought Joint Juice for its joint health benefits, Joint Juice nevertheless has other attributes of value and thus a price premium theory of damages, in which class members would not recoup the full amount of their purchase, is the appropriate

---

buy glucosamine supplements for joint health. *See* Deposition of Hal Poret II at 226:5-9 ("It's fairly evident that all the glucosamine products are presented as joint health products and that, for the most part, people buy glucosamine products as joint health products.") .

measure of damages.

Plaintiffs may pursue a full refund theory of liability. First, New York law does not require that plaintiffs pursue a price premium theory.[12] *See Orlander*, 802 F.3d 289 at 302 ("Defendant argues that New York courts have recognized the payment of a plaintiff's purchase price as a Section 349 injury only when the plaintiff paid a 'price premium.' But there is no such rigid 'price premium' doctrine under New York law."). A full refund theory of liability may be viable when a plaintiff alleges that a product is valueless. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015) (allowing plaintiffs to pursue a full refund theory of damages as it "match[ed] plaintiffs' . . . theory of liability[,]" that the product was "valueless"); *Yamagata v. Reckitt Benckiser LLC*, 445 F.Supp.3d 28 (N.D. Cal. 2020) (allowing plaintiffs in a GBL 349 and 350 action concerning a glucosamine supplement to pursue a full refund theory of damages, and concluding that "[i]f the plaintiffs received none of the advertised joint health benefits, they are entitled to a full refund").

This case is distinguishable from cases in which only a price premium theory was permitted. Some price premium cases concern labels which indicated a consumer would get more of a product than they actually received. *See, e.g. Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, 195 (E.D.N.Y. 2018) (plaintiff alleged harm because labeling on candy product indicated a higher amount of product per package, causing plaintiff "to pay a higher price per unit of candy," rather than a product entirely different from the product represented on the packaging). Other price premium cases involve a product which has some similarity with the advertised product—and thus is of some utility to the consumer—but differs in some material way. *See, e.g. Greene v. Gerber Prod. Co.*, 262 F.Supp.3d 38 (E.D.N.Y. 2017) (plaintiff alleged she paid a 41% premium for

---

[12] Under the price premium theory, "deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F.Supp.3d 357, 361-62 (E.D.N.Y. 2014) (quoting *Servedio v. State Farm Ins. Co.*, 889 F.Supp.2d 450, 452 (E.D.N.Y.2012)). Plaintiff argues that rather than Joint Juice being "not precisely what [consumers] believed they were buying[,]" *id.*, Joint Juice was nothing like what they thought they were buying and thus valueless for them.

United States District Court
Northern District of California

infant formula that falsely claimed to trigger fewer allergies as compared to standard formula). If a product provides no benefit to the consumer, though, a plaintiff may be entitled to their entire purchase price. In a case involving a product advertised to reduce cold symptoms and the length of colds, Plaintiff alleged that studies found the product was "ineffective in treating cold symptoms[.]" *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 287 (S.D.N.Y. 2015). Plaintiff sought the full purchase price, asserting in his complaint that he was "damaged in the amount of the purchase price of the Cold–EEZE Products, i.e., the difference in value between the Cold–EEZE Products as advertised and the Cold–EEZE Products as actually sold[,]" and was permitted to proceed on this theory of liability. *Id.* at 292-293. Plaintiffs allege a theory of liability similar to the Cold-EEZE case: that the difference in value between the Joint Juice product as advertised and the Joint Juice product as sold is the full value of the product, because the product was valueless for its advertised purpose.

It is a question of fact for the jury whether Joint Juice is valueless for its advertised purpose. This will be Plaintiff's burden to prove at trial. At this stage of the proceeding, though, they have demonstrated predominance on this question. Plaintiff has presented evidence from scientific experts supporting her argument that Joint Juice provides no joint health benefits, and has also presented evidence that Joint Juice was advertised to provide those precise benefits, which was the reason consumers purchased Joint Juice. Common evidence will therefore predominate over individual issues as to whether Joint Juice is valueless for its advertised purpose. Thus, decertification on this issue is not warranted.

Finally, the availability of statutory damages on a per unit basis separately establishes that predominance is satisfied as to damages, because it appears statutory damages will likely exceed any actual damages. "Once an injury is established, statutory damages can be precisely calculated for each class member." *Kurtz*, 321 F.R.D. at 551. Thus, predominance is also satisfied via the availability of per unit statutory damages.

### VII. Conclusion

Defendant's motion to exclude certain opinions of Dr. Farshid Guilak is granted, and

Defendant's motion to exclude opinions of Dr. Derek Rucker is granted in part and denied in part. Defendant's other motions to exclude testimony are denied. Plaintiff's motions to exclude the expert testimony of Dr. Kevin Stone and Lance Palumbo are granted. The motions to exclude the testimony of Dr. Stuart Silverman and Dr. Daniel Grande are granted in part and denied in part. The motions to exclude testimony of Dr. Joel Steckel, Dr. William Choi, and Hal Poret are denied. The motion to decertify the class is denied.

**IT IS SO ORDERED**.

Dated: April 26, 2022

_____
RICHARD SEEBORG
Chief United States District Judge