MORRISON & FOERSTER LLP
Jessica L. Grant (CA SBN 178138)
JGrant@mofo.com
425 Market Street
San Francisco, CA  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

VENABLE LLP
Angel A. Garganta (SBN 163957)
agarganta@venable.com
Steven E. Swaney (SBN 221437)
seswaney@venable.com
Amit Rana (SBN 291912)
arana@venable.com
Antonia I. Stabile (SBN 329559)
aistabile@venable.com
101 California Street, Suite 3800
San Francisco, CA  94111
Telephone:  415.653.3750

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC FISHON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>Defendant. | Case No.   3:16-cv-06980-RS<br><br>**PREMIER NUTRITION'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1 OF 6 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING FDA DRUG OR SUPPLEMENT STANDARDS**<br><br>Date:     May 6, 2022<br>Time:     10:00 a.m.<br>Ctrm:     3 – 17th Floor<br>          Hon. Richard Seeborg<br><br>Complaint Filed:  December 5, 2016<br>Trial Date:        May 23, 2022 |

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

CONCLUSION ......................................................................................................................... 6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Dachauer v. NBTY, Inc.*,
 913 F.3d 844 (9th Cir. 2019) ........................................................................................3

*Kroessler v. CVS Health Corp.*,
 977 F.3d 803 (9th Cir. 2020)......................................................................................3, 4

*Mullins v. Premier Nutrition Corp.*,
 No. 13-cv-01271-RS, 2019 WL 8164376 (N.D. Cal. Aug. 29, 2019) .........................5

*Plavin v. Grp. Health Inc.*,
 146 N.E.3d 1164 (N.Y. 2020) ......................................................................................2

*Segovia v. Vitamin Shoppe, Inc.*,
 No. 14-CV-7061 (NSR), 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) ....................2

**Other Authorities**

21 C.F.R.
 § 101.93.........................................................................................................................5
 § 101.93(f).....................................................................................................................5
 § 101.93(a)(3)................................................................................................................5

New York Gen. Bus. Law
 § 349................................................................................................................... *passim*
 § 350................................................................................................................... *passim*

**INTRODUCTION**

Plaintiff's motion begins by seeking to exclude evidence and argument "regarding Plaintiff or her experts attempting to enforce a supposed 'FDA standard' for drugs on Joint Juice." (ECF No. 165 ("Mot.") at 1.) After incorrectly and rather confusingly discussing the standards for dietary supplement claim substantiation under FDA and FTC guidance and federal law, Plaintiff concludes her motion by seeking to exclude evidence "regarding an FDA standard of science for drugs, supplements or a difference between the two." (*Id*. at 6.)

To the extent Premier understands Plaintiff's motion, which is largely incoherent, Premier will stipulate that the following categories will *not* be introduced by the parties at trial[1]: (1) evidence or argument that Plaintiff or her experts are attempting to enforce an FDA standard for drugs on Joint Juice; (2) the regulatory standards that govern drugs; (3) FDA requirements to sell or market a drug; and (4) any comparison between federal standards for drugs versus federal standards for dietary supplements.

That leaves one category of evidence that Plaintiff apparently seeks to exclude in her motion: evidence "regarding an FDA standard of science for . . . [dietary] supplements." (*See id*.) Counsel for Premier met and conferred with Plaintiff's counsel in an attempt to better understand the basis for this contention, and Plaintiff's counsel agreed that the FDA and FTC standards/guidelines cited in Plaintiff's motion will help the jury understand and evaluate the scientific evidence. Yet for reasons that remain unclear to Premier, Plaintiff's counsel maintains that any evidence or argument regarding structure/function claims must be excluded. This is incorrect. Joint Juice was marketed as a dietary supplement, and FDA standards governing permissible structure/function statements for dietary supplements are therefore relevant to Plaintiff's claims and Premier's defenses in this action. Plaintiff's attempt to exclude the applicable law that the FDA and FTC have promulgated regarding dietary supplements is improper and should be rejected.

---

[1] Unless of course a party opens the door to the admission of such evidence.

Just as in patent cases in this District, in which the court plays a video for the jury to give them an overview of the patent process, including describing what a patent is, how it is obtained, and various other esoteric issues such as what is meant by "prior art," "conception," "skilled in the art," and why patents are rejected, here the parties and the Court should help the jury understand the applicable framework for dietary supplements, claim substantiation, and structure/function claims. Again, this framework is directly relevant to Plaintiff's claims and Premier's defenses and gives context to the circumstances and legal framework within which Premier developed its marketing and advertising for Joint Juice. Plaintiff's attempt to shield the jury from what structure/function claims are, while simultaneously using the same standards that apply to structure/function claims to prove that Premier's marketing statements were deceptive, is improper. Accordingly, Plaintiff's motion to exclude reference to FDA standards for dietary supplements and structure/function claims must be denied.

## ARGUMENT

Plaintiff pleads causes of action under New York's General Business Law ("GBL") §§ 349 and 350. Under these sections, Plaintiff bears the burden to prove that Premier's conduct (i.e., the advertising claims communicated by Joint Juice's label) was deceptive or misleading in a material way. *See Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020); *see also Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2017 WL 6398747, at *3 (S.D.N.Y. Dec. 12, 2017).

To prove Premier's advertising claims were deceptive or misleading, she must prove that Joint Juice does not provide the advertised benefits. This implicates the science surrounding glucosamine and chondroitin. It also implicates federal regulations and guidance regarding the type of claims dietary supplements can make, and what substantiation is required for those claims. For example, Plaintiff contends that Premier intentionally and illegally marketed Joint Juice to treat pain and/or the symptoms of osteoarthritis. The fact that Premier believes it was following federal law and making permissible structure/function claims directly rebuts these contentions. Further, if Premier complied with federal law, the jury must find in favor of Premier. *See* GBL § 349(d) ("In [a GBL] action it shall be a complete defense that the act or

practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts."); *id.* § 350-d (same). As with Plaintiff's claims regarding Premier's alleged intent, this defense requires the jury to understand what a structure/function claim is, and what substantiation is required to make a permissible structure/function claim.

Plaintiff's motion mischaracterizes the law applicable in federal court and the FDA guidance regarding dietary supplement claim substantiation. Plaintiff improperly states: "In the Ninth Circuit, to determine whether 'claims on a dietary supplement product's labeling are truthful and not misleading' requires analyzing whether '*the totality of the evidence* agree with the claim(s).'" (*See* Mot. at 3 (quoting *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 811 n.6 (9th Cir. 2020)).) Not so. *Kroessler* explained that, under *Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019), a plaintiff can challenge "a defendant's initial substantiation and its substantiation produced in rebuttal to a plaintiff's attack" "by pointing to 'matching evidence' contradicting those claims." *Kroessler*, 977 F.3d at 811. Plaintiff cites a footnote from *Kroessler* which merely states that "FDA's guidelines also support this proposition." *Id.* at 811 n.6. The *Kroessler* court then quotes from the FDA's guidance for substantiation of dietary supplement claims. This guidance explains the FDA *recommends* that **one *of the factors to be considered*** in determining whether "competent and reliable scientific evidence" substantiates a claim is whether "*the totality of the evidence* agree[s] with the claim(s)." *Id.* (quoting FDA, *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under 403(r)(6) of the Federal Food, Drug, and Cosmetic Act*, 2008 WL 10889843, at \*15). Indeed, this portion of the FDA guidance states:

> The FTC standard of competent and reliable scientific evidence has been defined in FTC case law as "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."

> Although there is no pre-established formula as to how many or what type of studies are needed to substantiate a claim, we, like the FTC, will consider what the accepted norms are in the relevant research fields and consult experts from various disciplines. If there is an existing standard for substantiation developed by a government agency or other authoritative body, we may accord some deference to that standard.

> In determining whether the substantiation standard has been met with competent and reliable scientific evidence, we recommend that firms consider the following issues in their assessment:

> 1. The meaning of the claim(s) being made;
> 2. The relationship of the evidence to the claim;
> 3. The quality of the evidence; and
> 4. The totality of the evidence.

(Declaration of Jessica L. Grant, Ex. A.)

The *Kroessler* court merely explained that this guidance "implies that a defendant's substantiation may be evaluated and challenged." 977 F.3d at 811 n.6. Plaintiff's contention that this quote means that the standard is a "totality of evidence" is incorrect. The "totality of evidence" is only *one* factor the FDA recommends manufacturers of dietary supplements consider in making structure/function claims.

When meeting and conferring regarding this motion *in limine*, Plaintiff's counsel indicated that it did not seek to exclude the FDA and FTC guidance cited in its motion, but did seek to exclude reference to standards/regulations regarding structure/function claims. This position is confusing and improper for several reasons. First, Joint Juice *is* a dietary supplement. Premier has relied on FDA standards for dietary supplements and structure/function claims since Joint Juice's inception. Reference to these regulatory standards for dietary supplements is relevant to rebut Plaintiff's assertion that Premier intended to communicate an implied claim of pain and/or arthritis relief, or supposedly knew that Joint Juice's advertising statements are not substantiated and thus false or misleading.

Second, the statutory safe harbor defense under GBL §§ 349 and 350 allows a manufacturer like Premier to defend itself by proving it "complie[d] with the rules and regulations of, and the statutes administered by, the federal trade commission or any official

department, division, commission or agency of the United States." GBL §§ 349(d), 350-d. Premier contends it complies with 21 C.F.R. § 101.93, which describes requirements for certain types of statements for dietary supplements. In particular, Premier contends it has always made permissible structure/function claims pursuant to this section. *See* 21 C.F.R. § 101.93(f).

Structure/function claims pursuant to this framework must be substantiated. *See* 21 C.F.R. § 101.93(a)(3). While requirements for substantiation are not set forth in the regulations, the FDA and FTC have promulgated guidance on substantiation for dietary supplement claims and structure/function claims. Indeed, GBL §§ 349 and 350 allow Premier to point to this guidance to show how these "regulations . . . are interpreted by the federal trade commission or such department, division, commission, or agency." GBL §§ 349(d), 350-d. Plaintiff's attempt to re-write the regulations and guidance by attempting to instruct the jury on the "totality of evidence" factor and then exclude the remaining three factors the FDA recommends be considered is clearly improper. The jury should obviously be given a complete, accurate and correct statement of the federal standards for dietary supplements and structure/function claims that apply to this case.[2]

Finally, Plaintiff repeatedly claims that Premier is making a "disease claim[]." (*See* Mot. at 2, 6 ("Defendant is making a drug-related claim, not a supplement claim.").) Plaintiff incorrectly states that "[t]his Court has found this at least twice in rejecting Premier's argument that the advertising claims are structure/function claims." (*Id.* at 2.) Again, not so. This Court has never adjudicated the issue of whether Premier's claims are permissible structure/function claims or whether Premier's claims are false or misleading. The order Plaintiff cites only states that Plaintiff has "*sufficiently alleged*" that Premier has advanced disease claims. *See Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2019 WL 8164376, at *2 (N.D. Cal. Aug. 29, 2019) (emphasis added) (denying Premier's motion for judgment on the pleadings). But whatever point Plaintiff is trying to make by misrepresenting this Court's prior orders is unclear, since Plaintiff goes on to argue that "[r]egardless of whether Joint Juice is a dietary supplement or

---

[2] Premier intends to propose a jury instruction on this issue.

an illegally marketed drug, the evidentiary standard is the same." (Mot. at 5.)

**CONCLUSION**

As discussed, Premier agrees that: (1) it will not argue that Plaintiff is attempting to enforce an FDA standard for drugs on Joint Juice; (2) the regulatory standards that govern drugs are inadmissible at trial; (3) FDA requirements to sell or market drugs are inadmissible at trial; and (4) any comparison between federal standards for drugs versus federal standards for dietary supplements will not be offered at trial.

Any other relief requested by Plaintiff is unintelligible and, to the extent Plaintiff seeks to exclude any evidence, argument, or reference to federal standards for dietary supplements and structure/function claims, the motion must be denied as contrary to GBL § 349(d) and § 350-d, as well as applicable FDA regulations and guidance.

Dated:  April 29, 2022

MORRISON & FOERSTER LLP

By: _____
JESSICA L. GRANT

425 Market Street
San Francisco, CA  94105
Telephone:  415.268.7000

VENABLE LLP
Angel A. Garganta
101 California Street, Suite 3800
San Francisco, CA  94111
Telephone:  415.653.3750

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC