BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-CV-06980 RS<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>**CLASS ACTION**<br><br>Judge:      Honorable Richard Seeborg<br>Courtroom:  Courtroom 3, 17th Floor<br><br>Complaint Filed:  December 5, 2016<br>Trial Date:       May 23, 2022 |

BLOOD HURST & O' REARDON, LLP

00191181

# TABLE OF CONTENTS

**Page**

I.  PLAINTIFF'S CLAIMS ...................................................................................................1

    A.  Consumer Oriented Conduct.................................................................................1

    B.  Materially Misleading Acts, Practices, or Advertising ........................................1

    C.  Injury Suffered as a Result of Premier's Conduct...............................................4

    D.  Statutory Damages ...............................................................................................6

II.  PREMIER'S PURPORTED DEFENSES ........................................................................7

    A.  Premier's Good Faith or Lack of Intent to Deceive .............................................7

    B.  Premier's Compliance with Federal Statutes, Rules, and Regulations ..................8

BLOOD HURST & O' REARDON, LLP

1

2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**Cases**

5

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*,
   752 N.Y.S.2d 400 (N.Y. App. Div. 2002)...............................................................................1

6

7

*Bardsley v. Nonni's Foods LLC*,
   No. 20 Civ. 2979 (NSR), 2022 U.S. Dist. LEXIS 47104
   (S.D.N.Y. Mar. 16, 2022)......................................................................................................9

8

9

*Beaton v. SpeedyPC Software*,
   907 F.3d 1018 (7th Cir. 2018)...............................................................................................6

10

*BMG Music v. Gonzalez*,
   430 F.3d 888 (7th Cir. 2005).................................................................................................7

11

12

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*,
   No. 14-md-02555-JSW (MEJ), 2016 U.S. Dist. LEXIS 148534
   (N.D. Cal. Oct. 26, 2016) ......................................................................................................3

13

14

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007)..................................................................................................2

15

16

*Danone, US, LLC v. Chobani, LLC*,
   362 F. Supp. 3d 109 (S.D.N.Y. 2019)...................................................................................2

17

18

*FTC v. Pantron I Corp.*,
   33 F.3d 1088 (9th Cir. 1994).................................................................................................5

19

*FTC v. Wellness Support Network, Inc.*,
   No. 10-cv-04879-JCS, 2014 U.S. Dist. LEXIS 21449
   (N.D. Cal. Feb. 19, 2014) ......................................................................................................3

20

21

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   94 N.Y.2d 330 (N.Y. 1999)...........................................................................................1, 2, 3

22

23

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011)...............................................................................................7

24

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
   98 N.Y.2d 314 (N.Y. 2002)...................................................................................................1

25

26

*Koch v. Acker, Merrall & Condit Co.*,
   18 N.Y.3d 940 (2012) ...........................................................................................................1

27

28

BLOOD HURST & O' REARDON, LLP

00191181

BLOOD HURST & O' REARDON, LLP

*Kraft, Inc. v. FTC*,
970 F.2d 311 (7th Cir. 1992) ..................................................................... 4

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. 2020) .............................................................. 9, 10

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................. 5

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018) ..................................................................... 2

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ................................................................... 5

*Mullins v. Premier Nutrition Corp.*,
No. 13-cv-01271-RS, 2016 U.S. Dist. LEXIS 51140
(N.D. Cal. Apr. 15, 2016) .................................................................... 3, 5

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
875 F.3d 107 (2d Cir. 2017) ..................................................................... 8

*Original Cosmetics Prods. v. Strachan*,
459 F. Supp. 496 (S.D.N.Y. 1978) ........................................................... 5

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) ..................................................................... 5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (N.Y. 1995) ....................................................................... 8

*Parks v. Ainsworth Pet Nutrition, LLC*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019) ...................................................... 3

*Petrosino v. Stearn's Prods.*,
No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818
(S.D.N.Y. Mar. 30, 2018) ......................................................................... 2

*Rikos v. P&G*,
799 F.3d 497 (6th Cir. 2015) ................................................................... 6

*Schwab v. Philip Morris USA, Inc.*,
No. CV 04-1945 (JBW), 2005 U.S. Dist. LEXIS 21610
(E.D.N.Y. Sept. 29, 2005) ......................................................................... 3

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ............................................................................ 1, 4

*Stutman v. Chem. Bank*,
95 N.Y.2d 24 (N.Y. App. 2000) ............................................................... 8

00191181

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
No. 06 Civ. 14245 (LTS)(MHD), 2007 U.S. Dist. LEXIS 28209
(S.D.N.Y. Apr. 16, 2007) ........................................................................................... 2

*U.S. v. Phillip Morris USA, Inc.*,
449 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................... 4

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ..................................................................................... 2

*Wilner v. Allstate Ins. Co.*,
893 N.Y.S.2d 208 (N.Y. App. Div. 2010) ................................................................. 2

**Statutes and Regulations**

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 ............................................ 9, 10

New York General Business Law
§ 349 ....................................................................................................................*passim*
§ 350 ....................................................................................................................*passim*
§ 350-d ......................................................................................................... 8, 9, 10, 11
§ 350-e(3) ....................................................................................................................... 6

21 CFR § 101.93 ........................................................................................................... 9, 10

**Rules**

Fed. R. Civ. Proc. 104 ...................................................................................................... 11

BLOOD HURST & O' REARDON, LLP

00191181

Pursuant to the Court's Standing Order, Plaintiff Mary Beth Montera submits the following trial brief.

## I.      PLAINTIFF'S CLAIMS

Plaintiff alleges Premier violated New York General Business Law (GBL) §§ 349 and 350 by marketing and advertising Joint Juice as providing joint health benefits it does not provide. Section 349 generally prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce …." GBL § 349(a). Section 350 deems unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." GBL § 350. "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002).

To successfully prove her claims under General Business Law § 349 (h) or § 350, Plaintiff must prove that Premier "has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice[.]" *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (internal quotation marks and citation omitted). Although "[i]ntent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim[,]" to recover compensatory damages Plaintiff must show "that a materially deceptive act or practice caused actual, although not necessarily pecuniary, harm[.]" *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999) (internal quotation marks, citation, and emphasis omitted); *see* ECF No. 180 at 2-3.

### A.      Consumer Oriented Conduct

The parties stipulated that Premier's advertising of Joint Juice is consumer-oriented conduct within the meaning of Sections 349 and 350. ECF No. 181 at III.2.

### B.      Materially Misleading Acts, Practices, or Advertising

The second element – whether Premier's advertising or a deceptive act or practice is materially misleading – is measured by an objective standard of whether it is likely to mislead in a material way a reasonable consumer acting reasonably under the circumstances. *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y. 1999); *Andre Strishak & Assocs., P.C. v. Hewlett*

BLOOD HURST & O' REARDON, LLP

00191181

1   *Packard Co.*, 752 N.Y.S.2d 400, 403 (N.Y. App. Div. 2002) (citing *Oswego Laborers' Local 214*

2   *Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995)).

3       In determining whether a reasonable person would be misled or deceived by Premier's

4   advertising of Joint Juice, the Joint Juice advertising must be considered as a whole – meaning all

5   parts of the Joint Juice label are considered, including all words and images. *Petrosino v. Stearn's*

6   *Prods.*, No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818, at *20 (S.D.N.Y. Mar. 30, 2018);

7   *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245 (LTS)(MHD), 2007 U.S. Dist.

8   LEXIS 28209, at *14 (S.D.N.Y. Apr. 16, 2007)); *Williams v. Gerber Products Co.*, 552 F.3d 934,

9   939 n.3 (9th Cir. 2008).

10       To be reasonable, an interpretation of the advertising message does not have to be the only

11   one. If the label conveys more than one advertising message to reasonable consumers, one of which

12   is misleading, the seller is liable for the misleading interpretation. *See Cohen v. JP Morgan Chase*

13   *& Co.*, 498 F.3d 111, 126-27 (2d Cir. 2007); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 217

14   (N.Y. App. Div. 2010); FTC Policy Statement on Deception at 3 (1983).

15       Because the totality of the advertising message must be considered, the presence of the FDA

16   disclaimer on the Joint Juice label is not a defense to Plaintiff's GBL claims. If the overall

17   impression of Joint Juice's advertising message is likely to mislead or deceive a reasonable

18   consumer, despite the presence of the FDA disclaimer, then the advertisement is misleading under

19   GBL §§ 349 and 350. *Gaidon*, 94 N.Y.2d at 345; *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638-39

20   (2d Cir. 2018); *Williams*, 552 F.3d at 939; *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109,

21   123 (S.D.N.Y. 2019).

22       In *Gaidon*, policyholders brought GBL § 349 claims against insurance companies, alleging

23   defendants misrepresented that premium for life insurance policies would vanish within eight years,

24   after which the policy's dividends would cover the premium costs. 94 N.Y.2d at 338. Plaintiffs

25   alleged these misrepresentations were made in defendants' marketing materials by overinflating

26   dividend rates. Defendants argued that a reasonable consumer would not be misled because

27   disclaimers in the marketing materials clearly stated that dividend rates were estimated and could

28

BLOOD HURST & O' REARDON, LLP

be lower. *Id.* at 345. In rejecting this argument, the *Gaidon* court explained that a reasonable consumer could be misled in a material way:

> [T]he disclaimers, though more particularized … do not speak to the true, unrevealed relationship between dividend/interest rates and the vanishing dates as represented. Consumers vary in their level of sophistication and their ability to perceive the connection between a fluctuation in dividend/interest rates and vanishing date, or to make the necessary arithmetic adjustments. … The very goal of the marketing scheme was to convince prospective purchasers that the vanishing date would in fact conform to the individualized projections. … [D]efendants created these expectations with illustrations based on the unrealistic dividend/interest forecasts and without disclosure or disclaimer revealing that fact.

*Id.* at 345-46. Accordingly, as demonstrated by *Gaidon*, it is important that the jury here know that the FDA disclaimer must viewed in context with the Joint Juice packaging as a whole to determine whether the Joint Juice advertising message is likely to mislead a reasonable consumer.

Premier's intent to convey a particular advertising message is also relevant to what advertising claims a reasonable consumer would take away from the Joint Juice advertising. ECF No. 180 at 9 (marketing evidence admissible that "explains what a company intended to convey through their marketing"); *Mullins*, ECF No. 133 at 5-7 (discussing Premier's marketing strategy and intent); *Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945 (JBW), 2005 U.S. Dist. LEXIS 21610, at *13 (E.D.N.Y. Sept. 29, 2005) (allowing testimony as to how defendant's advertising activities "were designed to influence the beliefs and activities of consumers"); *In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*, No. 14-md-02555-JSW (MEJ), 2016 U.S. Dist. LEXIS 148534, at *19-20 (N.D. Cal. Oct. 26, 2016) (finding evidence of defendant's marketing strategy relevant to whether defendants "chose to advertise in a certain way to impact its consumers' choice"). An interpretation of the Joint Juice label is presumed reasonable if Premier intended to convey that message. FTC Policy Statement on Deception at 3.

Moreover, an advertisement, act or practice is likely to mislead a consumer in a "material" way if it is likely to affect a consumer's choice of or conduct regarding a product. In other words, it is information that is important to a reasonable consumer. *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019); FTC Policy Statement on Deception at 5. Certain types of information are considered presumptively material, including claims regarding health. *Id.*; *FTC*

*v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2014 U.S. Dist. LEXIS 21449, at *56 (N.D. Cal. Feb. 19, 2014) ("Materiality is also presumed as to 'claims that significantly involve health, safety, or other issues that would concern reasonable consumers.'") (quoting *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 960 (N.D. Ill. 2006)); *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (same); *U.S. v. Phillip Morris USA, Inc.*, 449 F. Supp. 2d 1, 898 n.35 (D.D.C. 2006) (same in a RICO case).

Here, Plaintiff will prove through the following evidence that Premier's advertising of Joint Juice as providing relief from arthritis symptoms such as pain and stiffness was materially misleading to a reasonable consumer:

1) Premier's advertising of Joint Juice including the produce label;

2) Premier's internal documents and employee testimony that Premier intended to target arthritis suffers who had joint pain and intended to convey to consumers that Joint Juice relieves joint pain and stiffness related to arthritis;

3) Testimony from Plaintiff that she believed, based on the label and other advertising of Joint Juice, that it was intended to relieve symptoms of her arthritis, including joint pain and stiffness;

4) Survey evidence from Plaintiff's expert Michael J. Dennis that demonstrates reasonable consumers interpret the Joint Juice label as conveying the message that Joint Juice reduces joint pain and stiffness;

5) Testimony from Plaintiff's expert Derek Rucker, Ph.D. concerning Premier's marketing strategies, intended message, and target audience;

6) Admissions Premier has made regarding its advertising message of Joint Juice; and

7) Testimony from Plaintiff's experts Dr. Timothy McAlindon and Dr. Farshid Guilak that Joint Juice does not provide the advertised joint health benefits.

**C.    Injury Suffered as a Result of Premier's Conduct**

Plaintiff must also prove that Premier's advertising or deceptive acts or practices "caused actual, although not necessarily pecuniary, harm[.]" *Small*, 94 N.Y.2d at 55-56 (internal quotation marks, citation, and emphasis omitted). Causation requires some causal nexus. Plaintiff must

Case No. 3:16-cv-06980-RS

BLOOD HURST & O' REARDON, LLP

demonstrate that "on account of a materially misleading practice, [plaintiff] purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). As the Court previously held, Plaintiff can demonstrate causation by proving consumers "purchased Joint Juice for joint health benefits that Premier advertised but they never received…." ECF No. 180 at 24. Plaintiff will do this through the following evidence:

(1)     Plaintiff's testimony;

(2)     Premier's internal documents demonstrating Premier engaged in a coordinated advertising campaign which caused consumers to buy Joint Juice for its advertised joint health benefits; and

(3)     Survey evidence and marketing evidence.

Plaintiff will also demonstrate that Class Members did not receive the full value of their purchase of Joint Juice through evidence of the per unit price of Joint Juice and scientific evidence that Joint Juice does not provide the advertised joint health benefits.

Consumers' subjective beliefs regarding the efficacy of Joint Juice are irrelevant to causation and injury here, and it is improper for Premier to suggest to the jury that customer satisfaction (either in the form of repeated purchases or customer testimonials) is proof that Joint Juice works. ECF No. 134 at 5 n.2; *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 U.S. Dist. LEXIS 51140, at *10 (N.D. Cal. Apr. 15, 2016); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) ("[l]iability under New York General Business Law §§ 349-350 does not depend on ... whether the product met [class members'] personal, subjective expectations."); *Original Cosmetics Prods. v. Strachan*, 459 F. Supp. 496, 506 (S.D.N.Y. 1978) ("Were the courts to protect false advertising because some, or even many, customers benefited from the belief that worthless drugs were improving their [health], [consumer protection laws] would be rendered ineffective."); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994) (With placebo effects, "the efficacy claim 'is misleading' because the [product] is not *inherently* effective, its results [instead] being attributable to the psychosomatic effect produced by the advertising and marketing of the [product].") (citation and internal quotations omitted); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015) ("claims do not rise or fall on whether individual consumers experienced health

BLOOD HURST & O' REARDON, LLP

benefits, due to the placebo effect or otherwise"); *Rikos v. P&G*, 799 F.3d 497, 506-07 (6th Cir. 2015) ("[A]lthough P&G argues that some class members were not injured because they kept buying Align – a sign that Align works, says P&G – that is not the right way to think about 'injury' in the false-advertising context. … In fact, courts have held that it is misleading to state that a product is effective when that effectiveness rests solely on a placebo effect."); *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018) ("If the product truly serves none of its functions, its users' subjective satisfaction is likely evidence of misrepresentation, not that the users were not harmed.").

The jury should be instructed that an individual consumer's subjective satisfaction with Joint Juice or belief that it worked are irrelevant to whether Premier committed misleading or deceptive acts, practices or advertising.

### D.    Statutory Damages

Under GBL § 349(h), Plaintiff and Class Members are entitled to "actual damages or fifty dollars, whichever is greater…." Under GBL § 350-e(3), Plaintiff and Class Members are entitled to "actual damages or five hundred dollars, whichever is greater…." Statutory damages of $50 and $500 are awarded for each purchase of Joint Juice because "a plaintiff experiences a violation [of Section 349 and 350] each time the product is purchased…." ECF No. 180 at 4. As a result, Plaintiff and Class Member should be awarded statutory damages for each package of Joint Juice they purchased. *Id.*

Because statutory damages of $50 and $500 are awarded for each purchase of Joint Juice, they exceed actual damages, which are at most the full purchase price. The Court previously held "there must still be evidence at trial of the amount of actual damages, so that a determination can be made based on the evidence that statutory damages are indeed higher." ECF No. 180 at 19. Plaintiff will provide proof of the amount of actual damages through the retail price of Joint Juice and Premier's sales records and expert testimony of Colin Weir, if necessary, of the retail price of Joint Juice.

However, it is not proper for the jury to determine the amount of statutory damages to award, or even be instructed on statutory damages. As the Court already ruled, "with no room for variation,

BLOOD HURST & O' REARDON, LLP

1  [] the imposition of statutory damages [is] a legal question once the jury has determined the number

2  of units sold and the amount of actual damages." ECF No. 215 at 6.

3      The Ninth Circuit has held that there is no right to a jury on the question of the amount of

4  statutory damages to be awarded when, as here, the amount is not discretionary:

5      [W]e hold that there is no right to a jury trial when a judge awards the minimum
       statutory damages. *See BMG Music v. Gonzalez*, 430 F.3d 888, 892-93 (7th Cir.
6      2005) (explaining that there is no right to a jury trial on damages in copyright cases
       when only the minimum statutory damages are awarded). Under § 1117(d), the
7      minimum damage award, once liability is established under ACPA, is an "amount of
       not less than $1,000." If liability has properly been found on summary judgment, the
8      defendant can gain nothing by going to a jury on the question of damages.

9

10 *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) (affirming district court's award of

11 minimum statutory damages – $1,000 – for each time the defendant violated the statute at issue);

12 *see also BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005) (same and holding that if "a

13 rule of law eliminates discretion in selecting the remedy" then neither side is entitled to a jury on

14 the remedial issue).

15     Here, Premier "can gain nothing by going to a jury on the question" of the statutory damages

16 award because $50 and $500 are non-discretionary amounts awarded under GBL §§ 349 and 350.

17 *GoPets*, 657 F.3d at 1034. Plaintiff will prove the total number of Joint Juice units sold with evidence

18 from their expert Mr. Weir, Premier's retail data, and, if needed, data from retailers produced

19 pursuant to subpoena. *See* ECF No. 182-2 (Weir Report), ¶¶ 7-9. The jury will make a finding with

20 respect to the total number of Joint Juice units sold, and then the Court will do the math on $50 and

21 $500 per unit.

22 **II.   PREMIER'S PURPORTED DEFENSES**

23     **A.   Premier's Good Faith or Lack of Intent to Deceive**

24     Premier intends to have its former and current employees testify that they had "good faith"

25 or no intent to deceive in selling Joint Juice as providing joint health benefits. But intent to deceive

26 is irrelevant under GBL §§ 349 and 350.

27     Premier's employees are expected to testify at trial that they relied on their scientific advisors

28 or attorneys about the efficacy of glucosamine and chondroitin. Dr. Kevin Stone is also expected to

BLOOD HURST & O' REARDON, LLP

1   testify that he created Joint Juice and continued selling it because he heard from his patients that

2   glucosamine products worked for them. While the Court previously limited testimony regarding

3   patient testimonials, it permitted Dr. Stone to testify regarding his "experience hearing from patients

4   regarding glucosamine and chondroitin use" to the extent this is relevant to "Dr. Stone's decision to

5   create the Joint Juice product and his decisions while working at the company…." ECF No. 215 at

6   3. The Court excluded patient testimonials for any other purpose. *Id.*

7       However, Premier or Dr. Stone's intent in creating Joint Juice or continuing to sell it is

8   irrelevant. So is Premier's or its employees' "good faith" reliance on scientific experts or attorneys

9   on the efficacy of glucosamine and chondroitin. "[I]t is not necessary under [GBL sections 349 and

10  350] that a plaintiff establish the defendant's intent to defraud or mislead." *Oswego*, 85 N.Y.2d at

11  26; *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. App. 2000). As a result, whether Premier acted

12  in good faith in committing the misleading act does not matter. *Nick's Garage, Inc. v. Progressive*

13  *Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (good faith of defendant irrelevant because "New

14  York law defines deceptive practices under § 349 by reference to the capacity of the practice to

15  mislead, regardless of intent to deceive").

16      Evidence from Premier regarding its lack of intent to deceive or good faith in advertising

17  and selling Joint Juice is irrelevant and confusing to the jury. Plaintiff requests that this evidence be

18  excluded. Plaintiff did not previously move in limine to exclude evidence of intent because Plaintiff

19  previously sought punitive damages, to which intent is relevant. However, Plaintiff has dropped her

20  request for punitive damages. Accordingly, any evidence and argument regarding Premier's lack of

21  intent to deceive or good faith, is irrelevant and should be excluded, and the jury should be instructed

22  that "good faith" or a lack of intent to deceive is not a defense.

23      **B.      Premier's Compliance with Federal Statutes, Rules, and Regulations**

24      Premier asserts it may have a defense under GBL §§ 349(d) and 350-d because it complied

25  with FDA statutes, rules, and regulations for structure/function claims. Premier did not and given

26  Plaintiff's burden of proving the Joint Juice advertising is misleading, a defense under Sections

27  349(d) and 350-d never comes up. Instructing the jury on this defense and allowing evidence

28  concerning Premier's compliance with FDA regulations will only serve to confuse and mislead.

BLOOD HURST & O' REARDON, LLP

The GBL provides:

[I]t shall be a complete defense that the act or practice is … subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

GBL § 349(d); *see also* GBL § 350-d (same as to advertisement). Here, there is no defense under Sections 349(d) or 350-d because Joint Juice is "misbranded" and does not satisfy the requirements for proper structure/function claims under the Federal Food, Drug, and Cosmetic Act ("FDCA") and corresponding FDA regulations. 21 U.S.C. §§ 343(a) and 343(r)(6); *Bardsley v. Nonni's Foods LLC*, No. 20 Civ. 2979 (NSR), 2022 U.S. Dist. LEXIS 47104, at *32-33 (S.D.N.Y. Mar. 16, 2022) (no defense under Section 349(d) or 350-d where defendant's conduct does not fully comply with the FDCA and FDA regulations).

The FDCA "requires manufacturers of dietary supplements to ensure that the labels on their products are not 'false or misleading in any particular.'" *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 809 (9th Cir. 2020) (quoting 21 USC § 343(a)). If a dietary supplement contains false or misleading labeling, it is deemed "misbranded" in violation of the FDCA and is prohibited. 21 USC § 343(a).

There is no GBL defense here because an element of Plaintiff's GBL claims mirrors the FDCA's requirement that all labeling must be truthful and not misleading. *See* ECF No. 52 at 4-5. If Plaintiff proves her claims that will mean she has proven the Joint Juice advertising claims are misleading and necessarily do not comply with 21 USC § 343(a). It would be confusing and misleading to instruct the jury on a defense that does not apply. Conversely, if Plaintiff fails to prove that the Joint Juice advertising claims are misleading, then Premier wins and no defense under GBL §§ 349(d) or 350-d is needed. In either situation, the defense does not even come up.

The same is true with regard to the FDA's requirements for structure/function claims specifically. The FDA permits "structure/function" advertising claims for dietary supplements if they meet several requirements. First, the advertising claim must be a true structure/function claim and not a disease claim. 21 CFR § 101.93; 21 USC § 343(r)(6). Second, the manufacturer must have

BLOOD HURST & O' REARDON, LLP

substantiation for the claim such that it is "truthful and not misleading." 21 USC § 343(r)(6)(B). Third, a specific FDA disclaimer must be included. 21 USC § 343(r)(6)(C); 21 CFR § 101.93(b). And, fourth, "[n]o later than 30 days after the first marketing of a dietary supplement" with the structure/function claim, the manufacturer "shall notify the [FDA] that it has included such statement on the label or in the labeling of its product." 21 CFR § 101.93(a)(1); 21 USC § 343(r)(6)(C). Premier included the proper FDA disclaimer on Joint Juice but failed to meet the three other requirements.

First, Premier did not comply with the FDA's 30-day notice requirement. The undisputed evidence demonstrates that in 2009 Premier began selling Joint Juice with the advertising claims at issue but did not notify the FDA until 2012. *See* Ex. 1 to Plaintiff's concurrently filed motion in limine to exclude evidence and to compel offer of proof. Because Premier did not comply with the FDA's 30-day notice requirement, a defense under GBL §§ 349(d) or 350-d does not exist.

Second, Premier's labeling of Joint Juice does not contain permissible structure/function claims. Structure/function claims "describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or that characterize the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, provided that such claims are not disease claims." 21 CFR § 101.93(f); 21 USC § 343(r)(6). "A disease claim, conversely, 'claims to diagnose, mitigate, treat, cure, or prevent disease,' either explicitly or implicitly (such as by claiming that a product treats a disease's 'characteristic signs or symptoms')." *Kroessler*, 977 F.3d at 809 (quoting 21 CFR § 101.93(g)(2)(ii)); ECF No. 58 at 3. The FDA considers "extra-label material when identifying implied disease claims" including the manufacturer's intended use to prevent or treat disease. *Kroessler*, 977 F.3d at 815.

Here, Plaintiff will prove in part through Premier's own documents, which constitute party admissions, that Premier's advertising of Joint Juice contains disease claims because it implicitly claims to treat the characteristic signs and symptoms of arthritis – pain and stiffness. If Plaintiff succeeds, Premier has no defense under GBL §§ 349(d) and 350-d. Premier also maintains that Joint Juice should be used by physicians in treating arthritis. This alone prevents the Joint Juice claims from being structure/function claims.

BLOOD HURST & O' REARDON, LLP

1    Third, an element of Plaintiff's GBL claims mirrors the FDA's requirement that a

2    structure/function claim must be truthful and not misleading. *See* ECF No. 52 at 4-5. If Plaintiff

3    proves her GBL claims that means she has proven the Joint Juice advertising claims are misleading

4    and Premier did not comply with the FDCA and FDA regulations. If Plaintiff fails to prove that the

5    Joint Juice advertising claims are misleading, then Premier wins and no defense under GBL

6    §§ 349(d) or 350-d is needed. Instructing the jury on the defense would be unnecessary and allowing

7    evidence and argument concerning it would only serve to confuse the issues and mislead the jury.

8    Alternatively, Plaintiff also has moved *in limine* to exclude evidence and argument that

9    Premier has complied with the FDCA's and FDA's structure/function requirements, and therefore

10   has an affirmative defense under GBL §§ 349(d) and 350-d, or, if Plaintiff's motion cannot be

11   granted on the papers, that the Court hold a hearing pursuant to Federal Rule of Civil Procedure 104

12   to require Premier to make a proffer that it can establish this defense before it is permitted to

13   introduce evidence or make argument about it.

14                                              Respectfully submitted,

15   Dated: May 18, 2022                         BLOOD HURST & O'REARDON, LLP
                                                 TIMOTHY G. BLOOD (149343)
16                                               THOMAS J. O'REARDON II (247952)
                                                 PAULA R. BROWN (254142)
17

18   By:        *s/ Timothy G. Blood*
                                                 TIMOTHY G. BLOOD

19                                               501 West Broadway, Suite 1490
20                                               San Diego, CA 92101
                                                 Tel: 619/338-1100
21                                               619/338-1101 (fax)
                                                 tblood@bholaw.com
22                                               toreardon@bholaw.com
                                                 pbrown@bholaw.com

23                                               *Class Counsel*

24                                               IREDALE & YOO, APC
                                                 EUGENE G. IREDALE (75292)
25                                               GRACE JUN (287973)
                                                 105 W. F Street, Floor 4
26                                               San Diego, CA 92101
                                                 Tel: 619/233-1525
27                                               619/233-3221 (fax)
                                                 egiredale@iredalelaw.com
28                                               gjun@iredalelaw.com

BLOOD HURST & O' REARDON, LLP

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA  92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

Case No. 3:16-cv-06980-RS
PLAINTIFF'S TRIAL BRIEF

00191181

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on May 18, 2022, I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to the e-mail

4  addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the

5  foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6  indicated on the Electronic Mail Notice List.

7       I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on May 18, 2022.

9

10                                    s/  *Timothy G. Blood*
                                     TIMOTHY G. BLOOD

11                           BLOOD HURST & O'REARDON, LLP
12                           501 West Broadway, Suite 1490
                            San Diego, CA  92101
13                           Tel: 619/338-1100
                            619/338-1101 (fax)
14                           tblood@bholaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP