1

MORRISON & FOERSTER LLP
Jessica L. Grant (SBN 178138)

2

JGrant@mofo.com
425 Market Street

3

San Francisco, CA  94105-2482
Telephone:  415.268.7000

4

Facsimile:  415.268.7522

5

VENABLE LLP
Angel A. Garganta (SBN 163957)

6

agarganta@venable.com
Steven E. Swaney (SBN 221437)

7

seswaney@venable.com
Amit Rana (SBN 291912)

8

arana@venable.com
Antonia I. Stabile (SBN 329559)

9

aistabile@venable.com
101 California Street, Suite 3800

10

San Francisco, CA  94111
Telephone:  415.653.3750

11

12

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

MARY BETH MONTERA, individually and
on behalf of all others similarly situated,

16

Plaintiff,

17

v.

18

PREMIER NUTRITION CORPORATION,

19

Defendant.

20

21

22

23

24

25

26

27

28

Case No.    3:16-cv-06980-RS

**PREMIER NUTRITION'S
OPPOSITION TO PLAINTIFF'S
MOTION FOR ENTRY OF
JUDGMENT**

Date:       July 15, 2022
Time:       10:00 a.m.
Ctrm:       3 – 17th Floor
            Hon. Richard Seeborg

Complaint Filed:  December 5, 2016
Trial Date:       May 23, 2022

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

I.      THE REQUESTED STATUTORY DAMAGES AWARD IS IMPERMISSIBLE ........... 2

        A.      Plaintiffs Cannot Receive A Double Recovery Under Both § 349 and § 350 ........ 2

        B.      Plaintiff's Requested Statutory Damages Would Violate Due Process ................. 4

                1.      Plaintiff's Statutory Damages Request Is Disproportionate to the
                        Damages New York Intended to Authorize ................................................. 5

                2.      An Award of $91,000,000 Is Disproportionate and Unreasonable on
                        the Facts of this Case. ................................................................................. 7

                3.      Reducing an Unconstitutional Award Of Statutory Damages Is Not
                        Arbitrary .................................................................................................... 9

        C.      Statutory Damages Should Be Reduced to $50 Per Class Member ..................... 10

II.     PLAINTIFF IS NOT ENTITLED TO PREJUDGMENT INTEREST ON
        STATUTORY DAMAGES ........................................................................................ 12

        A.      New York Law Does Not Support Awarding Prejudgment Interest on
                Statutory Damages ........................................................................................... 12

        B.      If the Court Awards Prejudgment Interest, Plaintiff's Method of
                Calculation Is Improper ................................................................................... 15

CONCLUSION .............................................................................................................. 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*155 Henry Owners Corp. v. Lovlyn Realty Co.*,
5      231 A.D.2d 559 (N.Y. 2nd Dep't 1996) ...............................................................13, 15

6

*Bateman v. American Multi-Cinema, Inc.*,
     623 F.3d 708 (9th Cir. 2010).............................................................................................6
7

*BMW of N. Am. Inc. v. Gore*,
8      517 U.S. 559 (1996) .........................................................................................................5

9

*Cazares v. 2898 Bagel & Bakery Corp.*,
10      2022 WL 1410677 (S.D.N.Y. Apr. 7, 2022).................................................................14

11

*Corrales v. AJMM Trucking Corp.*,
     2020 WL 1911189 (S.D.N.Y. Apr. 20, 2020)..............................................................14
12

*CSC Holdings, Inc. v. Khrisat*,
13      2005 WL 3030838 (S.D.N.Y. Nov. 8, 2005) ...............................................................13

14

*Delulio v. 320-57 Corp.*,
15      472 N.Y.S.2d 379 (1st Dep't 1984) ..............................................................................13

16

*Desvarieux v. Axiom Holdings, Inc.*,
     2022 WL 1467973 (S.D.N.Y. May 10, 2022)..............................................................16
17

*Farar v. Bayer AG*,
18      No. 3:14-cv-04601-WHO (N.D. Cal. Oct. 26, 2018)..................................................11

19

*Garden City Boxing Club, Inc. v. Puebla's Grocery, Inc.*,
20      2007 WL 4243219 (E.D.N.Y. Nov. 5, 2007) .................................................................3

21

*Glob. Van Lines, Inc. v. Glob. Moving Exp., Inc.*,
     2007 WL 7769395 (S.D.N.Y. Aug. 20, 2007) .............................................................13
22

*Golan v. FreeEats.com, Inc.*,
23      930 F.3d 950 (8th Cir. 2019)........................................................................................7, 9

24

*Kaplan v. First City Morg.*,
25      701 N.Y.S.2d 859 (City Ct. 1999) ................................................................................13

26

*Kingvision Pay-Per-View Ltd. v. Hansen*,
     2004 WL 744230 (S.D.N.Y. Apr. 5, 2004)..................................................................14
27

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
28      2013 WL 11319426 (N.D. Ill. Oct. 4, 2013)................................................................15

*In re Longfin Corp. Sec. Class Action Litig.*,
   2020 WL 4345731 (S.D.N.Y. July 29, 2020) ........................................................................15

*Mayline Enters., Inc. v. Milea Truck Sales Corp.*,
   641 F. Supp. 2d 304 (S.D.N.Y. 2009)....................................................................................2

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
   672 N.Y.S.2d 230 (1997) ........................................................................................................13

*In re Media Vision Tech. Sec. Litig.*,
   2003 WL 22227875 (N.D. Cal. Sept. 23, 2003) ..................................................................16

*Morales v. Kavulich & Assocs., P.C.*,
   294 F. Supp. 3d 193 (S.D.N.Y. 2018)....................................................................................2

*Nwagboli v. Teamwork Transp. Corp.*,
   2009 WL 4797777 (S.D.N.Y. Dec. 7, 2009) ..................................................................12, 14

*Parker v. Time Warner Entm't Co.*,
   331 F.3d 13 (2d Cir. 2003)..................................................................................................1, 9

*Piedra v. Ecua Rest., Inc.*,
   2018 WL 1136039 (E.D.N.Y. Jan. 31, 2018) ........................................................................3

*Rodriguez v. Barrita, Inc.*,
   10 F. Supp. 3d 1062 (N.D. Cal. 2014) ..................................................................................3

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010).....................................................................................................3, 4, 5, 10

*Sharpe v. Puritan's Pride, Inc.*,
   2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017) ..............................................................11

*Shepherd v. Law Offices of Cohen & Slamowitz, LLP*,
   668 F. Supp. 2d 579 (S.D.N.Y. 2009)....................................................................................2

*St. Louis I.M. & S. Ry. Co. v. Williams*,
   251 U.S. 63 (1919) ............................................................................................................ *passim*

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003).................................................................................................................5

*Time Warner Cable v. Barnes*,
   13 F. Supp. 2d 543 (S.D.N.Y. 1998)..................................................................................2, 3

*Tu v. TAD System Technology Inc.*,
   2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009)......................................................................3

*United States v. Jin Fuey Moy*,
   241 U.S. 394 (1916) (Holmes, J.) ......................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Vivendi Universal, S.A. Sec. Litig.*,
    284 F.R.D. 144 (S.D.N.Y. 2012) ........................................................................15

*Wakefield v. ViSalus, Inc.*,
    2020 WL 4728878 (D. Or. Aug. 14, 2020) ......................................................5, 6

**Statutes**

N.Y. CPLR § 5001 ...........................................................................12, 13, 14, 15

N.Y. GBL §§ 349 and 350 ................................................................. *passim*

**Other Authorities**

Siegel, New York Prac. § 411 ...................................................................13

**INTRODUCTION**

The jury awarded Plaintiff and the class a total of $1,488,078 in actual damages. But Plaintiff moves for judgment in the amount of $141,511,853, nearly ***100 times*** the total amount class members paid for Joint Juice. Plaintiff asks the Court to double up statutory damages under New York GBL §§ 349 and 350 for a total of $91,436,960, then award $48,586,815 in prejudgment interest on those statutory damages. This staggering amount is entirely unsupported by the facts and the law.

First, New York law precludes double recoveries. Statutory damages thus cannot be awarded under both GBL § 349 and § 350 for the same injury. Moreover, because it is unmistakably clear that New York's legislature intended not to allow statutory damages in aggregate proceedings at all, if this Court is inclined to award statutory damages it should only award the lesser amount of $50 authorized by GBL § 349, and award only $50 *per person*.

Second, awarding Plaintiff's requested classwide statutory damages would violate constitutional limits. The Supreme Court's decision in *St. Louis I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919), imposed due-process limitations on awards of statutory damages that are "wholly disproportioned to the offense or obviously unreasonable." The additional damages Plaintiff now seeks are both. They are so disproportionately large that they amount to de facto punitive damages, but "awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003). To avoid constitutional concerns, and to enforce constitutional limits, a statutory award—if any—should be limited to $50 per person.

Finally, the Court should deny Plaintiff's request for prejudgment interest. Under New York law, prejudgment interest is not available for statutory damages because it is unnecessary for compensation and awards a windfall. Even when prejudgment interest is available, it is awarded only from the last date on which class members' claims accrued. Thus, the Court should not award prejudgment interest, or alternatively award it only on the actual damages of $1,488,078, and only beginning on December 28, 2021.

**I.**      **THE REQUESTED STATUTORY DAMAGES AWARD IS IMPERMISSIBLE**

Plaintiff's request for more than $91,000,000 in statutory damages under GBL §§ 349 and 350 is improper for several reasons.

**A.**      **Plaintiffs Cannot Receive A Double Recovery Under Both § 349 and § 350**

Without citing *any* authority, Plaintiff seeks to "stack" statutory damages under § 349 ($50) and § 350 ($500), such that each sale of Joint Juice would automatically trigger $550 in statutory damages. This would result in an impermissible "double recovery." *See Time Warner Cable v. Barnes*, 13 F. Supp. 2d 543, 549 (S.D.N.Y. 1998) ("Where a court's finding of liability under two different laws is based on the same set of facts, the plaintiff is barred from recovering damages under both laws. Allowing recovery under both laws would be a double recovery, which is a mistake of law.") (citing *Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1079 (2d Cir. 1993)). Here, the Court instructed the jury that the alleged "deceptive act" at issue was the same for both the § 349 and the § 350 claim—*i.e.*, the statements on the labeling and packaging of Joint Juice. Thus, Plaintiff and the class suffered "a single injury [that] gives rise to a single right of recovery." *Mayline Enters., Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 310 (S.D.N.Y. 2009).

The decision in *Mayline* is instructive. There, the plaintiff purchased a truck from the defendant dealership but found that the odometer had been altered. *Id*. at 307. The plaintiff brought suit under (*inter alia*) the Federal Odometer Act and New York GBL § 349—both of which had statutory damages provisions. In granting summary judgment in favor of the plaintiff on those two claims, the district court held that statutory damages were not available under both statutes for the same injury: "plaintiff does not get to recover separate damages for a violation of federal law AND state law; under the rule that a single injury gives rise to a single right of recovery, plaintiff only gets to recover damages once for statutory violations relating to the alteration of the odometer." *Id*. at 310. Other courts have reached the same conclusion in cases where the same conduct allegedly violates both the GBL and other statutes. *See*, *e.g.*, *Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193, 198 n.3 (S.D.N.Y. 2018) ("Morales will not be able to recover statutory damages under both the FDCPA and the GBL as that would violate the prohibition on double recovery for the same injury."); *Shepherd v. Law Offices of Cohen &*

1  *Slamowitz, LLP*, 668 F. Supp. 2d 579, 582-83 (S.D.N.Y. 2009) ("[P]laintiff will not be able to

2  recover statutory damages under both FDCPA and the GBL (that would violate the rule against

3  double recovery for the same injury[).]").

4        These authorities establish that Plaintiff and the class cannot recover statutory damages

5  under both § 349 and § 350 because liability under both statutes is "based on the same set of

6  facts." *Barnes*, 13 F. Supp. 2d at 549; *see also Garden City Boxing Club, Inc. v. Puebla's*

7  *Grocery, Inc.*, 2007 WL 4243219, at *3 (E.D.N.Y. Nov. 5, 2007) ("Plaintiff appears to be seeking

8  full statutory damages under both § 553 and § 605, i.e., double recovery. However, this would

9  violate 'the general principle that precludes double recovery.'") (quoting *Vermont Microsystems,*

10  *Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998)); *Piedra v. Ecua Rest., Inc.*, 2018 WL

11  1136039, at *10 (E.D.N.Y. Jan. 31, 2018) ("Although a defendant's failure to pay overtime

12  violates both he FLSA and the NYLL, a plaintiff may only recover damages under one statute, as

13  double recovery of the same wages and related damages is not permitted.") (internal quotation

14  marks and citation omitted); *Tu v. TAD Sys. Tech. Inc.*, 2009 WL 2905780, at *4 (E.D.N.Y. Sept.

15  10, 2009) (disallowing statutory damages under multiple statutes). Courts in this district follow

16  the same rule of law when applying other statutes. *See*, *e.g.*, *Rodriguez v. Barrita, Inc.*, 10 F.

17  Supp. 3d 1062, 1074 (N.D. Cal. 2014) ("If a plaintiff prevails on a damages claim under both

18  statutes [Unruh Act and CDPA], double recovery is not permitted.").

19        The Court should therefore enter judgment for statutory damages, if at all, under only one

20  statute. Moreover, because the clear intent of the New York legislature is that statutory damages

21  for GBL §§ 349 and 350 not be available at all in aggregate proceedings, the Court should enter

22  judgment only for the lesser amount of $50 available under § 349, and only per person, not per

23  transaction.[1] In *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), the

24  Supreme Court held that statutory damages for GBL §§ 349 and 350 are available in class actions

25  in federal court, even though they are not available in class actions in state court. This Court is

26

27

---

28  [1] As Premier has already explained, the GBL statutory penalties must be imposed per person, and not per transaction, under New York law. *See* Dkt. Nos. 128 and 159.

1    bound by that decision,[2] but *Shady Grove* did not rule on *how* statutory damages are to be

2    calculated or awarded. On those issues, this Court should be guided by New York's clear

3    legislative intent as recounted in the *Shady Grove* dissent, which the majority never disputed.

4           As Justice Ginsburg described (in an opinion joined by Justices Kennedy, Breyer, and

5    Alito), when class-action procedures were enacted in New York, "'various groups advocated for

6    the addition of a provision that would prohibit class action plaintiffs from being awarded a

7    statutorily-created penalty . . . except when expressly authorized in the pertinent statute.'" *Id.* at

8    444 (Ginsburg, J., dissenting) (quoting *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 211 (2007)).

9    The concern about allowing statutory damages to be awarded in class actions was based on the

10   possibility that "recoveries beyond actual damages could lead to excessively harsh results" and

11   "[w]hen lumped together . . . [statutory] penalties and class actions produce overkill." *Id.* (internal

12   quotation marks omitted). "In order to avoid 'annihilating punishment of the defendant,' the New

13   York legislature amended the proposed statute to bar the recovery of statutory damages in class

14   actions." *Id.* (quoting V. Alexander, Practice Commentaries, C901:11, reprinted in 7B McKinney's

15   Consolidated Laws of New York Ann., p. 104 (2006) (internal quotation marks omitted)).

16          The foregoing analysis of the legislative history makes clear that "New York's decision [ ]

17   to block class-action proceedings for statutory damages . . . [was] a means to a manifestly

18   substantive end: Limiting a defendant's liability in a single lawsuit in order to prevent the

19   exorbitant inflation of penalties—remedies the New York legislature created with individual suits

20   in mind." *Id.* at 445. Given that substantive intent, if the Court is inclined to award additional

21   damages to Plaintiff and the class, it should award only the lesser amount of $50 in statutory

22   damages available under GBL § 349, and it should limit those damages to $50 per person.

23          **B.    Plaintiff's Requested Statutory Damages Would Violate Due Process**

24          If the Court were to award anything more than statutory damages of $50 per person, the

25   resulting amount would violate Premier's due process rights. In *Williams*, the Supreme Court held

26

27   ---
     [2] Although this Court is bound by *Shady Grove*, Premier Nutrition maintains that it was wrongly
     decided and preserves for appeal the ability to ask the Ninth Circuit to certify the question of state

28   legislative intent to the New York Court of Appeals.

that a statutory damages award violates due process where it is "wholly disproportioned to the offense or obviously unreasonable."[3] 251 U.S. at 67. Here, the award Plaintiff seeks is both.

### 1.   Plaintiff's Statutory Damages Request Is Disproportionate to the Damages New York Intended to Authorize

Plaintiff recognizes (as she must) that the due-process proportionality analysis considers the legislative intent behind the statutory damages provisions at issue. *See Williams*, 251 U.S. at 66 (analyzing legislative intent as part of determination whether statutory damages award violated due process). As the discussion above makes clear, the New York legislature intended to preclude aggregate awards of statutory damages altogether and plainly never intended to authorize the type of exorbitant award that Plaintiff now seeks. This alone demonstrates that $91,000,000 is disproportionate to the "offense" and militates strongly in favor of finding a due process violation.

Plaintiff argues that the New York legislature's intent is "irrelevant" because *Shady Grove* allows GBL statutory damages to be pursued in class actions in federal court. Mot. at 6. But just as *Shady Grove* did not address how statutory damages should be measured, neither did it address whether and when any such damages would violate due process. *Shady Grove* resolved a question of federal *procedure*; it says nothing about whether the judgment Plaintiff seeks is consistent with the New York legislature's *substantive* intent and hence due process (it is not). Indeed, the relevant authorities—including those Plaintiff cites—recognize that whether the legislature intended to allow statutory damages to be aggregated in a class action is directly relevant to the constitutionality of an award. *See, e.g., Wakefield v. ViSalus, Inc.*, 2020 WL 4728878, at *5 (D. Or. Aug. 14, 2020) (noting that "Congress expected class actions to be available when it enacted

---

[3] Although *Williams* is the only Supreme Court decision addressing the due-process limitations on statutory damages, it is important to note that *Williams* was decided over 100 years ago—long before the advent of class actions that may result in the astonishing aggregation of individual statutory damages awards. Given the Supreme Court's more recent jurisprudence establishing due-process limits on the deprivation of property in the context of punitive damages awards, the Court should also consider the factors set forth in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559 (1996).

the statutory damages provision of the TCPA"). The New York legislature's intent to prohibit statutory damages in class actions is clearly relevant to the due-process proportionality analysis.

For these reasons, Plaintiff's reliance on cases under the federal Telephone Consumer Protection Act (TCPA) and other statutes is unavailing. The courts in those cases found that Congress specifically intended for each separate violation of the TCPA to trigger a separate statutory award, *and* for those awards to be aggregated as part of a class action. *See, e.g.*, *Wakefield*, 2020 WL 4728878, at *5 (noting that "Congress expected class actions to be available when it enacted the statutory damages provision of the TCPA"). Here, the legislative intent is entirely different. Plaintiff relies extensively on *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), but that decision is irrelevant because it addressed *class certification*, not due process. The issue was whether class certification could be denied because of the potential for an enormous statutory damages award under the Fair and Accurate Credit Transaction Data Act (FACTA). *Id*. at 713. The Ninth Circuit held that proportionality and the size of a potential statutory damages award were not proper considerations in deciding whether to certify a class. *Id*. at 721-23. That holding has no bearing on the constitutional issue now before this Court. In fact, the Ninth Circuit expressly "reserve[d] judgment as to whether, if [the plaintiff] prevails at trial, the district court may be entitled to reduce the award if it is unconstitutionally excessive." *Id*. at 723.

Plaintiff further argues that an award of $91,000,000 in statutory damages is not unconstitutionally excessive because "the New York legislature was aware that statutory damages of $50 and $500 . . . may amount to 50 or 500 times the actual damages suffered by a consumer." Mot. at 4. But if this reasoning were correct, then *no* statutory damages award could *ever* exceed constitutional limitations, because the legislature supposedly expressed an "intent" for that amount to be awarded for a violation of the statute. In other words, if merely including statutory damages were enough to establish legislative intent to permit *any* amount of statutory damages to be awarded for a violation of the statute—regardless of proportionality or reasonableness—then *Williams* and its progeny would be rendered meaningless. On the contrary, courts around the country have reduced statutory damages awards on constitutional grounds—including under the

TCPA, despite Congress's apparent intent to impose enormous aggregate awards in the context of class actions. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (rejecting argument that due-process analysis of statutory damages "may not consider the aggregate award," and affirming the district court's reduction on due-process grounds of statutory damages award under the TCPA).

Plaintiff's suggestion that a $91,000,000 statutory damages award is consistent with the New York legislature's intent is, quite simply, preposterous. The exact opposite is true: the New York legislature intended to *prohibit* the aggregation of statutory damages in the context of a class action—for the very reason that it could, as here, result in a staggering sum out of all proportion to the actual harm caused by the defendant's conduct.

### 2.   An Award of $91,000,000 Is Disproportionate and Unreasonable on the Facts of this Case.

The evidence at trial and other facts specific to this case also make clear that Plaintiff's requested statutory damages are disproportionate and obviously unreasonable.

The evidence showed that Joint Juice was developed by a reputable orthopedic surgeon based on his patients' reports of obtaining favorable joint-health benefits from taking supplemental glucosamine. The uncontested evidence further established that Dr. Stone's patients experienced improvements in joint stiffness after taking glucosamine supplements. The body of scientific research amply supported the conclusion that glucosamine provides joint health benefits including reduction of pain and swelling, and improvements in joint-space narrowing ("JSN"). Indeed, even Plaintiff's counsel conceded at trial that when Joint Juice was developed there was no reason to believe that glucosamine supplements were ineffective in providing the joint-health benefits specified on the product's label.

Plaintiff's theory of the case was that during the mid- to late-2000s, years after Joint Juice was developed, further scientific research established that glucosamine was likely ineffective. Yet the evidence was uncontested that, despite negative findings in some studies, there continued to be substantial support for glucosamine's ability to improve joint health and reduce pain and stiffness associated with arthritis. *See*, *e.g.*, Tr. Ex. 586 (2015 peer-reviewed double-blind,

randomized, placebo-controlled human clinical trial concluding that "the combination of glucosamine sulfate and chondroitin sulfate did achieve meaningful reduction in tibio-femoral JSN over two years, compared with placebo"); Tr. Ex. 588 (2009 peer-reviewed double-blind, randomized, placebo-controlled human clinical trial concluding that glucosamine "was associated with statistically significant reductions in pain and improvements in functioning . . . compared with baseline and placebo in these patients with knee OA"). Indeed, the most recent meta-analysis—which reviewed eight randomized, double-blind, placebo-controlled human clinical trials—concluded that glucosamine and chondroitin "showed a significant advantage against placebo in the total WOMAC score [measuring arthritis pain], affirming the therapeutic effect of the combination." Tr. Ex. 753. Put simply, Premier's statements about Joint Juice had ample support in credible scientific studies.

The evidence also showed that Premier received overwhelming positive feedback from consumers that Joint Juice worked for them. Testimony established that Premier's relevant decision-makers believed in the efficacy of Joint Juice, believed that consumers were benefitting from the product based on consumer testimonials and surveys, and that the labeling statements were truthful. Moreover, despite a miscommunication with outside counsel that caused a delay, Premier disclosed the labeling claims to the FDA and never received any response from FDA (or other government agency) suggesting that the claims were false or misleading.

In addition, class members received benefits when they consumed Joint Juice aside from glucosamine. As a factual matter, it is undisputed that class members who consumed Joint Juice received benefits such as receiving glucosamine in liquid form as opposed to pills, as well as Vitamin D, Vitamin C, and hydration. Thus, at a cost of less than $1 per bottle, class members received vitamins that are widely recognized to be beneficial to health.

Against this evidentiary backdrop, a $91,000,000 statutory damages award is wildly disproportionate to Premier's conduct and any actual harm to class members. Plaintiff's situation is illustrative: she would receive over $66,000 in statutory damages from her claimed ($800) purchases of Joint Juice, which would amount to more than the annual salary of most Americans. Widening the lens makes matters worse: the aggregate statutory damages Plaintiff seeks is more

1   than 60 times greater than the maximum amount of actual damages—and nearly **100 times**

2   **greater** if the Court were to award prejudgment interest.

3       The Second Circuit recognized the due-process implications of this very scenario in

4   *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2003), when it observed that "the potential

5   for a devastating large [statutory] damages award, out of all reasonable proportion to the actual

6   harm suffered by members of the plaintiff class, may raise due process issues." Due process is of

7   particular concern under these circumstances, because the "statutory damages come to resemble

8   punitive damages—yet ones that are awarded as a matter of strict liability, rather than for the

9   egregious conduct typically necessary to support a punitive damages award." *Id*. Thus, the

10   Second Circuit recognized that "in a sufficiently serious case the due process clause might be

11   invoked . . . to nullify that effect and reduce the aggregate damage award." *Id*. (citing *Campbell*,

12   538 U.S. 408, and *Gore*, 517 U.S. at 580); *see also Golan*, 930 F.3d at 962-63 (reducing TCPA

13   statutory-damages award by 98 percent on due process grounds). That is certainly the case here:

14   despite an aggregate amount of harm of less than $1.5 million, Premier now faces a de facto

15   punitive damages award of $91,000,000. What is worse, that penalty is imposed without any of

16   the safeguards—*e.g.*, a showing of egregious conduct proved by clear and convincing evidence—

17   that would apply in a case involving *de jure* punitive damages. In fact, the GBL has specific

18   provisions to increase damages as a punitive measure for egregious conduct: the court may award

19   treble damages "if the court finds the defendant willfully or knowingly violated this section."

20   GBL § 349(h), § 350-e(3). Without any such finding, Plaintiff's request to use the aggregation of

21   statutory damages to impose a $91,000,000 judgment on Premier plainly violates due process in

22   the very manner the *Parker* court envisioned.

23            **3.**      **Reducing an Unconstitutional Award Of Statutory Damages Is Not**

24                  **Arbitrary**

25       Plaintiff does not even attempt to address *Williams* or otherwise explain why $91,000,000

26   is proportionate and reasonable on the facts of this case. All Plaintiff can say is that any reduction

27   of that amount would be "arbitrary." To the contrary, reducing the award to $50 per person would

28   be the best way to comply with New York's legislative intent, within the grounds allowed by

1    *Shady Grove*. Moreover, Plaintiff's arbitrariness argument lacks merit because it would mean that

2    no court could ever reduce a statutory damages award on due process grounds.

3          Plaintiff claims there is no place in the due-process analysis for comparing the amount of

4    actual damages to the amount of statutory damages (Mot. at 4), which is clearly contrary to

5    *Williams*. In claiming otherwise, Plaintiff quotes *Williams* out of context. The portion Plaintiff

6    seizes on was responding to a different argument—namely, that the statutory damages violated

7    due process because they were to be paid to the plaintiff rather than the state. *See* 251 U.S. at 66.

8    The Court rejected that argument, saying due process did not preclude private enforcement of

9    statutory obligations. *Id*. Nothing in that structural analysis speaks to whether, when deciding if

10    the magnitude of a statutory-damages award violates due process, a court may (or must) consider

11    the plaintiff's individual harm.[4] Contrary to Plaintiff's contention, to comply with *Williams*'

12    direction to determine whether the amount of statutory damages is "disproportionate" to the

13    offense, a court must necessarily compare the amount of harm caused by the defendant's conduct

14    to the amount of statutory damages to be awarded.

15          Here, receiving a full refund of the purchase price is surely sufficient to compensate

16    consumers for any injury caused by their purchase of Joint Juice. Given the jury's finding that the

17    aggregate pecuniary harm to the class is $1,488,078, awarding the requested statutory damages

18    would serve no compensatory purpose and would instead be disproportionate and obviously

19    unreasonable.

20    **C.    Statutory Damages Should Be Reduced to $50 Per Class Member**

21          As the foregoing analysis demonstrates, if the Court is inclined to award additional

22    damages to Plaintiff and the class then reducing the aggregate amount of statutory damages is

23    necessary to comply with due process. The Court should enter judgment stating that statutory

24    damages are capped at $50 per class member under GBL § 349. Adhering to a "per person"

25

26    ―――――――――――
[4] To the extent *Williams* could be read to prohibit the Court from comparing actual damages to

27    statutory damages in assessing proportionality, it would be inconsistent with the Supreme Court's more recent jurisprudence on punitive damages. Indeed, *Williams* expressly noted that statutory damages are "imposed as a punishment"; thus, to the extent statutory damages in this case are

28    punitive in nature, the Supreme Court's decisions on punitive damages are relevant.

1   approach, limited to $50 per class member, would (1) eliminate Plaintiff's "arbitrariness"

2   concerns, as it would reflect an amount specifically prescribed by the legislature; (2) conform to

3   prior rulings from other judges in this district (and elsewhere) that statutory damages under the

4   GBL are awarded "per person"; (3) respect the New York legislature's intent to avoid

5   "annihilating damages" by aggregating statutory damages in class actions; and (4) avoid the grave

6   due process concerns discussed above. *See United States v. Jin Fuey Moy*, 241 U.S. 394, 401

7   (1916) (Holmes, J.) ("A statute must be construed, if fairly possible, so as to avoid not only the

8   conclusion that it is unconstitutional but also grave doubts upon that score.").

9       First, by awarding an amount of statutory damages specifically prescribed by GBL § 349,

10   the Court would not be acting "arbitrarily" as Plaintiff suggests. This would conform with the

11   New York legislature's intent to provide consumers with a minimum amount of damages for

12   alleged deceptive business practices, and would still allow class members to recover the full

13   amount of their actual damages to the extent it exceeds $50.

14       Second, as the Court has previously recognized, at least two other judges in this district

15   have previously found that statutory damages under the GBL are available only on a "per person"

16   basis. *See Farar v. Bayer AG*, No. 3:14-cv-04601-WHO (N.D. Cal. Oct. 26, 2018) (concluding

17   "that statutory damages are available only on a per person, not a per transaction, basis"); *Sharpe

18   v. Puritan's Pride, Inc.*, No. 3:16-cv-06717-JD, 2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017)

19   (finding that GBL Section 349 "provides for the greater of actual damages or $50 in statutory

20   damages per person."). By conforming its ultimate decision on this question to those of other

21   judges in this district, the Court would provide more clarity to future litigants and avoid an

22   obvious appellate issue.

23       Third, the New York legislature specifically intended that the statutory damages available

24   to consumers as an alternative to actual damages would not be awarded on an aggregate basis in a

25   class action. Limiting recovery to $50 per person in this class action—while still inconsistent with

26   that legislative intent—exhibits due consideration and respect for New York's decision that its

27   laws should not be used to generate "annihilating damages" in consumer class actions. It would

28

1  also be consistent with the GBL's distinction between treble damages—which are designed to

2  punish for willful violations of the statute—and statutory damages.

3        Finally, limiting statutory damages to $50 per person still serves the purposes of statutory

4  damages under the GBL, while simultaneously avoiding the significant due process concerns

5  caused by the exorbitant judgment Plaintiff seeks. For class members who bought one unit of

6  Joint Juice, they can still receive statutory damages that are more than five times their actual

7  damages. For class members (like Plaintiff) who purchased multiple units, the jury's award of

8  compensatory damages is sufficient to make those individuals whole. Simply put, an award of

9  actual damages or $50 in statutory damages per person, whichever is greater, makes every class

10  member whole (and many more than whole) without violating due process.

## II.    PLAINTIFF IS NOT ENTITLED TO PREJUDGMENT INTEREST ON STATUTORY DAMAGES

### A.    New York Law Does Not Support Awarding Prejudgment Interest on Statutory Damages

14        Plaintiff seeks "mandatory" prejudgment interest under NY CPLR § 5001(a) on her GBL

15  §§ 349 and 350 statutory damages, for a total of $48,586,815.74 in prejudgment interest alone.

16  Plaintiff cites *no authority* to support an award of prejudgment interest on statutory damages

17  under CPLR § 5001(a) or any other law. CPLR § 5001(a) provides:

> Interest shall be recovered upon a sum awarded because of a breach
> of performance of a contract, or because of an act or omission
> depriving or otherwise interfering with title to, or possession or
> enjoyment of, property, except that in an action of an equitable
> nature, interest and the rate and date from which it shall be computed
> shall be in the court's discretion.

22  Under this plain language, prejudgment interest is awarded for breach of contract actions or

23  certain actions related to property. Nothing in CPLR § 5001(a) authorizes awarding prejudgment

24  interest for violations of GBL §§ 349 and 350. *Cf. Nwagboli v. Teamwork Transp. Corp.*, 2009

25  WL 4797777, at *7, *12 (S.D.N.Y. Dec. 7, 2009) (citing CPLR §§ 5001 & 5002) (awarding

26  plaintiffs statutory damages on a claim under GBL § 349(h) but "awarding prejudgment interest

27  on the plaintiffs' breach of contract damages *only*") (emphasis added).

28

1    Even if § 5001(a) authorized mandatory prejudgment interest on *actual* damages in GBL

2    cases, it would not apply to the statutory damages awarded here. "'The award of interest is

3    founded on the theory that there has been a deprivation of use of money or its equivalent and that

4    ***the sole function of interest is to make whole the party aggrieved***. It is not to provide a windfall

5    for either party.'" *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D.2d 559, 560 (N.Y. 2nd

6    Dep't 1996) (quoting *Kaiser v. Fishman*, 187 A.D.2d 623, 627 (N.Y. 2nd Dep't 1992)). Thus,

7    New York courts are clear that prejudgment interest under CPLR § 5001(a) does not apply to

8    punitive damages. *See, e.g.*, *Delulio v. 320-57 Corp.*, 472 N.Y.S.2d 379, 381 (1st Dep't 1984)

9    ("Punitive damages are intended only to impose punishment on a defendant. Interest on such

10   damages prior to verdict or decision is unnecessary to assure full compensation to the injured

11   party."); *Kaplan v. First City Morg.*, 701 N.Y.S.2d 859, 865 (City Ct. 1999) ("It is well settled

12   that a party cannot recover interest on a punitive damage award for any period prior to the date of

13   the trial court's decision.") (citing *Deborah S. v. Diorio*, 612 N.Y.S.2d 542 (1994); *McIntyre v.

14   Manhattan Ford, Lincoln-Mercury, Inc.*, 672 N.Y.S.2d 230, 235 (1997); Siegel, New York Prac.

15   § 411, at 664-667 [3d ed]; *see also CSC Holdings, Inc. v. Khrisat*, 2005 WL 3030838, at *6

16   (S.D.N.Y. Nov. 8, 2005) ("Two major exceptions to prejudgment interest under N.Y. C.P.L.R.

17   5001 are personal injury and punitive damages claims."). That reasoning applies here because, as

18   explained above, the statutory damages Plaintiff seeks would serve only a punitive function: the

19   maximum amount of pecuniary harm to class members allegedly caused by purchasing Joint Juice

20   is known, and the jury awarded a specific amount of compensatory damages sufficient to make

21   every class member whole. Thus, there is no basis for awarding prejudgment interest on the

22   statutory damages.

23       ***Every court*** to consider the availability of prejudgment interest on statutory damages

24   under CPLR § 5001(a) has declined to award such prejudgment interest, finding statutory

25   damages to be akin to punitive damages. *See*, *e.g.*, *CSC Holdings*, 2005 WL 3030838, at *6

26   ("Because statutory damages under the Communications Act are designed to deter others from

27   similar infringing activity, they are analogous to punitive damages.") (declining to award

28   prejudgment interest on statutory damages under CPLR § 5001); *Kaplan*, 701 N.Y.S.2d at 865

1    (finding $550 statutory damages under TCPA "punitive in nature" and declining to award

2    prejudgment interest); *Glob. Van Lines, Inc. v. Glob. Moving Exp., Inc.*, 2007 WL 7769395, at *5

3    (S.D.N.Y. Aug. 20, 2007) ("Statutory damages awarded under the Lanham Act serve as a

4    punishment and as a deterrent to future trademark infringement. . . . As such, they are akin to

5    punitive damages. . . . Therefore, an award of prejudgment interest, in the circumstances of the

6    instant case, would be inappropriate."); *Kingvision Pay-Per-View Ltd. v. Hansen*, 2004 WL

7    744230, at *4 (S.D.N.Y. Apr. 5, 2004) (finding statutory damages under TCPA "analogous to

8    punitive damages in that they are designed to deter others from similar infringing activity" and

9    declining to award prejudgment interest on such damages under CPLR § 5001); *see also Corrales*

10   *v. AJMM Trucking Corp.*, 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020) ("Under New York

11   law, Plaintiff is entitled to prejudgment interest on actual damages. Prejudgment interest is

12   calculated on a simple basis and applies only to the lost wages, not the liquidated damages or

13   statutory damages.") (citing CPLR § 5001(a)); *Cazares v. 2898 Bagel & Bakery Corp.*, 2022 WL

14   1410677, at *18 (S.D.N.Y. Apr. 7, 2022) ("*Cazares* is entitled to prejudgment interest on her

15   damages for unpaid minimum wages, unpaid overtime, and unpaid spread-of-hours pay (but not

16   on her statutory damages for wage-statement and wage-notice violations).").

17        Premier is not aware of any cases awarding prejudgment interest on statutory damages

18   under the GBL. But there are cases where exactly the opposite is true. *See Nwagboli*, 2009 WL

19   4797777, at *7, *12 (awarding statutory damages under the GBL but "awarding prejudgment

20   interest on the plaintiffs' breach of contract damages *only*") (emphasis added).

21        Given the absence of authority to support her position, it is unsurprising that Plaintiff

22   makes no effort to explain why prejudgment interest under CPLR § 5001(a) should apply to the

23   statutory damages she seeks. Plaintiff cannot reasonably claim that the requested statutory

24   damages—which are up to 100 times greater than actual damages for class members in this

25   case—are intended to "compensate" rather than punish or deter. Given the evidence that

26   consumers paid an average of approximately $9 for a package of Joint Juice, any amount of

27   statutory damages would make class members far more than "whole." And since the "sole

28   function" of prejudgment interest is to make the plaintiff whole, awarding prejudgment interest

1    on top of statutory damages here would constitute an impermissible "windfall" to Plaintiff and the

2    class. *155 Henry Owners*, 231 A.D.2d at 560. Accordingly, GBL statutory damages are akin to

3    punitive damages in this case and are not subject to prejudgment interest under CPLR § 5001.

4    **B.    If the Court Awards Prejudgment Interest, Plaintiff's Method of Calculation Is Improper**

5

6    Even if the Court were to conclude that prejudgment interest should be added to statutory

7    damages, Plaintiff's proposed method of calculation is contrary to law. Plaintiff is correct that

8    interest is calculated "from the earliest ascertainable date the cause of action existed, except that

9    interest upon damages incurred thereafter shall be computed from the date incurred." CPLR §

10   5001(b). Plaintiff's expert purportedly calculated interest beginning from various purchase dates

11   throughout the class period based on available sales data. But because class members' causes of

12   action each accrued at different times during the class period, and calculation of prejudgment

13   interest based on these separate dates of accrual would cause individualized issues, this

14   calculation method is inappropriate in a class action.

15   Numerous cases analyzing prejudgment interest in class actions acknowledge that "[i]t is

16   not appropriate award prejudgment interest for a period pre-dating the class members' purchase,"

17   and therefore calculate prejudgment interest starting on the last day of the class period. *See In re*

18   *Longfin Corp. Sec. Class Action Litig.*, 2020 WL 4345731, at *4 (S.D.N.Y. July 29, 2020). This

19   makes sense, of course, because an individual class member cannot receive interest that is

20   calculated from a time before that class member purchased Joint Juice. Since the correct

21   application of prejudgment interest requires information specific to each class member, Plaintiff's

22   suggestion that interest can be calculated on a monthly basis beginning at the start of the class

23   period, and then applied equally across the entire class, is improper.

24   For these reasons, courts have held that any class-wide award of prejudgment interest

25   must necessarily be calculated from the last day on which any class member's claim accrued. *See,*

26   *e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 163–64 (S.D.N.Y. 2012)

27   (calculating prejudgment interest from August 14, 2002, "the last day of the class period");  *In re*

28   *Longfin*, 2020 WL 4345731, at *4 (awarding prejudgment interest from April 6, 2018, the last day

1    class members purchased stock, through judgment); *Lawrence E. Jaffe Pension Plan v.*

2    *Household Int'l, Inc.*, 2013 WL 11319426, at *6 (N.D. Ill. Oct. 4, 2013) ("Finally, the Court finds

3    that the prejudgment interest should begin to accrue as of the last date of the class period.");

4    *Desvarieux v. Axiom Holdings, Inc.*, 2022 WL 1467973, at *5 (S.D.N.Y. May 10, 2022)

5    (awarding prejudgment interest calculated from the last day of the class period, which is

6    "consistent with case law"); *In re Media Vision Tech. Sec. Litig.*, 2003 WL 22227875, at *2 n.4

7    (N.D. Cal. Sept. 23, 2003) (noting that the "accrual of prejudgment [interest was] from March 6,

8    1994 (the last day of the class period)"). Here, if the Court is inclined to award prejudgment

9    interest on Plaintiff's statutory damages, the appropriate time period would begin on the last day

10    of the class period, December 28, 2021, through the date of judgment.

11                                  **CONCLUSION**

12    For the foregoing reasons, the Court should deny Plaintiff's request for a judgment that

13    includes over $91,000,000 in statutory damages and nearly $50,000,000 in prejudgment interest.

14    The Court should instead enter the proposed judgment attached hereto as Exhibit 1.

15

16    Dated:  June 23, 2022                    VENABLE LLP

17

18                                  By:    /s/ *Steven Swaney*
                                           Steven E. Swaney

19                                  MORRISON & FOERSTER LLP
                                    Jessica L. Grant
20

21                                  Attorneys for Defendant
                                    PREMIER NUTRITION COMPANY, LLC

22

23

24

25

26

27

28