VENABLE LLP
Angel A. Garganta (SBN 163957)
agarganta@venable.com
Steven E. Swaney (SBN 221437)
seswaney@venable.com
Amit Rana (SBN 291912)
arana@venable.com
Antonia I. Stabile (SBN 329559)
aistabile@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:     415.653.3750
Facsimile:     415.653.3755

MORRISON & FOERSTER LLP
Jessica L. Grant (SBN 178138)
jgrant@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone:     415.268.7000
Facsimile:     415.268.7522

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>Defendant. | Case No. 3:16-cv-06980-RS<br><br>Hon. Richard Seeborg<br><br>**NOTICE OF MOTION AND MOTION TO DECERTIFY CLASS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>CLASS ACTION<br><br>Hearing Date: August 18, 2022<br>Time: 1:30 p.m.<br>Location: 450 Golden Gate Avenue, 17th Floor, Courtroom 3, San Francisco, California<br><br>Complaint Filed:   December 5, 2016<br>Trial Date:          May 23, 2022 |

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

1

## <u>NOTICE OF MOTION AND MOTION TO DECERTIFY THE CLASS</u>

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE

3 NOTICE THAT on August 18, 2022, at 1:30 p.m. in Courtroom 3 of the above-captioned court,

4 located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, or as soon thereafter

5 as counsel may be heard, Defendant Premier Nutrition Company, LLC will and hereby does

6 move for an order pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) and 23(b)(3)

7 decertifying the class.

8   This motion is made on the grounds that the evidence at trial failed to establish common

9 proof on elements of Plaintiff's claims, and that a class action is not a superior method of fairly

10 and efficiently adjudicating the controversy.

11   This motion is based on this Notice of Motion and Motion, the Memorandum of Points

12 and Authorities, the records and files in this action, and any other matter the Court may consider.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VENABLE LLP**
101 CALIFORNIA STREET , SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

1

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    I.     THE COURT'S CLASS CERTIFICATION DECISION ........................................... 3

    II.    PLAINTIFF PURSUED A THEORY OF CAUSATION THAT TURNS ON INDIVIDUAL  PURCHASING DECISIONS. ..................................................... 3

APPLICABLE LEGAL STANDARD ...................................................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.     ON THE TRIAL RECORD, CAUSATION IS AN INDIVIDUAL ISSUE THAT CANNOT BE TRIED CLASSWIDE AND THAT REQUIRES DECERTIFICATION ON ALL ISSUES. .................................................................. 5

        a.   Only Common Issues Can Be Included In A Class Trial, and When Causation Is An Individual Issue, It Predominates and Precludes Certification of Any Class Under Rule 23(b)(3). ...................................... 5

        b.   When Causation Is An Individual Issue, It Predominates and Precludes Certification of Any Class Under Rule 23(b)(3). .................... 6

        c.   Plaintiff's Full-Refund Theory Made Causation An Individual Issue in This Case .................................................................................... 7

    II.    ON THE TRIAL RECORD, PLAINTIFF FAILED TO OFFER SUFFICIENT EVIDENCE TO SUPPORT SENDING A FULL-REFUND DAMAGES THEORY TO THE JURY, WHICH REQUIRES THE CLASS TO BE DECERTIFIED. ...................................................................... 11

    III.   THE SUPERIORITY REQUIREMENT WAS NOT SATISFIED ......................... 12

CONCLUSION ....................................................................................................................... 13

**VENABLE LLP**
101 CALIFORNIA STREET , SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
   2017 WL 2559615 (C.D. Cal. June 7, 2017) ...........................................................7

*In re Amla Litig.*,
   320 F. Supp. 3d 578 (S.D.N.Y. 2018)......................................................................8

*Bowerman v. Field Asset Services, Inc.*,
   ___ F.4th ___, 2022 WL 2433971 (9th Cir. July 5, 2022) ............................... *passim*

*Castillo v. Bank of America, NA*,
   980 F.3d 723 (9th Cir. 2020) ...................................................................................6

*Cimino v. Raymark Indus., Inc.*,
   151 F.3d 297 (5th Cir. 1998) ...................................................................................5

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...................................................................11

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).............................................................................................6, 11

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
   27 F. Supp. 3d 357 (E.D.N.Y. 2014) .....................................................................11

*Dent v. Nat'l Football League*,
   2021 WL 3885954 (N.D. Cal. Aug. 31, 2021) .......................................................12

*Gartin v. S&M NuTec LLC*,
   245 F.R.D. 429 442 (C.D. Cal. 2007) ......................................................................5

*Gessele v. Jack in the Box, Inc.*,
   2021 WL 5746913 (D. Or. Dec. 1, 2021) .................................................................4

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008).....................................................................................6

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) ..........................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................7

*Marotto v. Kellogg Co.*,
   415 F. Supp. 3d 476 (S.D.N.Y. 2019)..................................................................2, 6

ii

*Mier v. CVS Pharm., Inc.*,
    2021 WL 6102519 (C.D. Cal. Nov. 19, 2021)...........................................................................4

*Mullins v. Premier Nutrition Corp.*,
    No. 3:13-cv-01271-RS (N.D. Cal.) ...............................................................................3, 12

*Oscar v. BMW of N. Am., LLC*,
    274 F.R.D. 498 (S.D.N.Y. 2011) ...........................................................................................6

*Pelman v. McDonald's Corp.*,
    272 F.R.D. 82 (S.D.N.Y. 2010) .............................................................................................7

*Plavin v. Grp. Health Inc.*,
    146 N.E.3d 1164 (N.Y. 2020) ................................................................................................7

*Ries v. Arizona Bev. USA LLC*,
    2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ......................................................................4

*Segovia v. Vitamin Shoppe, Inc.*,
    2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) .......................................................................7

*Small v. Lorillard Tobacco Co.*,
    720 N.E.2d 892 (N.Y. 1999)................................................................................................11

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021)............................................................................................................7

*True Health Chiropractic Inc. v. McKesson Corp.*,
    2021 WL 4818945 (N.D. Cal. Oct. 15, 2021) .......................................................................4

*Tyson Foods, Inc. v. Bouphakeo*,
    136 S. Ct. 1036 (2016) ..........................................................................................................5

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ......................................................................4

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir.), *amended on denial of reh'g* 273 F.3d 1266 (2001) ...................6, 13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3

    This case was tried as a class action on the premise that certain statements on the label

4 and packaging of Joint Juice either caused all the purchases in New York over the course of

5 more than eight years, from December 5, 2013 to December 28, 2021, or none of them. The

6 evidence at trial showed that this premise was wrong. New York consumers who purchased Joint

7 Juice during the class period were diverse. Some New Yorker consumers bought Joint Juice

8 because of the challenged statements on the label, but many did not, and instead bought it for

9 other reasons. Giving the jury only two all-or-nothing options on causation—either all purchases

10 were caused by the challenged statements, or none were—was a false choice. Both options were

11 wrong because the evidence showed some purchases were caused by the statements but many

12 were not.

13     The certified class in this case must therefore be decertified because trial showed that

14 causation is an individual issue, not a common issue. Just days ago, the Ninth Circuit ordered

15 decertification of a class after trial because when "the plaintiffs cannot prove that damages

16 *resulted* from the defendant's conduct" on a common basis, "then the plaintiffs cannot establish

17 predominance" of common issues under Federal Rule of Civil Procedure 23(b)(3). *Bowerman v.*

18 *Field Asset Services, Inc.*, ___ F.4th ___, 2022 WL 2433971, at *8 (9th Cir. July 5, 2022)

19 (quoting *Castillo v. Bank of America, NA*, 980 F.3d 723, 730 (9th Cir. 2020)) (emphasis in

20 original). That rule controls this case.

21     In most false advertising cases, plaintiffs allege a common, price-premium theory of

22 causation. They contend that the challenged statements caused the product's price to increase for

23 everyone, thus injuring everyone regardless of why anyone bought the product.

24     Here, however, Plaintiff pursued a full refund theory, not a price-premium theory. Under

25 Plaintiff's theory, (1) the injury was the purchase, (2) the allegedly deceptive practice was

26 including the challenged joint-health statements on the bottles and packaging, and (3) the causal

27 link between the two was that the statements allegedly caused New Yorker consumers to buy

28 Joint Juice. This full refund theory makes causation turn on individual purchasing decisions.

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

1    At trial, *all* the evidence—both Premier's evidence *and* Plaintiff's evidence—showed

2  that New Yorker consumers bought Joint Juice for many different reasons, not a single common

3  reason. Among the most frequently named reasons were that a friend recommended Joint Juice, a

4  health care provider recommended it, or the individual had previously decided glucosamine was

5  helpful and now wanted it in a drink rather than a pill. Any class member who testified to buying

6  Joint Juice for any of these reasons would have neither Article III standing to sue nor a claim,

7  because the alleged injury (the purchase) was not caused by the alleged deceptive practice (the

8  challenged label statements). The decision to certify the element of causation for class treatment

9  must therefore be reversed. Causation had to be tried individually. It was error to try it in a class

10  trial. For this reason alone, no classwide judgment can be entered.

11    In addition, *all* issues must be decertified, because when liability turns on individual

12  proof, "plaintiffs cannot establish predominance" under Federal Rule of Civil Procedure

13  23(b)(3). *Bowerman*, 2022 WL 2433971, at *8 (quotation omitted). Thus, when liability turns on

14  the causes of individual purchasing decisions, as it does here, class certification must be denied

15  for claims under New York's GBL § 349 and § 350 because common issues will not

16  predominate. *See*, *e.g.*, *Marotto v. Kellogg Co.*, 415 F. Supp. 3d 476, 482 (S.D.N.Y. 2019)

17  (denying class certification of GBL claims because "the individualized inquiry into the extent to

18  which—if at all—individual consumers were motivated by the [allegedly deceptive] label to

19  purchase [the product] . . . precludes a finding of predominance").

20    The class must also be decertified because Plaintiff failed to introduce evidence sufficient

21  to support submitting her full-refund damages theory to the jury under New York law.

22    Finally, the class must be decertified because it is not superior to individual litigation.

23  Trial showed not only the predominating individual issues described above, but also that the

24  magnitude of individual, statutory damages allowed by the Court's per-transaction approach is so

25  large that individual litigation is superior to class litigation. "[E]ven though the large damages

26  awards the class members stand to gain are not sufficient on their own to overcome Rule

27  23(b)(3) certification, they support doing so." *Bowerman*, 2022 WL 2433971, at *9 n.8.

28

2

**BACKGROUND**

I.   **THE COURT'S CLASS CERTIFICATION DECISION**

This lawsuit was initially filed as a proposed nationwide class action on March 21, 2013. *See Mullins v. Premier Nutrition Corp.*, No. 3:13-cv-01271-RS (N.D. Cal.), Dkt. No. 1. Plaintiff moved to certify a nationwide class on October 2, 2015. *Mullins*, Dkt. No. 82. On April 15, 2016, the Court granted certification of a class of California consumers under California's UCL and CLRA. *See Mullins*, Dkt. No. 134. On June 20, 2016, the Court declined to expand class certification beyond California consumers—in part because of the conflicts between California law and the laws of the other states. *Mullins*, Dkt. No. 137.

Plaintiff's counsel then filed nine related class actions on behalf of plaintiffs purporting to represent single-state classes, including the instant action. *See* Dkt. No. 1. Plaintiffs filed a single class certification motion covering eight of the related actions (including this action) on August 29, 2019. *See* Dkt. No. 61. Premier opposed certification, *see* Dkt. No. 68, but the Court granted it based on Plaintiff's pledge to provide uniform classwide evidence that "Premier engaged in a coordinated advertising campaign which caused customers to buy Joint Juice because of its purported health benefits." Dkt. No. 79 (citing *Mullins*). In finding that causation would be tried with common proof, the Court pointed to "internal marketing plans and emails, Joint Juice sales data, declarations from each named plaintiff, and dozens of scientific studies." *Id*.

II.  **PLAINTIFF PURSUED A THEORY OF CAUSATION THAT TURNS ON INDIVIDUAL PURCHASING DECISIONS.**

Since this case's inception, Plaintiff has pursued a full-refund theory of damages, which makes causation turn on why each person bought Joint Juice. In moving for class certification, Plaintiff offered only the full-refund theory to satisfy *Comcast*'s requirement that damages be "capable of measurement on a classwide basis." *See* Dkt. No. 61 at 24 (citing *Mullins*, Dkt. No. 134 at 12: "Because Sonner has provided a model of damages that traces the harm (the full amount of the purchase) to Premier's allegedly improper conduct (claiming that Joint Juice will benefit joints), she has satisfied *Comcast*'s requirement."). Plaintiff's damages expert, Colin

1   Weir, accordingly provided only one damages calculation at trial: the total "amount of money

2   that class members spent on Joint Juice in the State of New York" during the class period. *See*

3   Dkt. No. 274, Trial Tr. 5/31/22 at 1097:8-13, 20-22. At trial, when Plaintiff's counsel attempted

4   to shift to a price-premium theory during a break in closing arguments, the Court responded:

5   "You did not argue this case on anything other than the full refund. That's what it's argued on.

6   That's what it's going to the jury. It is too late to go back." Dkt. No. 277, Trial Tr. 6/7/22 at

7   1851:24-1852:2.

8          At trial, all the evidence introduced by both Plaintiff and Premier showed that New York

9   consumers were a diverse group who decided to buy Joint Juice for many different reasons. The

10  challenged label statements made a difference to some New Yorkers but not others. Premier

11  addresses the trial evidence in detail below.

12                              **APPLICABLE LEGAL STANDARD**

13         Under Federal Rule of Civil Procedure 23(c)(1)(C), a "district court may decertify a class

14  at any time." Dkt. No. 180 at 4 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th

15  Cir. 2009)). "The Court has a continuing duty to ensure compliance with class action

16  requirements pursuant to Rule 23, and therefore may decertify a class at any time." *Mier v. CVS*

17  *Pharm., Inc.*, 2021 WL 6102519, at *2 (C.D. Cal. Nov. 19, 2021). The legal standard on a

18  motion to decertify is the same standard used on a motion for class certification. Dkt. No. 180 at

19  4; *Ries v. Arizona Bev. USA LLC*, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013). "The

20  burden remains on the plaintiffs to demonstrate that the requirements of Rules 23(a) and (b) are

21  satisfied at all times before final judgment." *Gessele v. Jack in the Box, Inc.*, 2021 WL 5746913,

22  at *3 (D. Or. Dec. 1, 2021) (citing *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir.

23  2011)). Where, after the district court initially certifies a class, the plaintiff's evidence is

24  insufficient to establish classwide proof, decertification is appropriate. *See Bowerman*, 2022 WL

25  2433971, at *8 (ordering decertification after trial); *Mier*, 2021 WL 6102519, at *2-3;

26  *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014)

27  (decertifying class where plaintiff's damages expert ultimately submitted a report containing

28  "incurable deficiencies" that failed to provide evidence of a suitable classwide damages model);

4

*True Health Chiropractic Inc. v. McKesson Corp.*, 2021 WL 4818945, at *3 (N.D. Cal. Oct. 15, 2021) (decertifying class because the plaintiffs' evidence was insufficient to prove an essential element of their claim on a classwide basis).

## ARGUMENT

**I.    ON THE TRIAL RECORD, CAUSATION IS AN INDIVIDUAL ISSUE THAT CANNOT BE TRIED CLASSWIDE AND THAT REQUIRES DECERTIFICATION ON ALL ISSUES.**

The evidence introduced at trial demonstrated that causation was an individualized issue not capable of resolution "in one stroke." *Dukes*, 564 U.S. at 350. It was therefore error to include the issue of causation in a class trial. Moreover, because the individual issue of causation makes liability itself an individual issue, the entire class must be decertified under Rule 23(b)(3) for lack of predominance.

> **a.   Only Common Issues Can Be Included In A Class Trial, and When Causation Is An Individual Issue, It Predominates and Precludes Certification of any Class under Rule 23(b)(3).**

The class action is a procedural device that allows common claims or issues ("common questions" under Rule 23(a)(2)) to be resolved on a classwide basis when the evidence shows that those claims or issue must necessarily stand or fall as a whole, because they turn on common evidence. As a rule of procedure, Rule 23 cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. It therefore cannot be used to *require* a common, classwide decision on a claim or issue that a jury could reasonably resolve differently for different plaintiffs, based on individual variations in the material evidence, because that would give "plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action." *Tyson Foods, Inc. v. Bouphakeo*, 136 S. Ct. 1036, 1048 (2016). To deny the parties the chance to present relevant, individual evidence, or to deny the jury a chance to act on such evidence by making individual decisions, would not only alter substantive rights in violation of the Rules Enabling Act, but infringe on due process rights, *see Gartin v. S&M NuTec LLC*, 245 F.R.D. 429 442 (C.D. Cal. 2007), and violate the Seventh Amendment right to a jury trial, *see Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 319 (5th Cir. 1998). Thus, only common issues can be certified for class treatment and included in a class trial.

### b. When Causation Is An Individual Issue, It Predominates and Precludes Certification of Any Class Under Rule 23(b)(3).

A class may be certified under Rule 23(b)(3) only if common questions predominate over questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3). A district court has a "duty to take a close look at whether common questions predominate over individual ones," and to ensure that individual questions do not "overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Under controlling Ninth Circuit law, when causation is an individual issue, it precludes certification of a class under Rule 23(b)(3) because it causes individual issues to predominate. The Ninth Circuit's very recent decision in *Bowerman v. Field Asset Services, Inc.*, speaks directly to this point. There, the Court of Appeals held that when "the plaintiffs cannot prove that damages *resulted* from the defendant's conduct" on a common basis, "then the plaintiffs cannot establish predominance." 2022 WL 2433971, at *8 (9th Cir. July 5, 2022). Other decisions, both from the Ninth Circuit and other circuits, are in accord. *See*, *e.g.*, *Castillo v. Bank of America, NA*, 980 F.3d 723, 732 (9th Cir. 2020) (finding certification inappropriate where there is "no common method of proof, or representative evidence of proving classwide liability on which each [putative class member] could have relied" in establishing liability); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir.), *amended on denial of reh'g* 273 F.3d 1266 (2001) ("Certainly, there may be common issues in this case …. But to determine causation and damages for each of the three claims asserted here, it is inescapable that many triable individualized issues may be presented."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.").

Moreover, specifically as to claims under GBL §§ 349 and 350, courts agree that when causation is an individual issue, a class cannot be certified. *See Marotto v. Kellogg Co.*, 415 F. Supp. 3d 476, (S.D.N.Y. 2019) (denying class certification of GBL claims because "the individualized inquiry into the extent to which—if at all—individual consumers were motivated by the [allegedly deceptive] label to purchase [the product] . . . precludes a finding of predominance"); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 513 (S.D.N.Y. 2011) ("Where

6

1   the link between the defendant's alleged deception and the injury suffered by plaintiffs is too

2   attenuated and requires too much individualized analysis, courts will not certify a class."); 

3   *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 95 (S.D.N.Y. 2010) (denying certification of false

4   advertising class under the GBL because the expert evidence showed that "individualized

5   inquiries regarding the causal connection between" class members' decision to purchase

6   McDonald's food and the alleged misrepresentations would overwhelm any common questions);

7   *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *8 (C.D. Cal. June 7,

8   2017) (declining to certify a class for violations of, *inter alia*, GBL § 349, where plaintiff failed

9   to show "how consumers reacted to the 'five hour energy,' or 'hours of energy' statements, and

10   how they valued these statements compared to other attributes of the product and the energy

11   supplement market generally because absent such evidence, plaintiff had not demonstrated

12   materiality across the class"). *See generally Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at

13   *16 (N.D. Cal. June 13, 2014) (explaining that courts in the Ninth Circuit refused certification

14   where "individualized purchasing" inquiries predominated).

### c.   Plaintiff's Full-Refund Theory Made Causation an Individual Issue in This Case.

16          Plaintiff was required to prove causation both for liability and standing to sue. As to

17   liability, causation is an element under both New York GBL § 349 and § 350. The elements of

18   liability under § 349 require a plaintiff to prove that "the plaintiff suffered an injury ***as a result of***

19   the deceptive act or practice." *Plavin v. Grp. Health Inc.,* 146 N.E.3d 1164, 1168 (N.Y. 2020).

20   GBL § 350 pertains specifically to false advertising, but "the standard for recovery . . . is

21   otherwise identical to section 349." *Segovia v. Vitamin Shoppe, Inc*., 2017 WL 6398747

22   (S.D.N.Y. Dec. 12, 2017). As to Article III standing, the Supreme Court recently held that in a

23   federal class action "[e]very class member must have Article III standing in order to recover

24   individual damages." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021). And it is well

25   established that Article III standing requires a "causal connection between the injury and the

26   conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

27          Most plaintiffs raising a claim for false advertising allege a common, price-premium

28   theory of causation. They contend that the challenged statements caused the product's price to

1   increase for everyone, thus injuring everyone regardless of why anyone bought the product. If

2   plaintiffs are able to prove this theory of causation, "every purchaser of the [product] paid more

3   than they otherwise would have, so every purchaser was injured." *In re Amla Litig.*, 320 F. Supp.

4   3d 578, 592 (S.D.N.Y. 2018).

5        Plaintiff, however, did not allege a price-premium theory of causation. Instead, she

6   sought a full refund for every bottle of Joint Juice purchased during the class period. Under her

7   theory, (1) the injury was the purchase itself, (2) the allegedly deceptive practice was including

8   the challenged joint-health statements on the bottles and packaging, and (3) the causal link was

9   that the statements allegedly caused New York consumers to buy Joint Juice. This theory makes

10  causation turn on individual purchasing decisions.

11       At trial, *all* the evidence—both Premier's evidence *and* Plaintiff's evidence—showed

12  that New York consumers bought Joint Juice for many different reasons, not a single common

13  reason, and that the challenged statements were relevant to some New Yorkers' purchasing

14  decisions but not to others'. For example, Premier presented the testimony of survey expert Hal

15  Poret, who conducted a survey of New York consumers who purchased Joint Juice during the

16  class period and asked them why they made their purchases. *See* Dkt. No. 276, Trial Tr. 6/2/22 at

17  1577:21-1578:6, 1576:2-14, 1580:19-1581:3. The majority of New York class members

18  responded that they bought Joint Juice because of recommendations from doctors and others,

19  because they liked the taste, and because they preferred to take a glucosamine supplement in

20  liquid form as opposed to pills. *See, e.g., id.* at 1576:20-1577:6, 1593:24-1594:11, 1590:13-18. In

21  response to a closed-ended question about what influenced their purchase, only 31% of the

22  surveyed New York consumers indicated that the statements on the Joint Juice label had any

23  influence on their decision to buy the product. *Id.* at 1594:17-24. Plaintiff offered no rebuttal to

24  this evidence, which is thus undisputed.

25       Plaintiff's own testimony illustrated how people buy Joint Juice for different reasons. A

26  friend gave Plaintiff a six-pack of Joint Juice, told Plaintiff she was using it, and recommended

27  that Plaintiff also drink Joint Juice because it could help her knees. Dkt. No. 274, Trial Tr.

28  5/31/22 at 1116:6-21. Plaintiff drank several of the bottles, then started purchasing Joint Juice

1  regularly. *Id.* at 1116:22-1117:4. Plaintiff testified that her knee cartilage had deteriorated to the

2  point that the joint was almost "bone on bone," but that she believed drinking Joint Juice would

3  prevent her from needing knee replacement surgery. *See id.* at 1118:4-9, 1130:2-4 ("I spent

4  money on the product and I thought about it. And -- and I had to still go through a knee operation

5  that I thought this would help me stop, but it didn't.").

6          Premier also introduced testimony from an economic expert, William Choi, Ph.D,

7  highlighting some of the varying reasons people bought Joint Juice. One of those reasons is a

8  pre-existing belief formed by consumers that glucosamine improves joint health. As Dr. Choi

9  testified—and as Plaintiff's own experts concede—the market for glucosamine supplements pre-

10  dated the introduction of Joint Juice by many decades. *See* Dkt. No. 276, Trial Tr. 6/2/22 at

11  1648:9-14. Many medical professionals recommend glucosamine supplements to patients as a

12  means of improving joint health. Consumers who independently believed in the efficacy of

13  glucosamine and bought Joint Juice because it contained glucosamine cannot prove causation.

14  Dr. Choi also performed a hedonic regression analysis demonstrating that other attributes of Joint

15  Juice, such as Vitamin D and Vitamin C, have "statistically significant" "economic value," even

16  while controlling for other product attributes, —*i.e.*, that those attributes contributed

17  meaningfully to consumers' decisions to purchase Joint Juice. *See id.* at 1662:8-20

18          The bulk of Plaintiff's evidence at trial did not address causation at all. Instead, using

19  Premier's internal marketing plans, research, and emails—most of which were created before the

20  product at issue was even sold in New York—Plaintiff showed many things that Premier *hoped*

21  would matter to customers. What *actually* mattered to thousands of diverse New Yorkers over

22  more than eight years is a different question, and a question on which their own personal

23  preferences and testimony is controlling. The internal Premier documents Plaintiff relied on were

24  also not common to the class because none of the New York consumers who bought Joint Juice

25  ever saw them.

26          In addition, the internal documents Plaintiff presented mostly related to advertisements

27  that also were not common to the class. Hence, that evidence could only create *additional*

28  individual reasons for purchasing other than the labels and packaging. To be clear, Plaintiff

1  pointed only to Joint Juice's labels and packaging as the supposed common deceptive statements,

2  and she challenged only the following statements: "For healthy, flexible joints" (Dkt. No. 274,

3  Trial Tr. 5/31/22 at 1106:7-13), "Whether you're a gardener or marathoner, your joints will love

4  this" (*see id.* at 1107:25-1108:6), "A full day's supply of glucosamine combined with

5  chondroitin helps keep cartilage lubricated and flexible" (*see id.* at 1108:14-23); *see also* Trial

6  Exh. 6. Plaintiff did not challenge the statements on the labels identifying glucosamine,

7  chondroitin, and Vitamin D as ingredients and giving their respective amounts. Plaintiff also did

8  not base her class claims on any statements made in any radio, television, internet, publication,

9  or in-store or display advertising. *See id.* at 1121:21-1122:12 (Plaintiff admitting she never saw

10  any advertisements for Joint Juice other than the packaging, including television commercials,

11  magazine advertisements, radio advertisements, or online advertising, nor did Plaintiff ever

12  conduct any online research or searches about Joint Juice). None of those sources of advertising

13  was seen by all class members, so Plaintiff challenged solely the labels and packaging, and only

14  some of the statements on them.

15      Most of Plaintiff's trial evidence, however, pertained to uncommon advertisements, such

16  as television ads, that Plaintiff herself did not see, and some of which did not even run in New

17  York or only did so for a small part of the class period. This includes the Joe Montana television

18  advertisements (*see, e.g.*, Trial Exh. 50, 51), Dean Karnazes print advertisements (*see, e.g.*, Trial

19  Exh. 24), and Google AdWords (*see, e.g.*, Trial Exh. 146, 147). To answer why each individual

20  New Yorker *actually bought* Joint Juice would require evidence specific to each New York

21  consumer.[1] Thus, as the trial record shows, causation under the circumstances of this case is an

22  individual issue.

23      In sum, the record in this case did not allow an all-or-nothing decision to be presented to

24  the jury on causation. Causation must be addressed individually. For that reason alone, the

25  classwide judgment cannot stand. Moreover, because the record shows that causation is an

26

---

[1] The evidence Plaintiff presented failed to prove classwide causation as a matter of law. Premier will
27  renew that argument in its post-judgment Rule 50 motion. The Court's decisions allowing Plaintiff to
introduce a vast amount of uncommon evidence (most of which were internal documents that class
28  members never saw) were also erroneous and prejudicial and require a new trial. Premier will raise that
argument in its post-judgment Rule 59 motion.

MOTION TO DECERTIFY CLASS
Case No. 3:16-cv-06980

1    individual issue, Plaintiff "cannot establish predominance." *Bowerman,* 2022 WL 2433971, at

2    *8. The class as a whole must therefore be decertified.

3    **II.    ON THE TRIAL RECORD, PLAINTIFF FAILED TO OFFER SUFFICIENT EVIDENCE TO SUPPORT SENDING A FULL-REFUND DAMAGES THEORY TO THE JURY, WHICH REQUIRES THE CLASS TO BE DECERTIFIED.**

4

5            The class must also be decertified because Plaintiff did not offer sufficient evidence to

6    support sending a full-refund damages theory to the jury under New York law, and without a

7    method of proving classwide damages, common issues cannot predominate over individual

8    issues under Rule 23(b)(3). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

9            Under New York law, a consumer cannot receive a full refund of a product that the

10   consumer bought and consumed unless the product had no value. *See*, *e.g.*, *Small v. Lorillard*

11   *Tobacco Co*., 720 N.E.2d 892, 898 (N.Y. 1999); *Colella v. Atkins Nutritionals, Inc.*, 348

12   F.Supp.3d 120, 142 (E.D.N.Y. 2018) ("'Courts have uniformly read *Small* to mean that Section

13   349 does not entitle a consumer to a refund of the price of a good or service whose purchase was

14   allegedly secured by deception.'") (quoting *Servedio*, 889 F. Supp. 2d at 452). "The rationale for

15   this is that 'deceived consumers may nevertheless receive—and retain the benefits of—

16   something of value, even if it is not precisely what they believed they were buying.'" *Dash v.*

17   *Seagate Tech. (US) Holdings, Inc.*, 27 F.Supp.3d 357, 361-362, (E.D.N.Y. 2014) (quoting

18   *Servedio*, 889 F. Supp. 2d at 452). Premier recognizes that the Court interpreted New York law

19   differently to allow a full refund if the product was "valueless for its advertised purpose," *see*

20   Dkt. 266 at Instruction No. 20, but maintains that the Court erred.

21           At trial, Plaintiffs did not submit any proof that would allow a jury to conclude that Joint

22   Juice had no value. To the contrary, the evidence undisputedly showed that its hydration and

23   vitamins had value, regardless of whether glucosamine was efficacious. *See*, *e.g.*, Dkt. No. 276,

24   Trial Tr. 6/2/22 at 1656:1-18; Trial Exh. 106 at 3-4 (97% of Joint Juice users indicated that

25   "Liquid form" was important to them; 94% indicated that "A full day's supply of vitamin C" was

26   important to them); Trial Exh. 554 at 5 (survey indicating that consumers would be more

27   interested in Joint Juice if it included Vitamin D).

28           Because Plaintiff failed to submit a case to the jury capable of measuring classwide

11

1    damages, the class must be decertified.

2    **III.    THE SUPERIORITY REQUIREMENT WAS NOT SATISFIED**

3        The predominance of individual issues makes a class action inferior to individual

4    litigation under Rule 23(b)(3). But trial also showed that class certification is inferior for another

5    reason: under the Court's rulings on statutory damages, individuals can recover huge monetary

6    sums, heightening the interest in individual litigation.

7        As the Ninth Circuit very recently held, "even though the large damages awards … are

8    not sufficient on their own to overcome Rule 23(b)(3) certification, they support doing so."

9    *Bowerman*, 2022 WL 2433971, at *9 n.8; *see also Dent v. Nat'l Football League*, 2021 WL

10   3885954, at *14 (N.D. Cal. Aug. 31, 2021) ("[W]here putative class members claim relatively

11   large damages, this factor [superiority] weighs against class action.").

12       Here, Plaintiff's motion for class certification argued that Rule 23's superiority

13   requirement was satisfied because "it is not economically feasible for Class members to pursue

14   claims individually given the amount in controversy of about $5-$20 per unit." Dkt. No. 60-3 at

15   p. 25. When the Court addressed superiority in its order granting class certification in the original

16   *Mullins* action, it relied entirely on the small amount of the claims in finding superiority:

17
18          [Plaintiff] contends class adjudication is superior in this case
            because the potential recovery for each class member (between $5
            and $20 for each unit sold) pales in comparison to the cost of
19          litigating these claims. On this point, she is certainly correct, and
            Premier does not dispute it.  Cases, such as this, "where litigation
20          costs dwarf potential recovery" are paradigmatic examples of those
            well-suited for classwide prosecution. *Hanlon v. Chrysler Corp.*,
21          150 F.3d 1011, 1023 (9th Cir. 1998). Individual suits for small
            recovery amounts would overwhelm the courts and prove
22          uneconomic for potential litigants. Id. Thus, a class action is
            superior in this case.

23   *Mullins*, Dkt. No. 134 at pp. 14-15.

24       Later, however, the Court ruled that statutory damages may be recovered under GBL

25   §§ 349 and 350 on a "per transaction" basis. Under this ruling, individual class members can

26   potentially receive $500 in statutory damages for every package of Joint Juice they purchased.

27   That is, a class member who bought a six-pack every week for a year (spending a total of

28   approximately $250) could receive $26,000 in statutory damages (52 purchases times $500).

1   Plaintiff herself, who claims to have spent $800 on Joint Juice, stands to recover more than

2   $60,000 in statutory damages under the Court's per-transaction ruling—plenty to pursue an

3   individual claim. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-91 (9th Cir.

4   2001) (finding class certification unwarranted because, in part, individual class members' claims

5   exceeded $50,000, defeating superiority). If this Court maintains its per-transaction approach, the

6   class must be decertified.

7                                    **CONCLUSION**

8           For the foregoing reasons, the class must be decertified.

9

10

11  Dated:  July 12, 2022                          Respectfully submitted,

12                                                 By:  */s/ Steven E. Swaney*

13                                                 VENABLE LLP
                                                   Steven E. Swaney

14                                                 MORRISON & FOERSTER LLP
15                                                 Jessica L. Grant

16                                                 Attorneys for Defendant
                                                   Premier Nutrition Company LLC
17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DECERTIFY CLASS
Case No. 3:16-cv-06980

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.


Dated:  July 12, 2022

_/s/ Steven E. Swaney_
STEVEN E. SWANEY

VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA  94111
Tel:  (415) 653-3750
Fax:  (415) 653-3755
seswaney@venable.com