UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY BETH MONTERA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>　　　　　Defendant. | Case No. 16-cv-06980-RS<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING DEFENDANT'S MOTION TO DECERTIFY, AND GRANTING PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT** |

**I. Introduction**

Plaintiff Mary Beth Montera brought this lawsuit on behalf of New York consumers who had purchased Joint Juice, a beverage containing glucosamine and chondroitin that is sold by Defendant Premier Nutrition Corporation ("Premier Nutrition"). The case proceeded to trial, where upon the jury found Defendant liable for violations of New York General Business Law ("GBL") sections 349 and 350. Following the close of Plaintiff's case, Defendant moved for judgment as a matter of law, which the Court took under submission pending the jury's verdict. After the close of all evidence, the jury determined that Plaintiff and the Class suffered actual damages in the amount of $1,488,078.49, representing full refunds of the money they paid for Joint Juice. Plaintiff now brings a motion for entry of judgment, asking the Court to impose statutory damages in the amount of $50 per unit sold for violations of GBL § 349 and $500 per unit sold for violations of GBL § 350, as well as prejudgment interest. Premier Nutrition argues

1  that if statutory damages are available, the Court should only award statutory damages in the
2  amount of $50 per person. Premier Nutrition also argues that under New York law, prejudgment
3  interest does not apply to statutory damages.

4        A reduction of statutory damages is permitted under Supreme Court and Ninth Circuit law,
5  and is warranted in this case because the calculated amount of statutory damages, $91,436,950, is
6  "so severe and oppressive as to be wholly disproportioned to the offense and obviously
7  unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). The New York
8  legislature has specifically raised concerns about the aggregation of statutory damages in a class
9  context, and disallows such recovery in New York state courts. The statutory damages in this case
10 veer away from serving a compensatory purpose and towards a punitive purpose. A reduction of
11 statutory damages to $8,312,450 is therefore appropriate. Contrary to Defendant's arguments,
12 however, prejudgment interest applies to statutory damages, and is applied as class members'
13 claims accrued, for a total of $4,583,004.90 in prejudgment interest.

14       Next, Defendant's motion to decertify the class action is denied. Other than Defendant's
15 argument concerning superiority, the arguments raised in the motion are repetitive of arguments
16 Defendant made—and the Court rejected—less than four months ago in Defendant's prior motion
17 to decertify. As for the superiority argument, despite the possibility of recoveries in the thousands
18 of dollars for class members, the class action remains a superior device for resolving claims in this
19 case. Further, Defendant's concerns are mitigated by the reduction of statutory damages described
20 above. Finally, Defendant's motion for judgment as a matter of law is denied.

21                         **II. Factual and Procedural Background**

22       This case is one of numerous certified class actions pending before this Court alleging
23 false advertising and other claims arising from Premier Nutrition's promotion of Joint Juice, a line
24 of joint health dietary supplements. Each class action concerns a set of plaintiffs in a different
25 state; this action focuses on consumers in New York. In November 2021, the Court set this case
26 for trial on May 23, 2022, the first of these related cases to proceed to trial.

27       A reccurring issue in pretrial litigation was the availability of statutory damages for a

28

violation of GBL §§ 349 and 350, and how statutory damages would be imposed if the jury found for Plaintiff and the class. The first arose in the context of a *Daubert* motion concerning the expert testimony of Colin Weir, Plaintiff's damages expert. Defendant moved to exclude Weir's testimony, arguing that his calculations of statutory damages were irrelevant. Defendant argued that the calculations were irrelevant because Weir's calculations were done on a per unit basis, and Defendant argued that New York law only permitted statutory damages on a per person basis. While recognizing the diverging views of courts across the country on this question, the Court concluded that statutory damages were available on a per unit basis, reasoning as follows:

> A violation of sections 349 and 350 occurs when a consumer views the label and purchases the product. This means a plaintiff may experience multiple violations of the statutes. Indeed, Premier marketed its product to encourage consumers to drink the product regularly and to make multiple purchases. Consumers were repeatedly exposed to the label, and repeatedly made the choice to buy the product. A reading of sections 349 and 350 that recognizes a plaintiff experiences a violation each time the product is purchased is consistent with the text and intent of the statute. Thus, GBL §§ 349(h) and 350-e allow statutory damages on a per unit basis.

Order on Motions to Exclude Expert Testimony and Motion to Decertify Class, Dkt. No. 180, p.14.

Much of Defendant's argument at the *Daubert* stage for why statutory damages should only be allowed on a per person basis concerned the constitutionality of a high award of statutory damages. This argument, however, was predicated on the expected divergence between the amount of actual damages and the statutory damages prescribed under New York law. The arguments, thus, concerned the constitutionality of an award of per unit statutory damages in this case, rather than arguing that an award of statutory damages on a per unit basis would be unconstitutional in every instance.[1] As the Ninth Circuit has noted, it is "not appropriate to

---

[1] Indeed, it is easy to imagine products for which the statutory damages to be awarded on a per unit violation would be much closer to the actual unit price, such as some smartphones or car tires. Defendant's arguments would not have applied in such a case, and thus determining that statutory damages are not available on a per unit basis for violations of GBL §§ 349 and 350 would have ignored that constitutional concerns are not necessarily present each time statutory damages are awarded under GBL §§ 349 and 350.

evaluate the excessiveness of the award" during pretrial litigation before the award of damages is actually imposed, as doing so "is unduly speculative." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010). The parties were instructed that Premier Nutrition's arguments concerning constitutionality of statutory damages in this case would be considered if and when a verdict was delivered for Plaintiff. *See* Order on Motions in Limine, Dkt. No. 215, p.5 n.1.

Next, the parties disputed whether Plaintiff had to present evidence of actual damages, since Plaintiff argued statutory damages would be imposed automatically if liability were found. The relevant statutes allow a plaintiff to recover the greater of actual damages or statutory damages. *See* N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater[.]"; *id.* at § 350-e(3) (explaining that a person may bring "an action to recover his or her actual damages or five hundred dollars, whichever is greater"). The statutes require a determination of whether actual damages or statutory damages is higher, and thus Plaintiff was instructed "to prove actual damages at trial." Order on Motions in Limine, Dkt. No. 215, p.4. A determination of actual damages was also necessary to evaluate fully Defendant's constitutional arguments about an award of statutory damages.

The parties further disagreed as to whether the imposition of statutory damages was a question that needed to be put to the jury. As GBL §§ 349 and 350 impose a specific amount of statutory damages, rather than allowing the jury to choose an amount of statutory damages within a range, the imposition of statutory damages is a question of law for the court, rather than a factual question that needed to be put to the jury. The jury was therefore instructed to determine the actual damages if they found Defendant liable. The jury was also asked to determine the number of units sold in New York during the Class Period such that statutory damages could be calculated.

After a nine-day trial, the jury reached a verdict two and half hours after the case was submitted to them for deliberation. The jury determined both that Premier Nutrition engaged in deceptive acts and practices in violation of GBL § 349 and engaged in deceptive or misleading advertising in violation of GBL § 350. The jury further determined that Premier Nutrition had sold

166,249 units of Joint Juice in New York during the Class Period and that Plaintiff and the Class should be awarded $1,488,078.49 in actual damages.

### III. Motion for Judgment as a Matter of Law

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the Court may "grant a motion for judgment as a matter of law against the party on a claim or defense[.]" Fed. R. Civ. Pro. 50(a). Defendants moves for judgment as a matter of law as to both the section 349 and section 350 claims. The jury's verdict, however, is supported by ample evidence as to each element of both of the claims. A reasonable jury would therefore have a legally sufficient evidentiary basis to find for the Plaintiff, and the motion is therefore denied.

### IV. Motion for Entry of Judgment

#### A. Statutory Damages

As courts across the country have noted, the imposition of statutory damages aggregated across the members of a class action may, in some circumstances, have Due Process Clause implications. *See, e.g., Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (noting that in a class action in which statutory damages are awarded as a matter of strict liability, "the due process clause might be invoked, not to prevent certification, but to nullify [a distortedly high award of statutory damages] and reduce the aggregate damage award" in a "sufficiently serious case"); *Moeller v. Taco Bell Corp.*, No. C 02-5849 MJJ, 2004 WL 5669683, at *3 (N.D. Cal. Dec. 7, 2004) (recognizing that "statutory damages may, in [a] severe case, raise due process concerns"). Plaintiff requests the imposition of $8,312,450.00 in statutory damages under GBL § 349(h) and $83,124,500 in statutory damages under GBL § 350-e, for a total of $91,436,950. Defendant argues that if the Court imposes statutory damages, a much lower award is appropriate.

The question of whether statutory damages may raise constitutional concerns is not a new one. Over one hundred years ago, the Supreme Court considered the question of whether statutory damages prescribed by an Arkansas law violated the Due Process Clause of the Fourteenth Amendment. *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). The statute, which

"regulat[ed] rates for the transportation of passengers between points within the state" on railroads, stated that the penalty for each offense was "a penalty of not less than fifty dollars nor more than three hundred dollars and costs of suit, including a reasonable attorney's fee[.]" *Id.* at 63-64 (internal quotation marks omitted). The Supreme Court noted that the Arkansas Supreme Court had concluded that "the penalties prescribed [were] no more than reasonable and adequate to accomplish the purpose of the law and remedy the evil intended to be reached." *Id.* at 67 (quoting *Chicago, Rock Island & Pacific Ry. Co. v. Davis*, 114 Ark. 519, 525 (1914)). The Supreme Court held that when "considered[ing] [] due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates, we think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *Id.*

The Ninth Circuit has cited to *Williams* when commenting on this issue in more modern times. In *United States v. Citrin*, the Ninth Circuit explained that "[a] statutorily prescribed penalty violates due process rights 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" [2] *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (quoting *Williams*, 251 U.S. at 66-67). As explained below, how to apply *Williams* is a question for which there is little guidance. There is no question, however, the Supreme Court has instructed that a district court may evaluate whether the statutory damages in a case are "wholly disproportioned to the offense and obviously unreasonable[,]" and thus that inquiry is the crux for whether a reduction of statutory damages is appropriate.

A discussion of the imposition of statutory damages in this case must start with a discussion about the availability of statutory damages in a class action under New York law. New York's Civil Practice Law and Rules states that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action,

---

[2] *Citrin*, however, is not an apt point of comparison to the present case, as it involved "statutorily prescribed damages resulting from [the defendant]'s breach of a scholarship agreement with the United States." 972 F.2d at 1046.

an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. C.P.L.R. § 901(b). In other words, a plaintiff may not bring a class action seeking statutory damages in New York state court. This provision is within the rule describing the prerequisites for maintaining a class action in New York.

In *Shady Grove Orthopedic Associates v. Allstate Insurance*, 559 U.S. 393 (2010), the Supreme Court addressed the question of whether a plaintiff could maintain a class action for violations of New York law in federal court under Federal Rule of Civil Procedure 23, if that plaintiff seeks statutory damages. The Supreme Court held that such a class action could proceed in federal court, because the prerequisites for class certification in federal court are governed by Rule 23, not those for maintaining a class action in New York state court. 559 U.S. at 410.

The dissent in *Shady Grove* detailed the enactment of § 901(b). Justice Ginsburg explained that "[a]iming to avoid 'annihilating punishment of the defendant,' the New York Legislature amended the proposed statute to bar the recovery of statutory damages in class actions." *Id.* at 444 (Ginsburg, J., dissenting) (quoting V. Alexander, Practice Commentaries, C901:11, reprinted in 7B McKinney's Consolidated Laws of New York Ann., p. 104 (2006)). Justice Ginsburg further noted that "[i]n his signing statement, Governor Hugh Carey stated that the new statute 'empowers the court to prevent abuse of the class action device and provides *a controlled remedy*.'" *Id.* (Ginsburg, J., dissenting) (quoting Memorandum on Approving L. 1975, Ch. 207, reprinted in 1975 N.Y. Laws, at 1748).

Justice Ginsburg reasoned that "suits seeking statutory damages are arguably best suited to the class device because individual proof of actual damages is unnecessary." *Id.* at 445 (Ginsburg, J., dissenting). One would presume that the pursuit of statutory damages, then, would be encouraged in the class action context. Based on the statutory history and the backdrop of the requirements for class certification, Justice Ginsburg explained "New York's decision instead to block class-action proceedings for statutory damages therefore makes scant sense, except as a means to a manifestly substantive end: Limiting a defendant's liability in a single lawsuit in order to prevent the exorbitant inflation of penalties—remedies the New York Legislature created with

individual suits in mind." *Id.* (Ginsburg, J., dissenting). This backdrop illuminates that even if the pursuit of statutory damages on an individual basis was created to incentivize lawsuits and provide a minimum amount of recovery for someone who has been harmed, the New York legislature views the aggregation of those penalties across a class as a punitive measure.

The legislature's explicit concern about the punitive nature of aggregated statutory damages differentiates this case from others involving high awards of statutory damages. Many of the cases cited by the parties involve violations of the federal Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. sections 227, *et seq*, which provides for a $500 penalty for each violation of the statute. If a defendant makes thousands or even millions of calls in violation of the statute, the statutory damages reach atmospheric levels. As another district court in this circuit has noted when declining to reduce statutory damages in a TCPA case, "Congress expected class actions to be available when it enacted the statutory damages provision of the TCPA." *Wakefield v. ViSalus, Inc.*, No. 3:15-CV-1857-SI, 2020 WL 4728878, at *5 (D. Or. Aug. 14, 2020) (explaining that "Congress enacted the TCPA in 1991, well after the Supreme Court created the presumption that class actions are available absent express congressional intent to the contrary"). In contrast, the New York legislature here has expressed a clear preference that statutory damages not be made available in class actions for violations of New York law.

Little to no guidance exists within the realm of reducing statutory damages. This lack of guidance was a concern for the district court in *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020). In *Perez*, another judge in this district explained that none of the cases cited by the defendant, who advocated for the reduction of a statutory damage award in a TCPA case, "contain[ed] any methodology for how a district court is to reduce an alleged unconstitutionally excessive [statutory] damages amount." *Id.* at *9 (discussing *Golan v. Veritas Ent., LLC*, No. 4:14CV00069 ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017), *aff'd sub nom. Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019), *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457 (D. Md. 2012), *aff'd*, 729 F.3d 370 (4th Cir. 2013), and *United States v. Dish Network LLC*, 256 F. Supp. 3d 810 (C.D. Ill. 2017),

*aff'd in part, vacated in part, remanded sub nom. United States v. Dish Network L.L.C.*, 954 F.3d 970 (7th Cir. 2020)). Instead, in all the cited cases, the court in question "arbitrarily reduced the damages amount to a lower number without any well-reasoned analysis." *Id.* The court in *Perez* declined to lower the amount of statutory damages, and the parties settled the matter before the Ninth Circuit reviewed the case on appeal. *See Perez v. Rash Curtis & Assocs.*, No. 20-15946, 2021 WL 4553023 (9th Cir. Aug. 23, 2021) (order remanding to district court to consider proposed settlement).

Appellate review of the district court decisions cited in *Perez* has not elucidated much further guidance. Indeed, in *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019), the Eighth Circuit affirmed the district court's reduction of a $1.6 billion TCPA verdict. The Eighth Circuit held that given the facts in the case, in which the defendant "plausibly believed it was not violating the TCPA[,]" the verdict of "$1.6 billion is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" 930 F.3d at 962-63 (quoting *Williams*, 251 U.S. at 67). The Eighth Circuit, however, did not provide any framework for assessing why the reduction to $32,424,930 in damages, a total of $10 per call rather than the TCPA's standard of $500 per call was warranted. *See id.*

In another recent TCPA case, the Seventh Circuit directed the district court "to start from harm rather than wealth, then add an appropriate multiplier, after the fashion of the antitrust laws (treble damages) or admiralty (double damages), to reflect the fact that many violations are not caught and penalized." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020). In doing so, the court analogized to cases involving the reduction of punitive damages.

Given that the New York legislature expressly viewed the present situation as creating immense punitive consequences, rather than simply seeking to incentivize individual lawsuits or create deterrence, the analysis used for assessing the constitutionality of an award of punitive damages is a helpful point of comparison. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The Supreme Court has set out three

1  guideposts for assessing whether an award of punitive damages is unconstitutionally large: "(1)
2  the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual
3  or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference
4  between the punitive damages awarded by the jury and the civil penalties authorized or imposed in
5  comparable cases." *Id.* at 418. Here, Plaintiff's request to impose $91,436,950 in statutory
6  damages—a multiplier of over 61 times greater the actual damages of $1,488,078.49—is grossly
7  excessive.

8  Considering first reprehensibility, the "most important indicium of the reasonableness of a
9  punitive damages award[,]" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996), there is
10 significant evidence of reprehensibility. Reprehensibility is judged by "considering whether: the
11 harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to
12 or a reckless disregard of the health or safety of others; the target of the conduct had financial
13 vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was
14 the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.
15 The conduct at issue here certainly involved repeated actions, namely the choice to continue
16 marketing its product as containing joint health benefits. Despite the arrival of numerous studies
17 pointing to a lack of benefits from glucosamine and chondroitin in the dosage at issue, Premier
18 Nutrition continued to market its product not just to people seeking joint health benefits, but more
19 specifically to people seeking joint pain and arthritis relief. Defendant also encouraged customers
20 to make repeat purchases, recommending that they drink a bottle a day, and with packaging that
21 recommended purchasing on a weekly or monthly basis, depending on the size of the pack. As for
22 the intentionality of the act, Plaintiff put on evidence that Defendant was aware of the changing
23 tide in the science yet continued without hesitation.

24 The harm, however, was purely economic and not physical. There is no allegation that
25 Joint Juice caused physical harm to any consumer; instead, the only harm is wasted money.
26 Further, there is no evidence that "the target of the conduct had financial vulnerability," *State*
27 *Farm*, 538 U.S. at 419. There is, however, the intangible harm of lost hope. Lead Plaintiff Mary

Beth Montera testified to her disappointment in still having to undergo knee surgery, despite her daily consumption of Joint Juice. While Joint Juice never came close to advertising that use of its product could take the place of a major surgery, it did advertise that daily use would lead to healthy joints. Montera's hope was therefore not farfetched based on the vision Joint Juice wanted its customers to conjure up. Premier Nutrition may not have targeted people with financial vulnerability, but it did target people in pain who were desperate for relief. Thus, the reprehensibility factors point in both directions.

Second, the ratio of the statutory damages is immense as compared to the actual damages. The Supreme Court has held that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425. Here, the ratio of the statutory damages is over sixty times greater than the actual damages. Even though evaluation of this case is not bound by the same considerations as a case involving punitive damages, the ratio is nonetheless immense.

The third consideration, "the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases[,]'" *id.* at 428 (quoting *Gore*, 517 U.S. at 575), is not quite applicable here. In this case, the statutory damage calculation stems from civil penalties authorized. A relevant point of comparison, however, is the consideration that statutory damages would not be available if this action had been litigated in New York state court. *See* N.Y. C.P.L.R. § 901(b). That the same conduct, litigated using the same cause of action, could result in a $91,436,950 or $1,488,078.49 award merely depending on the selection of a federal forum rings of arbitrariness.

The factors relevant for the consideration of whether an award of punitive damages is unconstitutionally excessive do not map perfectly onto the consideration of whether the award of statutory damages here is excessive. They are, however, a useful guide, and the award of $91,436,950 in this case is "so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable[,] *Williams*, 251 U.S. at 66-67, and thus violative of the Due Process Clause. Given the mixed evidence on reprehensibility, a more appropriate award of

1  statutory damages is $8,312,450, which would be the amount of statutory damages owed under

2  GBL § 349(h), $50 per unit sold. This award of statutory damages is approximately 5.59 times

3  greater than the amount of actual damages.[3]

### B. Prejudgment Interest

The parties also dispute whether prejudgment interest is available for statutory damages, and if so, when the interest should begin to accrue. Plaintiff proposes a calculation from their damages expert, Colin Weir, using sales data. Weir calculated prejudgment interest from the purchase date (where available), and from the end of a reporting period if a retailer did not report sales on a daily basis.[4]

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." N.Y. C.P.L.R. § 5001(a). Interest is fixed at 9%. *Id.* at § 5004(a). "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* at § 5001(b).

"The purpose of pre-judgment interest is to compensate a plaintiff for loss of the use of funds ultimately awarded." *Mfrs. Hanover Tr. Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 28 (2d Cir. 1986). "Courts applying § 5001(a) have without qualification awarded interest as a matter of right whenever any tortious conduct causes pecuniary damage to tangible or intangible property

---

[3] As the award of damages here is equivalent to the statutory damages allowed under one of the relevant New York statutes, Defendant's arguments about double recovery under both GBL ¶¶ 349 and 350 need not be addressed. Further, the Court notes that based on the evidence presented at trial, the award of $50 in statutory damages per unit will be higher than the actual damages available to any plaintiff, as even though the price of a unit of Joint Juice varied, the price was well below $50.

[4] For example, if a retailer reported sales on a monthly basis, all purchases would be treated as if they were made on the last day of the month, leading to a more conservative estimate.

1   interests." *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 695 (2d Cir. 1983). Courts have held that fraud

2   and misrepresentation are types of offenses that should be awarded prejudgment interest under §

3   5001. *Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012); *Mallis*, 717 F.2d

4   at 694-95. Moreover, courts have applied prejudgment interest under § 5001 to damages beyond

5   actual or compensatory damages. *See, e.g., Prop. Owners Ass'n of Harbor Acres, Inc. v. Ying*, 524

6   N.Y.S.2d 252, 255 (1988) (stating that plaintiff was entitled under § 5001(a) to interest on total

7   sum of award, including treble damages); *H & P Rsch., Inc. v. Liza Realty Corp.*, 943 F. Supp.

8   328, 331-32 (S.D.N.Y. 1996) ("Plaintiff is, however, entitled to recover prejudgment interest on

9   the treble damages[.]").

10         Defendant points to a long list of cases in which courts have declined to impose

11  prejudgment interest for statutory damages. Most of these cases, however, involve federal causes

12  of action. "Whether to award prejudgment interest in cases arising under federal law has in the

13  absence of a statutory directive been placed in the sound discretion of the district courts." *Lodges*

14  *743 and 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir.

15  1975). For the cases that involved statutory damages under state law, no explanation was provided

16  for why prejudgment interest was not allowed for statutory damages. *See Cazares v. 2898 Bagel &*

17  *Bakery Corp.*, No. 18CV5953 (AJN) (DF), 2022 WL 1410677, at *18 (S.D.N.Y. Apr. 7, 2022),

18  *report and recommendation adopted*, No. 18CV5953AJNVF, 2022 WL 1406203 (S.D.N.Y. May

19  4, 2022) ("Cazares is entitled to prejudgment interest on her damages for unpaid minimum wages,

20  unpaid overtime, and unpaid spread-of-hours pay (but not on her statutory damages for wage-

21  statement and wage-notice violations)."). These citations, therefore, provide little support for the

22  proposition that prejudgment interest is never allowed under § 5001 for statutory damages.

23         Considering the limited authority on this issue, the imposition of prejudgment interest for

24  the adjusted award of statutory damages in this case is appropriate. The next question is when the

25  interest starts to accrue. Section 5001(b) requires that "[i]nterest shall be computed from the

26  earliest ascertainable date the cause of action existed" and that "[w]here such damages were

27  incurred at various times, interest shall be computed upon each item from the date it was

1   incurred[.]" Defendant argues that interest does not accrue until the end of the class period, citing

2   a long list of federal securities cases. The end of a class period in a securities case, however, is

3   when the "inflation of the stock price return[s] to zero," *Lawrence E. Jaffe Pension Plan v.*

4   *Household Int'l, Inc.*, 2013 U.S. Dist. LEXIS 170394, at *23 (N.D. Ill. Oct. 4, 2013), and thus

5   when the claim accrued. Here, most claims in the class accrued earlier than the last day of the class

6   period, because the claims accrued at the time of purchase. Weir's methodology is appropriate in

7   this situation, and notably Defendant does not challenge the reliability of his calculation other than

8   his choice of when to begin the calculation of prejudgment interest. Further, other courts have

9   approved similar calculations of prejudgment interest under § 5001. *See Marfia v. T.C. Ziraat*

10  *Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998) (affirming district court's award of prejudgment interest

11  based on a calculation of "unpaid wages as they accrued on a monthly basis"). Prejudgment

12  interest is therefore awarded in the amount of $4,583,004.90.[5]

### V. Motion to Decertify the Class

#### A. Legal Standard

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The standard used to review a motion to decertify is the same standard used when reviewing a motion for class certification. *Ries v. Arizona Bev. USA LLC*, No. 10-01139, 2013 WL 1287416, at *3 (N.D. Cal. March 28, 2013); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). Still, a motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision. *In re Myford Touch Consumer Litig.*, No. 13-cv-03072, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018).

A plaintiff seeking class certification must satisfy all four requirements set forth in Rule

---

[5] Plaintiff's submission on prejudgment interest from her expert, Colin Weir, indicated that prejudgment interest for $50 in statutory damages per transaction would be $4,416,983.25 as of the date of trial, and would accrue at the rate of $2,049.65 per day. The $4,583,004.90 total includes the accrual of interest until and including the date of entry of judgment.

23(a) and must also satisfy the requirements of Rule 23(b)(1), 23(b)(2), or 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Among other requirements in Rule 23(a), a plaintiff must show that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(b). A plaintiff seeking to satisfy Rule 23(b)(3) must specifically establish (1) common questions predominate over questions affecting only individual class members, and (2) a class action is superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### B. Discussion

As described in the April 26, 2022 order denying Defendant's earlier motion for class decertification, issues of causation and damages are appropriate for resolution on a class-wide basis. Contrary to Defendant's arguments, evidence sufficient to establish causation and damages was presented at trial. These arguments are therefore denied for the same reason the Court denied them less than four months ago.

The only new argument presented in this motion to decertify is the superiority argument. Defendant argues that a class action is not a superior method for resolving this dispute because of the amount of statutory damages available when using a per transaction calculation. Even a recovery in the tens of thousands of dollars would not necessarily be sufficient to pursue an individual claim in this litigation, as such a recovery still "pales in comparison with the cost of pursuing litigation." *Nevarez v. Forty Niners Football Co.*, LLC, 326 F.R.D. 562, 589 (N.D. Cal. 2018). For Plaintiff to prove her case in this trial, she had to present significant amounts of scientific evidence and retain numerous experts. It is unclear how an individual plaintiff would be incentivized to undertake those costs, even if the possible recovery was in the tens of thousands of dollars. Further, Defendant's concerns are lessened given that statutory damages will only be awarded in the amount of $50 per transaction. In short, a class action remains a superior method of adjudicating this controversy, and the motion to decertify the class is denied.

## VI. Conclusion

For all the foregoing reasons, Plaintiff and the class are entitled to $8,312,450 in statutory damages and $4,583,004.90 in prejudgment interest. Defendant's motion for judgment as a matter

of law is denied. Defendant's motion to decertify the class is denied.

**IT IS SO ORDERED**.

Dated: August 12, 2022

_____
RICHARD SEEBORG
Chief United States District Judge