BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-CV-06980 RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVE**<br><br>**CLASS ACTION**<br><br>Date:      October 6, 2022<br>Time:      1:30 p.m.<br><br>Judge:      Honorable Richard Seeborg<br>Courtroom:   Courtroom 3, 17th Floor<br><br>Complaint Filed:   December 5, 2016<br>Trial Date:    May 23, 2022 |

*(left margin, vertical)* BLOOD HURST & O' REARDON, LLP

00193757

MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 6, 2022, at 1:30 p.m. in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and hereby moves this Court for an Order awarding Plaintiff's Counsel reasonable attorneys' fees of $6,806,031.96 and to recover related nontaxable expenses of $1,001,697.98. Taxable costs are being sought separately. Plaintiff also moves this Court for an Order granting a service award of $25,000 to Class Representative Mary Beth Montera.

This Motion is based upon this notice of motion, Plaintiff's memorandum in support of this Motion, the declarations of Timothy G. Blood, Eugene G. Iredale, Todd D. Carpenter, and Mary Beth Montera, the complete file and record in this action and the related actions,[1] and such other evidence and argument as may be presented at or before the hearing on this motion.

The pleadings and other records in this litigation may be examined online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, between 9:00 a.m. and 1:00 p.m., Monday through Friday, excluding Court holidays.

Plaintiff reserves the right to seek additional attorneys' fees and expenses for future work or any ruling modifying or increasing the judgment amount.

This Motion and its supporting documents are concurrently posted on the class notice website. Class Members may object to this Motion by sending a letter to the Court on or before the

///

///

---

[1]     *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS (N.D. Cal); *Caiazzo v. Premier Nutrition Corp.*, No. 3:16-cv-06685-RS (N.D. Cal.); *Ravinsky v. Premier Nutrition Corp.*, No. 3:16-cv-06704-RS (N.D. Cal.); *Sandoval v. Premier Nutrition Corp.*, No. 3:16-cv-06708-RS (N.D. Cal.); *Lux v. Premier Nutrition Corp.*, No. 3:16-cv-06703-RS (N.D. Cal.); *Dent v. Premier Nutrition Corp.*, No. 3:16-cv-06721-RS (N.D. Cal.); *Avery v. Premier Nutrition Corp.*, No. 3:16-cv-06980-RS (N.D. Cal.); *Spencer v. Premier Nutrition Corp.*, No. 3:16-cv-07090-RS (N.D. Cal); *Trudeau v. Premier Nutrition Corp.,* No. 3:17-cv-00054-RS (N.D. Cal.).

BLOOD HURST & O' REARDON, LLP

00193757

current opposition deadline, September 9, 2022, explaining the reason for the objection, that the person submitting the objection is a member of the Class, and person's contact information.

Respectfully submitted,

Dated: August 26, 2022                    BLOOD HURST & O'REARDON, LLP

By:        *s/ Timothy G. Blood*
          TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

00193757

MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   HISTORY OF THE LITIGATION .......................................................................2

III.  PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND EXPENSES .........9

    A.   Legal Standards .........................................................................................10

        1.   Percentage of the Fund Method ....................................................10

        2.   Lodestar Method ...........................................................................12

        3.   The "Hybrid" Method ....................................................................12

    B.   One-Third of the Common Fund Is Warranted .........................................13

        1.   Plaintiff's Counsel Achieved an Exceptional Result for the Class ..............15

        2.   Plaintiff's Counsel Assumed Substantial Risks ...........................16

        3.   Counsel Provided High-Quality Work Which Required a Significant Amount of Time and Skill ...........................................................18

        4.   Plaintiff's Counsel Took the Case Purely on a Contingency Basis .............19

        5.   The Requested Fee Award Is Equivalent to Awards in Similar Cases ........19

        6.   Public Policy Considerations Weigh in Favor of the Requested Award ....................................................................................20

    C.   The Lodestar Calculation ..........................................................................21

        1.   The Hourly Rates Are Reasonable ...............................................22

        2.   The Hours Expended Are Reasonable...........................................23

    D.   Plaintiff's Expenses Are Reasonable and Compensable...........................23

IV.   THE CLASS REPRESENTATIVE SERVICE AWARD SHOULD BE APPROVED..................................................................................................24

V.    CONCLUSION ...................................................................................................25

BLOOD HURST & O' REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hyland's, Inc.*,
No. 2:12-cv-01150 (MANx), 2021 U.S. Dist. LEXIS 34695
(C.D. Cal. Feb. 23, 2021) ............................................................................................ 16, 17

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................................ 11

*In re Animation Workers Antitrust Litig.*,
No. 14-CV-4062-LHK, 2016 U.S. Dist. LEXIS 156720
(N.D. Cal. Nov. 11, 2016) ....................................................................................................... 22

*Arnutovskaya v. Alteration Grp. of NY, LLC*,
No. 161194/2017, 2020 NY Slip Op 32004(U) (Sup. Ct. June 23, 2020) ............................ 15

*Barnes v. Equinox Grp., Inc.*,
No. C 10-3586 LB, 2013 U.S. Dist. LEXIS 109088
(N.D. Cal. Aug. 1, 2013) ......................................................................................................... 14

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................................... 19, 21

*Beslity v. Manhattan Honda*,
467 N.Y.S.2d 471 (N.Y. App. Term 1983) ........................................................................... 10

*Bickley v. Schneider Nat'l Carriers, Inc.*,
No. 4:08-cv-05806-JSW, 2016 U.S. Dist. LEXIS 167144
(N.D. Cal. Oct. 13, 2016) ....................................................................................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................................... 11, 15

*Blum v. Stenson*,
465 U.S. 886 (1984) .............................................................................................................. 22

*Brundle v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019) ................................................................................................. 13

*In re Capacitors Antitrust Litig.*,
No. 3:17-md-02801-JD, 2018 U.S. Dist. LEXIS 169764
(N.D. Cal. Sept. 21, 2018) ...................................................................................................... 21

BLOOD HURST & O' REARDON, LLP

iv

BLOOD HURST & O' REARDON, LLP

*Carlotti v. Asus Comput. Int'l*,
   No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917
   (N.D. Cal. June 22, 2020)............................................................................................ 22

*Chavez v. Converse, Inc.*,
   No. 15-cv-03746-NC, 2020 U.S. Dist. LEXIS 257679
   (N.D. Cal. Nov. 25, 2020) ........................................................................................... 14

*City of Providence v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517
   (S.D.N.Y. May 9, 2014).............................................................................................. 17

*Clemons v. A.C.I. Found., Ltd.*,
   No. 154573/2015, 2017 NY Slip Op 30980(U)
   (Sup. Ct. May 11, 2017).............................................................................................. 21

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ....................................................................... 22

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
   (N.D. Cal. Feb. 11, 2016)............................................................................................ 24

*Dickey v. Advanced Micro Devices, Inc.*,
   No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440
   (N.D. Cal. Feb. 21, 2020)............................................................................................ 22

*Dixon v. Cushman & Wakefield W., Inc.*,
   No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512
   (N.D. Cal. Apr. 21, 2022)............................................................................................ 14

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214
   (N.D. Cal. June 26, 2017)............................................................................................ 24

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*,
   No. 1:13-cv-00474-DAD-BAM, 2017 U.S. Dist. LEXIS 27249
   (E.D. Cal. Feb. 24, 2017) ............................................................................................ 14

*Farar v. Bayer AG*,
   No. 3:14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729
   (N.D. Cal. Nov. 15, 2017) ..................................................................................... 16, 17

*Fleisher v. Phx. Life Ins. Co.*,
   No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574
   (S.D.N.Y. Sept. 9, 2015) ............................................................................................. 12

*Flemming v. Barnwell Nursing Home & Health Facilities, Inc.*,
   865 N.Y.S.2d 706 (App. Div. 3rd Dept.) ................................................................... 10

00193757

MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

BLOOD HURST & O' REARDON, LLP

*FTC v. Direct Mktg. Concepts, Inc.*,
  No. 04-11136-GAO, 2004 U.S. Dist. LEXIS 11628
  (D. Mass. June 23, 2004) ................................................................................. 20

*G.M. by & Through R.F. v. New Britain Bd. of Educ.*,
  173 F.3d 77 (2d Cir. 1999) ............................................................................... 15

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ............................................................................ 11

*Glass v. UBS Fin. Servs.*,
  No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476
  (N.D. Cal. Jan. 26, 2007) ................................................................................. 25

*Grove v. Wells Fargo Financial Calif.*,
  606 F.3d 577 (9th Cir. 2010) (following *Missouri v. Jenkins*, 491 U.S. 274
  (1989)) ............................................................................................................. 23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................... 10

*Hart v. Marriott Int'l*,
  No. SACV 17-2021JVS(KESx), 2019 U.S. Dist. LEXIS 227311
  (C.D. Cal. June 24, 2019) ................................................................................. 14

*Hart v. RCI Hosp. Holdings*,
  No. 09 Civ. 3043 (PAE), 2015 U.S. Dist. LEXIS 126934
  (S.D.N.Y. Sept. 22, 2015) ................................................................................ 11

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045
  (N.D. Cal. Dec. 17, 2018) ................................................................................ 22

*Henry v. Gerber Prods. Co.*,
  No. 3:15-cv-02201-HZ, 2016 U.S. Dist. LEXIS 52638
  (D. Or. Apr. 18, 2016) ..................................................................................... 17

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................... 15, 21

*Hernandez v. Dutton Ranch Corp.*,
  No. 19-cv-00817-EMC, 2021 U.S. Dist. LEXIS 212745
  (N.D. Cal. Sept. 10, 2021) ............................................................................... 14

*Hill v. Canidae Corp.*,
  No. EDCV 20-1374 JGB (SPx), 2021 U.S. Dist. LEXIS 214023
  (C.D. Cal. Apr. 2, 2021) .................................................................................. 17

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  2014 U.S. Dist. LEXIS 162106 (S.D. Cal. Nov. 18, 2014) .............................. 24

Case No. 3:16-cv-06980-RS

00193757

BLOOD HURST & O' REARDON, LLP

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................ 10, 12, 21

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................................ 24

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ................................................................................ 11

*Klein v. City of Laguna Beach*,
  810 F.3d 693 (9th Cir. 2016) ................................................................................ 10

*Knox v. John Varvatos Enters.*,
  520 F. Supp. 3d 331 (S.D.N.Y. 2021) ................................................................................ 13, 24

*Koch v. Greenberg*,
  14 F. Supp. 3d 247 (S.D.N.Y. 2014) ................................................................................ 20

*Kommer v. Ford Motor Co.*,
  No. 1:17-CV-0296 (LEK/DJS), 2020 U.S. Dist. LEXIS 235168
  (N.D.N.Y. Dec. 15, 2020) ................................................................................ 15, 20

*Kroessler v. CVS Health Corp.*,
  977 F.3d 803 (9th Cir. 2020) ................................................................................ 17

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2018 U.S. Dist. LEXIS 162425
  (N.D. Cal. Sept. 20, 2018) ................................................................................ 14

*In re Lloyd's Am. Tr. Fund Litig.*,
  No. C 07-05923 WHA, 2002 U.S. Dist. LEXIS 22663
  (S.D.N.Y. Nov. 26, 2002) ................................................................................ 22

*Lopez v. Dinex Grp., LLC*,
  No. 155706/2014, 2015 NY Slip Op 31866(U)
  (Sup. Ct. Oct. 6, 2015) ................................................................................ 15

*Luis v. Diskal Inc.*,
  No. 708875/2020, 2021 NY Slip Op 33108(U)
  (Sup. Ct. Nov. 5, 2021) ................................................................................ 10

*M.F. v. Amida Care, Inc.*,
  No. 520314/2017, 2022 N.Y. Misc. LEXIS 2315
  (Sup. Ct. May 26, 2022) ................................................................................ 12

*MacDonald v. Ford Motor Co.*,
  No. 13-cv-02988-JST, 2016 U.S. Dist. LEXIS 70809
  (N.D. Cal. May 31, 2016) ................................................................................ 10

Case No. 3:16-cv-06980-RS

00193757          MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................. 17

*Mark Fabrics, Inc. v. GMAC Com. Credit LLC*,
   No. 604631/02, 2005 N.Y. Misc. LEXIS 3566
   (Sup. Ct. Dec. 22, 2005) ...................................................................................................... 25

*Marshall v. Northrop Grumman Corp.*,
   No. 16-CV-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056
   (C.D. Cal. Sept. 18, 2020) .................................................................................................... 14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................................ 14

*Milburn v. PetSmart, Inc.*,
   No. 1:18-cv-00535-DAD-SKO, 2019 U.S. Dist. LEXIS 187530
   (E.D. Cal. Oct. 29, 2019) ...................................................................................................... 14

*Milton v. Bells Nurses Registry & Emp. Agency, Inc.*,
   No. 502303/2015, 2015 N.Y. Misc. LEXIS 4604
   (Sup. Ct. Dec. 14, 2015) ....................................................................................................... 14

*Montera v. Premier Nutrition Corp.*,
   No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 75843
   (N.D. Cal. Apr. 26, 2022) ............................................................................................... 8, 17

*Montera v. Premier Nutrition Corp.*,
   No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 144491
   (N.D. Cal. Aug. 12, 2022) ....................................................................................................... 9

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) .......................................................................................... 19

*Morris v. Lifescan, Inc.*,
   54 Fed. Appx. 663 (9th Cir. 2003) ....................................................................................... 14

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) ................................................................................ 3, 4

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-01271-RS, 2016 U.S. Dist. LEXIS 51140
   (N.D. Cal. Apr. 15, 2016) ................................................................................................... 4, 5

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-01271-RS, 2019 U.S. Dist. LEXIS 153698
   (N.D. Cal. Aug. 29, 2019) ....................................................................................................... 6

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-01271-RS, 2019 U.S. Dist. LEXIS 229365
   (N.D. Cal. Dec. 17, 2019) ....................................................................................................... 7

BLOOD HURST & O' REARDON, LLP

00193757

MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*,
No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108
(N.D. Cal. Dec. 6, 2017) ................................................................................................ 14

*Nichols v. Noom, Inc.*,
No. 20-CV-3677 (KHP), 2022 U.S. Dist. LEXIS 123146
(S.D.N.Y. July 12, 2022)......................................................................................... 15, 20

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*,
No. 3:08-cv-05278 RS, 2014 U.S. Dist. LEXIS 80983
(N.D. Cal. June 12, 2014)............................................................................................. 23

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...................................................................................... 11

*Orthopaedic Hosp. v. Encore Med., L.P.*,
No. 3:19-cv-00970-JLS-AHG, 2021 U.S. Dist. LEXIS 225014
(S.D. Cal. Nov. 19, 2021).............................................................................................. 22

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)........................................................................................... 13

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)....................................................................................... 11

*Racies v. Quincy Bioscience, LLC*,
No. 15-cv-00292-HSG (N.D. Cal.), 2020 U.S. Dist. LEXIS 78156
(N.D. Cal. May 4, 2020)......................................................................................... 16, 17

*Rahmey v. Blum*,
466 N.Y.S.2d 350 (App. Div. 2nd Dept. 1983)...................................................... 12, 21

*Richard v. Glens Falls Nat'l Bank*,
No. 1:20-cv-00734 (BKS/DJS), 2022 U.S. Dist. LEXIS 68692
(N.D.N.Y. Apr. 13, 2022) ............................................................................................. 15

*Ridgeway v. Wal-Mart Stores Inc.*
269 F. Supp. 3d 975 (N.D. Cal. 2017) ......................................................................... 13

*Rikos v. P&G*,
No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722
(S.D. Ohio Apr. 30, 2018)............................................................................................. 11

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
977 F.2d 47 (2d Cir. 1992)..................................................................................... 10, 15

*Rodriguez v. West Publ'g Corp*,
563 F.3d 948 (9th Cir. 2009)........................................................................................ 24

BLOOD HURST & O' REARDON, LLP

00193757

MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................... 22

*Shirrod v. Dir., OWCP*,
  809 F.3d 1082 (9th Cir. 2015) .......................................................................... 22

*Sobel v. Hertz Corp.*,
  53 F. Supp. 3d 1319 (D. Nev. 2014) .............................................................. 12, 13

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) .............................................................. 21

*Spratt v. Diversified Maint. Sys. LLC*,
  No. 151407/2019, 2022 NY Slip Op 31738(U)
  (Sup. Ct. May 31, 2022) ................................................................................... 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................... 11, 13

*Steiner v. Am. Broad. Co., Inc.*,
  248 Fed. Appx. 780 (9th Cir. 2007) .................................................................. 21

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................... 21

*U.S. v. Bayer Corp.*,
  No. 07-01(JLL), 2015 U.S. Dist. LEXIS 134321
  (D.N.J. Sept. 24, 2015) .................................................................................... 16

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................................... 25

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
  No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796
  (N.D. Cal. July 18, 2013) ................................................................................. 14

*Velez v. Novartis Pharm. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945
  (S.D.N.Y. Nov. 30, 2010) ................................................................................ 11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..................................................................... 15, 21

*In re Vizio, Inc.*,
  No. 8:16-ml-02693-JLS-KES, 2019 U.S. Dist. LEXIS 239976
  (C.D. Cal. July 31, 2019) ................................................................................. 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115
  (N.D. Cal. Mar. 17, 2017) ........................................................................... 21, 22

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................................................ 11, 19

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ..................................................................................... 25

*Wilson v. Car Land Diagnostics Ctr., Inc.*,
    No. 99 Civ. 9570 (GEL), 2001 U.S. Dist. LEXIS 19760
    (S.D.N.Y. Nov. 15, 2001) .......................................................................................................... 21

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693 (PGG) 2013 U.S. Dist. LEXIS 144327
    (S.D.N.Y. Oct. 2, 2013).............................................................................................................. 22

*Zink v. First Niagara Bank, N.A.*,
    No. 13-CV-01076-JJM, 2016 U.S. Dist. LEXIS 179900
    (W.D.N.Y. Dec. 29, 2016) ........................................................................................................ 12

**Statutes and Regulations**

Federal Food, Drug, and Cosmetics Act ......................................................................................... 17

New York Gen. Business Law
    § 349 ...........................................................................................................9, 10, 13, 15, 20
    § 350 ...........................................................................................................9, 10, 13, 15, 20

65 Fed. Reg. 1000 (Jan. 6, 2000) ................................................................................................... 20

**Rules**

Fed. R. Civ. P.
    23(h) ......................................................................................................................................... 23
    26.......................................................................................................................................... 7, 15
    30(b)(6)......................................................................................................................................... 3
    54(d) ..................................................................................................................................... 1, 23

Civil L.R. 54................................................................................................................................... 23

Case No. 3:16-cv-06980-RS

00193757                    MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The judgment obtained here has been a long time in the making. It is the first case to be tried in a litigation where Plaintiff's Counsel have battled Premier since 2013, steadfastly maintaining that Premier has played off Class Members' hopes of escaping the pain and stiffness of osteoarthritis to defrauded them into buying snake oil by. Throughout, Premier has engaged in a no-holds-barred defense so it could continue to "milk" the Joint Juice brand for every last penny, as the trial testimony revealed. Class Counsel have carried more than $1,133,698.57 in costs and incurred a lodestar of more than $6,409,284.75, while refusing to back down from diligently representing their clients and the classes. Over the years, this type of case has become increasingly more difficult to prosecute and increasingly more complex. There is a reason so few of these cases go to trial, and when they do, plaintiffs usually lose. Because these cases have become so difficult, most of these cases settle for relatively little, further incentivizing dishonest companies like Premier to continue defrauding consumers.

But not here. After solid preparation and anticipation of the many legal minefields, the jury reached a unanimous verdict in just two and half hours after a nine-day class action trial. Joint Juice was shown to be a fraud perpetrated by Premier's executives. Plaintiff's Counsel did so well in navigating the procedural landmines of this case that the Court found awarding the Class the full statutory amount owed would violate the fraudster's due process rights. And still, the $12,895,454.90 class judgment equals 5.59 times the full purchase price paid by each Class Member.

Given the remarkable result achieved and the efforts taken by counsel to obtain that result, Plaintiff's counsel are entitled to $6,806,031.96 in attorneys' fees and reimbursement of $1,001,697.98 in nontaxable expenses.[2] Likewise, Ms. Montera, who dropped everything to represent the class, including flying out from her home in New York for the trial and staying for its duration, deserves the requested $25,000 service award for her own hard work, deposition, trial participation, and dedication to the litigation.

---

[2]    Plaintiff contemporaneously files a Rule 54(d)(1) bill of costs seeking $132,096.79 in taxable costs.

BLOOD HURST & O' REARDON, LLP

00193757

## II.   HISTORY OF THE LITIGATION

In 2012, Plaintiff's Counsel began investigating whether the advertising claims about Joint Juice were false or misleading. Class Counsel are selective in the cases they bring and carefully research them before filing. The work from the beginning was used in the *Montera* trial, which was tried as a type of bellwether. The investigation included a review of the scientific evidence analyzing Joint Juice's ingredients, glucosamine hydrochloride, chondroitin sulfate, and several vitamins. There was a large amount of science cutting both ways, but Plaintiff's Counsel determined that the better science showed that Joint Juice did not work.

On March 21, 2013, the initial complaint was filed on behalf of a nationwide class. Dkt. No. 1 at 15. Premier answered on May 21, 2013. Dkt. No. 21. Soon after, Plaintiff's Counsel began formal discovery and prepared and proposed an ESI protocol, but Premier refused to negotiate itsdetails. *See* Dkt. No. 42. The parties instead discussed the possibility of settlement and exchanged limited discovery related to the scientific studies Premier relied on to support its advertising claims and Joint Juice sales data in advance of a November 2013 mediation held in San Francisco. Blood Decl., ¶ 7. The mediation went nowhere. *Id.*

Discovery then began in earnest. Pursuant to the parties' later agreement, all the discovery taken in the initial part of the litigation could be and was used in the bellwether case. Plaintiff's Counsel subpoenaed documents from Eleven Inc. and R2C Group to obtain market research and other marketing-related documents about Joint Juice. The documents obtained from these third-parties were used by experts at trial. Blood Decl., ¶ 8; s*ee also* Trial Tr. at 736, 501-02, 546, 562, 582-84, 633-34, 723 (referencing Eleven Inc. and R2C Group). Plaintiff's Counsel also subpoenaed ten retailers that sold Joint Juice. Blood Decl., ¶ 8. From these subpoenas, Plaintiff's Counsel received over 2,000 pages of valuable marketing documents and comprehensive retail sales data for the Joint Juice products. *Id.*

Meanwhile, Premier fought discovery at every turn. While continually misrepresenting that it had complied with its discovery obligations, it ultimately delayed until seven weeks before the initial discovery cutoff the production of the bulk of the requested documents, including ESI. Dkt. No. 42. Premier's lag in producing documents delayed taking depositions of many of Premier's

employees. *Id.* Starting in June 2014, Plaintiff's Counsel deposed six Premier employees. Blood Decl., ¶ 9. The depositions included CEO Darcy Horn, Joint Juice Brand Manager Lance Palumbo, and Dr. Kevin Stone, the creator of Joint Juice. Premier also designated Mr. Palumbo as a Rule 30(b)(6) witness. Given the number of topics and amount of testimony, his deposition took place over three days. *Id.* These depositions were used in preparing the *Montera* trial and at times during trial to impeach the Premier executives and employees.

Also in 2014, Plaintiff's Counsel retained various consultants to help guide them in the case. These include Dr. Jeremiah Silbert, Dr. Steven R. Graboff, Dr. Lynn R. Willis, and Mark Keegan. Each of these experts helped Plaintiff's Counsel understand various aspects of the case to allow them to formulate theories and arguments used throughout the litigation. Blood Decl., ¶ 10.

In the first part of 2015, the parties retained experts and exchanged expert reports to be used for class certification, summary judgment, and trial. Blood Decl., ¶ 11. The parties each retained science, marketing, survey, and damages experts. *Id*. In April 2015, the parties participated in a second mediation in San Francisco. Once again, the mediation failed. Expert discovery continued with the depositions of five expert witnesses.

Premier then filed a motion for summary judgment (Dkt. No. 85), and Plaintiff moved for class certification (Dkt. No. 88). Both motions were heavily briefed and with heavy citation to evidence. The orders resulting from these motions have been repeatedly used by the parties and the Court, including in connection with motions filed shortly before, during and after trial. Blood Decl., ¶ 12. Plaintiff's motion sought a nationwide class or alternatively, a multi-state class which included the New York class here. Premier opposed a nationwide class or any grouping of a multistate class. Dkt. No. 98. Each party also filed *Daubert* motions to exclude expert opinions.

On April 15, 2016, the Court issued its order denying Premier's motion for summary judgment and granting portions of plaintiff's motions to exclude Premier's marketing and science experts. *Mullins*, 178 F. Supp. 3d 867 (N.D. Cal. 2016). The Court found that the full refund damages model was appropriate, noted that Premier targeted arthritis sufferers and utilized Dr. Stone in advertisements to add credibility to the Joint Juice advertising message, and noted that Plaintiff's Counsel had "identified many significant issues to address during cross-examination" with

BLOOD HURST & O' REARDON, LLP

Premier's outside survey expert. *Id.* at 876, 878, 906. The Court excluded Premier's expert's opinions related to treatment protocols and injectable glucosamine. *Id.* at 904. Plaintiff has continually and successfully relied on this order throughout the litigation, including to exclude certain opinion testimony of Premier's Dr. Grande, whose testimony was so limited by the time of the *Montera* trial that Premier did not call him as a witness. *See* Dkt. No. 180 at 16-18. The Court granted class certification of the California class and requested further briefing from the parties related to the multi-state class. *See Mullins*, 2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016).

The experts and consultants retained by Plaintiff's Counsel in the litigation were crucial in developing Plaintiff's litigation and trial strategy and combating the convincing pseudo-science Premier developed. For example, Dr. Silbert was retained to assist Plaintiff's Counsel in showing that physiologically the active ingredients never made it to one's joints. Dr. Silbert was the world's leading researcher in this area. He passed away last year. Even then, Dr. McAlindon used his research and insights in his trial testimony. *See, e.g.*, Trial Tr. 109. Dr. Silbert's assistance also helped Plaintiff's Counsel show at trial that Premier's advertisements showing that Joint Juice was absorbed into the joint was false. Premier's summary judgment motion was so thoroughly repudiated that aspects of it have been used throughout the litigation. In fact, that was the only summary judgment motion Premier brought.

Dr. Graboff also helped Plaintiff's Counsel develop the facts and arguments about the hierarchy for treating osteoarthritis and medical professional guidelines recommending against the use of glucosamine and chondroitin supplements, which also was used at trial. His testimony was cited in the order denying Defendant's motion for summary judgment: 178 F. Supp. 3d at 885, 893.

Dr. Willis helped Plaintiff's Counsel understand and formulate arguments used throughout the litigation about clinical research, meta-analyses, treatment protocols, and preclinical study research. He helped counsel find additional experts used in the litigation and was cited extensively by the Court in the order denying Defendant's motion for summary judgment: *Id.* at 883-86, 895.

Mr. Keegan helped Plaintiff's Counsel understand Premier's consumer research, the Joint Juice advertising message, and the faults with the opinions of Premier's survey expert, Hal Poret. Mr. Keegan's expert testimony was cited in the orders granting class certification and denying

4                                    Case No. 3:16-cv-06980-RS

Defendant's motion for summary judgment *Id*. at 867, 879-82; 2016 U.S. Dist. LEXIS 51140, at *9. Mr. Keegan's work with Plaintiff's Counsel helped them understand the flaws in Mr. Poret's approach – many of which continued through Mr. Poret's testimony at trial.

The summary judgment and class certification orders have been central to the litigation and extensively relied upon by the parties in *Montera*. *See e.g.*, Dkt. No. 290 at 7-8, 13-14, 16, 18 (Plaintiff's opposition to decertification motion); (Plaintiff's opposition to decertification); Dkt. No. 264 at 6 (Plaintiff's objections to jury instructions); Dkt. No. 227 (Premier's opposition to motion in limine); Dkt. No. 224 at 1-2, 9-10 (Plaintiff's motion in limine); Dkt. No. 222 at 5 (Plaintiff's trial brief); Dkt. No. 208 at 3, 7 (Plaintiff's opposition to motion in limine); Dkt. No. 190 at 2-3 (same); Dkt. No. 166 (same); Dkt. No. 165 at 1, 2-3 (same); Dkt. No. 188 at 1 (same); Dkt. No. 184 at 1, 5, 11 (Plaintiff's opposition to motion to exclude opinions of Dr. Dennis at trial); Dkt. No. 166 at 2 (Plaintiff's motion in limine); Dkt. No. 165 at 1, 2, 3 (same); Dkt. No. 145 at 1 (Premier's opposition to motion to exclude Dr. Grande's testimony at trial); Dkt. No. 129 at 1, 3-4 (Plaintiff's motion to exclude Dr. Grande's testimony at trial); Dkt. No. 124 at 4 (Plaintiff's motion to exclude Dr. Silverman's testimony at trial); Dkt. No. 193 at 53 (Plaintiff's proposed jury instructions).

Consistent with the Court's class certification ruling, between November 18, 2016, and January 5, 2017, Plaintiff's Counsel filed the additional state-only class actions, including the New York action that became *Montera*. Blood Decl., ¶ 19.

At the February 9, 2017, case management conference, Premier made an oral motion to stay the related actions until after the *Mullins* trial. *Montera*, Dkt. No. 170. Counsel for plaintiffs objected, but the Court granted the motion to stay. *Id.* Premier then requested a continuance of the expert disclosures deadline, which was granted. *Id*.

As a result of the passage of time and as the case developed because of hard-fought and protracted litigation, Plaintiff retained additional experts. These included retaining Dr. McAlindon, one of the world's leading scientific experts on osteoarthritis, in 2016. Picking up on work done by earlier experts, Dr. McAlindon provided extensive analysis of the scientific evidence behind the Joint Juice ingredients. Dr. McAlindon systematically reviewed the applicable scientific studies and produced an expert report exceeding one-hundred pages. He also developed detailed rebuttal reports

BLOOD HURST & O' REARDON, LLP

00193757

to refute the assertions of Premier's experts, Drs. Grande, Lippiello, and Silverman. These reports provided the framework for his trial testimony and were utilized in developing several of the trial demonstratives used with the jury.

Plaintiff also retained Colin Weir in 2017 to rebut opinions of Premier's economics expert, Dr. William Choi. Because of this rebuttal work, Dr. Choi limited the related expert report done shortly before the *Montera* trial. Although Plaintiff's Counsel also retained Mr. Weir to rebut Dr. Choi, given the weakness of Dr. Choi's diminished opinions, Plaintiff's Counsel decided the rebuttal was not needed, limiting Mr. Weir's trial testimony to his retail sales data analysis.

Plaintiff's Counsel are not including the work performed in connection with the May 10, 2018, bench trial on the matter that became known as *Sonner*, plaintiff's claim for injunctive relief which was eventually dismissed for lack of jurisdiction, or work performed in the subsequent *Bland* and *Sonner* state court actions relating to the complaints in those actions, removal, remand, the 2020 and 2021 state court motions for class certification, Premier's motion to stay in *Sonner*, class notice in *Bland*, or third-party retailer subpoenas served this month in *Bland*. Plaintiff also is not seeking reimbursement for fees or expenses related to the work pertaining to the various *Sonner* appeals. Blood Decl., ¶¶ 23-24, 61.

In September 2018, the Court lifted the stay in the related actions, including the New York action, and shortly thereafter, Premier answered the ten complaints. *Montera*, Dkt. No. 36. Because the actions are all based on the same facts, the parties agreed to streamline discovery by sharing the discovery obtained up to that date. *Montera*, Dkt. No. 28.

On July 18, 2019, Premier moved for judgment on the pleadings again arguing that the FDA preempted the state law claims because Joint Juice was not advertised to treat or prevent arthritis or joint pain. *Montera*, Dkt. No. 48. The Court denied the motion noting that "the prior order denying summary judgment in *Mullins* found that plaintiff had successfully raised triable issues of fact regarding both [implied prevention and treatment of arthritis] claims." *Mullins*, 2019 U.S. Dist. LEXIS 153698, at *12 (N.D. Cal. Aug. 29, 2019). Premier deposed the other named plaintiffs. Blood Decl., ¶ 25. The testimony from these named plaintiffs has been used throughout the litigation, including by Plaintiff and the Court in connection with the motion for leave to substitute Ms.

Montera as the Class Representative. *Montera*, Dkt. No. 134 at 5-6.

On August 29, 2019, Plaintiffs filed an omnibus motion for class certification after Premier refused to stipulate to any of the class certification prerequisites. *Montera*, Dkt. No. 60-3. Nonetheless, given the work Plaintiff's Counsel did in obtaining class certification of the California class, Premier did not oppose the motion other than on a minor issue related to the class period. *See Mullins*, 2019 U.S. Dist. LEXIS 229365, at *2-3 (N.D. Cal. Dec. 17, 2019) ("In light of the class of California consumers previously certified in this action, [citation] Premier does not substantively oppose class certification.").

Next, from June 2019 to December 2021, Drs. Guilak, Dennis, and Rucker were retained to consult, prepare Rule 26 reports, and testify as needed. Dr. Guilak, an expert in basic science research on osteoarthritis and biomechanics, was retained to refute one of Premier's central science experts, Dr. Grande. Dr. Guilak was also retained to rebut another of Premier's former science experts, Dr. Lippiello, whom Premier chose to not use.

Plaintiff retained Dr. Dennis to conduct a consumer survey concerning the advertising message conveyed by Joint Juice. The Court noted that Dr. Dennis' survey "bolstered" the evidence that Plaintiff developed in class certification briefing. *See* 2019 U.S. Dist. LEXIS 229365, at *4. Dr. Rucker, a highly published researcher in marketing, advertising, and psychology, described the marketing elements which are implemented by brands and analyzed Premier's marketing documents to analyze Premier's strategy and conclude that a reasonable consumer purchases Joint Juice to address joint issues such as joint pain. Dkt. No. 127-2 at 35. Drs. Guilak, Dennis, and Rucker also scrutinized Premier's experts in their rebuttal reports. On September 24, 2020, a third all-day mediation session was held. Blood Decl., ¶ 28. The mediator, Judge Layne Phillips, concluded after half a day that continuing further would not result in a resolution. *Id.*

In April 2021, the Court directed the parties to propose trial dates and selected a first case for trial. *Montera*, Dkt. No. 96. The parties reached agreement on possible trial dates but not on the first case to try. Dkt. No. 97. In November 2021, the Court issued an order setting the trial date in *Montera* for May 23, 2022. Dkt. No. 98. Class Notice was disseminated on December 28, 2021. Blood Decl., ¶ 29. The parties prepared for trial and plaintiffs requested and received updated fact

BLOOD HURST & O' REARDON, LLP

00193757

discovery related to sales data. *Id*.

While preparing for trial, Class Counsel learned the original named plaintiff had been found to be an inadequate class representative in another action. *Montera*, Dkt. No. 106. Class Counsel believed they ethically had no choice but to seek to substitute class representatives, even though the named plaintiff had done an excellent job in this case. Accordingly, despite the risk of doing so at that late stage, on February 28, 2022, Class Counsel moved for leave to substitute Ms. Montera and requested that the Court appoint her as Class Representative. *Id.* Premier opposed the motion and requested the Class be decertified or alternatively, that the trial be delayed. Dkt. No. 111. The Court granted the motion for leave, appointed Ms. Montera as Class Representative, and held firm on the trial date. Dkt. No. 134. Premier took Ms. Montera's deposition on May 4, 2022. Blood Decl., ¶ 30.

On March 24, 2022, Premier again sought to decertify the Class, arguing causation was lacking because consumers purchase Joint Juice for "many reasons having nothing to do with Premier's advertising" and a full refund was not available because Joint Juice provides non-joint health benefits such as taste and hydration. *Montera*, Dkt. No. 130 at 1, 3, and 8.

From January 12, 2022, to February 14, 2022, the parties designated 12 experts and exchanged 20 expert reports. Blood Decl., ¶ 32. The parties prepared and took 11 expert witness depositions. *Id.* Thereafter, the parties collectively filed eleven *Daubert* motions, with subsequent opposition and reply briefs to each. *Id*.

On April 26, 2022, the Court denied another of Premier's motions to decertify the Class and granted in part and denied in part the parties' *Daubert* motions. *Montera*, 2022 U.S. Dist. LEXIS 75843 (N.D. Cal. Apr. 26, 2022). The order was overwhelmingly favorable to Plaintiff. The Court agreed with Plaintiff that GBL statutory damages are to be assessed on a "per transaction" basis. *Id*. at \*21. The Court excluded Premier's lead scientific expert, Dr. Silverman, from testifying on the human microbiome and the bioavailability of the active ingredients in Joint Juice, personal observations about his patients' use of glucosamine, the importance of alternative osteoarthritis treatments, and regulatory matters. *Id*. at \*22-26. The Court also precluded Premier's other science expert, Dr. Grande, from testifying about bioavailability because it was based on speculation. *Id*. at \*26-28. Plaintiff's Counsel were able to limit and truncate Dr. Grande's testimony so much that

BLOOD HURST & O' REARDON, LLP

8    Case No. 3:16-cv-06980-RS

Premier never called him at trial, even though it kept saying it would so Plaintiff's Counsel would have to spend time preparing the cross-examination. The Court also found that the consumer survey conducted by Premier's expert has "limited probative value" and "numerous shortcomings" which could be addressed on cross-examination. *Id.* at \*31-32. The Court precluded Premier's two non-retained experts, Dr. Stone and Palumbo, from providing expert testimony. *Id.* at \*34-36. Premier's motion to decertify was also denied. *Id.* at \*37-44.

After a nine-day class trial, the jury reached a unanimous verdict in just two and half hours. *Montera*, 2022 U.S. Dist. LEXIS 144491, at \*7-8 (N.D. Cal. Aug. 12, 2022). The jury found that Premier engaged in deceptive acts and practices in violation of GBL § 349 and that Joint Juice was falsely advertised in violation of GBL § 350. The jury found that full refunds should be awarded.

Thereafter, Premier filed an unsuccessful motion for judgment as a matter of law. *Id.* The Court also granted Plaintiff's motion for entry of judgment, awarding $50 for each purchase of Joint Juice in the amount of $8,312,450 in statutory damages and $4,583,004.90 in prejudgment interest, for a total of $12,895,454.90. *Id.* at \*26.

This case was the bellwether trial for this litigation. In all, Plaintiff's Counsel took 25 depositions, defended and prepared witnesses for 24 depositions, and served 23 subpoenas; eleven sets of discovery requests were exchanged by the parties, well-over half a million pages of ESI were produced by Premier, and 43 expert reports or declarations were exchanged by the parties at various stages of the litigation; Plaintiff's Counsel successfully opposed  summary judgment, a motion for judgment on the pleadings, a motion for judgment as a matter of law, two motions to decertify, and brought two class certification motions; the parties brought 29 written motions *in limine* and 17 *Daubert* motions; the Court issued nearly 100 orders over the course of the litigation; and the trial transcript consisted of 1,705 pages of trial proceedings. Blood Decl., ¶ 36. While more work lies ahead, to date Plaintiff's Counsel has expended enormous resources to achieve an outstanding result.

## III.   PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND EXPENSES

Plaintiff seeks an award of attorneys' fees of $6,806,031.96, plus reimbursement of $1,001,697.98 in nontaxable costs expended to litigate this action. The requested fee award is a 1.06 multiplier of Plaintiff's Counsel's lodestar incurred in the litigation attributable to achieving the

outstanding result at trial and represents one-third of the total recovery. That is, Plaintiff's Counsel are entitled to the requested fee under both the percentage of recovery and lodestar methods to calculating fees.

### A.    Legal Standards

"[R]easonable attorney's fees to a prevailing plaintiff" are available under GBL sections 349(h) and 350-e(3). These provisions were enacted to encourage private enforcement of New York consumer protection statutes given the "inability of the New York State Attorney-General to adequately police false advertising and deceptive trade practices." *Beslity v. Manhattan Honda*, 467 N.Y.S.2d 471, 474 (N.Y. App. Term 1983).[3]

New York law governs the award of attorney's fees. *Klein v. City of Laguna Beach,* 810 F.3d 693, 701 (9th Cir. 2016); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) ("State law creates the substantive right to attorney's fees[.]"). "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees." *MacDonald v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 70809, at \*4 (N.D. Cal. May 31, 2016). There are three applicable approaches to calculate fees here. Plaintiff seeks fees under both the percentage of the fund and the lodestar methods, since they yield the same number here, or alternatively, the hybrid approach.

### 1.    Percentage of the Fund Method

New York courts and the Ninth Circuit use the "percentage of the fund" and "lodestar" methods for determining attorneys' fees. *See Flemming v. Barnwell Nursing Home & Health Facilities, Inc.*, 865 N.Y.S.2d 706, 708 (App. Div. 3rd Dept.); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019).

"In New York state, courts generally 'prefer the percentage of recovery method to determine an award of attorneys' fees in a class action[.]'" *Luis v. Diskal Inc.*, 2021 NY Slip Op 33108(U), ¶¶ 10-11 (Sup. Ct. Nov. 5, 2021) (quoting *Cox v. Microsoft Corp.*, 907 N.Y.S.2d 436, 436 (Sup. Ct. Feb 2, 2007)). The percentage method is preferred because it is "easily quantified" and more

---

[3]    Internal quotations, citations, and brackets omitted unless otherwise noted.

BLOOD HURST & O' REARDON, LLP

00193757

efficient. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430-31 (S.D.N.Y. 2001) ("a majority of the Circuit courts have approved the percentage-of-the-fund method"); *Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *37 (S.D.N.Y. Sept. 22, 2015) ("It is black letter law that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'") (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The principle of the "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

In determining the attorneys' fees under the percentage method, courts consider attorneys' fees and expenses to be a part of the overall amount collected because they are considered a benefit to the class: "To determine the amount of the 'fund' for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Rikos v. P&G*, 2018 U.S. Dist. LEXIS 72722, at *22 (S.D. Ohio Apr. 30, 2018); *see also Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *51 (S.D.N.Y. Nov. 30, 2010) ("Based on the 'percentage of the fund' approach for evaluating class action fees, the amount of attorneys' fees in question is compared to the overall settlement value, including any portion earmarked for said fees."); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) ("Total Benefit to the class [] includes the 'benefit to class members,' the attorney's fees and may include costs of administration"); *Staton v. Boeing Co.*, 327 F.3d 938, 974-75 (9th Cir. 2003) (For percentage method, expenses and class notice costs are included in the fund); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (rejecting argument "that fees be based on a percentage of net recovery" and remanding to "calculate the fee award using the gross settlement amount"); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 283-84 (3d Cir. 2009) (approving fee award based on total settlement

BLOOD HURST & O' REARDON, LLP

00193757

11

Case No. 3:16-cv-06980-RS

value including attorneys' fees paid independent of the common fund); *Fleisher v. Phx. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, at *51 n.6 (S.D.N.Y. Sept. 9, 2015) ("In calculating the value of the monetary benefit, Courts include any amounts earmarked for attorneys' fees.").

When fees and expenses are awarded pursuant to a fee-shifting statute those amounts are properly factored into the gross benefit because without a fee-shifting basis the prevailing client (or here, the Class) is presumed to bear those costs. *See Zink v. First Niagara Bank, N.A.*, 2016 U.S. Dist. LEXIS 179900, at *21 (W.D.N.Y. Dec. 29, 2016) ("[A]ttorney's fees paid directly by the defendant are a benefit to the class."); *see also Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1324 (D. Nev. 2014) ("As a practical matter, a fee award under the fee-shifting statute would not affect the amount of compensation that Plaintiffs and class members receive because the fee would be assessed against Hertz on top of any liability to Plaintiffs. In contrast, a fee award under the common fund doctrine would be drawn from the class judgment and thus reduce the amount that class members receive.").

Thus, based on the caselaw, the gross benefit to the Class is $20,438,534.42, which is the sum of the judgment amount ($12,895,454.90), reimbursed costs ($1,133,794.77), and the proposed fee award ($6,806,031.96).

### 2.    Lodestar Method

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hyundai*, 926 F.3d at 570. The court "may then adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* New York courts look at similar factors when adjusting the lodestar. *See Rahmey v. Blum,* 466 N.Y.S.2d 350, 358 (App. Div. 2nd Dept. 1983). "[T]he lodestar itself is a presumptively reasonable fee[.]" *M.F. v. Amida Care, Inc.*, 2022 N.Y. Misc. LEXIS 2315, at *8 (Sup. Ct. May 26, 2022) (citing 5 Newberg on Class Actions (5th ed.)).

### 3.    The "Hybrid" Method

Fee amounts may also be analyzed and awarded using the hybrid method. The "hybrid" method is used when the class action "was initiated under a statute with a fee-shifting provision, but

BLOOD HURST & O' REARDON, LLP

00193757

it reached a judgment creating a common fund." *Ridgeway v. Wal-Mart Stores Inc.* 269 F. Supp. 3d 975, 982 (N.D. Cal. 2017); *see also* Newberg on Class Actions, § 14:10 (4th ed.)). When the fees awardable under the percentage method exceed the fees awardable under the lodestar method under fee shifting, the amount exceeding the lodestar calculation is paid by the class from the common fund, while the fee-shifted lodestar amount is paid by the defendant.

Under the hybrid method, attorney's fees are sought under both the lodestar and common fund approaches. *Ridgeway*, 269 F. Supp. 3d at 982. "There is no preclusion on recovery of common fund fees where a fee-shifting statute applies." *Staton*, 327 F.3d at 967; *see also Knox v. John Varvatos Enters.,* 520 F. Supp. 3d 331, 353 (S.D.N.Y. 2021) (awarding percentage of fund "over and above the recovery of statutory attorney's fee"); *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 783 (4th Cir. 2019) (awarding "statutory fees and an additional $1.5 million in fees" from a percentage of the judgment).

Here, Plaintiff's Counsel seek an attorney's fee award of that is approximately one-third of the common benefit created using the applicable rules for calculating the total benefit. The total benefit equals the common fund, plus the fees and expenses paid by the defendant under the fee shifting statute ($20,438,534.42) one-third of which Plaintiff's Counsel seeks as attorney's fees. Pursuant to GBL §§349 and 350's fee-shifting statute, Plaintiff's Counsel is entitled to their presumptively reasonable lodestar to be paid by Premier. Under the hybrid method, the remainder of Plaintiff's Counsel's proposed fee may also be paid from the judgment pursuant to the common fund doctrine. *See Sobel,* 53 F. Supp. 3d at 1330-31 ("Plaintiffs may seek additional attorney's fees out of the common fund irrespective of their entitlement to attorney's fees under the fee-shifting statute."). For example, under the hybrid model, the court in *Sobel* approved a 2.0 lodestar multiplier consisting of $3.1 million "to be drawn from the common fund in addition to [plaintiff's counsel's $3.1 million lodestar] to be paid by [defendant] pursuant to the fee-shifting statute." *Id.*

### B.      One-Third of the Common Fund Is Warranted

In calculating fees as a percentage of the recovery, the Ninth Circuit uses a benchmark of 25% of the common fund from which to start. However, fee awards "far greater" than the 25% benchmark are regularly awarded. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

BLOOD HURST & O' REARDON, LLP

(affirming 33% award). "[I]n most common fund cases, the award exceeds the [25%] benchmark." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at \*5 (N.D. Cal. Dec. 6, 2017); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming 33.3% award); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th Cir. 2003) (affirming 33% of fund); *Vedachalam v. Tata Consultancy Servs., Ltd.*, 2013 U.S. Dist. LEXIS 100796 (N.D. Cal. July 18, 2013) (collecting cases awarding 30% or more); *Milburn v. PetSmart, Inc.*, 2019 U.S. Dist. LEXIS 187530, at \*23 (E.D. Cal. Oct. 29, 2019) (awarding 33.3%); *Chavez v. Converse, Inc.*, 2020 U.S. Dist. LEXIS 257679, at \*14-15 (N.D. Cal. Nov. 25, 2020) ("one-third of the Total Settlement Amount" was awarded); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 U.S. Dist. LEXIS 167144, at \*11 (N.D. Cal. Oct. 13, 2016) (33% award); *Barnes v. Equinox Grp., Inc.*, 2013 U.S. Dist. LEXIS 109088, at \*13 (N.D. Cal. Aug. 1, 2013) (33% award); *Dixon v. Cushman & Wakefield W., Inc.*, 2022 U.S. Dist. LEXIS 73512, at \*30 (N.D. Cal. Apr. 21, 2022) (awarding "one-third of the 'maximum common fund'"); *In re Lidoderm Antitrust Litig.*, 2018 U.S. Dist. LEXIS 162425, at \*38 (N.D. Cal. Sept. 20, 2018) ("[A] fee award of one-third is within the range of awards in this Circuit."); *Hernandez v. Dutton Ranch Corp.*, 2021 U.S. Dist. LEXIS 212745, at \*17 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund."); *Marshall v. Northrop Grumman Corp.,* 2020 U.S. Dist. LEXIS 177056, at \*7 (C.D. Cal. Sept. 18, 2020) ("A one-third percentage has been applied to the gross settlement amount to calculate the fee award."); *Emmons v. Quest Diagnostics Clinical Labs., Inc.,* 2017 U.S. Dist. LEXIS 27249, at \*20 (E.D. Cal. Feb. 24, 2017) ("Numerous factors support" the award of one-third of the common fund); *Hart v. Marriott Int'l*, 2019 U.S. Dist. LEXIS 227311, at \*32 (C.D. Cal. June 24, 2019) ("Given the time Class Counsel spent on the case and the complexity and novelty of the legal theories involved, attorney fees of 33 percent of the Gross Fund Value are justified.").

New York courts also routinely approve fee awards equal to one-third of the total benefit. *See*, *e.g.*, *Milton v. Bells Nurses Registry & Emp. Agency, Inc.*, 2015 N.Y. Misc. LEXIS 4604, at \*13 (Sup. Ct. Dec. 14, 2015) ("one-third of the settlement fund … is well within the range of reasonableness"); *Spratt v. Diversified Maint. Sys. LLC*, 2022 NY Slip Op 31738(U), ¶ 7 (Sup. Ct.

BLOOD HURST & O' REARDON, LLP

May 31, 2022) (same); *Lopez v. Dinex Grp., LLC*, 2015 NY Slip Op 31866(U), ¶ 11 (Sup. Ct. Oct. 6, 2015) (same); *Arnutovskaya v. Alteration Grp. of NY, LLC*, 2020 NY Slip Op 32004(U), ¶ 3 (Sup. Ct. June 23, 2020) (awarding 33.33%); *Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at *32 (S.D.N.Y. July 12, 2022) (GBL § 349 action approving one-third of $56 million fund and noting a "fee equal to one-third of a settlement fund is routinely approved"); *Richard v. Glens Falls Nat'l Bank*, 2022 U.S. Dist. LEXIS 68692, at *12 (N.D.N.Y. Apr. 13, 2022) (GBL § 349 action awarding one-third of fund); *In re Vizio, Inc.*, 2019 U.S. Dist. LEXIS 239976, at *34 (C.D. Cal. July 31, 2019) (awarding 33% of fund in GBL §§ 349 and 350 action).

In calculating the percentage, courts look at a range of factors, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work; and (5) the contingent nature of the fee and the financial burden. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Riordan*, 977 F.2d at 53 (2d Cir. 1992) (factors include "the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved."). The public policy behind the GBL in having the private sector enforce deceptive advertising can also be considered. *Nichols*, 2022 U.S. Dist. LEXIS 123146, at *34; *Kommer v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 235168, at *16 (N.D.N.Y. Dec. 15, 2020).

Given the applicable factors discussed below, the fee request is reasonable.

### 1.      Plaintiff's Counsel Achieved an Exceptional Result for the Class

In determining the reasonableness of a fee request, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Bluetooth*, 654 F.3d at 942 (same); *G.M. by & Through R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir. 1999) (same). Here, Plaintiff's Counsel battled for years with formidable adversaries and won a complete victory – a feat other plaintiffs' counsel have not achieved in this type of case.

This factor alone justifies the requested fee award. After years of contentious litigation involving class certification, summary judgment, motion for judgment on the pleadings, *Daubert* motions, substantial party and third-party discovery, Rule 26 reports and motion-related declarations from numerous designated experts, a nine-day jury trial, and motions to decertify, Plaintiff's Counsel obtained a unanimous jury verdict that found Joint Juice to be "valueless" for its advertised

15                                            Case No. 3:16-cv-06980-RS

00193757

purpose. The jury rejected all of Premier's arguments, including those intended to result in only partial refunds. The Court ultimately awarded $12,895,454.90 to the Class, amounting to 5.59 times the full purchase price for every purchase of Joint Juice.

To put this achievement in perspective, one should consider that this type of case almost never goes to trial. Plaintiff's Counsel never sold out, even when required to repeatedly invest substantial amounts of time and money into the litigation.

Meanwhile, plaintiffs in other false advertising dietary supplement cases that have been tried have lost. *See, e.g.*, *Farar v. Bayer AG*, No. 3:14-cv-04601 (N.D. Cal); *Racies v. Quincy Bioscience, LLC,* No. 15-cv-00292 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 2:12-cv-01150 (MANx) (C.D. Cal.). This includes actions brought by government agencies. *See U.S. v. Bayer Corp.*, 2015 U.S. Dist. LEXIS 134321, at *59 (D.N.J. Sept. 24, 2015) ("[T]he United States did not carry its burden of proving that Bayer failed to possess and rely upon competent and reliable scientific evidence to substantiate its specific claims about PCH's efficacy for constipation, diarrhea, and gas and bloating."). Class Counsel were aware of these cases, but also knew that careful preparation, smart strategic choices from the beginning, hard work, and a significant monetary investment in the litigation could lead to a different result, which is exactly what occurred.

### 2. Plaintiff's Counsel Assumed Substantial Risks

The risk and expense of the action also supports the proposed fee award. Consumer protection class action litigation in federal court has become more difficult for consumers over the last decade. Issues relating to class certification, choice of law, remedies, and personal and subject matter jurisdiction are just some of areas where the law has shifted during this litigation. Simply getting a case like this to trial in federal court is a significant achievement, as the decade of work here demonstrates. Successfully trying the case is that much more challenging.

Meanwhile, navigating the scientific issues in the face of so much industry-funded research and facially persuasive junk science that has sufficiently kept federal agencies like the FDA and FTC at bay poses numerous risks both for law and motion and at trial.

All this work comes at a high cost, both in terms of out-of-pocket expenses and professional time that could not be spent on other cases. Blood Decl., ¶ 38. Plaintiff's Counsel successfully and

BLOOD HURST & O' REARDON, LLP

16                                                     Case No. 3:16-cv-06980-RS

strategically advanced legal and factual arguments, avoided other legal arguments, positioned and re-positioned the litigation to adjust to changing jurisprudence, and used resources, facts, and experts to successfully guide this case through trial.

Moreover, courts recognize that litigation involving a "battle of the experts" is inherently risky, justifying a higher percentage fee award. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372, 374 (S.D.N.Y. 2002) (awarding fees one-third of the recovery and noting that a "battle of the experts" creates a "complex issue"). This "battle of the experts" involved scientific, marketing, survey, and damages issues which are complex and create uncertainties. *See Hill v. Canidae Corp.*, 2021 U.S. Dist. LEXIS 214023, at *21 (C.D. Cal. Apr. 2, 2021) (noting that risk involved as "expensive and uncertain battle of the experts"); *see also City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *24 (S.D.N.Y. May 9, 2014) (same).

Novel legal issues were also at play. Preemption issues under the Federal Food, Drug, and Cosmetics Act ("FDCA) present "a complex and nuanced area of law[.]" *Henry v. Gerber Prods. Co.*, 2016 U.S. Dist. LEXIS 52638, at *22 (D. Or. Apr. 18, 2016). The Ninth Circuit addressed preemption well into the life of this litigation in a case won by Class Counsel here. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 806 (9th Cir. 2020). Further, given the rarity with which this type of case goes to trial, the Court addressed a variety of novel issues in bringing this case to trial. *See, e.g.*, *Montera*, 2022 U.S. Dist. LEXIS 75843, at *21 (recognizing "the divergence of views amongst highly regarded district courts across the country" relating to damage calculations).

As noted above, this type of false advertising class action often fails at trial. In *Allen v. Hyland's, Inc.*, No. 2:12-cv-01150 (MANx) (C.D. Cal.) the plaintiff lost a 13-day class jury trial involving homeopathic products where the defendant advertised the products as providing specific benefits that no homeopathic product could provide. 2021 U.S. Dist. LEXIS 34695, at *2 (C.D. Cal. Feb. 23, 2021). In *Farar v. Bayer AG*, plaintiffs alleged Bayer's One-A-Day products contained false and misleading health claims in violation of consumer protection statutes. *See* No. 3:14-cv-04601, 2017 U.S. Dist. LEXIS 193729, at *3 (N.D. Cal. Nov. 15, 2017). Plaintiffs defeated summary judgement and obtained class certification but lost a class jury trial after four years of litigation. *Farar*, Dkt. No. 327 (Judgment). In *Racies v. Quincy Bioscience, LLC*, the defendant obtained a

BLOOD HURST & O' REARDON, LLP

hung jury in a false advertising class action about a brain health dietary supplement tried in this District. 2020 U.S. Dist. LEXIS 78156, at *11 (N.D. Cal. May 4, 2020).

Plaintiff's Counsel faced these same risks but prevailed and should be compensated for their efforts.

### 3. Counsel Provided High-Quality Work Which Required a Significant Amount of Time and Skill

Throughout the litigation Plaintiff's Counsel have produced high-quality work. This work takes time, skill, persistence, and a high tolerance for risk.

Over the course of the litigation Defendant retained three different large, capable, and aggressive law firms to represent it. Premier is a well-capitalized company that has mounted an aggressive defense even for a product with no strategic importance to it. For trial, it used experienced trial attorneys from two large and expensive law firms.

Plaintiff's Counsel have spent approximately 9,635.05 hours on this litigation, not including various work related only to *Mullins*, the *Sonner* appeals, the more recent *Sonner* and *Bland* state court actions, and during February 10, 2017 through May 17, 2018 when the related actions were stayed. Blood Decl., ¶¶ 23-24, 61. The discovery obtained and analyzed by Plaintiff's Counsel in *Mullins* was utilized in this action, the scientific and marketing research and analysis accomplished over the years was critical in developing the litigation and trial strategy in this action, Dr. McAlindon's 116-page report was developed in preparation for the 2017 trial and only needed updates for this action, the early depositions of Lance Palumbo and Darcy Horn were used at trial, and class certification was not substantively opposed by Premier in this action because of the favorable *Mullins* class certification order.

Plaintiff's Counsel successfully persevered through class certification, summary judgment, motion for judgment on the pleadings, two decertification motions, a motion for judgment as a matter of law, and extensive party and non-party discovery, including twelve class representative depositions, depositions of current and former employees of Defendant, and outside experts. Forty-nine depositions were conducted which contributed to the recovery. Plaintiff's Counsel retained experts who are highly qualified and among the most preeminent authorities in their fields. These

BLOOD HURST & O' REARDON, LLP

experts were each heavily involved: one provided a systematic review of over 180 peer-reviewed publications, consumer surveys were fielded, and Premier's marketing strategy was scrutinized. Plaintiff's Counsel also obtained critical retail sales data from numerous third-party retailers which was analyzed by Plaintiff's damages expert.

Prior to and during trial, Plaintiff's Counsel defeated Premier's argument that there should be a jury instruction regarding compliance with the FDA, obtained a favorable order excluding certain testimony from Premier's experts, and was able to admit important trial exhibits over Premier's objections.

The skill and tenacity of Plaintiff's Counsel was put to the test throughout this litigation, but it resulted in an exceptional recovery for the Class and justifies the requested attorneys' fee award.

### 4. Plaintiff's Counsel Took the Case Purely on a Contingency Basis

"[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015)." "It is an established practice in the private legal [world] to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, an attorney whose compensation is dependent on success – who takes a significant risk of no compensation – may receive a fee that "far exceed[s] the market value of the services if rendered on a non-contingent basis." *Id.*; *see also Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013) (same). Plaintiff's Counsel undertook the litigation solely on a contingent basis, with no guarantee of recovery. *See* Blood Decl., ¶ 37. Despite such a challenge, and through protracted litigation lasting almost a decade, Plaintiff's Counsel obtained a final judgment that provides an excellent result for the Class.

### 5. The Requested Fee Award Is Equivalent to Awards in Similar Cases

As discussed above, courts frequently award fees amounting to one-third of the total class recovery. Considering the factors discussed here, one-third the total recovery is a common award.

MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

### 6. Public Policy Considerations Weigh in Favor of the Requested Award

The public policy behind fee awards in GBL §§ 349 and 350 actions also support awards of one third of the common benefit achieved added on top of the common benefit. *See Nichols*, 2022 U.S. Dist. LEXIS 123146, at *34 (GBL § 349 case awarding one-third of recovery because it is "consistent with public policy, as this litigation and settlement serves as a warning to companies that utilize auto renewal for subscription services); *Kommer*, 2020 U.S. Dist. LEXIS 235168, at *16 (GBL §§ 349 and 350 action awarding fees because "public policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace.").

In *Koch v. Greenberg*, the court recognized that an award of fees is appropriate when the action reinforces the purpose of GBL §§ 349 and 350 "to combat fraud against consumers" or otherwise has a "broad impact on consumers." 14 F. Supp. 3d 247, 280 (S.D.N.Y. 2014). Here, the Court acknowledged that Premier marketed Joint Juice "specifically to people seeking joint pain and arthritis relief[,]" "encouraged customers to make repeat purchases," sold Joint Juice while it was "aware of the changing tide in the science yet continued without hesitation[,]" and inflicted Class Members with "the intangible harm of lost hope." Dkt. No. 293 at 10.

Premier's conduct in intentionally targeting arthritis sufferers also carries real dangers. The FDA has enumerated numerous "serious risks" associated with the sale of dietary supplements advertised to consumers suffering from diseases. These include encouraging consumers to "self-treat" and "substitute potentially ineffective products for proven ones," "delay or forego regular screening, and forfeit the opportunity for early medical treatment[.]" 65 Fed. Reg. at 1001-02. *See also FTC v. Direct Mktg. Concepts, Inc.*, 2004 U.S. Dist. LEXIS 11628, at *16 (D. Mass. June 23, 2004) ("Consumers suffering from … arthritis … are injured if they purchase [an unapproved drug] in lieu of pursuing treatments that may offer them real health benefits.").

This recovery holds Premier responsible for defrauding consumers, most of whom are older and in pain.

### C.     The Lodestar Calculation

The lodestar method provides an independent measure of the fees that should be awarded. Here, the lodestar and percentage methods yield about the same amount: a fee representing 33.3% of the total recovery is a modest 1.06 multiplier of the lodestar.

"The lodestar calculation begins with the multiplication of the number of hours reasonable expended by a reasonable hourly rate." *Hyundai*, 926 F.3d at 570. The "calculation need entail neither mathematical precision nor bean counting … courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen*, 306 F.R.D. at 264; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 39115, at *733 n.5 (N.D. Cal. Mar. 17, 2017) (same); *In re Capacitors Antitrust Litig.*, 2018 U.S. Dist. LEXIS 169764, at *51-52 (N.D. Cal. Sept. 21, 2018) (same). "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

"The lodestar may then be adjusted by taking 'into account the factors ordinarily considered by New York courts[.]'" *Wilson v. Car Land Diagnostics Ctr., Inc.*, 2001 U.S. Dist. LEXIS 19760, at *3 (S.D.N.Y. Nov. 15, 2001) (quoting *Riordan*, 977 F.2d at 53); *see also Rahmey v. Blum*, 466 N.Y.S.2d 350, 358 (App. Div. 2nd Dept. 1983) (listing factors). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. "[T]he most critical factor is the degree of success obtained." *Id*. at 436.

In lodestar cases, a multiplier is typically applied in recognition of the contingency risk and other factors. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]"); *see also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Clemons v. A.C.I. Found., Ltd.*, 2017 NY Slip Op 30980(U), ¶ 9 (Sup. Ct. May 11, 2017) ("a 'multiple of 2.09

BLOOD HURST & O' REARDON, LLP

00193757

is at the lower end of the range of multipliers awarded by courts'") (quoting *In re Lloyd's Am. Tr. Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at \*81 (S.D.N.Y. Nov. 26, 2002)); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (multiplier of 5.3); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at \*29 (S.D.N.Y. Oct. 2, 2013) (multiplier of 7.3).

### 1.     The Hourly Rates Are Reasonable

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Typically, the forum where the district court sits is considered the relevant community. *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015). Plaintiff's Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11.

Plaintiff's Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See*, *e.g.*, Blood Decl., ¶¶ 58-59 (collecting cases); Carpenter Decl., ¶¶ 16-17.

Plaintiff's Counsel's rates also compare with rates approved by other trial courts in class action litigation and by what attorneys of comparable skill charge in this District. *See Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at \*38 (N.D. Cal. Dec. 17, 2018) (approving rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen*, 2017 U.S. Dist. LEXIS 39115, at \*732 ($275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020) ($830 to $1,275 for partners and $425 to $695 for associates); *Carlotti v. Asus Comput. Int'l*, 2020 U.S. Dist. LEXIS 108917, at \*15 (N.D. Cal. June 22, 2020) ($950 and $1,025 for partners); *Dickey v. Advanced Micro Devices, Inc.*, 2020 U.S. Dist. LEXIS 30440, at \*22 (N.D. Cal. Feb. 21, 2020) ($615-$1,000 for partners and $275-$575 for associates); *In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, at \*20 (N.D. Cal. Nov. 11, 2016) (up to $1,200 for senior attorneys and $290 for paralegals); *Orthopaedic Hosp. v. Encore Med., L.P.*, 2021 U.S. Dist. LEXIS 225014, at \*40 (S.D. Cal. Nov. 19, 2021) (2020 and 2021 partner rates of $925-$1,225, associate rates of $770-$1,065); Blood Decl., ¶ 59 (citing hourly rates charged by the firms

BLOOD HURST & O' REARDON, LLP

Premier hired in this litigation, including partner rates of $750-$1,280 and associate rates of $545-$925).

Plaintiff's Counsel have submitted sworn declarations attesting to their hourly rates and hours devoted to the case, their experience, and describing their efforts to prosecute this litigation.

### 2.    The Hours Expended Are Reasonable

The number of hours spent by Plaintiff's Counsel is reasonable given the efforts needed to obtain the jury verdict and judgment. This litigation has gone on for nearly a decade and has been hard-fought and expensive. *See* § II above. Plaintiff's Counsel have not included all time spent on the litigation, but only that time benefiting the recovery in this action. Blood Decl., ¶¶ 23-24, 61. Plaintiff's Counsel do not here seek recovery of time spent on the *Sonner* appeals, various work related only to *Mullins* or the state court actions, and any billable hours during February 10, 2017 through May 17, 2018 when the related actions were stayed. *Id.* The resulting 9,635.05 hours spent by Plaintiff's Counsel is conservative and reasonable.

### D.    Plaintiff's Expenses Are Reasonable and Compensable

Courts "have long interpreted the phrase 'reasonable attorney's fees' to include certain litigation expenses[.]" *Grove v. Wells Fargo Financial Calif.*, 606 F.3d 577, 580 (9th Cir. 2010) (following *Missouri v. Jenkins*, 491 U.S. 274 (1989)). "Consistent with *Jenkins*, we repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Id*. The Federal Rules of Civil Procedure also provide for expenses. *See* Fed. R. Civ. P. 54(d) (costs "should be allowed to the prevailing party"); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law …"). This Court has held that a prevailing plaintiff is entitled to "taxable costs" pursuant to Local Rule 54 and "non-taxable costs" if they would be billed separately to a client paying an hourly rate. *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 2014 U.S. Dist. LEXIS 80983, at *23-24 (N.D. Cal. June 12, 2014).

Plaintiff's Counsel submit declarations attesting to the expenses incurred in this litigation—in the aggregate, $1,133,794.77 was invested during the near decade-long litigation has been pending. *See* Blood Decl., ¶¶ 66-68; Iredale Decl., ¶ 13; Carpenter Decl., ¶¶ 22-23. Counsel incurred

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

these costs for, *inter alia*, expert fees, mediation fees, electronic discovery database support, issuing class notice, filing and service of process, travel, online research, photocopies, postage, telephone charges, and the jury trial. As stated in Plaintiff's Counsel's declarations, these expenses were reasonably and necessarily incurred and are the sort typically billed to paying clients. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 162106, at *193 (S.D. Cal. Nov. 18, 2014) (awarding reimbursement for "filing fees, photocopies, postage, telephone charges, computer research, mediation fees, and travel" because they are "the types of expenses routinely charged to paying clients"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *72-73 (N.D. Cal. Feb. 11, 2016) (awarding "reimbursement of reasonable litigation expenses from [the created common] fund" and noting "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in [] class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation"). Accordingly, Plaintiff's Counsel's application for reimbursement of $1,005,705.60 in nontaxable expenses should be approved.

## IV.   THE CLASS REPRESENTATIVE SERVICE AWARD SHOULD BE APPROVED

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59 ("Incentive awards are fairly typical in class action cases," and are "generally sought after a settlement or verdict has been achieved."); *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 145214, at *42 (N.D. Cal. June 26, 2017) ("Service awards for class representatives are provided to encourage individuals to undertake the responsibilities of representing the class and to recognize the time and effort spent on the case."); *Knox v. John*

24

00193757

*Varvatos Enters.*, 520 F. Supp. 3d 331, 349 (S.D.N.Y. 2021) (quoting *Boeing*, 444 U.S. at 478).

On short notice Ms. Montera stepped forward to act as the class representative just before trial. She quickly responded to discovery, sat for deposition, and traveled from New York City to San Francisco to assist for the duration of the trial. Montera Decl., ¶¶ 1-8. She spent 19 days in San Francisco, including Memorial Day weekend, working with her Counsel, preparing to testify, and providing feedback on the course of the trial. Ms. Montera provided feedback to Plaintiff's Counsel while in San Francisco and provided valuable input from a layperson's perspective. Blood Decl., ¶ 3.

The $25,000 service award requested for Ms. Montera is well within the acceptable range and should be approved. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 service award); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (awarding $25,000 service award to each named plaintiff); *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *43, 52-53 (N.D. Cal. Jan. 26, 2007) (same); *Mark Fabrics, Inc. v. GMAC Com. Credit LLC*, 2005 N.Y. Misc. LEXIS 3566, at *5 (Sup. Ct. Dec. 22, 2005) (same).

## V.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Court grant this Motion.

Respectfully submitted,

Dated: August 26, 2022

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:        *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)

BLOOD HURST & O' REARDON, LLP

GRACE JUN (287973)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com
gjun@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA  92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

26                                    Case No. 3:16-cv-06980-RS

00193757       MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

Executed on August 26, 2022.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O' REARDON, LLP

00193757