1  VENABLE LLP
   Angel A. Garganta (SBN 163957)
2  Email: agarganta@venable.com
   Steven E. Swaney (SBN 221437)
3  seswaney@venable.com
   Amit Rana (SBN 291912)
4  Email: arana@venable.com
   Antonia I. Stabile (329559)
5  Email: aistabile@venable.com
   101 California Street, Suite 3800
6  San Francisco, CA 94111
   Telephone:    415.653.3750
7  Facsimile:    415.653.3755

8  MORRISON & FOERSTER LLP
   Jessica L. Grant (178138)
9  Email: jgrant@mofo.com
   425 Market Street
10 San Francisco, CA 94105
   Telephone:    415.268.7000
11 Facsimile:    415.268.7522

12 Attorneys for Defendant
   PREMIER NUTRITION COMPANY, LLC
13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16 | MARY BETH MONTERA, individually and on | Case No. 3:16-cv-06980-RS
   behalf of all others similarly situated,
17 |                                         | Hon. Richard Seeborg
                   Plaintiff,
18 |                                         | **PREMIER NUTRITION COMPANY,**
          v.                                   **LLC'S OPPOSITION TO PLAINITFF'S**
19 |                                         | **MOTION FOR AWARD OF**
   PREMIER NUTRITION CORPORATION,            **ATTORNEYS' FEES, REIMBURSEMENT**
20 |                                         | **OF EXPENSES, AND SERVICE AWARDS**
                   Defendant.                 **FOR CLASS REPRESENTATIVE**
21 |
22 |                                         | Hearing Date: October 20, 2022
                                              Time:          1:30 p.m.
23 |                                         | Judge: Honorable Richard Seeborg
                                              Location: Courtroom 3, 17th Floor
24 |
25 |                                         | Complaint Filed:   December 5, 2016
                                              Trial Date:        May 23, 2022
26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

RELEVANT PROCEDURAL HISTORY ............................................................ 3

    I.    THE MULLINS ACTION .................................................................. 4

    II.   THE PENDING RELATED ACTIONS .............................................. 5

ARGUMENT ..................................................................................................... 5

    I.    LEGAL STANDARD ...................................................................... 5

    II.   CLASS COUNSEL'S "PERCENTAGE-OF-THE-FUND" PROPOSAL IS CONTRARY TO ESTABLISHED LAW ............................................ 7

        A.   A "Constructive" Common Fund Does Not Apply When a Case Was Litigated to Judgment and Fees Are Disputed ................... 7

        B.   All Relevant Factors Weigh Against an Upward Adjustment from the 25% Benchmark .............................................. 10

        C.   Common Fund Fees Are Paid Out of the Judgment .......................... 12

    III.  CLASS COUNSEL HAVE NOT MET THEIR BURDEN TO SUBSTANTIATE THEIR LODESTAR .................................................. 13

        A.   Class Counsel Was Required to Submit Detailed Billing Records, and Their Refusal to Do So Warrants Rejection of Their Lodestar ............................................................... 13

        B.   The Blood Declaration Fails to Establish the Lodestar Number Is Reasonable ...................................................... 16

            1.   Class Counsel Failed to Provide Sufficient Documentation to Include Work Done in the *Mullins* Action in Their Lodestar .......................................... 16

            2.   Class Counsel's Lodestar Impermissibly Includes Work on Other Cases That Had No Bearing on the *Montera* Action .......................................................... 17

        C.   Class Counsel's Lodestar Is Inflated by Overbilling, Overstaffing and Other Unreasonable Hours ............................... 18

    IV.  CLASS COUNSEL'S "HYBRID" METHOD IS IMPROPER ..................... 19

V.    THE COURT SHOULD AWARD CLASS COUNSEL 25% OF THE
      JUDGMENT ................................................................................................. 20

VI.   PLAINTIFF HAS NOT MET HER BURDEN TO RECOVER EXPENSES ................. 22

      A.   Class Counsel Provided No Documentation to Support
           Requested Expenses .............................................................................. 22

      B.   Class Counsel Cannot Recover Expenses Unrelated to
           This Action ............................................................................................. 22

      C.   Most of Class Counsel's Requested Expenses Must Be
           Apportioned Among the Related Actions ........................................... 24

CONCLUSION ............................................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adobe Sys. Inc. Priv. Litig.*,
  Case No. 13-cv-05226 (N.D. Cal. June 10, 2015) ...................................................................15

*In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24, 1975*,
  687 F.2d 626 (2d Cir. 1982)........................................................................................................25

*Am. Dev. Grp., LLC v. Island Robots of Fla.*,
  2019 WL 5790265 (E.D.N.Y. Oct. 4, 2019) ..............................................................................13

*In re Apple iPhone/iPod Warranty Litig.*,
  40 F. Supp. 3d 1176 (N.D. Cal. 2014) ...................................................................................6, 13

*Banas v. Volcano Corp.*,
  47 F. Supp. 3d 957 (N.D. Cal. 2014) .........................................................................................22

*Beastie Boys v. Monster Energy Co.*,
  112 F. Supp. 3d 31 (S.D.N.Y. 2015)..........................................................................18, 19, 21

*Biery v. United States*,
  818 F.3d 704 (Fed. Cir. 2016) ....................................................................................................17

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ........................................................................................................................6

*Carrigan v. Reckitt Benckiser LLC*,
  No. 1:18-cv-07073 (N.D. Ill.) .....................................................................................................11

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) .....................................................................................................................12

*City of Pontiac Gen. Empls. v. Lockheed Martin*,
  954 F. Supp.2d 276 (S.D.N.Y. 2013) .........................................................................................18

*Cox v. Microsoft Corp.*,
  907 N.Y.S.2d 436 (Sup. Ct. 2007)................................................................................................7

*Deloach v. Philip Morris Cos.*,
  2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) ........................................................................8, 9

*Democratic Party of Wash. State v. Reed*,
  388 F.3d 1281 (9th Cir. 2004) .....................................................................................................19

*Does v. District of Columbia*,
  448 F. Supp. 2d 137 (D.D.C. 2006) ......................................................................................18, 19

*English v. Colo. Dep't of Corr.*,
   248 F.3d 1002 (10th Cir. 2001) ...................................................................22

*Fiala v. Met. Life Ins. Co.*,
   776 N.Y.S.2d 29 (App. Div. 2004) ........................................................13, 17

*In re Glob. Equity Mgmt. (SA) Pty. Ltd.*,
   2020 WL 4732210 (N.D. Cal. Aug. 15, 2020) .............................................22

*Goldberger v. Integ. Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................7, 21

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) .....................................................................13

*Gutierrez v. Wells Fargo Bank, N.A.*,
   2015 WL 2438273 (N.D. Cal. May 21, 2015) .............................................25

*Hartman v. Pompeo*,
   2020 WL 6445873 (D.D.C. Nov. 3, 2020) ....................................................8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .....................................................................................16

*In re Home Depot Inc.*,
   931 F.3d 1065 (11th Cir. 2019) .......................................................1, 8, 9, 10

*Hugee v. Kimso Apartments, LLC*,
   852 F. Supp. 2d 281 (E.D.N.Y. 2012) ..........................................................6

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   697 F. Supp. 2d 1139 (N.D. Cal. 2010) .......................................................24

*Klein v. City of Laguna Beach*,
   810 F.3d 693 (9th Cir. 2016) .........................................................................6

*Klein v. Robert's Am. Gourmet Food, Inc.*,
   28 A.D.3d 63 (N.Y. App. Div. 2006) ..........................................................14

*Knox v. John Varvatos Enters. Inc.*,
   520 F. Supp. 3d 331 (S.D.N.Y. 2021)..........................................................20

*Koch v. Greenberg*,
   14 F. Supp. 3d 247 (S.D.N.Y. 2014)..............................................................6

*Krakauer v. Dish Network, L.L.C.*,
   2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ..........................................8, 12

*Kroessler v. CVS Health Corp.*,
   No. 3:19-cv-00277 (S.D. Cal.)......................................................................11

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)..........................................................7

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ..............................................................................24

*Millea v. Metro-N. R. Co.*,
    658 F.3d 154 (2d Cir. 2011)................................................................................16

*Moore v. Verizon Commc'ns Inc.*,
    2014 WL 588035 (N.D. Cal. Feb. 14, 2014) ........................................................8

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)........................................................................13, 14

*Nasiri v. T.A.G. Security Protective Servs. Inc.*,
    2021 WL 4226207 (N.D. Cal. Sept. 16, 2021) ..............................................16, 17

*New England Country Foods, LLC v. Vanlaw Food Prods., Inc.*,
    2022 WL 2189515 (C.D. Cal. March 29, 2022) ............................................12, 15

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................25

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    2021 WL 4124159 (N.D. Cal. Sept. 9, 2021) (Seeborg, J.)............................14, 20

*Plummer v. Chem. Bank*,
    592 F. Supp. 1168 (S.D.N.Y. 1984).....................................................................19

*Podhorecki v. Lauer's Furniture Stores*,
    184 A.D.2d 1066 (N.Y. App. 1991) .......................................................................6

*Raquedan v. Centerplate of Del. Inc.*
    (N.D. Cal. Dec. 16, 2019) ...................................................................................22

*Ridgeway v. Wal-Mart Stores Inc.*,
    269 F. Supp. 3d 975 (N.D. Cal. 2017) .............................................................6, 20

*RMP Capital Corp. v. Victory Jet, LLC*,
    139 A.D. 836 (N.Y. App. Div. 2016) ....................................................................6

*Salgado v. T-Mobile USA, Inc.*,
    2020 WL 3127391 (E.D. Cal. July 11, 2020) ......................................................11

*Scott v. City of New York*,
    643 F.3d 56 (2d Cir. 2011)..................................................................................14

*Seegert v. Rexall Sundown, Inc.*,
    No. 3:17-cv-01243 (S.D. Cal.)............................................................................11

*Shannon v. Fireman's Fund Ins. Co.*,
  156 F. Supp. 2d 279 (S.D.N.Y. 2001)....................................................................19

*Sobel v. Hertz Corp.*,
  53 F. Supp. 3d 1319 (D. Nev. 2014)......................................................................20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................ *passim*

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.D.C. 1993) ....................................................................................7

*Synopsys, Inc. v. Ricoh Co.*,
  661 F.3d 1361 (Fed. Cir. 2011)............................................................................22

*Torcivia v. Suffolk Cnty.*,
  437 F. Supp. 3d 239 (E.D.N.Y. 2020) ............................................................14, 15

*United States v. $28,000.00 in U.S. Currency*,
  802 F.3d 1100 (9th Cir. 2015) ...........................................................................6, 13

*Van Gemert v. Boeing Co.*,
  573 F.2d 733 (2d Cir. 1978) *aff'd*, 444 U.S. 472 (1980) ......................................21

*In re Vivendi Universal, S.A. Sec. Litig.*,
  2016 WL 2620428 (S.D.N.Y. Apr. 29, 2016) ...................................................8, 12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .........................................................................10, 15

*Vizcaino v. Ritz Carlton Hotel Co., L.L.C.*,
  2020 N.Y. Misc. LEXIS 2319 (Sup. Ct. May 8, 2020) ....................................6, 14

*In re Washington Pub. Power Supply Sys. Secs. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .....................................................................2, 13, 19

*Whyble et al. v. The Nature's Bounty Co.*,
  Case No. 7:20-cv-03257 (S.D.N.Y.)......................................................................11

*Wilson v. Car Land Diagnostics Ctr., Inc.*,
  2001 WL 1491280 (S.D.N.Y. Nov. 26, 2001).......................................................10

*Winter v. Novartis Pharms. Corp.*,
  739 F.3d 405 (8th Cir. 2014) ................................................................................24

*Yamagata v. Reckitt Benckiser LLC*,
  2021 WL 5909206 (N.D. Cal. Oct 28, 2021)........................................................11

*Yamagata v. Reckitt Benckiser LLC*,
  3:17-cv-03529 (N.D. Cal.)....................................................................................11

# INTRODUCTION

Class Counsel ask this Court to award $7,939,826.73 in combined fees, expenses and costs—an astounding **61.57% of the judgment.** Their motion does not meaningfully explain, because it cannot, why such an outsized award is reasonable. In truth, there is no authority justifying such a large fee award, and Class Counsel's proposal appears to be one of the largest fee requests on record in any jurisdiction relative to the amount of money recovered for the class. For the following reasons, the Court should reject this request and award Class Counsel $3,421,715.99 in fees and expenses, to be paid from the judgment.

Class Counsel present three methods for calculating their requested fee award, but their proposal under each method is legally incorrect and factually unsupported.

First, Class Counsel argue that the percentage of recovery (*i.e.*, common fund) method should be calculated using a "constructive" common fund, comprised of the judgment plus Class Counsel's lodestar (with a multiplier) and expenses. No court, in any jurisdiction, has ever employed a "constructive" common fund where the case was litigated to judgment and fees are disputed. Some courts evaluating class action *settlements* under Rule 23(e) have viewed the entire "package deal" as a constructive common fund in determining whether to approve a jointly proposed fee award. And *every* "constructive" common fund case cited by Class Counsel involved a settlement. But this approach is inapplicable where—as here—there is no negotiated settlement. The Eleventh Circuit squarely addressed this issue in *In re Home Depot Inc.*, 931 F.3d 1065 (11th Cir. 2019), and held that the rationale for adding class counsel's fees to the class benefit to form a "constructive" common fund does *not* apply when the defendant is disputing the amount of fees; it applies only to negotiated settlements where the defendant has agreed to pay a set amount. As discussed below, the Court should employ the percentage of the fund method in this case—but the fund must be the amount of the judgment, not the inflated amount Class Counsel seek in their unprecedented "constructive" common fund proposal.

Second, Class Counsel propose the lodestar method under the GBL's *discretionary* fee-shifting provision. But the law is overwhelmingly clear that "the party petitioning for attorneys' fees [under a lodestar method] bears the burden of submitting **detailed time records** justifying the

1    hours claimed to have been expended." *In re Washington Pub. Power Supply Sys. Secs. Litig.*, 19
2    F.3d 1291, 1305 (9th Cir. 1994) (emphasis added). Class Counsel submitted *no* time records,
3    much less detailed records, choosing instead to present a chart attributing a block number of
4    hours for each attorney with vague descriptions of the type of tasks each attorney claims to have
5    performed in this case. Because this is insufficient to allow a meaningful review of Class
6    Counsel's lodestar, Premier asked Class Counsel to provide their billing records. Class Counsel
7    refused, claiming it was not required. That is untrue, as Class Counsel is well aware. In fact,
8    Judge Koh rejected Class Counsel's attempt to pull this same maneuver, holding that attorney
9    declarations like those submitted here were insufficient to conduct a lodestar analysis.

10           Simply put, the Court cannot analyze Class Counsel's lodestar without these records. And
11    as the party potentially having to pay millions of dollars under a fee-shifting statute, Premier is
12    undeniably entitled to see the detailed billing records supporting Class Counsel's request. Courts
13    routinely disallow lodestar awards when the requesting counsel fail to meet their burden to
14    provide sufficient documentation. The Court should do so here, as well.

15           Class Counsel's refusal to provide any billing records (or documentation of expenses) to
16    back up their lodestar request is even more improper because they seek to include work
17    performed on the *Mullins* action—in which Premier was the prevailing party—and ten other
18    related actions. Without billing records or other documentation, Class Counsel leaves the Court
19    with no ability to determine what tasks from *Mullins* or the related actions may or may not be
20    included in their lodestar. Moreover, as explained in the Declaration of Steven Tasher filed
21    herewith, even the paltry declarations that Class Counsel has provided show significant evidence
22    of overbilling, overstaffing, and unreasonable rates for low-level tasks. Any meaningful review
23    is impossible given the lack of detailed records, and the Court should reject Class Counsel's
24    lodestar for that reason. But as the Tasher Declaration makes clear, if the Court does calculate a
25    lodestar, it should—at a minimum—reduce Class Counsel's proposed $6.4 million by at least
26    50% to account for these inefficiencies and for the failure to submit adequate records.

27           Class Counsel also proposes a so-called "hybrid method" of calculating their fee award,
28    in which Premier pays their lodestar *and* they get a percentage of their inflated "constructive"

common fund. The double-dipping under this approach is particularly egregious. Regardless, the cases upon which Class Counsel principally rely involved *mandatory* fee-shifting statutes, and thus the defendants were required to pay class counsel's lodestar as part of the overall fee award. Here, the GBL's fee-shifting provision is discretionary—and the Court cannot calculate a fee award under this approach in any event, because it is based on the same impermissible "constructive" common fund and undocumented lodestar amount described above.

The correct outcome here is for the Court to calculate Class Counsel's fee award using the percentage of the fund method. As Class Counsel recognizes, this is the preferred method for awarding fees in class actions because it is easily quantified and more efficient than the lodestar method. It is also fair to award Class Counsel's fees from the judgment in this case. The judgment already includes an enormous windfall for the Class—statutory damages that are more than five times actual damages, a result that was never contemplated under the GBL. It is more than equitable for Class Counsel's fee to be taken from the judgment amount under these circumstances, as shifting payment for Class Counsel's services to Premier would provide a double windfall to the Class. The percentage of the fund approach also obviates the need for the Court to deal with the lodestar analysis, which has been made impossible due to Class Counsel's refusal to provide detailed billing records—and, even if such records were provided, would be fraught with complexity given that Class Counsel is seeking to recover for work they did in other cases, much of which is not recoverable. The Ninth Circuit's presumptive benchmark of 25% of the fund is appropriate here. Thus, the Court should award Class Counsel a fee of $3,223,863.72.

Finally, Class Counsel's request for over $1 million in expenses is grossly inflated. Like the lodestar, the request for expenses is entirely undocumented, and improperly includes expenses incurred in *Mullins*, *Bland* and other cases—not the judgment obtained in *this* action. The Court should reduce the amount of nontaxable expenses and taxable costs to $197,852.36

## RELEVANT PROCEDURAL HISTORY

The Court is very familiar with the procedural history of this action. However, because Class Counsel seek to recover fees and costs incurred in connection with several cases, the history is briefly recounted in relevant part below.

-3-

## I.    THE *MULLINS* ACTION

Class Counsel filed *Mullins v. Premier Nutrition Corp.*, No. 3:13-cv-01271-RS (the "*Mullins* action") on March 21, 2013. *Mullins*, Dkt. No. 1. The *Mullins* action was based on the identical claim here: that Premier's Joint Juice products were deceptively marketed because they allegedly do not provide the advertised joint health benefits.

In July 2017, just two months before trial was scheduled to commence, Class Counsel moved for leave to amend the complaint to eliminate the claim for damages under the CLRA. *Mullins*, Dkt. No. 174. Over Premier's objection—and despite the Court's warning that Premier would be allowed to move to dismiss—Class Counsel filed a Second Amended Complaint dropping the CLRA damages claim and seeking only equitable restitution and disgorgement, and injunctive relief. *Mullins*, Dkt. No. 201. Premier moved to dismiss the SAC because the plaintiff had an adequate legal remedy and thus was not entitled to equitable relief. *Mullins*, Dkt. No. 216. The Court granted Premier's motion, dismissing the UCL and CLRA claims for equitable restitution and disgorgement with prejudice. *Mullins*, Dkt. No. 229. Class Counsel then moved to dismiss the sole remaining claim for injunctive relief on the ground that the plaintiff lacked standing to pursue that claim. *Mullins*, Dkt. No. 241. The Court granted the motion and entered judgment in favor of Premier. *Mullins*, Dkt. No. 247. The Ninth Circuit affirmed. Dkt. No. 302.

On May 1, 2018, Premier timely filed a bill of costs in the *Mullins* action pursuant to Fed. R. Civ. P. 54(d)(1). *Mullins*, Dkt. No. 249. On August 10, 2018, the Court's clerk entered the costs bill awarding Premier $88,539.84 in recoverable costs. *See Mullins*, Dkt. No. 262. Premier subsequently filed a proposed writ of execution on November 24, 2020, which Class Counsel sought to quash, in part because Premier was allegedly "not the prevailing party." *See Mullins*, Dkt. No. 311. The Court denied the motion to quash, holding that "<u>Premier must be considered the 'prevailing party'</u>" in the *Mullins* action. *See Mullins*, Dkt. No. 319 (emphasis added). As the Court bluntly told Class Counsel when hearing Premier's motion to enjoin their attempt to refile the *Mullins* action in state court, "you've gone to the district court, you've gotten to the Ninth Circuit. You've lost." *See Mullins*, Dkt. No. 323 at 28:9-10.

## II.    THE PENDING RELATED ACTIONS

The Court's denial of a nationwide class in *Mullins* led Class Counsel to file several other lawsuits against Premier, all based on the exact same allegations but under different states' laws. Class Counsel filed the instant action on behalf of a class of New York consumers on December 5, 2016. *See* Dkt. No. 1. Nine of the related cases (including this action) remain pending before this Court.[1]

In October 2018, the parties stipulated to share certain fact discovery from *Mullins* to "eliminate duplication and streamline discovery." Dkt. No. 35. They agreed that the "*Mullins* Discovery shall be treated as produced in the Related Actions as if it was initially requested by Plaintiffs, and responded to and produced by Premier in the Related Actions." *Id.* A similar stipulation was reached in a related case Class Counsel filed in Alameda County Superior Court, *Bland v. Premier Nutrition Corp*. The stipulations do not reference expert discovery.

The *Montera* case was set for trial based on Class Counsel's request that it be the first to proceed. While some of the experts used in *Mullins* were re-used in this action, others were replaced or not designated at all. Moreover, some of the expert discovery done in *Mullins* was inapplicable, since the *Mullins* expert discovery pertained to a proposed nationwide and California class of consumers, while this action was specific to New York. After a nine-day trial, the jury reached a verdict in favor of Plaintiff on June 7, 2022. *Montera*, Dkt. No. 268.

## ARGUMENT

## I.    LEGAL STANDARD

Class Counsel attempt to justify their fee request under both the equitable "common fund" doctrine as well as the discretionary fee-shifting provisions of the GBL. The "common fund," or percentage of the fund method, is an equitable doctrine under which class counsel may obtain a percentage of the recovery obtained for the class. *Staton v. Boeing Co.*, 327 F.3d 938,

---

[1] *Caiazzo v. Premier Nutrition Corp.*, No. 3:16-cv-06685 (Florida class); *Lux v. Premier Nutrition Corp.*, No. 3:16-cv-06703 (Connecticut class); *Ravinsky v. Premier Nutrition Corp.*, No. 3:16-cv-06704 (Pennsylvania class); *Sandoval v. Premier Nutrition Corp.*, No. 3:16-cv-06708 (uncertified New Mexico class); *Dent v. Premier Nutrition Corp.*, No. 3:16-cv-06721 (Illinois class); *Simmons v. Premier Nutrition Corp.*, No. 3:16-cv-07078 (Michigan class); *Spencer v. Premier Nutrition Corp.*, No. 3:16-cv-07090 (Maryland class); *Schupp v. Premier Nutrition Corp.*, No. 3:17-cv-00054 (Massachusetts class).

968 (9th Cir. 2003). By contrast, under a fee-shifting statute, such as GBL §§ 349(h) and 350-e(3) (which grant the Court discretion to award reasonable fees), the Court "must calculate awards for attorneys' fees using the lodestar method." *Id.* at 965; *see also Podhorecki v. Lauer's Furniture Stores*, 184 A.D.2d 1066, 1066-67 (N.Y. App. 1991) ("lodestar method of computing a statutory allowance of reasonable fees . . . should be used."). A lodestar is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 297, 298 (E.D.N.Y. 2012) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)). Under New York law,[2] "[t]he hours claimed in a fee application need not be automatically accepted and should be disallowed if inadequately documented." *Vizcaino v. Ritz Carlton Hotel Co., L.L.C.*, 2020 N.Y. Misc. LEXIS 2319, at *5-6 (Sup. Ct. May 8, 2020) (declarations by counsel insufficient to support fee request).

In a case where a common fund is created, the Court may "award fees *either* on the basis of a so-called 'lodestar' calculation *or* by applying a 'percentage of the fund' to determine the fee amount." *In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1179 (N.D. Cal. 2014) (Seeborg J.).

Under any method, the amount of fee recovery is left to the sole discretion of the Court and must always be reasonable. *Koch v. Greenberg*, 14 F. Supp. 3d 247, 280 (S.D.N.Y. 2014) ("As reflected in the [GBL]'s use of the word 'may,' the 'fee award [under §§ 349 and 350] is left to the discretion of the trial court in all circumstances.'"); *RMP Capital Corp. v. Victory Jet, LLC*, 139 A.D. 836, 839 (N.Y. App. Div. 2016) ("award of attorneys' fees, whether pursuant to agreement or statute, must be reasonable and not excessive."). And regardless of the legal basis for the fee request, Class Counsel always carry the burden to "'produce satisfactory evidence' establishing the reasonableness of the requested fee." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015).

---

[2] "Federal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine." *See Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016). "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees." *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 982 (N.D. Cal. 2017).

## II.    CLASS COUNSEL'S "PERCENTAGE-OF-THE-FUND" PROPOSAL IS CONTRARY TO ESTABLISHED LAW

Under both New York and federal law, the percentage method is the preferred recovery method to determine attorneys' fees in class actions. *See Cox v. Microsoft Corp.*, 907 N.Y.S.2d 436, 436 (Sup. Ct. 2007) ("The court prefers the percentage of recovery method to determine an award of attorneys' fees in a class action."). The percentage method "more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Lopez v. Youngblood*, 2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011). This method "more accurately reflects the economics of litigation practice," *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.D.C. 1993), and is the most consistent with the "American rule" that each party bears its own attorneys' fees. *Boeing*, 444 U.S. at 473. Finally, the "rationale" for awarding fees from a common fund is based on the equitable principle that "those benefitting from a lawsuit without contributing to its cost" should not be "unjust[ly] enrich[ed]." *Goldberger v. Integ. Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

However, Class Counsel's approach to the percentage method is wildly out of line with the relevant authorities. Class Counsel argue that they may add their fee request and expenses to the judgment, and then take a percentage of that inflated amount from this supersized—and entirely fictional—"constructive" common fund. This approach has no applicability here. Some courts, in the context of approving class *settlements*, have viewed the entire proposed settlement amount as a "constructive" common fund when assessing the reasonableness of class counsel's fee request. But this approach does *not* apply in litigated cases where fees are disputed—and Class Counsel cites no case, and Premier is aware of none, in which a court has adopted this approach when there was no agreed-upon common fund negotiated as part of a settlement.

### A.    A "Constructive" Common Fund Does Not Apply When a Case Was Litigated to Judgment and Fees Are Disputed

Class Counsel are not entitled to base their recovery on an inflated "constructive" common fund—which Class Counsel manufactured for the sole purpose of making their unreasonable fee request (61% of the judgment) appear reasonable. In class actions, fees are

-7-

1   awarded from "common funds" in two circumstances: (1) when the parties negotiate a common

2   fund as part of a settlement; or (2) when a judgment is entered in favor of a class, thereby

3   creating a common fund. Courts have consistently distinguished these two circumstances—

4   particularly with respect to calculating the size of the fund for purposes of awarding fees under

5   the percentage method. Some courts have found that when the "award to the class and the

6   agreement on attorney fees represent a 'package deal' because the entire settlement amount

7   essentially comes from the same source, the settlement is treated as a constructive common

8   fund." *Moore v. Verizon Commc'ns Inc.*, 2014 WL 588035, at *9 (N.D. Cal. Feb. 14, 2014); *see*

9   *also Hartman v. Pompeo*, 2020 WL 6445873, at *8 (D.D.C. Nov. 3, 2020) ("The constructive

10  common-fund doctrine is based on the equitable notion that, even in cases where attorneys' fees

11  and class settlements are paid from separate funds, so long as the two amounts are negotiated as

12  a 'package deal' . . . common fund principles should apply."). That is, courts treat the class

13  counsel's fees and expenses and the amount to be paid to the class as a single "constructive"

14  common fund when they are part of a packaged settlement.

15      But when the amount of fees is in dispute, such as after a judgment, there is no "package

16  deal" and thus no "constructive" common fund—the common fund achieved for the class is

17  simply the judgment amount. *See In re Home Depot Inc.*, 931 F.3d 1065, 1092 (11th Cir. 2019)

18  ("Class Counsel's argument to include attorney's fees in the class benefit fails . . . because the

19  parties left the amount of attorney's fees completely undetermined."); *Deloach v. Philip Morris*

20  *Cos.*, 2003 WL 23094907, at *4 (M.D.N.C. Dec. 19, 2003) (same); *see also Krakauer v. Dish*

21  *Network, L.L.C.*, 2018 WL 6305785, at *6 (M.D.N.C. Dec. 3, 2018) (following class action jury

22  trial, common fund calculated as the amount of the judgment at the time of entry *without*

23  including fees, expenses, and costs); *In re Vivendi Universal, S.A. Sec. Litig.*, 2016 WL 2620428,

24  at *1 (S.D.N.Y. Apr. 29, 2016) (same);

25      Given the law on this issue, it is unsurprising that *every* case cited by Plaintiff for the

26  notion that their requested fees, expenses, and costs should be added to the judgment to create a

27  "constructive" common fund *involved a negotiated settlement—not a judgment*. Mot. at 11-12

28  (citing eight cases, all in the context of a court approving a proposed class action settlement that

1   contained a negotiated amount of fees for class counsel). "A critical difference between the cited

2   cases and the instant case is that, in each of the cited cases, the parties had reached a 'clear

3   sailing' agreement limiting the amount of fees that could be awarded." *Deloach*, 2003 WL

4   23094907, at *4. Thus, those cases have no applicability here. The amount of fees in this case is

5   in dispute and left to the discretion of the Court. Under these circumstances, no court has **ever**

6   added class counsel's disputed fee request, plus expenses, to the judgment to establish a fictional

7   "constructive" common fund when awarding fees under the percentage method.

8       The Eleventh Circuit's decision in *In re Home Depot* is directly on point. In that class

9   action, Home Depot settled claims related to a data breach, and agreed to put $25 million into a

10  settlement fund for the class, and to pay "reasonable" attorneys' fees. 931 F.3d at 1071.

11  However, the settlement expressly left the amount of fees undetermined and subject to further

12  litigation. In requesting a percentage recovery, class counsel asked the district court to add the

13  $18 million they were requesting in fees to the $25 million settlement fund to create a

14  "constructive common fund," from which the percentage recovery would be calculated. *See id.* at

15  1071-72. The district court rejected this approach, because the scenario presented—in which the

16  defendant disputed the amount of fees—was "not a 'true common fund analysis.'" *See id.* at 1093.

17      The Eleventh Circuit affirmed. It held that the rationale for adding class counsel's

18  requested fees to the benefit paid to the class when deciding the amount of the common fund

19  applies only if the **total** amount at issue was negotiated and agreed to be paid by the defendant:

20          The rationale for the constructive common fund is that the defendant
            negotiated the payment to the class and the payment to counsel as a "package
21          deal." The defendant is concerned, first and foremost, with its total liability.
            Thus, courts have recognized that, as a practical matter, defendants
22          undoubtedly take into account the amount of attorney's fees when they agree
            on an amount to pay the class. By taking the amount of attorney's fees into
23          account, the defendant effectively reduces the class' recovery accordingly. .
            . . It is fair to assume that the class members' recoveries have been indirectly
24          reduced already in that the settling defendant, in agreeing to pay the class,
            say, $8 million and class counsel an additional $2 million, is effectively
25          agreeing to pay the class $10 million and to not contest class counsel's pursuit
            of a 20% fee from the $10 million recovery.
26
    *Id*. at 1080 (citations omitted). But, the Eleventh Circuit continued, "this package-deal reasoning
27
    does not apply here. Put simply, there was no package: Home Depot did not negotiate the
28

-9-

attorney's fees. … [They] were left entirely to the District Court's discretion." *Id.* Thus, the court concluded that "the constructive common fund does not apply when ... the amount of those fees is left completely undetermined." *Id.*

This Court should reject the Class Counsel's identical attempt to artificially inflate the common fund by adding their requested fees and expenses. As the Eleventh Circuit made clear in *In re Home Depot*, allowing Class Counsel to determine the size of the benefit to the class by selecting the size of the fee is "circular," (*id.*), and the "double dipping" created by this proposal is obvious. Indeed, this Court would be the first in any jurisdiction to accept it in a post-judgment fee application. *See Bluetooth*, 654 F.3d at 44 ("[E]ven though a district court has discretion to choose how it calculates fees, we have said many times that it 'abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward.'"). Accordingly, in calculating fees based on the percentage of the recovery method, the "common fund" here is the amount of the judgment, $12,895,454.90.

**B.    All Relevant Factors Weigh Against an Upward Adjustment from the 25% Benchmark**

Class Counsel's proposal that they be paid 33% of the common fund is also contrary to law—and inconsistent with Class Counsel's fee requests in other similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("the benchmark award is 25 percent of the recovery obtained"). Declaration of Steven A. Tasher ("Tasher Decl.") ¶¶ 34-35. When using the percentage method, courts consider factors including the degree of success, the risk of litigation, the burden to class counsel (such as foregoing other work), and public policy considerations. Each of these factors weighs against an upward deviation of the 25% benchmark.

*First*, although Class Counsel obtained a judgment for the Class, it is undisputed that the recovery was far less than they sought and anticipated. *See* Plaintiff's Motion for Entry of Judgment, Dkt. No. 273 (requesting entry of judgment in the total amount of $140,023,765.74). This factor weighs against deviating from the 25% benchmark. *Wilson v. Car Land Diagnostics Ctr., Inc.*, 2001 WL 1491280, at *2 (S.D.N.Y. Nov. 26, 2001) ("the limited success calls for a reduction in the fees sought.").

1    *Second*, Class Counsel faced relatively little risk in trying this case. Throughout the

2    litigation, Class Counsel have acknowledged that their plan was to try the related cases

3    iteratively and, if they lose one, simply move to the next and try again. As evidenced by their fee

4    and expense request submitted here, their intent all along has been to lump together as many fees

5    and expenses from all the related cases into a fee request for any one case in which they do

6    prevail. In other words, they have 11 chances to win a favorable verdict and recover their fees.

7    That is a far cry from the high-risk "win or lose" class action verdicts that justify larger

8    percentages. *See Salgado v. T-Mobile USA, Inc.*, 2020 WL 3127391 (E.D. Cal. July 11, 2020)

9    (25% benchmark or less is warranted where "Class Counsel faced few risks").

10    *Third*, Class Counsel faced little burden in obtaining the result here, particularly as to

11    whether this action precluded other work. Quite the opposite is true. During the pendency of this

12    action, Class Counsel advanced the same legal theories, made the same factual arguments, and

13    even used the same experts in multiple lawsuits against several glucosamine manufacturers. One

14    such case resulted in a $12,500,000 fee award just months before trial commenced in this action.

15    *See Yamagata v. Reckitt Benckiser LLC*, 2021 WL 5909206 (N.D. Cal. Oct 28, 2021) (approving

16    $50 million settlement in class action alleging lack of joint health benefits from glucosamine

17    product and awarding class counsel $12.5 million in fees). All told, during the pendency of this

18    action, Class Counsel pursued the same legal theories, recycled the exact same arguments, and

19    frequently used the same experts in at least five other actions against glucosamine

20    manufacturers[3] (not to mention the 10 other related cases they are pursuing against Premier in

21    which they surely will seek fee recovery if they prevail). Under these circumstances, there is no

22    justification for deviating upward from the 25% benchmark. *Salgado*, 2020 WL 3127391, at *72-

23    73 (no upward deviation from 25% benchmark was warranted in part because Class Counsel

24    "were not precluded from other work while prosecuting the claims on Plaintiffs' behalf").

25    *Fourth*, public policy considerations weigh in favor of not granting an upward deviation

---

[3] *Whyble et al. v. The Nature's Bounty Co.*, Case No. 7:20-cv-03257 (S.D.N.Y.); *Kroessler v. CVS Health Corp.*, No. 3:19-cv-00277 (S.D. Cal.); *Carrigan v. Reckitt Benckiser LLC*, No. 1:18-cv-07073 (N.D. Ill.); *Seegert v. Rexall Sundown, Inc.*, No. 3:17-cv-01243 (S.D. Cal.); *Yamagata v. Reckitt Benckiser LLC*, 3:17-cv-03529 (N.D. Cal.).

1   to the 25% benchmark. Class Counsel have submitted a grossly inflated request for 61% of the

2   judgment, and have flatly refused to provide billing records or documentation of expenses in

3   doing so. If the only consequence of this overreach is to award Class Counsel what they should

4   have requested from the start (*i.e.*, a reasonable fee), then attorneys "would be encouraged to

5   make unreasonable fee requests because the only possible consequence would be receipt of a

6   reasonable fee award. Outright denial of an unreasonable fee request is acceptable to discourage

7   such behavior." *New England Country Foods, LLC v. Vanlaw Food Prods., Inc.*, 2022 WL

8   2189515, at *4 (C.D. Cal. March 29, 2022) (citation omitted).

9          Taken these factors together, if the Court is inclined to award Class Counsel a percentage

10   of the recovery, that percentage should be no greater than 25% of the judgment.

11      **C.    Common Fund Fees Are Paid Out of the Judgment**

12          Class Counsel's motion is vague as to the source of the fee award under the percentage of

13   the fund method. To be clear and ensure there is no confusion: over a century of binding

14   authority requires that the fee award under the percentage method be paid from the judgment—

15   not as part of a separate award that Premier must pay in addition to the judgment.[4] The U.S.

16   Supreme Court has unambiguously stated "that a litigant or a lawyer who recovers a common

17   fund for the benefit of persons other than himself or his client is entitled to a reasonable

18   attorney's fee *from the fund as a whole*." *Boeing*, 444 U.S. at 478 (emphasis added) (citing

19   cases); *see also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 126-27 (1885) (holding that

20   attorneys' fees should be paid from the common fund because "every ground of justice required

21   reasonable payment by those who accepted the fruits of other people's labors"); *Staton v. Boeing

22   Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("the common fund doctrine permits the court to award

23   attorneys' fees from monetary payments that the prevailing party recovered in the lawsuit.").

24          This was the approach taken in two recent class actions tried to a jury verdict. *See

25   Krakauer*, 2018 WL 6305785, at *6 (awarding fees "*to be paid from the final judgment* awarded to

26   the class."); *Vivendi,* 2016 WL 2620428, at *2 (common fund is the "amount of Class Member

27

28   _____
[4] This may not be disputed, as Class Counsel concedes in their discussion of a "hybrid" method that any
percentage of recovery from the common fund should be paid out of the judgment. *See* Mot. 12-13.

1  Claimants' damages and interest" and is "*from which attorneys' fees and expenses … will be*

2  *paid*"). Thus, whatever amount is awarded under this method, it must be taken from the judgment.

3  **III.    CLASS COUNSEL HAVE NOT MET THEIR BURDEN TO SUBSTANTIATE THEIR LODESTAR**

4          The lodestar is an alternative method to the common fund or percentage of the recovery

5  method described above. If Class Counsel intend to rely on the fee-shifting provisions of GBL to

6  recover their fee, the Court "must calculate awards for attorneys' fees using the lodestar

7  method." *Staton*, 327 F.3d at 965. Again, under the GBL fee-shifting is entirely discretionary,

8  and this Court has recognized in similar situations that either the percentage *or* the lodestar

9  method may be used. *In re Apple iPhone*, 40 F. Supp. 3d at 1179.

10         Lodestar awards that shift payment to the opposing party—in contravention of the

11  "American Rule" that each party bear its own fees—must be closely scrutinized and narrowly

12  applied. *See, e.g.*, *Fiala v. Met. Life Ins. Co.*, 776 N.Y.S.2d 29, 33 (App. Div. 2004) ("A statute

13  which, in derogation of the 'American rule,' shifts liability for attorneys' fees to the other side

14  should be strictly construed."). To the extent the Court is inclined to analyze lodestar at all, it

15  should reject Class Counsel's proposed $6.4 million for at least three reasons.

16         **A.  Class Counsel Was Required to Submit Detailed Billing Records, and Their**
17         **Refusal to Do So Warrants Rejection of Their Lodestar**

18         Under the lodestar method, it is Class Counsel's burden to "'produce satisfactory

19  evidence' establishing the reasonableness of the requested fee." *$28,000.00 in U.S. Currency*,

20  802 F.3d at 1105 (quoting *Blum*, 465 U.S. at 895 n.11). And it is overwhelmingly established—

21  both in New York and around the country—that to meet that evidentiary burden, counsel must

22  provide "time records in support of a fee application, including the 'date, the hours expended,

23  and the nature of the work done.'" *Am. Dev. Grp., LLC v. Island Robots of Fla.*, 2019 WL

24  5790265, at *12 (E.D.N.Y. Oct. 4, 2019) (citing *N.Y. State Ass'n for Retarded Children, Inc. v.*

25  *Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("*Carey*"); *see also In re Washington Pub. Power*

26  *Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ("The party petitioning for attorneys' fees

27  bears the burden of submitting detailed time records justifying the hours claimed to have been

28  expended."); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204 n.4 (9th Cir. 2013) (same). To

1  meet this burden, "[t]he moving party must support its application by providing

2  contemporaneous time records that detail for each attorney, the date, the hours expended, and the

3  nature of the work done." *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020);

4  *see also Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011) ("We interpreted *Carey* as

5  conditioning attorney's fees on contemporaneous records in all but the 'rarest of cases.'"); *Klein*

6  *v. Robert's Am. Gourmet Food, Inc.*, 28 A.D.3d 63, 75 (N.Y. App. Div. 2006) (even where

7  contemporaneous time records are unavailable, "the court will usually, and especially in a matter

8  involving a large fee, be presented with an objective and detailed breakdown by the attorney of

9  the time and labor expended"). "The hours claimed in a fee application need not be automatically

10  accepted and *should be* disallowed if inadequately documented." *Vizcaino v. Ritz Carlton Hotel*

11  *Co., L.L.C.*, 2020 N.Y. Misc. LEXIS 2319, at *5-6 (Sup. Ct. May 8, 2020) (emphasis added).

12      Indeed, this Court has recently held that that when counsel have not "adequately

13  documented the hours counsel incurred" and have not provided "contemporaneous time records,"

14  their showing for purposes of a lodestar is "insufficient." *In re Optical Disk Drive Prods.*

15  *Antitrust Litig.*, 2021 WL 4124159, at *1 (N.D. Cal. Sept. 9, 2021) (Seeborg, J.).

16      Here, Class Counsel purport to have maintained contemporaneous time records (Dkt. No.

17  296-1 ("Blood Decl.") ¶ 49)—but they did not submit those records to the Court to substantiate

18  their lodestar figure of nearly $6.4 million, which was their burden to do. This is particularly true

19  given that fees are disputed here. For that reason, counsel for Premier requested that Class

20  Counsel provide their billing records, and explained they were necessary to allow Premier—*and*

21  *the Court*—"to perform any kind of meaningful review or analysis of your claimed lodestar."

22  Swaney Decl. Ex A. Class Counsel refused, stating that "[d]etailed time records are generally not

23  submitted with fee applications" (*id*.)—a statement that is directly contrary to established law in

24  New York and around the country. Class Counsel further stated that they had only submitted

25  time records once, "years ago in a different jurisdiction under very different circumstances." *Id.*

26  That is also incorrect. In another case brought by Class Counsel in this District, Judge Koh ruled

27  that the declarations submitted there without contemporaneous billing records "provide an

28  insufficient basis for the Court to approve Plaintiff's [request for attorney's fees]." *In re Adobe*

*Sys. Inc. Priv. Litig.*, Case No. 13-cv-05226, Dkt. No. 90 (N.D. Cal. June 10, 2015). Judge Koh ordered Class Counsel to file a motion with additional information including "contemporaneous billing records." *Id*. As Premier's fee expert Steven Tasher explains, refusing to submit billing records when the lodestar amount is disputed is essentially unheard of. Tasher Decl. ¶¶ 60-62.

Because Class Counsel failed to support their claimed lodestar with "time records that detail for each attorney, the date, the hours expended, and the nature of the work done," *Torcivia*, 437 F. Supp. 3d at 251, their lodestar "should be disallowed," *Vizcaino*, 2020 N.Y. Misc. LEXIS 2319, at *5-6. Disallowing Class Counsel's lodestar number is especially warranted here given that Class Counsel has represented that contemporaneous time records exist—but they simply refuse to provide them. There is no legitimate reason for Class Counsel to withhold these records from the Court and Premier. They have been ordered to do so before by another judge of this Court, the prevailing authorities in New York (and in every federal jurisdiction) require that it be done, it is patently obvious that the Court cannot meaningfully analyze the lodestar request without them, and "[a]n opposing party who faces tens of thousands of dollars in potential liability for attorneys' fees is entitled to sufficiently accurate and detailed records to enable them to challenge the claimed fee award." *See New England*, 2022 WL 2189515, at *4 (denying fee request in its entirety). The Court should reject Class Counsel's lodestar for this reason alone.

To the extent Class Counsel attempts to submit their contemporaneous billing records to justify their claimed lodestar with their reply papers, the Court should refuse to consider them. Class Counsel are experienced class action attorneys and have obtained class settlements and judgments many times before—thus, they know full well that it was their burden to provide time records to support their claimed lodestar. Indeed, Judge Koh expressly ordered them to do just that when they tried to pull a similar maneuver in her courtroom. Their sarcastic response to Premier's reasonable request for those records, in which they demand Premier's counsel's time records (Swaney Decl., Ex. A), lays bare that they are not approaching this process in good faith. Fee-shifting under the GBL is discretionary, and the Court should exercise its discretion and reject Class Counsel's lodestar based on their willful failure to meet their burden of proof.

**B. The Blood Declaration Fails to Establish the Lodestar Number Is Reasonable**

Even if the Court were to conclude that Class Counsel need not submit their existing contemporaneous time records (which would be contrary to New York law), the representations in Class Counsel's motion and accompanying declarations fall woefully short of establishing the $6.4 million lodestar number is reasonable. This is particularly true because Class Counsel attempt to include in their lodestar work performed in the *Mullins* and other related actions— without adequately explaining what time they have included and excluded.

Only "hours reasonably expended on the litigation" are permitted. *See Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). Thus, "when calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 168 (2d Cir. 2011); *Nasiri v. T.A.G. Security Protective Servs. Inc.*, 2021 WL 4226207, at *7 (N.D. Cal. Sept. 16, 2021) ("Here, the time records provided show a lack of self-discipline in any attempts to apportion. … Nasiri's shared facts and legal theories are not so inextricably intertwined that it would be impractical or impossible to separate the attorney's time.").

**1. Class Counsel Failed to Provide Sufficient Documentation to Include Work Done in the *Mullins* Action in Their Lodestar**

Class Counsel's claimed lodestar includes an unknown number of hours spent on the *Mullins* action, even though that action ended with a judgment in favor of Premier. To be clear, Premier recognizes that *some* of the work from the *Mullins* action *may* be properly recoverable here due to the parties' stipulation regarding the use of Premier's document productions and deponents across related actions. But it is just as clear that much of the work Class Counsel performed in *Mullins* is ***not*** recoverable in this action. Premier was the prevailing party in *Mullins*, full stop. The fact that during that case the Court denied Premier's summary judgment motion, or issued other rulings favorable to Class Counsel, does not change the ultimate outcome. Thus, there can be no reasonable dispute that it is Class Counsel's burden to justify the inclusion of any time spent on *Mullins* in their lodestar, and to explain *what* time they are seeking to include, *how* it contributed to the judgment in this action, and *why* it is reasonable to

-16-

1  include it in the lodestar here—and that the Court must closely scrutinize any claimed time from

2  *Mullins*. *See Fiala*, 776 N.Y.S.2d at 33 (fee shifting statutes must be strictly construed). Class

3  counsel made no such showing.

4         For example, Class Counsel seeks to include 303 hours in their lodestar for appellate

5  lawyer Leslie Hurst, but the vague description of her work references only the *Mullins* matter—

6  including briefing and arguing the appeal to the Ninth Circuit, which Class Counsel lost.  *See*

7  Blood Decl. ¶ 41. Similarly, Class Counsel seeks to include 97 hours from Jennifer MacPherson,

8  who allegedly assisted appellate lawyer Ms. Hurst by "drafting briefing relating to evidence

9  submitted at summary judgment, and assisting Ms. Hurst in the two appeals." *Id*. ¶ 43. Without

10  detailed billing records, the Court has no way of knowing how those hours were spent, or

11  whether it is reasonable for them to be recovered in this action.

12         The only thing Class Counsel provided to determine whether time from the *Mullins*

13  matter was properly included in their lodestar is Mr. Blood's *ipse dixit*. That is insufficient. Class

14  Counsel could have given the Court information to allow it to conduct the necessary analysis, but

15  *expressly* chose not to. Actions speak louder than words, and surely this choice suggests that

16  Class Counsel is trying to include time from *Mullins* that should not be recovered in this case.

17         **2.  Class Counsel's Lodestar Impermissibly Includes Work on Other Cases
            That Had No Bearing on the *Montera* Action**

18

19         Class Counsel also seek to include in their lodestar discovery taken as to class

20  representatives in the other pending actions. That is categorically unavailable in this case. *See*

21  *Nasiri*, 2021 WL 4226207 (fees for work that did not contribute to the success at trial are not

22  recoverable); *Biery v. United States,* 818 F.3d 704, 712 (Fed. Cir. 2016) ("There is no dispute

23  that work done on behalf of the unsuccessful plaintiffs is not recoverable."). For example, Mr.

24  Blood's declaration seeks to include 705 hours for Paula Brown, who Mr. Blood says

25  "defend[ed] six named plaintiff depositions . . . and prepar[ed] the named plaintiffs for their

26  deposition." No time spent on those tasks is recoverable. The Court ruled the testimony of those

27  other class representatives is irrelevant to this action. *See* Dkt. No. 214 at 3 (excluding testimony

28  of class representatives from other Joint Juice lawsuits as "irrelevant"). Similarly, Class Counsel

-17-

1    represents that Craig Straub spent 2,302 hours on this matter, but Mr. Blood's declaration

2    indicates that some unknown amount of that time involved "speaking with dozens of Class

3    Members including retaining … other Class Representatives in the related actions." *Id.* ¶ 44.

4    There is no legal basis to include in Class Counsel's lodestar discovery and related tasks

5    *specifically* devoted to class representatives in *other* matters that contributed absolutely *nothing*

6    to the resolution of the *Montera* action. And, it bears repeating, Class Counsel's refusal to

7    provide detailed time records makes it *impossible* for the Court to determine what percentage of

8    the hours included in their lodestar number for each attorney is devoted to other matters.

9    **C.  Class Counsel's Lodestar Is Inflated by Overbilling, Overstaffing and Other**
**Unreasonable Hours**

10

11    Class Counsel's lodestar is also unreasonable because even the paltry and legally

12    insufficient information provided in Class Counsel's declarations shows overbilling—as

13    explained in more detail in the accompanying Declaration of Steven Tasher, a renowned expert

14    in assessing and evaluating the reasonableness of attorneys' fees. Tasher Decl. ¶ 7.

15    *First*, Mr. Tasher conducted an in-depth analysis of Class Counsel's limited submissions

16    and concluded that the lodestar was improperly inflated by partner-heavy administration of the

17    work including 60% of the hours and 70% of fees claims were spent by partners creating a

18    partner-to-associate ratio of greater than 2/1 for hours and 2.85/1 for fees. Tasher Decl. ¶¶ 73-82.

19    Several courts have found partner-heavy ratios unreasonable. *See Beastie Boys v. Monster*

20    *Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015) ("[A] material reduction in the requested

21    fee award is merited to reflect the unusually partner-intensive nature of fees requested" based on

22    2.5/1 partner to associate hours); *Does v. District of Columbia*, 448 F. Supp. 2d 137, 144 (D.D.C.

23    2006) (cutting lodestar 50% due to a 1.15/1 partner associate ratio).

24    *Second*, Mr. Tasher's expert analysis also found that Class Counsel charged exorbitantly

25    high rates for document review. Tasher Decl. ¶¶ 83-88. Indeed, attorneys conducting document

26    review for Class Counsel charged between $320 and $575 per hour. Blood Decl., p. 22. *See City*

27    *of Pontiac Gen. Empls. v. Lockheed Martin*, 954 F. Supp.2d 276, 280 (S.D.N.Y. 2013) ("$295 to

28    $435" per hour for document review in a class action is unreasonable).

1    *Third*, Mr. Tasher's expert analysis revealed multiple instances of overstaffing. Tasher

2    Decl. ¶¶ 89-103. For example, Class Counsel's declarations reveal that at least five attorneys

3    attended trial (collectively billing $3,795 per hour)—two of whom merely sat in the gallery and

4    had role whatsoever in presenting the case to the jury. In contrast, Premier had no more than

5    three attorneys billing their time throughout trial. Swaney Decl. ¶ 3. *Democratic Party of Wash.*

6    *State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) ("If the time claimed by the prevailing party

7    is of a substantially greater magnitude than what the other side spent, that often indicates that too

8    much time is claimed.").

9    As explained in the Tasher Declaration, the above examples are just the tip of the iceberg.

10   An evaluation of billing records is necessary for anyone (the Court, Premier, any expert) to

11   conduct a fulsome analysis of the reasonableness of Class Counsel's request. If the Court is

12   inclined to employ the lodestar method in any measure, it should substantially reduce Class

13   Counsel's requested fees. *See In re Washington*, 19 F.3d at 1306 (district court "did not abuse its

14   discretion" by cutting fees by more than 50% because counsel "fail[ed] to provide adequate

15   back-up documentation for its fee request"); *Beastie Boys*, 112 F. Supp. 3d at 51 (reduction

16   necessary for "overbilling"); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301-302

17   (S.D.N.Y. 2001) ("across-the-board reduction" for overbilling). Given the absence of detailed

18   records, attempts to collect fees for work done on other cases that is categorically unavailable

19   here, and the indicia of overbilling and overstaffing, a 50% reduction in Class Counsel's

20   proposed $6.4 million lodestar is appropriate. *See* Tasher Decl. ¶ 113; *see also Plummer v.*

21   *Chem. Bank*, 592 F. Supp. 1168, 1172 (S.D.N.Y. 1984) (50% reduction for "inefficiencies");

22   *Does*, 448 F. Supp. 2d at 144 (50% reduction for inefficient staffing).

23   **IV.   CLASS COUNSEL'S "HYBRID" METHOD IS IMPROPER**

24   Class Counsel also suggests that under their purported "hybrid" method, the Court should

25   award them their lodestar ($6,409,284.75) and expenses ($1,133,794) to be paid by Premier

26   under the GBL fee-shifting provisions, and then should be awarded some additional amount from

27   the "constructive" common fund—which would have already been increased to include their

28   requested fees and expenses. *See* Mot. at 12-13. But this supposed "hybrid" method—which

-19-

1    clearly involves double dipping by awarding lodestar under the fee-shifting statute *and* including

2    the lodestar (including a multiplier) as part of the common fund—should be rejected for the same

3    reasons as Class Counsel's flawed common fund method. Moreover, Class Counsel's hybrid

4    model is premised on their ability to prove and recover their lodestar, and for the many reasons

5    discussed above they are unable to do so.

6        The cases Class Counsel cite do not help them. Both *Ridgway* and *Sobel* involved

7    ***mandatory*** fee-shifting provisions, under which the courts were *required* to order the defendants

8    to pay class counsel's lodestar. *See Ridgeway*, 269 F. Supp. 3d at 983; *Sobel v. Hertz Corp.*, 53

9    F. Supp. 3d 1319, 1324-25 (D. Nev. 2014). Nor has Class Counsel cited a case finding that this

10   approach is permissible under New York law. In fact, one case cited by Class Counsel confirms

11   why a hybrid model is not appropriate here. *Knox v. John Varvatos Enters. Inc.*, 520 F. Supp. 3d.

12   331, 352-53 (S.D.N.Y. 2021) ("[I]n the typical case that proceeds to trial, we would be unlikely

13   to award fees from a common fund created by the jury verdict on top of a statutory fee.").

14   **V.    THE COURT SHOULD AWARD CLASS COUNSEL 25% OF THE JUDGMENT**

15       Because Class Counsel failed to meet their burden to establish a reasonable lodestar, the

16   only form of recovery available is the equitable common fund doctrine. *See In re Optical Disk*

17   *Drive*, 2021 WL 4124159, at *1 (awarding percentage-based recovery where counsel's "showing

18   indeed would be insufficient" under a lodestar approach). The Court should employ the

19   percentage of the fund method to calculate Class Counsel's fees, and should adhere to the Ninth

20   Circuit's 25% benchmark. This is the fair—and legally correct—outcome.

21       First, because the GBL does not contain a mandatory fee-shifting provision, there is no

22   mandate that the Court determine Class Counsel's lodestar in awarding reasonable fees. Rather,

23   the Court can exercise its discretion to employ the common fund doctrine. Thus, even if the

24   Court were to use Class Counsel's submission to calculate a lodestar, there is no reason to use

25   that number to award fees. *See In re Optical Disk Drive*, 2021 WL 4124159, at *1

26       Second, as Class Counsel themselves acknowledge, the percentage of recovery method is

27   preferred because it is "easily quantified" and "more efficient" than the lodestar. It will not

28   require the Court to rely on the insufficient and conclusory information in Class Counsel's

declarations to determine what should, and should not, be included in the lodestar. And even if Class Counsel produced their contemporaneous billing records, the Court would still have to conduct a detailed review of many years of records and perform a complicated analysis of what time from other matters is properly recoverable here, what hours should be disallowed due to overstaffing, etc. Under the percentage method, the Court can easily determine the amount of the fund ($12,895,454.90) and the percentage to which Class Counsel is entitled based on the established 25% benchmark (and factors for adjusting that percentage).

Third, awarding Class Counsel's fee as a percentage of the judgment is fair to both parties. As the Court has concluded, the amount of the judgment is already five times more than the Class's actual damages as determined by the jury. *See* Dkt. No. 293 ("[T]he award of statutory damages is approximately 5.59 times greater than the amount of actual damages."). This already creates a windfall for the Class—particularly given that the New York legislature did not intend for statutory damages to be awarded in GBL class actions. Thus, ordering that fees be paid from the judgment would prevent a *double* windfall, as the "rationale" for awarding fees from a common fund is based on the equitable principle that "those benefitting from a lawsuit without contributing to its cost" should not be "unjust[ly] enrich[ed]." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Van Gemert v. Boeing Co.*, 573 F.2d 733, 737 (2d Cir. 1978) ("When a fund is created, the beneficiaries are liable for the costs of its production.") *aff'd*, 444 U.S. 472, 478 (1980). That is, under the circumstances of this case it is fair that Class Counsel's fees be paid by those who benefitted from their work—*i.e.*, the Class.

Fourth, a fee of 25% of the judgment is consistent with an appropriate lodestar number. Again, it is impossible to calculate the accurate and reasonable lodestar given Class Counsel's refusal to provide their contemporaneous billing records. But as explained in the Tasher Declaration, a 50% reduction to Class Counsel's proposed lodestar of $6.4 million is warranted based on what documentation, meager as it is, Class Counsel has submitted. A 50% reduction is also consistent with applicable authorities that have reduced proposed lodestar requests under similar circumstances. *E.g. Beastie Boys*, 112 F. Supp. 3d at 51 (50% across the board reduction).

For the foregoing reasons, the Court should award Class Counsel a fee of $3,223,863.72

1  under the percentage of the fund method, to be paid from the judgment.

2  **VI.    PLAINTIFF HAS NOT MET HER BURDEN TO RECOVER EXPENSES**

3          **A.    Class Counsel Provided No Documentation to Support Requested Expenses**

4          As with Class Counsel's request for attorneys' fees, Class Counsel also bears the burden

5  "to establish the amount of compensable costs and expenses to which they are entitled.

6  Prevailing parties necessarily assume the risks inherent in a failure to meet that burden."

7  *Synopsys, Inc. v. Ricoh Co.*, 661 F.3d 1361, 1367 (Fed. Cir. 2011) (quoting *English v. Colo.*

8  *Dep't of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001)). Accordingly, courts in this district

9  routinely disallow or reduce requested expenses when counsel do "not provide adequate

10 documentation of those costs." *See, e.g.*, *Raquedan v. Centerplate of Del. Inc.*, (N.D. Cal. Dec.

11 16, 2019) (disallowing costs where there were "no invoices or supporting documentation" for

12 certain charges, including hotels and court reporters); *Banas v. Volcano Corp.*, 47 F. Supp. 3d

13 957, 980 (N.D. Cal. 2014) (reducing claimed costs and expenses because without documentation

14 or invoices, the court "cannot determine whether the specific amounts sought are reasonable").

15         Rather than provide the required documents, Class Counsel simply lump together

16 hundreds of thousands of dollars of expenses in line items and refuse to substantiate any of it

17 with invoices, receipts, or other records. Blood Decl. ¶ 66. For the same reason that the Court

18 should reject Class Counsel's lodestar, it should reject all these expenses: Class Counsel failed to

19 meet their burden to show these expenses are reasonable and recoverable. And because Class

20 Counsel has willfully refused to provide documentation, there should be "no second chance." *In*

21 *re Glob. Equity Mgmt. (SA) Pty. Ltd.*, 2020 WL 4732210, at *4 (N.D. Cal. Aug. 15, 2020)

22 (denying an overreaching request for fees *in its entirety* because "greed and overreach has ruined

23 it all. There will be no second chance. No further motions for fees will be entertained.").

24         **B.    Class Counsel Cannot Recover Expenses Unrelated to This Action**

25         To the extent the Court is inclined to consider awarding Class Counsel reimbursement for

26 their undocumented expenses, it is clear that many of them are not recoverable. Even Class

27 Counsel's vague descriptions make clear that many claimed expenses are completely unrelated to

28 this action. For example, Class Counsel seeks to recover the fees of several experts ***who were***

***never disclosed or used in this action at all***: Dr. Graboff ($30,062.50), Dr. Silbert ($37,655.00), Dr. Willis ($26,500.00), and Mr. Keegan ($68,159.09). Class Counsel cannot recover those experts' fees here for several reasons. First, as this Court has previously held, Premier was the prevailing party in *Mullins*. Thus, any expenses that were generated in that case should be presumptively unrecoverable. Yet Class Counsel asks the Court to order Premier to pay over *$160,000* for four experts based on nothing more than the vague assertion that they "consulted" with Class Counsel on the summary judgment and/or class certification briefing in *Mullins*. This is insufficient to meet Class Counsel's burden.

Second, there is no justification for expenses (or expert fees) related to the summary judgment motion in *Mullins* to be recovered in this action. The *Mullins* summary judgment motion involved California law and related to the California claims in that case; it had no bearing on the outcome of this case. Plaintiff's attempt to recover for Dr. Graboff, simply because the Court quoted him the order denying summary judgment, does not demonstrate entitlement to recovery of $30,000 for his time. Even if the Court's summary judgment ruling *Mullins* had some marginal relevance to this action, it does not warrant shifting hundreds of thousands of dollars in expenses to Premier given—again—that Premier ultimately prevailed in *Mullins*.

Third, Class Counsel cannot recover expert expenses related to the class certification motion in *Mullins*. Plaintiff moved for class certification *in this action* and did not use any of these experts to support her submission. *See Montera*, Dkt. No. 61, Omnibus Motion for Class Certification. Merely claiming that those experts "consulted" on the *Mullins* class certification motion does not explain why Premier should have to pay for that consultation in *this* case. To the extent Class Counsel argue that these experts were not necessary given Premier's limited non-opposition to class certification in this case, that argument rings hollow given that Class Counsel were not aware of Premier's position at the time they moved for class certification in *Montera*.

Similarly, Class Counsel seek reimbursement of $73,691.80 for Mr. Weir's expert services. *See* Blood Decl. ¶ 67(g)(iv). Although Class Counsel has not provided any invoices, the amount of fees sought related to Mr. Weir suggest that they include Mr. Weir's work from *Mullins*—which was not used in this action. In this action, Mr. Weir was retained only to provide

an opinion regarding the calculations *of New York sales* of Joint Juice, statutory damages, and prejudgment interest. In *Mullins*, Mr. Weir was disclosed as a rebuttal expert to Dr. Choi, and he gave much broader opinions about Dr. Choi's hedonic regression analysis, and the applicability of "full refund" damages—*none* of which was used in this case. Without any documentation to allocate these costs, Class Counsel should not recover *any* of Mr. Weir's fees.

### C. Most of Class Counsel's Requested Expenses Must Be Apportioned Among the Related Actions

With few exceptions, the requested expenses that are properly recoverable here must be apportioned among all the related actions. "Where litigation costs are incurred in connection with more than one proceeding, the district court should allocate the costs." *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 411-12 (8th Cir. 2014). "[T]he court has broad discretion in determining whether, and on what conditions, to apportion costs." *Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139, 1143 (N.D. Cal. 2010); *Winter*, 739 F.3d at 412 (apportionment proper when several cases are consolidated for discovery but tried separately); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 763-64 (8th Cir. 2006) (same).

*Marmo* is analogous and instructive. There, as here, several cases were "consolidated for discovery and pretrial purposes . . . but each case [was] to be tried individually." 457 F.3d at 753. The first case proceeded to trial, and the jury returned a verdict for the plaintiff. *Id.* at 755. Plaintiff then sought various costs, including $129,914.47 in "exemplification and photocopy costs." *Id.* at763. "Because this case was one of thirteen consolidated for pretrial purposes, the district court apportioned these costs among the thirteen cases," reasoning that these materials would "be useful in the other twelve cases." *Id.* The Eighth Circuit held that this apportionment was "equitable," reasoning that the "plaintiffs in each of these cases have incurred costs, and the district court may not award Marmo costs for expenses that other plaintiffs incurred. Moreover, the apportionment reduced the risk of duplicative cost recovery." *Id.* at 764.

Similarly, in *Winter*, the Eighth Circuit reversed the district court and held that it is an abuse of discretion to "award[] the plaintiff full costs for litigation-wide depositions" in a MDL matter where the expenses incurred would benefit the other cases. 739 F.3d at 412.

1   The Second Circuit has also found error when expenses are not apportioned among

2   related plaintiffs. In *In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24,*

3   *1975*, 687 F.2d 626 (2d Cir. 1982), the court considered a cost award to both settling and non-

4   settling groups of plaintiffs. The Second Circuit held that the district court erred in failing to

5   apportion the cost award, expressing concern that parties would receive more than their fair share

6   of recoverable costs:

7   > To award one plaintiff costs incurred on behalf of another runs counter to
>   the cost-taxing provisions of the Federal Rules of Civil Procedure and of
8   > the U.S. Code, which are designed to reimburse a party for specified
>   expenses incurred in successfully litigating a claim, not to punish the
9   > unsuccessful party or to award a bonanza to the winner.

10  *Id.* at 629-30. The Court also rejected the argument that one plaintiff should recover all the costs

11  because the same costs would have been incurred regardless of whether there were multiple

12  plaintiffs. *Id.* at 630.

13  The same logic must apply here. Virtually all the expenses Class Counsel ask this Court

14  to reimburse in this action are attributable to discovery, expert consulting, and travel that will be

15  used across all the related pending actions (*i.e.*, other plaintiffs with the same claims). The fact

16  that Class Counsel agreed to share fact discovery across the related actions weighs heavily in

17  favor of apportionment across those actions. To the extent there are expenses that were not

18  specific to the *Montera* case (*e.g.*, trial transcripts), they should be apportioned across the eleven

19  related actions. A detailed explanation of the apportionment of various expenses is included in

20  the Swaney Declaration at ¶ 5.

21  For the foregoing reasons, the Court should not award Plaintiff over $1 million in

22  expenses, particularly where Class Counsel has provided *no documentation and has included*

23  *costs that are not attributable to this action alone*. Moreover, to the extent the Court awards

24  Class Counsel any costs or expenses, they should be paid out of the judgment. *See Ontiveros v.*

25  *Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) ("an attorney who has created a common fund for

26  the benefit of the class is entitled to reimbursement of reasonable litigation expenses ***from that***

27  ***fund***") (emphasis added); *see also Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438273, at

28  *9 (N.D. Cal. May 21, 2015) (awarding costs and expenses out of common fund).

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's request for attorneys' fees and expenses. If the Court is inclined to grant any fees, it should award no more than 25% of the judgment amount ($3,223,863.73) to be paid from the judgment. If the Court is inclined to grant any expenses, it should award no more than $197,852.36 in expenses and costs, also to be paid from the judgment.

Dated: September 16, 2022

VENABLE LLP

By: /s/ Steven E. Swaney
STEVEN E. SWANEY

101 California Street, Suite 3800
San Francisco, CA 94111
Tele: 415.653.3750
415.653.3755 (fax)

MORRISON & FOERSTER LLP
Jessica L. Grant
425 Market Street
San Francisco, CA 94105
Tele: 415.268.7000
415.268.7522 (fax)

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC