Exhibit E

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

Class Counsel

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN TERRY, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; and REAL TIME RESOLUTIONS, INC.,<br><br>Defendant. | **Case No. 3:15-cv-01666-DMS-KSC**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND REQUEST FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>Date: January 19, 2018<br>Time: 1:30 p.m.<br>Judge: Dana M. Sabraw<br>Ctrm: 13A, Carter/Keep |

BLOOD HURST & O'REARDON, LLP

00128320

Case No. 3:15-cv-01666-DMS-KSC

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   HISTORY OF THE LITIGATION ..................................................... 2

III.  THE SETTLEMENT MERITS FINAL APPROVAL ............................ 3

    A.    The Standards for Final Approval of Class Action Settlements ........ 3

    B.    The Settlement Is Fair, Reasonable, and Adequate ......................... 4

        1.    Settlement Awards Mailed Directly to Class Members .......... 5

        2.    Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Award ............... 7

    C.    The Settlement Was Reached After Serious, Informed, and Non-Collusive Arm's-Length Negotiations ..................................... 7

    D.    The Strengths of Plaintiff's Case and Risks Inherent in Continued Litigation Favor Approval ............................................. 9

    E.    The Risk, Complexity, Expense, and Duration of the Litigation Favor Approval ............................................................. 10

    F.    The Amount Achieved Under the Settlement Favors Approval ...... 11

    G.    Experience and Views of Counsel Favor Approval ........................ 13

    H.    The Reaction of Settlement Class Members Favors Approval ........ 13

IV.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ........................................................................................ 15

V.   CLASS NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS ......................................................................................... 16

VI.  PLAINTIFF'S FEE AND EXPENSE APPLICATION SHOULD BE APPROVED ................................................................................. 17

    A.    The Fee Award Totaling 25% of the Settlement Fund Is Fair and Reasonable ............................................................................. 18

    B.    The Lodestar/Multiplier Crosscheck ............................................. 20

        1.    The Hourly Rates Are Reasonable ....................................... 23

        2.    The Hours Expended Are Reasonable .................................. 25

        3.    An Enhancement Is Reasonable ........................................... 26

            a.    The Results Obtained ................................................. 26

BLOOD HURST & O'REARDON, LLP

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

b. Contingent Nature of the Fee and Ongoing Work ...... 27

c. Skill Displayed and the Prompt Resolution ................ 28

d. Benefits to the Public .................................................. 30

C. Plaintiff's Expenses Are Reasonable and Compensable ................. 30

D. The Class Representative Service Award Should Be Approved ......................................................................................... 32

VII. CONCLUSION .......................................................................................... 34

BLOOD HURST & O'REARDON, LLP

00128320

ii        Case No. 3:15-cv-01666-DMS-KSC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Nextel Retail Stores, LLC*,
No. CV 07-4480-SVW, 2010 U.S. Dist. LEXIS 43377
(C.D. Cal. Apr. 12, 2010) ...................................................................................8

*Beane v. Bank of N.Y. Mellon*,
No. 07 Civ. 09444 (RMB), 2009 U.S. Dist. LEXIS 27504
(S.D.N.Y. Mar. 31, 2009) .................................................................................31

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214
(S.D. Cal. Sept. 28, 2017) ................................................................................22

*Blum v. Stenson*,
465 U.S. 886 (1984) .........................................................................................23

*Boeing Co. v. Van Gamert*,
444 U.S. 472 (1980) .........................................................................................19

*Bravo v. Gale Triangle, Inc.*,
No. CV 16-03347 BRO, 2017 U.S. Dist. LEXIS 77714
(C.D. Cal. Feb. 16, 2017) .................................................................................19

*Brown v. 22nd Dist. Agric. Ass'n*,
No. 15-cv-2578-DHB, 2017 U.S. Dist. LEXIS 75439
(S.D. Cal. May 15, 2017) .................................................................................33

*Buccellato v. AT&T Operations, Inc.*,
No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699
(N.D. Cal. June 30, 2011) .................................................................................22

*Cellphone Termination Fee Cases*,
186 Cal. App. 4th 1380 (2010) ........................................................................32

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ..............................................................15

*Chavez v. Netflix*,
162 Cal. App. 4th 43 (2008) ....................................................... 19, 21, 25, 28

iii

Case No. 3:15-cv-01666-DMS-KSC

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00128320

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)........................................................8, 13

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................15

*City of Oakland v. Oakland Raiders*,
203 Cal. App. 3d 78 (1988) ..................................................................21

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..............................................................2, 4

*In re Consumer Privacy Cases*,
175 Cal. App. 4th at 557-58 ..................................................................18

*Create-A-Card, Inc. v. INTUIT, Inc.*,
No. CV-07-6452, 2009 U.S. Dist. LEXIS 93989
(N.D. Cal. Sept. 22, 2009) ....................................................................10

*Dennis v. Kellogg Co.*,
No. 09-CV-1786-L (WMC), 2013 U.S. Dist. LEXIS 163118
(S.D. Cal. Nov. 14, 2013) ......................................................................24

*Discover Bank v. Super. Ct.*,
36 Cal. 4th 148 (2005)..........................................................................30

*Edwards v. National Milk Producers Federation*,
No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214
(N.D. Cal. June 26, 2017)...................................................................32, 33

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .............................................................................16

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) ..............................................................13

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977)......................................................29

*Faigman v. AT&T Mobility, LLC*,
No. C06-04622 MHP, 2011 U.S. Dist. LEXIS 15825
(N.D. Cal. Feb. 16, 2011) ......................................................................33

BLOOD HURST & O'REARDON, LLP

00128320

BLOOD HURST & O'REARDON, LLP

*Foos v. Ann, Inc.*,
No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918
(S.D. Cal. Sept. 24, 2013) ...................................................................................20

*Galluci v. Boiron, Inc.*,
No. 11cv2039 JAH (NLS), 2012 U.S. Dist. LEXIS 157039
(S.D. Cal. Oct. 31, 2012) ....................................................................................14

*Garcia v. Gordon Trucking, Inc.*,
No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052
(E.D. Cal. Oct. 31, 2012) ....................................................................................15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477
(N.D. Cal. Apr. 22, 2010) ...................................................................................33

*Gaudin v. Saxon Mortg. Servs.*,
297 F.R.D. 417 (N.D. Cal. 2013) ........................................................................10

*Glendale City Employees' Ass'n v. Glendale*,
15 Cal. 3d 328 (1975) .........................................................................................18

*Glendora Cmty. Redev. Agency v. Demeter*,
155 Cal. App. 3d 465 (1984) .........................................................................22, 26

*Gonzales v. Arrow Fin. Servs., LLC*,
660 F.3d 1055 (9th Cir. 2011) .............................................................................10

*In re Google Referrer Header Privacy Litig.*,
869 F.3d 737 (9th Cir. 2017) .................................................................17, 18, 20

*Graham v. Daimler Chrysler Corp.*,
34 Cal. 4th 553 (2004) ........................................................................................21

*Greene v. Dillingham Constr. NA., Inc.*,
101 Cal. App. 4th 418 (2002) .............................................................................27

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. C 07-5923 WHA, 2015 U.S. Dist. LEXIS 67298
(N.D. Cal. May 21, 2015) ...............................................................................24, 25

*Hanlon v. Chrysler*,
150 F.3d 1011 (9th Cir. 1998) ..................................................................13, 17, 18

Case No. 3:15-cv-01666-DMS-KSC

MEMO ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ........................................................................ 20, 31

*Hartless v. Clorox Company*,
273 F.R.D. 630 (S.D. Cal. 2011) .............................................................. 17, 24

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2004) ................................................................... 26

*Hensley v. Eckhart*,
461 U.S. 424 (1983) ............................................................................... 20, 26

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939
(N.D. Cal. Feb. 6, 2013) ............................................................................... 19

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09md2087 BTM (KSC), 2014 U.S. Dist. LEXIS 162106
(S.D. Cal. Nov. 18, 2014) ......................................................................... 23, 31

*In re Immune Response Securities Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................ 7, 31

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .......................................................................... 26

*Johns v. Bayer Corp.*,
No. 09cv1935 AJB (DHB), 2013 U.S. Dist. LEXIS 14933
(S.D. Cal. Feb. 1, 2013) ................................................................................ 16

*Johnson v. General Mills, Inc.*,
No. SACV 10-006 CJC (ANx), 2013 U.S. Dist. LEXIS 90338
(C.D. Cal. June 17, 2013) ...................................................................... 19, 24, 25

*Keith v. Volpe*,
501 F. Supp. 403 (C.D. Cal. 1980) ................................................................. 22

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ........................................................................... 20

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ................................................................. 20, 23, 27, 28

BLOOD HURST & O'REARDON, LLP

MEMO ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

*Kim v. Space Pencil, Inc.*,
No. C 11-03796, 2012 U.S. Dist. LEXIS 169922
(N.D. Cal. Nov. 28, 2012) .................................................................................10

*Kline v. Dymatize Enters., LLC*,
No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774
(S.D. Cal. Oct. 13, 2016) ....................................................................................8

*Laffitte v. Robert Half Internat., Inc.*,
1 Cal. 5th 480, 503 (2016)..................................................................17, 18, 26

*Lealao v. Beneficial California*,
82 Cal. App. 4th 19 (2000)...........................................................21, 27, 28, 30

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
222 F.3d 1142 (9th Cir. 2000)..........................................................................25

*Lopez v. Youngblood*,
No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289
(E.D. Cal. Sept. 1, 2011) ..................................................................................19

*Makaeff v. Trump Univ., LLC*,
No. 10cv0940 GPC (WVG), 2015 U.S. Dist. LEXIS 46749
(S.D. Cal. Apr. 9, 2015)....................................................................................24

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05cv179-IEG-JMA, 2009 U.S. Dist LEXIS 26544
(S.D. Cal. Mar. 30, 2009) .................................................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................14, 19, 33

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010)............................................................................14

*Morris v. Lifescan, Inc.*,
54 Fed. App'x 663 (9th Cir. 2003)...................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..........................................................................................16

*Nachsin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011)............................................................................6

BLOOD HURST & O'REARDON, LLP

00128320

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................15

*Nguyen v. Radient Pharms. Corp.*,
No. 11-00406, 2014 U.S. Dist. LEXIS 63312
(C.D. Cal. May 6, 2014) ..................................................................................12

*In re Nissan Radiator*,
No. 10 CV 7493, 2013 U.S. Dist. LEXIS 116720
(S.D.N.Y. May 30, 2013) .................................................................................12

*Nobles v. MBNA Corp.*,
No. C 06-3723, 2009 U.S. Dist. LEXIS 59435
(N.D. Cal. June 29, 2009) ................................................................................10

*In re Nuvelo Sec. Litig.*,
No. C 07-04056 CRB, 2011 U.S. Dist. LEXIS 72260
(N.D. Cal. July 6, 2011) ..................................................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ....................................................................2, 3, 4

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)...........................................................31

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .....................................................................18, 33

*Ozga v. U.S. Remodelers, Inc.*,
No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196
(N.D. Cal. Aug. 9, 2010) .................................................................................14

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .............................................................................19

*Parker v. Los Angeles*,
44 Cal. App. 3d 556 (1974) .............................................................................18

*People Who Care v. Rockford Bd. of Educ.*,
90 F.3d 1307 (7th Cir. 1996) ...........................................................................23

*POM Wonderful, LLC v. Purely Juice, Inc.*,
No. 07-2633, 2008 U.S. Dist. LEXIS 110460
(C.D. Cal. Sept. 22, 2008) ...............................................................................26

BLOOD HURST & O'REARDON, LLP

00128320

MEMO ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT

*Rader v. Thrasher*,
  57 Cal. 2d 244 (1962) ..........................................................................................27

*Reed v. 1-800 Contacts, Inc.*,
  No. 12-cv-02359 SM (BGS), 2014 U.S. Dist. LEXIS 255
  (S.D. Cal. Jan. 2, 2014) ........................................................................................18

*Rider v. San Diego*,
  11 Cal. App. 4th 1410 (1992) ...............................................................................31

*Rodriguez v. West Publ'g Co.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................3, 4, 13, 32

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
  155 Cal. App. 3d 738 (1984) ................................................................................21

*Sanders v. City of L.A.*,
  3 Cal. 3d 252 (1970) ............................................................................................18

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ................................................................................21, 28, 31

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) ..........................................................................................23

*Shirrod v. Dir., OWCP*,
  809 F.3d 1082 (9th Cir. 2015) .............................................................................23

*In re Simon v. Toshiba America*,
  No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501
  (N.D. Cal. Apr. 30, 2010) .....................................................................................33

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..........................................................................6, 18

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ............................................................22, 26

*State of California v. Meyer*,
  174 Cal. App. 3d 1061 (1985) ..........................................................................21, 30

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ...............................................................................30

BLOOD HURST & O'REARDON, LLP

00128320

MEMO ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT

*Steiner v. Am. Broad. Co., Inc.*,
248 Fed. Appx. 780 (9th Cir. 2007) .................................................................. 22

*SternwestCorp. v. Ash*,
183 Cal. App. 3d 74 (1986) .............................................................................. 22

*Suzuki v. Hitachi Global Storage Tecs., Inc.*,
434 Fed. Appx. 695 (9th Cir. 2011) ................................................................. 17

*In re TD Ameritrade Account Holder Litig.*,
No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222
(N.D. Cal. Sept. 12, 2011) ............................................................................. 3, 4

*Thayer v. Wells Fargo Bank*,
92 Cal. App. 4th 819 (2001) ............................................................................. 21

*True v. Am. Honda Motor Co.*,
749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................................................... 13

*United States v. McInnes*,
556 F.2d 436 (9th Cir. 1977) .............................................................................. 9

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) ............................................................................ 23

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ........................................................................... 4, 9

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ............................................................. 32, 33

*Vasquez v. Super. Ct.*,
4 Cal. 3d 800 (1971) ......................................................................................... 30

*In re Vitamin Cases*,
110 Cal. App. 4th 1041 (2003) ......................................................................... 21

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..................................................................... 19, 22

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
No. CV 15-2171 FMO, 2017 U.S. Dist. LEXIS 77576
(C.D. Cal. May 21, 2017) ................................................................................. 23

BLOOD HURST & O'REARDON, LLP

x   Case No. 3:15-cv-01666-DMS-KSC

00128320

MEMO ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ......................................................17, 22, 23, 25

*Zest IP Holdings, LLC v. Implant Direct MFG., LLC*,
   No. 10-CV-0541-GPC (WVG), 2014 U.S. Dist. LEXIS 167563
   (S.D. Cal. Dec. 3, 2014) ........................................................................24

**Statutes and Rules**

15 U.S.C. §1692k...........................................................................................10

Cal. Civ. Code §1788 (Cal. Rosenthal Fair Debt Collection
   Practices Act)..................................................................................*passim*

Cal. Civ. Proc. Code
   §580b ..................................................................................................9, 11, 12
   §726 ........................................................................................................9, 12

Fed. R. Civ. P. 23...................................................................................*passim*

**Secondary Sources**

*Manual for Complex Litigation (Fourth)* (2004)
   §21.62 ...........................................................................................................3

H. Newberg & A. Conte, *Newberg on Class Actions* (2d ed. 1993)
   §12.08 .........................................................................................................31

H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002)
   §11:41 ...........................................................................................................3

BLOOD HURST & O'REARDON, LLP

Case No. 3:15-cv-01666-DMS-KSC
MEMO ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

BLOOD HURST & O'REARDON, LLP

Plaintiff Carmen Terry ("Plaintiff") submits this memorandum in support of her motion for final approval of the proposed class action settlement and request for an award of attorneys' fees and reimbursement of expenses.[1]

## I.       INTRODUCTION

Plaintiff seeks final approval of the proposed Settlement of this class action. The Settlement is an excellent result that meets Plaintiff's goals in this litigation: Chase has stopped the conduct at issue and Settlement Class Members will receive substantial monetary relief. The Settlement was reached following vigorous litigation, extensive discovery, and multiple arm's-length mediation sessions and subsequent negotiations between the Parties.

The Settlement provides for a $4.3 million non-reversionary Settlement Fund. After notice and administration costs and requested attorneys' fees, Settlement Class Members who made one or more mortgage payments that are disputed will receive at least 76% of the alleged loss to 38%, depending on whether they had a purchase money or non-purchase money mortgage, which determines the relative risk of recovery. The remainder of the Settlement Class who were not damaged will share in the maximum amount of statutory damages recoverable under the Rosenthal Act. No claim form is required for payment. If an amount remains in the Settlement Fund that is too small to distribute, it will be distributed pursuant to the *cy pres* doctrine to two non-profit organizations whose consumer and mortgage-related education, advocacy, and assistance services are related to the nature of the Action and the Settlement Class Members, including their location.

Moreover, the award of attorneys' fees and expenses requested by Plaintiff's Counsel, and which Defendants do not oppose, is well within acceptable ranges. The Settlement provides that Defendants will not oppose an

---

[1]      Capitalized terms have the same meaning as in the Settlement Agreement and Release (the "Settlement" or "SA"). *See* ECF No. 54-3.

00128320

award of attorneys' fees up to 25% of the Settlement Fund ($1,075,000) plus reimbursement of expenses ($22,475.28 as of November 17, 2017). Plaintiff's Counsel have prosecuted this action on a completely contingent basis, incurring approximately $762,148 in attorneys' fees, plus $22,475.28 in unreimbursed expenses as of November 17, 2017. Particularly given the excellent result achieved for the Class and the efficient manner in which it was achieved, the proposed fee award should be approved.

The Settlement has received strong support from the Settlement Class. As of November 21, 2017, and after notice was mailed directly to the borrowers of the 23,376 Settlement Class Loans, there have been no objections and only one request to opt-out.[2] *See* Declaration of Alex Thomas on Behalf of Settlement Administrator Regarding Notice filed contemporaneously herewith ("Thomas Decl."), ¶¶4, 8-9, 14-15.

The proposed Settlement is "fair, reasonable, and adequate" in accordance with Fed. R. Civ. P. 23(e)(2) and warrants final approval by this Court, including final certification of the Settlement Class and approval of the negotiated attorneys' fees and expenses and Class Representative service award. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).[3]

## II. HISTORY OF THE LITIGATION

The Settlement was reached after hard-fought litigation spanning over two years, which included an Early Neutral Evaluation ("ENE"), three full-day mediation sessions and subsequent negotiations, significant formal discovery, motion practice, expert work, and preparation for class certification briefing.

---

[2] The deadline to opt-out or object to the Settlement is December 6, 2017. Pursuant to the Court's order (ECF No. 57), Plaintiff will respond to any objections on or before January 12, 2018.

[3] Internal quotes and citations omitted unless otherwise specified.

BLOOD HURST & O'REARDON, LLP

00128320

BLOOD HURST & O'REARDON, LLP

Rather than repeat it here, Plaintiff incorporates by reference the recitation of litigation history set forth in the preliminary approval motion and the Declaration of Timothy G. Blood submitted with that motion. *See* ECF Nos. 54-1, 54-2.

## III.   THE SETTLEMENT MERITS FINAL APPROVAL

The proposed Settlement is fair, reasonable, and adequate and reflects careful consideration by both Parties of the benefits, burdens, and risks associated with continued litigation of the Action. Accordingly, Plaintiff respectfully submits that this Court should grant final approval of the Settlement and order that relief be given to the Settlement Class.

### A.   The Standards for Final Approval of Class Action Settlements

Pursuant to Rule 23(e), after directing notice to settlement class members in a reasonable manner and prior to granting final approval of a proposed settlement, the Court must conduct a fairness hearing and determine whether the settlement's terms, as a whole, are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625 (the court's role is to determine whether the settlement is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned"); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion."); *see generally Manual for Complex Litigation (Fourth)* §21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); H. Newberg & A. Conte, *Newberg on Class Actions* §11:41 (4th ed. 2002).[4] In making its determination, "[i]t is neither for the court to reach any ultimate conclusion regarding the merits of the dispute, nor to second guess the settlement terms." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852

---

[4]   Internal citations are omitted and emphasis is in original, unless stated otherwise.

00128320

SBA, 2011 U.S. Dist. LEXIS 103222, at *11-12 (N.D. Cal. Sept. 12, 2011) (citing *Officers for Justice*, 688 F.2d at 625).

Judicial policy strongly favors the settlement of class actions. *Class Plaintiffs*, 955 F.2d at 1276. "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length and size of the litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits ….").

Several non-exhaustive factors are recognized as guideposts to the "fair, adequate and reasonable" determination: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount achieved or recovered in resolution of the action; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *See Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625. Moreover, a settlement is entitled to a presumption of fairness when reached by experienced counsel. *See Rodriguez,* 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). Each of these factors fully supports approval of the Settlement at hand.

### B. The Settlement Is Fair, Reasonable, and Adequate

Each Settlement Class Member who made a payment to Chase will receive automatic compensation in the form of substantial refunds of the Challenged Payments at issue. Each Settlement Class Member who did not make a payment to Chase will also receive automatic compensation under the Settlement.

BLOOD HURST & O'REARDON, LLP

00128320

### 1.   Settlement Awards Mailed Directly to Class Members

The Settlement Class consists of borrowers on the 23,376 loans who fall within one of three tranches: (1) those who made at least one Challenged Payment on their Purchase Money Mortgages ("Tranche 1" Settlement Class Members); (2) those who made at least one Challenged Payment on their Non-Purchase Money Mortgages ("Tranche 2" Settlement Class Members); and (3) those who did not make any Challenged Payments on either Purchase or Non-Purchase Money Mortgages, but received an allegedly deceptive payment request ("Tranche 3" Settlement Class Members). SA, §§II.A.34-36.

The members of Tranche 1, which includes borrowers on 181 loans, will receive an initial distribution representing about 76% of the total Challenged Payments they made during the Class Period. The members of Tranche 2, which includes borrowers on 614 loans, will receive an initial distribution representing about 38% of the total Challenged Payments they made during the Class Period. SA, §§III.G.1.a.-b; Blood Preliminary Approval Decl., ¶14.[5] Members of both Tranche 1 and Tranche 2 are eligible for a second distribution if sufficient funds remain. *Id*. The borrowers on the 22,581 loans included in Tranche 3 will receive an equal share of $500,000, which is the maximum statutory civil penalty amount available under the Rosenthal Act, and equates to about $22 per loan. *Id*.

No one will need to make a claim for payment or take any other action in response to the Class Notice. Instead, the Settlement Administrator mailed a personalized Class Notice that states the minimum amount of recover the particular Settlement Class Member will receive. If the Settlement is approved, the Settlement Administrator will send Settlement Award checks directly to each Settlement Class Member. SA, §§III.F. and H.1.

---

[5]   "Blood Preliminary Approval Decl." references the previously filed Declaration of Timothy G. Blood in Support of Unopposed Motion for Preliminary Approval of Settlement. *See* ECF No. 54-2.

BLOOD HURST & O'REARDON, LLP

00128320

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

Any money remaining after the initial distribution will be distributed pro rata to Tranche 1 and 2 Settlement Class Members who cashed their Settlement Award checks (the "Second Distribution"). The Second Distribution will occur unless the remaining amount would result in average supplemental payments of $10 or less per Settlement Class Member, in which case the leftover funds will be distributed *cy pres* in equal shares to the National Housing Law Project ("NHLP") and Consumer Watchdog ("CW"). SA, §§III.G.1.a-b. and H.2-3. Thus, none of the $4.3 million will be returned to Defendants. *Id*.

Given the personalized, direct Mail Notice plan, the automatic Settlement Award check process, and a Second Distribution provision, the Parties anticipate a *de minimus* amount of leftover funds. SA, §§III.F-H.

The NHLP and CW are appropriate *cy pres* recipients. *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (*cy pres* recipient should be related to the nature of the lawsuit and the class members, including their location); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). NHLP, a 501(c)(3) nonprofit national housing and legal advocacy center, advances housing justice for the poor by increasing and preserving the supply of affordable housing, improving existing housing conditions and management practices, expanding and enforcing low-income tenants' and homeowners' rights, and increasing housing opportunities for racial and ethnic minorities. *See* https://www.nhlp.org/ (last visited Nov. 9, 2017). Part of NHLP's mission is to advocate for fair housing and lending laws. *Id*. NHLP is an appropriate *cy pres* recipient because it helps consumers navigate the mortgage loan process and advocates on behalf of borrowers.

CW, a 501(c)(3) nonprofit organization, has been dedicated to educating and advocating on behalf of consumers for 30 years. Through policy research, investigation, public education, and advocacy, CW fights to expose and change deceptive corporate practices in a variety of areas, including mortgage lending.

00128320

CW fields thousands of consumer complaints each year, many from consumers seeking advice on mortgage fraud. CW has researched and reported on fraud and kickbacks in the title, escrow, mortgage and natural hazard disclosure industries. In a February 2010 report, CW exposed rampant fraudulent mortgage modification advertising, which prompted the federal government to shut down 85 online mortgage modification scams. In April 2017, CW filed a petition with the California AG on behalf of aggrieved borrowers overcharged in a real estate kickback scheme. Blood Preliminary Approval Decl., ¶7. CW is an appropriate *cy pres* recipient because it works on behalf of consumers against the type of misleading and deceptive business practices alleged here, including on behalf of home loan borrowers and against banks.

### 2. Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Award

All notice and administration expenses (expected to be approximately $60,000), attorneys' fees and expenses, and a Class Representative service award will be paid from the Settlement Fund. SA, §§II.A.31., III.J-K. Defendants agree to not oppose Class Counsel's application for reasonable attorneys' fees not to exceed 25% of the Settlement Fund ($1,075,000), plus reimbursement of out-of-pocket expenses ($22,475.28 to date). SA, §III.J-K. Defendants also agree not to oppose any request for a Court-awarded service award of $5,000 to Plaintiff Terry. SA, §III.K.

### C. The Settlement Was Reached After Serious, Informed, and Non-Collusive Arm's-Length Negotiations

The Settlement was reached after extensive arm's-length settlement negotiations and participation in an Early Neutral Evaluation with Magistrate Judge Crawford and three full-day mediation sessions with the Hon. Richard Kramer (Ret.) of JAMS. Settlements that are products of such negotiations are considered presumptively fair and reasonable. *See In re Immune Response*

BLOOD HURST & O'REARDON, LLP

00128320

*Securities Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("[T]he fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair.") (quoting *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997) *aff'd*, 151 F.3d 1234 (9th Cir. 1998)); *Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774, at *14 (S.D. Cal. Oct. 13, 2016) ("That the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable."); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW (FFMx), 2010 U.S. Dist. LEXIS 43377, at *44 (C.D. Cal. Apr. 12, 2010) ("Because the present agreement was reached through arms-length negotiation between experienced parties whose negotiations were overseen by an experienced mediator, it is entitled to a presumption of fairness.").

Here, counsel for the Parties each zealously negotiated on behalf of their clients' best interests. Class Counsel, who are experienced in prosecuting complex class actions, had a "clear view of the strengths and weaknesses" of their case, and thus were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010). Despite their good-faith efforts during the settlement conference led by Magistrate Judge Crawford, the Parties were unable to find common ground. The Parties proceeded with intense litigation and discovery, which included analyzing over 162,000 pages of electronic discovery and comprehensive Settlement Class Member payment data and loan files, as well as the mediation sessions before Judge Kramer. With a clear view of the strengths and weaknesses of the claims, and after numerous discussions and proposals, the Parties ultimately agreed to the proposed Settlement. Furthermore, the experience of counsel and the fair result reached are

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00128320

illustrative of the arms-length negotiations that led to the Settlement.

### D. The Strengths of Plaintiff's Case and Risks Inherent in Continued Litigation Favor Approval

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard—the Parties disagree about the merits, and there is substantial uncertainty about the Action's litigated outcome.

Assuming litigation was to proceed, the hurdles Plaintiff faces prior to class certification, summary judgment, and a successful verdict are substantial, and the potential upside is limited by the claims and remedies. Defendants have argued Plaintiff's injury arises from an election to make a payment following Chase's voluntary release of the second lien on her property, and not from any allegedly deceptive or unlawful conduct. On the merits, Defendants have contended that Plaintiff misconstrues both California's "one action" and "security first" rules, Cal. Civ. Proc. Code §726, and the anti-deficiency statute, Cal. Civ. Proc. Code §580b (together, the "Deficiency Statutes").

Defendants also argue Chase's voluntary lien releases did not extinguish the borrowers' underlying loan obligations and therefore did not waive Defendants' right to request payment. Further, Chase argues because it never sought to foreclose or otherwise enforce its liens after release, it did not violate the Deficiency Statutes. Defendants further contend that their attempts to collect payments were not uniform (precluding certification), and the lien release letters were not deceptive. In addition, Defendants argue that Tranche 3 Settlement Class Members are not entitled to any damages at all, and even if eligible to receive a portion of a $500,000 Rosenthal Act civil penalty, the amount of the penalty, if any, is discretionary and no award is automatic. *See* Cal. Civ. Code

BLOOD HURST & O'REARDON, LLP

00128320

§1788.17; 15 U.S.C. §§1692k(a)-(b); *Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013) ("Determining damages from the proposed Rosenthal Act violation may not be as formulaic as Plaintiff suggests. The $500,000 statutory damages amount in 15 U.S.C. §1692k(a)(2)(B) is a ceiling rather than an automatic entitlement." (citation omitted)); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060, 1069 (9th Cir. 2011) (affirming $112,500 Rosenthal Act award to class members).

Given the uncertainties and limited upside of continued litigation, this factor weighs in support final approval of the Settlement.

### E. The Risk, Complexity, Expense, and Duration of the Litigation Favor Approval

The risk, expense, complexity, and duration of the case if litigated rather than settled weighs heavily in favor of final approval of the Settlement.

Here, the Settlement provides substantial benefits to Settlement Class Members, who need not do anything to receive their awards. The guaranteed recovery also obviates the risk and delay of continued litigation, trial, and appeal—significant factors considered in evaluating a settlement. *See Create-A-Card, Inc. v. INTUIT, Inc.*, No. CV-07-6452, 2009 U.S. Dist. LEXIS 93989, at *13 (N.D. Cal. Sept. 22, 2009). Continued litigation would be time-consuming and expensive, only to possibly obtain less than is immediately available through the Settlement. Indeed, there is a very real risk the Settlement Class may receive nothing. Thus, elimination of delay and expense weighs in favor of approval. *Nobles v. MBNA Corp.*, No. C 06-3723, 2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair."); *Kim v. Space Pencil, Inc.*, No. C 11-03796, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in

BLOOD HURST & O'REARDON, LLP

00128320

favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

This Settlement establishes a means for prompt resolution of Settlement Class Members' claims. The direct payment ensures the Settlement Class Members will benefit from the Settlement. Given the alternative of continued, complex litigation before this Court, and the risks involved in such litigation that Settlement Class Members might get nothing, the availability of prompt relief under the Settlement is highly beneficial to the Settlement Class.

**F.     The Amount Achieved Under the Settlement Favors Approval**

The Settlement provides real relief for persons in the Settlement Class who do not need to do anything to receive the Settlement Awards. The payments amounts are logically structured to reflect the risk and likelihood of receiving full recovery. For example, those in Tranche 3 have no ability to recover more than their portion of Rosenthal Act civil penalties since none of them made any payments after the security underlying their mortgage loans was released.

Under the Settlement, Tranche 1 recipients will recover a higher percentage of the amounts they paid after the security underlying their mortgage loans was released, reflecting their relatively stronger case relative to Tranche 2 members. Tranche 1 members have Purchase Money Mortgages, while Tranche 2 members have Non-Purchase Money Mortgages. Purchase money loans are loans originally used to purchase the house. Non-purchase money loans are loans not used to necessarily buy a home, such as a home equity loan and many refinance loans.

Civ. Code §580b provides anti-deficiency protection for purchase money mortgagors, and, Plaintiff contends, prohibits collection of legally unenforceable debt. *See* Cal. Civ. Proc. Code §580b. Because Settlement Class Members who are in Tranche 1 have purchase money loans, Plaintiff contends they have a claim

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

under §580b. However, Settlement Class Members in Tranche 2 could not have claims under §580b.

Plaintiff asserts Settlement Class Members in both Tranche 1 and Tranche 2 have a claim derived from two mortgage related rules; the "one-action" rule under Civ. Code §726(a) which requires a lender to take only one type of legal action to collect on a secured real estate loan and the "security-first" rule, which requires the lender to first go after the security before pursuing any other relief. Plaintiff asserts this theory is not dependent on whether the loan is a Purchase Money Mortgage, and permits secured creditors only one form of action for the recovery of "any right secured by mortgage upon real property," which means a foreclosure sale. *See* Cal. Civ. Proc. Code §726(a). Defendants have argued Section 726 was not violated because the "one action" it governs is an ordinary action at law, Chase's lien releases did not extinguish the debt, and requesting payments is not a violation of the security-first requirement because it is not an "action," thus leaving it to pursue its "one action." Thus, Settlement Class Members in Tranche 1 have two theories of relief whereas Settlement Class Members in Tranche 2 only have one. In addition, Plaintiff's theory under Cal. Civ. Proc. Code §580b, available only to Settlement Class Members with purchase money loans, is more direct and less uncertain, thereby justifying a difference in relief amount under the Settlement. *See In re Nissan Radiator*, No. 10 CV 7493, 2013 U.S. Dist. LEXIS 116720, at *30-31 (S.D.N.Y. May 30, 2013) (citing precedent and overruling objection to tiered compensation); *Nguyen v. Radient Pharms. Corp.*, No. 11-00406, 2014 U.S. Dist. LEXIS 63312, at *20-21 (C.D. Cal. May 6, 2014) (same).

In evaluating the fairness of consideration offered in settlement, the court should give significant weight to the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

00128320   MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

### G.   Experience and Views of Counsel Favor Approval

Courts recognize that the opinions of experienced counsel supporting a settlement, especially after vigorous arm's-length negotiations, are entitled to considerable weight. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) (holding that class counsel's views that settlement was reasonable weighed in favor of settlement); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Class Counsel have substantial experience serving as class counsel in complex litigation. Class Counsel's views and recommendations concerning the Settlement are the product of thorough analysis and consideration of the issues and risks of continued litigation. Class Counsel believes that the results achieved by the Settlement are eminently fair, adequate and reasonable. *See* Blood Preliminary Approval Decl., ¶33.

### H.   The Reaction of Settlement Class Members Favors Approval

Courts have likewise recognized that a favorable reaction by class members to the proposed settlement strongly supports final approval. *See Chun-Hoon*, 716 F. Supp. 2d at 852 ("The reaction of class members to the proposed

00128320

13   Case No. 3:15-cv-01666-DMS-KSC

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."). Class members must be allowed the opportunity to review and object to both the preliminary notice of settlement and the plaintiff's application for attorneys' fees prior to final approval. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010). If, after having a full opportunity to object to all aspects of a settlement, no class members objected to or opted-out of the settlement, then that is an important factor in evaluating the fairness of the settlement. *See*, *e.g.*, *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *5 (N.D. Cal. Aug. 9, 2010) (in granting final approval of a settlement class, court considered that the "overall reaction to the Settlement has been positive," there were no objections to the Settlement and "[n]o Class Member appeared at the final approval hearing to object"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (where only one of 5,400 class members opted-out and just a "handful" objected, "[t]he reaction of the class members to the proposed settlement further supports the conclusion that … the Settlement was fair, adequate and reasonable").

Here, the reaction of persons in the Settlement Class is very positive. As of November 17, 2017, no objections have been made to the Settlement and just one request for exclusion (representing only about 0.004% of the Settlement Class). *See* Blood Final Approval Decl., ¶15;[6] Thomas Decl., ¶¶14-15. This response supports final approval. *See*, *e.g.*, *Galluci v. Boiron, Inc.*, No. 11cv2039 JAH (NLS), 2012 U.S. Dist. LEXIS 157039, at *19 (S.D. Cal. Oct. 31, 2012) ("The response of the Class to this action, the certification of a class, and the Settlement ... strongly favors final approval of the Settlement. Out of the estimated millions

_____

[6] "Blood Final Approval Decl." references the concurrently submitted Declaration of Timothy G. Blood in Support of Motion for Final Approval of Class Action Settlement.

BLOOD HURST & O'REARDON, LLP

00128320

BLOOD HURST & O'REARDON, LLP

who received Notice [] only two class members submitted valid requests for exclusion. Moreover, only three Objections were filed[.]"); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052, at *14, *17, *19 (E.D. Cal. Oct. 31, 2012) (no objections and less than 1% of the class electing to opt out weighed in favor of final approval and the adequacy of the amount offered in settlement); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class action settlement where forty-five objections were received out of 90,000 notices).

In sum, the Settlement is the product of arms-length negotiations among the Parties, well informed of the relative strengths and weaknesses of their claims and defenses. The Settlement is fair, adequate and reasonable, and warrants final approval under Rule 23(e).

## IV. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Court's Preliminary Approval Order analyzed the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements satisfied, and certified the Settlement Class for settlement purposes only. ECF No. 55. Nothing has changed that would affect the Court's ruling on class certification. For the reasons stated in the preliminary approval motion and the Preliminary Approval Order, the Court's certification of the Settlement Class for settlement purposes only should be affirmed. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) (affirming order certifying class for settlement purposes only); ECF Nos. 54-1 at 19-24; 55.

00128320

## V.   CLASS NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

The Class Notice provided to the Settlement Class was adequate and satisfies Rule 23 and all other due process requirements. Rule 23 requires that "the court … direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be reasonably calculated to apprise the Settlement Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

The Class Notice provided under the Settlement was reasonably calculated to apprise the Settlement Class of the pendency of the Action and their right to object or exclude themselves from the Settlement. This Court previously approved the form and manner of Class Notice, which was modeled after and consistent with "The Federal Judicial Center's 'Illustrative' Forms of Class Action Notices." *See* http://www.fjc.gov/ (last visited November 9, 2017); *see also* Fed. R. Civ. P. 23 Advisory Committee Notes (2003) ("The Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms."); *Johns v. Bayer Corp.*, No. 09cv1935 AJB (DHB), 2013 U.S. Dist. LEXIS 14933, at *6 (S.D. Cal. Feb. 1, 2013) ("the form and information contained within the notice is based on and consistent with the Federal Judicial Center's notices and satisfy the requirements of Rule 23 and due process"). As detailed in the concurrently filed declaration from the Settlement Administrator, the Class Notice plan was executed as previously detailed, and resulted in direct Mail Notice being sent to over 98% of the Settlement Class. *See* Thomas Decl., ¶8-10. In addition, the Settlement Website and toll-free hotline have been established and visited by Settlement

BLOOD HURST & O'REARDON, LLP

00128320

Class Members. *Id.*, ¶¶11-13. The Class Notice has also resulted in individuals in the Settlement Class reaching out to Class Counsel. Blood Final Approval Decl., ¶¶4, 9.

## VI.   PLAINTIFF'S FEE AND EXPENSE APPLICATION SHOULD BE APPROVED

Plaintiff seeks an award of attorneys' fees of $1.075 million, representing 25% of the $4.3 million Settlement Fund and a modest 1.41 multiplier of Plaintiff's Counsel's lodestar of $762,148.

The Ninth Circuit approves "two separate methods for determining attorneys' fees," *i.e.*, the percentage and lodestar/multiplier methods. *Hanlon*, 150 F.3d at 1029; *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 747 (9th Cir. 2017) (same). The requested fees should be approved as fair and reasonable under the lodestar or common fund methods.

Likewise, California state "[c]ourts recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier and the percentage of recovery method." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). The California Supreme Court has endorsed the percentage method in common fund cases and noted its benefits as compared to the lodestar method:

> The recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation – convince us the percentage method is a valuable tool that should not be denied our trial courts.

*Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 503 (2016).

"In cases in which the class benefit can be monetized with a reasonable degree of certainty, a percentage of the benefit approach may be used to cross-check the lodestar calculation." *Hartless*, 273 F.R.D. at 642 (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557-58); *see also Suzuki v.*

BLOOD HURST & O'REARDON, LLP

00128320

*Hitachi Global Storage Tecs., Inc.*, 434 Fed. Appx. 695, 696 (9th Cir. 2011) (affirming fee award, stating "[t]he district court correctly began with the lodestar method of calculating attorneys' fees and then permissibly used the percentage of common fund crosscheck to arrive at a reasonable fee award under California law"); *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 SM (BGS), 2014 U.S. Dist. LEXIS 255, at *22-23 (S.D. Cal. Jan. 2, 2014) (same). Nevertheless, "[w]hile the court has the discretion to [cross-check the lodestar in comparison to a percentage of common fund] it is not required." *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557; *see also In re Google Referrer Header Privacy Litig.*, 869 F.3d at 748 ("Although not required to do so, the district court took an extra step, cross-checking this [percentage method] result by using the lodestar method.").

Using these applicable standards, the proposed award is fair and reasonable.

### A. The Fee Award Totaling 25% of the Settlement Fund Is Fair and Reasonable

Federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage of the recovery method in common fund cases. *Six Mexican Workers*, 904 F.2d at 1311; *Lafitte,* 1 Cal. 5th at 492-95 (collecting cases). Percentages in the range of 25% of the settlement's value are typical. *Six Mexican Workers*, 904 F.2d at 1311; *Hanlon*, 150 F.3d at 1029 (25% is the benchmark); *Glendale City Employees' Ass'n v. Glendale*, 15 Cal. 3d 328, 341 n.19 (1975) (approving award of 25% of the recovery); *Sanders v. City of L.A.*, 3 Cal. 3d 252, 261 (1970) (approving award of 25%); *Parker v. Los Angeles*, 44 Cal. App. 3d 556, 567-68 (1974) (affirming award of 33%). In determining the amount of the benefit conferred, the appropriate measure is the gross settlement amount – including attorneys' fees, expenses and administration. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 935 (9th Cir. 2015) (affirming

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00128320

award of 25% of the gross fund: "The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."); *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 U.S. Dist. LEXIS 77714, at *41-43 (C.D. Cal. Feb. 16, 2017) (same); *Boeing Co. v. Van Gamert*, 444 U.S. 472, 480-81 (1980) (under the common fund doctrine, class counsel are entitled to a reasonable fee on the funds "awarded to the prevailing class").

While 25% is the benchmark, district courts have granted and the Ninth Circuit has affirmed awards of attorneys' fees at or above a 30% fee. *See*, *e.g.*, *In re Mego*, 213 F.3d at 457, 463 (affirming fee award of 33 1/3% of fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1046, 1050 (9th Cir. 2002) (28% of the gross fund); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist LEXIS 26544, at *10 (S.D. Cal. Mar. 30, 2009) (30% for first $10 million and 25% for additional $2 million settlement); *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663, (9th Cir. 2003) (affirming fee award of 33% of fund); *Johnson v. General Mills, Inc.*, No. SACV 10-006 CJC (ANx), 2013 U.S. Dist. LEXIS 90338, at *18-20 (C.D. Cal. June 17, 2013) (approving fee award of 30% of fund). "Indeed, in most common fund cases, the award exceeds th[e] benchmark." *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939, at *2 (N.D. Cal. Feb. 6, 2013) (awarding 30 percent of the fund); *see also Chavez*, 162 Cal. App. 4th at 66 n.11 (30.3 percent and 27.9 percent are "not out of line with class action fee awards calculated using the percentage-of-the-benefit method"). More particularly, "in cases under $10 million, the awards more frequently will exceed the 25% benchmark." *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *36 (E.D. Cal. Sept. 1, 2011); *see also In re Nuvelo Sec. Litig.*, No. C 07-04056 CRB, 2011 U.S. Dist. LEXIS 72260, at *7 (N.D. Cal.

BLOOD HURST & O'REARDON, LLP

00128320

July 6, 2011) ("30% reasonably compares to other awards for a $10M settlement.").

Class Counsel's request a fee award of 25% of the $4.3 million settlement value created through Plaintiff's Counsel's efforts. Further, Class Counsel achieved this Settlement after hard-fought litigation, but without trial and extended litigation, which would only have increased the costs ultimately borne by the Settlement Class. Counsel should be justly rewarded for obtaining relief in a timely and efficient manner.

## B.    The Lodestar/Multiplier Crosscheck

Although a lodestar/multiplier crosscheck is not required in a common fund settlement, here it further demonstrates the reasonableness of the requested fee award. *In re Google Referrer Header Privacy Litig.*, 869 F.3d at 748.

Under the two-step lodestar/multiplier crosscheck method, trial courts first calculate the lodestar, consisting of "***all*** the hours ***reasonably spent***, including those relating solely to the fee," times reasonable hourly rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). Although the lodestar figure "presumptively provides an accurate measure of reasonable attorney's fees," that figure may be augmented or multiplied to reflect additional factors in determining a reasonable attorney fee award. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *Hensley*, 461 U.S. at 429; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Ketchum*, 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general local hourly rate for a ***fee-bearing*** case; it does ***not*** include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider") (emphasis in original); *Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918, at *11-12 (S.D. Cal. Sept. 24, 2013) ("After computing the 'lodestar,' the district court may then adjust the figure upward or downward taking into consideration [*Kerr*'s] twelve 'reasonableness' factors").

00128320

When determining the multiplier, trial courts should consider all factors relevant to a given case. *Lealao v. Beneficial California*, 82 Cal. App. 4th 19, 40 (2000). The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so an enhancement helps determine a fee that is commensurate with what attorneys could expect to be compensated for similar service in these circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino,* 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Lealao*, 82 Cal. App. 4th at 50 (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in comparable litigation). In determining the multiplier, courts have considered a range of relevant factors. *Id.* at 40. The factors California courts have looked to include:

- the benefits obtained or the results achieved (*City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 80 (1988); *Lealao*, 82 Cal. App. 4th at 41; *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001));

- the novelty and difficulty of the questions involved and the skill displayed in presenting the issues (*Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977));

- the contingencies involved in prosecuting the action and obtaining fees (*id.*; *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 583 (2004));

- the delay in receiving fees (*Graham*, 34 Cal. 4th at 583; *City of Oakland*, 203 Cal. App. at 85);

- the promptness of resolution (*Lealao,* 82 Cal. App. 4th at 52; *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1058-59 (2003));

- the multiplier that will result in a reasonable percentage of the value of the settlement (*Chavez v. Netflix*, 162 Cal. App. 4th 43, 63 (2008)); and

- the "public service element ... and motivation to represent consumers and enforce laws." *State of California v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985); *Thayer*, 92 Cal. App. 4th at 839 (meager fee awards will discourage able counsel from engaging in public interest litigation, which should be encouraged).

00128320

BLOOD HURST & O'REARDON, LLP

"Multipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001). The court in *Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12. *See also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *SternwestCorp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *4-5 (N.D. Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3); *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, at *43 (S.D. Cal. Sept. 28, 2017) ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action."); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers.").

In this case, the lodestar of Plaintiff's Counsel is $762,148 based on 1,541.20 hours of work as of November 17, 2017. *See* Blood Final Approval Decl., ¶8; Forde Final Approval Decl., ¶8; Fredman Final Approval Decl., ¶6. Accordingly, the $1.075 million award represents a modest 1.41 multiplier—well within the range of routinely approved multipliers. In light of the exceptional results obtained, the efficiency with which the case was litigated, the risk, difficulty and the public service rendered by this action and the future work on the final approval reply papers and hearing, settlement administration, and potential appeals still to be performed, the requested fee is fair and reasonable.

BLOOD HURST & O'REARDON, LLP

00128320

### 1.     The Hourly Rates Are Reasonable

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Typically, the forum where the district court sits is recognized as the "relevant community." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Thus, Plaintiff's Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11; *Ketchum*, 24 Cal. 4th at 1133. *See also Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ("The formula by which 'reasonable market value' is reached is variously phrased" as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation," and the "hourly amount to which attorneys of like skill in the area would typically be entitled.") (citations omitted).[7]

Plaintiff's Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See*, *e.g.*, Blood Final Approval Decl., ¶7 (citing cases); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171 FMO (FFMx), 2017 U.S. Dist. LEXIS 77576, at *42-43 (C.D. Cal. May 21, 2017) (approving BHO hourly rates as reasonable given "the prevailing rates in the community for lawyers of comparable skill, experience, and reputation"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2014 U.S. Dist. LEXIS 162106, at *192 (S.D. Cal. Nov. 18, 2014) (approving hourly

---

[7]     An attorney's actual billing rate for similar work is presumptively appropriate. *See Wershba*, 91 Cal. App. 4th at 254-55; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

BLOOD HURST & O'REARDON, LLP

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

BLOOD HURST & O'REARDON, LLP

rates of attorneys and paralegals at BHO as "typical rates for attorneys of comparable experience"); *Hartless v. Clorox Company*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (approving BHO's hourly rates: "based on the Court's familiarity with the rates charged by other firms in the San Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable"); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMC), 2013 U.S. Dist. LEXIS 163118, at *22-23 (S.D. Cal. Nov. 14, 2013) (approving hourly rates of BHO as "fall[ing] within typical rates for attorneys of comparable experience"); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at *19-21 and n.3 (approving hourly rates and time spent by BHO, stating "[t]he Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates") (citing BHO's firm resume).

Plaintiff's Counsel's rates also compare very favorably with rates approved by other trial courts in class action litigation, by what attorneys of comparable skill charge in San Diego, and the reported rates for the law firm representing Defendants. *See Makaeff v. Trump Univ., LLC*, No. 10cv0940 GPC (WVG), 2015 U.S. Dist. LEXIS 46749, at *12-14 (S.D. Cal. Apr. 9, 2015) (approving hourly rates of $600-$825 for partners, and $250-$450 for associates, and $150-$430 for paralegals, and observing San Diego-based Luce Forward's 2007 rates were $220-$450 for associates and $325-$725 for partners); *Zest IP Holdings, LLC v. Implant Direct MFG., LLC*, No. 10-CV-0541-GPC (WVG), 2014 U.S. Dist. LEXIS 167563, at *13-15 (S.D. Cal. Dec. 3, 2014) (approving average hourly billing rates of $775 for partners and $543 for associates); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-5923 WHA, 2015 U.S. Dist. LEXIS 67298, at *15 (N.D. Cal. May 21, 2015) (approving rates of $475-$975 for partners, $300-$490 for associates, and $150-$430 for paralegals); Blood Final Approval Decl., Ex. B (the 2014 National Law Journal Billing Survey lists the following rates for firms with San Diego offices: Cooley ($660-$990 for

00128320

24          Case No. 3:15-cv-01666-DMS-KSC
MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

partners, and $335-$640 for associates); DLA Piper ($450-$1,025 for partners, and $250-$765 for associates); Jones Day ($445-$975 for partners, and $205-$745 for associates); Latham & Watkins ($895-$1,110 for partners, and $465-$725 for associates); Morrison & Foerster ($595-$1,195 for partners, and $230-$725 for associates); Sheppard Mullin ($490-$875 for partners, and $275-$535 for associates)); *Id.*, Ex. C (the 2015 National Law Journal Billing Survey provides the following California rates: $200-$1,080 for partners; $300-$950 for associates; $175-$595 for Of Counsel attorneys; and $25-$325 for paralegals).[8] Finally, Plaintiff's Counsel have submitted sworn declarations attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this Action. *See* Declarations of Plaintiff's Counsel.

### 2.    The Hours Expended Are Reasonable

The number of hours spent by Plaintiff's Counsel is reasonable given the efforts to ultimately obtain this resolution. The litigation has lasted over two years and involved hard-fought litigation involving motion practice, discovery, expert work, and protracted settlement negotiations. *See* Blood Preliminary Approval Decl., ¶¶10-13, 18; Preliminary Approval Mem. at 3-5. Thus, the 1,541.20 total hours spent by Plaintiff's Counsel is reasonable. *See* Blood Final Approval Decl., ¶8; Forde Final Approval Decl., ¶8; Fredman Final Approval Decl., ¶6.[9] Moreover, Plaintiff's Counsel work is not yet done. Class Counsel

---

[8]    According to the 2014 NLJ Billing Survey, partner rates at Stroock & Stroock & Lavan were $675-$1,125 and associates billed at $350-$840. *Id*. at 15.

[9]    Counsel need only submit summaries of their hours incurred; submission of billing records is not required. *Wershba*, 91 Cal. App. 4th at 254-55; *Chavez*, 162 Cal. App. 4th at 64 ("timesheets are not required of class counsel to support fee awards in class action cases."); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at *20-21 n.3 (citing *Lobatz* and approving class counsel's hours without detailed billing records, stating "the hours spent by counsel do not appear to be

BLOOD HURST & O'REARDON, LLP

00128320

still need to: (1) prepare for and attend the Final Approval Hearing, including the research and drafting of the reply papers and response to objectors, if any; (2) oversee the claims administration process, including addressing any claim review issues and monitoring payments to the Settlement Class Members; (3) handle any appeals; (4) disburse any service award and Plaintiff's Counsel's fees and expenses; and (5) oversee the *cy pres* administration, if any Settlement Funds remain. Often, responding to objectors involves obtaining written discovery, deposition testimony, or both from the objectors. And if there are appeals, hundreds of thousands of dollars of additional attorney time may be incurred in post-judgment motions (such as appeal bond requests) and in defending the Settlement on appeal to the Ninth Circuit. None of this additional time will be compensated. Yet, as Plaintiff's Counsel's lodestar inevitably increases, the multiplier will decrease, all of which further supports the reasonableness of the requested fee award. Accordingly, the requested, modest multiplier is justified in light of the contingent nature of this action, the excellent results achieved, the work performed to date, and the significant amount of additional work Class Counsel will have to undertake in the future.

### 3. An Enhancement Is Reasonable

#### a. The Results Obtained

In determining the reasonableness of attorney fees, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *Glendora*, 155 Cal.

---

unreasonable in light of the extensive litigation … and other time-intensive tasks"); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. 07-2633, 2008 U.S. Dist. LEXIS 110460, at *10-11 (C.D. Cal. Sept. 22, 2008); *Hemphill v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion); s*ee also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's reliance on time summaries of counsel proper). This is particularly true when the lodestar method is used as cross-check to the percentage method. *See Laffitte*, 1 Cal. 5th at 505; *Spann*, 211 F. Supp. 3d at 1265 (same).

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00128320

App. 3d at 475; *Lealao*, 82 Cal. App. 4th at 40. In the legal marketplace, law firms that obtain good results for their clients can and do expect that those results will be reflected in their fees. Here, Plaintiff's Counsel were able to efficiently settle the litigation and obtain a non-reversionary benefit of $4.3 million, which constitutes 74% of the Challenged Payments at issue. Class Notice is being mailed directly to individuals in the Settlement Class, and the Settlement Awards will be sent directly without requiring a claim form. Meanwhile, no more collection efforts will be made. Thus, the results achieved strongly support the multiplier of 1.41 based on Plaintiff's Counsel's lodestar.

### b.    Contingent Nature of the Fee and Ongoing Work

When attorneys undertake litigation on a contingent basis, a fee that is limited to the hourly fee that would have been paid by the fee-paying client, win or lose, is not a reasonable fee by market standards. *Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418, 428-29 (2002). As *Ketchum* recognizes, without the incentives of a premium for risk, most attorneys will not accept cases on a contingency basis:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Ketchum*, 24 Cal. 4th at 1132 (quoting Posner, *Economic Analysis of Law* at 534, 567 (4th ed. 1992)). *See also Rader v. Thrasher*, 57 Cal. 2d 244, 253 (1962). Risk multipliers, therefore, are "intended to approximate market-level compensation for ... services, which typically includes a premium for risk of nonpayment or delay in payment[.]" *Ketchum*, 24 Cal. 4th at 1138. Likewise, in *Lealao*, the court held that the trial court has the discretion to use a multiplier as "necessary to ensure that the fee awarded is within the range of fees freely

BLOOD HURST & O'REARDON, LLP

27    Case No. 3:15-cv-01666-DMS-KSC

00128320

BLOOD HURST & O'REARDON, LLP

negotiated in the legal marketplace in comparable litigation." 82 Cal. App. 4th at 50. In short the multiplier used should generally result in a fee comparable to that appropriate under the percentage method. *Id*. at 47 ("Given the unique reliance of our legal system on private litigants to enforce substantive provisions of the law through class ... actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated ... in the legal marketplace ...."). *See also Chavez*, 162 Cal. App. 4th at 64-65 (to establish a benchmark for the enhanced lodestar, courts look to the percentage of the settlement value that the enhanced fee would represent).

From the outset of this litigation to the present, Plaintiff's Counsel litigated this matter on a contingent basis and placed at risk their own resources to do so. Because the fee in this matter was entirely contingent, the only certainty was that Plaintiff's Counsel would not get paid unless they obtained a successful result. Absent this Settlement, there was a sizeable risk that Plaintiff, the Settlement Class, and their counsel would obtain no recovery at all. Indeed, there was no guarantee that Plaintiff would succeed on class certification, summary judgment, trial or appeal. At no time have Defendants conceded liability, the appropriateness of class certification, or the availability of relief. *See* Settlement, §I.C. Despite this uncertainty, Plaintiff's Counsel obtained an excellent result on behalf of the Settlement Class.

Moreover, Class Counsel's work is not yet done, as set forth above. *See supra*, §VI.B.2.

### c. Skill Displayed and the Prompt Resolution

The difficulty and complexity of the action and the quality of counsel's skill in meeting the difficulties are additional factors that support a lodestar enhancement. *Priest*, 20 Cal. 3d at 49; *Ketchum*, 24 Cal. 4th at 1138. In addition, the Court should consider if counsel obtained a favorable result with less effort or more promptly than might be expected. *Lealao*, 82 Cal. App. 4th at 52 ("The

28                   Case No. 3:15-cv-01666-DMS-KSC

00128320

promptness of settlement cannot be used to justify the refusal to apply a multiplier to reflect the size of the class recovery without exacerbating the disincentive to settle promptly inherent in the lodestar methodology.").

Prosecuting consumer class actions such as this one requires counsel with experience in class action litigation, and consumer protection laws. Here, Class Counsel have extensive experience in these areas. Class Counsel's practice focuses exclusively on plaintiff's class actions, including cases involving unfair and deceptive lending practices. Similarly, the other counsel for Plaintiff each have significant experience in class actions generally and mortgage lending actions in particular. Plaintiff's Counsel's collective experience and expertise gained in other unfair practices actions and class settlements contributed to counsel's ability to research, identify and focus on the critical legal and factual issues in the Action, and to quickly and efficiently resolve the claims without further litigation. *See* Blood Final Approval Decl., Ex. A (BHO Resume); Forde Final Approval Decl., ¶¶10-14; Fredman Final Approval Decl., Ex. A (Law Office of Peter Fredman, Firm Resume); *Corvello v. Wells Fargo Bank, NA*, No. 10-cv-05072-VC (N.D. Cal.) (Class Counsel and Peter Fredman litigated *Corvello*, which involved deceptive mortgage modification practices and is pending final settlement approval after a successful class certification motion and a successful appeal to the Ninth Circuit resulting in widely cited published opinion); *Dolfo v. Bank of Am.*, No. 11-CV-28280DMS (BGS) (S.D. Cal.) (Class Counsel and Hoffman & Forde litigated *Dolfo*, which involved deceptive lending practices and settled on a classwide basis after a successful motion for class certification).

Finally, the skill and competence of opposing counsel should be considered and cannot be doubted. *See*, *e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (noting that plaintiff's counsel faced "established and skillful defense lawyers"). Defendants are represented by

BLOOD HURST & O'REARDON, LLP

00128320

a team of experienced attorneys from Stroock & Stroock & Lavan LLP, a firm skilled in class action defense. The Stroock team was headed by Julia Strickland and Benjamin Diehl, experienced litigators whose practices focus on defending financial services companies in complex class actions.

### d.      Benefits to the Public

The public interest served by this Action also supports the enhancement sought. *State*, 174 Cal. App. 3d at 1073; *Lealao*, 82 Cal. App. 4th at 41 ("""[T]his kind of consumer class action litigation would not be pursued by counsel but for the expectation of receiving enhanced fee awards in successful cases.""" (internal citations omitted)). The California Supreme Court has found that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971). As stated in *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 156-57 (2005) (quoting *Amchem*, 521 U.S. at 617): """"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."""

Plaintiff alleges that Defendants unlawfully collected over $4 million from California borrowers. And yet, those Settlement Class Members who did make post-lien release payments paid only a small amount, which could not support individual litigation. Indeed, many Settlement Class Members did not make any Challenged Payments. Without commensurate fee awards, the incentive to undertake such risky consumer litigation will be lost.

### C.      Plaintiff's Expenses Are Reasonable and Compensable

The Ninth Circuit and California state courts allow recovery of pre-settlement litigation costs in the context of class action settlements. *See Staton v.*

BLOOD HURST & O'REARDON, LLP

00128320

*Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); *Priest*, 20 Cal. 3d at 35; *Rider v. San Diego*, 11 Cal. App. 4th 1410, 1423 n.6 (1992); *see also* H. Newberg & A. Conte, *Newberg on Class Actions* §12.08, at 50-51 (2d ed. 1993). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Plaintiff's Counsel have submitted declarations attesting to the expenses incurred in this Action—in the aggregate, $22,475.28 was invested over the two years spent on this litigation.[10] Class Counsel, and as detailed in their declarations, Plaintiff's Counsel, incurred these costs for, *inter alia*, mediation fees, electronic litigation database support, filing and service expenses, travel, computer research, photocopies, postage, and telephone charges. All of these expenses were reasonably and necessarily incurred, and are of the sort that would typically be billed to paying clients in the marketplace. *See In re Hydroxycut*, 2014 U.S. Dist. LEXIS 162106, at *193 (awarding reimbursement for "filing fees, photocopies, postage, telephone charges, computer research, mediation fees, and travel" because they are "the types of expenses routinely charged to paying clients"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1177-78 (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Beane v. Bank of N.Y. Mellon*, No. 07 Civ. 09444 (RMB), 2009 U.S. Dist. LEXIS 27504, at *25-26 (S.D.N.Y. Mar. 31, 2009) (awarding as "properly chargeable to

---

[10]   *See* Blood Final Approval Decl., ¶13; Forde Final Approval Decl., ¶16; Fredman Final Approval Decl., ¶6. This requested amount is approximately $5,000 less than the estimate appearing in the Class Notice.

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00128320

the Settlement Fund" because they "are the type for which the paying, arms' length market reimburses attorneys" reimbursement for court fees, photocopying and reproduction, deposition transcripts, postage and messenger services, transportation and lodging, telephone bills, and expert and electronic litigation database support). Accordingly, Class Counsel's application for an award providing reimbursement of $22,475.28 in expenses should be approved.

### D.     The Class Representative Service Award Should Be Approved

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958 (citing 4 William B. Rubenstein, et al., *Newberg on Class Actions* §11:38 (4th ed. 2008); *see also Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010) (same). The Ninth Circuit recognizes that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Edwards v. National Milk Producers Federation*, No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214, at *42 (N.D. Cal. June 26, 2017) ("Service awards for class representatives are provided to encourage individuals to undertake the responsibilities of representing the class and to recognize the time and effort spent on the case."). Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Class Counsel respectfully request that the Court approve a service award of $5,000 to the Class Representative in recognition of her contributions toward the successful prosecution of this litigation. Plaintiff Terry has devoted substantial time and effort to this Action, including providing written responses

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00128320

to discovery requests, checking for and providing requested documents, assisting in our pre-filing investigation, participating in the ENE with Judge Crawford, participating in periodic telephone conferences and exchanging correspondence with Plaintiff's Counsel, and reviewing and approving pleadings, including the complaint and the Settlement Agreement. Plaintiff was prepared and committed to devoting substantial additional time to the Action, including testifying at deposition or trial. *See* Declaration of Carmen Terry in Support of Application for Service Award; *see also* Blood Preliminary Approval Decl., ¶11. Further, Defendants do not oppose the payment of the service award. SA, §III.K.

The requested service award falls squarely in line with amounts awarded in comparable cases. For instance, affirming $5,000 service awards to each of nine class representatives, the Ninth Circuit observed that "[t]he amount sought and awarded was relatively small, well within the usual norms of modest compensation paid to class representatives for services performed in the class action." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015); *see also*, *e.g.*, *Faigman v. AT&T Mobility, LLC*, No. C06-04622 MHP, 2011 U.S. Dist. LEXIS 15825, at *15 (N.D. Cal. Feb. 16, 2011) ("incentive payments of $5,000 are presumptively reasonable"); *In re Simon v. Toshiba America*, No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501, at *12-13 (N.D. Cal. Apr. 30, 2010) (same); *In re Mego*, 213 F.3d at 457, 463 (approving $5,000 incentive awards); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-cv-2578-DHB, 2017 U.S. Dist. LEXIS 75439, at *48 (S.D. Cal. May 15, 2017) ($5,000 incentive award "is consistent with the amount courts typically award as incentive payments"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class) (compiling cases); *Van Vranken*, 901 F. Supp. at 300 (approving service award of $50,000); *Edwards*, 2017 U.S. Dist. LEXIS 145214, at *42-43 ("the

BLOOD HURST & O'REARDON, LLP

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

requested awards of $5,000 each are well within the usual norms of modest compensation paid to class representatives").

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court confirm certification of the Settlement Class, grant final approval of the Settlement, and approve Class Counsel's application for attorneys' fees and expenses and a service award for the Plaintiff.

Respectfully submitted,

Dated: November 21, 2017

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:          *s/  Timothy G. Blood*
               TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

HOFFMAN & FORDE,
    ATTORNEYS AT LAW
DANIEL FORDE (248461)
SCHUYLER HOFFMAN (255632)
ERICA J. SULLIVAN (306466)
3033 Fifth Avenue, Suite 225
San Diego, CA  92103
Tel: 619/546-7880
619/546-7881 (fax)
dforde@hoffmanforde.com
shoffman@hoffmanforde.com
esullivan@hoffmanforde.com

LAW OFFICE OF PETER FREDMAN
PETER B. FREDMAN (189097)
125 University Ave., Suite 102
Berkeley, CA  94710
Tel: 510/868-2626
510/868-2627 (fax)
peter@peterfredmanlaw.com

*Attorneys for Plaintiff*

MEMO ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

00128320

BLOOD HURST & O'REARDON, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 21, 2017.

*s/ Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP

00128320