# Exhibit G

Eric H. Gibbs (SBN 178658)
Dylan Hughes (SBN 209113)
David M. Berger (SBN 277526)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: ehg@girardgibbs.com

*Plaintiffs' Interim Lead Class Counsel*

[Additional Plaintiffs' Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Adobe Systems Inc. Privacy Litigation* | Lead Case No. 5:13-cv-05226-LHK |
| | [Consolidated with Case Nos. 13-cv-05596-LHK, 13-cv-05611-LHK, 13-cv-05930-LHK, 14-cv-00014-LHK, 14-cv-00030-LHK, and 14-cv-00157-LHK] |
| | **PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY FEES** |
| | Date: August 13, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on August 13, 2015, at 1:30 pm, in Courtroom 8, 4th Floor of this Court, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs will and hereby do move this Court for an order approving the attorney fee provision of their Settlement Agreement with Defendant Adobe Systems Inc.

Plaintiffs' motion is made in connection with their previously-filed motion for an order approving their voluntary dismissal of putative class claims pursuant to the Settlement Agreement, and pursuant to the Court's Order of June 10, 2015. The motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declaration of Eric H. Gibbs, the pleadings and papers on file herein, including the papers previously filed by Plaintiffs in support of their motion for voluntary dismissal of class claims, and such other matters as may be presented to the Court at the time of the hearing.

Dated: June 24, 2015       Respectfully Submitted

             **GIRARD GIBBS LLP**


             By: */s/* Eric H. Gibbs

             Eric H. Gibbs
             Dylan Hughes
             David M. Berger
             601 California Street, 14th Floor
             San Francisco, California 94108
             Telephone: (415) 981-4800
             Facsimile: (415) 981-4846
             Email: ehg@girardgibbs.com

             *Plaintiffs' Interim Lead Class Counsel*

             [Additional Plaintiffs' Counsel Listed on Signature Page of
             Attached Memorandum of Points and Authorities]

PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF PUTATIVE CLASS CLAIMS
CASE NO. 5:13-cv-05226-LHK

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    **INTRODUCTION**

Plaintiffs previously moved to dismiss putative class claims in this case pursuant to an individual settlement they have reached with Adobe, which will better secure class members' data through a number of improved security measures but will not bind class members in any way.  (ECF No. 87.)  The Court has preliminarily reviewed that motion and asked that Plaintiffs provide additional information so that it may evaluate the attorney fee provision in the parties' settlement.  (6/10/15 Order [ECF No. 90].)  To respond to the Court's request, Plaintiffs have provided the Court with their contemporaneous billing records.  (Gibbs Decl., Ex. 1).  They have also provided the Court with a detailed summary for each of eight phases of the litigation, describing generally what was happening in the case at the time, listing the primary tasks accomplished, and providing hours and lodestar figures for each of the attorneys and paralegals who worked on the case during that time period.  (*Id.*, ¶¶ 8-33.)  Finally, Plaintiffs have provided the Court with a summary table that lists the total hours, billing rates, and total lodestar for each of the attorneys and paralegals who contributed to the litigation.  (*Id.*, ¶ 34.)  The table also lists the first date that each attorney was admitted to practice law, with additional information about the attorneys' backgrounds available in the attached firm resumes.  (*Id.*, Exs. 3-8.)  Plaintiffs will further supplement their showing if the Court would like additional information, would like the information provided in a different format, or would prefer the contemporaneous billing records sorted by timekeeper.

The standard under which a fee provision in an non-class settlement should be evaluated is not well settled, but in class settlements, courts evaluate fee provisions to ensure they do not provide for fees "distinctly higher" than the amount counsel conceivably could have recovered through a contested motion.  Plaintiffs believe that the information they have provided the Court confirms that Adobe is not overpaying counsel in exchange for a favorable resolution of class claims.  They therefore request that the Court approve the attorney fee provision in the parties' settlement agreement, and grant Plaintiffs' request to dismiss putative class claims without prejudice.

PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF PUTATIVE CLASS CLAIMS
CASE NO. 5:13-cv-05226-LHK

## II. STATEMENT OF ISSUES TO BE DECIDED

(1)     Whether the attorney fees that Adobe has agreed to pay Plaintiffs as part of their individual settlement is "distinctly higher" than any fee award that Plaintiffs conceivably could have obtained through a contested motion; and

(2)     Whether, as a result, the fee provision in the parties' settlement indicates that counsel has conceded the putative class interests for their own benefit (one of the factors the courts in this District have considered before granting voluntary dismissals of putative class claims).

## III. LEGAL ANALYSIS

### A.     The Standard for Approval of Plaintiffs' Attorney Fees

The degree to which an attorney fee provision should be scrutinized when a putative class action is settled on an individual basis remains an open question.  Prior to the 2003 Amendments to Rule 23, the Ninth Circuit's opinion in *Diaz v. Trust Territory of Pacific Islands* controlled and courts within this circuit were required to approve individual settlements (including any fee provisions within those settlements) pursuant to Rule 23(e).  *Diaz*, 876 F.2d 1401, 1408 (9th Cir. 1989).  The standard of review was more relaxed than if class claims were being released, but courts still needed to ensure that the individual settlement was not collusive or otherwise prejudicial to class members.  *Id.*

The 2003 Amendments to Rule 23 arguably abrogated *Diaz*.  The new rule required court approval only if claims of a "certified class" were being resolved, and was designed specifically to address cases like *Diaz* that had read the old language "to require court approval of settlements with putative class representatives that resolved only individual claims." Fed. R. Civ. P. 23 Advisory Committee Note to the 2003 Amendments.  Accordingly, most courts no longer approve (or disapprove) individual settlements entered in class actions.  The courts within this district are an exception, however.  While recognizing "'some uncertainty' about the continued application of Rule 23(e) to pre-certification settlement proposal in the wake of the 2003 amendments," the Northern District's decisions have "'generally assumed that it does' apply" and continue to follow *Diaz*. *Richards v. Safeway Inc*., No. 13-CV-04317-JD, 2015 WL 163393, at *2 (N.D. Cal. Jan. 12, 2015) (quoting *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2012 WL 5940846, at *1, n.1 (N.D. Cal. Nov. 27, 2012)).

3

PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF PUTATIVE CLASS CLAIMS
CASE NO. 5:13-cv-05226-LHK

In their prior motion, Plaintiffs recognized that the trend in this district is to review voluntary dismissals using the *Diaz* factors and proceeded accordingly. Plaintiffs also acknowledged that as one of the *Diaz* factors inquires whether class counsel have compromised class interests to benefit themselves, it is fair to evaluate the amount of attorney fees Adobe is paying under the parties' individual settlement. The Court apparently agrees and has asked for more information so that it can better assess the parties' fee provision. The question remains, however, to what degree is the Court required to scrutinize Plaintiffs' fee records before dismissing putative class claims. The answer may be that *Diaz* no longer applies within this circuit and so no scrutiny is required at all. But assuming *Diaz* does apply, the decisions that have applied its factors have said little to nothing about attorney fees. *See, e.g., Richards*, 2015 WL 163393 at \*2; *Lyons*, 2012 WL 5940846 at \*2; *Tombline v. Wells Fargo Bank, N.A.*, No. 13-CV-04567-JD, 2014 WL 5140048, at \*3 (N.D. Cal. Oct. 10, 2014).

Ordinarily, when fee provisions are scrutinized under Rule 23(e), "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003). The proper amount of fees is often open to reasonable dispute and the reason parties usually agree to a fee provision in the first place is to avoid litigation over that amount—with all the risk and uncertainty that fee litigation entails. A court's primary concern, then, is to ensure that the amount provided for in the settlement agreement is not "distinctly higher than the fees class counsel *could* have been awarded by the district court using the lodestar method." *Id.* (emphasis added). If the settlement calls for attorney fees outside the upper bounds of what class counsel conceivably could have received through a contested motion, then it stands to reason that class counsel must have traded the class's rights for that higher fee. The entire settlement should therefore be considered suspect and approval denied.

Although the Court in this case is faced with an individual settlement rather than a class settlement, a similar rationale applies. Assuming that *Diaz* continues to control, the central purpose of the Court's inquiry is to "determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice absent putative members." *Richards*, 2015 WL 163393 at \*2; *Lyons*, 2012 WL 5940846 at \*2. If anything, the standard of review is lower than it would be in a class settlement, as under *Diaz*, the "court does not need to perform the kind of substantive oversight required when

4

reviewing a settlement binding on the class." *Diaz*, 876 F.3d at 1408; *see also Richards* 2015 WL 163393 at \*2 (finding that review using the *Diaz* factors strikes a balance between a full-bore fairness review and no review at all). But whether the Court uses the *Staton* standard or a somewhat lower standard, Plaintiffs believe that the attorney fees at issue here fall within the range of approval.

### B. The Parties' Negotiated Fee Is Within the Range of Fees that Could Have Been Awarded Through a Contested Fee Motion.

If the parties had not agreed to a fee through mediation with Judge Infante (and had Adobe been willing to agree to finalize the settlement without an agreement on fees), Plaintiffs would have moved for fees under California's private attorney general statute. Plaintiffs qualify for a fee award under that statute because (i) they succeeded in enforcing an important right affecting the public interest (namely, the consuming public's right to privacy and interest in reasonable data security); (ii) a significant benefit has been conferred on the large swath of the general public who use Adobe products and whose private information will now be safeguarded using reasonable security measures; (iii) private enforcement of Adobe's security lawsuit is not financially feasible without the incentive provided by an attorney fee award; and (iv) there is no recovery from which Plaintiffs' attorney fees could otherwise be paid. Cal. Code Civ. Proc. § 1021.5; *see also Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 565 (2004) ("the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.")

Under California's private attorney general statute, Plaintiffs' fee would have been calculated using the lodestar-multiplier method. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001). The Court would have first calculated a lodestar based on a "careful compilation of the time spent and reasonable hourly compensation for each attorney involved in the presentation of the case." *Id.* at 1132. It then could have adjusted the lodestar figure by applying a multiplier, the primary purpose of which is to compensate counsel for prosecuting the case on a contingent basis. *Id.* at 1132-33. Other factors, such as the difficulty of the case and the skill displayed by counsel are also occasionally taken into account. *Id.* at 1138-39.

To ensure that the fees Adobe has agreed to pay Plaintiffs are not "distinctly higher than the fees class counsel could have been awarded … using the lodestar method," *Staton*, 327 F.3d at 966, the

5

Court should therefore assess (i) the time counsel billed to the case, to confirm that it was reasonably spent and not padded through excessive or duplicative efforts; (ii) the hourly rates used for each attorney or paralegal on the case, to confirm they are in line with the prevailing hourly rates in the community; and (iii) whether the resulting multiplier is within the range of multipliers that could have been awarded to compensate counsel for contingency risk.

### 1. Counsel's Hours Have Been Reduced to Avoid Duplication and Are Supported by the Time Records and Summaries Provided to the Court.

To assist the Court in evaluating the reasonableness of the time spent on this case, Plaintiffs have divided the litigation into the following eight time periods.

| | Time Period | Description | Hours | Lodestar |
|---|---|---|---|---|
| **A.** | 10/8/13 - 11/11/13 | Initial investigation to filing of first complaint | 78.1 | $33,868 |
| **B.** | 10/15/13 - 3/13/14 | Other case filings through appointment of lead counsel (non-lead counsel only) | 632.4 | $333,950 |
| **C.** | 11/12/13 - 3/13/14 | Work by lead counsel prior to appointment | 238.4 | $110,840 |
| **D.** | 3/14/14 - 9/4/14 | Appointment of lead counsel through Motion to Dismiss ruling | 461.8 | $238,347 |
| **E.** | 9/5/14 - 10/24/14 | Discovery through Adobe's initial document production | 336.1 | $173,740 |
| **F.** | 10/25/14 - 12/3/14 | Document review through first mediation | 535.6 | $257,657 |
| **G.** | 12/4/14 - 2/10/15 | First mediation through signing of MOU | 555.6 | $276,508 |
| **H.** | 2/11/15 - Present | Signing of MOU through approval motions | 334.2 | $190,993 |
| **Total Time** | | | **3,172.2** | **$1,615,901** |
| **Lead Counsel and Post-Appointment Time Only** | | | **2,539.8** | **$1,281,952** |

6

In the accompanying declaration of Eric Gibbs, counsel briefly discusses what was happening in each time period, lists the major tasks that were accomplished during that phase in the litigation, and charts the hours and lodestar figures reported by each of the attorneys and paralegals who worked on the cases during the time period. (Gibbs Decl., ¶¶ 4-33.) Plaintiffs believe this detailed summary will be more helpful to the Court in assessing their time and contributions than would combing through daily records, and that it is sufficient to justify a fee award under California law. *See also Winterrowd v. Am. Gen. Annuity Ins. Co.,* 556 F.3d 815, 827 (9th Cir. 2009) (when awarding fees under a California fee-shifting statute, "[t]estimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees"). Nevertheless, should the Court wish to look more closely at any aspect of counsel's time, Plaintiffs have also submitted the daily time records kept by each of attorney and paralegal who worked on the case. (*See* Gibbs Ex. 1.)

Any time multiple cases are filed by firms working independently, there is bound to be a degree of duplication. To ensure that duplicative efforts are not included in the lodestar, Plaintiffs have removed all but lead counsel's time prior to the Court's consolidation of the cases—reducing the overall lodestar from $1.62 million to $1.28 million. (Gibbs Decl., ¶¶ 7, 34.) Not all of this time was duplicative: Pritzker Levine, for example, identified and consulted with a data security expert who Plaintiffs continued to rely upon throughout the case, and other firms uncovered facts and performed legal research that was used to prepare the consolidated complaint. But by removing this pre-consolidation time (in other words, all of Time Period B's hours and lodestar in the chart above), Plaintiffs can be sure that they are erring on the side of efficiency and not including potentially duplicative time.

When the cases were formally consolidated, the Court appointed Girard Gibbs to serve as Interim Lead Class Counsel and directed that other Plaintiff firms submit their contemporaneous billing records to lead counsel for review on a monthly basis. That leadership structure has worked well to avoid duplication, while also ensuring that Plaintiffs could call on Executive Committee members when needed. Lead counsel accounted for $984,000 and 77% the overall lodestar, with the common-benefit work performed by other firms limited to discrete and useful tasks, as described in more detail in Mr. Gibbs' declaration. (*See* Gibbs Decl., ¶¶ 14, 18, 23, 28, 33.) The supporting declaration also describes

7

and charts how the work was allocated within Girard Gibbs, with the end-result that only a few attorneys accounted for the majority of the time spent on the case during each respective phase of litigation. (*See id.*, ¶¶ 6, 11, 13, 17, 22, 27, 33.)

### 2. Counsel's Hourly Rates Fall Within the Range of Rates Prevailing in the Community and Have Been Previously Approved.

At the conclusion of Mr. Gibbs' declaration, Plaintiffs have provided the Court with a summary table that lists the total hours, hourly billing rates, and resulting lodestar for each attorney or paralegal who contributed to the litigation (support staff also contributed, but counsel categorizes their time as firm overhead and does not bill it to individual cases). (*See* Gibbs Decl., ¶ 34.) The table also includes the date that each attorney was first admitted to practice law, and further information about individual attorneys can be found in the firm resumes attached to Mr. Gibbs' declaration.

Lead counsel's hourly rates range from $395-$695 for partners, $365-$395 for associates, and $190-$220 for paralegals, while the rates billed by Executive Committee firms range from $510-$775 for partners, $300-$425 for associates, and $185-$200 for paralegals. These rates are set by counsel based on their own experience in the field, periodic review of the rates charged by other attorneys involved in complex litigation, and survey results published by trade periodicals like the National Law Journal, and fall within the range of rates prevailing in the relevant legal community. *See In re Magsafe Apple Power Adapter Litig.,* No. 5:09-CV-01911-EJD, 2015 WL 428105, at \*12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240") (collecting cases).

In addition, lead counsel's hourly rates have been regularly evaluated by both federal and state courts throughout California and approved as reasonable. *See, e.g., In re Hyundai and Kia Fuel Economy Litig.*, No. 2:13-ml-024240-GW, ECF No. 437 (C.D. Cal. March 19, 2015); *Skold v. Intel Corp.*, No. 1-05-CV-039231, Online Dkt. No. 589 (Cal. Super. Ct., Santa Clara Cty. Jan. 29, 2015); *Shurtleff v. Health Net of California, Inc*., No. 34-2012-00121600, Dkt. # 124, ¶ 6 (Cal. Super. Ct., Sacramento Cty. June 24, 2014); *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation,* No. 09-MD-02032-MMC, ECF No. 386, ¶ 9 (N.D. Cal. Nov. 19, 2012); *Sugarman v. Ducati N. Am., Inc*.,

PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF PUTATIVE CLASS CLAIMS
CASE NO. 5:13-cv-05226-LHK

No. 5:10-CV-05246-JF, 2012 WL 113361, at \*6 & n.7 (N.D. Cal. Jan. 12, 2012). And members of the Executive Committee likewise have had their rates scrutinized and approved by California courts. *See, e.g., In Re: Sony Gaming Networks and Customer Data Security Breach Litig*., MDL No.: 3:11-MD-02258-AJB-MDD, ECF No. 211 (S.D. Cal. May 4, 2015) (Grant & Eisenhofer); *In re Transpacific Air Passenger Antitrust Litigation*, No. 07-cv-05634-CRB, ECF No. 1009 (N.D. Cal. May 26, 2015) (Pritzker Levine); *Dennis v. Kellogg Co.,* No. 09-cv-1786-L, 2013 U.S. Dist. LEXIS 163118, at \*22-23 (S.D. Cal. Nov. 14, 2013) (Blood Hurst & O'Reardon).

### 3. Counsel's Effective Multiplier Is Below That Typically Awarded In Contingent Litigation.

Under the parties' settlement, Adobe will pay $1.18 million to resolve counsel's claims for attorney fees and costs. Counsel incurred $46,637 in litigation expenses to prosecute this case, so approximately $1.13 million can be allocated solely to attorney fees. (*See* 6/13/15 Gibbs Decl. [ECF No. 86-5], ¶ 10.) A $1.13 million fee amounts to an effective multiplier of 0.88 on Plaintiffs' already-reduced lodestar (as explained above, Plaintiffs removed the Executive Committee's pre-appointment time from the lodestar; while doing so eliminates duplicative efforts, it also eliminates the independent efforts that benefited the overall litigation). In other words, under the agreement counsel will receive less than their reduced lodestar. The upper range of what Plaintiffs could have received through a contested fee motion is significantly higher. Multipliers in complex contingency fee matters under California law "can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 255 (2001). In fact, it would be unusual not to award counsel a fee equal to or higher than their internally reviewed and adjusted lodestar. *See Rodriguez v. W. Publ'g Corp.,* No. 13-55222, 2015 WL 1063949, at \*2 (9th Cir. Mar. 12, 2015) (reversing district court's application of a 0.75 multiplier); *Gutierrez v. Wells Fargo Bank, N.A.,* No. C 07-05923 WHA, 2015 WL 2438274, at \*7 (N.D. Cal. May 21, 2015) (citing *Wershba* and noting that "it would be unusual not to apply a risk multiplier" in a contingency case that carried a true risk of non-payment).

Even if only lead counsel's lodestar is taken into account, the effective multiplier would be only 1.15, which doesn't take into account lead counsel's ongoing responsibilities under the settlement. Again, a multiplier of that magnitude is comfortably below what a court might conceivably award in a

9

contested motion, and so under *Staton* and *Diaz,* the fee provision in the parties' settlement should raise no concern of collusion. The amount Adobe has agreed to pay counsel represents an arm's-length negotiation of a legitimate claim to fees, and not a collusive deal where class interests were sold short in exchange for an inflated fee payment.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve the attorney fee provision of their non-class settlement with Adobe and grant Plaintiffs' request to voluntarily dismiss putative class claims without prejudice.

Dated: June 24, 2015

Respectfully Submitted

**GIRARD GIBBS LLP**

By:   */s/* Eric H. Gibbs

Eric H. Gibbs
Dylan Hughes
David M. Berger
601 California Street, 14th Floor
San Francisco, California 94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846
Email:  ehg@girardgibbs.com

*Interim Class Counsel*

Elizabeth C. Pritzker
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
Email:  ecp@pritzkerlevine.com

10

PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF PUTATIVE CLASS CLAIMS
CASE NO. 5:13-cv-05226-LHK

Shehnaz M. Bhujwala
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367
Telephone: (818) 340-5400
Facsimile: (818) 340-5401
Email:  bhujwala@boucher.la

Todd M. Friedman
Nicholas J. Bontrager
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
369 S. Doheny Drive, Suite 415
Beverly Hills, California 90211
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
Email: tfriedman@attorneysforconsumers.com

Timothy G. Blood
Thomas J. O'Reardon, II
Paula M. Roach
**BLOOD HURST & O'REARDON LLP**
701 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
Email:  tblood@bholaw.com

Gary E. Mason
**WHITFIELD BRYSON & MASON LLP**
1625 Massachusetts Avenue, NW, Suite 605
Washington, D.C. 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email:  gmason@wbmllp.com

Adam J. Levitt
Edmund S. Aronowitz
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
Email:  alevitt@gelaw.com

*Plaintiffs' Executive Committee*

11

PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL OF PUTATIVE CLASS CLAIMS
CASE NO. 5:13-cv-05226-LHK