Exhibit H

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
  (CA 203111; AZ 020191)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
frank@piscitellilaw.com

Attorneys for Plaintiffs

[Additional Counsel Appear on Signature Page.]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Others Similarly Situated, | Case No.: 3:09-CV-01786-IEG(WMC) |
|---|---|
| Plaintiffs, | CLASS ACTION |
| v. | PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| KELLOGG COMPANY, a Delaware Corporation, | Date: September 9, 2013<br>Time: 10:30 a.m.<br>Courtroom: 4D |
| Defendant. | Judge: Hon. Irma E. Gonzalez |

Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

00061368

BLOOD HURST & O'REARDON, LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................... 1

II. HISTORY OF THE LITIGATION ................................................... 4

    A. The Initial Settlement ............................................................. 4

    B. The Ninth Circuit Opinion ...................................................... 7

    C. The Current Settlement ........................................................... 8

III. SETTLEMENT TERMS .................................................................. 12

    A. The Settlement Class .............................................................. 12

    B. Relief to Settlement Class Members ...................................... 12

        1. Cash Refund ................................................................. 12

        2. Injunctive Relief .......................................................... 13

        3. Residual Settlement Funds Will Not Revert To Defendant ..................................................................... 14

    C. Notice and Administration Costs, Attorneys' Fees and Expenses and Plaintiff Service Awards ................................. 16

    D. The Class Notice Program ..................................................... 17

IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT .......................................................... 21

    A. The Settlement Was Reached After Serious, Informed and Non-Collusive Arms-Length Negotiations and Mediation ............. 22

    B. The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Final Approval ...................................................................... 24

    C. The Risk, Complexity, Expense, and Duration of the Litigation Favor Final Approval .......................................... 25

    D. The Substantial Relief Provided by the Settlement Favors Final Approval ...................................................................... 27

    E. The Stage of the Proceedings Favors Approval ..................... 28

    F. The Experience and Views of Counsel Favor Approval ........ 29

    G. The Reaction of the Class Members Favors Final Approval ......... 30

BLOOD HURST & O'REARDON, LLP

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

00062398

V. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .......................................................................................... 31

    A. The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a) .................................................. 32

        1. Numerosity ............................................................... 33

        2. Commonality ............................................................. 33

        3. Typicality ................................................................. 34

        4. Adequacy of Representation .................................... 35

    B. The Class Should Be Approved Under Federal Rule of Civil Procedure 23(b)(3) .................................................................. 36

        1. Common Questions Predominate Over Individual Issues ....................................................................... 37

        2. A Class Action is the Superior Method to Settle This Controversy .............................................................. 38

VI. NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS .............................................. 39

VII. PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE APPROVED ......................................................................... 42

    A. Fees and Expenses Totaling 25% of the Settlement Fund Are Reasonable ................................................................... 42

    B. The Lodestar/Multiplier Crosscheck .................................... 45

        1. The Hourly Rates are Reasonable .......................... 47

        2. The Hours Expended Are Reasonable .................... 49

    C. Plaintiffs' Expenses Are Reasonable and Compensable ................ 50

    D. The Service Awards Are Reasonable .................................... 51

VIII. CONCLUSION .................................................................... 52

BLOOD HURST & O'REARDON, LLP

00057068

ii      Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abzug v. Kerkorian,*
No. CA-000981 (L.A. Super. Ct. 1990) ........................................................ 44

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) .......................................................... 32, 36, 37, 39

*Anderson v. Nextel Retail Stores, LLC,*
No. CV 07–4480–SVW, 2010 U.S. Dist. LEXIS 43377
(C.D. Cal. Apr. 12, 2010) ............................................................... 24

*Andrews v First Interstate Bank of California,*
No. 953575 (S.F. Super. Ct. 1997) ............................................... 44

*Beck-Ellman v. Kaz USA, Inc.,*
283 F.R.D. 558 (S.D. Cal. 2012) ................................................ 33

*Bell v. Farmers Ins. Exch.,*
115 Cal. App. 4th 715 (2004) ..................................................... 44

*Buccellato v. AT&T Operations, Inc.,*
No. 10-463, 2011 U.S. Dist. LEXIS 85699
(N.D. Cal. June 30, 2011) ............................................................ 47

*In re Cal. Indirect Purchases,*
No. 960886, 1998 WL 1031494
(Alameda Super. Ct. Oct. 22, 1998) ............................................ 44

*In re Cal. Indirect-Purchaser Infant Formula Antitrust Class Action Litig.,*
J.C.C.P. No. 2557 (L.A. Super. Ct. 1993) ................................... 44

*In re Cal. Indirect-Purchaser Plasticware Antitrust Litig.,*
Nos. 961814, 963201 and 963590 (S.F. Super. Ct. 1995) ............ 44

*Center for Biological Diversity v. County of San Bernardino,*
195 Cal. App. 4th 866 (2010) ..................................................... 46

*Chavez v. Netflix, Inc.,*
162 Cal. App. 4th 43 (2008) ................................................. 44, 49

BLOOD HURST & O'REARDON, LLP

00062398

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................... 24, 30

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........................................................ 25, 31, 40

*Cicero v. DirecTV, Inc.*,
No. EDCV 07-1182, 2010 U.S. Dist. LEXIS
(C.D. Cal. July 27, 2010) ...................................................................... 52

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ............................................................ 21, 22

*Cohorst v. BRE Properties, Inc.*,
3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719
(S.D. Cal. Nov. 14, 2011) ...................................................................... 23

*Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ................................................................ 46

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ............................................................... 41

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
4 Cal. App. 4th 963 (1992) ................................................................... 16

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................... 47

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ......................................................... *passim*

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ............................................................................. 38

*Dunk v. Ford Motor Co.*,
48 Cal. App. 4th 1794 (1996) ................................................................ 43

*Edmunson v. P&G*,
No. 10-CV-2256-IEG (NLS), 2011 U.S. Dist. LEXIS 102561
(S.D. Cal. Sep. 8, 2011) .................................................................... 8, 25

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ........................................................................ 11, 39

BLOOD HURST & O'REARDON, LLP

iv    Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

00057068

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) ....................................................................... 29

*In re Emulex Corp. Sec. Litig.*,
210 F.R.D. 717 (C.D. Cal. 2002) .................................................................... 36

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977)................................................................ 30

*In re Facsimile Paper Antitrust Litig.*,
Nos. 963598, 964899 and 967137 (S.F. Super. Ct. 1997) ............................. 44

*Fang, et al. v. United Bank, et al.*,
No. 873365 (S.F. Super. Ct. 1992)................................................................. 44

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006)........................................................................... 34

*Galluci v. Boiron, Inc.*,
No. 11cv2039, 2012 U.S. Dist. LEXIS 157039
(S.D. Cal. Oct. 31, 2012) ................................................................................ 31

*Garcia v. Gordon Trucking, Inc.*,
No. 10-CV-0324, 2012 U.S. Dist. LEXIS 160052
(E.D. Cal. Oct. 31, 2012)................................................................................. 31

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477
(N.D. Cal. Apr. 22, 2010)................................................................................ 52

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) ........................................................................................ 37

*Glendale City Employees' Ass'n. v. Glendale*,
15 Cal. 3d 328 (1975) ..................................................................................... 44

*Glendora Cmty. Redev. Agency v. Demeter*,
155 Cal. App. 3d 465 (1984).......................................................................... 47

*Graham v. Daimler Chrysler Corp.*,
34 Cal. 4th 553 (2004)..................................................................................... 46

*Haitz v. Meyer, et al.*,
No. 572968-3 (Alameda Sup. Ct. 1990).......................................................... 44

BLOOD HURST & O'REARDON, LLP

00057068

v      Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..................................................................................... *passim*

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ..................................................................................... 34, 35

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ................................................................................................. 50

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) ............................................................................................ 33

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) ................................................................. 37, 46, 48, 50

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2004) ..................................................................................... 49

*Hensley v. Eckhart*,
461 U.S. 424 (1983) .......................................................................................................... 46

*Housing Rights Ctr. v. Sterling*,
No. CV 03-859 DSF (Ex), 2005 U.S. Dist. LEXIS 31872
(C.D. Cal. Nov. 2, 2005) ................................................................................................... 49

*In re Immune Response Securities Litigation*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................... 22

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ............................................................................................. 49

*Iorio v. Allianz Life Ins. Co. of N. America*,
No. 05-CV-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824
(S.D. Cal. March 3, 2011) ................................................................................................. 49

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012) ..................................................................................... 37

*Johnson v. General Mills, Inc.*,
275 F.R.D. 282 (C.D. Cal. 2011) ..................................................................................... 34

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*),
654 F.3d 935 (9th Cir. 2011) ..................................................................................... 42, 46

*Keilholtz v. Lennox Health Prods., Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010) ..................................................................................... 35

vi     Case No. 3:09-CV-01786-IEG(WMC)

00057068

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) ................................................................. 46, 47

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012) ................................................................. 14

*Lealao v. Beneficial Cal., Inc.,*
    82 Cal. App. 4th 19 (2000) ........................................................ 43, 44, 45, 46

*Lingenfelter v. Astrue,*
    No. SA CV-03-00264-VBK, 2009 U.S. Dist. LEXIS 87685
    (C.D. Cal. Sep. 3, 2009) ................................................................. 49

*In re Liquid Carbon Dioxide Cases,*
    J.C.C.P. 3012 (S.D. Super. Ct. 1996) ................................................................. 44

*Lo v. Oxnard European Motors, LLC,*
    No. 11CV1009 JLS (MDD), 2011 U.S. Dist. LEXIS 144490
    (S.D. Cal. Dec. 15, 2011) ................................................................. 39

*Lobatz v. U.S. W. Cellular of Cal., Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ................................................................. 49

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*
    *v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ................................................................. 36

*Love v. Mail on Sunday,*
    No. CV-05-7798-ABC, 2007 U.S. Dist. LEXIS 97061
    (C.D. Cal. Sept. 7, 2007) ................................................................. 49

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2nd Cir. 2007) ................................................................. 42

*Mathias v. Smoking Everywhere, Inc.,*
    2:09-cv-03434-GEB, 2011 U.S. Dist. LEXIS 121687
    (E.D. Cal. Oct. 20, 2011) ................................................................. 33

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ................................................................. 9, 25

*McPhail v. First Command Fin. Planning, Inc.,*
    No. 05cv179-IEG-JMA, 2009 U.S. Dist LEXIS 26544
    (S.D. Cal. Mar. 30, 2009) ................................................................. 43

BLOOD HURST & O'REARDON, LLP

00057068

vii        Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

*In re Mego Fin. Corp. Secs. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................... 43, 52

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) .................................................................... 30, 40

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y 1984) .................................................................. 26

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................ 39

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011) .................................................................... 14, 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 29, 31

*Negrete v. Fid. and Guar. Life Ins. Co.*,
No. CV-05-6837-CAS-MANx (C.D. Cal. April 19, 2010) ............................. 49

*Officers for Justice v. Civil Service Commission*,
688 F.2d 615 (9th Cir. 1982) ...................................................................... 21, 22

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................................... 50

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................ 43

*Parker v. Los Angeles*,
44 Cal. App. 3d 556 (1974) ............................................................................. 44

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .......................................................................... 43

*Pelletz v. Weyerhaeuser Co.*,
592 F. Supp. 2d 1322 (W.D. Wash. 2009) ...................................................... 52

*People Who Care v. Rockford Bd. of Educ.*,
90 F.3d 1307 (7th Cir. 1996) .......................................................................... 48

*POM Wonderful, LLC v. Purely Juice, Inc.*,
No. 07-2633, 2008 U.S. Dist. LEXIS 110460
(C.D. Cal. Sept. 22, 2008) ............................................................................... 49

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

00057068

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ........................................................................ 43

*Rankin v. Am. Greetings, Inc.*,
No. 2:10-CV-01831-GGH, 2011 U.S. Dist. LEXIS 72250
(E.D. Cal. July 6, 2011) ................................................................................. 45

*Rider v. San Diego*,
11 Cal. App. 4th 1410 (1992) ......................................................................... 50

*Rodriguez v. D.M. Camp & Sons*,
No.: 1:09-cv-00700 – AWI – JLT, 2013 U.S. Dist. LEXIS 69282
(E.D. Cal. May 15, 2013) ............................................................................... 43

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) .................................................................... 42, 43

*Rodriguez v. West Publ'g. Corp.*,
563 F.3d 948 (2009) ................................................................................*passim*

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
155 Cal. App. 3d 738 (1984) .................................................................... 46, 48

*Sanders v. City of L.A.*,
3 Cal. 3d 252 (1970) ...................................................................................... 44

*Schwartz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ........................................................................... 47

*Serrano v. Priest*,
20 Cal. 3d 25 (1977) ...................................................................................... 50

*Shames v. Hertz Corp.*,
No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577
(S.D. Cal. Nov. 5, 2012) ................................................................................. 48

*Sheppard v. Cons. Edison Co. of N.Y., Inc.*,
No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314
(E.D.N.Y. Aug. 1, 2002) ................................................................................ 51

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .......................................................... 14, 42, 43

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ....................................................................... 41

BLOOD HURST & O'REARDON, LLP

00057068

ix        Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

*State of California v. Meyer*,
174 Cal. App. 3d 1061 (1985).......................................................................... 46

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003).................................................................... 35, 50

*Steinberg v. Allstate Ins. Co.*,
226 Cal. App. 3d 216 (1990)........................................................................... 44

*Steiner v. Am. Broad. Co., Inc.*,
248 Fed. Appx. 780, 2007 U.S. App. LEXIS 21061
(9th Cir. Aug. 29, 2007) ................................................................................ 47

*Steiner v. Whittacker Corp.*,
No. CA 000817 (L.A. Super. Ct. 1989) ......................................................... 44

*SternwestCorp. v. Ash*,
183 Cal. App. 3d 74 (1986) ........................................................................... 47

*In re Tobacco Cases I*,
216 Cal. App. 4th 570 (2013).......................................................................... 46

*True v. Am. Honda Motor Co.*,
749 F. Supp. 2d 1052 (C.D. Cal. 2010).......................................................... 29

*United States v. McInnes*,
556 F.2d 436 (9th Cir. 1977) .......................................................................... 24

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990).......................................................................... 48

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .......................................................................... 38

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) .................................................................... 22, 24

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995).......................................................... 51, 52

*Vasquez v. Superior Court*,
4 Cal. 3d 800 (1971)....................................................................................... 38

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009).......................................................................... 27

x          Case No. 3:09-CV-01786-IEG(WMC)

00057068

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

*In re Vitamin Cases*,
110 Cal. App. 4th 1041 (2003) ........................................................................ 46

*In re Vivendi Universal S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................. 25

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .............................................................. 42, 45, 47

*Walmart Stores, Inc. v. Dukes*,
___ U.S. ___, 131 S. Ct. 2541 (2011) ............................................................. 33

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) .......................................................... 43, 47, 48, 49

*White v. Experian Info. Solutions, Inc.*,
803 F. Supp. 2d 1086 (C.D. Cal. 2011) ........................................................... 29

*Wiener v. Dannon Co., Inc.*,
255 F.R.D. 658 (C.D. Cal. 2009) ............................................................. *passim*

*Young v. Polo Retail, LLC*,
No C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269
(N.D. Cal. Mar. 28, 2007) ............................................................................... 28

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ......................................................................... 38

**Statutes, Rules and Regulations**

California Business & Professions Code §17200, *et. seq.* .................................... 6

California Civil Code §1750, *et seq.* ............................................................... 5, 6

Federal Rule of Civil Procedure 23 ............................................................ *passim*

Ohio Rev. Code §1345, *et. seq.* ........................................................................ 4

Ohio Rev. Code §4165, *et. seq.* ..................................................................... 4, 5

**Other Authorities**

H. Newberg & A. Conte,
*Newberg On Class Actions*, §3.3 (2d ed. 1993) ............................................. 33

H. Newberg & A. Conte,
*Newberg On Class Actions* §11:41 (2d ed. 1993) .......................................... 21

Case No. 3:09-CV-01786-IEG(WMC)

00057068

H. Newberg & A. Conte,
*Newberg on Class Actions*, §12.08 (2d ed. 1993) .......................................... 50

BLOOD HURST & O'REARDON, LLP

00057068

Case No. 3:09-CV-01786-IEG(WMC)
PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Plaintiffs[1] and Class representatives, Harry Dennis and Jon Koz, respectfully submit this memorandum in support of their motion for final approval of the class action settlement ("Settlement") and request for entry of the Judgment, Final Order and Decree (the "Final Order).

## I. INTRODUCTION

Plaintiffs seek final approval of a proposed nationwide class action Settlement with Kellogg that was preliminarily approved as fair, reasonable, and adequate by the Honorable Irma E. Gonzalez. Stipulation of Settlement (ECF No. 89), Order Granting Plaintiffs' Motion for Preliminary Approval (ECF No. 95). The Settlement satisfies Plaintiffs' primary goal in bringing this lawsuit – monetary relief in the form of the full purchase price of up to three boxes of Frosted Mini-Wheats® ("Mini-Wheats") purchased during the Class Period and an end to the challenged advertisements. This relief represents a recovery for claimants that exceeds the recovery individual Class Members likely would recover after a successful trial.

The gravamen of this litigation was Kellogg's allegedly false and unsubstantiated representations in its advertising and labeling of Frosted Mini-Wheats branded cereal. Kellogg advertised that eating Mini-Wheats improved kids' attentiveness, memory and other cognitive functions. Specifically, Plaintiffs challenged Kellogg's claim that eating a bowl of Mini-Wheats cereal for breakfast was clinically shown to improve children's attentiveness by nearly 20%. Although Kellogg's denies all charges of wrongdoing or liability, the Parties have agreed to settle this matter upon the terms set forth in the Stipulation of Settlement.

The Settlement was reached after extended settlement negotiations and mediations with the Honorable Richard Haden and previously with Martin Quinn

---

[1] Unless stated otherwise, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement filed March 15, 2013, and all "ECF" references are to docket entry numbers in this case.

00062398

BLOOD HURST & O'REARDON, LLP

of JAMS, in addition to numerous negotiations between the Parties. The Settlement provides for the creation of a $4 million non-reversionary Settlement Fund to provide cash payments to Class Members and to pay Settlement related fees and expenses. Stipulation of Settlement (ECF No. 89), §IV.A.2(a). Eligible Claimants will receive the approximate full purchase price of the cereal they purchased, at $5 a box up to three boxes. *Id*. at §IV.A.1. In addition to cash payments to Class Members, Kellogg has modified its marketing of Mini-Wheats by agreeing to limit and qualify any claims about the impact on memory or cognitive functions from eating Mini-Wheats for at least three years from the Effective Date. *Id*. at §IV.B.

If money remains in the Settlement Fund after all eligible claims are paid, the remaining money will be used to increase the cash awards to Claimants by up to three times the original value of the claim. *Id*. at §IV.A.3(b). Any funds remaining thereafter will be paid to 501(c)(3) nonprofit organizations that advocate on behalf of consumers by challenging corporations engaged in false advertising and fraudulent corporate marketing practices via legislation, regulatory reform, complaints to regulatory agencies, litigation and direct and indirect consumer outreach and education. *Id*. The Parties have selected, and ask the Court to approve, the following charities to receive any reversionary funds, pursuant to the *cy pres* doctrine: Consumer Watchdog, Consumers Union and the Center for Science in the Public Interest (CSPI). *See id*. The information showing that these organizations are appropriate *cy pres* recipients was submitted to the Court with the motion for preliminary approval. Declaration of Elisa Odabashian in Support of Preliminary Approval of Class Action Settlement ("Odabashian Decl.") (ECF No. 90-7); Declaration of Stephen Gardner in Support of Designation of Center for Science in the Public Interest as *Cy Pres* Recipient ("Gardner Decl.") (ECF No. 90-5) and Declaration of Jamie Court in Support of Motion for *Cy Pres* Designation and Distribution ("Court Decl.")

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

(ECF No. 90-6).

To receive the monetary relief Class Members need only submit a Claim Form. The Claim Forms are available for easy electronic submission on a website established for this Settlement or via mail. Stipulation of Settlement (ECF No. 89), §IV.A.1. The Claim Form is very simple and straightforward. Class Members need only declare how many boxes of Kellogg's Mini-Wheats cereal they purchased between January 28, 2008 to October 1, 2009 – no proof of purchase is required. *See* Exhibits to Stipulation of Settlement at Exh. A (ECF No. 89-1).

In addition, the Settlement allows Plaintiffs' Counsel to apply for an award of attorneys' fees and litigation-related expenses from the Settlement Fund to be approved by the Court. Stipulation of Settlement (ECF No. 89), §VIII.A. Counsel seeks an award of 25% of the Settlement Fund in attorneys' fees and out-of-pocket expenses. This is well within the range established by state and federal case law as being acceptable. In fact, this amount equates to Plaintiffs' Counsel receiving their lodestar with no corresponding multiplier.

The Settlement represents an excellent recovery for the Class – a point confirmed by the fact that only two Class Members have so far elected to opt out (one requesting that her settlement award go to charity). To date, no objections have been filed. *See* Declaration of Jennifer M. Keough Regarding Notice and Settlement Administration ("Keough Final Approval Decl."), ¶¶20-21, filed contemporaneously herewith. This is significant considering the wide breadth of the Court-approved Class Notice program, which was designed to target potential Class Members. Notice included publication in two nationally circulated consumer magazines with an estimated circulation of more than 22 million, which were specifically chosen to reach the target audience, as well as Internet publication by banner advertising on social networks, Internet publication via a national media network that includes more than five highly trafficked web sites

BLOOD HURST & O'REARDON, LLP

00062398

3      Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

generating more than 200 million impressions, and a national press release provided to nearly 448 outlets, including to over 500 parenting and consumer blogs and media coverage. *Id.* at ¶¶5-12.[2] Further, this settlement has enjoyed a great deal of national news coverage, providing the most effective type of notice, at no cost. *Id*. at ¶12.

For the reasons set forth below, the Court should find that the proposed Settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2) and should be granted final approval and that the Class meets all of the applicable requirements for certification. The Court should also grant approval of the requested Attorneys' Fees and Expenses, and incentive awards to Plaintiffs.

## II.    HISTORY OF THE LITIGATION

### A.    The Initial Settlement

This litigation was initiated against Kellogg on May 5, 2009, when counsel for Plaintiff Koz sent Kellogg a pre-suit demand letter attaching a proposed complaint. The complaint alleged violations of Ohio's Consumer Sales Practice Act (Ohio Rev. Code §1345, *et. seq*.), Ohio's Deceptive Trade Practices Act, (Ohio Rev. Code §4165, *et. seq*.) and breach of warranty in connection with Defendant's advertising of Kellogg's Frosted Mini-Wheats® cereal. Declaration of Timothy G. Blood in Support of Motion for Final Approval of Class Action Settlement ("Blood Decl."), ¶¶2-3. The complaint challenged Kellogg's advertising that Frosted Mini-Wheats was clinically shown to improve the attentiveness of children by nearly 20%. *Id*. at ¶3. Plaintiff alleged that Kellogg's representations were false, misleading and likely to deceive the public because eating a bowl of Kellogg's Frosted Mini-Wheats cereal for breakfast was not clinically shown to improve attentiveness by 20%. *Id*.

---

[2]  The objector and opt-out figures are current through July 21, 2013. Keough Final Approval Decl., ¶¶20-21. Pursuant to the Order Granting Plaintiffs' Motion for Preliminary Approval (ECF No. 95) the deadline for opting out or objecting to the Settlement is August 10, 2013. Plaintiff will respond to all objections on or before September 2, 2013.

BLOOD HURST & O'REARDON, LLP

00062398

After receiving the demand letter and draft complaint, Kellogg's outside counsel contacted counsel for Koz to discuss their willingness to attempt an early resolution in order to avoid protracted litigation. *Id.* at ¶7. At Kellogg's request Plaintiff Koz agreed to hold off filing his complaint based on Kellogg's agreement to informally produce information requested by Plaintiffs' Counsel as a result of the Parties stated willingness to discuss settlement. *Id.*

As part of this process the parties negotiated a protective order pursuant to which Kellogg produced documents and information (including sales data) requested by Plaintiffs' Counsel. *Id.* at ¶9. Separately, in response to a FOIA request, counsel for Koz received and reviewed documents from the Federal Trade Commission ("FTC") relating to its investigation and litigation of similar claims against Kellogg. *Id.* at ¶2.

While the above events were taking place, on June 23, 2009, counsel for Lani Felix-Lozano sent a demand letter to Kellogg asserting similar allegations and violations of the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.* and other consumer laws. *Id.* at ¶6; Declaration of Patrick J. Sheehan in Support of Motion for Final Approval of Class Action Settlement ("Sheehan Decl."), ¶4.

Separately, on August 17, 2009, Plaintiff Dennis filed a formal complaint against Kellogg in the United States District Court for the Southern District of California. Blood Decl., ¶5. When the parties learned of the others' respective claims and lawsuits they agreed to coordinate litigation. *Id.* at ¶8. The joint litigation and negotiation of the respective Settlement was greatly enhanced by the independent examinations and evaluations conducted by Plaintiffs' Counsel. *Id.*

To avoid duplicative litigation, on June 23, 2010, Plaintiffs Dennis and Koz jointly filed a first amended class action complaint ("Amended Complaint") (ECF No. 23). Blood Decl., ¶7. In the Amended Complaint, Plaintiffs alleged

BLOOD HURST & O'REARDON, LLP

00062398

5 Case No. 3:09-CV-01786-IEG(WMC)

Kellogg falsely claimed on its Product labels and packages and in its promotional materials and advertisements that consumption of Mini-Wheats cereal for breakfast improved kids' attentiveness, memory and other cognitive functions to a degree not supported by any competent clinical evidence. Amended Compl., ¶¶15-20. The Amended Complaint asserted the following claims against Kellogg: (1) violations of California's Unfair Competition Law, Business & Professions Code §17200, *et. seq.*, and similar laws of the various states, (2) violations of California's Consumers Legal Remedies Act, Civil Code §1750, *et seq.*, and similar laws of the various states and (3) unjust enrichment. *Id.* at ¶¶32-49. The Amended Complaint sought equitable monetary relief and injunctive relief. *Id*. at ¶1. Meanwhile, Lani Felix-Lozano agreed not to proceed with filing a formal complaint as initially proposed, but instead agreed to work with counsel for Dennis and Koz to explore the possibility of negotiating a meaningful global settlement with Kellogg that would resolve all claims. Blood Decl., ¶8; Sheehan Decl., ¶4.

The Parties jointly discussed settlement over the course of several months. When these efforts proved to be unsuccessful (Blood Decl., ¶10), on January 13, 2010, the Parties participated in a full day mediation conducted by Martin Quinn of JAMS in San Francisco, California. *Id*. at ¶11. During this mediation, the Parties reached a settlement in principle. *Id*. Over the next four months the Parties engaged in further settlement negotiations and finalized an agreement. *Id*. at ¶12.

The negotiated settlement provided the class with a $2.75 million cash fund from which to pay claims. Stipulation of Settlement (ECF No. 34), §IV.A.2(a). Members of the class could seek reimbursement of $5 per box of the Product purchased amounting to the full price of the Product, with a maximum recovery of $15 per consumer. *Id.* at §IV.A.1(a). To the extent money remained after all valid claims were paid excess funds did not revert back to Kellogg, but

BLOOD HURST & O'REARDON, LLP

00062398

BLOOD HURST & O'REARDON, LLP

rather were to be distributed to one or more charities chosen by the Parties and approved by the Court pursuant to the *cy pres* doctrine. *Id*. at §IV.A.3(b). Further, in consideration of the fact that Mini-Wheats is sold at retail and that Class Member addresses were not available for individual notice, the initial settlement also included a product *cy pres* component whereby Kellogg agreed to distribute $5.5 million of its own low fat and/or high fiber cereal products to charities that feed the needy. *Id*. at §IV.B.2. Finally, Plaintiffs' Counsel sought attorneys' fees and expenses in the amount of $2 million. *Id*. at §VIII.A. In addition, Kellogg agreed to pay incentive awards and the costs of notice and settlement administration, all of which were to be paid separate from the settlement fund and product distribution.

The settlement was presented to the Court on September 10, 2010 (ECF No. 34) and final approval was granted on April 5, 2011 (ECF No. 49). More than 48,000 claim forms seeking reimbursement were submitted by class members, but no claims could be paid until after any appeals were resolved. Blood Decl., ¶14. Two well-known "serial" objectors appealed the order granting final approval. *Id*. at ¶15. Their objections and appeals contested virtually every aspect of the settlement, including the settlement value and settlement relief, the *cy pres* awards, the value of the product *cy pres* component, the amount of attorneys' fees, and the determination of attorneys' fees based on both a percentage and lodestar basis (ECF Nos. 43 & 44). Blood Decl., ¶16.

### B. The Ninth Circuit Opinion

The Ninth Circuit considered the entire swath of objections presented on appeal and took issue only with the *cy pres* component of the settlement. *Dennis v. Kellogg Co*., 697 F.3d 858, 867 (9th Cir. 2012). Specifically, the Ninth Circuit criticized the settlement because the *cy pres* recipients were not identified, but

00062398

rather were to be chosen, as has been traditionally done,[3] after claims were paid and the amount to be distributed under the *cy pres* doctrine was known. *Id*. at 861, 867. As to the *cy pres* recipient for the product donation (identified in the settlement as charit(ies) that provide food to the indigent), the court found that based on this description such charities were not sufficiently related to plaintiffs' claims of false advertising and consumer protection. *Id*. "On the face of the settlement's language, 'charities that provide food for the indigent' may not serve a single person within the plaintiff class of purchasers of Frosted Mini-Wheats." *Id*. at 867. Lacking the authority "to strike down only the *cy pres* portions of the settlement," the Ninth Circuit reversed and remanded the case to the district court for further consideration commenting that on remand the parties were free to negotiate a new settlement. *Id.* at 867-69.

### C. The Current Settlement

Following remand, the Parties prepared for further litigation with Plaintiffs serving formal written discovery requests to Kellogg. Blood Decl., ¶17. At the same time, however, the Parties expressed a willingness to attempt to again reach a settlement. *Id*. at ¶18. Several hurdles existed. As a result of case law handed down since this action was first settled, Defendant felt its litigation position had improved. *See, e.g.*, *Edmunson v. P&G*, No. 10-CV-2256-IEG (NLS), 2011 U.S. Dist. LEXIS 102561 (S.D. Cal. Sep. 8, 2011) (dismissing class action alleging defendant falsely advertised its higher priced razors as being superior to its lower priced razors ruling that a claim of product superiority is non-actionable unless the means to quantify the claim is referenced or incorporated into the product

---

[3] *See Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 966 (2009) (court declined to consider the objectors' challenge to *cy pres* because "this issue becomes ripe only if the entire settlement fund is not distributed to class members. [] That trigger point has not been reached; no *cy pres* disbursement is imminent; and the fund in this case may well be depleted before *cy pres* kicks in. We therefore decline to consider the propriety of *cy pres* at this time.") (*citing Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1313 (9th Cir. 1990) (Fernandez, J., concurring)).

00062398

BLOOD HURST & O'REARDON, LLP

advertisement); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (reversing order certifying a nationwide class for claims brought under the UCL and CLRA concluding the consumer protection laws across the states were materially different).

Further, the settlement could not simply be replicated with the only change being the identity of a *cy pres* recipient. The Ninth Circuit rejected the product *cy pres* portion of the settlement, which required Kellogg to make a $5.5 million food donation to charities that feed the needy, instead requiring that any *cy pres* distribution be to "organizations dedicated to protecting consumers from, or redressing injuries caused by, false advertising." *Dennis*, 697 F.3d at 867. The type of organization identified by the Ninth Circuit would have no use for food donations. Thus, negotiations necessarily went beyond simply identifying *cy pres* recipients. Blood Decl., ¶18. In essence, the negotiations were about an entirely different settlement. *Id*.

The Parties agreed to mediate with the Honorable Richard Haden of JAMS in San Diego, California. Blood Decl., ¶19. As a result of that mediation session on December 11, 2012, the Parties agreed in principle to the current settlement. *Id*. at ¶20. Over the following two and half months, the details of the Settlement were negotiated and the Stipulation of Settlement was written and ultimately agreed on. *Id*. at ¶21.

The Settlement provides a $4 million cash fund from which claims will be paid, attorneys' fees and expenses may be awarded and the costs of notice and settlement administration will be deducted. Stipulation of Settlement (ECF No. 89), §IV.A.2. In short, this is a traditional "common fund" settlement. However, the relief afforded the Class, wherein Class members may seek reimbursement of the full price of the Product – $5 per box, up to three boxes – exceeds settlements traditionally achieved in similar false advertising cases. *Id*. at §IV.A.1. Further, if, after all valid claims are paid, money remains in the Settlement Fund excess

BLOOD HURST & O'REARDON, LLP

00062398

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

funds will be used to increase each Claimant's share of the fund pro rata. *Id*. at §IV.A.3(b). Only if funds still remain after Claimant awards are increased will the funds be distributed to charities pursuant to the *cy pres* doctrine.

As directed by the Ninth Circuit, the Settlement identifies the possible *cy pres* recipients: Consumer Watchdog, Consumers Union and the Center for Science in the Public Interest. *Id*. Each of these charities advocate on behalf of consumers by challenging corporations engaged in false advertising and fraudulent corporate marketing practices via legislation, regulatory reform, complaints to regulatory agencies, litigation and direct and indirect consumer outreach and education. That is, each of these "organizations [is] dedicated to protecting consumers from, or redressing injuries caused by, false advertising." *Dennis*, 697 F.3d at 867; *see* Odabashian Decl. (ECF No. 90-7); Gardner Decl. (ECF No. 90-5) and Court Decl. (ECF No. 90-6).

In its Order Granting Plaintiffs' Motion for Preliminary Approval (ECF No. 95) the Court expressed concern that the initial settlement had a cash value of approximately $10.5 million of which $2 million was for attorneys' fees and notice/claims administration, while the current Settlement has only a $4 million value, but $1.5 – $2 million are still reserved for attorneys' fees and notice/claims administration. *Id*. at 8. Respectfully, this order misconstrues the initial and proposed settlements.

Specifically, the initial settlement valued at $10.6 million was comprised of the following: (i) settlement fund to pay cash refunds to claimants – $2.75 million (with any remaining cash to be paid to a *cy pres* charity to be approved by the court); (ii) product *cy pres* to feed the needy – $5.5 million; (iii) notice and claim administration estimated at $391,500, and; (iv) attorneys' fees and expenses – $2 million. Plaintiffs' Memorandum in Support of Motion for Final Approval of Class Action Settlement (ECF No. 40-1) at 32. By comparison, the current settlement is a traditional common fund settlement comprised of a $4

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

million settlement fund from which will be paid (i) notice and claim administration estimated at $908,665; (ii) requested attorneys' fees and expenses – $1 million; and (iii) remainder of fund for cash refunds to claimants – $2,091,335 million. Thus, although structured differently, those class members claiming into the fund will likely receive the same as they would have received under the previous settlement (or potentially more).

Any reduction in settlement value is primarily the result of the Ninth Circuit rejecting the deterrent component of the initial settlement, namely, the *cy pres* food distribution valued at $5.5 million. In light of the Ninth Circuit's opinion, this component could not be carried over to the new Settlement because charities committed to fighting false advertising are not in the business of distributing food donations to the needy. Donating food to these organizations is simply not an option. Further, the notice and claim administration costs are higher because separate notice had to be sent by mail to those original claimants for whom we now have addresses[4] and reflects the enhanced notice efforts necessary to reach two and half years later than before, Class Members who purchased Mini-Wheats during the Class Period (January 2008 – October 2009), as well as the direct notice mailing to prior Claimants informing them of the current Settlement, and the increased claim administration costs for the increased number of Claimants. In contrast, the attorneys' fees and expenses sought by Plaintiffs' Counsel are less than half the amount previously sought. Still, the benefit to the Class – recovery of the full purchase price paid for the cereal, plus additional monies if funds remain – is a major victory when one considers the likelihood of obtaining class certification, and reaching trial. If the case proceeded to trial, recovery would most likely be limited to the difference in value of the Product as advertised compared to the Product received, and Frosted Mini-Wheats is not priced at a premium. That is, if the action proceeded to trial,

---

[4] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974).

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

individual class members could receive just pennies, depending on the measure of damages permitted by the Court. A settlement that provides full purchase price cash relief to Class Members is an excellent settlement.

## III. SETTLEMENT TERMS

The Stipulation of Settlement contains the complete terms of the settlement and is summarized below.

### A. The Settlement Class

The Settlement defines a national Settlement Class under Rule 23(b)(3) composed of all persons or entities in the United States who purchased Frosted Mini-Wheats® branded cereal from January 28, 2008, up to and including October 1, 2009. Excluded from the Class are Kellogg's employees, officers, directors, agents, and representatives and those who purchased Frosted Mini-Wheats® for the purpose of re-sale. Stipulation of Settlement (ECF No. 89), §§II.A.4., 19, 23.

### B. Relief to Settlement Class Members

#### 1. Cash Refund

Under the Stipulation of Settlement, Kellogg will establish a cash fund of $4 million to reimburse Settlement Class Members for Products purchased during the Settlement Class Period. *Id*. at §IV.A.2(a). Each Claimant will receive $5 per box. *Id*. at §IV.A.1. Five dollars is about one dollar more than the 16.3 oz box, and roughly the same price as the 24 oz package. Class Members may recover up to $15, the equivalent of three boxes of cereal. *Id*. In the event funds remain in the Settlement Fund, the balance will be used to increase, pro rata, the recovery on each eligible claim, up to three times the original value of the claim. *Id*. at §IV.A.3(b). In the event claims exceed the fund amount, payments will be proportionately reduced. *Id*. at §IV.A.3(a).

To obtain the cash payment Class Members need only return a simple Claim Form. The Claim Form requires a Claimant to provide his or her name,

BLOOD HURST & O'REARDON, LLP

00062398

BLOOD HURST & O'REARDON, LLP

address and to attest to the number of boxes of cereal purchased during the Class Period. *Id*. at §IV.A.6. and Exhibits to Stipulation of Settlement (ECF No. 89-1), Ex. A (Claim Form). No proof of purchase is required and Class Members do not need to recall the price they paid for the cereal. Stipulation of Settlement (ECF No. 89), §IV.A.1.

The Claim Form is easily accessible and was included as part of the Publication Notice. *Id*. at §IV.A.5. It is also available for downloading and/or completion and submission online at the Settlement Website. *Id*. The Claim Form may also be requested by calling the toll-free number provided by the Class Action Settlement Administrator or by writing to the same. *Id*. To be eligible, Claim Forms must be postmarked or submitted online no later than 80 days after entry of judgment. *Id*. at §IV.A.6.(b). In addition, Class Members who previously submitted a valid claim do not need to resubmit a Claim Form to get paid their settlement relief. *Id*. at §IV.A.6(a).

### 2. Injunctive Relief

In addition to the Settlement Fund, the Stipulation puts an end to Kellogg's alleged unlawful practices. Within three (3) months of the Effective Date, and for a period of three (3) years from the Effective Date, Defendant must refrain from using in its advertising and on its labeling for the Product any assertion to the effect that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for breakfast is clinically shown to improve attentiveness by nearly 20%." *Id*. at §IV.B. The Stipulation of Settlement also requires Kellogg to limit and qualify other claims about the impact on attentiveness from eating the Product. *Id*. The Stipulation of Settlement's injunctive relief is broad, extending to all Product advertising, including the packaging of the Product and any type of advertisement or promotion of any kind, including on radio, television, the Internet, newspapers, periodicals, point of purchase displays, and all other media. *Id*.

00062398

### 3. Residual Settlement Funds Will Not Revert To Defendant

None of the $4 million Settlement Fund will revert to Kellogg. If any amounts remain in the Settlement Fund after payment of taxes and tax expenses, notice and claim administration costs, attorneys' fees and expenses, incentive awards and cash payments to Class Members, including any pro rata increase, the amounts will be distributed pursuant to the *cy pres* doctrine. *Id*. at §IV.A.3(b). The *cy pres* funds will be distributed equally, subject to Court approval and consistent with the Ninth Circuit precedent, to Consumers Union, Consumer Watchdog and Center for Science in the Public Interest. *Id*.

*Cy pres* distributions are appropriate where proof of individual claims is burdensome or distribution of damages costly or where there are unclaimed funds. *Six (6) Mexican American Workers*, 904 F.2d at 1305. A *cy pres* award must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members;' and (3) ... must not benefit a group 'too remote from the plaintiff class.'" *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *see also Six (6) Mexican American Workers*, 904 F.2d at 1307-08; *Dennis*, 697 F.3d at 865. In other words, a *cy pres* remedy must "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (*quoting Nachshin*, 663 F.3d at 1036).

In this case, a proposed *cy pres* recipient must be an "organization[] dedicated to protecting consumers from, or redressing injuries caused by, false advertising." *Dennis*, 697 F.3d at 867. The proposed *cy pres* recipients, Consumers Union, Consumer Watchdog and Center for Science in the Public Interest, readily meet this requirement. Under the proposed Settlement, they would split equally any remaining funds. Stipulation of Settlement (ECF No. 89), §IV.A.3(b).

BLOOD HURST & O'REARDON, LLP

00062398

Consumers Union is a national not-for-profit group dedicated to fighting false advertising by working to create "a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves." *See* Odabashian Decl. (ECF No. 90-7), ¶3. Consumers Union is the policy and action division of Consumer Reports. It works with its "million plus activists to pass consumer protection laws in states and in Congress." *Id*. at ¶2. It "also advocate[s] against corporations that do wrong by their customers, and encourage[s] companies that are heading in the right direction." *Id*. Consumers Union is dedicated to protecting consumers from false advertising and promoting consumer protection, including laws and actions that provide redress for consumers whose rights have been violated. *Id*.

Consumer Watchdog is a national not-for-profit advocacy group that fights false advertising and other corporate deception. Through policy research, investigation, public education, advocacy (including litigation), and direct consumer outreach, Consumer Watchdog helps Americans fight false advertising and protect and enhance consumers ability to recover when they are cheated by corporations. Court Decl. (ECF No. 90-6), ¶2. With offices in California and Washington, D.C., Consumer Watchdog uses a variety of approaches to advocate for consumer rights. *Id*. at ¶3. Much of the ability to protect consumer rights lies within the powers of the states and a handful of federal regulatory agencies, so Consumer Watchdog fights on both the state and federal level, strategically choosing which agencies, governments and battlegrounds are most likely to result in a desired outcome. *Id*. On the federal level, Consumer Watchdog regularly works with the Consumer Protection divisions of the FTC and petitions the FTC to take action to stop and correct acts of unfair and deceptive advertising practices. *Id*. at ¶7.

Center for Science in the Public Interest is a national not-for-profit organization founded in 1971. It is "a consumer advocacy organization whose

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

twin missions are to conduct innovative research and advocacy programs in health and nutrition, and to provide consumers with current, useful information about their health and well-being." Gardner Decl. (ECF No. 90-5), ¶¶2-3 and Exh. 1. It is at the forefront of combating false advertising by large food companies, such as defendant here. *Id*.

The *cy pres* portion of the Settlement is not limited by geography and its purpose is directly connected to the allegations that Mini-Wheats was falsely advertised as being clinically shown to improve the attentiveness of children by nearly 20%. Amended Compl., ¶¶1, 15-17. The *cy pres* recipients will use the excess funds, if any, to further their organizations' goals of protecting consumers from false advertising and promoting consumer protection. These goals provide the "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin*, 663 F.3d at 1038. Educating consumers misled by false advertising further fulfills a primary function of state consumer protection laws. *See Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992) ("the power to prevent the use or employment of false advertising and unfair business practices [through the UCL] necessarily includes the power to correct false impressions built up by prior advertising, and the power to deter future violations").

### C. Notice and Administration Costs, Attorneys' Fees and Expenses and Plaintiff Service Awards

As is typical with common fund settlements, the Settlement Fund will be applied to pay in full and in order: (i) any necessary taxes and tax expenses; (ii) notice and claim administration costs; (iii) attorneys' fees and expenses; (iv) Plaintiffs' service awards ($5,000 each); and (v) cash payments to Class Members. Stipulation of Settlement (ECF No. 89), §IV.A.2(b). These costs are readily ascertainable.

Notice is almost complete and will be completed by August 2013. Keough Final Approval Decl., ¶23. The cost of Class Notice and settlement administration as of May 31, 2013 is $608,665. *Id*. Claim administration costs will depend on the number of claims processed. *Id*. at ¶24. Based on favorable pricing negotiated by Class Counsel, remaining claims administration costs are not expected to exceed $300,000. *Id*. Further, Kellogg has agreed not to oppose any request for Court-awarded incentive awards to Plaintiffs of up to $5,000 each for a total of $10K. Stipulation of Settlement (ECF No. 89), §VIII.C. And Plaintiffs' Counsel seeks attorneys' fees and reimbursement of expenses of 25% of the Settlement Fund. *Id*. at §VIII.A.

**D.    The Class Notice Program**

The Parties developed a Notice Program with the help of Garden City Group, Inc. ("GCG"), a firm that specializes in developing class action notice plans. Declaration of Jennifer M. Keough in Support of Motion for Preliminary Approval of Class Action Settlement ("Keough Preliminary Approval Decl.") (ECF No. 90-4), ¶2. Class Notice was designed to provide broad notice intended to reach as many Class Members as reasonably possible, and to satisfy due process requirements. *Id*. at ¶¶4-5. Because the Product was sold over-the-counter at retail stores, Kellogg did not have contact information for Class Members. Therefore, Class Notice focused primarily on publishing Notice in targeted periodicals and on Internet sites. Publication Notice was designed to provide Class Members with plain language information regarding the Settlement and to inform them about their rights. *See* Keough Final Approval Decl., ¶7. It included a general description of the lawsuit, the Settlement relief, instructions on how to file a claim, and a general description of Class Members' legal rights. *Id*. at Exhs. C & D.

For more information Publication Notice directed Settlement Class Members to a website dedicated to the Settlement (www.cerealsettlement.com)

BLOOD HURST & O'REARDON, LLP

00062398

or in the alternative to a toll-free number they could call for information. *Id*. Publication Notice also included a copy of the Claim Form, which advised Class Members they could submit the Claim Form by mailing it to the Class Action Settlement Administrator at the address provided or by visiting the dedicated website and submitting a Claim Form online. *Id*. at ¶7.

Publication Notice appeared in various sources chosen based on market research on the demographics of consumers who purchased the Products. Keough Preliminary Approval Decl. (ECF No. 90-4), ¶¶4-5. Publication Notice appeared in two nationwide consumer publications chosen because they matched the demographics of the Settlement Class and which have a combined circulation of 24,425,000. Keough Final Approval Decl., ¶¶5-6 and Exhs. C-D.

The Settlement was also publicized through the use of Internet "banner ads." *Id*. at ¶8 and Exh. E. Banner ads are short, Internet-based advertisements designed to attract attention. *Id*. at ¶9. When presented with such an ad, an interested Internet user need only click on the banner ad to be taken directly to the Settlement Website. *Id*. at ¶10. Internet banner ads were posted on internet sites of yahoo.com, aol.com, mail.yahoo.com and msn.com, as well as a national media network that allows banner advertisement impressions to be seen on websites like oprah.com, weather.com, usatoday.com among others from May 27, 2013 to July 7, 2013. *Id*. at ¶8. The banner advertisement campaign is complete and delivered over 209 million impressions or opportunities for potential Settlement Class Members to click on the banner advertisement and view the Settlement Website. *Id*. at ¶10. Internet, mobile and Internet banner media were carefully selected by the Settlement Administrator to reach potential Class Members. *Id*. at ¶9.

The Settlement was also publicized through a press release distributed over PR Newswire's *US1 Newsline* and *National Hispanic Newsline* announcing the Settlement in English and Spanish to media outlets across the country. *Id*. at

BLOOD HURST & O'REARDON, LLP

00062398

¶11 and Exh. F. The press release was also delivered to 578 blogs on May 28, 2013, that cover such topics as parenting and consumer topics. *Id*. The press release was picked up by 448 English and Spanish news outlets nationwide. *Id*. at ¶12.

The address of the website dedicated to the Settlement appeared on all of the notice pieces, and is hyper-linked where a notice piece appears on the Internet. *See id*. at ¶15 and Exhs C-D, F. The Settlement website provides detailed information about the Settlement, as well as a copy of the Publication Notice, Long-form Class Notice, summary of important dates, a copy of the Stipulation of Settlement with Exhibits, and the order granting preliminary approval. *Id*. at ¶15 and Exh. H (Class Notice). The website allows Class Members to complete and submit a Claim Form online or to download a copy of the Claim Form for mailing to the Settlement Administrator. *Id*. at ¶17 and Exh. H (Claim Form). In addition, Class Members are advised of their legal rights, including, for example, how to opt-out or object to the Settlement. *Id*. at ¶16. The website, including the online Claim Form, was operational as of May 23, 2013. *Id*. at ¶15. From its inception to July 7, 2013 the website has received a total of 200,971 visits. *Id*. at ¶18.

The Notice Program has also greatly benefitted from extensive nationwide news coverage that far exceeded the type of news coverage class actions ordinarily receive. The Settlement was featured nationwide on National Public Radio's "All Things Considered" broadcast, Fox News and scores of regional affiliates for NBS, CBS, ABC, and FOX across the United States. *See id.* at ¶12; Blood Decl., ¶25. In addition, the Press Release was picked up by news outlets including the Associated Press, Fox Business, and the Huffington Post, as well as the *New York Times*, *Wall Street Journal*, *Boston Globe*, and *San Francisco Chronicle*. Keogh Final Approval Decl., ¶12. This type of free media coverage

BLOOD HURST & O'REARDON, LLP

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

00062398

is high profile and results in a very significant increase in the number of claims submitted.

Complementing the Publication Notice is the Long-form Class Notice. Keough Final Approval Decl., ¶16 and Exh. H. The Class Notice contains detailed information about the lawsuit, the Settlement benefits, the release and how to opt-out, object and exercise other rights under the Settlement. *See id*. at Exh. H. Also provided with the Class Notice is the Claim Form. *Id*. at ¶7. The Class Notice is available on the Settlement Website established for this case and by request to the Class Action Settlement Administrator. *Id*. at ¶16.

Class Members who submitted claims for settlement relief in the initial settlement (48,436 persons) were notified by a postcard mailing that they need not complete a new Claim Form in order to participate in the Settlement. *Id*. at ¶13 and Exh. G. Instead, these Class Members will automatically be mailed a check once the Settlement is approved. The postcard mailing to these Class Members is attached as Ex. H to the Stipulation of Settlement (ECF No. 89-1) and Ex. G to Keough Final Approval Decl.

In addition, a 24-hour toll-free telephone number was established on May 24, 2013, to provide callers with information about the Settlement through an interactive voice recording system. Keough Final Approval Decl., ¶19. Callers have the ability to listen to important information about the Settlement and to request a copy of the Claim Form and Class Notice 24 hours a day, 7 days a week. *Id*. Callers may also speak to a live operator during business hours or leave a message during non-business hours. *Id*. As of July 21, 2013, GCG had received 885 calls. *Id*.

As explained in the Keough Declaration, GCG, the court-appointed Settlement Administrator, has fully complied with the terms of the Settlement and the Preliminary Approval Order, including by establishing a website for this Settlement. Keough Final Approval Decl., ¶25. Use of the Internet and

BLOOD HURST & O'REARDON, LLP

00062398

20          Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

traditional methods for publication maximized the dollars spent to contact the Class. Publication through the Internet had the further advantage of immediately linking the reader to the Settlement Website and the Claim Form. The details of the Class Notice Program, including the methodology underlying its design, were explained in detail in the Keough Preliminary Approval Decl. (ECF No. 90-4). As explained in the concurrently submitted Keough Final Approval Declaration, the Class Notice Program was implemented pursuant to the Settlement and Preliminary Approval Order.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

The proposed Settlement is fair, reasonable and adequate and reflects careful consideration by both Parties of the benefits, burdens, and risks associated with continued litigation of this action. Accordingly, the Parties respectfully submit that this Court should grant final approval of their Stipulation of Settlement and order that relief be given to the Class.

Pursuant to Rule 23(e), after directing notice to all class members in a reasonable manner and prior to granting final approval of a proposed settlement, the court must conduct a fairness hearing and determine whether the settlement terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 103 S. Ct. 1219, 75 L. Ed. 2d 456 (1983); *see generally*, *Manual for Complex Litigation (Fourth)* §21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); 4 Herbert B. Newberg, *et al.*, *Newberg On Class Actions* §11:41. Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the

00062398

difficulties of proof, the uncertainties of the outcome, and the typical length and size of the litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits ….").

Several non-exhaustive factors are universally recognized as guideposts to the "fair, adequate and reasonable" determination: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount achieved or recovered in resolution of the action; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625. Moreover, the court should give a presumption of fairness to arm's-length settlements reached by experienced counsel. *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"). Each of these factors fully supports approval of the Settlement at hand.

### A. The Settlement Was Reached After Serious, Informed and Non-Collusive Arms-Length Negotiations and Mediation

Perhaps the most compelling reason for this Court to conclude the proposed resolution is fair, adequate, and reasonable, is the fact that the Settlement was reached after arms-length negotiations and guided by the wisdom of experienced and impartial mediators. Settlements that are the product of such negotiations are considered presumptively fair and reasonable. *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("[T]he fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair.") (quoting *Linney v. Cellular Alaska P'ship*, No. C-96-

BLOOD HURST & O'REARDON, LLP

00062398

22     Case No. 3:09-CV-01786-IEG(WMC)

3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (alterations in original)); *see also Cohorst v. BRE Properties, Inc.,* 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719, at *35 (S.D. Cal. Nov. 14, 2011) ("For example, voluntary mediation before a retired judge [] are highly indicative of fairness.") (internal quotations and citations omitted).

Here, Counsel for Defendant and Plaintiffs zealously negotiated this Settlement in accordance with the Ninth Circuit's directive.

Because the Ninth Circuit's order effectively precluded the $5.5 million food donation Kellogg's agreed to make – because charities devoted to fighting false advertising are not in the business of accepting and distributing food donations – negotiations required a reworking of the settlement structure. Ultimately, the parties agreed upon a traditional common fund settlement.

However, unable to reach a resolution on their own, the Parties agreed to mediation with the Honorable Richard Haden of JAMS in San Diego, California in December 2012. Blood Decl., ¶19. Although the Parties did not reach a final resolution they agreed to a settlement in principle. Nonetheless, the Parties continued their negotiations and were finally able to hash out an agreement on the principle deal points. *Id.* at ¶20. From those deal points, the Parties then launched into the process of negotiating the language and many details of the Stipulation. For two and one-half months following the last formal mediation session, the Parties negotiated over nuances of the Settlement, including significant sticking points with respect to the amount of relief an individual claimant could receive, the Notice Program and the proposed *cy pres* recipients. *Id.* at ¶21. The settlement process was kept moving by regular status conferences with Magistrate McCurine on November 8 and December 13, 2012, and on January 10, February 7, March 1 and March 13, 2013. *See id.* at ¶22 and ECF Nos. 76, 80, 82, 84, 86 and 88.

BLOOD HURST & O'REARDON, LLP

00062398          MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

These facts, along with the involvement of two experienced mediators, demonstrate the Settlement was anything but collusive. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07–4480–SVW (FFMx), 2010 U.S. Dist. LEXIS 43377, at *44 (C.D. Cal. Apr. 12, 2010) ("Because the present agreement was reached through arms-length negotiation between experienced parties whose negotiations were overseen by an experienced mediator, it is entitled to a presumption of fairness.").

Beyond the substantial involvement and assistance of a highly-qualified mediator, and the substantial benefits available for all Class Members, the nature of the subsequent negotiations between the Parties, and the experience of Class Counsel and Defendant's Counsel as longstanding class action attorneys, are all illustrative of the arms-length negotiations that led to the Settlement. Accordingly, final approval of the Stipulation of Settlement is warranted.

## B. The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Final Approval

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard – the Parties disagree about the merits, and there is substantial uncertainty about the ultimate outcome of this Litigation. Assuming litigation was to proceed, the hurdles Plaintiffs face prior to certification and trial are substantial. Although Plaintiffs are confident of their deceptive advertising claims against Kellogg, Plaintiffs must balance the perceived strength of the Class claims against the undeniable risks of continuing litigation. Class certification itself always poses a significant risk.

BLOOD HURST & O'REARDON, LLP

00062398

24     Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

Absent settlement, Kellogg would undoubtedly mount a strong opposition to the certification of any proposed class. As a preliminary matter, a nationwide class would be difficult to obtain. *See Mazza*, 666 F.3d 581 (reversing certification of nationwide class with claims as here). Even a state-wide certification presents substantial hurdles under the facts of this case.

If a class was certified, the risk of decertification would exist. *See, e.g.*, *In re Vivendi Universal S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011). Further, if the case proceeded to the merits Kellogg would of course argue that its claim the Product improved the attentiveness of children by nearly 20% was backed by adequate studies. Plaintiffs would argue otherwise resulting in a "battle of the experts" on the legitimacy of the claims challenged by this Litigation.

Significant issues also exist as to whether the advertising constituted puffery. *See Edmunson*, 2011 U.S. Dist. LEXIS 102561 (opinion by Judge Gonzalez) (finding as a matter of law razor manufacturer's advertisements about closeness and comfort of blade to be mere puffery).

Given these significant considerations, final approval of the Stipulation of Settlement is appropriate to avoid the uncertainties of continued litigation and the certification and maintenance of a class.

## C. The Risk, Complexity, Expense, and Duration of the Litigation Favor Final Approval

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming. The Court would be required to resolve difficult and complicated issues of statutory interpretation and state law. The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). Settlement here provides Class

00062398

Members with significant benefits – the approximate full cost of the Product purchased during the Class Period – without the risk and delay of continued litigation, trial and appeal. In contrast, the measure of damages or restitution, either complete refunds or the difference in the price of the Product as advertised versus as received, would not be known until after the evidence was presented at trial. This adds to the uncertainty and could result in a very small case where individual relief would be *de minimus*.

Kellogg has denied and continues to deny each and all of the claims and contentions alleged by Plaintiffs, and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Litigating this class action through trial would be time-consuming and expensive with an uncertain result. The question of whether Kellogg has sufficient scientific substantiation for its "attentiveness claims" would require analysis by experts for both Parties. In this type of case, the Parties typically utilize marketing, consumer behavior, and damages experts in addition to any scientific experts engaged. At trial, this litigation would undoubtedly ripen into a "battle of the experts."

At minimum, absent settlement, this Litigation would likely continue for years before Plaintiffs or the Class would see any recovery. This fact is exemplified by the initial settlement and subsequent appeal. That a settlement would eliminate the delay and expenses strongly weighs in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984). This is particularly true in a case like this, where Class Member addresses are not known forcing them to claim-in to receive payment. The more time that goes by, the more difficult it is to both identify Class Members and encourage them to participate in any resolution.

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims. The

BLOOD HURST & O'REARDON, LLP

00062398

avenue of relief provided by the Settlement ensures meaningful benefits to Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, including the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class and favors final approval.

### D. The Substantial Relief Provided by the Settlement Favors Final Approval

The Settlement provides real relief for the Class. It provides Class Members with a refund for the full price of the Product for up to three products purchased during the Class Period – recovery that likely exceeds the recovery a Claimant would receive if the case were tried. Class Members' ability to recoup funds spent on the Product is not limited by or dependent on their ability to provide proof of purchase. And, none of this value reverts to Kellogg; in one way or another, the entire Settlement inures to the benefit of the Class. The substantial relief afforded by the Settlement weighs in favor of final approval.

The Settlement specifically addresses the alleged deceptive practices and provides carefully-tailored economic benefits to all Class Members who submit valid claims. Class Members can claim $5 per purchase for up to three purchases. Stipulation of Settlement (ECF No. 89), §IV.A.1. The cash payment of $5 per box represents the approximate full purchase price of the Product. This alone makes it an exceptional recovery because in false advertising cases the restitutionary relief available if the case were to proceed to trial may be limited to the difference in value of the product as advertised compared to the value of the product received. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.") (citation omitted). Further, given the limited Class Period, the three box limit per Class Member is reasonable. And if funds remain after all valid claims are paid the balance will

27    Case No. 3:09-CV-01786-IEG(WMC)
MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

be used to increase the recovery on each eligible claim. Stipulation of Settlement (ECF No. 89), §IV.A.3(b).

In evaluating this factor, courts should not substitute their own judgment for the negotiated resolution of the parties. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965.

The Settlement provides substantial benefit to the Class, especially when compared with the risks of further litigation. This factor weighs in favor of approving the Settlement.

### E. The Stage of the Proceedings Favors Approval

When litigation has proceeded to the point where the parties have a "clear view of the strengths and weaknesses of their cases," this factor supports approval of a settlement. *Young v. Polo Retail, LLC*, No C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, *12 (N.D. Cal. Mar. 28, 2007). Plaintiffs' Counsel independently began investigating the alleged deceptive advertising in 2009 by obtaining publically available information. Blood Decl., ¶¶ 2, 4, 6. Collectively, the Parties demanded and exchanged informal discovery in the course of two rounds of settlement negotiations. *Id*. at ¶9. Equipped with this information, the Parties were able to make a clear assessment of their claims and the likelihood of

BLOOD HURST & O'REARDON, LLP

00062398

success on the merits. The Parties' view of their respective positions was of course, further honed through the appeal process, oral argument to the Ninth Circuit, and the Ninth Circuit's opinion. As time has passed and case law developed in this area of law, this case has become less valuable, rather than more valuable. Yet, Claimants will still recover more than they would likely recover after trial. Further, because Class Counsel were able to take advantage of the media's interest in this Litigation, they were able to obtain far better notice than economically could otherwise be obtained. The Litigation has without doubt reached the stage at which the Parties have a clear view of the strengths and weaknesses of their cases. This factor weighs in favor of final approval.

### F. The Experience and Views of Counsel Favor Approval

Courts recognize the opinions of experienced counsel supporting a settlement, especially after vigorous arm's-length negotiations, are entitled to considerable weight. *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1099 (C.D. Cal. 2011) ("The experience and views of counsel further support a finding that the Settlement is fair."); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) (holding that class counsel's views that settlement was reasonable weighed in favor of settlement); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). In this Litigation too, the experience and views of Class Counsel, who specialize in consumer fraud and false advertising class actions, strongly favors final approval.

Class Counsel are experienced class action litigators with a history of success in similar false advertising litigation. *See, e.g.,* Blood Preliminary

00062398

BLOOD HURST & O'REARDON, LLP

Approval Decl. (ECF No. 90-2), Exs. A (BHO Firm Resume) and B (BFFB Firm Resume). Class Counsel worked diligently to secure the best possible result for the Class and Class Counsel's views and recommendations concerning the Settlement are the product of thorough analysis and consideration of the issues and risks of continued litigation. Class Counsel believes the results achieved by the Settlement are eminently fair, adequate and reasonable. *See* Blood Decl., ¶24.

The Court should also consider the skill and competence of opposing counsel who negotiated the Settlement. *See*, *e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (noting that plaintiff's counsel faced "established and skillful defense lawyers"). Kellogg's is represented by a team of experienced attorneys from the Chicago and Los Angeles offices of Jenner & Block LLP, a firm skilled in class action defense. The Jenner & Block team was headed by Dean Panos, a partner in the firm's Litigation Department; a member of the Complex Commercial Litigation, Class Action and Real Estate Construction Litigation Practices; and Co-Chair of Products Liability and Mass Tort Defense Practice.

### G.    The Reaction of the Class Members Favors Final Approval

Courts have likewise recognized that a favorable reaction by class members to the proposed settlement strongly supports final approval. *See Chun-Hoon*, 716 F. Supp. 2d at 852 ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."). Class members must be allowed the opportunity to review and object to both the preliminary notice of settlement and plaintiffs application for attorneys' fees prior to final approval. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

Though the opt out and objection deadline is not for another two weeks, the reaction of Class Members so far is overwhelmingly positive. Only two opt

BLOOD HURST & O'REARDON, LLP

00062398

outs have been submitted and no objections. *See* Keough Final Approval Decl., ¶¶20-21.

The response of the members of the class to date strongly supports certification. *See, e.g., Galluci v. Boiron, Inc.*, No. 11cv2039, 2012 U.S. Dist. LEXIS 157039, at \*19 (S.D. Cal. Oct. 31, 2012) ("The response of the Class to this action, the certification of a class, and the Settlement . . . strongly favors final approval of the Settlement. Out of the estimated millions who received Notice [] only two class members submitted valid requests for exclusion. Moreover, only three Objections were file[d]."); *Garcia v. Gordon Trucking, Inc.*, No. 10-CV-0324, 2012 U.S. Dist. LEXIS 160052, at \*14, 17, 19 (E.D. Cal. Oct. 31, 2012) (no objections and less than 1% of the class electing to opt out weighed in favor of final approval and the adequacy of the amount offered in settlement); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Churchill Village, LLC*, 361 F.3d at 577 (affirming approval of a class action settlement where 45 objections were received out of 90,000 notices). Any objections filed by the objection deadline will be addressed in Plaintiffs' reply memorandum.

In sum, the Settlement is the product of mediated negotiations among all the implicated parties, fully informed of the relative strengths and weaknesses of their claims and defenses. The Settlement is fair, adequate and reasonable, and warrants final approval under Rule 23(e).

## V. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Settlement Class requested to be certified includes:

All persons or entities in the United States who purchased Frosted Mini-Wheats® branded cereal from January 28, 2008, up to and including October 1, 2009. Excluded from the Class are Kellogg's

BLOOD HURST & O'REARDON, LLP

31    Case No. 3:09-CV-01786-IEG(WMC)

employees, officers, directors, agents, and representatives and those who purchased Frosted Mini-Wheats® for the purpose of re-sale.

Stipulation of Settlement (ECF No. 89), §§II.A.4, 23; *see also* Response to Order for Precise Settlement on Class Definition (ECF No. 94). This Court previously certified the same class for settlement purposes, and that certification was not challenged. Order Granting Final Approval (ECF No. 49). For the same reasons it previously certified a settlement class, it should do so again.

The Ninth Circuit recognizes the propriety of certifying a settlement class to resolve consumer protection lawsuits. *Hanlon,* 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Id*. Where a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rather, a court may properly consider that there will be no trial in assessing the certification requirements. *Id*. ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Here, certification of the Settlement Class is appropriate for purposes of settlement because all of the requirements of Rule 23 are satisfied.

**A. The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)**

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The Parties agree that each of these requirements is easily satisfied here.

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009). Here, the numerosity requirement is readily met because joinder of absent class members would be exceedingly difficult. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Kellogg is a nationwide manufacturer of foodstuffs, and Mini-Wheats® is among its most popular brands. Hundreds of thousands of purchases were made between January 28, 2008 through October 1, 2009. *Newberg*, §3.3 (Where "the exact size of the class is unknown, but general knowledge and common sense indicates that it is large, the numerosity requirement is satisfied."). Accordingly, the numerosity requirement is met. *See Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012) ("In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it."); *see, e.g.*, *Mathias v. Smoking Everywhere, Inc.*, 2:09-cv-03434-GEB, 2011 U.S. Dist. LEXIS 121687, at *4 (E.D. Cal. Oct. 20, 2011) (finding numerosity was satisfied where the plaintiffs "calculations support[ed] the inference that the class contains at least 600 individuals").

### 2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . Their claims must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011). Still, "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*,

BLOOD HURST & O'REARDON, LLP

00062398

150 F.3d at 1019; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006). This is because the commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

This prerequisite is readily met in this case. To quote *Wiener*: "The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products." 255 F.R.D. at 664-65; *see also Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 287 (C.D. Cal. 2011) (plaintiff's claims presented common, core issues of law and fact, including "whether General Mills communicated a representation [] that YoPlus promoted digestive health" and "whether YoPlus does confer a digestive health benefit that ordinary yogurt does not").

Here, Class Members' claims necessarily involve common questions of law and fact. Plaintiffs' allegations focus on a singular advertising claim appearing on all of the Product labels during the Class Period. Whether the claim was true or false presents a common, salient issue sufficient to satisfy the Rule 23(a) commonality requirement. *See Wiener*, 255 F.R.D. at 664-65 ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising . . . ."). Thus, whether Kellogg's advertising claims are true or false will be resolved in one stroke.

### 3. Typicality

Rule 23(a)(3) typicality is satisfied where the Plaintiffs' claims are "reasonably co-extensive" with absent Class Members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

BLOOD HURST & O'REARDON, LLP

00062398

Cir. 1992). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* For example, in *Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330, 338 (N.D. Cal. 2010), in certifying UCL and CLRA claims, the court found that the typicality requirement was satisfied because: "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings."

Typicality is met here since Plaintiffs and the proposed Class assert the same claim and seek the same remedy arising from the same course of conduct – Kellogg's uniform, deceptive marketing campaign. Plaintiffs and Class Members were all exposed to the same alleged misrepresentations and seek relief for the same alleged conduct, *i.e.*, misrepresenting that "eating a bowl of Kellogg's Frosted Mini-Wheats® cereal for breakfast is clinically shown to improve attentiveness by nearly 20%." Plaintiffs, like every Class Member, were injured when they paid money to purchase the Product that was not as advertised.

Plaintiffs' claims are identical to those of the Class. Therefore, the typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the class representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Wiener*, 255 F.R.D. at 667.

The adequacy requirement is met here. The interests of Plaintiffs and Class Members are fully aligned and conflict free. Plaintiffs and Class Members seek redress for the same injury and there are no disabling conflicts of interest. Further, Class Counsel are qualified and experienced in conducting class action

00062398

litigation. *See* Blood Preliminary Approval Decl. (ECF No. 90-2), Exs. 1-5; *see also In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (a court evaluating adequacy of Counsels' representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"). Class Counsel have thoroughly and efficiently identified and investigated the claims in this lawsuit and the facts that support those claims. Blood Decl., ¶¶2-9. Class Counsel ably navigated this Litigation to a highly favorable resolution for Class Members. Accordingly, the interests of the Class have been adequately protected.

### B. The Class Should Be Approved Under Federal Rule of Civil Procedure 23(b)(3)

Plaintiffs seek certification of a Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777 (2d ed. 1986)). There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citations omitted and alterations in original); *Wiener*,

BLOOD HURST & O'REARDON, LLP

00062398

36     Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

255 F.R.D. at 668. The proposed Settlement Class meets each of these requirements.

### 1. Common Questions Predominate Over Individual Issues

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Id.* at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Fed. Prac. & Proc., §1778; *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 151 n.13 (1982) (noting that commonality and typicality tend to merge).

The predominance requirement is satisfied here. Plaintiffs allege Class Members are entitled to the same legal remedies based on the same alleged wrongdoing – exposure to the same misrepresentation. The central issues for each Class Member are (1) whether Kellogg had substantiation for its claim that eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for breakfast is clinically shown to improve attentiveness by nearly 20%, and (2) whether that misrepresentation was likely to deceive a reasonable consumer. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign, common issues predominate."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638-39 (S.D. Cal. 2011) (predominance established where all class members were exposed to the same alleged misrepresentations); *Wiener*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package). These issues predominate and are the "heart of the litigation" because they would be decided in every trial brought by individual Class Members and can be proven or disproven with the same evidence.

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

Under these circumstances, there is sufficient basis to find that the requirements of Rule 23(b)(3) are met.

### 2. A Class Action is the Superior Method to Settle This Controversy

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* at 1190 (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement may be satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this Settlement. The amount of damage to which an individual Class Member would be entitled is small. *Zinser*, 253 F.3d at 1191; *Wiener,* 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class Members to pursue their claims against Kellogg on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). Additionally, the fact of settlement eliminates any potential difficulties in managing the trial of this action as a class

BLOOD HURST & O'REARDON, LLP

38       Case No. 3:09-CV-01786-IEG(WMC)
00062398

action. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. As such, under the circumstances presented here, a class action is clearly superior to any other mechanism for adjudicating the case. The requirements of Rule 23(b)(3) are satisfied.

## VI. NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS

The notice provided to the Class was adequate and satisfies Rule 23 and all other due process requirements. Rule 23 requires that "the court . . . direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While actual notice is not required, the notice must be reasonably calculated to apprise the Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *Eisen*, 417 U.S. at 173; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen*, 417 U.S. at 173-74; *Mullane*, 339 U.S. at 315. The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 U.S. Dist. LEXIS 144490, at *21 (S.D. Cal. Dec. 15, 2011) (citation omitted). In this circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

BLOOD HURST & O'REARDON, LLP

00062398

and to come forward and be heard." *Churchill*, 361 F.3d at 575 (*citing Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

The Class Notice – collectively the long form Notice of Class Action Settlement and the Publication Notice – satisfied these content requirements. *See* Exhibits to Stipulation of Settlement (ECF No. 89-1), Exs. C (long form notice) and D (Publication Notice). The Class Notice was written in simple, straightforward language and included: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Kellogg that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the name of Class Counsel and information regarding attorneys' fees and expenses, and Plaintiffs' incentive awards; (7) the Settlement Hearing date; (8) an explanation of eligibility for appearing at the Settlement Hearing; and (9) the Settlement Website and a toll free number where additional information may be obtained. *Id*., Ex. C; Keogh Final Approval Decl., Exhs. C-F, H. The Class Notice also informed Class Members that Plaintiffs' final approval brief and request for attorneys' fees would be filed prior to the objection deadline. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at 988. Furthermore, Class Members who previously submitted a claim were sent a postcard notice stating the relief they will receive (without needing to take any further action) and where they can find out additional information about the

BLOOD HURST & O'REARDON, LLP

00062398

Settlement. Keogh Final Approval Decl., ¶13 and Ex. G.

Collectively, the Class Notice provided Class Members with sufficient information to make an informed and intelligent decision about the Settlement. As such, it satisfied the content requirements of Rule 23. *See In re Compact Disc. Minimum Advertised Price Antitrust Litig*., 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation . . . entitled to participate, including the right to exclude themselves from the class"); *see also Skilstaf, Inc. v. CVS Caremark Corp*., 669 F.3d 1005 (9th Cir. 2012) (enforcing judgment and settlement agreement in prior related action against plaintiff did not violate plaintiff's due process rights where plaintiff who was a party to the prior suit and was provided full notice of the release and covenant not to sue provisions of the settlement agreement and rejected opt out opportunity).

Additionally, dissemination of the Class Notice satisfied all due process requirements. These are small dollar, over-the-counter retail purchases, and there is no way to reasonably identify individual Class Members. Because Kellogg does not sell the Products directly to consumers, Kellogg does not have mailing addresses or other contact information for members of the Class. Therefore, the Notice Program consisted of publishing the Publication Notice in targeted sources that included a Claim Form in the Publication Notice itself, as well as directed Class Members to various other methods of obtaining the Claim Form. Additionally, Class Notice is available on the Settlement Website and is provided to Class Members who request it via the toll-free number established for this Settlement.

The Notice Plan provided under the Settlement apprised Class Members of the pendency of the action and their right to object or exclude themselves from the Settlement. This Court previously approved the form and manner of notice. Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action

BLOOD HURST & O'REARDON, LLP

41   Case No. 3:09-CV-01786-IEG(WMC)

00062398

Settlement (ECF No. 37). As detailed in the declaration of Jennifer Keough, the Class Notice Program was executed as previously detailed. *See* Keough Final Approval Decl., ¶¶5-19.

Finally, the fact of this Settlement was widely disseminated by mainstream news organizations throughout the country. The media took a great deal of interest in this matter and, as described above, the Settlement received nationwide press. *Id*. at ¶¶11-12.

## VII. PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE APPROVED

### A. Fees and Expenses Totaling 25% of the Settlement Fund Are Reasonable

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (citation omitted). The Ninth Circuit approves "two separate methods for determining attorneys' fees," *i.e.*, the percentage and lodestar/multiplier methods. *Hanlon*, 150 F.3d at 1029. However, federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage of the recovery method. *Six Mexican Workers*, 904 F.2d at 1311; *see also Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig*.), 654 F.3d 935, 942 (9th Cir. 2011)) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."). This method recognizes that the efforts of class counsel established the entire settlement, including non-monetary benefits, for the benefit of the entire class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2nd Cir. 2007); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or nonmonetary benefits conferred by the litigation are a relevant

BLOOD HURST & O'REARDON, LLP

00062398

circumstance."). The guiding principle is that attorneys' fees "be reasonable under the circumstances." *Rodriguez*, 688 F.3d at 653 (citation omitted).

In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered to be the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Six Mexican Workers*, 904 F.2d at 1311; *Rodriguez v. D.M. Camp & Sons*, No.: 1:09-cv-00700 – AWI – JLT, 2013 U.S. Dist. LEXIS 69282, at *34 (E.D. Cal. May 15, 2013) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."). The percentage may be adjusted below or above the benchmark "to account for any unusual circumstances," but reasons for adjustment must be clear. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). While 25% is the benchmark, district courts have granted and the Ninth Circuit has affirmed awards of attorneys' fees at or above a 30% fee. *See e.g., In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist LEXIS 26544, at *10 (S.D. Cal. Mar. 30, 2009) (30% for first $10 million and 25% for additional $2 million settlement).

Likewise, California state "[c]ourts recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier and the percentage of recovery method." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). *See also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000) ("Percentage fees have traditionally been allowed in such common fund cases[.]"); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996)

43     Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

(recognizing that the percentage method is appropriate where "the amount was a 'certain or easily calculable sum of money.'") (*citing Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 35 (1977)); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65-66 (2008). The key advantage of the percentage method is that it focuses on the benefit conferred on the class resulting from the efforts of counsel. *Lealao*, 82 Cal. App. 4th at 48 (percentage of benefit method is result-oriented rather than process oriented).

In California state court cases percentages in the range of 25% of the value of the recovery is typical. *Glendale City Employees' Ass'n. v. Glendale*, 15 Cal. 3d 328, 341 n.19 (1975) (approving award of 25% of the recovery); *Sanders v. City of L.A.*, 3 Cal. 3d 252, 261 (1970) (approving award of 25%); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (noting fee award of 25%); *Steinberg v. Allstate Ins. Co.*, 226 Cal. App. 3d 216, 220 n.2 (1990) (affirming award of 20% of the common fund); *Parker v. Los Angeles*, 44 Cal. App. 3d 556, 567-68 (1974) (affirming award of 33%); *Chavez*, 162 Cal. App. 4th at 50 (affirming award of 21.8 %).[5]

Plaintiffs' Counsel requests a combined fee and expense award of 25% of the settlement value created by their efforts. The value of the Settlement is $4 million (excluding the value of the injunctive relief). The requested fees and out-

---

[5] *See also In re Cal. Indirect Purchases*, No. 960886, 1998 WL 1031494, at *9 (Alameda Super. Ct. Oct. 22, 1998) (recognizing that numerous California trial courts have awarded fees in excess of 30%), citing *In re Milk Antitrust Litig.*, No. BC070061 (L.A. Super. Ct. 1998) (33 1/3% fee award)); *In re Facsimile Paper Antitrust Litig.*, Nos. 963598, 964899 and 967137 (S.F. Super. Ct. 1997) (33 1/3% fee award); *In re Liquid Carbon Dioxide Cases*, J.C.C.P. 3012 (S.D. Super. Ct. 1996) (33 1/3% fee award); *In re Cal. Indirect-Purchaser Plasticware Antitrust Litig.*, Nos. 961814, 963201 and 963590 (S.F. Super. Ct. 1995) (33 1/3% fee award); *Abzug v. Kerkorian*, No. CA-000981 (L.A. Super. Ct. 1990) (45% fee award); *Haitz v. Meyer, et al.*, No. 572968-3 (Alameda Sup. Ct. 1990) (45% fee award); *Steiner v. Whittacker Corp.*, No. CA 000817 (L.A. Super. Ct. 1989) (35% fee award fee); *Andrews v First Interstate Bank of California*, No. 953575 (S.F. Super. Ct. 1997) (30% fee award); *In re Cal. Indirect-Purchaser Infant Formula Antitrust Class Action Litig.*, J.C.C.P. No. 2557 (L.A. Super. Ct. 1993) (30% fee award); *Fang, et al. v. United Bank, et al.*, No. 873365 (S.F. Super. Ct. 1992) (30% fee award); *Sconce/Lamb Cremation Cases*, J.C.C.P. No. 2085 (L.A. Super. Ct. 1989) (30% fee award)).

44                     Case No. 3:09-CV-01786-IEG(WMC)
MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

of-pocket expenses of $1 million amounts to 25% of the Settlement Fund, and falls well within the range awarded in class action cases in California state and federal courts. Counsel achieved this Settlement only after pursuing this case since 2009. Counsel should be justly rewarded for obtaining the full cash relief that will be provided to Class Members.

### B. The Lodestar/Multiplier Crosscheck

Courts may, but do not have to apply the lodestar method as a crosscheck to assess the reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050 n.5 (lodestar method is merely a cross-check on the reasonableness of a percentage figure). The Ninth Circuit has cautioned that, while a lodestar method can be used as a crosscheck on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required. *Id*.

District courts within the Ninth Circuit have recognized that a lodestar crosscheck need not be performed where plaintiff's counsel achieves a significant result through an early settlement. *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 U.S. Dist. LEXIS 72250, at *3-4 (E.D. Cal. July 6, 2011). One reason is the recognized shortcoming of the lodestar method, mainly its failure to reward early settlement thereby encouraging costly litigation. *Vizcaino*, 290 F.3d at 1050 n.5 (the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."); *Lealao,* 82 Cal. App. 4th at 48 (percentage of benefit method is result-oriented as opposed to the process-oriented lodestar approach). Here, the Court need not conduct a lodestar crosscheck to determine the reasonableness of a 25% fee award.

Nevertheless, under the two-step lodestar/multiplier crosscheck, trial courts first calculate the lodestar, consisting of "*all* the hours *reasonably spent*,

BLOOD HURST & O'REARDON, LLP

00062398

including those relating solely to the fee," times reasonable hourly rates. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *In re Tobacco Cases I*, 216 Cal. App. 4th 570, 581-82 (2013). This "lodestar" can be adjusted upward or downward based on reasonable factors. *Ketchum,* 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general local hourly rate for a *fee-bearing* case; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider") (emphasis in original); *see also Center for Biological Diversity v. County of San Bernardino*, 195 Cal. App. 4th 866, 899 (2010). Factors include, "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42; *see also Hartless*, 273 F.R.D. at 642; *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009). Other factors courts consider are the contingencies involved in prosecuting the action and obtaining fees (*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 583 (2004)), the delay in receiving fees (*id.*), the promptness of resolution (*Lealao*, 82 Cal. App. 4th at 52, *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1058-59 (2003)), and the "public service element, and motivation to represent consumers and enforce laws" (*State of California v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985).) When determining the multiplier, trial courts should consider all factors relevant to a given case. *Lealao,* 82 Cal. App. 4th at 40.

The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so an enhancement helps determine a fee that is commensurate with what attorneys could expect to be compensated for similar service in these circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino,* 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Lealao,*

BLOOD HURST & O'REARDON, LLP

00062398

BLOOD HURST & O'REARDON, LLP

82 Cal. App. 4th at 50 (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in comparable litigation).

"Multipliers can range from 2 to 4, or even higher." *Wershba,* 91 Cal. App. 4th at 255. The court in *Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12. *See also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 2007 U.S. App. LEXIS 21061, at *8 (9th Cir. Aug. 29, 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *SternwestCorp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award which equated to a 5.2 multiplier and collecting cases in support); *Buccellato v. AT&T Operations, Inc.*, No. 10-463, 2011 U.S. Dist. LEXIS 85699, at *5 (N.D. Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3).

In this case, the lodestar of Plaintiffs' Counsel is $975,526.25 based on over 1,940 hours of work as of July 24, 2013. *See* Blood Decl., ¶32 and Plaintiffs' Counsel's Declarations submitted concurrently. Accordingly, the $1 million fee and expense award amounts to no multiplier being applied. Further, the award does not reflect the time and expenses that will necessarily be incurred to complete the final approval briefing, prepare for and attend the final approval hearing, and oversee the claim administration and payment process.

### 1. The Hourly Rates are Reasonable

Plaintiffs' Counsel is entitled to the hourly rates charged by attorneys of comparable experience, reputation and ability for similar litigation. *Ketchum*, 24 Cal. 4th at 1133. Typically, the court looks to prevailing market rates in the community in which the court sits. *Schwartz v. Sec'y of Health & Human Servs.*,

00062398

73 F.3d 895, 906 (9th Cir. 1995). Payment at full market rates is essential to fulfill the goal of enticing well-qualified counsel to undertake difficult consumer interest litigation, such as this. *San Bernardino*, 155 Cal. App. 3d at 755. The background and experience of Plaintiffs' Counsel are set forth in their attached declarations and firm resumes.[6] Plaintiffs' Counsel each has excellent reputations as class action litigators, with specialized experience in false advertising and consumer class action law. Their hourly rates are well within or below the range of rates billed by comparable attorneys in this market and are the standard rates they charge to all of their clients. Blood Decl, ¶27 and Ex. 1 (2011 National Law Journal Billing Survey), Ex. 2 (2012 National Law Journal Billing Survey).

Moreover, Plaintiffs' Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See*, *e.g.*, Blood Decl., ¶27; Declaration of Elaine Ryan in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses ("Ryan Decl."), ¶6; *Hartless*, 273 F.R.D. at 644 (in case involving BHO and BFFB as class counsel, stating that "based on the Court's familiarity with the rates charged by other firms in the San Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable"). Plaintiffs' Counsel's rates also compare very favorably with rates approved by other trial courts in class action litigation. *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577, at *59-60 (S.D. Cal. Nov. 5, 2012) (finding hourly rates ranging from $675 per hour for partners to $150 for paralegals to be reasonable for the San Diego legal market);

---

[6] An attorney's actual billing rate for similar work is presumptively appropriate. *See Wershba*, 91 Cal. App. 4th at 254-55; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

48   Case No. 3:09-CV-01786-IEG(WMC)

MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00062398

*Iorio v. Allianz Life Ins. Co. of N. America*, No. 05-CV-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, at \*31-32 (S.D. Cal. March 3, 2011) (partner rates of $750 per hour; associate rates of $595 per hour; paralegal rates of $195 per hour were reasonable); *Negrete v. Fid. and Guar. Life Ins. Co.*, No. CV-05-6837-CAS-MANx (C.D. Cal. April 19, 2010) (final order and judgment); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. 07-2633, 2008 U.S. Dist. LEXIS 110460, at \*11-13 (C.D. Cal. Sept. 22, 2008) (partner rates of $750 to $450 and associate rates of $425 to $275 were reasonable). *Lingenfelter v. Astrue*, No. SA CV-03-00264-VBK, 2009 U.S. Dist. LEXIS 87685, at \*11 (C.D. Cal. Sep. 3, 2009) ($600 is "reasonable"); *Love v. Mail on Sunday*, No. CV-05-7798-ABC (PJWX), 2007 U.S. Dist. LEXIS 97061, at \*25 (C.D. Cal. Sept. 7, 2007) (approving partner rates of $540-$690 and associate rates of $305-$485); *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF (Ex), 2005 U.S. Dist. LEXIS 31872, at \*10 (Nov. 2, 2005) (noting hourly rates may run up to $1,000 per hour in Los Angeles, with $125 to $650 routine in California). Finally, Plaintiffs' Counsel have submitted sworn declarations attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this case. *See* Declarations of Plaintiffs' Counsel, concurrently filed.

### 2. The Hours Expended Are Reasonable

The number of hours spent by Class Counsel is reasonable.[7] The 1,940 hours expended by Plaintiffs' Counsel represent efforts incurred in the Litigation

---

[7] Counsel need only submit summaries of their hours incurred; submission of billing records are not required. *Wershba,* 91 Cal. App. 4th at 254-55; *Chavez,* 162 Cal. App. 4th at 64 ("timesheets are not required of class counsel to support fee awards in class action cases."); *Lobatz v. U.S. W. Cellular of Cal., Inc.,* 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *POM Wonderful, LLC*, 2008 U.S. Dist. LEXIS 110460, at \*11-13; *Hemphill v. S.D. Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion); s*ee also In re Ins. Brokerage*

BLOOD HURST & O'REARDON, LLP

00062398

of what started as two separate actions – the *Dennis* federal court action and the *Koz* Ohio action. Blood Decl., ¶¶2-5. In addition, on behalf of Ms. Felix-Lozano, the Whatley Drake law firm had been separately investigating the claims and had gone so far as to present a demand letter to Kellogg before Plaintiffs' Counsel joined forces. *Id.* at ¶6; *see also* Sheehan Decl., ¶4. The resulting combined Litigation has been ongoing since mid-2009 through the negotiation of two settlement agreements and the appeal. When all of this effort is considered, a total 1,940 expended hours is reasonable. *Hartless*, 273 F.R.D. at 644 (holding 5000 hours spent on a case that settled prior to class certification with no appeals was reasonable).

### C.  Plaintiffs' Expenses Are Reasonable and Compensable

The reasonableness of the requested fee award is reinforced by the fact that it covers all out-of-pocket expenses incurred by Plaintiffs' Counsel to prosecute the Class claims. Both the Ninth Circuit and California state courts allow recovery of pre-settlement litigation costs in the context of class action settlements. *See Staton*, 327 F.3d at 974; *Serrano III*, 20 Cal. 3d at 35; *Rider v. San Diego*, 11 Cal. App. 4th 1410, 1424 n.6 (1992); *see also* H. Newberg & A. Conte, *Newberg on Class Actions*, §12.08, at 50-51 (2d ed. 1993). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Plaintiffs' Counsel have submitted declarations attesting to the expenses incurred in this litigation – in the aggregate, a moderate $23,866.33 was invested. *See* Blood Decl., ¶32 and Declarations of Counsel. As detailed in the declarations, Plaintiffs' Counsel incurred these costs for mediation fees, filing

*Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's reliance on time summaries of counsel proper).

fees, travel, computer research, photocopies, postage, and telephone charges. All of these expenses were reasonably and necessarily incurred, and are of the sort that would typically be billed to paying clients in the marketplace.

### D. The Service Awards Are Reasonable

Service awards "are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958; Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1303 (2006) (28% of class actions include incentive awards to class representatives). Such awards "serve an important function in promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002). The Ninth Circuit has recognized that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiffs respectfully request that the Court approve a modest service award of $5,000 for Plaintiffs Dennis and Koz, in recognition of their contributions toward the successful prosecution of this case. They reviewed relevant pleadings and kept in constant communication with their counsel throughout the litigation. They were also willing to provide both deposition and trial testimony as needed. Ryan Decl., ¶13 filed concurrently; Declaration of Frank Piscitelli in Support of Plaintiffs' Motion for an Award of Attorneys' Fees

BLOOD HURST & O'REARDON, LLP

00062398

and Expenses, ¶8, filed concurrently. Kellogg does not oppose the payment of these service awards. Stipulation of Settlement (ECF No. 89), §VIII.C.

The requested service awards fall squarely in line with amounts awarded in comparable cases. *See*, *e.g.*, *In re Mego Fin.*, 213 F.3d at 463 (approving $5,000 incentive awards); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW(EMC), 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class) (compiling cases); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ("When compared to service awards in other cases, the $7,500 payments requested here are justified."); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 U.S. Dist. LEXIS, at *19 (C.D. Cal. July 27, 2010) (approving incentive awards of $5K); *Williams v. Costco Wholesale Corp.*, No. 02 CV 2003 IEG (AJB), 2010 U.S. Dist. LEXIS, at *19-20 (S.D. Cal. July 7, 2010) (approving a $5K incentive award); *Van Vranken*, 901 F. Supp. at 300 (approving service award of $50,000).

## VIII. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court confirm certification of the Settlement Class, grant final approval of the Settlement and approve the requested award of attorneys' fees and expenses and Plaintiffs' service awards.

Respectfully submitted,

Dated: July 26, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
LESLIE E. HURST

By:  *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100

00062398

619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85012-3311
Telephone:  602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH  44113
Telephone:  216/931-7000
frank@piscitellilaw.com

CLIMACO, WILCOX, PECA,
TARANTINO
  & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH  44113
Telephone:  216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
pwarn@climacolaw.com

WHATLEY, DRAKE & KALLAS, LLC
PATRICK J. SHEEHAN
380 Madison Avenue, 23rd Floor
New York, NY  10017
Telephone: 212/447-7070
212/447-7077 (fax)
psheehan@whatleykallas.com

*Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

00062398

53                Case No. 3:09-CV-01786-IEG(WMC)

# CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CF/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 26, 2013.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP

00062398