# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ERIC FISHON, individually and
on behalf of all others similarly
situated,

    Plaintiff,

V.

PREMIER NUTRITION CORPORATION
F/K/A JOINT JUICE, INC.,

    Defendant.


    **************************************
        ZOOM VIDEOTAPED DEPOSITION OF
              HAL PORET
            March 2, 2022
           12:00 p.m. PST
    **************************************


TAKEN BY:

    THOMAS O'REARDON, ESQ.
    ATTORNEY FOR PLAINTIFFS

REPORTED BY:

    BELLE VIVIENNE, CRR
    VERITEXT LEGAL SOLUTIONS
    JOB NO. 5109980
    866 299-5127

previously conducted a survey in connection with Joint Juice litigation, correct?

A. Yes.

Q. And how many surveys had you previously, pre-2022, conducted for Joint Juice litigation?

A. One.

Q. And you recall that you were deposed two times earlier in the Joint Juice litigation, correct?

A. Yes, that sounds right.

Q. And just for the record, it was June 11, 2015, and July 19, 2017. Those are the dates of your two prior depositions, June of '15 and July of '17. And you recall that during those depositions, you gave testimony that related to that prior survey; you recall that, right?

A. Yes.

Q. If you could look at, if you even need to look at it, but it's footnote 1 of your January report. So footnote 1 of Exhibit 1, please.

Page 14

A. Okay.

Q. And footnote 1 you state, this survey detailed herein is methodologically the same as the survey I conducted in connection with the Mullins' matter; do you see that?

A. Yes.

Q. And the Mullins' matter is the prior Joint Juice litigation, correct?

A. Yes.

Q. And then -- and then you go on and you list three exceptions, correct?

A. Yes.

Q. And by "methodologically" the same as the prior Joint Juice survey, what do you mean?

A. I mean most of the aspects of the methodology were -- were the same in terms of things like the screening questions and the main survey questions.

Q. And so is it accurate that the testimony you gave in June of 2015 and July of 2017 about the methodology of the survey in the Mullins/Joint Juice matter, you would provide those same answers to

Page 15

those same questions with respect to the Fishon 2022 Joint Juice survey?

MS. AMEZCUA: Objection, calls for a hypothetical.

You can answer if you can, Hal.

A. I -- I would say that my testimony from the previous depositions would be comparable with respect to aspects of the surveys that were the same in most regards. However, there are also the few differences that I noted between the surveys, and I think there are also some different comments that your rebuttal expert has raised in this case that might, you know, warrant additional or slightly different responses to address additional, you know, expert commentary in this case.

BY MR. O'REARDON:

Q. So other than the three differences that you list in footnote 1, and to address the commentary like you said that Dr. Dennis raises about your current survey, are there any ways in which your testimony about the survey in the Mullins' Joint Juice case would be

Page 16

different than the testimony you would give about those same aspects in the Fishon survey for Joint Juice?

A. There's nothing I can think of in the abstract, but, of course, any testimony I give would be based on what you ask me. So until I hear what you ask me, I don't know what the answer would be.

Q. And -- and let me give you an example. So -- so you gave testimony about the propriety of open-ended questions and the advantages of open-ended questions. Do you have any reason to believe that your testimony would be any different today than it was in 2015 or 2017 about the propriety or advantages of open-ended questions in the survey like the one you conducted?

MS. AMEZCUA: Objection, vague. There was quite a bit of testimony about open-ended questions, so if you want to point him to specific testimony, I think that would be helpful.

A. On -- on the high, general level

Page 17

Veritext Legal Solutions
866 299-5127

you're asking me, the answer is no, I don't have any reason to think that my testimony would be different. But, again, I would have to know what the question is to be able to answer it and tell you whether there's anything additional I have to say.

BY MR. O'REARDON:

Q. So you list three differences in footnote 1, differences as between the Fishon/Joint Juice survey you conducted and the Mullins/Joint Juice survey you conducted. The first one is you included updated quality control procedures, right?

A. Yes.

Q. And by that, what do you mean?

A. I mean that the survey has certain questions and procedures that are there not for -- to obtain substantive answers but to make sure that respondents are paying attention and reading the answers and responding approximately. And so in conducting -- or in designing the new survey, I used certain -- I used my -- the -- the more updated procedures that I

Page 18

have developed over time between 2014 and 2021 or 2022.

Q. All right. Specifically what are these updated quality control procedures that you utilized this time?

A. I'll have to look at the two survey questionnaires in comparison to give you an example. So I'm going to look at my copy of my report on the survey from the original survey.

Q. Thank you.

A. So for one, this is relatively minor, but the newer survey asked respondents to type in their year of birth specifically, as opposed to the previous survey which asked them to type in their age. The previous survey had an answer -- had a -- had a quality control question that asked the respondents to input the answer choice "south" as a quality control measure, whereas the updated survey had a different -- well, it had a couple of different things. Number one, it had a question that asked which of the following social media services, if any, have you

Page 19

used in the past month, and it contained a fictional answer choice, which is "trouba," T-R-O-U-B-A, and that was a quality control measure designed to weed people out who are clicking answer choices without paying sufficient attention because that is not an existing social media service. And my newer survey also included a question that was a quality control question that -- it said for quality assurance, please type the word "survey" in the blank next to the other box, and then click to continue. And then below that, there's a selection of choices that appears to be a scale that says strongly agree, agree, neutral, disagree, and strongly agree. So it's a quality control procedure because if somebody's just quickly glancing at it and not reading the instructions and not paying attention to the answers they're giving, they're going to just think it's a scale question and pick a choice on the scale, but if they're actually reading the instructions and following them, they will

Page 20

know they're supposed to type the word "survey" into the box next to other, so that is another quality control procedure that was used for this survey that I do not believe was in the original survey.

Q. Anything else?

A. I believe that's it with respect to the updated quality control procedures.

Q. The second difference between the Joint Juice surveys that you point out in footnote 2 is that the 2022 survey targeted New York State residents and that's as opposed to the previous survey targeted people nationwide, correct?

A. Yes.

Q. And then the third difference between these two Joint Juice surveys that you point out in footnote 1 is that you added two additional questions asking respondents when they first purchased Joint Juice and when they most recently purchased Joint Juice, right?

A. Yes.

Q. And why did you add that to this current Fishon/Joint Juice survey?

Page 21

6 (Pages 18 - 21)