# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **CAROL MARMO, et al.,** | ) | **CASE NO. 8:00CV527** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **MEMORANDUM AND** |
| **vs.** | ) | **ORDER ON COSTS** |
| | ) | |
| **TYSON FRESH MEATS, INC.,** | ) | |
| **f/k/a IBP, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Plaintiff's Bill of Costs (Filing No. 460). Plaintiff Carol Marmo is seeking $165,604 in costs associated with the trial of this case. The Defendant Tyson Fresh Meats, Inc. (hereafter "IBP") objects to the Bill of Costs for the reasons outlined in its Response and Objections to Plaintiff's Bill of Costs (Filing No. 463). After IBP filed its response, Marmo filed a supplement to her Bill of Costs and a reply, which prompted IBP's Motion to Strike (Filing Nos. 465, 466, 467).

***Background***

This case was filed in state court in 2000. In 2001, Marmo's action was consolidated with several other cases filed by landowners against IBP. Ultimately, thirteen cases were consolidated for discovery and pretrial management (Filing No. 16). Marmo's case was tried to a jury over several days in February 2005. The jury returned a verdict in Marmo's favor on her claim of private nuisance, and awarded her damages in the amount of $17,500 (Filing No. 252).

At the commencement of this action, Marmo alleged claims based on theories of negligence, strict liability, and private nuisance, and she sought damages for the loss of enjoyment of her property and for personal injuries, including those of a serious and

permanent nature. IBP filed several motions to limit the issues for trial, and those motions were largely successful. For example, IBP was granted summary judgment on Marmo's claim based on strict liability. IBP was denied summary judgment on its defense that the statute of limitations had run on the negligence claim, because I found there were genuine issues of material fact regarding what Marmo knew and when she knew it. Those facts were established when Marmo testified at trial, and IBP received a directed verdict on the negligence claim based on the running of the statute of limitations. IBP also pursued several motions in limine to exclude or limit expert witnesses' testimony. In response to IBP's motion to exclude the testimony of Marmo's medical expert, Kay Kilburn, M.D., Marmo withdrew Kilburn as an expert witness. When IBP successfully limited the scope of Harriet Amman's testimony to exclude medical causation opinion, Marmo was without expert medical evidence necessary to prove causation for the permanent injuries she alleged. Marmo's proposed expert Robert Unsworth's testimony was also excluded as was the testimony, except for the proffer, of Renee Kalmes. The issues that went to the jury were the private nuisance claim and the amount of damages to which Marmo was entitled for the discomfort, annoyance, and inconvenience that she experienced in the use and enjoyment of her residential property as a result of the nuisance.

IBP advanced a general objection to the Bill of Costs, arguing that the costs should be apportioned between the thirteen once-consolidated cases. IBP also raised objections to specific costs, for example, arguing that Marmo failed to provide the information required by the Court's Bill of Costs Handbook ("Handbook") to enable the Court to award certain costs for several deposition transcripts. Because the Clerk of the Court is unable to address IBP's legal argument that the costs should be apportioned evenly among the

2

thirteen previously-consolidated cases, the Bill of Costs will be determined by the Court. It is against this backdrop that I consider Marmo's Bill of Costs in the amount of $165,604. For the reasons that follow, I will award Carol Marmo costs in connection with this action in the amount of $23,003.56.

## *Analysis*

The United States Supreme Court has stated that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

> Federal Rule 54(d)(1) of Civil Procedure provides that costs other than attorney fees "shall be allowed as of course to the prevailing party" unless the court otherwise directs. We have held that this provision codifies a presumption that the prevailing party is entitled to costs. *Martin v. Daimler Chrysler Corp.*, 251 F.3d 691, 696 (8th Cir. 2001). The presumption is rebuttable.. . . *Id.*

*Leonard v. Southwestern Bell Corp. Disability Income Plan*, 408 F.3d 528, 532 -533 (8th Cir. 2005).

It has long been recognized that a district court has "substantial discretion" in determining the amount of an award. *Computrol, Inc. v. Newtrend, L.P*, 203 F.3d 1064, 1072 (8th Cir. 2000) citing *Greaser v. Missouri,* 145 F.3d 979, 985 (8th Cir.) *cert. denied,* 525 U.S. 1056 (1998). *See also Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 55 (8th Cir. 1977) (holding that "[w]hile costs are normally awarded to the prevailing party, such an award is within the sound discretion of the trial court.") In this exercise of discretion, some

courts have refused to award costs to the prevailing party, and others have reduced taxable costs for reasons, such as: the prevailing party unduly extended or complicated resolution of the issues; the costs were unnecessary and unreasonably large; the judgment was insignificant compared to the costs sought; much of the relief sought by plaintiffs was not granted; and the equities demanded a lesser award. See, *e.g., Hillside Enterprises v. Carlisle Corp.,* 69 F.3d 1410, 1416 (8th Cir. 1995)*; United Handicapped Federation v. Andre,* 622 F.2d 342, 348 (8th Cir. 1980); *ADM Corp. v. Speedmaster Packaging Corp.*, 525 F.2d 662, 665 (3rd Cir. 1975); and *Concord Boat Corp. v. Brunswick Corp.,* 17 Fed.Appx. 491, 493 (8th Cir. 2001).

I conclude that strict apportionment of all costs claimed by Marmo among the several plaintiffs in these formerly-consolidated cases is not a fair or appropriate method for taxing costs in these cases, because each case must be tried on its own merits, if settlement is not reached. While the plaintiffs have proceeded under similar theories of recovery, the Court has ordered separate trials because each case raises distinct issues based on each plaintiff's property and health. Under such circumstances, I cannot say that the plaintiffs must share costs equally any more than I can say that any individual plaintiff has generated more costs than others may generate in a given case. Accordingly, I decline to apportion the costs sought by Carol Marmo on a strict 1/13th basis. *See generally, Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002). However, given the record presented to me with regard to Exhibit E, which outlines expenses claimed for exemplification and copying, I conclude there is some basis for apportioning those costs among the thirteen cases that were consolidated for pretrial management as more fully explained below.

4

*Filing and Subpoena Fees*

Marmo seeks the un-reimbursed portion of her state court filing fee of $45, and the costs associated with the service of subpoenas for certain trial witnesses and for an exhibit. In Marmo's reply, she acknowledged that the $50 fee charged for service upon Adi M. Pour should be withdrawn because Pour was not a witness in this case. She seeks $595, plus the $45, which are reasonable. I will tax $640 as costs in this category.

*Court Reporter Transcription Costs for Depositions*

Depositions that are purely investigative or for discovery are not taxable as costs. See *Koppinger v. Cullen-Schlitz and Assocs.,* 513 F.2d 901, 911 (8th Cir.1975); *see also Baker v. First Tennessee Bank Nat. Ass'n*, 142 F.3d 431 (6th Cir. 1998). Where, as here, the defendant has presented specific objection to the recovery of costs associated with the depositions, the Court must consider their necessity for trial. Perhaps unlike the court in *Movitz v. First Nat. Bank of Chicago,*, 982 F. Supp. 571, 575 (N.D. Ill. 1997), from which Marmo extensively quotes in her reply brief, this Court does not presume that depositions of witnesses not called at trial were reasonable and necessary. Rather, this Court requires a showing of their reasonableness and necessity for trial. This Court's Handbook states in relevant part:

> [T]he prevailing party must show that the deposition was relied upon for cross-examination or impeachment purposes, or a showing that the deposition was useful "in assisting a resolution of the contested issues." The costs incurred will normally not be allowed unless the prevailing party furnishes evidence that the deposition was reasonably necessary to the development of the case at the time the deposition was taken. Depositions taken solely for discovery are not taxable as costs. If the depositions were introduced in evidence or used at trial then it is proper to conclude that they were necessarily obtained for use in the case.

Handbook at 3.[1]  The Handbook requires more explanation from counsel than the generic statement that all the depositions "appear even in hindsight to be reasonably necessary when they were taken."  Skalka Aff. at ¶ 5.

In response to IBP's detailed objections to the Bill of Costs, Marmo sought to supplement her Bill of Costs to demonstrate each deposition's use in trial or during motion practice.  I will grant IBP's motion to strike the supplement, in part because it is imperative that counsel provide materials to the Court at the appropriate juncture in the proceedings and not in reaction to opposing counsel's observation of the deficiency.

I have reviewed the transcription fees, and I conclude that the costs associated with the depositions of those witnesses who testified at trial were reasonably required for the preparation of the trial and contributed to the resolution of the issues tried.  I conclude that the transcription fees associated with the following depositions should be taxed to IBP: Douglas Carter ($241.25 & $473.85); Ken and Wendy Modlin ($437.05) Percival Wolf ($382.65); Ron and Jean Krause ($334.25); Julie Krogh ($159.25); John Walton ($238.85); James Joyce ($493.06 & $520.95); Jana Milford, Ph.D. ($214.85); Harriet Amman, Ph.D. ($808, $120.50 & $475); James Lochner ($846.95 & $1,212.30); Roy Ball ($1,212.70, $15 & $ 223.60);  William Tolle ($891.60); Donald Willoughby ($745.80); Eugene Leman ($570.10); William McAllister ($529.95); Troy Calhoun ($436.25); Gary Mikelson ($356.90); and Mark Ewen ($65 & $84.50).  These fees total $12,090.16.

---

[1] All references are to the Bill of Costs Handbook (Revised June 2005), which is available on the Court's website.  While I acknowledge that Marmo's Bill of Costs was submitted on March 30, 2005, the only substantive change made by the 2005 revision related to hearings before the Clerk.

I recognize that testimony of many of the witnesses who were deposed but not called to testify at trial was used in connection with motion practice. Because Marmo was unsuccessful on the motions, however, I am not persuaded that the depositions' use in connection with those motions is a reasonable basis upon which to award costs associated with the depositions. When the proponent of a witness withdraws that witness from the case in response to a motion in limine, or when the Court concludes that a witnesses does not have the expertise under Fed. R. Evid 104 and 702 to assist the jury in any meaningful fashion on the determination of an issue, the party opposing that witnesses should not have to bear costs associated with the other party's gamble in that regard.[2] Finally, I conclude that fees incurred by Marmo for transcripts from hearings, the trial, and duplicative deposition transcription fees were incurred for the convenience of her counsel. Moreover, I find that counsels' ability to refer to the transcripts did not contribute measurably to the determination of motions or any contested issue at trial. These expenses will not be taxed. [3]

---

[2] The following witnesses were deposed, but they were either not called as witnesses during the trial, or were excluded by the Court. Most of these depositions appear to have been taken for purposes of investigation and discovery. I conclude that Marmo failed to demonstrate that these depositions helped to establish some element of her claim at trial, and therefore, I conclude that the expenses related to these witnesses' work in the Marmo case are not taxable. These witnesses are: David Krogh, Linda Carter, Kenneth and Agnieszka Frederick, Charles and Susan Twyford, Diana Spirk, Kaye Kilburn, M.D., Bruce Smith, Shari Libicki, Lisa Morrow, Ph.D., Herman Staudenmeyer, M.D., Paul R. Lees-Haley, Ph.D., John Warmerdam, Ph.D., Deane Davenport, John Bertoni, M.D., Robert Unsworth, William Meggs, M.D., Murray and Joan Larson, Darcy Shimitz, Thomas Allems, and Renee Kalmes.

[3] Includes transcripts from the following dates 4/25/03; 5/29/03; 1/27/05; daily copy from 2/18/05 and 3/14/05; and duplicates of Meggs' deposition from 11/15/04 and expedited copies of transcripts.

*Witness Fees*

Marmo claims witness fees in the amount of $8,923.17. I agree with IBP's objection that the witnesses who did not provide testimony for the trial should not be paid a witness fee. Based on this objection, and the fact that I decline to award $666.25 based on the description "taxi/shuttle" without additional explanation, I will award witness fees and expenses in the amount of $6,807.62.

*Exemplification and Copies necessarily obtained for use in the case.*

Marmo's request for exemplification and copies in the amount of $124,914.47 is disproportionate in light of the jury award of $17,500. Plaintiff seeks reimbursement for copies made since the commencement of the case in the year 2000. With regard to photocopying, notebooks, and exemplification, the Court's handbook on costs states:

> This category covers the cost of prosecution in the courtroom, and includes documents and exhibits used at trial. . . . Exemplification covers demonstrative evidence, such as models, charts, photographs, illustration, and other similar graphic aids. Copying expenses for papers "necessarily obtained for use in the case include copies of briefs, court documents and trial exhibits, provided however, that the copies were received as evidence, prepared for use in presenting evidence, or obtained for service on the other parties in the litigation and the court. . . . Routine copy expenses, those made for service, filing or for convenience of counsel are **not** taxable within the discretion of the taxation clerk, absent prior court approval.

Handbook at 8 (emphasis original). I find that this is not the type of case where routine copy expenses should be awarded. The 22-page summary of the copying and exemplification expenses provided to the Court and the documentation of the individual expenses provide very little information about what expenses represent "costs of prosecution in the courtroom" in the Marmo case. The descriptions are brief and general. Several descriptions demonstrate that the expenses contained in Exhibit E are the costs

incurred by Marmo's counsel in their representation of the multiple plaintiffs associated with the previously-consolidated cases during every stage of the proceedings. For example, there are references to video production for both the Marmo and the Larsen trials (p. 1); references to correspondence to co-counsel and clients (p. 2); discovery requests (p. 3); correspondence to the Carters and Kroghs (p. 4); correspondence regarding the Twyfords (p. 5) Krause medical records (p. 6), references to Fish, Frederick, Spirk and Modlin (p. 8) references to an expert witness questionnaire (p. 11) school records of W. Modlin (p. 12) and even a letter to Aidi Pour – whom Marmo concedes was not involved in this case. (p. 13). I cannot reasonably infer that the $124,914.47 sought by Marmo was spent on the prosecution of her case.

No doubt, there were legitimate exemplification and copying costs incurred in the preparation of Marmo's case for trial. Because Marmo's case was tried separately from the others, I will not award exemplification and copy costs incurred in all thirteen cases at this time. In an attempt to discern those costs associated with Marmo's trial, I identified and added together all the entries that contained the word "trial" that were incurred in the year 2005. Those entries total $45,055.26, and include the service of an outside vendor, Martins, who apparently prepared many of the exhibits for use at trial. Because it is clear that Exhibit E contains costs related to all thirteen cases; and because many of the materials prepared Marmo's trial, such as graphic aids, visual aids, and materials prepared for electronic display, will be useful in the other cases; and because the costs in this category are so disproportionate to the relief obtained at trial, I will award 1/13th of the amount incurred since January 1, 2005, where the descriptions indicate some link to the trial, that is $3,465.78, to Marmo for exemplification and copying.

***Conclusion***

The amounts that I have calculated in the various categories total $23,003.56, and I will order IBP to pay Marmo taxable costs in that amount. I do not represent that my calculations are precise. They are not. In awarding $23,003.56 of the $165,604.00 sought by Marmo, I have also taken into consideration her limited success at trial and the lack of sufficient, reliable information in Exhibit E of the Bill of Costs permitting me to link the requested costs with Marmo's trial and/or the corresponding Handbook provisions.

For these reasons,

IT IS ORDERED:

1.   Defendant's Motion to Strike (Filing No. 467) is granted;

2.   The Clerk shall strike from the record the Plaintiff's Supplement at Filing No. 465; and

3.   Defendant Tyson Fresh Meats, Inc. shall pay to Plaintiff Carol Marmo taxable costs in the amount of $23,003.56.

Dated this 7th day of July, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge