BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-CV-06980 RS<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF NONTAXABLE EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVE**<br><br>**DATE:      October 20, 2022**<br>**TIME:       1:30 p.m.**<br><br>**CLASS ACTION**<br><br>Judge:          Honorable Richard Seeborg<br>Courtroom:   Courtroom 3, 17th Floor<br><br>Complaint Filed:   December 5, 2016<br>Trial Date:           May 23, 2022 |

BLOOD HURST & O' REARDON, LLP

00194816

BLOOD HURST & O' REARDON, LLP

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    THE PERCENTAGE METHOD IS APPROPRIATE HERE ................................1

    A.    The Total Recovery Is the Judgment Amount Plus Fees and Expenses ...................1

    B.    33% of the Total Recovery Is Fair and Reasonable ....................................................3

    C.    Under Fee-Shifting Statutes, Fees Are in Addition to the Class Judgment ..............5

III.   THE LODESTAR DEMONSTRATES THE REASONABLENESS OF THE REQUESTED FEE AWARD ..............................................................................6

    A.    Detailed Time Records are Not Permitted Unless Ordered .......................................6

    B.    Plaintiff's Counsel's Lodestar Is Reasonable............................................................8

        1.    *Mullins*-Only Time was Not Included in the Lodestar Calculations.............8

        2.    Work on Other Joint Juice Cases that Had No Bearing on *Montera* Was Not Included..................................................................................9

        3.    Premier's Overbilling and Overstaffing Arguments Are Baseless .............10

IV.    THE HYBRID METHOD APPLIES TO THIS CASE .......................................11

V.     PREMIER'S 25% PROPOSAL IS UNREASONABLE AND INEQUITABLE ................12

VI.    THE REQUESTED EXPENSES SHOULD BE AWARDED ...........................13

    A.    Appropriate Documentation Was Provided ............................................................13

    B.    Class Counsel Do Not Seek Expenses Unrelated to *Montera*................................13

    C.    Premier's "Apportionment" Theory is Without Support and Inequitable................15

VII.   CONCLUSION ..................................................................................................15

00194816    PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dev. Grp., LLC v. Island Robots of Fla.*,
No. 17-CV-3223 (NGG) (PK), 2019 U.S. Dist. LEXIS 174873
(E.D.N.Y. Oct. 4, 2019) ............................................................................................ 13

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2021 U.S. Dist. LEXIS 50546
(N.D. Cal. Mar. 17, 2021) ......................................................................................... 13

*Bellinghausen v. Tractor Supply Co.*,
15-cv-02277-JST306 F.R.D. 245 (N.D. Cal. 2015) .................................................... 6

*Bernstein v. Virgin Am.*,
No. 15-cv-02277-JST, 2020 U.S. Dist. LEXIS 259809
(N.D. Cal. Jan. 21, 2020)........................................................................................... 12

*Children's Hosp. & Med. Ctr. v. Bontá*,
97 Cal. App. 4th 740 (2002)....................................................................................... 14

*DeLoach v. Philip Morris Cos.*,
No. 1:00CV01235, 2003 U.S. Dist. LEXIS 23240
(M.D.N.C. Dec. 19, 2003) ............................................................................................ 2

*Democratic Party of Wash. State v. Reed*,
388 F.3d 1281 (9th Cir. 2004)...................................................................................... 8

*In re Easysaver Rewards Litig.*,
No. 09-cv-02094-BAS-WVG, 2021 U.S. Dist. LEXIS 13119
(S.D. Cal. Jan. 22, 2021) .............................................................................................. 7

*Fox v. Vice*,
563 U.S. 826 (2011) ................................................................................................. 1, 7

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016)........................................................................................ 2

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................................... 6

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013)...................................................................................... 7

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)......................................................................................... 13

00194816

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

*Hart v. BHH, LLC*,
  No. 15cv4804, 2020 U.S. Dist. LEXIS 173634
  (S.D.N.Y. Sept. 22, 2020) ....................................................................................... 3

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045
  (N.D. Cal. Dec. 17, 2018) ..................................................................................... 13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................ 8

*In re Home Depot Inc. customer Data Sec. Breach Litig.*,
  931 F.3d 1065 (11th Cir. 2019) .............................................................................. 2

*Klein v. Robert's Am. Gourmet Food, Inc.*,
  808 N.Y.S.2d 766 (App. Div. 2nd Dept. 2006)....................................................... 7

*Knox v. John Varvatos Enters. Inc.*,
  520 F. Supp. 3d 331 (S.D.N.Y. 2021) ................................................................... 12

*Kornell v. Haverhill Ret. Sys.*,
  790 Fed. Appx. 296 (2d Cir. 2019) ........................................................................ 7

*Krakauer v. Dish Network, L.L.C.*,
  No. 1:14-CV-333, 2018 U.S. Dist. LEXIS 203725
  (M.D.N.C. Dec. 3, 2018)......................................................................................... 5

*McKeage v. TMBC, LLC*,
  847 F.3d 992 (8th Cir. 2017).............................................................................. 5, 12

*Montera v. Premier Nutrition Corp.*,
  No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 144491
  (N.D. Cal. Aug. 12, 2022) ...................................................................................... 4

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008).............................................................................. 11

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 867 (N.D. Cal. 2016) ...................................................................... 14

*Mullins v. Premier Nutrition Corp.*,
  No. 13-cv-01271-RS, 2016 U.S. Dist. LEXIS 51140
  (N.D. Cal. Apr. 15, 2016)...................................................................................... 14

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  No. 10-md-02143-RS, 2021 U.S. Dist. LEXIS 171405
  (N.D. Cal. Sept. 9, 2021)..................................................................................... 6, 7

*Ridgeway v. Wal-Mart Stores Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2017) ............................................................. 10, 12

00194816

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................................................ 6

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
    No. C-09-5676 EMC, 2011 U.S. Dist. LEXIS 138093
    (N.D. Cal. Dec. 1, 2011) ...................................................................................................... 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
    336 F.R.D. 588 (N.D. Cal. 2020) ......................................................................................... 11

*Soler v. City of San Diego*,
    No. 14cv2470-MMA (RBB), 2021 U.S. Dist. LEXIS 114484
    (S.D. Cal. June 18, 2021) ..................................................................................................... 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................................. 5

*Stewart v. Apple Inc.*,
    No. 19-cv-04700-LB, 2022 U.S. Dist. LEXIS 139222
    (N.D. Cal. Aug. 4, 2022) ........................................................................................................ 7

*Torcivia v. Suffolk Cty.*,
    437 F. Supp. 3d 239 (E.D.N.Y. 2020) ..................................................................................... 7

*U.S. ex rel. Trakhter v. Provider Servs., Inc.*,
    No. 1:11-cv-217, 2019 U.S. Dist. LEXIS 96718
    (S.D. Ohio June 10, 2019) .................................................................................................... 11

*In re Vivendi Universal, S.A. Sec. Litig.*,
    No. 02-cv-5571 (SAS), ,2016 U.S. Dist. LEXIS 58181
    (S.D.N.Y. Apr. 29, 2016) ........................................................................................................ 5

*Vizcaino v. Ritz Carlton Hotel Co., L.L.C.*,
    No. 607281/2016, 2020 N.Y. Misc. LEXIS 2319
    (Sup. Ct. May 8, 2020) ......................................................................................................... 12

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .................................................................................................. 7

*Zink v. First Niagara Bank, N.A.*,
    No. 13-CV-01076-JJM, 2016 U.S. Dist. LEXIS 179900
    (W.D.N.Y. Dec. 29, 2016) ................................................................................................. 2, 3

**Rules**

Civ. L.R. 54-5(b) ........................................................................................................................ 6

Fed. R. Civ. Proc. 26(a)(2) ........................................................................................................ 14

BLOOD HURST & O' REARDON, LLP

Case No. 3:16-cv-06980-RS

00194816

PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

## I.    INTRODUCTION

This has been a long, fiercely defended action with an excellent result for the Class. Plaintiff's Counsel should be paid for their time, effort, and risk incurred and reimbursed for the expenses they have been carrying, some of which for more than nine years.

Meanwhile, under the consumer protection statutes at issue, these fees and expenses are shifted to Premier as the non-prevailing defendant. This is a benefit to the Class and, in accordance with well-established law, is added to the initial judgment amount. Once the total class benefit is determined, under the common fund method the fees are calculated.

Premier at times quibbles with these principles and at times concedes them but offers no legally supportable counterapproach. Instead, it nibbles around the edges, taking unsubstantiated pot-shots at counsel, getting its facts wrong, and over-reaching in its efforts to decrease the amount to which the Class and Plaintiff's Counsel are entitled.

Plaintiff's Counsel's lodestar is very reasonable. The Civil Local Rules prohibit the submission of detailed time records unless ordered by the Court. No such order was sought or would be justified because here, Plaintiff's Counsel's lodestar represents a mere 1.06 multiplier on the fees sought under the percentage method of fee calculation.

Plaintiff's Counsel have earned and should be awarded $6,806,031.96 in fees and reimbursed $1,133,794.77 in expenses. Of these expenses, $132,096.79 are taxable and $1,001,697.98 are nontaxable.

## II.    THE PERCENTAGE METHOD IS APPROPRIATE HERE

Premier agrees "the percentage method is the preferred recovery method to determine attorneys' fees in class actions." Opp. at 7. But in listing most of the reasons for this, it omits the one most relevant here: "the determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### A.    The Total Recovery Is the Judgment Amount Plus Fees and Expenses

Premier asserts it is only appropriate to award fees as a percentage of the total recovery when there is a class settlement and not when there is a class judgment. This is untrue.

Premier argues the requested fee award is based "on an inflated 'constructive' common

BLOOD HURST & O' REARDON, LLP

00194816

BLOOD HURST & O' REARDON, LLP

fund—which Class Counsel manufactured for the sole purpose of making their [fee request] appear reasonable." Opp. at 7. According to Premier, when fees are disputed "there is no 'package deal' and thus no 'constructive' common fund—the common fund achieved for the class is simply the judgment amount." *Id.* at 8. Premier ignores that fees and expenses are typically borne by the party who incurred them. However, with fee shifting statutes, fees and expenses benefit the party who obtained the shifted fees. That is, they are an additional recovery that is properly included in calculating a fee award. *Zink v. First Niagara Bank, N.A.*, 2016 U.S. Dist. LEXIS 179900 (W.D.N.Y. Dec. 29, 2016); Motion at 11-12 (collecting cases).

Premier principally relies on the inapposite settlement opinion from *In re Home Depot Inc.*, 931 F.3d 1065 (11th Cir. 2019). There, the Eleventh Circuit analyzed whether a settlement provision to pay "reasonable" fees and costs in an undetermined amount on top of $25 million set aside for class members "should be characterized as a constructive common fund or as a fee-shifting contract." *Id.* at 1071. The distinction mattered in *Home Depot* because the district court calculated fees under the lodestar multiplier approach, which the defendant contended was improper in fee-shifting cases. *Id.* at 1082. That issue is not relevant here because Plaintiff is not seeking a multiplier.

Premier also cites *DeLoach v. Philip Morris Cos.*, 2003 U.S. Dist. LEXIS 23240 (M.D.N.C. Dec. 19, 2003). In *Deloach*, the court rejected plaintiff's argument that a constructive common fund had been created and awarded fee-shifted fees ($71mm) based on a 4.45 lodestar multiplier. *Id.* at *38. This inapposite opinion does not help Premier who insists Plaintiff is entitled to a percentage of the overall recovery (which includes shifted fees and expenses).

Premier's request that the Court calculate attorney's fees based on a percentage of the initial judgment amount alone rather than the total benefits fails. Fees are awarded on a gross, rather than a net, benefit basis. *See* Motion at 11-12 (collecting cases). "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorneys' fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016).

Plaintiff's method of calculating the total benefit is the same method approved in *Zink*, 2016 U.S. Dist. LEXIS 179900. There, defendant created a $2.2 million fund to pay class members.

Plaintiff's counsel sought fees and expenses of $733,333 to be paid in addition to a $2.2 million fund. The fee request represented 25% of the value of all amounts recovered, including fees and expense: ($733,000) / ($2,200,000 + $733,000) = 25%. *Id.* at *20-21. The court explained, "While it may seem curious to include separately-paid attorney's fees as a 'benefit to the class' when the class has no entitlement to them, the reason is that if the fees were not separately paid, then they would be paid out of the amounts otherwise available to the class, thereby diminishing the class recovery." *Id.*; *see also Hart v. BHH, LLC*, 2020 U.S. Dist. LEXIS 173634, at *21-22 (S.D.N.Y. Sept. 22, 2020) ("The denominator should be the total benefit given to the class. The class benefits from having counsel represent them. Therefore, even if indirectly, attorneys' fees paid directly by the defendant are a benefit to the class. … Accordingly, this Court will include the claims class members submitted, attorneys' fees, costs, and expenses, and incentive awards to calculate the denominator.").

By prevailing at trial Plaintiff's Counsel created a benefit to the Class in the amount of $12,895,454.90 plus the shifted fees and expenses Premier will have to pay. Plaintiff's Counsel's lodestar and expenses expended in pursuit of the ultimate result achieved exceeds $6,409,284,75 (lodestar) and $1,133,794.77 (expenses).[1] As such, Plaintiff's requested fee award properly represents 33% of the total amount obtained.

### B.   33% of the Total Recovery Is Fair and Reasonable

As detailed in Plaintiff's opening brief, a fee equal to 33% of the gross recovery is warranted because Class Counsel: (i) secured a significant benefit for the Class after a nine-day jury trial and over nine years of litigation, including by defeating summary judgment, defeating motions for judgment on the pleadings, certifying the Class, defeating two motions for decertification, defeating a motion for judgment as a matter of law, prevailing on *Daubert* motions and motions *in limine*, and

---

[1]   The actual lodestar and expense amounts exceed these figures, including because class notice and administration costs are not included (and will be in the hundreds of thousands of dollars, if not more) and Plaintiff's Counsel's lodestar only includes time through August 25, 2022. Over the last thirty days, Class Counsel has devoted over 200 hours to this litigation, including over 100 hours to opposing Premier's barrage of motions attempting to undo the judgment. Blood Reply Decl., ¶ 6. None of this time, which will continue to grow, was included in the previously reported lodestar.

BLOOD HURST & O' REARDON, LLP

00194816

PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

developing a strong evidentiary record on which to try the action; (ii) incurred significant risk litigating these claims against a well-resourced corporation that retained three (now four) AmLaw 100 law firms who continue their scorched-earth litigation in a case that normally would have settled long ago; (iii) navigated the voluminous technical scientific landscape undergirding the Class' claims; and (iv) shouldered the full burden of this contingent fee action, incurring over 9,635 hours of work and over $1.1 million in out-of-pocket expenses, and counting. By far this is Plaintiff's Counsel's oldest case. This case more than justifies an upward deviation from the Ninth Circuit's 25% benchmark. *See* citations at Motion at 13-15.

Premier argues that none of the applicable factors support an upward adjustment from the 25% benchmark. Opp. at 10-12. Premier offers nothing but rote arguments about there being little success, little risk, and little burden. The truth is this type of case is almost never tried, and when it is, the plaintiff class has lost. Here, each Class Member will receive 5.59 times the full retail price paid for each package. Tellingly, Premier struggles to maintain its façade that little was achieved. At times it describes the judgment not as slight, but "a windfall for the Class." Opp. at 21.

As for public policies, Premier ignores that the fee shifting provisions in GBL §§ 349 and 350 are there to encourage people to bring consumer protection lawsuits, and expressly consumer false advertising lawsuits to even the playing field and to deter dishonest companies like Premier from defraud their customers. Premier marketed Joint Juice "specifically to people seeking joint pain and arthritis relief" and "was aware of the changing tide in the science yet continued without hesitation." *Montera*, 2022 U.S. Dist. LEXIS 144491, at *17-18 (N.D. Cal. Aug. 12, 2022).

The truth is Plaintiff's request of 33% is below the 36% average for class actions tried to verdict. *See* Blood Reply Decl., Ex. 1.[2] According to Professor Rubenstein, the author of *Newberg on Class Actions*, as of 2011, out of more than 1,100 class actions, just 15 were tried to verdict. Of the 11 for which fee data was available, the average award was 36%. Five cases exceeded 38.9% and three exceeded 40%. The median fee plus costs awarded was 45%. *Id.*, Ex. 1, ¶¶ 9, 19.

---

[2]    "Blood Reply Decl." refers to the concurrently submitted Declaration of Timothy G. Blood.

00194816    PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

BLOOD HURST & O' REARDON, LLP

### C.    Under Fee-Shifting Statutes, Fees Are in Addition to the Class Judgment

Premier argues that over a century of jurisprudence "requires" that the fee award be paid from the judgment. Opp. at 12-13. That is not and never has been true when fees are awarded under a fee-shifting statute. There, fees are assessed against the unsuccessful litigant in addition to the damage recovery. Under the hybrid method, the balance of the reasonable fees, if any, may be paid from the judgment amount for damages.

Premier cites opinions generally discussing the common fund doctrine, which involves fee spreading, not fee-shifting. District courts can award fees "under the common fund doctrine rather than under the potentially applicable fee-shifting provisions, if the parties properly so agreed, the resulting fee was reasonable, and other requisites applicable to common fund fees were met." *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003) (emphasis omitted). Here, the parties did not agree. Instead, Plaintiff seeks fees under the applicable fee shifting statutes.

Premier cites two class actions it says were recently tried to verdict and awarded common fund fees. In both cases, 33% was awarded and no fee shifting statute was available. *See Krakauer v. Dish Network, L.L.C.*, 2018 U.S. Dist. LEXIS 203725 (M.D.N.C. Dec. 3, 2018) (TCPA does not have fee-shifting provision); *In re Vivendi Universal, S.A. Sec. Litig.*, 2016 U.S. Dist. LEXIS 58181 (S.D.N.Y. Apr. 29, 2016) (Section 10(b) securities action with no fee-shifting provision).

More on point is *McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017). There, the Eighth Circuit reversed the district court "when it held that the attorneys' fees should be paid from the common fund rather than paid by TBMC pursuant to the contractual fee-shifting provision." *Id.* at 1002 (and approving use of hybrid method). The court explained, "[r]equiring the class to pay the entire attorneys' fee award from the common fund in this case is inequitable because it nullifies the class's contractual right, as the prevailing party" to recover fees and expenses from its opponent. *Id.* at 1004.

Here, it would be inequitable to require the Class to pay Plaintiff's Counsel's fees when the GBL permits shifting fees and expenses onto the losing party.

BLOOD HURST & O' REARDON, LLP

00194816

**III.   THE LODESTAR DEMONSTRATES THE REASONABLENESS OF THE REQUESTED FEE AWARD**

Premier's opposition is grounded in generalize and baseless attacks on Plaintiff's Counsel's lodestar. These empty attacks miss the point. When the primary basis for fees is a percentage of the benefit, the lodestar is used merely as a cross-check. Here, the lodestar multiplier amounts to just 1.06, well below accepted multipliers. Even if Plaintiff's Counsel's lodestar was slashed (and it should not be) by the amount Premier suggests, the lodestar multiplier crosscheck would still fall within the accepted range. *See* Motion at 21-22 (collecting cases approving multipliers of 1 to 7).

**A.   Detailed Time Records are Not Permitted Unless Ordered**

Premier argues that "[u]nder the lodestar method" Class Counsel was required to submit detailed billing records. Opp. at 13-15. Not so. The Civil Local Rule 54-5(b) prohibits the submission of detailed timesheets unless ordered. Even if it did not, when the percentage method is the primary basis for calculating the fee award, detailed time records are discouraged because they are unhelpful and unnecessary. Third, Plaintiff attempted to discuss the production of time records with Premier, but it refused, preferring instead to create straw man to strike down.

Civil Local Rule 54-5(b) provides that "unless otherwise ordered" a motion for attorney fees should be supported by declarations. More is required only if the court so orders, and even then, full time records may not be required: "Depending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, as the Judge deems appropriate."

Detailed time records also are not required when the percentage method is the primary basis for calculating fees. "It is well established that the lodestar cross-check calculation need entail neither mathematical precision nor bean counting … courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015). "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Optical Disk Drive Prods. Antitrust Litig.*, 2021 U.S. Dist. LEXIS 171405, at *25 (N.D. Cal. Sept. 9, 2021) (same and quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294,

BLOOD HURST & O' REARDON, LLP

6

Case No. 3:16-cv-06980-RS

00194816

207 (3d Cir. 2005)); *Stewart v. Apple Inc.*, 2022 U.S. Dist. LEXIS 139222, at *20 (N.D. Cal. Aug. 4, 2022) ("counsel's declarations are sufficient in lieu of detailed time records"); *In re Easysaver Rewards Litig.*, 2021 U.S. Dist. LEXIS 13119, at *12 (S.D. Cal. Jan. 22, 2021) (summaries sufficient); *Kornell v. Haverhill Ret. Sys.*, 790 Fed. Appx. 296, 298-99 (2d Cir. 2019) (same).

As the Supreme Court explained, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not achieve auditing perfection. So, trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. Accordingly, courts look to the overall reasonableness of the lodestar/percentage requested and do not conduct a line-by-line review of billing records, as Premier contemplates. Plaintiff's lodestar documentation is thus consistent with the Local Rules and caselaw.

Premier cites several opinions where courts required time detailed records, but only because lodestar was the method used to calculate fees. Opp. at 13-14 (citing *Am. Dev. Grp., LLC v. Island Robots of Fla.*, 2019 U.S. Dist. LEXIS 174873, at *35-37 (E.D.N.Y. Oct. 4, 2019); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1208-09 (9th Cir. 2013); *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020); *Klein v. Robert's Am. Gourmet Food, Inc.*, 808 N.Y.S.2d 766, 776 (App. Div. 2nd Dept. 2006); *Vizcaino v. Ritz Carlton Hotel Co., L.L.C.*, 2020 N.Y. Misc. LEXIS 2319, at *5 (Sup. Ct. May 8, 2020) ("contemporaneous time sheets are not necessarily required")).

Premier also cites *Optical Disk*, 2021 U.S. Dist. LEXIS 171405. Opp. at 14. This does not help Premier. This Court rejected Hagens Berman's argument that time records were required because the objector "request[ed] a percentage-based fee award." The objector's counsel's declaration summarizing time incurred was sufficient to perform a lodestar cross-check. *Id.* at *25.

Premier misleadingly cites *In re Adobe Systems Inc. Privacy Litig.*, No. 5:13-cv-05226-LHK (N.D. Cal.). Opp. at 14-15. In *Adobe*, the parties reached a non-class settlement that required enhanced security measures of putative class members' data. Adobe also agreed to pay $1,180,000 in attorneys' fees and expenses. *Adobe*, ECF No. 86-3. Because there was no monetary component to the settlement and the requested fee was based only on lodestar, the court reviewed time records.

BLOOD HURST & O' REARDON, LLP

00194816

ECF No. 107, ¶¶ 3, 5. Premier oddly tries to make BHO a prime player in the case. In reality, BHO played a small role when Mr. Blood was called in at the end to help the parties reach the settlement. He billed just 17.9 hours, while his firm billed a total of just 61.3 of the 2,539.8 total hours billed by plaintiffs' counsel. *Adobe*, ECF No. 98, ¶ 34.

Finally, despite Premier's ranting, it never seriously sought time records. It made an overbroad demand for them. Plaintiff's Counsel then attempted to meet and confer, including proposing an exchange of lodestar information so the parties could compare the lodestar incurred by both parties. Plaintiff's Counsel never heard back from Premier. *See* ECF No. 306-2. The lodestar incurred by the defendant opposing a fee request is useful in gauging the reasonableness of a plaintiff's lodestar. As the Ninth Circuit explained, "there is one particularly good indicator of how much time is necessary … and that is how much time the other side's lawyers spent…such a comparison is a useful guide in evaluating the appropriateness of time claimed." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004). Premier ran from this comparison.

Consistent with the Civil Local Rules, caselaw and practice, Plaintiff provided detailed declarations that are more than sufficient to substantiate the lodestar in this case, especially given the knowledge the Court has about the case and Plaintiff's Counsel's efforts.

**B.     Plaintiff's Counsel's Lodestar Is Reasonable**

Premier next asserts against the evidence that Plaintiff's Counsel's lodestar includes work that did not lead to the result in *Montera* and is inflated by overbilling and overstaffing.

**1.     *Mullins*-Only Time was Not Included in the Lodestar Calculations**

Premier agrees that while "some of the work from the *Mullins* action may be properly recoverable here," Plaintiff should not recover all of it. It vaguely asserts "surely [] Class Counsel is trying to include time from *Mullins* that should not be recovered in this case." Opp. at 16-17. Plaintiff detailed exactly what she included and excluded. Much of time incurred in *Mullins* was excluded.

Plaintiff properly limited the reported lodestar here to work "expended in pursuit of the ultimate result achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Taking a conservative approach, Class Counsel excluded the time incurred from the following tasks and time periods related to *Mullins/Sonner* and the state court *Sonner* and *Bland* cases from her lodestar calculation:

BLOOD HURST & O' REARDON, LLP

00194816

- Appellate work.

- Time spent from February 10, 2017 (when the related actions were stayed and *Mullins* was set for trial) through August 11, 2018 (after costs were taxed in *Mullins*).

- Time spent on the *Bland* and *Sonner* state court actions.

*See* ECF No. 296-1 (Blood Decl.), ¶¶ 23-24, 61. Plaintiff's Counsel excluded over two million dollars in lodestar, even though some of that work that benefitted *Montera*. Blood Reply Decl., ¶ 3.

Premier's argument focuses on 303 hours worked by Leslie Hurst and 97 hours worked by Jennifer MacPherson, amounting to just 0.04% of Plaintiff's Counsel's total hours. Premier incorrectly claims the description for Ms. Hurst "references only the *Mullins* matter." Opp. at 17. Ms. Hurst "worked on the briefing relating to Defendant's summary judgment, Defendant's motion for judgment on the pleadings, and the motion for class certification." *See* Blood Decl., ¶ 41. Ms. MacPherson's 97 hours also related to class certification and summary judgment. *Id.*

Of course, all of this begs the question of what difference does it make since fees should be calculated under the percentage method, with lodestar acting only as a crosscheck.

### 2. Work on Other Joint Juice Cases that Had No Bearing on *Montera* Was Not Included

Premier next argues that time relating to other class representatives or class members is not compensable. First, Premier says Class Counsel improperly seeks to include attorney Paula Brown's non-material 102.5 hours relating to defending depositions of the class representatives. Opp. at 17. Premier incorrectly contends that because the other named plaintiffs were not permitted to testify at trial, no hours relating to their depositions is recoverable. The correct standard is whether the task contributed to the ultimate resolution of the matter, not whether someone testified at trial. The depositions were used in *Montera* in connection with motion practice and were cited by Plaintiff and the Court. Further, the six depositions included former class representative Eric Fishon. Of Ms. Brown's 102.5 hours spent in connection with class representative depositions, 11.5 were in connection with Mr. Fishon. Blood Reply Decl., ¶ 5. Even if lodestar was the primary method for calculating fees, this time is properly included.

Second, Premier argues that attorney Craig Straub spent an unknown amount of time

BLOOD HURST & O' REARDON, LLP

speaking with class members and retaining class representatives. Opp. at 18. Mr. Straub spent 27 hours speaking with class members, a non-material amount. *See* concurrently filed Declaration of Craig W. Straub, ¶ 3.

### 3.    Premier's Overbilling and Overstaffing Arguments Are Baseless

Next, Premier contends that Plaintiff's Counsel's declaration "shows overbilling." Opp. at 18. Premier's three arguments border on the frivolous.

First, Premier argues the lodestar was "partner-heavy" with 60% of the hours being billed by partners. BHO is not a large defense firm designed to maximize billing by layering senior partners, junior partners, and levels of associates on a case. Instead, it is a seven-lawyer plaintiff's firm. The associates v. partners argument makes no sense when applied to small firms. *See Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 991 (N.D. Cal. 2017) (rejecting argument that work performed by small firms was improperly assigned because partners made up 64% of billable time and 77% of requested fees).

Further, the case was litigated exactly as Premier suggests it should be. 75% of Class Counsel's hours were incurred by just three people. This demonstrates efficiency, not inefficiency. Those three are Mr. Blood, Mr. O'Reardon, and Mr. Straub, an associate who has worked on this matter for about five of its nine years. When adjusted for time, Mr. Straub billed the most, followed by Mr. O'Reardon, and then Mr. Blood. Blood Decl., ¶ 61. That is, more junior people billed more than more senior people over the same period.

Mr. Blood took the lead role at hearings and on all case strategy, including finalizing significant briefs. Mr. O'Reardon had day-to-day responsibility for the case and took the lead on discovery, depositions and experts. Mr. Straub conducted, gathered, and analyzed discovery and other evidence, drafted motions, and assisting Mr. Blood and Mr. O'Reardon as needed. Blood Decl., ¶¶ 39-40, 43, 61. This is an efficient, cost-effective, and non-duplicative way for a small firm to staff this complex litigation. Class Counsel could have thrown additional associates on the case, but that would have created inefficiencies and more billable hours – not less. The hourly rates for Mr. O'Reardon and Ms. Brown are the same as the billing rates for associates at Premier's law firms.

Second, Premier argues "Class Counsel charged exorbitantly high rates for document

Case No. 3:16-cv-06980-RS

BLOOD HURST & O' REARDON, LLP

review" because "attorneys conducting document review for Class Counsel charged between $320 and $575 per hour." If anything, the hourly rates for the attorneys who conducted document review (who also performed other tasks which Premier ignores) are significantly lower than "prevailing rates in this district for personnel of comparable experience, skill, and reputation." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020). Hourly rates for associates at the law firms hired by Premier range from $545 to $925. *See* Blood Decl., ¶ 59; *see also* Motion at 22-23 (citing comparable hourly rates approved in this district); *U.S. ex rel. Trakhter v. Provider Servs., Inc.*, 2019 U.S. Dist. LEXIS 96718, at *10 (S.D. Ohio June 10, 2019) ("the Court will not substitute its own judgment for that of Trakhter's Counsel on whether associates—as opposed to contract attorneys or paralegals—should have reviewed documents") (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008) (district court erred by reducing an hourly rate because "the district court may not set the fee based on speculation as to how other firms would have staffed the case")). Plaintiff's Counsel did not engage in a "first-pass" relevance/irrelevance review of all documents. From the outset the voluminous documents were reviewed for use in this case and used to great effect because they were reviewed by lawyers familiar with the case, and not low-level document reviewers who played no other role in the matter.

Third, Premier argues there was overstaffing because five attorneys attended trial, "two of whom merely sat in the gallery and had [no] role whatsoever in presenting the case to the jury." Opp. at 19. Premier is referring to Mr. O'Reardon and Mr. Straub. Both attorneys played significant roles in helping present the case at trial. They were the most familiar with the case. They prepared witnesses, reviewed, and culled evidence, and constructed questioning, themes, and demonstratives. *See* Blood Decl., ¶¶ 40, 44. Attending trial helped them better do their jobs.

There was no overbilling or overstaffing, and certainly not to a degree that would matter.

## IV.    THE HYBRID METHOD APPLIES TO THIS CASE

Premier next argues the hybrid method is improper because it involves "double dipping." Opp. at 19-20. This method is well established and there is not double dipping. Under it, the awarded fees come from the defendant and, for a portion if the circumstances warrant, from the common fund. This method is appropriate when (1) a fund is created for the Class, (2) a fee-shifting provision

BLOOD HURST & O' REARDON, LLP

applies, and (3) a percentage amount is reasonable, but the amount exceeds counsel's lodestar.

Premier acknowledges the hybrid method is well established but argues it should not be used here. It attempts to distinguish *Ridgeway* and *Sobel* on the basis that those cases involved mandatory fee-shifting. Opp. at 20. These cases do not hold that application of a mandatory fee-shifting provision is relevant. The relevant question is whether any type of fee shifting statute applies.

Premier then takes a quote out of context from another case approving the use of the hybrid method: *Knox v. John Varvatos Enters. Inc.*, 520 F. Supp. 3d 331 (S.D.N.Y. 2021). While the *Knox* court noted the hybrid method does not arise under the facts of most cases, it found it should be used there because of "two unusual aspects that convince us that an additional payment is appropriate." *Id.* at 352. These two aspects, "an uncommon level of risk" and "a portion of the common fund created by the jury verdict that is not designed to compensate the plaintiffs at all: that is, the award of punitive damages." *Id.* Here, Plaintiff's Counsel faced an uncommon level of risk against Premier with not a single similar case having prevailed at a jury trial in the last decade. Moreover, the Class Members will receive 5.59 times their actual damages. The $396,747.21 fee portion that Plaintiff proposes come from the judgment fund amount would result in Class Members still receiving 5.32 times their actual damages. *See also McKeage*, 847 F.3d at 1004 (approving the hybrid-source model); *Bernstein v. Virgin Am.*, 2020 U.S. Dist. LEXIS 259809, at *36-37 (N.D. Cal. Jan. 21, 2020) (approving hybrid fee and discussing *Ridgeway*) (approving hybrid fee and discussing *Ridgeway*).

## V.   PREMIER'S 25% PROPOSAL IS UNREASONABLE AND INEQUITABLE

Premier asserts Plaintiff should receive the benchmark percentage fee but paid from and calculated on the judgment amount without considering the additional benefit from shifted fees and expenses. That means Premier proposes a 0.5 multiplier on Plaintiff's Counsel's lodestar. Premier's proposal ignores the GBL's fee-shifting provisions to make the Class pay the fees and expenses. The Court should reject Premier's calls to ignore the fee shifting statutes. One-third of the total recovery is appropriate, especially when applying the *Vizcaino* factors and considering the lodestar multiplier cross-check amounts to just 1.06.[3]

---

[3]   Premier's proposed fee of $3,223,863.73 and proposed expense reimbursement of $197,852.36 would result in a total benefit of $16,316,170.99 when added to the judgment amount.

BLOOD HURST & O' REARDON, LLP

00194816

**VI.    THE REQUESTED EXPENSES SHOULD BE AWARDED**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiff's requested expenses relate to experts, depositions, travel, postage, photocopying, discovery review databases, mediation and legal research – costs customarily billed to a fee-paying client. Plaintiff only included those specific costs that directly benefitted *Montera*. *See* Motion at 23-24; Blood Decl., ¶¶ 66, 67(a)-67(n). Premier does not contest that the types of costs sought were reasonably necessary to the litigation, nor that they are reasonable in amount.

**A.    Appropriate Documentation Was Provided**

"To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable." *Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at *44-45 (N.D. Cal. Dec. 17, 2018).; *see also In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50546, at *47 (N.D. Cal. Mar. 17, 2021) ("Class Counsel's declarations [listing the total amounts for categories] adequately support their requests and that the expenses are typical for this type of class litigation …"). That is exactly what Plaintiff did here. *See* ECF Nos. 295, 296-1, 296-2, 296-3. Plaintiff's Counsel submitted sworn declarations itemizing expenses by category, listing the total amounts for each category, gave detailed explanations about what component expenses make up each category including specific costs for those components, and provided invoices for certain expenses with the Bill of Costs. *Id.* Premier's contentions that Plaintiff provided "no documentation" and "refuse to substantiate any of it" are false, and its argument that Plaintiff's submissions are insufficient should be rejected. The expense amounts are reasonable and modest for litigation of this size and duration.

**B.    Class Counsel Do Not Seek Expenses Unrelated to *Montera***

Premier incorrectly argues that some of the requested expenses are unrelated to *Montera*. First, Premier argues that because Dr. Graboff, Dr. Silbert, Dr. Willis, and Mr. Keegan were not

A fee award amounting to 33% of this benefit equals $5,433,284.94 or a 0.85 negative multiplier.

PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

BLOOD HURST & O' REARDON, LLP

00194816

BLOOD HURST & O' REARDON, LLP

designated experts under FRCP 26(a)(2) in *Montera*, Plaintiff cannot be reimbursed for any of these expenses. As previously explained, Plaintiff does *not* seek the portions of the fees charged by those experts that were related to the anticipated trial in *Mullins*. *See* Blood Decl., ¶¶ 67(g)(vi) (Graboff), 67(g)(vii) (Silbert), 67(g)(viii) (Willis), and 67(g)(ix) (Keegan). Rather, Plaintiff only seeks reimbursement of the fees charged by these experts in connection with class certification and summary judgment. The Court cited this testimony in its decisions on these motions. *See Mullins*, 178 F. Supp. 867; 2016 U.S. Dist. LEXIS 51140. That summary judgment motion put an end to summary judgment in this litigation. Similarly, although Premier made plaintiffs spend the time and money to file class certification in the other cases, it never seriously opposed class certification after the first decision. These decisions have been extensively cited by the parties and the Court in *Montera* throughout because the actions are "all based on the exact same allegations." Opp. at 5; *see also Soler v. City of San Diego*, 2021 U.S. Dist. LEXIS 114484, at *25-26 (S.D. Cal. June 18, 2021) (plaintiff's counsel was entitled to fees for work performed on related litigation that "helped advance the ultimate result achieved", including "because [the] Court relied on the denial of motions in the [related case]"); *Children's Hosp. & Med. Ctr. v. Bontá*, 97 Cal. App. 4th 740, 779-81 (2002) (plaintiff was entitled to fees for work performed in a collateral federal action that although "not [] a necessary precondition" nonetheless "materially contributed to the resolution of the [] issues" in the state action in which he prevailed).

Second, Premier argues that Plaintiff is not entitled to any portion of the $73,691.80 charged by Mr. Weir because it includes his work in 2017 from *Mullins* when he "gave much broader opinions about Dr. Choi's hedonic regression analysis, and the applicability of 'full refund' damages—none of which were used in this action." Opp. at 24. $56,835.55 of the $73,691.80 was charged by Mr. Weir for his 2017 rebuttal report and deposition. Blood Reply Decl., ¶ 4. It was Weir's 2017 rebuttal report and corresponding deposition critiquing Dr. Choi's hedonic regression that eliminated the need for Weir to provide expert rebuttal testimony in *Montera*. These materials were used to highlight Dr. Choi's flawed opinions when he was deposed again in 2022. Dr. Choi never changed his approach in 2022. Armed with the Weir materials, Dr. Choi was forced to concede numerous points at his 2022 deposition, which lead to the ineffective direct testimony and hurtful

00194816

cross examination testimony at trial.

These costs were reasonably incurred and advanced for the benefit of the Class. *See S.F. Baykeeper v. W. Bay Sanitary Dist.*, 2011 U.S. Dist. LEXIS 138093, at \*42 (N.D. Cal. Dec. 1, 2011) (courts "must look at the practical and reasonable needs of the party in the context of the litigation").

### C. Premier's "Apportionment" Theory is Without Support and Inequitable

Premier concludes by arguing for an apportionment theory of cost spreading. *See* Opp. at 24-25. It made this same argument in opposition to the bill of costs. Plaintiff refers the Court to its reply in support of its bill of costs. Premier cites irrelevant cases involving "the risks of duplicative cost recovery" (*Winters* and *Marmo*) and cost awards when plaintiffs settled "without costs" (*Air Crash*) and makes the same argument that because there are eleven related actions, "equity" requires awarding Plaintiff just 1/11th the requested amount for costs that relate to "all the related actions." Apportionment is rooted in single lawsuit scenarios against multiple defendants with partial victories against some defendants. Those facts mean it is often inequitable to charge one of the defendants with all costs. Those scenarios are fundamentally different than this one. Here, there can be no concern with one defendant paying for other defendants.

By agreement of the parties to share discovery, these costs were incurred and used in the bellwether trial. Once recovered here, they will not be recovered again. Further, it is unlikely Premier will use the same experts in any future trial, which would eliminate the ability to recover these costs.

Any costs that benefitted only *Mullins* and were not incurred in connection with the result in *Montera* were excluded from the expense request. *See* Blood Reply Decl., ¶ 7. For example, Plaintiff's Counsel excluded travel costs relating to the depositions of Dr. Thomas Maronick and Dr. Louis Lippiello, travel to the *Sonner* appeal, all costs relating to Dr. Maronick, all costs relating to the 2017 *Mullins* trial testimony by Drs. Silbert and Graboff, class notice costs in *Mullins*, costs for providing courtesy copies in *Mullins*, and all filing fees other than in *Montera*. *Id.*

## VII. CONCLUSION

Plaintiff respectfully requests the Court grant Plaintiff's motion and award $6,806,031.96 in attorneys' fees, reimbursement of $1,001,697.98 in nontaxable expenses, and a $25,000 service award to Ms. Montera.

BLOOD HURST & O' REARDON, LLP

00194816

15                                    Case No. 3:16-cv-06980-RS

PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

Respectfully submitted,

Dated: September 30, 2022

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:           s/ Timothy G. Blood
              TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)
GRACE JUN (287973)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com
gjun@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA  92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

00194816
PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

Executed on September 30, 2022.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O' REARDON, LLP

00194816

17                                     Case No. 3:16-cv-06980-RS
PLTFS REPLY ISO MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARD