# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| | ) | |
| **THOMAS H. KRAKAUER,** | ) | |
| **On behalf of a class of persons,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 1:14-cv-00333-CCE-JEP |
| | ) | |
| **v.** | ) | **JUDGE CATHERINE C. EAGLES** |
| | ) | |
| **DISH NETWORK, L.L.C.,** | ) | **MAGISTRATE JUDGE JOI E. PEAKE** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### EXPERT DECLARATION OF WILLIAM B. RUBENSTEIN
### IN SUPPORT OF THE PLAINTIFFS' MOTION
### FOR ATTORNEY'S FEES AND EXPENSES

1.      I am the Sidley Austin Professor of Law at Harvard Law School and a leading national expert on class action law generally and class action fees in particular. The law firm of Bailey & Glasser, LLP has retained me to provide my expert opinion concerning Class Counsel's[1] application for an award of attorney's fees. After setting forth my qualifications to serve as an expert (Part I, *infra*)[2] I state my opinion that the

---

[1] Plaintiffs' motion for class certification asked the Court to appoint four law firms as class counsel: Bailey & Glasser LLP, Norris Law Firm, Broderick & Paronich, P.C., and the Law Office of Matthew P. McCue. ECF No. 47 at 1–2 ("Krakauer further requests that this Court appoint undersigned counsel to serve as class counsel pursuant to Federal Rule of Civil Procedure 23(g)."). I accordingly use the phrase "Class Counsel" throughout this report to encompass all four firms.

[2] I typically provide a short synopsis of the litigation in my expert reports, but given the depth of the Court's involvement in, and understanding of, this matter, I saw no need to do so here.

1

requested fee is reasonable and should be approved (Part II, *infra*). This conclusion is

based on the fact that the award sought is consistent with awards in similar cases and that

it is supported by the extraordinary risks Class Counsel took and the remarkable results

that they achieved:

- *Class Counsel's 33.33% request is a modest percentage for a case proceeding through trial and it embodies a lodestar multiplier justified under the circumstances.* (Part II(A), *infra*). Counsel seek 33.33% of the common fund. While this is slightly above the average for all cases in the Fourth Circuit (27.7%) and for consumer cases generally (28.8%), it is below the average for tried cases (36%); indeed, the median fee and cost award in 11 tried cases within a data base of 1,100 class action fee awards that I maintain is 45%. Moreover, it is a standard feature of contingent fee contracts that lawyers seek a higher contingent fee if a case progresses to trial or involves appeals. Finally, a 33.33% award is, roughly speaking, 2.38–4.39 times Class Counsel's total lodestar, depending on the extent to which hours from the preceding *Donaca* litigation are included in the lodestar and on the ultimate length and complexity of the appellate and administrative processes. Average multipliers in cases involving funds in the $60 million range tend to be between 2–3 times counsel's lodestar. But few if any of those cases were litigated through trial, much less through the appeal this case will also likely face, and few reflect the remarkable circumstances of this case, described in the succeeding paragraphs. In the cases with risks and rewards of the magnitude of this case, courts have not hesitated to approve normal percentage awards that reflect multipliers in the 2.38–4.39 range.

- *Class Counsel took – and they continue to shoulder – enormous risks in pursuing this case.* (Part II(B), *infra*). Ten features of this class action speak to the remarkable risks Class Counsel have taken: (1) they litigated a small claims case under a statute that does not enable fee-shifting, thus relegating themselves to a portion of their client's recovery despite a $500 maximum claim value ($1,500 if trebled, as here); (2) they invested in, and pursued the class's claims all the way through, a jury trial; (3) the case was complicated by factors such as the fact that claims are defined in reference to phone numbers not persons and that the defendant's actions were undertaken through a third-party dealer; (4) they were not ultimately able to rely on the preclusive effect of facts found in government litigation; (5) they litigated against one of the 200 largest corporations in the United States represented by (6) a law firm with more than 1,000 lawyers in 25 worldwide locations; (7) they had to persist

2

against an onslaught of motions so extensive that even this Court noted defense counsel's "lack of respect" for its orders and "attempt to obfuscate the issues, confuse the record, and shift arguments and facts;"[3] and (8) they invested between $5–10 million of their own time and money, (9) bearing the risks themselves without the help of large national plaintiffs' firms, (10) in lieu of devoting their resources to simpler bread and butter matters.  Despite securing a landmark judgment, all of these risks persist – and they will through the the prospect of years of further appeals.

- *Class Counsel's work in this matter was both extraordinarily difficult and extraordinarily successful.*  (Part II(C), *infra*).  Nine factors speak to Class Counsel's success here:  (1) they achieved a judgment at trial, not a settlement; (2) they then secured a treble damage ruling from this Court; (3) these efforts created a significant common fund, likely the largest Telephone Consumer Protection Act (TCPA) class action verdict in history; (4) 100% of the class members represented at trial are entitled to relief; (5) each will receive a significant portion of the full value of her claim; (6) recoveries will be significant, with the $2,400 floor representing about two weeks' worth of income for the average American household; (7) the recovery will be cash, not coupons or scrip; (8) it can be easily claimed; and (9) Class Counsel accomplished all of this without the faintest whiff of collusion, given that they secured a judgment at trial after years of hard fought adversarial litigation.

2.      Wrongdoers who inflict small harms on large numbers of persons may escape liability because the costs of litigation outweigh the benefits therefrom.  The core purpose of the class action mechanism is to ensure against this outcome:[4]  it enables the aggregation of the class's legal claims in the hopes of attracting a contingent fee lawyer to invest her time and resources in those claims, with the promise of a portion of the recovery if she is successful.  While class actions often get a bad name, this case could be an advertisement for the model class action case:  here a small group of lawyers, pitted

---

[3] ECF No. 407 at 12.

[4] *See generally* William B. Rubenstein, 1 *Newberg on Class Actions* § 1:8 (5th ed.) (hereafter *Newberg on Class Actions*).

3

against one of the largest corporations in the country and their aggressive worldwide counsel, persisted through a trial to secure a jury verdict for a random group of small-claims class members scattered throughout the country. A 33.33% fee award, even embodying a 4.39 multiplier, is appropriate both as a reward for Class Counsel's extraordinary risks and achievement, and because it signals future class action lawyers that if they persist in fully vindicating their absent clients' legal claims, they will be appropriately rewarded for doing so.

## I.
## BACKGROUND AND QUALIFICATIONS[5]

3.    I am the Sidley Austin Professor of Law at Harvard Law School. I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986. I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school. Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private practice during the preceding decade. I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District Courts.

---

[5] My full c.v. is attached as Exhibit A.

4

4.    My principal area of scholarship is complex civil litigation, with a special emphasis on class action law. I am the author, co-author, or editor of five books and more than a dozen scholarly articles, as well as many shorter publications (a fuller bibliography appears in my appended c.v.). Much of this work concerns various aspects of class action law. Since 2008, I have been the sole author of the leading national treatise on class action law, *Newberg on Class Actions*, and as of this past summer, I have re-written from scratch the entire 10-volume treatise. In 2015, I wrote and published a 600-page volume (volume 5) of the Treatise on attorney's fees, costs, and incentive awards; this volume has already been cited in numerous federal court fee decisions. For five years (2007–2011), I published a regular column entitled "Expert's Corner" in the publication *Class Action Attorney Fee Digest*. My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

5.    My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs. For the past eight years, the Judicial Panel on Multidistrict Litigation (JMPL) has invited me to give a presentation on the current state of class action law at the annual MDL Transferee Judges Conference. The Federal Judicial Center invited me to participate as a panelist (on the topic of class action settlement approval) at its March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing Multidistrict and Other Complex Litigation Workshop*. The Ninth Circuit invited me to moderate a panel on class action law at the

2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop. The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*. In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section. I am on the Advisory Board of the publication *Class Action Law Monitor*. I have often presented continuing legal education programs on class action law at law firms and conferences.

6.      My teaching focuses on procedure and complex litigation. I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation. I have received honors for my teaching activities, including: the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.      My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union in New York City. In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States. I also oversaw and coordinated

6

hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country. I therefore have personally initiated and pursued complex litigation, including class actions.

8. I have been retained as an expert witness in roughly 75 cases and as an expert consultant in about another 25 cases. These cases have been in state and federal courts throughout the United States, most have been complex class action cases, and many have been MDL proceedings. I have been retained to testify as an expert witness on issues ranging from the propriety of class certification to the reasonableness of settlements and fees. I have been retained by counsel for plaintiffs, for defendants, for objectors, and by the judiciary:

- In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[6]

- In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me as an expert witness on certain attorney's fees issues in the NFL concussion litigation. In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[7]

---

[6] *See In re Indymac Mortgage-Backed Sec. Litig.*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom. Berman DeValerio v. Olinsky*, 673 F. App'x 87 (2d Cir. 2016).

[7] *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-MD-02323-AB, 2018 WL 1658808 (E.D. Pa. Apr. 5, 2018). The Court has yet to decide on the other primary recommendation I provided, rejecting a 5% common benefit fee set-aside. *Id.* at *4 n.5.

7

9.      One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases.  As part of my scholarly work on class action law, I have created and maintain a database containing data on more than 1,000 class action lawsuits.  Specifically, my research assistants coded the data from case reports appearing in the journal, *Class Action Attorney Fee Digest* ("CAAFD"). CAAFD was published monthly from January 2007 to September 2011 for a total of 57 issues, and reported on 1,187 unique court-approved state and federal class actions.  For each case, a CAAFD case abstract describes the awarding court and judge, the subject matter of the dispute, the settlement/judgment benefits, the attorney fee and expense awards (both as requested by plaintiff's counsel and as approved by the court), the case filing and attorney fee award dates, any named plaintiff awards, and miscellaneous data on case and settlement/judgment administration.  In creating the database from the CAAFD reports, my research team cross-checked the accuracy of a subset of federal reports against source documents from PACER; we found only one error  – an understatement of the settlement benefit value by 2% – in 726 data fields, or fewer than 0.15% of fields.  I am therefore confident about the accuracy of the data in my database and use it regularly as a source for my scholarship and expert witness work.

10.      Courts have often relied on my empirical work as an expert witness in fee cases.[8]

---

[8] *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017) (referencing empirical work in approving fee award); *In re High-Tech Employee Antitrust*

8

11.     I have been retained in this case to provide an opinion concerning the issues set forth in the first paragraph, above.  I am being compensated for providing this expert opinion.  I was paid a flat fee in advance of rendering my opinion, so my compensation was in no way contingent upon the content of my opinion.

12.     In analyzing these issues, I have discussed the case with Class Counsel.  I have also reviewed documents from this and related litigations, a list of which is attached as Exhibit B.  I have also reviewed the applicable case law and scholarship on the topics of this Declaration.

## II.
## THE REQUESTED FEE IS REASONABLE

13.     Courts generally employ one of two methods in determining fee awards in common fund class action cases:  the percentage method (which awards counsel a fee in relation to the benefit achieved for the class) or the lodestar method (which awards counsel a fee in relation to their hours and hourly billing rates).  Today, most courts use a

---

*Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (Koh, J.) ("Having reviewed the billing rates for the attorneys, paralegals, and litigation support staff at each of the firms representing Plaintiffs in this case, the Court finds that these rates are reasonable in light of prevailing market rates in this district and that counsel for Plaintiffs have submitted adequate documentation justifying those rates. . . . *See also* ECF No. 1073-1, Declaration of Prof. William B. Rubenstein ('Rubenstein Decl.') ¶¶ 29–30 (graphs showing rates charged by Class Counsel here are similar to prevailing market rates from fee awards in this district)."); *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015) ("Based on Rubenstein declaration and the court's general knowledge of rates in the Los Angeles legal community, moreover, it believes the rates are reasonable."); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) ("Nothing in [defendant's] opposition detracts from the reasonableness of plaintiffs' rates, as proffered by plaintiff and supported by Professor Rubenstein's analysis.").

combination of these two approaches – a percentage approach with a lodestar cross-check.[9]

14.[10]   The lodestar cross-check ensures against a windfall by taking the absolute dollars counsel will receive via a percentage award and considering whether that number is greater or less than counsel's lodestar (the amount counsel would receive were they to be paid on an hourly basis).  An example helps illuminate the value of the cross-check.  If counsel settle a class action lawsuit for $100 million, they may be entitled to fee totaling 25% of that amount, or $25 million. A straight percentage approach, without a lodestar cross-check, simply awards counsel that $25 million, perhaps ensuring it is commensurate with several qualitative factors (as noted below).  The cross-check adds another quantitative step.  Counsel submit the hours all professionals billed on the case, those professionals' hourly rates, and thence a total value of all professional time spent on the case.  If that total lodestar is (magically) $25 million, then counsel's percentage award is precisely the same amount that they would have earned had they billed by the hour.  If, however, counsel's lodestar is $10 million, the $25 million percentage award represents a multiplier of 2.5, meaning that the percentage award pays counsel 2.5 times their normal hourly billing rates.  If counsel's total lodestar is $50 million, the $25 million percentage award represents a multiplier of 0.5, meaning that the percentage award pays counsel half of their normal hourly billing rates. Multipliers higher than 1 are

_____

[9] 5 *Newberg on Class Actions, supra* note 4, at § 15:67 (discussing empirical evidence on choice of percentage or lodestar method).

[10] This paragraph is taken from *id.* at § 15:85.

typically referred to as "positive multipliers," those below 1 "negative multipliers."  Lest

the cross-check occupy significant judicial resources to undertake, courts in nearly every

circuit have held that, for the purposes of a cross-check, they need not scrutinize each

individual billed hour, but may instead focus on the general question of whether the fee

award appropriately reflects the degree of time and effort expended by the attorneys.[11]

15.    The Fourth Circuit has not directed its District Courts on whether to use a

percentage or lodestar approach; lower courts have filled that void by assuming that they

are permitted to utilize either method.[12]    The Fourth Circuit has also not provided

guidance about how to assess the reasonableness of proposed percentage awards, though

in one case (entitled *Barber*), the Circuit utilized the Fifth Circuit's *Johnson* factors;[13]

accordingly, some District Courts employ these so-called "*Barber* factors" in assessing

the reasonableness of a proposed percentage award in common fund cases,[14] an approach

the Circuit has affirmed.[15]

---

[11] *Id.* at § 15:86 (citing, *inter alia*, *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014) ("Importantly, where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court.") (quotation marks and citation omitted); *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 469 (S.D. W. Va. 2010) ("When using the lodestar method only as a cross-check, the court need not apply the 'exhaustive scrutiny' normally required by that method.") (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

[12] *Id.* at § 15:99 (discussing Fourth Circuit fee jurisprudence).

[13] *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (discussing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

[14] *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, *1 (M.D.N.C. 2007) (applying *Barber* factors to a percentage award); *Edmonds v. U.S.*, 658 F. Supp. 1126,

11

16.    The *Johnson* factors, employed in *Barber*, are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.[16]

17.    These 12 factors focus the Court on three key issues:  the numbers themselves (hours, rates, and a lodestar cross-check);[17] the risks counsel took;[18] and the value of their performance, *i.e.*, the results they obtained.[19]   In the following sections, I will discuss each of these three key approaches to the fee request.

---

1143 n.37 (D.S.C. 1987) ("The [*Barber*] factors . . . can be used in analyzing a fee either based on the percentage method, or the lodestar method.").

[15] *In re MRRM, P.A.*, 404 F.3d 863, 867–68 (4th Cir. 2005) (holding that the district court reasonably applied the *Barber* factors when assessing a common fund fee award).

[16] *Barber*, 577 F.2d at 226 & n.28.

[17] *E.g.*, Factors 1 (the time and labor expended); 5 (the customary fee for like work); 12 (attorneys' fee awards in similar cases).

[18] *E.g.*, Factors 2 (the novelty and difficulty of the questions raised); 4 (the attorney's opportunity costs in pressing the instant litigation); 6 (the attorney's expectations at the outset of the litigation); 7 (the time limitations imposed by the client or circumstances); 10 (the undersirability of the case within the legal community in which the suit arose).

[19] *E.g.*, Factors 3 (the skill required to properly perform the legal services rendered); 8 (the amount in controversy and the results obtained); 9 (the experience, reputation and ability of the attorney).

12

## A.
## THE PERCENTAGE SOUGHT IS LOW FOR A TRIED CASE
## AND A LODESTAR CROSS-CHECK CONFIRMS ITS REASONABLENESS

18.    Counsel seek a fee constituting (a) percentage of the common fund this litigation produced and they justify it, in part, using a lodestar cross-check that provides the Court with their (b) hours, (c) rates, and a (d) lodestar multiplier. Empirical evidence demonstrates that each of these four factors are reasonable.

*Percentage*

19.    Class Counsel seek 33.33% of the common fund. In the *Newberg* Treatise, I provide data from empirical studies of attorney's fees, including percentages awarded.[20] The most recent data are those from the CAAFD that I describe above.[21] These show that the mean percentage award in all class action cases is 27.1% and the median 26.9%. Here in the Fourth Circuit, the mean award was 27.7% and in consumer cases throughout the country, 28.7%. None of these figures separate out cases that proceeded through trial. Among the 1,187 cases in my CAAFD data set, 15 proceeded to trial, 11 of which contain relevant fee data. The mean fee award across those 11 cases with applicable data was 36%, with five cases having awards of 38.9% or more and three of those having fee awards of 40% or more. The median fee *and* costs awarded in the 11 cases that progressed to trial with applicable data was 45%.[22] These data points support the

---

[20] *Newberg on Class Actions*, *supra* note 4, at § 15:83.

[21] *See* ¶ 9, *supra*.

[22] If Class Counsel's *Krakauer* costs ($481,317.73) are paid on top of its 33.33% fee request, the total fee and cost request constitutes 34.11% of the common fund; if Class

13

conclusion that the 33.33% Class Counsel seek here, while slightly above the norm for all cases, is well below the norm for tried cases.  Empirical data on contingent fee contracts outside the class action setting reinforce this conclusion:  the leading study shows that 57% of contingent fee contracts simply employ a flat 33% fee; for those that use variable percentages, the range without a trial is 20–43%, with a trial 25–50%, and with an appeal, 33–50%.[23]  These data provide further market support for the reasonableness of the 33.33% award sought here.

*Hours*

20.    Class Counsel's lodestar in this *Krakauer* action encompasses about 8,500 hours; if time from the *Donaca* action that contributed to the outcome here is included,[24]

---

Counsel's *Krakauer* costs ($481,317.73) *and Donaca* costs ($125,265.86) are paid on top of its 33.33% fee request, the total fee and cost request constitutes 34.32% of the common fund.  Both numbers are, obviously, well (about 24%) below the 45% median.  For a discussion of why the *Donaca* costs may be appropriately billed to this class, *see* note 24, *infra*.

[23] Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L. Q. 739, 758 (2002).

[24] I explain in the *Newberg* treatise that "[s]ometimes class counsel in the forum jurisdiction undertook work in other fora . . . and seek to utilize that work as the basis for a common fund award," and that in those circumstances, "[t]he measuring stick of counsel's entitlement comes back to the single question of whether their efforts did in fact create, enhance, preserve, or protect the fund.  The fact that the work was done in another forum is irrelevant:  the court's supervision of the common fund provides it authority to reward those responsible for its creation regardless of where that generative activity took place."  *Newberg on Class Actions*, *supra* note 4, at § 15:59 (footnote omitted).

As applied here:  Class Counsel inform me that during the *Donaca* litigation (1) the parties engaged in substantial discovery, including the exchange of more than 22,000 pages of documents and 18 depositions, many of which were later used at the *Krakauer*

14

the total hours are about 13,500 through April 17, 2018.  Two data points support the conclusion that this number of hours is reasonable.  *First*, 10 of the 15 cases in my 1,187 CAAFD data set that proceeded to trial contain data on the total hours counsel invested; the average number of hours billed in these 10 tried cases is 21,100.  *Second*, a back-of-the-envelope assessment of this quantity of hours confirms that conclusion.  Class Counsel's 8,469.88 hours, spread across the four years the case has been pending,[25] amount to 2,117.5 hours per year.  One way of viewing the total quantity of time spent on the case is that it is the equivalent of one busy lawyer working full time on this case (about 40.72 hours/week every year for four years).  Given the quantity and complexity of the litigation at issue – including a full trial – it is reasonable to conclude that it would have occupied the full time of one lawyer for four years.  To be sure, there may have

trial and (2) that the call records used to identify the class members in *Krakauer* were obtained during the *Donaca* litigation.  In particular, it was in *Donaca* that Class Counsel took the videotaped testimony of Bahar "Sophie" Tehranchi, the principal of the Dish Authorized Retailer (SSN) which placed the class calls.  That testimony was used to help authenticate the call records, establish that all of the calls in the records were placed for Dish, and to illustrate the degree of control Dish exercised over SSN's operations.  She was the only non-Dish employee who testified about the degree of control Dish actually had over SSN.  Based on these representations, it appears that at least some of the work in *Donaca* contributed to Class Counsel's creation of the $61 million common fund in this case.

That conclusion would enable the *Donaca* lawyers to petition for some fees from the *Krakauer* common fund.  It therefore seems appropriate that Class Counsel should be permitted to include some time from the *Donaca* proceedings in the *Krakauer* lodestar cross-check analysis, particularly as the purpose of the lodestar cross-check is merely confirmatory and as courts' approaches to it are accordingly far more relaxed.  *See* ¶ 14, *supra.*

[25] Class Counsel filed the initial *Krakauer* complaint on April 18, 2014.

15

been times where the single lawyer working full time would have been less busy; but the very fact of a trial also means that there were times in which far more than one lawyer had to be working on the case full time. And indeed, the work in this case appears quite consistent: there are roughly 60 docket entries in its first year, 100 in its second year, 160 in the third year, and another 120 or so in the past year. The reasonableness of the total number of hours Class Counsel has billed is thus supported by both the hours billed in similar tried cases in my data set and by a rough estimate of how much time the work in this litigation would have taken.[26]

*Rates*

21.    A class action case's blended hourly rate is its total lodestar divided by its total number of hours. This number reflects the cost of the average hour in the case. From recent expert witness work on several high profile cases,[27] I have a data base containing hourly rates approved in 41 class action fee petitions in the past two years (2016–2018) in the Northern District of California.[28] The mean blended billing rate (adjusted to 2018 dollars) in these 41 cases ranged from a low of $379.93/hour to a high of $749.08/hour, with the average rate in all 41 cases of $538.10/hour. Class Counsel's

---

[26] If the *Donaca* time is added, the total hours in the two cases are 13,487, over about a 6.5 year period since the November 8, 2011 filing of the *Donaca* complaint, or about 2,075 hours/year. The same analysis would therefore apply to one lawyer working full time on the two cases for 6.5 years.

[27] *See* note 8, *supra*.

[28] A description of the data base and how I adjusted it for use in this case is set forth in Exhibit C.

16

blended billing rate is $550.16/hour in this case, $512.36/hour in the *Donaca* case, and $536.10/hour in the two cases combined.  The hourly rates employed here are therefore fully consistent with the average rates that courts have approved in dozens of recent class action cases.  It is fair to note that hourly rates in this market are likely lower than in the Bay Area; according to the federal government, for instance, rates in the Raleigh-Durham-Chapel Hill market are about 86% of those in the Bay Area.[29]  What that means is that Class Counsel's rates, while consistent with the San Francisco market, may be roughly 15% above the market rates in an adjacent North Carolina market.  But given the fact that this case went to trial – while some of the high profile cases in the Bay Area, such as the *Volkswagen "Clean Diesel"* case, involve a majority of hours spent on document discovery conducted by contract attorneys at low billing rates – it is not surprising that more partner time would be utilized and rates would be slightly higher. Class Counsel's hourly rates appear therefore fully consistent with court-approved rates

---

[29] I utilize the federal government's judicial differential methodology – as explained in *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005) – to adjust rates between different geographic markets.  The federal government rates can be found at this hyperlink: http://www.uscourts.gov/careers/compensation/judiciary-salary-plan-pay-rates.  The federal government increases the base rate by 39.28% for the San Francisco market and 19.52% for the Raleigh-Durham-Chapel Hill market.  This means that a base hourly rate of, say, $350/hour would be worth $487.48 in San Francisco ($350 x 1.3928) and $418.32 ($350 x 1.1952) in that North Carolina market.  Therefore, one has to multiply San Francisco billing rates by 0.8581 ($487.48 x 0.8581 = $418.30) to bring them down to North Carolina levels.  The same conclusion can be achieved by the formula:  <1.1952/1.3928>.

17

in class action cases, particularly for the limited lodestar cross-check purposes to which they are applied.[30]

*Multiplier*

22.    Under the lodestar cross-check method, the measuring stick of the reasonableness of counsel's fee is the level of multiplier that it represents of the time class counsel invested in the case.[31]   Class Counsel's 33.33% fee request amounts to $20,445,555.   The total lodestar for the *Krakauer* case to date is $4,659,761.80, meaning that the 33.33% fee sought is a 4.39 multiple of their lodestar.   That is the highest multiplier that could apply to Class Counsel's fee request, but the multiplier is arguably much lower due to three qualifying factors:

- Class Counsel will likely have to defend that class's judgment through the ***appellate process***; based on the defendant's litigation tactics to date,[32] that process could be protracted, as it is likely to encompass an appeal to a Fourth Circuit panel, a petition for re-hearing by that panel and/or rehearing *en banc* by the full Circuit, and petition for *certiorari* to the United States Supreme Court (should the judgment be affirmed).   Class Counsel inform me that they estimate 1,500 hours for this work.   Using the blended billing rate for this case ($550.16), that work will add $825,240 to Class Counsel's ($4,659,761.80) lodestar, bringing the total to $5,485,001.80 and meaning that the $20,445,555 fee request will then embody a ***3.73 multiplier***.

- Class Counsel will necessarily have to invest significant amounts of time in ***administering this settlement*** should the judgment be affirmed on appeal. They inform me that they estimate 1,000 additional hours for this work.   Using the blended billing rate for this case ($550.16), that work will add $550,160 to Class Counsel's ($5,485,001.80) lodestar in the last bullet point, bringing the

---

[30] *See* ¶ 14, *supra*.

[31] *Id.*

[32] *See* text accompanying note 51, *infra*.

18

total to $6,035,161.80 and meaning that the $20,445,555 fee request will then embody a ***3.39 multiplier***.

- Finally, as noted above,[33] Class Counsel's time in the ***Donaca*** case contributed to the outcome here; if the lodestar from that case ($2,570,605.05) is included, Class Counsel's total lodestar from the prior bullet point ($6,035.161.80) becomes $8,605,766.85, meaning that the $20,445,555 fee request would embody a ***2.38 multiplier***.

For cross-check purposes,[34] the Court does not need to decide precisely how many future hours will be expended on appeals and/or administrative work, nor how much time from the *Donaca* case to credit here. It is enough to conclude that the multiplier floor could be as low as 2.38 and that its ceiling will definitely not be higher than 4.39; without the benefit of any *Donaca* time, the range is 3.39–4.39, with a midpoint of 3.89. Using such a mid-point affords Class Counsel the benefit of some if not all of their projections backwards and forwards and provides a fair reference point for further analysis.

23. Quantitatively, a multiplier in the 2.38–4.39 range, or the 3.89 midpoint without any *Donaca* time, is consistent with multipliers that courts have previously approved in similar circumstances. Three leading empirical studies of class action attorney's fees found the mean multipliers in all cases to be 1.42,[35] 1.65,[36] and 1.81,[37]

---

[33] *See* note 24, *supra*.

[34] *See* ¶ 14, *supra.*

[35] 5 *Newberg on Class Actions, supra* note 4, at § 15:89 (reporting on data from William B. Rubenstein and Rajat Krishna, *Class Action Fee Awards: A Comprehensive Empirical Study* (draft on file with author)).

[36] Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 833-34 (2010).

19

while an older study found the mean multiplier to be 4.97.[38]  These studies also show that multipliers are higher in cases with larger returns, with the mean multipliers rising to 2.39 (in cases with recoveries over $44.6 million) in one study;[39] to 2.70 (in cases with recoveries between $69.6-$175.5 million in 2008 dollars) in another study;[40] and to 2.75 (in cases with recoveries between $50–$75 million) in a third study.[41]

24.    Beyond these bare statistics, case reports demonstrate that, in appropriate circumstances, courts have often approved percentage awards embodying lodestar multipliers in the 2.38–4.39 range at issue here.  In the leading Ninth Circuit opinion on point, for example, the Court established 25% as the benchmark percentage fee and approved a multiplier of 3.65, writing that this number "was within the range of multipliers applied in common fund cases"[42] and appending a list of such cases to its

---

[37] Theodore Eisenberg & Geoffrey Miller, Attorney Fees and Expenses in Class Action Settlements: 1993–2008, 7 J. Empirical Legal Stud. 248, 259, 272 (2010) (hereafter "Eisenberg & Miller").

[38] Stuart J. Logan, Beverly C. Moore & Jack Moshman, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 169 (2003) (hereafter "Logan").

[39] 5 *Newberg on Class Actions*, *supra* note 4, at § 15:89 (reporting on data from William B. Rubenstein and Rajat Krishna, *Class Action Fee Awards: A Comprehensive Empirical Study* (draft on file with author)).

[40] Eisenberg & Miller, *supra* note 37, at 274.  The mean in cases between $38.3-$69.6 million is 1.98, but I utilize the mean from $69.6–175.5 given that post-judgment interest is accruing on the class's judgment.

[41] Logan, *supra* note 38, at 167.

[42] *Vizcaino*, 290 F.3d at 1051; *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0.  Given the complexity and duration of this litigation, the results obtained for the class, and the risk counsel faced in bringing the litigation, the Court finds the 2.83 multiplier appropriate.") (citation omitted).

20

decision.  Similarly, in Exhibit D, I provide a list of 54 cases with multipliers over 3.5, 48 of which have multipliers of 4.00 or higher, and 31 of which have multipliers of 5.00 or higher.  This list is not meant to be either exhaustive or representative of all multipliers.  Rather, it demonstrates that courts approve percentage awards that embody multipliers well above the multiplier sought here in appropriate circumstances.

25.     That such circumstances exist in this case is evident from a review of the risks Class Counsel have taken and the results that they have achieved for the Class.  I now turn to that analysis.

**B.**
**COUNSEL TOOK SIGNIFICANT RISKS**

26.     Ten points highlight the risks counsel took in pursuing this case.

- ***TCPA cases are inherently risky because of the combination of small damages and no attorney's fee provision.***  The TCPA statute enables harmed plaintiffs to recover small amounts of statutory damages, yet it does not enable those individuals' attorneys to recovery attorney's fees.[43]  This is peculiar because no attorney can afford to pursue a $500 statutory damage case – even if trebled – for a contingent piece of the client's recovery.  What that means is that, except in unusual circumstances, the only TCPA actions that are economically viable are class actions and only then (a) if the defendant is likely to settle (and pay class counsel's fee as part of the settlement) or (b) if class counsel can secure a large enough aggregate judgment to fund their fees.  Betting on the former outcome is risky, betting on the latter close to crazy:  the risk is so large that most counsel are likely to accept a settlement to avoid it.  Here Class Counsel were willing to go the distance for their clients and, although they have achieved a landmark victory, significant risk nonetheless remains given that the likely appeals process could result in reversal of the entire victory; indeed, even if an appeal reverses only the trebling of damages, such an outcome would likely have ramifications for Counsel's 33.33% fee request.  Thus, the combination of small damage amounts and no attorney's fee

---

[43] For an overview, *see Newberg on Class Actions, supra* note 4, at § 21:8.

21

provision continues to pose a significant risk for Class Counsel even this late in the litigation.

- ***Trials are inherently risky.***  One of the primary reasons that lawsuits settle is that trials are remarkably risky for the clients and the lawyers.  The "winner take all" nature of the trial means that each party is risking its entire case on the outcome, rather than finding a less onerous – albeit less satisfying – solution through settlement.  For lawyers paid by the hour, the trial can be a boon, but for contingent fee lawyers it raises the risks of a case immeasurably:  they must invest large sums of time and money to bring a case through trial, yet the potential outcomes are essentially limited to two – win or lose.  Not surprisingly, as discussed above,[44] contingent fee contracts promise counsel higher returns in tried cases.  This fact demonstrates that the market recognizes the heightened risk posed by tried cases.

- ***This case was complicated.***  On its face, this case may appear to be a straightforward TCPA case.  But that simple description is deceptive given three particular characteristics of this litigation:  (1) the class and claims are defined, in the first instance, in relation to telephone numbers rather than individuals; this is a unique factor in a class action as it affects a range of issues from questions of standing, to notice, to the claiming process; (2) the defendant's activities were undertaken by a third-party dealer, creating complex questions ranging from plaintiff standing to defendant(s)' responsibility; (3) this case is one in a series of individual and governmental efforts aimed at addressing the underlying problems; this complicated the path from the identification of a legal problem to the satisfaction of the class members' claims.

- ***This case's outcome did not piggy-back on a government enforcement action.***  Many class actions are brought on the heels of government enforcement actions, such as securities class actions that follow SEC enforcement actions or antitrust cases that follow Department of Justice actions.  In such "piggy-back" cases, the class lawyers can often employ issue preclusion to estop the defendants from re-litigating liability; all they must do, therefore, is litigate damages for the class.[45]  This case and its *Donaca* predecessor were litigated along a parallel track with a government enforcement action, but that proved as complicating as it was helpful:  Class Counsel report that they were able to share some discovery from those parallel

---

[44] *See* ¶ 19, *supra*.

[45] *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

22

efforts, yet they tried but failed to take advantage of collateral outcomes through preclusion,[46] and they subsequently had to defend against the argument that the parallel litigation ought to foreclose or diminish the outcome in this case.[47]

- ***Class Counsel litigated against an exceptionally well-funded defendant.*** Dish Network is number 186 on the Fortune 500 list of the largest corporations in the United States, with roughly $1.5 billion dollars in profit each year.[48] Below I note that Class Counsel likely invested between $5–10 million of their own money in this case. Dish had made more than that in profit by January 3 of the year.[49] Thus, while Class Counsel were litigating with their own limited resources, they were litigating against a party with relatively unlimited resources.

- ***Class Counsel litigated against a huge, well-respected, international law firm.*** Four firms serve as Class Counsel herein: one small (50-ish lawyer) firm, a two-lawyer partnership, one solo practitioner and a solo local counsel. The firm representing the defendants employs over 1,000 lawyers in 25 worldwide locations.[50]  It would not be a stretch to label this litigation something of a David and Goliath clash.

- ***This case was so vigorously defended that it was far riskier than a standard contingent fee case.*** Most litigation settles. A lawyer bringing a basic contingent fee tort case has a high likelihood of assuming the case will settle; class action lawsuits that survive motions to dismiss or class certification fall into the same category. Following discovery, when both parties can accurately assess the value of their respective legal positions, rational litigants typically settle. This case, including its multiple failed mediations that were ordered by the Court, defied that expectation. If this case had a title it would be, *Everything Was Contested*, but even that would be an understatement as nearly everything was contested more than once. The case encompassed (1) a motion to dismiss on *Spokeo* (justiciability) grounds; (2) cross-motions for summary judgment; (3) a motion for class certification, (4) a petition for interlocutory

---

[46] ECF No. 169.

[47] ECF No. 370.

[48] *See* http://fortune.com/fortune500/dish-network/.

[49] Dish's $1,449,900,000 annual profit amounts to a daily profit of $3,972,329.

[50] *See Orrick, Herrington & Sutcliffe*, available at
https://en.wikipedia.org/wiki/Orrick,_Herrington_%26_Sutcliffe.

23

review of class certification in the Fourth Circuit; (5) a motion to decertify the class; (6) substantial deposition and document discovery; (7) extensive pre-trial briefing including dozens of motions *in limine*, many re-litigated through motions for reconsideration; (8) a full six day jury trial; (9) plaintiffs' treble damage motion; more than a year of excruciating post-trial litigation including (10) motions for a directed verdict and (11) new trial, (12) motion to dismiss or vacate on preclusion grounds, and (13) numerous motions regarding claims and other administrative procedures – and it will almost inevitably involve (14) multiple appeals.   The defendant's advocacy has been so insistent that this Court has stated that, "In making future decisions about an efficient and fair claims administration process, the Court will take into account Dish's lack of respect for the terms of the Court's July 2017 Order, its continuing repetition of long-rejected arguments, and its attempt to obfuscate the issues, confuse the record, and shift arguments and facts."[51]   Defendant's scorched earth litigation not only drove up the costs for Class Counsel, it significantly increased the risks of the litigation as at many of the moments enumerated above, the plaintiffs risked losing the entire case.

- ***This case was expensive.***   Class Counsel report a lodestar exceeding $4.5 million and expenses approaching a half million dollars in this phase of the case alone; in the *Donaca* phase, Class Counsel invested another $2.5 million in time and more than $125,000 in costs.   What this means is that Class Counsel have poured close to $8 million of their own time and money into the fees and expenses of the class's case, or, in other words, that Class Counsel have loaned the class $8 million – and risk losing every penny of it on the outcome of his case.   Moreover, with appeals still looming and aspects of the case such as fund administration not yet fully concluded, Class Counsel will invest even more time and effort on behalf of the class.   It is very rare that you

---

[51] ECF No. 407 at 12.  *See also* ECF No. 438 at 2 ("As the Court noted some seven months ago, an aggregate judgment is appropriate in this case.  The Court held off on that to give Dish an opportunity to address issues it had with the identity of some class members.  Since that time, Dish has failed to suggest appropriate and efficient means for resolution of its purported identity issues, instead choosing to halfheartedly participate in meet-and-confer requirements, to bombard the Court with irrelevant and voluminous materials in connection with the plaintiff's motion for judgment; to repeat arguments the Court has rejected many times; to seek a second bite at the apple when it loses on grounds it could have raised the first time the apple was presented; and to continue to offer only cumbersome and inefficient methods of resolving purported challenges to class member identity that go well beyond identity disputes.") (citations omitted).

24

see attorneys investing this level of money in a client's case, particularly a case with such an uncertain outcome.

- ***Class Counsel bore the risk of the cases themselves.***  In many class actions, particularly of this length and magnitude, the class is represented by a collection of large plaintiffs' firms.[52]  This means that the lawyers are able to spread the risk among the various firms.  Here, two-thirds of the lodestar is attributable to the one small (50-ish lawyer) firm, and the rest was handled by a two-lawyer partnership, one solo practitioner and a solo local counsel.  None of the large national plaintiff class action firms have invested in pursuing this difficult case and these smaller firm class action lawyers are carrying all of the significant risks themselves.

- ***Class Counsel were precluded from taking other, simpler, work by virtue of their investment in this matter.***  Given the amount of time Class Counsel invested here, there is little doubt that this case precluded them from working on others.  It is fair to conclude that Class Counsel's extraordinary devotion of time and resources to this novel and complex case prevented them from pursuing simpler, bread and butter, actions, any of which would have had a higher expectation of settlement and hence ease of recovery of a contingent fee, possibly a well-multiplied one.

27.    These ten points demonstrate what seems incontestable:  Class Counsel took large risks in litigating this case from inception to judgment.  Like any investor that takes large risks, these attorneys are entitled to a return on their investment, so long as the risks they took paid off.  I will now turn to that analysis.

---

[52] *See, e.g.*, Federal Judicial Center, *Manual for Complex Litigation, Fourth* § 10.22 (2004) (discussing presence of multiple counsel in complex litigation and advising judges on how to manage) (hereafter "*Manual for Complex Litigation*").

## C.
## COUNSEL ACHIEVED REMARKABLE RESULTS

28.    Ten factors demonstrate the remarkable results Class Counsel achieved in this case:

- *Judgment, not settlement.*  The prime evidence of Class Counsel's success in this case is that, despite a four-year barrage of motions by well-funded defendants, they won a possibly record-setting jury verdict for the class and a subsequent ruling from this Court trebling that verdict.  Most cases settle:  only about 2% of federal cases are disposed of at trial.  Trials are even rarer in class actions:  in my database of class action cases, only 15 of 1,187, or 1.26%, had even one day of trial.  This is the rare case that both went to trial and resulted in a plaintiff's verdict.

- *Significant jury award.*  Class Counsel prevailed on liability at trial, but even then, the jury could have awarded no or minute money damages (as Class Counsel inform me Dish argued for).  In fact, the jury selected a $400 damage award per call, a remarkable achievement given that many unanimous jury verdicts embody significant compromises.

- *Treble damages*.  I do not have empirical data on either (a) how many TCPA cases secure treble damages much less (b) how many class action cases (of any variety) are tried to a plaintiff's verdict *which is then trebled*, but this has to be one of the few such cases in American history.

- *Significant common fund.*  Counsel's efforts on behalf of the class secured a jury verdict of roughly $20 million, which is now – due to Class Counsel's efforts to ensure that amount would be tripled – more than $61 million.  This is a significant amount of money, likely one of the largest *trial* judgments in a TCPA case or plausibly any consumer class action case in American history.

- *100% of the class is entitled to relief.*  The judgment in the case will afford recovery to all class members represented at trial – no portion of the trial class was excluded from the judgment.

- *Significant recovery per claim.*  As actual damages from harassing, illegal telemarketing are difficult to quantify, the TCPA provides statutory damages.  Here, the jury's $400 per call verdict can be seen as a proxy for actual damages.  The court's trebling of this amount has both a remedial and deterrent effect, two socially beneficial goals the class action device is designed to

26

achieve.   Class Counsel's efforts will return at least $2,400 to each class member (more to those who received multiple calls), before fees and expenses. This constitutes 80% of the $3,000 maximum available recovery for each class member.[53]

- *Significant individual awards.*   The judgment not only provides class members a signicant recovery on their claims, it also provides them with a significant amount of money:   $2,400 is about 4% of the median household income,[54] or, put differently, about two weeks' income for the average American household.   For class members who received multiple unsolicited calls, recoveries could approximate a month or more of income.

- *Cash.*   Class actions sometimes end in settlements that return class members little direct compensation, occasionally nothing more concrete than coupons or recoveries going exclusively to third party *cy pres* recipients.   The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' products. . . ."[55]   The judgment secured in this case will deliver cash compensation directly to class members, a form of recovery that speaks highly of the case's outcome.

- *Ease of claiming.*   Class actions often end with settlements requiring class members to file claims.   The claim filing process may often dissuade class members from making the effort, particularly in small claim situations.   The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits. . . ."[56]   In this case, "the Court has concluded

---

[53] The class is defined as those who receive two or more calls.   A class member who received two calls could have received $500/call, or $1,000, trebled to $3,000.   The $2,400 trebled jury verdict is 80% of that maximum plausible amount.

[54] *See* Tami Luhby, *Middle Class Income Tops $59,000*, CNN Money (Sept. 12, 2017), http://money.cnn.com/2017/09/12/news/economy/median-income-census/index.html (reporting on U.S. Census Bureau data).

[55] *Manual for Complex Litigation, supra* note 52, at § 21.61.

[56] *Id.*

that over 11,000 class members are entitled to recover damages without the need for a claims process."[57]

- ***The relief required significant, contested, adversarial litigation against strong opposition, leaving no hint of collusion.***  The well-funded defendants contested nearly every aspect of this lawsuit, often repeatedly.  A critical concern in class suits is that the class's agents have not sold out the class by agreeing to a low recovery in return for a high fee.  Thus, one of the factors many courts consider in deciding whether to approve proposed class action settlements is "the risks that the settlement is the product of fraud or collusion."[58]  There is here not a hint of collusion – this case has been nothing but adversarial since its inception, no settlement occurred, and the outcome is the result of a jury verdict, not bargaining.  There is, therefore, no evidence whatsoever of class counsel selling out the class's interest.

* * *

29.     In sum, it is my expert opinion that Class Counsel's 33.33% fee request is reasonable:  it is a lower than normal percentage for cases going to trial and reflects a lodestar multiplier that is supported by the significant risks counsel shouldered and the remarkable results they achieved for the class.

Executed this 29th day of April, 2018, in Cambridge, Massachusetts.



_____
William B. Rubenstein

---

[57] ECF No. 438 at 1 (citing ECF No. 407).

[58] *Newberg on Class Actions*, supra note 4, at § 13:55.

# EXHIBIT A

`

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                    (617) 496-7320
1545 Massachusetts Avenue                            rubenstein@law.harvard.edu
Cambridge, MA 02138

### ACADEMIC EMPLOYMENT

HARVARD LAW SCHOOL, CAMBRIDGE MA
      Sidley Austin Professor of Law                                    2011-present
      Professor of Law                                                          2007-2011
      Bruce Bromley Visiting Professor of Law                              2006-2007
      Visiting Professor of Law                                  2003-2004, 2005-2006
      Lecturer in Law                                                          1990-1996
            *Courses:*     Civil Procedure; Class Action Law; Remedies
            *Awards*:     2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
            *Membership:*  American Law Institute; American Bar Foundation Fellow

UCLA SCHOOL OF LAW, LOS ANGELES CA
      Professor of Law                                                          2002-2007
      Acting Professor of Law                                                  1997-2002
            *Courses*:     Civil Procedure; Complex Litigation; Remedies
            *Awards*:     2002 Rutter Award for Excellence in Teaching
                         Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

STANFORD LAW SCHOOL, STANFORD CA
      Acting Associate Professor of Law                                    1995-1997
            *Courses*:     Civil Procedure; Federal Litigation
             *Awards*:     1997 John Bingham Hurlbut Award for Excellence in Teaching

YALE LAW SCHOOL, NEW HAVEN CT
      Lecturer in Law                                                          1994, 1995

BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY
      Visiting Professor                                                      Summer 2005

### LITIGATION-RELATED EMPLOYMENT

AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY
      Project Director and Staff Counsel                                    1987-1995

      Litigated impact cases in federal and state courts throughout the US.   Supervised a staff of
      attorneys at the national office, oversaw work of ACLU attorneys around the country, and
      coordinated work with private cooperating counsel nationwide.   Significant experience in
      complex litigation practice and procedural issues; appellate litigation; litigation
      coordination, planning and oversight.

HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC
      Law Clerk                                                                    1986-87

PUBLIC CITIZEN LITIGATION GROUP,   WASHINGTON DC
      Intern                                                                    Summer 1985

**A-1**

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
      J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
      B.A., 1982, *magna cum laude*
            Editor-in-Chief, YALE DAILY NEWS

SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◇    *Author,* NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◇    *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (invited to present to MDL judges on recent developments in class action law and related topics (2010, 2011, 2012, 2013, 2014 (invited), 2015, 2016, 2017)

◇    *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◇    *Amicus curiae, Amicus* brief filed in – and approvingly cited by – California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 687 (Cal. 2016))

◇    *Author amicus* brief*, Amicus* brief filed in the United States Supreme Court on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◇    *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation*, Philadelphia, Pennsylvania

◇    *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◇    *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◇    *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

◇    "*Expert's Corner*" (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

**A-2**

## *Judicial Appointments*

◇ *Court-appointed expert witness,* Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◇ *Court-appointed appellate counsel,* Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *Berman DeValerio v. Olinsky*, No. 15-1310-cv, 2016 WL 7323980 (2d Cir. Dec. 16, 2017))

## *Expert Witness*

◇ Submitted an expert witness declaration concerning specific fee issues raised by Court at fairness hearing (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal., March 9, 2018))

◇ Submitted two expert witness declarations and deposed/testified by Special Master in sealed proceeding concerning attorney's fee issues (2017-2018)

◇ Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◇ Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◇ Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

**A-3**

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◇     Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◇     Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◇     Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◇     Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◇     Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American  International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◇     Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

**A-4**

◊    Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory,* Case No. RG0522096, California Superior Court, Alameda County (2014))

◊    Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊    Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊    Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊    Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel, referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊    Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊    Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊    Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide consumer class action settlement   (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊    Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊    Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of "net expected value" of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.,* 2013 WL 10545508 (N.D. Ill. July 3, 2013))

**A-5**

◇    Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◇    Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No.   CIVVS 120177, California Superior Court, San Bernardino County (2012))

◇    Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◇    Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◇    Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◇    Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◇    Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

◇    Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill,*Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◇    Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◇    Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◇    Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◇    Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◇    Submitted an expert witness declaration concerning fee entitlement and enhancement in

**A-6**

non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◇    Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◇    Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◇    Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◇    Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◇    Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◇    Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◇    Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◇    Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◇    Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◇    Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◇    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.   BC362599, California Superior Court, Los Angeles County (2009))

◇    Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

**A-7**

◇    Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◇    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◇    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◇    Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No.  KC034700, California Superior Court, Los Angeles County (2008))

◇    Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E.D. Ky. (2008))

◇    Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◇    Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◇    Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al.*, No. 07-39 (E. D. Ky. (2007))

◇    Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◇    Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◇    Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◇    Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◇    Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◇    Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D.*

**A-8**

       *Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◇     Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◇     Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◇     Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

*Expert Consultant*

◇     Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769,* Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◇     Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◇     Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

◇     Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

◇     Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◇     Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◇     Retained by a Fortune 100 Company as an expert consultant on class certification issues

◇     Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. #: 2:13-cv-00074-ABJ (D. Wy. (2013))

◇     Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◇     Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

**A-9**

◇    Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.,*No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◇    Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La. (2012))

◇    Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◇    Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◇    Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◇    Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◇    Retained as an expert consultant on class action issues in complex multi-jurisdictional construction dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 8-04194 (E.D. Pa. (2008))

◇    Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit (2008))

◇    Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◇    Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◇    Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◇    Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◇    Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re*

**A-10**

*DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◇     Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◇     Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◇     Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◇     Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

## *Ethics Opinions*

◇     Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◇     Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◇     Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◇     Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◇     Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◇     Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

## *Publications on Class Actions & Procedure*

◇     NEWBERG ON CLASS ACTIONS (sole since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◇     *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◇     *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◇     *Supreme Court Round-Up – Part II*, 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◇     *Supreme Court Round-Up – Part I*, 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August

**A-11**

2011)

◇   *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◇   *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◇   *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◇   *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◇   *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◇   *The Puzzling Persistence of the "Mega-Fund" Concept*, 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◇   *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483   (December 2009)

◇   *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS ACTION ATTORNEY FEE DIGEST 407   (October 2009)

◇   *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◇   *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◇   *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◇   *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◇   *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◇   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◇   *2008: The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◇   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◇   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

**A-12**

◇     *Supreme Court Round-Up,* 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◇     *Fee-Shifting For Wrongful Removals: A Developing Trend?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◇     *You Cut, I Choose:  (Two Recent Decisions About) Allocating Fees Among Class Counsel,* 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◇     *Why The Percentage Method?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◇     *Reasonable Rates: Time To Reload The (*Laffey*) Matrix,* 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◇     *The "Lodestar Percentage:" A New Concept For Fee Decisions?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◇     *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◇     *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◇     *Finality in Class Action Litigation: Lessons From Habeas,* 82 N.Y.U. L. REV. 791 (2007)

◇     *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◇     *The American Law Institute's New Approach to Class Action Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◇     *"The Lawyers Got More Than The Class Did!":  Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◇     *Supreme Court Round-Up,* 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◇     *On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◇     *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◇     *On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◇     *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◇     *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31

**A-13**

(February 2007)(with Alan Hirsch)

◇    *The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◇    *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◇    *On What a "Private Attorney General" Is – And Why It Matters*,  57 VAND. L. REV.  2129(2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◇    *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◇    *A Transactional Model of Adjudication*, 89 GEORGETOWN  L.J. 371 (2000)

◇    *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◇    *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 YALE L. J. 1623 (1997) *(*excerpted in COMPLEX LITIGATION 120-123 (1998))

*Selected Presentations*

◇    *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◇    *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◇    *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◇    *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◇    *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◇    *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◇    *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

**A-14**

◊  *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊  *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊  *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊  *Brave New World: The Changing Face of Litigation and Law Firm Finance*, Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◊  *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊  *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊  *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts*, Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊  *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◊  *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊  *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊  *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊  *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊  *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊  *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊  *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

**A-15**

◇    *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◇    *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National
Institute on Class Actions, San Diego, California, October 6, 2006

◇    *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◇    *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◇    *Marks, Bonds, and Labels:  Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◇    Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◇    ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◇    Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◇    Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◇    Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◇    Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◇    Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◇    Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◇    Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◇    Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono,* 130 S. Ct. 1803 (2010))

◇    Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

**A-16**

◇ Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

### *Attorney's Fees*

◇ Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation (*In re National Football League Players' Concussion Injury Litigation*, No. 2:212-md-02323-AB, ECF No. 8376 (September 14, 2017))

◇ Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *Berman DeValerio v. Olinsky*, No. 15-1310-cv, 2016 WL 7323980 (2d Cir. Dec. 16, 2017))

◇ Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common fund cases, relied on by the court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016).

### *Consumer Class Action*

◇ Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.*, 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◇ Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation*, 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

### *Disability*

◇ Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

### *Employment*

◇ Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); *(Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

### *Equal Protection*

◇ Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◇ Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (en banc))

◇ Co-counsel in challenge to the constitutionality of the Attorney General of Georgia's firing of staff

**A-17**

attorney (*Shahar v. Bowers*, 120 F.3d 211 (11ᵗʰ Cir. 1997))

## *Fair Housing*

◇   Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

## *Family Law*

◇   Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◇   Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

## *First Amendment*

◇   Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◇   Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

## *Landlord / Tenant*

◇   Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

## *Police*

◇   Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2ⁿᵈ Cir. 1994))

## *Racial Equality*

◇   Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 *(Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

## SELECTED OTHER PUBLICATIONS

### *Editorials*

◇   *Follow the Leaders*, NEW YORK TIMES, March 15, 2005

◇   *Play It Straight*, NEW YORK TIMES, October 16, 2004

◇   *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004

**A-18**

◇    *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)

◇    *Don't Ask, Don't Tell. Don't Believe It*, NEW YORK TIMES, July 20, 1993

◇    *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)


BAR ADMISSIONS

◇    Massachusetts (2008)

◇    California (2004)

◇    District of Columbia (1987) (inactive)

◇    Pennsylvania (1986) (inactive)

◇    U.S. Supreme Court (1993)

◇    U.S. Court of Appeals for the First Circuit (2010)

◇    U.S. Court of Appeals for the Second Circuit (2015)

◇    U.S. Court of Appeals for the Fifth Circuit (1989)

◇    U.S. Court of Appeals for the Ninth Circuit (2004)

◇    U.S. Court of Appeals for the Eleventh Circuit (1993)

◇    U.S. Court of Appeals for the D.C. Circuit (1993)

◇    U.S. District Courts for the Central District of California (2004)

◇    U.S. District Court for the District of the District of Columbia (1989)

◇    U.S. District Court for the District of Massachusetts (2010)

◇    U.S. District Court for the Northern District of California (2010)


**A-19**

# EXHIBIT B

*Krakauer v. Dish Network, L.L.C.*
Case No. 1:14-cv-003330CCE-JEP
U.S. District Court for the Middle District of North Carolina
Expert Declaration of William B. Rubenstein

**EXHIBIT B**
Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

**A.** *Krakauer v. DISH Network, L.L.C.*, **Civ. No. 1:14-cv-00222-CCE-JEP**
1. Class Action Complaint, ECF No. 1
2. Answer, ECF No. 11
3. First Amended Class Action Complaint, ECF No. 32
4. Answer to Amended Complaint, ECF No. 34
5. Plaintiff's Motion for Class Certification, ECF No. 47
6. Plaintiff's Memorandum of Law in Support of Motion for Class Certification, ECF No. 48
7. Exhibit A – Deposition of Thomas H. Krakauer, ECF No. 48-1
8. Exhibit B – Expert Report of Anya Verkhovskaya, A.B. Data, Ltd., ECF No. 48-2
9. [Redacted], ECF No. 48-3
10. [Redacted], ECF No. 48-4
11. Exhibit C – Videotaped Deposition of Bahar Tehranchi, ECF No. 48-5
12. Exhibit D – Videotaped Deposition of David Hill, ECF No. 48-6
13. Exhibit E – Declaration of John W. Barrett in Support of Request for Appointment as Class Counsel, ECF No. 48-7
14. Defendant DISH Network L.L.C.'s Opposition to Plaintiff's Motion for Class Certification, ECF No. 56
15. Exhibit 1 – Email Exchange, ECF No. 56-1
16. Exhibit 2 – Deposition of Thomas H. Krakauer, ECF No. 56-2
17. Exhibit 3 – Deposition of Thomas Henry Krakauer, ECF No. 56-3
18. Exhibit 4 – Affidavit of Bruce M. Werner, ECF No. 56-4
19. Exhibit 5 – Inbound DNC Process, ECF No. 56-5
20. Exhibit 6 – Email Exchange, ECF No. 56-6
21. Exhibit 7 – Rule 30(b)(6) Videotape Deposition of Bruce Werner, ECF No. 56-7
22. Exhibit 8 – Videotaped Deposition of David Hill, ECF No. 56-8
23. Exhibit 9 – Videotaped Deposition of Bahar Tehranchi, ECF No. 56-9
24. Exhibit 10 – Declaration of Rehan Quader, ECF No. 56-10
25. Exhibit 11 – Examination of Anya Verkhovskaya, ECF No. 56-11
26. Exhibit 12 – Expert Report of Dr. Debra J. Aron, ECF No. 56-12
27. Exhibit 13 – Declaration of Laura Dozois, ECF No. 56-13
28. Exhibit 14 – Do Not Call Registry, ECF No. 56-14
29. Exhibit 15 – Extract, ECF No. 56-15
30. Exhibit 16 – Spreadsheet, ECF No. 56-16
31. Exhibit 17 – Examples of Established Business Relationships ("EBR") as Defined in 47 C.F.R. § 64.1200(f)(5), ECF No. 56-17

**B-1**

32. Exhibit 18 – Exmaples [sic] of Telephone Numbers in Plaintiff's Putative Class Identified by Lexisnexis as Business Numbers, ECF No. 56-18

33. Exhibit 19 – Examples of Telephone Numbers Identified by Lexisnexis as Both Business and Residential Numbers, ECF No. 56-19

34. Exhibit 20 – Examples of Calls Identified as "Business" Numbers on Five9 Call Logs but Identified by Lexisnexis as Residential Numbers, ECF No. 56-20

35. Exhibit 21 – Examples of Wireless Numbers Identified by Lexisnexis as Business and/or Mixed Residential/Business Numbers, ECF No. 56-21

36. Exhibit 22 – Examples of Calls Where a Person First Made an Inbound Call to SSN and SSN Called the Person Back, ECF No. 56-22

37. Exhibit 23 – Examples of Inbound Calls with No Available Information regarding Individual Who Initiated Call to SSN, ECF No. 56-23

38. Exhibit 24 – Examples of Calls Where Called Individual Provided Second Number ("Number2") to Be Called, ECF No. 56-24

39. Exhibit 25 – Examples of Individuals Who Expressed Interest and Requested Call Back on First Call, ECF No. 56-25

40. Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment as to "Prior Express Consent" and "Established Business Relationship, "ECF No. 72

41. Defendant DISH Network L.L.C.'s Memorandum in Support of Motion for Summary Judgment, ECF No. 74

42. Plaintiff's Reply Memorandum in Support of Motion for Class Certification, ECF No. 75

43. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, ECF No. 81

44. Defendant DISH Network L.L.C.'s Opposition to Plaintiff's Motion for Partial Summary Judgment as to "Prior Express Consent" and "Established Business Relationship," ECF No. 82

45. Defendant DISH Network L.L.C.'s Reply in Support of Its Motion for Summary Judgment, ECF No. 87

46. Plaintiff's Reply in Support of Motion for Partial Summary Judgment, ECF No. 91

47. Memorandum Opinion and Order, ECF No. 110

48. Memorandum Opinion and Order, ECF No. 111

49. Order, ECF No. 113

50. Order, ECF No. 118

51. Order, ECF No. 169

52. Order, ECF No. 218

53. Order, ECF No. 232

54. Amended Order Regarding Plaintiff's Motion in Limine, ECF No. 233

55. Amended Joint Stipulation Regarding Call Categories, ECF No. 278

56. Verdict Sheet, ECF No. 292

57. Jury Question #1, ECF No. 294

58. Jury Question $2, ECF No. 295

59. Jury Question #3, ECF No. 296

60. Jury Question #4, ECF No. 297

61. Memorandum Opinion and Order, ECF No. 338

62. Memorandum Opinion and Order, ECF No. 341

**B-2**

63. Memorandum Opinion and Order, ECF No. 351
64. Memorandum Opinion and Order, ECF No. 370
65. Order, ECF No. 387
66. Order, ECF No. 407
67. Order, ECF No. 438
68. Final Judgment, ECF No. 439
69. Transcript of Trial, Jan. 10, 2017 (11:55 AM)

**B.** ***Donaca v. DISH Network, L.L.C.*, Civ. No. 1:11-cv-02910-RBJ**
1. Complaint and Jury Demand, ECF No. 1
2. Answer, ECF No. 12
3. Defendant DISH Network L.L.C.'s Motion for Partial Judgment on the Pleadings and Supporting Brief, ECF No. 13
4. Defendant DISH Network L.L.C.'s Motion to Dismiss or Stay the Action Pursuant to the Doctrine of Primary Jurisdiction and Supporting Brief, ECF No. 14
5. First Amended Complaint and Jury Demand, ECF No. 24
6. Defendant DISH Network L.L.C.'s Answer to First Amended Complaint, ECF No. 30
7. Defendant DISH Network L.L.C.'s Motion for Partial Summary Judgment as to Plaintiff's Claims Under 47 U.S.C. § 227(b)(1)(B), ECF No. 54
8. Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment, ECF No. 62
9. Plaintiff's Motion for Class Certification, ECF No. 102
10. Plaintiff's Memorandum in Support of His Motion for Class Certification, ECF No. 103
11. Defendant's Opposition to Plaintiff's Motion for Class Certification, ECF No. 150
12. Plaintiff's Reply Memorandum in Support of His Motion for Class Certification, ECF No. 160
13. Defendant DISH Network L.L.C.'s Renewed Motion for Summary Judgment as to Plaintiff's Claims Under 47 U.S.C. § 227(b)(1)(B) and Original Motion for Summary Judgment as to Plaintiff's Remaining Claims, ECF No. 172
14. Defendant DISH Network L.L.C.'s Surreply in Opposition to Plaintiff's Motion for Class Certification, ECF No. 192
15. Plaintiff's Memorandum in Opposition to Defendant's Renewed Summary Judgment Motion, ECF No. 195
16. Plaintiff's Revised Motion for Class Certification, ECF No. 221
17. Plaintiff's Memorandum in Support of His Revised Motion for Class Certification, ECF No. 222
18. Defendant DISH Network L.L.C.'s Opposition to Plaintiff's Revised Motion for Class Certification, ECF No. 238
19. Plaintiff's Reply in Support of Revised Motion for Class Certification, ECF No. 248
20. Order, ECF No. 262
21. Joint Stipulation of Dismissal with Prejudice, ECF No. 265

**B-3**

# EXHIBIT C

*Krakauer v. Dish Network, L.L.C.*
Case No. 1:14-cv-003330CCE-JEP
U.S. District Court for the Middle District of North Carolina
Expert Declaration of William B. Rubenstein

**<u>EXHIBIT C</u>**
Approved Hourly Rates in Class Action Fee Decisions
in the Northern District of California, 2016-2018

*From recent expert witness work,*[1] *I have a data base of 41 cases decided in the past two years (2016–2018) in the Northern District of California. My research assistants compiled this data set by running neutral search terms in the Westlaw database from Northern California and then identifying cases in which courts had approved class action fee petitions that reflected hourly rates. No cases were discarded from the data set for any reason other than not meeting the criteria: explicit judicial approval of class counsel's hourly rates and hours. In some of these 41 cases, counsel sought an award lower than their total lodestar and/or the court made an award lower than the total lodestar. So long as the court did not express concern about counsel's proposed billing rates or hours in affirming the fee request, we coded these rates as affirmed, or judicially approved, rates and hours and included them in the data set. If a court explicitly lowered a specific billing rate or the number of hours, we utilized the lower numbers in the data set. The last time we updated this data set was in March of 2018. At that time, we reported that, "The blended billing rate (adjusted to 2017 dollars) in these [41] cases ranged from a low of $372.22/hour to a high of $733.88/hour. The mean rate for these 41 cases is $527.18."*[2] *For purposes of this Declaration, I simply adjusted these 2017 dollar amounts to 2018 dollar amounts dollars using the U.S. Bureau of Labor CPI Inflation Calculator. This calculator can be found at this hyperlink:* [http://data.bls.gov/cgi-bin/cpicalc.pl](http://data.bls.gov/cgi-bin/cpicalc.pl).

*The cases listed below are the 41 cases that comprise the data set.*

1.   *Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560SIEDL, 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016)

2.   *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2016 WL 1271046 (N.D. Cal. Mar. 31, 2016)

---

[1] I initially compiled this data set for my work on the *Volkswagen* case, *see, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017) (referencing empirical work in approving fee award), and I subsequently updated it and utilized it in *In re Anthem, Inc. Data Breach Litigation*, Case No. 15-MD-02617-LHK (N.D. Cal., March 9, 2018).

[2] Declaration of William B. Rubenstein in Supports of Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Service Awards to Class Representatives, ECF No. 991 at 13, *In re Anthem, Inc. Data Breach Litigation*, Case No. 15-MD-02617-LHK (N.D. Cal., March 9, 2018).

**C-1**

3.    *Bergman v. Thelen LLP*, No. 3:08-CV-05322-LB, 2016 WL 7178529 (N.D. Cal. Dec. 9, 2016)

4.    *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016)

5.    *Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2016 WL 3092090 (N.D. Cal. June 2, 2016)

6.    *Brawner v. Bank of Am. Nat'l Ass'n*, No. 3:14-CV-02702-LB, 2016 WL 161295 (N.D. Cal. Jan. 14, 2016)

7.    *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016)

8.    *Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Trust, Inc.*, No. 15-CV-00216-DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016)

9.    *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)

10.   *Donald v. Xanitos, Inc.*, No. 3:14-CV-05416-WHO, 2017 WL 1508675 (N.D. Cal. Apr. 27, 2017)

11.   *Dudum v. Carter's Retail, Inc.*, No. 14-CV-00988-HSG, 2016 WL 7033750 (N.D. Cal. Dec. 2, 2016)

12.   *EK Vathana v. Everbank*, No. 09-CV-02338-RS, 2016 WL 3951334 (N.D. Cal. July 20, 2016)

13.   *Garcia v. City of King City*, No. 14-CV-01126-BLF, 2017 WL 363257 (N.D. Cal. Jan. 25, 2017)

14.   *Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL 995215 (N.D. Cal. Mar. 15, 2017)

15.   *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)

16.   *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016)

17.   *Huynh v. Hous. Auth. of Cty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539 (N.D. Cal. Mar. 17, 2017)

18.   *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016)

**C-2**

19. *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016)

20. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.* (*Bosch*), No. MDL 2672 CRB (JSC), 2017 WL 2178787 (N.D. Cal. May 17, 2017)

21. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.* (*VW 2.0*), No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)

22. *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)

23. *Jacobson v. Persolve*, LLC, No. 14-CV-00735-LHK, 2016 WL 7230873 (N.D. Cal. Dec. 14, 2016)

24. *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2016 WL 3055643 (N.D. Cal. May 31, 2016)

25. *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-CV-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017)

26. *Messineo v. Ocwen Loan Servicing, LLC*, No. 15-CV-02076-BLF, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017)

27. *Nelson v. Avon Prod., Inc.*, No. 13-CV-02276-BLF, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017)

28. *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017)

29. *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)

30. *Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286 (N.D. Cal., Jan. 23, 2018)

31. *Rosado v. Ebay Inc.*, No. 5:12-CV-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016)

32. *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 5462451 (N.D. Cal. Sept. 28, 2016)

33. *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016)

34. *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016)

35. *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016)

**C-3**

36.     *Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-CV-00132-LB, 2016 WL 4916955 (N.D. Cal. Sept. 15, 2016)

37.     *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017)

38.     *Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854 (N.D. Cal. Dec. 12, 2016)

39.     *Villanueva v. Morpho Detection, Inc.*, No. 13-CV-05390-HSG, 2016 WL 1070523 (N.D. Cal. Mar. 18, 2016)

40.     *Winans v. Emeritus Corp.*, No. 13-CV-03962-HSG, 2016 WL 107574 (N.D. Cal. Jan. 11, 2016)

41.     *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)

# EXHIBIT D

*Krakauer v. Dish Network, L.L.C.*
Case No. 1:14-cv-003330CCE-JEP
U.S. District Court for the Middle District of North Carolina
Expert Declaration of William B. Rubenstein

**EXHIBIT D**
List of Exemplary Cases With Multipliers Over 3.5

1.  *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (19.6 multiplier)

2.  *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, NO. CIV.A. 03-457, 2005 WL 1213926, at *17-18 (E.D. Pa. May 19, 2005) (15.6 multiplier)

3.  *Kuhnlein v. Department of Revenue*, 662 So.2d 309, 315 (Fla. 1995) (15 multiplier reduced to 5)

4.  *In re Doral Fin. Corp. Sec. Litig.*, No. 05-md-1706 (S. D. N.Y. July 17, 2007) (10.26 multiplier)

5.  *Weiss v. Mercedes-Benz*, 899 F. Supp. 1297 (D. N.J. 1995), aff'd, 66 F.3d 314 (3d Cir. 1995) (9.3 multiplier)

6.  *Doty v. Costco Wholesale Corp.*, No. 05-3241 (C. D. Cal. May 14, 2007) (9 multiplier)

7.  *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (8.9 multiplier)

8.  *Cosgrove v. Sullivan*, 759 F. Supp. 1667, 167 n.1 (S. D. N.Y. 1991) (8.74 multiplier)

9.  *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, Civil Action No. 05-11148-PBS, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) (8.3 multiplier)

10. *Newman v. Caribiner Int'l, Inc.*, No. 99 Civ. 2271 (S.D. N.Y. Oct. 19, 2001) (7.7 multiplier)

11. *Hainey v. Parrott*, No. 02-733 (S. D. Ohio Nov. 6, 2007) (7.47 effective multiplier)

12. *In re Rite Aid Corp. Sec. Litigation*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier)

13. *Steiner v. Amer. Broadcasting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (6.85 multiplier)

**D-1**

14. *In re UnitedHealth Group, Inc. PSLRA Litig.*, No. 06-1691 (D. Minn. Aug. 10, 2009) (6.49 multiplier)

15. *The Music Force, LLC v. Viacom, Inc.*, No. 04-8239 (C.D. Cal. Aug. 8, 2007) (6.43 multiplier)

16. *In re Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (6 multiplier)

17. *In re Cardinal Health Inc. Securities Litigations*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (6 multiplier)

18. *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 04-416 (M.D. N.C. Feb. 15, 2007) (6 multiplier)

19. *In re RJR Nabisco, Inc. Securities Litigation*, No. 88 Civ. 7905(MBM), 1992 WL 210138, at *5-6 (S.D. N.Y. Aug. 14, 1992) (6 multiplier)

20. *Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.*, No. 03-2141 (D. S.C. Aug. 15, 2006) (6 multiplier)

21. *In re Cardinal Health, Inc. Sec. Litig.*, No. 04-575, 2007 U.S. Dist. LEXIS 95127 (S. D. Ohio Dec. 31, 2007) (5.85 multiplier)

22. *Dutton v. D&K Healthcare Res., Inc.*, No. 04-147 (E. D. Mo. June 5, 2007) (5.6 multiplier)

23. *In re Charter Communications, Inc., Securities Litigation*, No. MDL 1506, 2005 WL 4045741, at * 22 (E.D. Mo. June 30, 2005) (5.6 multiplier)

24. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D. N.Y. 1997) (5.5 multiplier)

25. *Warner v. Experian Info. Solutions, Inc.*, No. BC362599 (Cal. Super. Ct. Los Angeles Co. Feb. 26, 2009) (5.48 multiplier)

26. *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier)

27. *Di Giacomo v. Plains All American Pipeline*, No. Civ.A.H-99-4137, 2001 WL 34633373, * at 11-12 (S.D. Tex. Dec. 19, 2001) (5.3 multiplier)

28. *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123-25 (C.D. Cal. 2008) (5.2 multiplier)

**D-2**

29.    *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (5.2 multiplier)

30.    *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915, 924 (E. D. Ky. 1986) (5 multiplier to attorney who performed the bulk of work on the case)

31.    *In re Fernald Litigation*, No. C-1-85-149, 1989 WL 267038, at *4-5 (S.D. Ohio Sept. 29, 1989) (5 multiplier)

32.    *In re Cendant Corp. Securities Litigation*, 404 F.3d 173, 183 (3d Cir. 2005) (multiplier in "mid-single digits")

33.    *In re United Rentals, Inc. Sec. Litig.*, No. 04-1615 (D. Conn. May 26, 2009) (4.79 multiplier)

34.    *Castillo v. General Motors Corp.*, No. 07-2142 (E. D. Cal. April 19, 2009) (4.77 multiplier)

35.    *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718 (E. D. Pa. Aug. 14, 2006) (4.77 multiplier)

36.    *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (4.7 multiplier)

37.    *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier)

38.    *Teeter v. NCR Corp.*, No. 08-297 (C.D. Cal. Aug. 6, 2009) (4.61 multiplier)

39.    *Holleran v. Rita Medical Sys., Inc.*, No. RG06302394 (Cal. Super. Ct. Alameda Co. Aug. 1, 2007) (4.57 multiplier)

40.    *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130, 1991 WL 275757 (S.D. N.Y. Dec. 19, 1991) (4.4 multiplier)

41.    *Agofonova v. Nobu Corp.*, No. 07-6926 (S. D. N.Y. Feb. 6, 2009) (4.34 multiplier)

42.    *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (4.3 multiplier)

43.    *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier)

**D-3**

44. *Shannon v. Hidalgo County Board of Comm'r*, No. 08-369 (D. N.M. June 4, 2009) (4.2 multiplier)

45. *Simmons v. Andarko Petroleum Corp.*, No. CJ-2004-57 (Okla. Dist. Ct. Caddo Co. Dec. 23, 2008) (4.17 multiplier)

46. *In re OSI Pharm., Inc. Sec. Litig.*, No. 04-5505 (E.D. N.Y. Aug. 22, 2008) (4.11 multiplier)

47. *Blackmoss Inv., Inc. v. Gravity Co.*, No. 05-4804 (S. D. N.Y. Nov. 20, 2007) (4.0 multiplier)

48. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2003) (4.0 multiplier)

49. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D. N.Y. 1998) (3.97 multiplier)

50. *Karpus v. Borelli (In re Interpublic Secs. Litig.)*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D. N.Y. Oct. 26, 2004 (3.96 multiplier)

51. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1045, 1050-51 (9th Cir. 2002) (3.65 multiplier)

52. *Donkerbrook v. Title Guar. Escrow Servs., Inc.*, No. 10-00616 LEK-RLP, 2011 WL 3649539, at *10 (D. Haw. Aug. 18, 2011) (3.6 multiplier)

53. *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) (3.5 multiplier)

54. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (3.5 multiplier)

**D-4**