UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY BETH MONTERA,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>Defendant. | Case No. 16-cv-06980-RS<br><br>**ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING MOTION FOR NEW TRIAL, AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY FEES, EXPENSES, AND SERVICE AWARD** |

## I. INTRODUCTION

Plaintiff Mary Beth Montera brought this lawsuit on behalf of New York consumers who had purchased Joint Juice, a beverage containing glucosamine and chondroitin that is sold by Defendant Premier Nutrition Corporation ("Premier"). The case proceeded to trial in May and June 2022, and the jury found Defendant liable for violations of New York General Business Law ("GBL") §§ 349 and 350. Judgment was entered against Defendant in July 2022, after which the parties each filed post-trial motions. Defendant brings a renewed motion for judgment as a matter of law and moves for a new trial, while Plaintiff brings a motion seeking an award of attorney fees, reimbursement of expenses, and a service award for Ms. Montera.

These motions are suitable for disposition without oral argument. Civ. L.R. 7-1(b). For the reasons discussed below, Defendant's motions are denied. Plaintiff's motion is granted in part and denied in part, with leave to amend. As to Plaintiff's request for attorney fees and expenses, the

documentation submitted is insufficient to support a lodestar analysis, which is the proper method to calculate attorney fees here. However, Plaintiff's request for a service award is granted.

## II. BACKGROUND

This case was brought as one of numerous certified class actions alleging false advertising and other claims arising from Premier's promotion of Joint Juice, a line of joint health dietary supplements. Each class action concerns a set of plaintiffs in a different state. Initially filed in December 2016, this action concerned consumers in New York and was the first of the related cases to proceed to trial. Following a nine-day trial in May and June 2022, the jury returned a verdict finding that Premier engaged in deceptive acts and practices, in violation of GBL § 349, and deceptive or misleading advertising, in violation of GBL § 350. Judgment in the amount of $12,895,454.90 was thereafter entered against Defendant and in favor of Plaintiff and the Class.[1]

## III. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Rule 50 of the Federal Rules of Civil Procedure, a court may grant a motion for judgment as a matter of law ("JMOL") against a party on a claim or issue if the party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). If a party's motion for JMOL under Rule 50(a) is denied or deferred, the party may renew its motion after trial. Fed. R. Civ. P. 50(b). The standard for granting the renewed motion is the same as the standard for granting the initial motion for JMOL. *See Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 892 (C.D. Cal. 2016). A renewed motion for JMOL "is limited to the grounds asserted in the . . . Rule 50(a) motion." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "A jury's verdict must be upheld if it is supported by substantial evidence," *Johnson v. Paradise*

---

[1] Actual damages were determined by the jury to be $1,488,078.49, a sum derived from the total sales of Joint Juice in New York during the Class Period. *See* Dkt. 268. Following the trial, statutory damages were assessed at $8,312,450 (reduced from Plaintiff's request of $91,436,950), along with $4,583,004.90 in prejudgment interest. *See* Dkt. 294. Judgment was entered as to statutory (rather than actual) damages because the relevant GBL sections allow a prevailing plaintiff to recover the higher of the two awards. *Id.*; *see* N.Y. GEN. BUS. LAW §§ 349(h), 350-e(3).

*Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001), and the evidence must be viewed in the light most favorable to the nonmoving party, *see Go Daddy*, 581 F.3d at 961.

Premier's motion raises several familiar arguments, including that Plaintiff failed to prove the elements of injury, causation, materiality, and deceptiveness. Some of these arguments have been augmented, but nothing in the record has changed: the jury's verdict was supported by ample evidence as to each element of both claims, and thus a reasonable jury would have had a legally sufficient evidentiary basis to find for Plaintiff. *Accord* Dkt. 293. Defendant's additional arguments — that it was entitled to the GBL's safe harbor provision (or, alternatively, that federal law preempts Plaintiff's claim) and that its labels should be shielded by the First Amendment and/or the New York Constitution — were not raised in Defendant's initial motion for JMOL. The only further inquiry is thus limited to reviewing the jury's verdict for plain error and reversing "only if such plain error would result in a manifest miscarriage of justice." *Go Daddy*, 581 F.3d at 961 (quoting *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002)). Again, the jury's verdict was not plainly erroneous; as noted above, it was well supported. The motion is denied.

## IV. MOTION FOR NEW TRIAL

Under Federal Rule of Civil Procedure 59(a)(1), a court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Unlike on a motion for JMOL, the court reviewing a motion for new trial "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). However, a new trial should not be ordered "simply because the court would have arrived at a different verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Rather, the motion should only be granted if the court is "left with the definite and firm conviction that a mistake has been committed." *Landes*, 833 F.3d at 1372 (citation and internal quotation marks omitted). "If a motion for new trial is based on an alleged evidentiary error, a new

1   trial is warranted only if the party was 'substantially prejudiced' by an erroneous evidentiary
2   ruling." *Feiman v. City of Santa Monica*, 2014 WL 12703729, at *1 (C.D. Cal. July 18, 2014)
3   (quoting *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995)).

Premier presents numerous arguments for why it is entitled to a new trial. Like with its renewed motion for JMOL, nearly all of them have been raised before and can be dismissed outright: (1) Defendant was not entitled to invoke the GBL's safe harbor provision due to its failure timely to notify the FDA as required by the statute, *see* 21 U.S.C. § 343(r)(6), and thus it was not entitled to a jury instruction on this subject; (2) Premier's Seventh Amendment rights were not violated, *see* Dkt. 215, at 5; (3) the jury was not erroneously instructed as to the injury element of Plaintiff's claims, *see* Dkt. 265; and (4) evidence of Premier's marketing strategy was not erroneously or prejudicially admitted, *see* Dkt. 180. Further, as noted above, the jury's verdict was not against the weight of the evidence; Defendant's argument regarding the Thompson/Cal Recycle tax letter is unpersuasive; and Plaintiff's counsel stayed within the reasonable bounds of argument and did not improperly inflame the jury. None of these arguments individually warrant a new trial, nor is Premier's argument, as a whole, greater than the sum of its parts. The motion is therefore denied.

## V. ATTORNEY FEES, EXPENSES, AND SERVICE AWARD

### A. Attorney Fees

Plaintiff seeks an attorney fee award of $6,806,031.96. This figure is based on two separate calculations that lead to roughly the same total. Plaintiff claims that, under the "percentage-of-the-fund" approach, it is entitled to a fee award that is equivalent to a certain percentage of the gross benefit inuring to the Class. This gross benefit, as Plaintiff calculates, is $20,438,534.42 — that is, the sum of the $12,895,454.90 judgment, the proposed fee award, and reimbursed expenses. Plaintiff's fee award request represents 33% of this total.

Alternatively, Plaintiff calculates a "lodestar" amount, stemming from the familiar rule of "begin[ning] with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Supported

by declarations from members of Plaintiff's litigation team, Plaintiff states this case has required 9,635.05 hours of work, yielding a total lodestar of $6,409,284.75 — comprised of $5,418,781.25 for Blood Hurst & O'Reardon LLP, $393,293.50 for Lynch Carpenter LLP, and $598,210.00 for Iredale & Yoo, APC. *See* Dkt. 296-1 ("Blood Decl.") ¶ 69. Plaintiff then notes that the slight difference between the lodestar and the percentage-of-the-fund calculations reflects a lodestar multiplier of only 1.06; thus, Plaintiff argues, the full $6,806,031.96 award is appropriate.

Premier, on the other hand, contests Plaintiff's calculations on two main fronts. First, it claims the percentage-of-the-fund method is inappropriate where a fee-shifting statute is involved, and that the lodestar method should be used instead. Second, it argues Plaintiff's declarations are insufficient to assess the lodestar, as Plaintiff failed to include detailed, contemporaneous time records along with its motion. For these reasons, Premier suggests the percentage-of-the-fund method should be used, and that Plaintiff's counsel should receive only 25% of the judgment amount, rather than 33%; this lower figure represents the Ninth Circuit's "benchmark." *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011). This calculation results in a total fee award of $3,223,863.72, drawn from the judgment itself.

The parties' positions yield two drastically different values and two very different outcomes for the Class's recovery. Under Plaintiff's model, the Class would retain most or all of the $12.89 million judgment, and Premier would be obligated to pay an additional $6.8 million award of fees and expenses to Plaintiff's counsel directly. By contrast, Defendant's model would result in Plaintiff's counsel receiving roughly $3.5 million less and, since the award would be drawn from the judgment, the Class itself would bear this cost and receive roughly $9.69 million.

1. Application of Fee-Shifting Provision

The first question that must be resolved is whether the fee-shifting provision of GBL §§ 349 and 350 should apply. These sections provide that the Court "*may* award reasonable attorney's fees to a prevailing plaintiff." N.Y. GEN. BUS. LAW §§ 349(h), 350-e(3) (emphasis added). The statutory language offers no guidance on when fees should be awarded; rather, courts have held that granting a fee award under these sections "is left to the discretion of the trial court in all

ORDER ON RENEWED MOTION FOR JMOL, NEW TRIAL, AND ATTORNEY FEES
CASE NO. 16-cv-06980-RS
5

circumstances." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 280 (S.D.N.Y. 2014) (quoting *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 54 (2d Cir. 1992)). Among other factual situations, courts have approved of fee shifting in circumstances involving acts of fraud perpetrated against "consumers who are 'vulnerable' or 'disadvantaged,'" especially fraud conducted at a large scale. *Id.* For instance, in *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127 (E.D.N.Y. 1998), the Eastern District of New York concluded that fee shifting under §§ 349 and 350 was appropriate, considering the purpose of these statutes and the fact that "the customers at issue [were] among the most vulnerable in our society: the blind, the elderly, the physically disabled, and the infirm." 25 F. Supp. 2d at 132; *see also* Richard A. Givens, Practice Commentary, N.Y. GEN. BUS. LAW § 349 (McKinney 1988).

Joint Juice, similarly, was marketed toward people suffering from joint pain. As the jury concluded, these claims were fraudulent. The Class itself is also quite large, and thus the impact of the fraud was broad. The public policy underpinning §§ 349 and 350 therefore weigh strongly in support of allowing fee shifting here. Thus, Plaintiff's fees will be shifted under the GBL statutes.

2. Calculating Attorney Fees

As discussed above, Plaintiff and Defendant disagree about how attorney fees should be calculated. Like many questions in the long life of this case, the question of how properly to calculate attorney fees in this scenario appears to be without a clear answer. Both parties cite to many cases involving class action *settlements*, rather than litigated cases, while other cited cases only partially fit the facts presented here. However, the caselaw does suggest a path forward.

At the outset, Defendant's ultimate conclusion must be rejected. Notwithstanding the shortcomings of Plaintiff's lodestar submissions (discussed in greater detail below), it would be patently unreasonable to award Plaintiff's counsel less than half of their proffered lodestar amount. Even more saliently, Defendant's approach would result in attorney fees being drawn down from the Class's judgment; thus, no fee shifting would occur. *Cf. Pierce v. Visteon Corp.*, 791 F.3d 782, 787 (7th Cir. 2015) ("[T]his case was litigated under a fee-shifting statute, and we do not see a good reason why, in the absence of a contract, counsel should be entitled to money from the class

1    on top of or in lieu of payment by the losing litigant."). This result is unwarranted given the
2    conclusion above: Premier will be required to pay the fee award directly.

3    Plaintiff argues that either the percentage-of-the-fund or the lodestar method can be used
4    here to calculate the fee. While the percentage method is preferred for its ease of application,
5    "[u]nder a fee-shifting statute, the court 'must calculate awards for attorneys' fees using the
6    lodestar method.'" *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (quoting *Ferland v.*
7    *Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2011)); *see Bluetooth*, 654 F.3d at 942
8    ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . .");
9    *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319 (D. Nev. 2014); *Pike v. Cnty. Of San Bernardino*, 2020
10   WL 1049912, at *4 (C.D. Cal. Jan. 27, 2020) ("[T]he percentage-of-the-fund method is disfavored
11   in cases with fee-shifting statutes." (citing *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d
12   1160, 1172 (C.D. Cal. 2010)); 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 15:38 (6th ed.
13   2022) ("So strong is the Court's devotion to the lodestar method that it has held that the lodestar
14   calculation 'yields a fee that is presumptively sufficient to achieve [fee-shifting's] objective.'
15   What that means is that a court's failure to utilize the lodestar method in a fee-shifting case may
16   constitute reversible error." (footnote omitted)). Thus, the lodestar will serve as the relevant guide.

17   Here, however, the declarations submitted by Plaintiff's counsel are "insufficient" to
18   conduct a fulsome lodestar analysis, as they lack contemporaneous time records. *In re Optical*
19   *Disk Drive Prods. Litig.*, 2021 WL 4124159, at *1 (N.D. Cal. Sept. 9, 2021). This does not
20   suggest, as Defendant claims, that Plaintiff acted in bad faith or should not be entitled to provide
21   such documentation; indeed, Plaintiff fully complied with Civil Local Rule 54-5(b) and did not
22   submit more detailed records. *See* Civ. L.R. 54-5(b)(2) (requiring only a "summary" of time spent
23   by counsel). Indeed, these records would have been sufficient for use as a cross-check under a
24   percentage calculation. *See Optical Disk Drive*, 2021 WL 4124159, at *2.

25   Yet "[w]ithout in any way questioning the good faith basis for [Plaintiff's counsel's]
26   statement[s], there simply is no way to verify [them]." *Indep. Living Aids, Inc.*, 25 F. Supp. 2d at
27   133. To ensure the lodestar that Plaintiff proffers is accurate, especially in light of the concerns

raised by Defendant as to potentially overlapping work with the related Joint Juice cases, Plaintiff will be directed to refile its motion with contemporaneous time records. The motion is therefore denied as to Plaintiff's request for attorney fees, without prejudice.

### B. Expenses

In addition to attorney fees, Plaintiff seeks $1,133,794.77 in reimbursed expenses. This total is supported by a series of declarations, noting a variety of routine litigation expenses (for instance, printing and photocopying, expert fees, and travel). *See, e.g.*, Blood Decl. ¶¶ 66–68. Defendant, in turn, argues that Plaintiff did not provide sufficient documentation to support this request, and it raises the concern that Plaintiff has sought to recover expenses for the related Joint Juice actions. Thus, Defendant requests the Court award, at most, $197,852.36 in expenses.

Plaintiff's declarations, though a useful starting point, ultimately "lack[] sufficient detail to establish the reasonableness of the costs." *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 977–80 (N.D. Cal. 2014). Given that Plaintiff will be afforded the opportunity to submit a more detailed request for attorney fees, she will likewise be given the opportunity to refile the motion with more detailed expense documentation. The motion is therefore denied with respect to expenses, without prejudice.

### C. Service Award

Finally, Plaintiff requests a $25,000 service award for Ms. Montera. Defendant does not contest the award, and the award is both comparable to similar awards in this District and reasonable considering Ms. Montera's experience participating in this case. The motion is therefore granted with respect to the service award, with the award to be paid from the judgment.

## VI. CONCLUSION

Defendant's renewed motion for JMOL and its motion for new trial are denied. Plaintiff's motion is granted only with respect to the request for a service award for Ms. Montera. It is denied in all other respects, without prejudice.

**IT IS SO ORDERED**.

Dated: October 18, 2022

_____
RICHARD SEEBORG
Chief United States District Judge