BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-CV-06980 RS<br><br>**PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES, AND REIMBURSEMENT OF NONTAXED EXPENSES**<br><br><u>**CLASS ACTION**</u><br><br>Date: May 11, 2023<br>Time: 1:30 p.m.<br>Judge: Honorable Richard Seeborg<br>Courtroom: Courtroom 3, 17th Floor<br><br>Complaint Filed: December 5, 2016<br>Trial Date: May 23, 2022 |

00197659

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

## NOTICE OF RENEWED MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 11, 2023, at 1:30 p.m. in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and hereby moves this Court for an Order awarding Plaintiff's Counsel attorneys' fees of $7,201,393.50 and nontaxed expenses of $1,073,123.10.

This Renewed Motion is based upon this notice of motion, Plaintiff's memorandum in support of this Motion, the declarations of Thomas J. O'Reardon, Eugene G. Iredale, and Todd D. Carpenter, the complete file and record in this action and the related actions,[1] and such other evidence and argument as may be presented at or before the hearing on this motion.

The pleadings and other records in this litigation may be examined online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, between 9:00 a.m. and 1:00 p.m., Monday through Friday, excluding Court holidays.

Plaintiff reserves the right to seek additional attorneys' fees and expenses for future work or any ruling modifying or increasing the judgment amount.

This Motion and its supporting documents are concurrently posted on the class notice website. Class Members may object to this Motion by sending a letter to the Court on or before the current opposition deadline, April 18, 2023, explaining the reason for the objection, that the person submitting the objection is a member of the Class, and person's contact information. Plaintiff reserves the right to seek more fees as additional time is incurred and if the judgment amount

---

[1]    *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS (N.D. Cal); *Caiazzo v. Premier Nutrition Corp.*, No. 3:16-cv-06685-RS (N.D. Cal.); *Ravinsky v. Premier Nutrition Corp.*, No. 3:16-cv-06704-RS (N.D. Cal.); *Sandoval v. Premier Nutrition Corp.*, No. 3:16-cv-06708-RS (N.D. Cal.); *Lux v. Premier Nutrition Corp.*, No. 3:16-cv-06703-RS (N.D. Cal.); *Dent v. Premier Nutrition Corp.*, No. 3:16-cv-06721-RS (N.D. Cal.); *Avery v. Premier Nutrition Corp.*, No. 3:16-cv-06980-RS (N.D. Cal.); *Spencer v. Premier Nutrition Corp.*, No. 3:16-cv-07090-RS (N.D. Cal); *Trudeau v. Premier Nutrition Corp.,* No. 3:17-cv-00054-RS (N.D. Cal.).

increases.

Respectfully submitted,

Dated: April 4, 2023

BLOOD HURST & O'REARDON, LLP

By:          *s/ Timothy G. Blood*
             TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

00197659    RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION.................................................................................................1

II.    HISTORY OF THE LITIGATION .....................................................................2

III.   PLAINTIFF SHOULD BE AWARDED HER REQUESTED FEES AND
       EXPENSES .........................................................................................................9

       A.    The Hourly Rates Are Reasonable ........................................................12

       B.    The Hours Expended Are Reasonable....................................................13

       C.    The Lodestar Adjustment Factors Support the Requested Fee Award ...15

             1.    The Time and Labor Required ....................................................16

             2.    The Novelty and Difficulty of the Questions Involved..............17

             3.    The Risks of Litigating the Case ................................................17

             4.    The Skill Required .....................................................................18

             5.    Working on this Case Precluded Other Employment .................19

             6.    The Customary Fee and Awards in Similar Cases .....................19

             7.    Whether the Fee is Fixed or Contingent.....................................20

             8.    Time Limitations Imposed by Client or Circumstances and the
                   Nature and Length of the Professional Relationship with the Client...........20

             9.    The Amount Involved and Results Obtained ..............................21

             10.   The Experience, Reputation and Ability of the Attorneys ..........21

             11.   Public Policy Considerations .....................................................21

       D.    A Percentage Cross-Check Confirms the Reasonableness of the Fee Request........22

       E.    Plaintiff's Expenses Are Reasonable and Compensable..........................24

IV.    CONCLUSION ..................................................................................................25

BLOOD HURST & O' REARDON, LLP

00197659

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hyland's, Inc.*
No. CV 12-1150-DMG (MANx), 2021 U.S. Dist. LEXIS 34695
(C.D. Cal. Feb. 23, 2021) .................................................................................................. 18

*In re Animation Workers Antitrust Litig.*,
No. 14-CV-4062-LHK, 2016 U.S. Dist. LEXIS 156720
(N.D. Cal. Nov. 11, 2016) ................................................................................................. 13

*Arnutovskaya v. Alteration Grp. of NY, LLC*,
No. 161194/2017, 2020 N.Y. Misc. LEXIS 2933 (N.Y. Sup. Ct. June 23, 2020) .................. 24

*Benzaken v. Benzaken*,
799 N.Y.S.2d 579 (N.Y. App. Div. 2005)........................................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)............................................................................................ 21

*Blum v. Stenson*,
465 U.S. 886 (1984) ......................................................................................................... 12

*Carlotti v. Asus Comput. Int'l*,
No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917
(N.D. Cal. June 22, 2020).................................................................................................. 13

*Chavez v. Converse, Inc.*,
No. 15-cv-03746-NC, 2020 U.S. Dist. LEXIS 257679
(N.D. Cal. Nov. 25, 2020) ................................................................................................. 23

*Chavez v. Netflix, Inc.*,
162 Cal. App. 4th 43 (2008)............................................................................................. 23

*Chen v. Select Income REIT*,
No. 18-CV-10418 (GBD) (KNF), 2019 U.S. Dist. LEXIS 177687
(S.D.N.Y. Oct. 11, 2019).................................................................................................... 24

*City of Providence v. Aéropostale, Inc.*,
No. 11 Civ. 7132 (CM (GWG), 2014 U.S. Dist. LEXIS 64517
(S.D.N.Y. May 9, 2014) ..................................................................................................... 18

*Clemons v. A.C.I. Found., Ltd.*,
No. 154573/2015, 2017 N.Y. Misc. LEXIS 1788 (N.Y. Sup. Ct. May 11, 2017) .................. 11

BLOOD HURST & O' REARDON, LLP

Case No. 3:16-cv-06980-RS
RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

00197659

BLOOD HURST & O' REARDON, LLP

*Cruz v. Nieves*,
No. 18834/07, 2015 N.Y. Misc. LEXIS 4565 (N.Y. Sup. Ct. June 22, 2015) ...................... 23

*Cunningham v. Cnty. of L.A.*,
879 F.2d 481 (9th Cir. 1988) ................................................................................................ 16

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................................. 12

*Destefano v. Zynga, Inc.*,
No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ................ 25

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440
(N.D. Cal. Feb. 21, 2020) ..................................................................................................... 13

*Dixon v. City of Oakland*,
No. C-12-05207 DMR, 2014 U.S. Dist. LEXIS 169688
(N.D. Cal. Dec. 8, 2014) ....................................................................................................... 19

*Document Sec. Sys. v. Ronaldi*,
No. 20-cv-6265-EAW-MJP, 2022 U.S. Dist. LEXIS 109726
(W.D.N.Y. June 21, 2022) ..................................................................................................... 14

*Farar v. Bayer AG*
No. 14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729
(N.D. Cal. Nov. 15, 2017) ..................................................................................................... 18

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. 2002) ................................................................................................ 17

*Fox v. Vice*,
563 U.S. 826 (2011) .............................................................................................................. 11

*FTC v. Direct Mktg. Concepts, Inc.*,
No. 04-11136-GAO, 2004 U.S. Dist. LEXIS 11628 (D. Mass. June 23, 2004) ..................... 22

*G.M. by & Through R.F. v. New Britain Bd. of Educ.*,
173 F.3d 77 (2d Cir. 1999) .................................................................................................... 21

*Goldberger v. Integrated Res.*,
209 F.3d 43 (2d Cir. 2000) .................................................................................................... 16

*Grove v. Wells Fargo Fin. Cal., Inc.*,
606 F.3d 577 (9th Cir. 2010) ................................................................................................ 24

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
100 F.3d 691 (9th Cir. 1996) ................................................................................................ 12

00197659                RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

*Hallmark v. Cohen & Slamowitz, LLP*,
378 F. Supp. 3d 222 (W.D.N.Y. 2019) ................................................................. 25

*Harman v. City & Cnty. of S.F.*,
158 Cal. App. 4th 407 (2007).............................................................................. 16

*Hart v. Marriott Int'l, Inc.*,
No. SACV 17-2021JVS(KESx), 2019 U.S. Dist. LEXIS 227311
(C.D. Cal. June 24, 2019)..................................................................................... 23

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045
(N.D. Cal. Dec. 17, 2018) ................................................................................... 13

*Henry v. Gerber Prods. Co.*,
No. 3:15-cv-02201-HZ, 2016 U.S. Dist. LEXIS 52638 (D. Or. Apr. 18, 2016).................... 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................................... 11, 21

*Hernandez v. Dutton Ranch Corp.*,
No. 19-cv-00817-EMC, 2021 U.S. Dist. LEXIS 212745
(N.D. Cal. Sept. 10, 2021)................................................................................... 23

*Hill v. Canidae Corp.*,
No. EDCV 20-1374 JGB (SPx), 2021 U.S. Dist. LEXIS 214023
(C.D. Cal. Apr. 2, 2021) ...................................................................................... 18

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)..................................................................... 10, 19, 22

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1074) ............................................................................... 11

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975).................................................................................. 16

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001)........................................................................... 13, 16, 20

*Koch v. Greenberg*
14 F. Supp. 3d 247 (S.D.N.Y. 2014) .................................................................... 22

*Kommer v. Ford Motor Co.*,
No. 1:17-CV-0296 (LEK/DJS), 2020 U.S. Dist. LEXIS 235168
(N.D.N.Y. Dec. 15, 2020) ................................................................................... 22

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. 2020)................................................................................ 18

BLOOD HURST & O' REARDON, LLP

RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

BLOOD HURST & O' REARDON, LLP

*T.K. ex rel. L.K. v. N.Y. City Dept. of Educ.*,
  No. 11 Civ. 3964 (JPO), 2012 U.S. Dist. LEXIS 47311
  (S.D.N.Y. Mar. 30, 2012) ................................................................................................ 10

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ........................................................................................... 24

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2018 U.S. Dist. LEXIS 162425
  (N.D. Cal. Sept. 20, 2018) .............................................................................................. 23

*Lilly v. City of N.Y.*,
  934 F.3d 222 (2d Cir. 2019) ........................................................................................... 16

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663
  (S.D.N.Y. Nov. 26, 2002) ............................................................................................... 20

*Lopez v. Dinex Grp., LLC*,
  No. 155706/2014, 2015 N.Y. Misc. LEXIS 3657 (N.Y. Sup. Ct. Oct. 6, 2015) ..................... 24

*M.F. v. Amida Care, Inc.*,
  No. 520314/2017, 2022 N.Y. Misc. LEXIS 2315 (N.Y. Sup. Ct. May 26, 2022) ................... 22

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................. 17

*Marshall v. Northrop Grumman Corp.*,
  No. 16-CV-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sept. 18,
  2020) .............................................................................................................................. 23

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ......................................................................................... 23

*Melendres v. Arpaio*,
  No. 13-16285, 2017 U.S. App. LEXIS 28223 (9th Cir. Mar. 2, 2017) ............................... 14

*Mendez v. Reinforcing Ironworkers Union Local 416*,
  No. 2:09-cv-02332-LRH-NJK, 2013 U.S. Dist. LEXIS 120893
  (D. Nev. Aug. 23, 2013) ................................................................................................. 19

*Millea v. Metro-North R.R.*,
  658 F.3d 154 (2d Cir. 2011) ........................................................................................... 10

*Milton v. Bells Nurses Registry & Emp. Agency, Inc.*,
  No. 502303/2015, 2015 N.Y. Misc. LEXIS 4604 (N.Y. Sup. Ct. Dec. 14, 2015) ................. 23

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ........................................................................................................ 24

Case No. 3:16-cv-06980-RS

00197659                    RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

BLOOD HURST & O' REARDON, LLP

*Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS,
    2022 U.S. Dist. LEXIS 75843 (N.D. Cal. Apr. 26, 2022) ................................................... 8, 18

*Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS,
    2022 U.S. Dist. LEXIS 144491 (N.D. Cal. Aug. 12, 2022) ....................................................... 9

*Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS,
    2022 U.S. Dist. LEXIS 190146 (N.D. Cal. Oct. 18, 2022) ........................................................ 9

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) ................................................................................................... 13

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ......................................................................................... 12, 14

*Mullins v. Premier Nutrition Corp.*,
    178 F. Supp. 3d 867 (N.D. Cal. 2016) ..................................................................................... 4

*Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS,
    2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016) ...................................................... 4, 5

*Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS,
    2019 U.S. Dist. LEXIS 153698 (N.D. Cal. Aug. 29, 2019) ..................................................... 6

*Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS,
    2019 U.S. Dist. LEXIS 229365 (N.D. Cal. Dec. 17, 2019) ...................................................... 7

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*,
    No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108
    (N.D. Cal. Dec. 6, 2017) ........................................................................................................ 23

*Nichols v. Noom, Inc.*,
    No. 20-CV-3677 (KHP), 2022 U.S. Dist. LEXIS 123146
    (S.D.N.Y. July 12, 2022) ................................................................................................... 21, 24

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*,
    No. 3:08-cv-05278 RS, 2014 U.S. Dist. LEXIS 80983
    (N.D. Cal. June 12, 2014) ...................................................................................................... 24

*Orthopaedic Hosp. v. Encore Med., L.P.*,
    No. 3:19-cv-00970-JLS-AHG, 2021 U.S. Dist. LEXIS 225014
    (S.D. Cal. Nov. 19, 2021) ....................................................................................................... 13

*Ousmane v. City of New York*,
    No. 402648/04, 2009 N.Y. Misc. LEXIS 574 (N.Y. Sup. Ct. Mar. 17, 2009) ....................... 16

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................................... 23

00197659

RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

*Perdue v. Kenny A.*,
559 U.S. 542 (2010) .................................................................................................. 10, 18, 21

*Podhorecki v. Lauder's Furniture Stores*,
607 N.Y.S.2d 818 (N.Y. App. Div. 1994)............................................................................ 23

*Polee v. Cent. Contra Costa Transit Auth. (CCCTA)*,
516 F. Supp. 3d 993 (N.D. Cal. 2021) ................................................................................ 14

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010)............................................................................................... 12

*Quill v. Cathedral Corp.*,
659 N.Y.S.2d 919 (N.Y. App. Div. 1997)...................................................................... 12, 17

*Rahmey v. Blum*,
466 N.Y.S.2d 350 (N.Y. App. Div. 1983)....................................................................*passim*

*Racies v. Quincy Bioscience, LLC*
No. 15-cv-00292-HSG, 2020 U.S. Dist. LEXIS 78156 (N.D. Cal. May 4, 2020).................. 18

*Ramirez v. Rite Aid Corp.*,
No. CV 20-3531-GW-SKx, 2022 U.S. Dist. LEXIS 109069
(C.D. Cal. May 3, 2022) ...................................................................................................... 25

*Richard v. Glens Falls Nat'l Bank*,
No. 1:20-cv-00734 (BKS/DJS), 2022 U.S. Dist. LEXIS 68692
(N.D.N.Y. Apr. 13, 2022) .................................................................................................... 24

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
977 F.2d 47 (2d Cir. 1992)................................................................................................... 11

*Roberts v. City of Honolulu*,
938 F.3d 1020 (9th Cir. 2019).............................................................................................. 10

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ........................................................................................ 13

*Serin v. N. Leasing Sys., Inc.*,
No. 7:06-CV-1625, 2013 U.S. Dist. LEXIS 48419 (S.D.N.Y. Apr. 3, 2013)........................ 11

*Shvager v. Viasat, Inc.*,
No. CV 12-10180 MMM (PJWx), 2014 U.S. Dist. LEXIS 200808
(C.D. Cal. Mar. 10, 2014) ................................................................................................... 12

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016)................................................................................ 11

*Spratt v. Diversified Maint. Sys. LLC*,
No. 151407/2019, 2022 N.Y. Misc. LEXIS 3607 (N.Y. Sup. Ct. May 31, 2022) ................. 23

BLOOD HURST & O' REARDON, LLP

ix

Case No. 3:16-cv-06980-RS

00197659

BLOOD HURST & O' REARDON, LLP

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016)...................................................................................... 17

*Steiner v. Am. Broad. Co., Inc.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ........................................................................... 11

*Taylor v. Nabors Drilling USA, LP*,
  222 Cal. App. 4th 1228 (2014).................................................................................... 20

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................... 11, 20

*U.S. v. Bayer Corp.*,
  No. 07-01 (JLL), 2015 U.S. Dist. LEXIS 134321 (D.N.J. Sept. 24, 2015) ............................ 18

*Vargas v. Howell*,
  949 F.3d 1188 (9th Cir. 2020)..................................................................................... 13

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)..................................................................................... 11

*In re Vizio, Inc.*,
  No. 8:16-ml-02693-JLS-KES, 2019 U.S. Dist. LEXIS 239976
  (C.D. Cal. July 31, 2019) .......................................................................................... 24

*In re Volkswagen Clean Diesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115 (N.D. Cal. Mar. 17, 2017) .................. 13

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)....................................................................................... 20

*Wilson v. Car Land Diagnostics Ctr., Inc.*,
  No. 99 Civ. 9570 (GEL), 2001 U.S. Dist. LEXIS 19760
  (S.D.N.Y. Nov. 15, 2001) ........................................................................................... 11

*Wit v. United Behav. Health*,
  578 F. Supp. 3d 1060 (N.D. Cal. 2022) ........................................................................ 16

*Yuzary v. HSBC Bank USA, N.A.*,
  No. 12 Civ. 3693 (PGG), 2013 U.S. Dist. LEXIS 144327
  (S.D.N.Y. Oct. 2, 2013).............................................................................................. 12

**Statutes and Regulations**

Federal Food, Drug, and Cosmetics Act ....................................................................... 18

New York Gen. Business Law
  § 349.............................................................................................. 9, 11, 21, 22, 24
  § 350..................................................................................................... 9, 21, 22, 24

x                                          Case No. 3:16-cv-06980-RS

00197659

65 Fed. Reg. 1000 (Jan. 6, 2002) ...................................................................................................... 22

**Rules**

Fed. R. Civ. P.
    23(h) ....................................................................................................................................... 4
    26.............................................................................................................................................. 7
    30(b)(6)..................................................................................................................................... 3
    54(d)(1).................................................................................................................................. 1, 24

Civil L.R. 54........................................................................................................................................ 24
Civil L.R. 54(d)(5) ............................................................................................................................... 2

BLOOD HURST & O' REARDON, LLP

Case No. 3:16-cv-06980-RS
00197659
RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

BLOOD HURST & O' REARDON, LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The judgment obtained here has been a long time in the making. It is the first case to be tried in a litigation where Plaintiff's Counsel have battled Premier since 2013, steadfastly maintaining that Premier has played off Class Members' hopes of escaping the pain and stiffness of osteoarthritis to defraud them into buying snake oil. Throughout, Premier has engaged in a no-holds-barred defense so it could continue to – in its words – "milk" the Joint Juice brand for every last penny, as the trial testimony revealed. Plaintiff's Counsel have carried more than $1.1 million in costs and incurred a lodestar exceeding $7.2 million, while refusing to back down from diligently representing their clients. Over the years, this type of case has become increasingly more difficult to prosecute and increasingly more complex. There is a reason so few of these cases go to trial, and when they do, plaintiffs usually lose. Because they have become so difficult, most of these cases settle for relatively little, further incentivizing companies like Premier to defraud consumers. Vigorous litigation of this type of claim promotes the strong public policy of protecting consumers and the marketplace from dishonest companies.

After solid preparation and anticipation of the many legal minefields, the jury reached a unanimous verdict in just two and half hours after a nine-day trial. Joint Juice was shown to be a fraud perpetrated by Premier's executives. Plaintiff's Counsel did so well in navigating the procedural landmines of this case that the Court found awarding the Class the full statutory amount owed would violate the fraudster's due process rights. And still, the $12,895,454.90 class judgment equals 5.59 times the full purchase price paid by each Class Member.

Given the outstanding result achieved and the efforts and investment undertaken by counsel to obtain that result, Plaintiff's Counsel are entitled to $7,201,393.50 in attorneys' fees and reimbursement of $1,073,123.10 in nontaxed expenses.[2]

_____

[2]    On August 26, 2022, Plaintiff filed a Rule 54(d)(1) bill of costs seeking $132,096.79 in taxable costs. *See* Dkt. 295. On October 4, 2022, the Clerk taxed costs in the amount of $54,455.74. *See* Dkt. 314. The disallowed costs all appear related to deposition costs. *Id.* However, there appears to be a mathematical error in the Clerk's Taxation Order. The amount disallowed should have been stated as $77,641.05 and not $82,611.20. However, other than for possible appellate reasons, the

In accordance with the Court's order requesting more detail about counsel's lodestar and expenses, Plaintiff submits this renewed motion. *See* Dkt. 320.

## II.    HISTORY OF THE LITIGATION

In 2012, Plaintiff's Counsel began investigating whether the advertising claims about Joint Juice were false or misleading. Class Counsel are selective in the cases they bring and carefully research them before filing. The work from the beginning was used in the *Montera* trial, which was tried as a bellwether. The investigation included a review of the science analyzing Joint Juice's ingredients: glucosamine hydrochloride, chondroitin sulfate, and several vitamins. A review of the scientific studies on the efficacy of the ingredients revealed a clear consensus that Joint Juice's ingredients did not alleviate pain or provide tangible benefits.

On March 21, 2013, the initial complaint was filed on behalf of a nationwide class. Dkt. 1 at 15. Premier answered on May 21, 2013. Dkt. 21. Soon after, Plaintiff's Counsel began formal discovery and prepared and proposed an ESI protocol, but Premier refused to negotiate its details. *See* Dkt. 42. The parties instead discussed the possibility of settlement and exchanged limited discovery related to scientific studies and sales data in advance of a November 2013 mediation held in San Francisco. O'Reardon Decl., ¶ 8.[3] The mediation went nowhere. *Id*.

Discovery then began in earnest. Pursuant to the parties' later agreement, all the discovery taken in the litigation could be and was used in the bellwether case. Plaintiff's Counsel subpoenaed documents from Eleven Inc. and R2C Group to obtain market research and other marketing-related documents about Joint Juice. The documents obtained from these third-parties were used by experts at trial. *Id.*, ¶ 9; s*ee also* Trial Tr. at 736, 501–02, 546, 562, 582–84, 633–34, 723 (referencing Eleven Inc. and R2C Group). Plaintiff's Counsel subpoenaed ten retailers that sold Joint Juice. O'Reardon

issue is likely moot because Plaintiff now seeks recovery of those disallowed costs as nontaxed expenses with this Renewed Motion. Additionally, the Clerk's Taxation Order did not allow or disallow the requested $342.60 for visual aids used during trial pursuant to Civil L.R. 54(d)(5). *See* Dkt. 314. Instead, the Clerk's Taxation Order appears to have mistakenly skipped that line item, which Premier did not oppose taxing. *Id.*; Dkt. 307 (Premier's Bill of Costs Opp.). Accordingly, that cost is included within the "miscellaneous" category of costs sought here.

[3]    "O'Reardon Decl." refers to the concurrently filed Declaration of Thomas J. O'Reardon in support of this Renewed Motion.

Decl., ¶ 9. From these subpoenas, Plaintiff's Counsel received over 2,000 pages of valuable marketing documents and comprehensive retail sales data. *Id*.

Meanwhile, Premier fought discovery at every turn. While repeatedly insisting that it had complied with its discovery obligations, it ultimately delayed until seven weeks before the initial discovery cutoff to produce the bulk of the requested documents, including ESI. Dkt. 42. Premier's lag in producing documents delayed taking many depositions. Starting in June 2014, Plaintiff's Counsel deposed six Premier employees. O'Reardon Decl., ¶ 10. The depositions included CEO Darcy Horn Davenport, Joint Juice Brand Manager Lance Palumbo, and Dr. Kevin Stone, the creator of Joint Juice. Premier designated Mr. Palumbo as a Rule 30(b)(6) witness. Given the number of topics, his deposition took three days. *Id.* These depositions were used to prepare for the *Montera* trial and to impeach Premier's executives and employees who testified at trial.

In 2014, Plaintiff's Counsel retained various consultants to help guide the case. These included Dr. Jeremiah Silbert, Dr. Steven Graboff, Dr. Lynn Willis, and Mark Keegan. Each of these experts helped Plaintiff's Counsel understand various aspects of the case to allow them to formulate theories and arguments used throughout the litigation. *Id.*, ¶ 11.

In the first part of 2015, the parties retained experts and exchanged expert reports to be used for class certification, summary judgment, and trial. *Id.*, ¶ 12. The parties each retained science, marketing, survey, and damages experts. *Id*. In April 2015, the parties participated in a second mediation in San Francisco. Once again, the mediation failed. Expert discovery continued with the depositions of five expert witnesses.

Premier then filed a motion for summary judgment (Dkt. 85), and Plaintiff moved for class certification (Dkt. 88). Both motions were heavily briefed and relied on submission of voluminous evidence. The orders resulting from these motions have been repeatedly used by the parties and the Court, including in connection with motions filed shortly before, during and after trial. O'Reardon Decl., ¶ 13. Plaintiff's motion sought a nationwide class or alternatively, a multi-state class which included the New York class here. Premier opposed a nationwide class or any multi-state grouping. Dkt. 98. Each party filed *Daubert* motions to exclude expert opinions.

On April 15, 2016, the Court issued its order denying Premier's motion for summary

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

judgment and granting portions of plaintiff's motions to exclude Premier's marketing and science experts. *Mullins*, 178 F. Supp. 3d 867 (N.D. Cal. 2016). The Court found that the full refund damages model was appropriate, noted that Premier targeted arthritis sufferers and utilized Dr. Stone in advertisements to add credibility to the Joint Juice advertising message, noting that Plaintiff's Counsel had "identified many significant issues to address during cross-examination" with Premier's outside survey expert. *Id.* at 876, 878, 906. The Court excluded Premier's expert's opinions related to treatment protocols and injectable glucosamine. *Id.* at 904. Plaintiff has relied on this order to exclude certain opinion testimony of Premier's Dr. Grande, whose testimony was so limited by the time of the *Montera* trial that Premier did not call him as a witness. *See* Dkt. 180 at 16–18. The Court granted class certification of a California class and requested further briefing related to a multi-state class, including New York. *See Mullins*, 2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016).

The experts and consultants retained by Plaintiff's Counsel were crucial in developing litigation and trial strategy and combating the convincing pseudo-science Premier developed. For example, Dr. Silbert assisted Plaintiff's Counsel in showing that physiologically the active ingredients never made it to one's joints. Dr. Silbert was the world's leading researcher in this area. He passed away last year. Even then, Dr. McAlindon used his research and insights in his trial testimony. *See, e.g.*, Trial Tr. 109. Dr. Silbert's assistance enabled Plaintiff's Counsel to show that Premier's advertisements showing that Joint Juice was absorbed into the joint was false. Premier's summary judgment motion was so thoroughly repudiated that aspects of it have been used throughout the litigation. In fact, that was the only summary judgment motion Premier brought.

Dr. Graboff helped Plaintiff's Counsel develop the facts and arguments about the hierarchy for treating osteoarthritis and medical professional guidelines recommending against the use of glucosamine and chondroitin supplements, which also was used at trial. His testimony was cited in the order denying summary judgment: 178 F. Supp. 3d at 885, 893.

Dr. Willis helped Plaintiff's Counsel understand and formulate arguments used throughout the litigation about clinical research, meta-analyses, treatment protocols, and preclinical study research. He helped counsel locate additional experts used in the litigation and was cited extensively

by the Court in the order denying summary judgment. *Id*. at 883–86, 895.

Mr. Keegan helped Plaintiff's Counsel understand Premier's consumer research, the Joint Juice advertising message, and the faults with the opinions of Premier's survey expert, Hal Poret. Mr. Keegan's expert testimony was cited in the orders granting class certification and denying Defendant's motion for summary judgment *Id*. at 867, 879–82; 2016 U.S. Dist. LEXIS 51140, at *9. Mr. Keegan's work with Plaintiff's Counsel helped them understand the flaws in Mr. Poret's approach – many of which continued through Mr. Poret's testimony at trial.

The summary judgment and class certification orders have been central to the case and extensively relied on by not only the Court, but also the parties in *Montera*. *See, e.g.*, Dkt. 290 at 7–8, 13–14, 16, 18 (Pltf's decertification opposition); Dkt. 264 at 6 (Pltf's objections to jury instructions); Dkt. 227 (Def's MIL opposition); Dkt. 224 at 1–2, 9-10 (Pltf's MIL); Dkt. 222 at 5 (Pltf's trial brief); Dkt. 208 at 3, 7 (Pltf's MIL opposition); Dkt. 190 at 2-3 (same); Dkt. 166 (same); Dkt. 165 at 1, 2-3 (same); Dkt. 188 at 1 (same); Dkt. 184 at 1, 5, 11 (Pltf's opposition to motion to exclude Dr. Dennis' opinions at trial); Dkt. 166 at 2 (Pltf's MIL); Dkt. 165 at 1, 2, 3 (same); Dkt. 145 at 1 (Def's opposition to motion to exclude Dr. Grande's opinions at trial ); Dkt. 129 at 1, 3–4 (Pltf's motion to exclude Dr. Grande's opinions at trial ); Dkt. 124 at 4 (Pltf's motion to exclude Dr. Silverman's opinions at trial); Dkt. 193 at 53 (Pltf's proposed jury instructions).

Consistent with the class certification ruling, between November 18, 2016, and January 5, 2017, Plaintiff's Counsel filed the additional state-only class actions, including the New York action that became *Montera*. O'Reardon Decl., ¶ 20. Filing multiple cases gave Premier exactly what it asked for because it argued none of the state class actions could be combined and none of the state laws at issue were similar. *See Mullins*, Dkt. 98 at 20–23, and No. 135.

During the February 9, 2017, case management conference, Premier requested a stay of the related actions until after the *Mullins* trial. *Mullins*, Dkt. 170. Plaintiffs objected, but the Court granted the request. Premier then successfully sought continuance of the expert disclosures. *Id*.

As a result of the passage of time and as the case developed because of hard-fought and protracted litigation, Plaintiff retained additional experts. They included Dr. McAlindon, one of the world's leading scientific experts on osteoarthritis. Picking up on work done by earlier experts, Dr.

McAlindon provided extensive analysis of the scientific evidence behind the Joint Juice ingredients. Dr. McAlindon systematically reviewed the applicable scientific studies and produced an expert report exceeding one-hundred pages. He developed detailed rebuttal reports to refute the assertions of Premier's experts, Drs. Grande and Silverman. These reports provided the framework for his trial testimony and were utilized in developing demonstratives for the jury trial.

Plaintiff retained Colin Weir in 2017 to rebut Premier's economics expert, Dr. William Choi. Because of this rebuttal work, Dr. Choi limited the related expert report done shortly before the *Montera* trial. Although Plaintiff's Counsel also retained Mr. Weir to rebut Dr. Choi, given the weakness of Dr. Choi's diminished opinions, Plaintiff's Counsel decided the rebuttal was not needed, limiting Mr. Weir's trial testimony to his retail sales data analysis.

Plaintiff's Counsel are not including request for payment for the *Mullins*-specific trial work performed in connection with the May 10, 2018, anticipated trial on behalf of the California class, the claim for injunctive relief which was eventually dismissed for lack of jurisdiction, or work performed in the later *Bland* and *Sonner* state court actions relating to the complaints in those actions, removal, remand, the 2020 and 2021 state court motions for class certification, Premier's motion to stay in *Sonner*, class notice in *Bland*, or third-party retailer subpoenas served in August 2022 in *Bland*. Plaintiff is also not seeking reimbursement for fees or expenses related to the work pertaining to the *Sonner* appeals. O'Reardon Decl., ¶¶ 24–25, 74.

In September 2018, the Court lifted the stay in the related actions, including the New York action, and shortly thereafter, Premier answered the ten complaints. *Montera*, Dkt. 36. Because the actions are all based on the same facts, the parties agreed to streamline discovery by sharing the discovery obtained up to that date. *Montera*, Dkt. 28.

On July 18, 2019, Premier moved for judgment on the pleadings again arguing that the FDA preempted the state law claims because Joint Juice was not advertised to treat or prevent arthritis or joint pain. *Id.*, Dkt. 48. The Court denied the motion noting that "the prior order denying summary judgment in *Mullins* found that plaintiff had successfully raised triable issues of fact regarding both [implied prevention and treatment of arthritis] claims." *Mullins*, 2019 U.S. Dist. LEXIS 153698, at *12 (N.D. Cal. Aug. 29, 2019). Premier deposed the other named plaintiffs. O'Reardon Decl., ¶ 26.

The testimony from these named plaintiffs has been used throughout the litigation, including by Plaintiff and the Court in connection with the motion for leave to substitute Ms. Montera as the Class Representative. *Montera*, Dkt. 134 at 5–6.

On August 29, 2019, Plaintiffs filed an omnibus motion for class certification after Premier refused to stipulate to any class certification prerequisites. *Id.*, Dkt. 60-3. Nonetheless, given Plaintiff's Counsel's work obtaining certification of the California class, Premier did not oppose the motion other than on a minor issue about the class periods. *See Mullins*, 2019 U.S. Dist. LEXIS 229365, at *2–3 (N.D. Cal. Dec. 17, 2019) ("In light of the class of California consumers previously certified in this action, [citation] Premier does not substantively oppose class certification.").

Next, from June 2019 to December 2021, Drs. Guilak, Dennis, and Rucker were retained to consult, prepare Rule 26 reports, and testify as needed. Dr. Guilak, an expert in basic science research on osteoarthritis and biomechanics, was retained to refute one of Premier's central science experts, Dr. Grande. Dr. Guilak was also retained to rebut another of Premier's former science experts, Dr. Lippiello, whom Premier chose not to use. O'Reardon Decl., ¶ 28.

Plaintiff retained Dr. Dennis to conduct a consumer survey of the advertising message conveyed by the Joint Juice label. The Court noted that Dr. Dennis' survey "bolstered" the evidence that Plaintiff developed in class certification briefing. *See* 2019 U.S. Dist. LEXIS 229365, at *4. Dr. Rucker analyzed Premier's marketing documents and applied his expertise in marketing, advertising, and psychology to conclude that Premier positioned Joint Juice, and a reasonable consumer purchased Joint Juice, to address joint issues such as joint pain. Dkt. 127-2 at 35. Drs. Guilak, Dennis, and Rucker scrutinized Premier's experts in their rebuttal reports. On September 24, 2020, a third all-day mediation session was held. O'Reardon Decl., ¶ 30. The mediator, Judge Layne Phillips, concluded after half a day that continuing would not result in a resolution. *Id.*

In April 2021, the Court directed the parties to propose trial dates and a case for trial. *Montera*, Dkt. 96. The parties reached agreement on trial dates but not the case to try. Dkt. 97. In November 2021, the Court set the trial date in *Montera* for May 23, 2022. Dkt. 98. Class Notice was disseminated on December 28, 2021. O'Reardon Decl., ¶ 31. The parties prepared for trial and plaintiffs requested and received updated fact discovery related to sales data. *Id.*

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

While preparing for trial, Class Counsel learned the original named plaintiff had been found to be an inadequate class representative in another action. *Montera*, Dkt. 106. Class Counsel believed they ethically had no choice but to substitute class representatives. Accordingly, on February 28, 2022, Class Counsel moved for leave to substitute Ms. Montera and to appoint her as Class Representative. *Id.* Premier opposed the motion and requested the Class be decertified or alternatively, that the trial be delayed. Dkt. 111. The Court granted the motion for leave, appointed Ms. Montera as Class Representative, and held firm on the trial date. Dkt. 134. Premier took Ms. Montera's deposition on May 4, 2022. O'Reardon Decl., ¶ 32.

On March 24, 2022, Premier again sought to decertify the Class, arguing causation was lacking because consumers purchase Joint Juice for "many reasons having nothing to do with Premier's advertising" and a full refund was not available because Joint Juice provides non-joint health benefits such as taste and hydration. *Montera*, Dkt. 130 at 1, 3, and 8.

From January 12, 2022, to February 14, 2022, the parties designated 12 experts and exchanged 20 expert reports. O'Reardon Decl., ¶ 34. The parties took 11 expert depositions. *Id.* Thereafter, the parties filed eleven *Daubert* motions, with opposition and reply briefs to each. *Id.*

On April 26, 2022, the Court denied another of Premier's motions to decertify and granted in part and denied in part the parties' *Daubert* motions. *Montera*, 2022 U.S. Dist. LEXIS 75843 (N.D. Cal. Apr. 26, 2022). The order was favorable to Plaintiff. The Court agreed with Plaintiff that GBL statutory damages are assessed on a "per transaction" basis. *Id*. at *21. The Court excluded Premier's lead scientific expert, Dr. Silverman, from testifying on the human microbiome and the bioavailability of Joint Juice's active ingredients, personal observations about his patients' use of glucosamine, the importance of alternative osteoarthritis treatments, and regulatory matters. *Id*. at *22–26. The Court precluded Premier's other science expert, Dr. Grande, from testifying about bioavailability because it was based on speculation. *Id*. at *26–28. Plaintiff's Counsel were able to limit Dr. Grande's testimony so much that Premier never called him at trial, even though it kept representing it would so Plaintiff's Counsel would have to spend time preparing the cross-examination. The Court found that the consumer survey conducted by Premier's expert had "limited probative value" and "numerous shortcomings." *Id*. at *31–32. The Court precluded Premier's two

8                                                           Case No. 3:16-cv-06980-RS

non-retained experts, Dr. Stone and Palumbo, from providing expert testimony. *Id.* at *34–36. Premier's motion to decertify was also denied. *Id*. at *37–44.

After a nine-day class trial, the jury reached a unanimous verdict in just two and half hours. *Montera*, 2022 U.S. Dist. LEXIS 144491, at *7–8 (N.D. Cal. Aug. 12, 2022). The jury found that Premier engaged in deceptive acts and practices in violation of GBL § 349 and that Joint Juice was falsely advertised in violation of GBL § 350. The jury found that full refunds should be awarded.

Thereafter, Premier filed an unsuccessful motion for judgment as a matter of law. *Id.* The Court granted Plaintiff's motion for entry of judgment, awarding $50 for each purchase of Joint Juice in the amount of $8,312,450 in statutory damages and $4,583,004.90 in prejudgment interest, for a total of $12,895,454.90. *Id.* at *26.

Premier then filed a motion for a new trial and a renewed motion for judgment as a matter of law. Dkt. Nos. 302, 308. Plaintiff opposed both motions, which the Court denied. *Montera*, 2022 U.S. Dist. LEXIS 190146 (N.D. Cal. Oct. 18, 2022). Premier has now appealed those orders as well.

Plaintiff's Counsel worked hard on this bellwether trial. That work included 25 depositions, 24 prepared witnesses, 23 subpoenas, review of over half a million pages of ESI, and 43 expert reports. Plaintiffs successfully opposed summary judgment, a motion for judgment on the pleadings, two motions for judgment as a matter of law, and two motions to decertify. They brought two class certification motions and briefed 29 written motions *in limine* and 17 *Daubert* motions. The trial transcript was 1,705 pages. The Court issued nearly 100 orders. O'Reardon Decl., ¶ 43. While more work lies ahead, Plaintiff's Counsel expended enormous resources to achieve an outstanding result.

**III.    PLAINTIFF SHOULD BE AWARDED HER REQUESTED FEES AND EXPENSES**

On October 18, 2022, the Court issued an order granting in part and denying in part Plaintiff's motion for attorney fees, expenses, and a service award. *See* Dkt. 320 at 4–8. The Court held that the fee-shifting provisions of GBL §§ 349 and 350 applies and fees should be shifted to Defendant. *Id.* at 6. The Court rejected "Defendant's ultimate conclusion" that an award of $3,223,863.72 was appropriate, finding that awarding Plaintiff's counsel less than half of the lodestar amount "would be patently unreasonable." *Id*. Next, the Court held that "lodestar will serve as the relevant guide" for the fee award. While "the percentage method is preferred for its ease of

BLOOD HURST & O' REARDON, LLP

00197659

application," because the fee award is under a fee-shifting statute, "the lodestar [calculation] will serve as the relevant guide." *Id.* at 7. Although Plaintiff's lodestar-related submission "would have been sufficient for use as a [lodestar] cross-check," the Court ordered Plaintiff to file this renewed motion with contemporaneous time records to support the lodestar. Likewise, the Court denied without prejudice the request for expenses to permit Plaintiff this opportunity to provide additional detail. *Id.* at 7–8. The challenge here has been to separate time and expenses fairly attributable to the result obtained in *Montera* and solely to another Joint Juice action. After conducting a line-by-line analysis, the fees and expenses to which Plaintiff is entitled has modestly increased. Plaintiff seeks an award of attorneys' fees of $7,201,393.50, plus reimbursement of $1,073,123.10 in nontaxed costs expended to litigate this action. The requested fee award is equal to Plaintiff's Counsel's lodestar that is attributable to achieving the trial result. The amount would also represent one-third of the $21,224,427.24 total recovery should this request be granted.

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019).[4] The lodestar represents a "presumptively reasonable fee." *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011). "[T]he presumption is a strong one." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). Yet, the court "may then adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hyundai*, 926 F.3d at 570; *see also Rahmey v. Blum*, 466 N.Y.S.2d 350, 358 (N.Y. App. Div. 1983) (same).

"At bottom, the goal of the lodestar figure is to roughly approximate the fee the prevailing party would have received from a paying client." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019). Thus, the "lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee." *T.K. ex rel. L.K. v. N.Y. City Dept. of Educ.*, 2012 U.S. Dist. LEXIS 47311, at *13 (S.D.N.Y. Mar. 30, 2012) (quoting *Millea*, 658 F.3d at 166); *Hyundai*, 926 F.3d at 570 (same). In evaluating the reasonableness of the

---

[4] All citations, quotations and emphasis are omitted unless otherwise stated.

BLOOD HURST & O' REARDON, LLP

00197659

number of hours spent and the attorneys' hourly rates, "the factors ordinarily considered by New York courts ... include[e] [1] the time and skill required in litigating the case, [2] the complexity of issues, [3] the customary fee for the work, and [4] the results achieved." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) (calculating a fee award under GBL § 349); *Serin v. N. Leasing Sys., Inc.*, 2013 U.S. Dist. LEXIS 48419, at *6 (S.D.N.Y. Apr. 3, 2013) ("Additionally, the lawyer's experience, ability and reputation, the amount in dispute, and the benefit to the client should also be considered.").

The Supreme Court has emphasized that courts need not "achieve auditing perfection" or "become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, because the "essential goal in shifting fees [] is to do rough justice," the court may "use estimates" or "take into account [its] overall sense of a suit" to determine a reasonable attorney's fee. *Id.*

"The lodestar may then be adjusted by taking 'into account the factors ordinarily considered by New York courts[.]'" *Wilson v. Car Land Diagnostics Ctr., Inc.*, 2001 U.S. Dist. LEXIS 19760, at *3 (S.D.N.Y. Nov. 15, 2001) (quoting *Riordan*, 977 F.2d at 53 (calculating an attorneys' fee award under GBL § 349)); *see also Rahmey*, 466 N.Y.S.2d at 358 (stating that the lodestar "may be augmented or reduced by the courts, to take into account [the *Johnson* factors]"). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "[T]he most critical factor is the degree of success obtained." *Id*. at 436.

The lodestar is the starting point for calculating fees under a fee-shifting statute. A multiplier should be awarded in recognition of the contingency risk and other factors. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]"); *see also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (3.65 multiplier); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (3.07 multiplier "is well within the range for reasonable multipliers."); *Clemons v. A.C.I. Found., Ltd.*, 2017 N.Y. Misc.

LEXIS 1788, at *11 (N.Y. Sup. Ct. May 11, 2017) ("a multiple of 2.09 is at the lower end of the range of multipliers awarded by courts"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184–86 (W.D.N.Y. 2011) (multiplier of 5.3); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *29 (S.D.N.Y. Oct. 2, 2013) (7.3 multiplier). While a multiplier of two or more would be appropriate here, Plaintiff requests an award of the unadorned lodestar. Should the Court reduce either Plaintiff's Counsel's time or rates, Plaintiff requests a multiplier sufficient to raise the award to the amount requested here.

As previously briefed, a percentage cross-check, while not required, confirms the requested fee is reasonable. *See* § III.D below (33.3% is regularly awarded); *Shvager v. Viasat, Inc.*, 2014 U.S. Dist. LEXIS 200808, at *61–63 (C.D. Cal. Mar. 10, 2014) ("an award constituting 40.66% of the monetized recovery is appropriate and [the court] therefore declines to reduce the [lodestar-based] award based upon the percentage-of-the-fund cross-check").

### A.   The Hourly Rates Are Reasonable

Reasonable hourly rates are determined by prevailing market rates in the relevant community, which is typically where the district court sits. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Plaintiff's Counsel are entitled to the hourly rates charged by attorneys of comparable skill, experience, and reputation in this District engaged in complex litigation. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454–55 (9th Cir. 2010) (analyzing *Blum*); *Quill v. Cathedral Corp.*, 659 N.Y.S.2d 919, 920 (N.Y. App. Div. 1997). "The difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).

Plaintiff's Counsel's lodestar is calculated using rates accepted in numerous other class action cases. *See, e.g.*, O'Reardon Decl., ¶¶ 68–69; Carpenter Decl., ¶¶ 17–18; *see also Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (declarations regarding the prevailing rate in the relevant community suffice to establish a reasonable hourly rate). These rates range from $660 to $1,050 for partners and $400 to $575 for associates.

Plaintiff's Counsel's rates also compare with rates approved by other trial courts in class

BLOOD HURST & O' REARDON, LLP

action litigation and by what attorneys of comparable skill charge in this District. *See Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at *38 (N.D. Cal. Dec. 17, 2018) (approving rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen Clean Diesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017) (consumer protection class action: $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020) ($830 to $1,275 for partners and $425 to $695 for associates); *Carlotti v. Asus Comput. Int'l*, 2020 U.S. Dist. LEXIS 108917, at *15 (N.D. Cal. June 22, 2020) ($950 and $1,025 for partners); *Dickey v. Advanced Micro Devices, Inc.*, 2020 U.S. Dist. LEXIS 30440, at *22 (N.D. Cal. Feb. 21, 2020) ($615–$1,000 for partners and $275-$575 for associates); *In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, at *20 (N.D. Cal. Nov. 11, 2016) (up to $1,200 for senior attorneys and $290 for paralegals); *Orthopaedic Hosp. v. Encore Med., L.P.*, 2021 U.S. Dist. LEXIS 225014, at *40 (S.D. Cal. Nov. 19, 2021) (2020 and 2021 partner rates of $925-$1,225, associate rates of $770–$1,065).

These hourly rates are also reasonable considering the rates charged by the firms hired by Premier in this litigation. *See* O'Reardon Decl., ¶ 70 ($725–$1,225 for partners, $400–$1,065 for associates, and $295-$405 for paralegals). Moreover, Premier's counsel's rates are charged in noncontingent matters, where payment is certain regardless of outcome. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) (enhancements may be appropriate for contingent risk where lodestar rates are "based on the general local rate for legal services in a noncontingent matter").

Plaintiff's Counsel have submitted declarations attesting to their hourly rates, their experience, and describing their efforts to prosecute this litigation. Their hourly rates are reasonable.

**B.      The Hours Expended Are Reasonable**

Counsel should be compensated for all their reasonably expended time. "Determining the number of hours reasonably expended requires considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020). The court is "not only free but obligated to consider the results obtained [] or the extent of his success, [] in calculating the lodestar figure." *Morales v. City of San Rafael*, 96

13                                 Case No. 3:16-cv-06980-RS

BLOOD HURST & O' REARDON, LLP

F.3d 359, 364 (9th Cir. 1996).

Plaintiff's Counsel prosecuted this litigation since 2013 on a 100% contingency basis. They devoted a substantial amount of time to this matter without unnecessary duplication of work because the case required it and Premier's litigation positions demanded it. "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees." *Moreno*, 534 F.3d at 1112. Plaintiff's Counsel – lawyers from small, plaintiff's-only firms – spent nine years, thousands of hours and over a million dollars on risky contingency fee litigation against a billion-dollar corporation that hired three—now four—prestigious law firms and has yet to make a serious settlement offer. The Plaintiff's Counsel efforts led to a full and complete success. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id*. Thus, the "directive" is to review billing records "deferentially." *Melendres v. Arpaio*, 2017 U.S. App. LEXIS 28223, at *23 (9th Cir. Mar. 2, 2017).

This litigation also has been closely watched by other attorneys in this field. It has raised cutting-edge issues in consumer protection law and represents a rare class action trial. *See Polee v. Cent. Contra Costa Transit Auth. (CCCTA)*, 516 F. Supp. 3d 993, 1002 (N.D. Cal. 2021) ("A more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate.") (quoting *Ketchum*, 24 Cal. 4th at 1138–39).

In connection with the original motion, Class Counsel excluded all of their billable hours from February 10, 2017, through May 17, 2018, when the related actions were stayed. O'Reardon Decl., ¶ 73. As attested, this wholesale exclusion represented a conservative approach that resulted in over-exclusion of time benefitting this litigation. *Id.* After now engaging in a line-by-line analysis of time records, that approach is shown to have been very conservative.

In connection with this Renewed Motion, Plaintiff's Counsel submits the time records the Court requested. O'Reardon Decl., Ex. 2; Iredale Decl., Ex. A; Carpenter Decl., Ex. B.[5] To

---

[5]     *But see Document Sec. Sys. v. Ronaldi*, 2022 U.S. Dist. LEXIS 109726, at *12–13 (W.D.N.Y. June 21, 2022) (noting that while "New York and federal courts alike generally consider documentation when analyzing reasonable hours billed. … New York courts do not necessarily

determine which records to submit and the resulting lodestar to include, Plaintiff's Counsel again has utilized a conservative methodology following the same logic as before – to include only time benefitting this action for the lodestar calculation. O'Reardon Decl., ¶¶ 24–25, 73–74. But where Class Counsel previously cut with a cleaver, this time Class Counsel analyzed the time (entry by entry) with a scalpel. As before, Plaintiff's Counsel's method was to exclude at least all time spent on the *Sonner* appeals, and work that benefitted only *Mullins* or the subsequent state court actions. *Id*. For example, going entry by entry, Plaintiff's Counsel's excluded the time spent on briefing class certification in the state court *Bland* action (which occurred after *Montera* was certified), work on jury instructions from *Mullins* that concerned UCL and CLRA claims not at issue in *Montera* (although similar consumer fraud, false advertising themes existed), the motion to compel Vincent Mullins to travel to San Francisco for his deposition, the motion to substitute in Ms. Sonner for Mr. Mullins, the motion for leave to amend to file the Second Amended Complaint in *Sonner* to drop the request for damages under the CLRA and the subsequent motion to dismiss filed by Defendant, all time working with expert Robert Wallace regarding California class damages in *Mullins*, all time working with Dr. Thomas Maronick in connection with his marketing opinions and deposition provided in *Mullins*, and 2017 *Mullins*-only trial work regarding Drs. Graboff, Silbert and Lippiello. *Id.*, ¶ 74. Class Counsel has also excluded from this lodestar any particular time records that in any way expressly referred to a task that did not benefit *Montera* – even if that same time entry also (and often primarily) *did* also include work that benefitted *Montera*. *Id*. Further excluded is any time spent on this Renewed Motion and time spent so far on the post-trial appeals in this matter. We plan to file additional fee motions as appropriate in the future. *Id.*, ¶ 24.

Using this method, Plaintiff's Counsel's worked 10,921.30 hours with a resulting lodestar of $7,201,393.50 to the benefit of this matter. The number of hours were reasonably expended.

**C.     The Lodestar Adjustment Factors Support the Requested Fee Award**

The next step is to determine whether an adjustment to the lodestar is appropriate using the "Johnson/Kerr" factors. *Rahmey*, 466 N.Y.S.2d at 358 (citing *Johnson v. Ga. Highway Express,*

_____

require 'contemporaneous time records' in the same way that federal courts do.").

BLOOD HURST & O' REARDON, LLP

00197659

*Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1074)); *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 484 (9th Cir. 1988); *Lilly v. City of N.Y.*, 934 F.3d 222, 230 (2d Cir. 2019); *Harman v. City & Cnty. of S.F.*, 158 Cal. App. 4th 407, 416 (2007). These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (citing *Johnson*). "The failure to consider such factors constitutes an abuse of discretion." *Kerr*, 526 F.2d at 70.

Any other relevant factors also may be considered, including the public policy behind the GBL in having the private sector enforce deceptive advertising prohibitions. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) (factors include "public policy considerations"); *Ousmane v. City of New York*, 2009 N.Y. Misc. LEXIS 574, at *37 (N.Y. Sup. Ct. Mar. 17, 2009) (multiplier factors include "whether the case was brought in furtherance of public policy").

"The experienced trial judge is the best judge of the value of professional services rendered in his court, and … it will not be disturbed unless the appellate court is convinced that it is clearly wrong." *Ketchum*, 24 Cal. 4th at 1132; *see also Benzaken v. Benzaken*, 799 N.Y.S.2d 579, 581 (N.Y. App. Div. 2005) ("The trial court is in the best position to judge the factors integral to determining counsel fees, such as the time, effort, and skill required.").

The factors confirm that the fee request is reasonable.

### 1. The Time and Labor Required

An outlay of extraordinary costs over a long period of time can result in an enhancement. *See Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1097–98 (N.D. Cal. 2022) (citing *Perdue* and awarding 1.05 multiplier where plaintiffs' costs exceeded $1.3 million over 5 years, "to take into account the extended period of time Plaintiffs were required to shoulder the significant costs of litigating this action"). Here, Plaintiff's Counsel shouldered over $1.1 million in costs since 2013 to reach the result at trial. O'Reardon Decl., ¶¶ 40, 82. This factor thus supports the fee request.

BLOOD HURST & O' REARDON, LLP

00197659

**2.      The Novelty and Difficulty of the Questions Involved**

The legal and factual issues in this litigation have been complex and at the forefront of appellate cases over the life of this litigation. *See Quill*, 659 N.Y.S.2d at 920 (reasonable fee factors include "the complexity of the legal issues involved"). Examples include the impact of FDA regulation of dietary supplements, the calculation of statutory damages under the GBL, and factually, evaluating decades of scientific research. These facts also support the requested fee award.

**3.      The Risks of Litigating the Case**

"[T]he strength, both legal and factual, of the case" also are considered. *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002). Risk multipliers aim to "incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

Few of these cases go to trial and far fewer are successful. Moreover, during this litigation federal jurisprudence has trended in favor of defendants and against consumer classes on issues that include class certification, choice of law, remedies, and jurisdiction. Merely getting to trial in this type of case is an achievement.

Meanwhile, in ways mirroring the tobacco industry, the glucosamine industry has heavily financed research to promote the sale of joint health supplements. This has made litigating the science of glucosamine supplements more challenging and riskier.

These enhanced risks require more work, more thought, and more careful strategic analysis. They also require more money to fund the litigation. Meanwhile, the additional time and cost is time and money that cannot be spent on other cases. O'Reardon Decl., ¶¶ 45–46. Plaintiff's Counsel successfully and strategically advanced legal and factual arguments, avoided other legal arguments, positioned, and re-positioned the litigation to adjust to changing jurisprudence, and used resources, facts, and experts to successfully guide this case through trial.

Courts recognize that litigation involving a "battle of the experts" is inherently risky, justifying a higher percentage fee award. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372, 374 (S.D.N.Y. 2002) (awarding one-third of the recovery and noting that a "battle of the experts" creates a "complex issue"). Here, the battle of the experts involved scientific, marketing,

17                                                    Case No. 3:16-cv-06980-RS

BLOOD HURST & O' REARDON, LLP

survey, and damages issues which are complex and create uncertainties. *See Hill v. Canidae Corp.*, 2021 U.S. Dist. LEXIS 214023, at *21 (C.D. Cal. Apr. 2, 2021) (noting that risk involved as "expensive and uncertain battle of the experts"); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *24 (S.D.N.Y. May 9, 2014) (same).

Novel legal issues were also at play. Preemption issues under the Federal Food, Drug, and Cosmetics Act present "a complex and nuanced area of law[.]" *Henry v. Gerber Prods. Co.*, 2016 U.S. Dist. LEXIS 52638, at *22 (D. Or. Apr. 18, 2016). The Ninth Circuit addressed preemption well into the life of this litigation in a case won by Class Counsel here. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 806 (9th Cir. 2020). This Court also addressed novel issues bringing this case to trial. *See, e.g.*, *Montera*, 2022 U.S. Dist. LEXIS 75843, at *21 (recognizing "the divergence of views amongst highly regarded district courts across the country" relating to damage calculations).

As noted above, this type of false advertising class action often fails at trial. In *Allen v. Hyland's, Inc.*, the plaintiff lost a 13-day class jury trial involving homeopathic products where the defendant advertised the products as having benefits the product did not provide. 2021 U.S. Dist. LEXIS 34695, at *2 (C.D. Cal. Feb. 23, 2021). In *Farar v. Bayer AG*, plaintiffs alleged One-A-Day vitamins contained misleading health claims in violation of consumer protection statutes. 2017 U.S. Dist. LEXIS 193729, at *3 (N.D. Cal. Nov. 15, 2017). Plaintiffs defeated summary judgement and obtained class certification but lost a class jury trial after four years of litigation. *Farar*, Dkt. 327 (Judgment). In *Racies v. Quincy Bioscience, LLC*, the defendant obtained a hung jury in a false advertising class action about a brain health dietary supplement tried in this District. 2020 U.S. Dist. LEXIS 78156, at *11 (N.D. Cal. May 4, 2020). Similar cases brought by government agencies also have failed. *See U.S. v. Bayer Corp.*, 2015 U.S. Dist. LEXIS 134321, at *59 (D.N.J. Sept. 24, 2015).

Plaintiff's Counsel overcame these same risks and should be compensated for their efforts.

### 4.  The Skill Required

In exceptional circumstances, superior attorney performance can justify an enhancement. *Perdue*, 559 U.S. at 554–56. This is one of those circumstances.

Plaintiff's Counsel displayed superior skill that was required to prevail. Class Counsel's practice is primarily dedicated to consumer fraud litigation, and they have been responsible for some

BLOOD HURST & O' REARDON, LLP

18                                         Case No. 3:16-cv-06980-RS

of the leading appellate opinions and the largest recoveries in false advertising history. O'Reardon Decl., ¶ 48 and Ex. 1 thereto. To Class Counsel's knowledge, this lawsuit resulted in the largest class action jury verdict in the field of consumer product false advertising in at least the past decade. *Id.*, ¶ 4. Members of Class Counsel's team have gained specialized knowledge in litigating the scientific veracity of consumer product health claims, including working with science and marketing experts, obtaining reliable sales data, and litigating the interplay of FDA regulations and consumer protection statutes at the trial court and appellate levels. *Id.*, ¶¶ 48, 50–55. The results achieved here reflect that Class Counsel is among the best in this type of lawsuit. *See Mendez v. Reinforcing Ironworkers Union Local 416*, 2013 U.S. Dist. LEXIS 120893, at *11 (D. Nev. Aug. 23, 2013) (enhancement because plaintiff's counsel's "performance reflects the very best ability in her field"); *Hyundai*, 926 F.3d at 571-72 (affirming 1.22 multiplier due to "the complexity and volume of work that counsel engaged in in order to diligently pursue this case and develop its primary theory of liability"). The skills displayed by Plaintiff's Counsel warrant a multiplier despite their request for a fee equal to their lodestar.

### 5.   Working on this Case Precluded Other Employment

Not including the time or expenses of co-counsel, Class Counsel spent more than 9,500 hours and nearly $1.1 million prosecuting that matter since 2013. O'Reardon Decl., ¶¶ 40, 74, 77–79. The expenditure of that time and money precluded Class Counsel's ability to accept other employment. *Id.*, ¶ 46; *see Dixon v. City of Oakland*, 2014 U.S. Dist. LEXIS 169688, at *48 (N.D. Cal. Dec. 8, 2014) (1.3 multiplier appropriate, including because "the demands of this case, especially as trial approached, precluded other work") (citing *Ketchum*). This factor supports the requested award.

### 6.   The Customary Fee and Awards in Similar Cases

Considering the factors discussed here, Plaintiff's requested fee award, which does not contain any multiplier and would equal a third of the total recovery, compares favorably to fee awards in similar cases – most of which settle before trial or class certification. As discussed in this motion, fee multipliers of 2 to 4 or more and 33% awards are common, including in GBL actions.

### 7. Whether the Fee is Fixed or Contingent

Courts typically award a lodestar multiplier when, as here, counsel undertook the representation on contingency. The California Supreme Court explained: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Ketchum*, 24 Cal. 4th at 1133. A multiplier does not provide a windfall for counsel, because the multiplier "is intended to approximate market-level compensation for such services, which typically [pay] a premium for the risk of nonpayment or delay in payment of attorney fees." *Id.* at 1138. New York courts agree that "a contingency adjustment may be appropriate in some cases to entice private firms to undertake difficult cases in which victory is uncertain." *Rahmey*, 466 N.Y.S.2d at 359. On this basis, "[i]t is an established practice in the private legal [world] to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see also Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228, 1251-52 (2014) (1.4 -1.5 multiplier award based on contingent risk and preclusion of other employment opportunities alone); *In re Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *81 (S.D.N.Y. Nov. 26, 2002) (2.09 multiplier "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"). Here, counsel represented the class entirely on a contingency-fee basis. O'Reardon Decl., ¶ 45. Over a nine-year period, they spent 10,921.30 hours and approximately $1.13 million in out-of-pocket expenses, without any guarantee of payment. *Id.*, ¶¶ 40, 82–83. A multiplier is justified.

### 8. Time Limitations Imposed by Client or Circumstances and the Nature and Length of the Professional Relationship with the Client

This is the only matter in which Plaintiff's Counsel have represented the Plaintiff and Plaintiff imposed no limitation impacting the litigation. Thus, these factors are neutral.

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

### 9.     The Amount Involved and Results Obtained

In determining the reasonableness of a fee request, the "most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (same); *G.M. by & Through R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir. 1999) (same). Here, Plaintiff's Counsel battled for years with formidable adversaries and won – a feat other plaintiffs' counsel have not achieved in this type of case.

This factor alone justifies the requested fee award. After years of contentious litigation Plaintiff's Counsel obtained a unanimous jury verdict that Joint Juice is "valueless" for its advertised purpose. The jury rejected all of Premier's arguments, including those intended to result in only partial refunds. The Court ultimately awarded $12,895,454.90 to the Class, amounting to 5.59 times the full price for every Joint Juice purchase. The Los Angeles Daily Journal listed the result as one of the top verdicts of 2022. *See* O'Reardon Decl., ¶ 4.

While consistently striving for a fair and reasonable resolution, Plaintiff's Counsel never sold out when an adequate settlement was not offered, even when required to repeatedly invest substantial amounts of time and money into the litigation.

### 10.     The Experience, Reputation and Ability of the Attorneys

"[T]he quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Perdue*, 559 U.S. at 553. Nevertheless, as discussed above, Plaintiff's Counsel from Blood Hurst & O'Reardon and Lynch Carpenter have significant experience litigating complex consumer class action matters, including deceptive advertising cases. *See* O'Reardon Decl., Ex. 1 (BHO firm resume); Carpenter Decl., Ex. A (Lynch Carpenter firm resume). Plaintiff's Counsel from Iredale & Yoo are experienced and successful trial attorneys. Iredale Decl., ¶¶ 3, 9. Meanwhile, Premier was represented by three well-respected, Am Law 100 law firms. This factor supports the requested fee award.

### 11.     Public Policy Considerations

The public policy behind fee awards in GBL §§ 349 and 350 actions supports Plaintiff's fee request. *See Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at *34 (S.D.N.Y. July 12, 2022)

21                                      Case No. 3:16-cv-06980-RS

(GBL § 349 action: awarding one-third of recovery is "consistent with public policy, as this litigation and settlement serves as a warning to companies that utilize auto renewal for subscription services"); *Kommer v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 235168, at *16 (N.D.N.Y. Dec. 15, 2020) (GBL §§ 349 and 350 action: "public policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace.").

In *Koch v. Greenberg*, the court recognized that a fee award is appropriate when the action reinforces the purpose of GBL §§ 349 and 350 "to combat fraud against consumers" or otherwise has a "broad impact on consumers." 14 F. Supp. 3d 247, 280 (S.D.N.Y. 2014). Here, the Court acknowledged that Premier marketed Joint Juice "specifically to people seeking joint pain and arthritis relief[,]" "encouraged customers to make repeat purchases," sold Joint Juice while it was "aware of the changing tide in the science yet continued without hesitation[,]" and inflicted Class Members with "the intangible harm of lost hope." Dkt. 293 at 10.

Intentionally targeting arthritis sufferers carries real dangers. The FDA has enumerated numerous "serious risks" associated with the sale of dietary supplements advertised to consumers suffering from diseases. These include encouraging consumers to "self-treat" and "substitute potentially ineffective products for proven ones," "delay or forego regular screening, and forfeit the opportunity for early medical treatment[.]" 65 Fed. Reg. 1000, 1001–02 (Jan. 6, 2002). *See also FTC v. Direct Mktg. Concepts, Inc.*, 2004 U.S. Dist. LEXIS 11628, at *16 (D. Mass. June 23, 2004) ("Consumers suffering from … arthritis … are injured if they purchase [an unapproved drug] in lieu of pursuing treatments that may offer them real health benefits.").

Plaintiff's Counsel have held accountable a company that has defrauded older consumers desperate for a solution to their chronic pain – the very type of case the public policy behind New York's false advertising and unfair competition laws is intended to promote.

### D.    A Percentage Cross-Check Confirms the Reasonableness of the Fee Request

Courts employing the lodestar method are not required to perform a 'crosscheck' using the percentage method, but doing so here further demonstrates the reasonableness of Plaintiff's request. *Hyundai*, 926 F.3d at 571; *M.F. v. Amida Care, Inc.*, 2022 N.Y. Misc. LEXIS 2315, at *8–9 n.1 (N.Y. Sup. Ct. May 26, 2022) ("The fact that the percentage cross-check is unavailable in most fee-

BLOOD HURST & O' REARDON, LLP

shifting … cases is largely immaterial in that the lodestar itself is a presumptively reasonable fee in most situations."); *see also Cruz v. Nieves*, 2015 N.Y. Misc. LEXIS 4565, at *21 (N.Y. Sup. Ct. June 22, 2015) ("a Court may not reduce the lodestar figure merely because the figure is disproportionate to the damages recovered"); *Podhorecki v. Lauder's Furniture Stores*, 607 N.Y.S.2d 818, 820 (N.Y. App. Div. 1994) (same). Here the requested fee represents approximately 34% of the total recovery. O'Reardon Decl., ¶ 84.

"Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008). In calculating fees as a percentage of the recovery, the Ninth Circuit uses a benchmark of 25% of the common fund from which to start. However, fee awards "far greater" than the 25% benchmark are regularly awarded. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% award). "[I]n most common fund cases, the award exceeds the [25%] benchmark." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at *5 (N.D. Cal. Dec. 6, 2017); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (33.3% award); *Chavez v. Converse, Inc.*, 2020 U.S. Dist. LEXIS 257679, at *14–15 (N.D. Cal. Nov. 25, 2020) ("one-third of the Total Settlement Amount" awarded); *In re Lidoderm Antitrust Litig.*, 2018 U.S. Dist. LEXIS 162425, at *38 (N.D. Cal. Sept. 20, 2018) ("[A] fee award of one-third is within the range of awards in this Circuit."); *Hernandez v. Dutton Ranch Corp.*, 2021 U.S. Dist. LEXIS 212745, at *17 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund."); *Marshall v. Northrop Grumman Corp.,* 2020 U.S. Dist. LEXIS 177056, at *7 (C.D. Cal. Sept. 18, 2020) ("A one-third percentage has been applied to the gross settlement amount to calculate the fee award."); *Hart v. Marriott Int'l, Inc.*, 2019 U.S. Dist. LEXIS 227311, at *32 (C.D. Cal. June 24, 2019) (33% awarded).

New York courts routinely approve one-third of the total benefit achieved. *See Milton v. Bells Nurses Registry & Emp. Agency, Inc.*, 2015 N.Y. Misc. LEXIS 4604, at *13 (N.Y. Sup. Ct. Dec. 14, 2015) ("one-third of the settlement fund … is well within the range of reasonableness"); *Spratt v. Diversified Maint. Sys. LLC*, 2022 N.Y. Misc. LEXIS 3607, at *8 (N.Y. Sup. Ct. May 31,

2022) (same); *Lopez v. Dinex Grp., LLC*, 2015 N.Y. Misc. LEXIS 3657, at *15 (N.Y. Sup. Ct. Oct. 6, 2015) (same); *Arnutovskaya v. Alteration Grp. of NY, LLC*, 2020 N.Y. Misc. LEXIS 2933, at *20 (N.Y. Sup. Ct. June 23, 2020) (more than 33.33%); *Nichols*, 2022 U.S. Dist. LEXIS 123146, at *32 (GBL § 349 action approving 33% and noting a "fee equal to one-third of a settlement fund is routinely approved"); *Richard v. Glens Falls Nat'l Bank*, 2022 U.S. Dist. LEXIS 68692, at *12 (N.D.N.Y. Apr. 13, 2022) (§ 349 action awarding 33%); *In re Vizio, Inc.*, 2019 U.S. Dist. LEXIS 239976, at *34 (C.D. Cal. July 31, 2019) (awarding 33% in §§ 349 and 350 action).

The percentage cross-check, while not required, confirms the requested fee is reasonable.

### E.  Plaintiff's Expenses Are Reasonable and Compensable

Courts "have long interpreted the phrase 'reasonable attorney's fees' to include certain litigation expenses[.]" *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (following *Missouri v. Jenkins*, 491 U.S. 274 (1989)); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (same). Courts have "repeatedly [] allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Grove*, 606 F.3d at 580; *see also Chen v. Select Income REIT*, 2019 U.S. Dist. LEXIS 177687, at *33 (S.D.N.Y. Oct. 11, 2019) (same). The Federal Rules of Civil Procedure provide for expenses. *See* Fed. R. Civ. P. 54(d)(1) (costs "should be allowed to the prevailing party"); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law …"). This Court has also held that a prevailing plaintiff is entitled to "taxable costs" pursuant to Local Rule 54 and "non-taxable costs" if they would be billed separately to a client paying an hourly rate. *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 2014 U.S. Dist. LEXIS 80983, at *23–24 (N.D. Cal. June 12, 2014) (citing *Missouri*, 491 U.S. at 287).

Plaintiff's Counsel have submitted declarations showing $1,073,123.10 in nontaxed expenses incurred for this litigation, supported by credit card statements, invoices, and receipts. *See* O'Reardon Decl., ¶¶ 79–82 and Exs. 3–15 thereto; Iredale Decl., ¶¶ 15–16 and Ex. B thereto; Carpenter Decl., ¶¶ 21–24. The costs include expert fees, mediation fees, electronic discovery platforms, class notice, filing and service of process, travel, online research, photocopies, postage,

BLOOD HURST & O' REARDON, LLP

00197659

transcription, and the jury trial. These expenses were reasonably and necessarily incurred and are the sort typically billed to paying clients. *Id.*; *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *72–73 (N.D. Cal. Feb. 11, 2016) ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in [] class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation"); *Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069, at *26 (C.D. Cal. May 3, 2022) (same and also reimbursing for class notice, deposition and mediation fees); *Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 235–36 (W.D.N.Y. 2019) (reimbursing costs of postage, experts, service, transcription, travel, filing, and research including PACER); *see also* O'Reardon Decl., ¶ 81(g) (the parties utilized a similar number of experts who provided testimony about similar subjects, and Plaintiff's experts' hourly rates were generally lower than those of Premier's experts).

Premier also sought reimbursement for similar expenses, albeit improperly as taxed costs. *See Mullins*, Dkt. Nos. 249, 261 (Premier sought taxation of expenses including for filing fees, ESI databases and consulting, photocopies, hearing and deposition binders, scientific studies, Lexis and PACER research, deposition and hearing transcripts and video, messengers, and mediator fees).

Therefore, the request for reimbursement of nontaxed costs should be approved.

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court grant this Renewed Motion and award Plaintiff's Counsel attorneys' fees of $7,201,393.50 and nontaxed expenses of $1,073,123.10.

Respectfully submitted,

Dated: April 4, 2023

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:        *s/  Timothy G. Blood*
    TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100

BLOOD HURST & O'REARDON, LLP

619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)
GRACE JUN (287973)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com
gjun@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

26                    Case No. 3:16-cv-06980-RS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

Executed on April 4, 2023.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

Case No. 3:16-cv-06980-RS

00197659

RENEWED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF NONTAXED EXPENSES

BLOOD HURST & O' REARDON, LLP