VENABLE LLP
Steven E. Swaney (SBN 221437)
seswaney@venable.com
Amit Rana (SBN 291912)
Email: arana@venable.com
Antonia I. Stabile (SBN 329559)
Email: aistabile@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>Defendant. | Case No. 3:16-cv-06980-RS<br><br>Hon. Richard Seeborg<br><br>**PREMIER NUTRITION COMPANY, LLC'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>Hearing Date: June 8, 2023<br>Time:          1:30 p.m.<br><br>Judge: Honorable Richard Seeborg<br>Location: Courtroom 3, 17th Floor<br><br>Complaint Filed:  December 5, 2016<br>Trial Date:        May 23, 2022 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

RELEVANT PROCEDURAL HISTORY ...............................................................3

ARGUMENT .......................................................................................................5

    I.     LEGAL STANDARD ..................................................................................5

    II.    CLASS COUNSEL'S LODESTAR IS INFLATED AND REQUIRES SIGNIFICANT REDUCTION ......................................................................5

        A.    Iredale & Yoo, APC .................................................................5

        B.    Blood Hurst & O'Reardon, LLP ..............................................6

            1.    Non-Compensable Time in BHO's Lodestar...........................6

               a.    Depositions of Class Representatives in Related Cases ...............................................................6

               b.    Trial Preparation for the *Mullins* Action......................6

        C.    Apportionment of Time Relating to *Mullins* and Related Actions .....................................................................................8

            1.    Forty Percent Reduction to Remaining Lodestar...................10

               a.    Hourly Rates .............................................................11

               b.    Block Billing and Vague Time Narratives ................13

               c.    Billing in Quarter Hour Increments ..........................14

               d.    Overstaffing and Duplicative Hours ..........................14

               e.    Duplicative and Erroneous Time Entries...................17

               f.    Top-Heavy Administration of Work...........................18

               g.    Fees on Fees...............................................................18

               h.    Limited Success .........................................................19

            2.    No Multiplier Is Warranted.....................................................20

        D.    Lynch Carpenter, LLP ...........................................................21

PREMIER'S OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES
Case No. 3:16-cv-06980

**III.    PLAINTIFF'S REQUESTED EXPENSES ARE UNREASONABLE** ......................... 22

  A. Plaintiff Cannot Recover Expenses for *Mullins*-Specific Expert Discovery ................................................................ 22

  B. Plaintiff's Remaining Experts' Fees Should Be Substantially Reduced............................................................. 22

  C. Plaintiff Should Not Recover Deposition Costs for Class Representatives Other Than Montera and Fishon.............................. 23

  D. Plaintiff's Extravagant Expenses Should Be Reduced ....................... 23

  E. Plaintiff's Remaining Expenses Should Be Apportioned Across the 11 Pending Related Actions.............................................. 25

CONCLUSION.................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aarons v. BMW of N. Am., LLC*,
    2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ...........................................................................12

*Arredondo v. Delano Farms Co.*,
    2017 WL 4340204 (E.D. Cal. Sept. 29, 2017)...........................................................................24

*Barfield v. New York City Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008)......................................................................................................13

*In re Beacon Assocs. Litig.*,
    2013 WL 2450960 (S.D.N.Y. May 9, 2013) .............................................................................12

*Beastie Boys v. Monster Energy Co.*,
    112 F. Supp. 3d 31 (S.D.N.Y. 2015)...................................................................................12, 18

*Benihana Inc. v. Benihana of Tokyo, LLC*,
    2017 WL 6551198 (S.D.N.Y. Dec. 22, 2017) ..........................................................................13

*Best Payphones, Inc. v. Dobrin*,
    2017 WL 11456613 (E.D.N.Y. June 27, 2017) ........................................................................19

*Blum v. Stenson*,
    465 U.S. 886 (1984)..................................................................................................................20

*Brennan Ctr. for Just. v. Dep't of Homeland Sec.*,
    2019 WL 280954 (D.D.C. Jan. 22, 2019)................................................................................19

*Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*,
    2016 WL 5341247 (E.D. Cal. Sept. 21, 2016)...................................................................22, 23

*Chambers v. Whirlpool Corp.*,
    980 F.3d 645 (9th Cir. 2020) ....................................................................................................20

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)..................................................................................................................21

*Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*,
    903 F.3d 396 (3d Cir. 2018).......................................................................................................3

*U.S. ex rel. Coughlin v. Int'l Bus. Machines Corp.*,
    992 F. Supp. 137 (N.D.N.Y. 1998)...........................................................................................13

*Craig v. County of Orange*,
    2019 WL 12378994 (C.D. Cal. Sept. 5, 2019) .........................................................................16

-iii-

*Dagostino v. Computer Credit, Inc.*,
238 F. Supp. 3d 404 (E.D.N.Y. 2017) ................................................................19

*Democratic Party of Wash. State v. Reed*,
388 F.3d 1281 (9th Cir. 2004) ...........................................................................17

*Does v. District of Columbia*,
448 F. Supp. 2d 137 (D.D.C. 2006) ...................................................................18

*Farrar v. Hobby*,
506 U.S. 103 (1992).............................................................................................20

*Fleetwood Servs., LLC v. Ram Capital Funding, LLC*,
2023 WL 112429 (S.D.N.Y. Jan. 5, 2023) .........................................................20

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
2021 WL 3163799 (C.D. Cal. July 22, 2021)...............................................1, 9, 10

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) ..............................................................................5

*GemCap Lending I, LLC v. Unity Bank Minnesota*,
2019 WL 3842010 (N.D. Cal. Aug. 15, 2019) ....................................................13

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ............................................................................11

*Grace v. Apple, Inc.*,
2021 WL 1222193 (N.D. Cal. Mar. 31, 2021)................................................13, 24

*H.J. Inc. v. Flygt Corp.*,
925 F.2d 257 (8th Cir. 1991) ..............................................................................14

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................................................................................1, 5, 18

*Houston v. Cotter*,
234 F. Supp. 3d 392 (E.D.N.Y. 2017) ................................................................16

*Hynix Semiconductor Inc. v. Rambus Inc.*,
697 F. Supp. 2d 1139 (N.D. Cal. 2010)..............................................................25

*ING Glob. v. UPS Oasis Supply Corp.*,
2014 WL 4090552 (S.D.N.Y. Aug. 19, 2014).....................................................24

*Lipsett v. Blanco*,
975 F.2d 934 (1st Cir. 1992)................................................................................15

*Manner v. Gucci Am., Inc.*,
2016 WL 6025850 (S.D. Cal. Oct. 13, 2016) ......................................................12

*Marmo v. Tyson Fresh Meats, Inc.*,
   457 F.3d 748 (8th Cir. 2006) ...........................................................................................25, 26

*McNamara v. Infusion Software, Inc.*,
   2020 WL 4921984 (D. Ariz. Aug. 21, 2020)..........................................................................10

*Medina v. Donaldson*,
   2015 WL 77430 (E.D.N.Y. Jan. 6, 2015) ...............................................................................11

*In re Met. Life Derivative Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996) .........................................................................................11

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) .................................................................................................5

*MPD Accessories, B.V. v. Urban Outfitters, Inc.*,
   2013 WL 5761421 (S.D.N.Y. Oct. 24, 2013)..........................................................................11

*Mullins v. Premier Nutrition Corp.*,
   No. 3:13-cv-01271-RS ..................................................................................................... *passim*

*NAACP v. E. Ramapo Cent. Sch. Dist*,
   2020 WL 7706783 (S.D.N.Y. Dec. 29, 2020) ........................................................................24

*Nasiri v. T.A.G. Security Protective Services Inc.i*,
   2021 WL 4226207 (N.D. Cal. Sept. 16, 2021) .........................................................................8

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010)..........................................................................................1, 2, 5, 20

*Pig Newton, Inc. v. Bd. of Dirs. of the Motion Picture Indus. Pension Plan*,
   2016 WL 796840 (S.D.N.Y. Feb. 24, 2016)...........................................................................18

*Preston Exploration Co. v. GSP, LLC*,
   2013 WL 3229678 (S.D. Tex. June 25, 2013) ........................................................................14

*Rodriguez v. Barrita, Inc.*,
   53 F. Supp. 3d 1268 (N.D. Cal. 2014) (Seeborg, J.)...............................................................12

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*,
   2013 WL 3322249 (S.D.N.Y. July 2, 2013) ...........................................................................11

*Rosenfeld v. U.S. Dep't of Justice*,
   904 F. Supp. 2d 988 (N.D. Cal. 2012) ...................................................................................19

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*,
   574 F.3d 852 (7th Cir. 2009) ..................................................................................................15

*Stonebrae L.P. v. Toll Bros., Inc.*,
   2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ..........................................................................15

-v-

*Sughayyer v. City of Chicago*,
2012 WL 2359065 (N.D. Ill. June 20, 2012) ........................................................................16

*Survivor Prods., Inc. v. Owens*,
2016 WL 3647967 (D. Or. July 6, 2016) ...............................................................................10

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Dem. Repub.*,
2012 WL 5816878 (S.D.N.Y. Nov. 14, 2012) .......................................................................14

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
2018 WL 5848994 (W.D. Miss. Nov. 7, 2018) ......................................................................24

*Wade v. Colaner*,
2020 WL 5479625 (D.N.J. Dec. 28, 2010) ...........................................................................20

*Warren v. James C. Bender & Assoc.*,
2014 WL 6792060 (S.D.N.Y. Dec. 3, 2014) .........................................................................19

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) ................................................................................................14

*Winter v. Novartis Pharms. Corp.*,
739 F.3d 405 (8th Cir. 2014) ................................................................................................25

*Yamanouchi Pharma. Co. v. Danbury Pharma., Inc.*,
51 F.Supp.2d 302 (S.D.N.Y.1999) .......................................................................................25

*Yea Kim v. 167 Nail Plaza, Inc.*,
2009 WL 77876 (S.D.N.Y. Jan. 12, 2009) ......................................................................11, 16

**INTRODUCTION**

Six months after the Court denied Class Counsel's motion for fees and costs, holding that it would apply the lodestar method and needed Class Counsel's billing records to assess the reasonableness of their fee request, Class Counsel has presented a bloated and unreasonble application asking this Court to award $8,274,516 in combined fees, expenses, and costs. With the exception of the Iredale & Yoo firm (whose lodestar is reasonable), the records from the other Class Counsel firms—Blood Hurst & O'Reardon ("BHO") and Lynch Carpenter—betray a lack of "billing judgment" and a failure to comprehend the fundamental goal of the lodestar method: to produce an award that "approximates the fee that the prevailing attorney would have received [for] representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The law is uniform that this essential goal means that, in applying for a lodestar award, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Orser v. Wholesale Fuel Distrib.-CT, LLC*, 108 N.Y.S.3d 675, 685-86 (N.Y. Sup. Ct. 2018) (same), *aff'd*, 173 A.D.3d 1519 (N.Y. App. Div. 2019).

But here, Class Counsel present a fee petition that does not even attempt to approximate what a paying client would approve. First, Class Counsel's lodestar is massively overstated because it includes time devoted to all the related Joint Juice class actions. Having prevailed in *one* of those 11 related cases, Class Counsel submit a fee petition that is structured as if they had prevailed in *all* of them. This is not allowed. Courts confronted with this scenario do what is both obvious and reasonable: they apportion the time spent working on common issues that benefitted all the related cases equally, and award Class Counsel a percentage to reflect success in the specific case where the plaintiff prevailed. *See, e.g.*, *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 2021 WL 3163799, at *4, *9 (C.D. Cal. July 22, 2021) (in MDL proceeding involving several related cases, where two plaintiffs prevailed in bellwether trials the court apportioned hours worked on tasks that benefitted all the related cases to create a "per case" fee, because "Lead Counsel cannot premise its fee request on [statutory] fee shifting in favor of prevailing plaintiffs, while disregarding those cases in which plaintiffs did not prevail").

PREMIER'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES
Case No. 3:16-cv-06980

As explained in more detail below, Premier suggests an approach that—consistent with the relevant authorities—excludes certain time for the related cases that was clearly inessential to this case (principally trial preparation for the *Mullins* action) and apportions other work from *Mullins* and the related cases to reflect Plaintiff's success in this case. It is obviously not feasible (for many reasons) to review each individual entry and determine if it should be apportioned, so Premier suggests the Court use the date on which *Montera* was set for trial as a cutoff: work before that date was presumably common to the related cases and should be apportioned; work after that date was presumably specific to *Montera* and should not be apportioned.

Second, Class Counsel's billing records (again with the exception of Iredale & Yoo) are replete with inefficiencies that any paying client would reject:, top-heavy administration of work, block-billing, billing in quarter-hour increments, overstaffing, billing for non-working travel, and more. Some of the more egregious examples include:

- Billing 24 or more hours per day and/or submitting multiple duplicative entries on a single day;
- Staffing six attorneys on the trial, two of whom sat passively in the gallery of the courtroom;
- An over 2-to-1 partner/associate ratio for hours worked on the case;
- Charging $575 per hour for a contract attorney doing document review.

As explained in the Declaration of Premier's fee expert Steven Tasher, a 40% across-the-board percentage reduction to BHO's and Lynch Carpenter's lodestar is warranted to account for these inefficiencies. The total lodestar for Class Counsel should be reduced to $2,406,809. This constitutes approximately 29% of the judgment amount (exclusive of prejudgment interest), which aligns with the Ninth Circuit's 25% benchmark for reasonable fees.

Recognizing a reduction to their lodestar is warranted, Class Counsel make the outrageous suggestion that, if the Court reduces their lodestar for any reason, it should award Class Counsel "a multiplier sufficient to raise the award to the amount requested here." Mot. at 24. The U.S. Supreme Court has rejected multipliers in cases where lodestar is used. *Kenny A.*, 559 U.S. at 554 (lodestar should not be enhanced with a multiplier in all but the most "rare" and "exceptional" cases). There is nothing rare or exceptional about this case that warrants an enhancement to Class Counsel's lodestar. But regardless, this Court has already ruled that Class

Counsel is entitled to fees based on their lodestar—which is *reasonable* hours times *reasonable* hourly rates. Class Counsel cannot manipulate that process by presenting unreasonable hours that get appropriately reduced, and then asking for a multiplier to obtain their initial unreasonable request. That's not how it works: "When a party submits a fee petition, it is not the opening bid in the quest for an award. Rather, it is the duty of the requesting party to make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (citations omitted).

Class Counsel's approach to expenses is equally unreasonable: gourmet meals at four-star restaurants, luxury hotel accommodations, and other extravagances pervade their expenses. Moreover, costs related to the related actions should be apportioned for the reasons stated above. Again, Class Counsel cannot recover costs as if they had prevailed in all the Joint Juice actions, thereby eliminating any risk to them in continuing to litigate those cases.

## RELEVANT PROCEDURAL HISTORY

Class Counsel filed *Mullins v. Premier Nutrition Corp.*, No. 3:13-cv-01271-RS (the "*Mullins* action") on March 21, 2013. The *Mullins* action was based on the identical claim here: that Premier's Joint Juice products were deceptively marketed because they allegedly do not provide the advertised joint health benefits. In July 2017, two months before trial was to commence, Class Counsel moved to amend the complaint to eliminate the claim for damages under the CLRA. *Mullins* Dkt. 174. The Court granted the motion, and Premier moved to dismiss the SAC because the plaintiff had an adequate legal remedy and thus was not entitled to equitable relief. *Mullins* Dkt. 216. The Court granted the motion and dismissed the claims for equitable restitution with prejudice. *Mullins* Dkt. 229. Class Counsel then moved to dismiss the sole remaining claim for injunctive relief on the ground that the plaintiff lacked standing to pursue that claim. *Mullins* Dkt. 241. The Court granted the motion and entered judgment in favor of Premier. *Mullins* Dkt. 247. The Ninth Circuit affirmed. Dkt. No. 302.

The Court's denial of a nationwide class in *Mullins* led Class Counsel to file several other lawsuits against Premier, all based on the same allegations but under different states' laws—the

instant action on behalf of a class of New York consumers. Dkt. 1. Those cases were related and assigned to this Court. Nine of the related cases (including this action) remain pending before this Court.[1] One related action (*Bland v. Premier*) is pending in California state court.

In October 2018, the parties stipulated to share certain fact discovery from *Mullins* to "eliminate duplication and streamline discovery," and agreed the "*Mullins* Discovery shall be treated as produced in the Related Actions as if it was initially requested by Plaintiffs, and responded to and produced by Premier in the Related Actions." Dkt. 35. A similar stipulation was reached in the *Bland* state court case. The stipulations do not apply to expert discovery.

On November 2, 2021, the *Montera* case was set for trial based on Class Counsel's request that it be the first to proceed. While some experts used in *Mullins* were re-used in this action, others were replaced or not designated at all. Moreover, some expert discovery done in *Mullins* was inapplicable, since the *Mullins* expert discovery pertained to a proposed nationwide and California class of consumers, while this action was specific to New York. After a nine-day trial, the jury reached a verdict in favor of Plaintiff on June 7, 2022. Dkt. 268.

On August 26, 2022, Class Counsel filed their initial Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representative under the NY GBL fee-shifting provision. Dkt. 296. Class Counsel request a fee of $6,806,031.96 under a percentage-of-the-fund approach or, alternatively, $6,409,284.75 under the lodestar method. The Court rejected Class Counsel's percent-of-the-fund method and held that lodestar was the proper method to calculate Class Counsel's fee request. However, the Court denied the motion without prejudice because Class Counsel did not provide any time records to support their claimed lodestar, which the Court ruled was "'insufficient' to conduct a fulsome lodestar analysis." Dkt. 320 at p. 7. The Court directed Class Counsel to "refile its motion with contemporaneous time records." *Id*. at p. 7-8. Six months later, Class Counsel filed this renewed motion for fees.

---

[1] *Caiazzo v. Premier Nutrition Corp.*, No. 3:16-cv-06685 (Florida class); *Lux v. Premier Nutrition Corp.*, No. 3:16-cv-06703 (Connecticut class); *Ravinsky v. Premier Nutrition Corp.*, No. 3:16-cv-06704 (Pennsylvania class); *Sandoval v. Premier Nutrition Corp.*, No. 3:16-cv-06708 (uncertified New Mexico class); *Dent v. Premier Nutrition Corp.*, No. 3:16-cv-06721 (Illinois class); *Simmons v. Premier Nutrition Corp.*, No. 3:16-cv-07078 (Michigan class); *Spencer v. Premier Nutrition Corp.*, No. 3:16-cv-07090 (Maryland class); *Schupp v. Premier Nutrition Corp.*, No. 3:17-cv-00054 (Massachusetts class).

# ARGUMENT

## I.   LEGAL STANDARD

The purpose of the lodestar method is to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Kenny A.*, 559 US at 551. Because the lodestar is meant to approximate what a paying client would pay in a comparable case, it is "calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate." *McGrath v. Toys "R" Us, Inc.*, 3 N.Y.3d 421, 430 (N.Y. 2004). Reasonably expended time is generally time that "could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Thus, counsel presenting a fee application under the lodestar method have a duty to make a "good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

Where, as here, the district court is faced with a massive fee application, it has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure "as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citing *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

## II.   CLASS COUNSEL'S LODESTAR IS INFLATED AND REQUIRES SIGNIFICANT REDUCTION

For the reasons below, with the exception of Iredale & Yoo, Class Counsel's proposed lodestar fails to exclude excessive, redundant, and unnecessary time and must be reduced.

### A.   <u>Iredale & Yoo, APC</u>

Iredale & Yoo was lead trial counsel and staffed two attorneys on this case: Mr. Iredale, a partner, and Ms. Jun, an associate, who were the first and second chair attorneys at trial, respectively. Together Mr. Iredale and Ms. Jun handled opening statement, closing argument and rebuttal, and examination of 10 of the 12 witnesses who testified at trial.

Upon review of Iredale & Yoo's billing records, Premier finds them to be generally reasonable. The hourly rates for Mr. Iredale and Ms. Jun are commensurate with industry

standards and fitting for the tasks they performed. The level of staffing and balance between partner and associate time was appropriate. The tasks Mr. Iredale and Ms. Jun performed are well documented in their billing records. The amount of time spent on trial preparation and trial-related tasks, while somewhat excessive, were within the bounds of reason. *See* Tasher Decl. ¶ 16. Accordingly, Premier does not dispute the $598,210 lodestar figure for Iredale & Yoo.

### B.    Blood Hurst & O'Reardon, LLP

In contrast to the lodestar figure presented by the Iredale & Yoo firm, BHO's lodestar is grossly inflated and fails to reflect the type of "billing judgment" required of firms seeking fees based on a lodestar method. *See* Tasher Decl. ¶¶ 13-16.

#### 1.    Non-Compensable Time in BHO's Lodestar

##### a.    Depositions of Class Representatives in Related Cases

Plaintiff's counsel cannot include in their lodestar time spent on depositions of class representatives in the related cases. Before trial, the Court held the testimony of those class representatives is irrelevant to this case. Dkt No. 214 at p. 3 ("Testimony from purchasers from various other states is not relevant, and the class representatives from other Joint Juice lawsuits are therefore excluded."). And the "prevailing party" status of those plaintiffs has not been adjudicated. BHO has not even attempted to explain why those hours should be included in their lodestar for this case. BHO's records indicate that Paula Brown billed 83.25 hours relating to preparing for and defending class representative depositions (excluding time spent on Mr. Fishon's deposition, the original class representative in this case), for a total lodestar amount of $54,945.00. Swaney Decl. ¶ 3. That amount should be subtracted from BHO's lodestar.

##### b.    Trial Preparation for the *Mullins* Action

In its first fee application, BHO stated that, as an exercise of billing judgment, time spent preparing for trial in the *Mullins* action was excluded from their lodestar. *See* O'Reardon Decl. ¶ 73 (quoting Blood Decl. (Dkt. 296-1) at ¶ 61). As the Court knows, the *Mullins* trial never occurred due to Plaintiff's strategic decision to dismiss her damages claim and then (after the Court dismissed her claims for equitable restitution) to dismiss her claim for injunctive relief. Therefore, as BHO recognized, fees incurred preparing for that trial are not recoverable here.

-6-

Now, however, BHO's lodestar includes nearly 1,000 hours—and over $500,000 in fees—relating to preparation for the *Mullins* trial. *See* Dkt. 328-3 at pp. 58-76. But BHO offers no explanation why time spent preparing for the *Mullins* trial should be included in their lodestar for this case. The *ispe dixit* assertion (repeated throughout BHO's fee application) that the work "benefitted this litigation" is insufficient to carry their burden to establish these fees are reasonably recoverable here—particularly given this is the exact opposite of the position they took in their first fee application six month ago. *See* O'Reardon Decl. ¶ 74.

Indeed, there is no way BHO could have reasonably concluded that this time benefitted the *Montera* case. BHO seeks to include dozens of block-billed entries with canned narratives merely stating "trial preparation," and they offer no explanation how they could determine from that description that those hours somehow benefited *Montera*. *See, e.g.*, Dkt. 328-3 at p. 59 (O'Reardon entry 6/26/17 for 5.75 hours with description "trial Preparation [sic] and expert disco prep"); *id*. at p. 64 (Brown entry 7/25/17 for 10.25 hours with description "trial Preparation" [sic]). They also seek compensation for their own internal meetings regarding *Mullins* trial preparation—including, for example, a total of 36 hours and $25,000 in fees on August 1, 2017, for Mr. Blood, Mr. O'Reardon, Ms. Brown, and Mr. Straub to meet about "trial strategy." *Id.* at pp. 65-66. Perhaps most tellingly, BHO's billing records also contain approximately 1,000 hours preparing for the *Montera* trial (which is in addition to trial preparation time spent by lead trial counsel, Iredale & Yoo). It strains credibility to the breaking point for BHO to contend that the 1,000 hours they spent five years ago preparing for a different trial "benefitted" the *Montera* case, when they subsequently spent an equal amount of time preparing for the trial of *Montera*.

Put simply, *Mullins* was a different case involving different law, the case never went to trial, and the plaintiff in that case was not the prevailing party. Class Counsel comes nowhere close to meeting their burden to establish that time they spent preparing for the *Mullins* trial contributed to *this* case. *See Nasiri v. T.A.G. Security Protective Services Inc.*, 2021 WL 4226207 (N.D. Cal. Sept. 16, 2021) (fees for work that did not contribute to the success at trial are not recoverable). BHO's trial preparation in *Mullins*, totaling $528,627.50 in fees, should be excluded from BHO's lodestar in this case. Swaney Decl. ¶ 4.

PREMIER'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES
Case No. 3:16-cv-06980

After excluding the time spent on depositions of class representatives in the related cases and trial preparation in *Mullins*, BHO's lodestar should be reduced to $5,627,317.50.

### C.    Apportionment of Time Relating to *Mullins* and Related Actions

As Premier acknowledged in its opposition to Plaintiff's initial fee motion, it is reasonable that Class Counsel include in their lodestar *some* of the time worked in connection with the *Mullins* action based on overlapping fact discovery with case. Yet (even excluding the trial preparation time discussed above) BHO's lodestar includes an *enormous* amount of time spent on the original *Mullins* action—the application contains approximately 3,700 hours and $2.3 million in fees for work done before April 17, 2018, when judgment was entered for Premier. For several reasons, BHO should not recover 100% for its work on the *Mullins* action.

First, *Mullins* was a different case that involved different laws and a different class. For example, the summary judgment motion litigated in that case involved questions of California law that had no bearing on the New York law issues raised in this action. The same is true with respect to the motion for class certification in *Mullins*—the Rule 23 analysis in that case was heavily dependent on the specific California law claims at issue. Arguably BHO should not receive fees for *any* of the time spent on summary judgment and class certification in *Mullins*—but at a minimum, it is unreasonable that they receive 100% of their fees for that work.

Second, to the extent some of the discovery conducted in *Mullins* was also relevant to and used in the trial of this case, that discovery is also relevant to ten other related cases (including *Mullins* itself). It is therefore unreasonable for Plaintiff's counsel to receive 100% compensation based on the outcome of just one of those 11 cases. Only one of those plaintiffs, Ms. Montera, is a prevailing party; the other 10 either have not yet been adjudicated as prevailing plaintiffs or, for the *Mullins* plaintiff, was *not* the prevailing party. Awarding BHO 100% of its fees for that work would represent an unfair and improper allocation of the risk relating to the pending related cases—*i.e.*, BHO would face very little risk if they do not prevail in those cases, as Premier would have already paid the lion's share of their fees.

Based on the foregoing, it is both reasonable—and legally correct—to apportion fees for relevant work done in *Mullins* across the 11 related actions. One court in this Circuit recently

adopted this approach—and roundly rejected an attempt like BHO's to recover 100% of fees for work that was common to many related cases. *See In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 2021 WL 3163799, at *1 (C.D. Cal. July 22, 2021). *In re Ford* involved an MDL in which the plaintiffs asserted various claims, including violations of California's Song-Beverly Consumer Warranty Act. Lead Counsel "engaged in substantial work on behalf of the plaintiffs, including coordinating among the plaintiffs and conducting what is understood as common discovery purportedly relevant to most if not all cases in the MDL," including deposition of Ford witnesses and "extensive corporate-level documentary discovery." *Id*. at *1-3. When plaintiffs in two of the MDL cases succeeded, Lead Counsel invoked Song-Beverly's fee-shifting provision "to recover directly from Ford . . . all of the fees it incurred for all common work [they] performed for the entire MDL," totaling $1,258,507.25. *Id*. at *2. The court rejected that request because "Lead Counsel's total fees were not 'reasonably incurred' in connection with those two cases alone, but instead were incurred for all of the MDL plaintiffs." *Id*. The court found plaintiffs' counsel's request to recover all MDL-related fees based on just two successful cases to be "untenable," "incoherent," and "unworkable":

> Lead Counsel presents no principled reason for why they should get the benefit of Song-Beverly's fee shifting award to prevailing plaintiffs, while not having to deduct to account for non-prevailing plaintiffs. That Lead Counsel's work was for the MDL plaintiffs as a whole and therefore not for any particular case does not also mean that all of those fees can be attributed solely to the subset of cases in which plaintiffs arguably prevailed. Lead Counsel cannot have it both ways: Lead Counsel cannot premise its fee request on [Song-Beverly's] fee shifting in favor of prevailing plaintiffs, while disregarding those cases in which plaintiffs did not prevail.

*Id*. at *4.

The court therefore apportioned the work among the active cases in the MDL that "have been actively litigated" and "are proceeding toward bellwether trials." *See id.* After deducting certain hours and reducing counsel's hourly rates, the court apportioned the remaining total fees among the 30 related cases, "resulting in a fee of $29,933.10 per case," and awarded Lead Counsel $59,866.20 in fees (two times the per-case amount). *Id*.; *accord Survivor Prods., Inc. v. Owens*, 2016 WL 3647967, at *2 (D. Or. July 6, 2016) (approving plaintiff's lodestar because

billing records showed counsel "appropriately apportions time spent on multiple similar cases to avoid duplicative and excessive billing"); *McNamara v. Infusion Software, Inc.*, 2020 WL 4921984, at \*5 (D. Ariz. Aug. 21, 2020) (declining to reduce plaintiffs' counsel's fees because "when tasks were performed that would benefit multiple cases, that time was apportioned among the various matters" by plaintiffs' counsel).

The Court should take the same approach here. This case involves one prevailing Plaintiff, Ms. Montera (and the New York Class she represented), out of 11 related cases that Class Counsel brought against Premier. To the extent BHO performed work in the related cases that contributed to Ms. Montera's success, it "cannot premise its fee request on [the NY GBL's] fee shifting in favor of prevailing plaintiffs, while disregarding those cases in which plaintiffs did not prevail" (or have not yet prevailed). *In re Ford*, 2021 WL 3163799, at \*4. Thus, work done before November 2, 2021, the date the Court indicated *Montera* would be the first of the related cases to be tried, should be apportioned evenly among the 11 related cases. This is a reasonable approach, because very little work was done exclusively on *Montera* before that date, and work done after that date was mostly related to the *Montera* case. To be sure, this approach still overcompensates BHO, as much of the work on *Mullins* did not contribute **at all** the verdict in this case. But it would be untenable for the Court and its staff to parse through hundreds of pages of time entries to determine which related to work that contributed to the outcome in this case and which did not. Accordingly, rather than excluding hours specific to *Mullins* and allocating the rest, Premier proposes that—after deducting the non-compensable time identified above— BHO recover one-eleventh of the hours for work done before *Montera* was set for trial.

After removing non-compensable tasks and allocating work before November 2, 2021, the "per case" lodestar for the related actions is $264,772.15. Swaney Decl. ¶ 8. When added to BHO's time after November 2, their lodestar for the *Montera* action is $2,979,595.90. *Id.*

### 1.    Forty Percent Reduction to Remaining Lodestar

The Court should reduce BHO's lodestar for this case by 40% to account for several deficiencies in their billing practices. This approach is common in cases where counsel's lodestar is based on voluminous billing records that would be impractical to analyze line-by-line. *See*

*Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) ("[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application.").

Here, for the reasons that follow and as explained in greater detail by Mr. Tasher in his Expert Declaration, the case law supports a 40% reduction in BHO's requested lodestar. Tasher Decl. ¶¶ 134-35. *See Yea Kim v. 167 Nail Plaza, Inc.*, 2009 WL 77876, at *6 (S.D.N.Y. Jan. 12, 2009) (reducing counsel's hours by 40% due to excessive staffing and overbilling); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *8 (S.D.N.Y. July 2, 2013) (reducing fee award by 75% for excessive billing); *In re Met. Life Derivative Litig.*, 935 F. Supp. 286, 298 n.16 (S.D.N.Y. 1996) (40% reduction to account for inefficiencies and duplication that resulted from the involvement of two more law firms); *Medina v. Donaldson*, 2015 WL 77430, at *17 (E.D.N.Y. Jan. 6, 2015) (reducing legal hours billed by 55% due to overbilling) (collecting cases); *MPD Accessories, B.V. v. Urban Outfitters, Inc.*, 2013 WL 5761421, at *9 (S.D.N.Y. Oct. 24, 2013) (reducing applicant's hours by 50% because of excessive billing).

### a.    Hourly Rates

With respect to BHO's hourly rates, although they appear reasonable on their face, there are at least two issues that warrant an across-the-board reduction of the lodestar amount.

First, BHO seeks to bill *all* time spent on this matter, for *all* timekeepers, at their current hourly rates. Charging at current rates for past work is not reasonable where, as here, the amount of past work is voluminous. *See Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1279-80 (N.D. Cal. 2014) (Seeborg, J.) ("[I]n a case where more than 1,250 hours were expended by these two attorneys over nearly five years, adjusting fees based on current rates has a significant impact on the overall award. Under these circumstances, awarding all fees at counsel's current rates would cause an inordinate and unwarranted increase in the overall fee award."). Indeed, Mr. Blood and Mr. O'Reardon are seeking compensation for work done in 2013 at their 2023 hourly rates of $960 and $710, respectively. Previous filings in other cases show that, in 2013, their rates were

-11-

significantly lower. *See, e.g., Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *17 (C.D. Cal. Apr. 29, 2014) (listing Mr. Blood's hourly rate as $695 and Mr. O'Reardon's as $510); *Manner v. Gucci Am., Inc.*, 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016) (listing Mr. Blood's claimed hourly rate as $810 and Mr. O'Reardon's as $560).

More problematic is the application of currently hourly rates for Craig Straub. In 2017, BHO indicate in a fee petition that Mr. Straub was a "Contract Attorney." Tasher Decl. ¶ 101(a). But now BHO seeks to compensation for that work at a senior-associate rate. Indeed, Mr. Straub's time alone accounts for 27% of BHO's lodestar. Nothing illustrates this point more starkly than Mr. Straub's time spent on document review. Courts recognize that "there is little excuse in this day and age for delegating document review (particularly primary review or first pass review) to anyone other than extremely low-cost, low-overhead temporary employees (read, contract attorneys)—and there is absolutely no excuse for paying those temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes. *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *18 (S.D.N.Y. May 9, 2013). But that is exactly what BHO is attempting to do.

BHO argues the Court should not "substitute its own judgment for that of [Class] Counsel on whether associates—as opposed to contract attorneys or paralegals—should have reviewed documents." Dkt. 311 at p. 16. First, the Court's task is to determine whether the hours expended and rates charged are objectively reasonable, which necessarily involves determining whether Class Counsel exercised reasonable "billing judgment." *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015) ("On a fee-shifting application [] the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending. The test is whether the plaintiff 'spen[t] the minimum necessary to litigate the case effectively.'"). But regardless, *BHO already made the judgment that having a contract attorney review documents was appropriate*. The problem is that BHO is asking the Court to make Premier pay for document review by a contract attorney at senior associate hourly rates—more than *ten times* the market rate that courts in this Circuit and around the country have stated are reasonable for this type of work. Charging $575 for Mr. Straub's time is unreasonable

-12-

based on the type of work he performed—which was contract attorney work, done by a contract attorney. This warrants an across-the-board reduction to BHO's lodestar.

### b. Block Billing and Vague Time Narratives

All of BHO's time entries are "block billed." Compounding that problem is that many narratives are vague and and/or hopelessly overbroad, making it impossible to assess whether the time spent on a particular task was reasonable. *See* Tasher Decl. ¶¶ 108, 116. Courts routinely apply across-the-board reductions for vague and/or block-billed records. *See, e.g.*, *Benihana Inc. v. Benihana of Tokyo, LLC*, 2017 WL 6551198 (S.D.N.Y. Dec. 22, 2017) ("[I]n seeking a fee award, [counsel] is obliged to be punctilious in accounting for its time. The block-billing deficiencies that the Court has found in [plaintiff's counsel's] timekeeping records require reductions to [counsel's] compensable hours.").

Here, BHO has block-billed travel time entries that total over $580,0000—a whopping ***9% of the total BHO lodestar***. Tasher Decl. ¶¶ 112, 113. It is black-letter law that non-working travel time "is not billable toward the lodestar." *Grace v. Apple, Inc.*, 2021 WL 1222193, at *4 (N.D. Cal. Mar. 31, 2021); *see also GemCap Lending I, LLC v. Unity Bank Minnesota*, 2019 WL 3842010, at *4 (N.D. Cal. Aug. 15, 2019) (absent an affirmative showing that counsel "performed work for his client during any portion of his travel . . . the Court will not assume that counsel is entitled to recover for travel time."). But based on BHO's block-billed entries, there is no way to distinguish unproductive travel time from travel time spent performing work for their client. *See Barfield v. N.Y. Health & Hosps. Corp.*, 537 F.3d 132, 139 (2d Cir. 2008) (50% reduction for travel time is "established court custom"). *U.S. ex rel. Coughlin v. Int'l Bus. Machines Corp.*, 992 F. Supp. 137 (N.D.N.Y. 1998) (For purposes of determining attorney fees under lodestar method, "requested rates for travel time are reduced when the court finds that time spent during travel is unproductive and demands lower rate.")

Tim Blood and Paula Brown's time entries leading up to trial further illustrate the problems created by vague, block-billed narratives. Both have several entries with the same vague narrative description: "trial preparation." *See* Dkt. 328-3 at pp. 152-164; *see Preston Exploration Co. v. GSP, LLC*, 2013 WL 3229678, at *7 (S.D. Tex. June 25, 2013) ("While the

-13-

court is aware that substantial time is needed to prepare for trial, it believes the description 'trial preparation' is too vague."). Similarly, for every day of the trial, Mr. Blood billed between 10.75 and 13.5 hours with the same narrative: "trial and trial preparation." Given that the Court's trial day was five hours (8:30 a.m. to 1:30 p.m.), that leaves between five and eight hours every day that Mr. Blood vaguely attributes to "trial preparation." But Mr. Blood only conducted one direct and one cross-examination during the entire trial. There is simply no way to know if these additional "trial preparation" hours were reasonably necessary, duplicative of work done by others, appropriate for Mr. Blood's level of seniority, or excessive. *See H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (reducing hours for vague entries such as "legal research," and "trial prep");

### c.    Billing in Quarter Hour Increments

BHO's attorneys billed in quarter-hour increments. This is not standard practice in the legal community, and it obviously overstates the amount of time BHO actually worked on this case—particularly given the nine years of billing records BHO submits. See Tasher Decl. ¶¶ 118-119. For these reasons, courts impose across-the-board reductions for billing in quarter-hour increments. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948-49 (9th Cir. 2007) ("The district court reasonably concluded that [plaintiff's counsel's] practice of billing by the quarter-hour resulted in a request for excessive hours. . . . We therefore affirm the district court's [20%] reduction for quarter-hour billing."); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Dem. Repub.*, 2012 WL 5816878, at *4 (S.D.N.Y. Nov. 14, 2012) (applying 30% reduction to lodestar based in part on billing in 15-minute increments, because "[b]illing in 15-minute increments 'adds an upward bias in virtually all cases' and therefore 'justifies some further conservatism in calculating the amount of compensable time'") (quoting *Lucky Brand Dungarees, Inc. v. Ally Apparel Res.*, 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009)).

### d.    Overstaffing and Duplicative Hours

Another factor supporting an across-the-board reduction in BHO's lodestar is significant overstaffing throughout the case—which leads to duplication and waste. Courts recognize that "overstaffing cases inefficiently is common, and district courts are therefore encouraged to

-14-

scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 858 (7th Cir. 2009); *see also Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.").

As a starting point, Class Counsel had three firms, with a total of 19 timekeepers, who are seeking to recover fees in this case. *See* Tasher Decl. ¶ 52. "While it is not uncommon to have co-counsel in litigation . . . counsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts engendered by multiple counsel and law firms." *Stonebrae L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *12 (N.D. Cal. Apr. 7, 2011). Here, as explained in detail by Mr. Tasher, the presence of multiple firms as co-counsel to BHO "did not mean *more efficient or less work* for BHO. To the contrary, it meant that BHO was also doing, to some degree, the *same work* as the other firms." Tasher Decl. ¶ 55. One example of this is the deposition of Lance Palumbo. Mr. Carpenter took the deposition and billed over 150 hours to that task (itself excessive and unreasonable). But two attorneys at BHO also billed well over 100 hours to the same deposition. Tasher Decl. ¶ 58(a). Having two firms collectively bill over 250 hours for one deposition illustrates how overstaffing leads to excessive hours and unreasonable expenses.

But the most glaring example of BHO's overstaffing is the trial. Having handled the entire litigation up to trial, BHO made a tactical decision to bring in a new firm to be lead trial counsel. This was a reasonable strategy. It was unreasonable, however, for BHO nevertheless to staff the trial as if it were lead counsel.

First, four BHO attorneys (Mr. Blood, Mr. O'Reardon, Ms. Brown, and Mr. Straub) billed 1,000 hours to "trial preparation." But only one of those BHO attorneys, Mr. Blood, had any role in the trial itself—and his role was limited to third-chair duties. For BHO to have expended 1,000 hours of preparation time, in addition to the time spent by lead trial counsel, is excessive for a firm with a third-chair role at the trial.

Second, three BHO attorneys (Mr. Blood, Mr. O'Reardon, and Mr. Straub) attended every day of the trial. Again, only Mr. Blood had any role in the trial itself; Mr. O'Reardon and

PREMIER'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES
Case No. 3:16-cv-06980

Mr. Straub sat passively in the gallery. Thus, with the addition of Mr. Iredale and Ms. Jun, Plaintiff had *five* attorneys present in the courtroom for every hour of the trial proceedings, collectively billing $3,795 per hour. This is unreasonable and would never be approved by a paying client. *See, e.g.*, *Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017) (reducing lodestar where "it simply was not necessary for [counsel] to have five attorneys and several clerks attend the trial"); *Sughayyer v. City of Chicago*, 2012 WL 2359065, at *6-7 (N.D. Ill. June 20, 2012) (excluding from lodestar calculation hours billed by attorneys who attended trial every day but did not examine any witnesses or present argument to the jury); *Yea Kim*, 2009 WL 77876, at *5 (reducing lodestar where "as many as five of plaintiff's attorneys (and one paralegal) were in the courtroom for trial [and] [n]othing in the plaintiff's application explains why plaintiff needed to have such a large number of attorneys" attend trial); *Craig v. Cty. of Orange*, 2019 WL 12378994, at *4 (C.D. Cal. Sept. 5, 2019) ("A fee-paying client would be unlikely to pay for three attorneys to attend trial, particularly when one or two would have sufficed.").

Third, the time the four BHO attorneys billed during the trial itself was excessive and wasteful. Mr. Straub is stark example. In addition to sitting in the courtroom to "take notes" for five hours, Mr. Straub billed an additional 6-7 hours every day of trial to attend meetings and prepare binders for trial counsel. Swaney Decl. ¶ 6. No paying client would agree to pay $90,275 (Mr. Straub's billable time for the two-week trial) for a senior attorney to take notes, attend meetings, and put together binders.

Like Mr. Straub, Mr. O'Reardon billed 6-7 additional hours after he left the courtroom every day of the trial. Swaney Decl. ¶ 7. Even from Mr. O'Reardon's vague and block-billed descriptions, it is evident that much of this work was needlessly duplicative. For example, Mr. O'Reardon billed over 20 hours to "preparing" Plaintiff's closing argument. Ms. Jun also billed 44 hours to preparing an outline for Plaintiff's closing argument. And Mr. Iredale—who actually delivered the closing argument—himself billed 32 hours in preparation for closing arguments. Mr. O'Reardon's time "preparing" for closing arguments was obviously cumulative. *See id.*

Plaintiff's motion makes no attempt to explain why it was necessary to have *six* attorneys actively working on the trial of this case—five of whom were billing every waking moment for

-16-

nearly a month.[2] The lack of explanation is not surprising, because it was not reasonable to overstaff the trial with six attorneys. Swaney Decl. ¶ 5 (Premier had only three attorneys billing during trial); *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) ("If the time claimed by the prevailing party is of a substantially greater magnitude than what the other side spent, that often indicates that too much time is claimed.").

### e.    Duplicative and Erroneous Time Entries

Premier has located several time entries in BHO's billing records that exceed 24 hours in a day and/or are obvious duplicates. For example, on May 19, 2022, Mr. Blood has four separate time entries for a total of 27 hours. Dkt. 328-3 at p. 163. Then on May 25, 2022, Mr. Blood billed total of 24 hours in a day. *Id*. at p. 165. On March 2, 2022, Mr. Straub has two identical entries for 9 hours. *Id*. at p. 141. On April 28, 2016, Ms. MacPherson has two entries for 6.5 hours with identical narratives. *Id*. at p. 43.

Even giving BHO the benefit of the doubt that these are simply mistakes, these entries starkly demonstrate the absurdity of BHO's position that no reduction to their lodestar is warranted because there "was no overbilling or overstaffing, and certainly not to a degree that would matter." Dkt. 311 at p. 11. Obviously there was overbilling. And more importantly, as Mr. Tasher aptly opines, "overbilling always matters." Tasher Decl. ¶ 41. The total fees for the above entries alone amount to $67,207.50—as much as (or more than) many Americans earn in a year. Swaney Decl. ¶ 2. This is precisely why the Supreme Court requires that counsel petitioning for fees under a fee-shifting statute make a "good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. BHO does not even represent that they made such an effort here—and, in fact, they stridently claim that *none* of their time should be excluded or reduced. Obviously, an across-the-board reduction for an overall lack of "billing judgment" is warranted. *See* Tasher Decl. ¶¶ 13-16, 135(d).

---

[2] Ms. Brown was not present in the courtroom but billed up to 12 hours per day on various tasks during trial, including preparing six mid-trial motions *in limine*, all but one of which was denied.

PREMIER'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES
Case No. 3:16-cv-06980

**f.       Top-Heavy Administration of Work**

BHO's billing records reveal another problem: the majority of work was done by senior attorneys and partners. Collectively, 58% of the hours (and 67% of the fees sought) were performed by partners, with only 31.5% of hours and 26.8% of fees) having been performed by firm Associates. *See* Tasher Decl. ¶ 84. *See Beastie Boys*, 112 F. Supp. 3d at 53 (a 2.5/1 partner to associate ratio warranted "a material reduction in the requested fee award . . . to reflect the unusually partner-intensive nature of [fees requested]"); *Does v. District of Columbia*, 448 F. Supp. 2d 137, 144 (D.D.C. 2006) (cutting lodestar 50% due to a 1.15/1 partner associate ratio); *Pig Newton, Inc. v. Bd. of Dirs. of the Motion Picture Indus. Pension Plan*, 2016 WL 796840, at *7 (S.D.N.Y. Feb. 24, 2016) (reducing lodestar where "the division of labor was at times unreasonable, with multiple partners involved in the same task and, perhaps more troubling, partners performing work better assigned to associates or paralegals").

BHO claims that as a small firm it does not have associates to whom work may be allocated. This argument is contrary both to common sense and the applicable legal authorities. Merely because a smaller firm has fewer associates does not make it objectively reasonable— from the perspective of a paying client—to pay a partner to perform associate or paralegal tasks: "the value [to a client] is not of the timekeeper performing the work, but the work itself." Tasher Decl. ¶ 79. Moreover, BHO claims its attorneys should be paid hourly rates on par with big firms like Venable and Morrison & Foerster. *See id.* ¶ 82. But "big firms" have associates who work on associate-level tasks, and "big-firm" clients will not pay partners to do associate work. BHO cannot demand "big firms" hourly rates but claim that, as a "small firm," it lacks sufficient staffing to have associates to perform associate-level tasks. Indeed, Class Counsel has unsuccessfully tried to make this same argument before. *See id.* ¶ 93.

**g.       Fees on Fees**

BHO also requests over $200,000 in fees for filing their rejected initial fee motion. Tasher Decl. ¶ 58(d). Although in some circumstances an award recovering of fees incurred in litigating recovery of fee ("fees on fees") may be appropriate, courts "do not uniformly award or deny applications seeking 'fees on fees.'" *Best Payphones, Inc. v. Dobrin*, 2017 WL 11456613,

-18-

at *4 (E.D.N.Y. June 27, 2017) (collecting cases). For obvious reasons, courts "must 'scrutinize' fees on fees petitions" to ensure they do not provide a "windfall" to petitioning counsel who could use it as a way to run up their lodestar. *Brennan Ctr. for Just. v. Dep't of Homeland Sec.*, 2019 WL 280954, at *5 (D.D.C. Jan. 22, 2019).

Here, BHO's time for "fees on fees" is excessive and warrants a reduction. First, BHO seeks over $200,000 in connection with their initial fee motion. This amount is excessive on its face. *See Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012) ("An inflated request for a 'fees-on-fees' award may be reduced to an amount deemed reasonable by the awarding court."); *Warren v. James C. Bender & Assoc.,* 2014 WL 6792060 at *1 (S.D.N.Y. Dec. 3, 2014) (declining to award fees on fees where application was "too greedy'"). Second, BHO's initial fee petition—in which they asked for a fee under the "percentage of the fund" method—was denied in large part. Dkt. 320. Third, BHO needlessly prolonged this process by unreasonably refusing to submit its billing records with its initial motion, thereby imposing significant additional burden and expense on both the Court and Premier. Under these circumstances, an across-the-board reduction to the "fees-on-fees" request is warranted. *Dagostino v. Computer Credit, Inc.*, 238 F. Supp. 3d 404, 418 (E.D.N.Y. 2017) (applying 50% reduction to fees on fees request due to unnecessary work); *Rosado v. City of New York*, 2012 WL 955510, at *6 (S.D.N.Y. Mar 15, 2012) (reducing fees on fees request because submission could have been streamlined).

### h.  Limited Success

Although Class Counsel obtained a judgment for the Class, the recovery was *far* less than they sought. *See* Mot. for Entry of Judgment, Dkt. 273 (requesting judgment of $140,023,765, an amount the Court ultimately held was unconstitutional). Premier recognizes that Plaintiff prevailed at trial and obtained a significant monetary judgment for the Class. But the authorities are clear that the Court should factor into its analysis that the ultimate recovery was significantly less than what was sought. *See Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992) (where plaintiffs "received nominal damages instead of the $17 million in compensatory damages that they sought," counsel's fee request should be reduced accordingly).

**2.      No Multiplier Is Warranted**

BHO's request that, if the Court reduces their lodestar at all, it should apply a multiplier to bring their total fee award up to $6.2 million is flatly contrary to controlling law and absolutely unwarranted here. In cases such as this, where fees are being shifted by statute and the prevailing attorneys are to be paid using the lodestar method, a multiplier is inappropriate in all but the most "rare" and "exceptional" cases. *See Kenny A.*, 559 U.S. at 546. Moreover, BHO attempts to justify this request by recounting the *Johnson* factors, which are already encompassed by their lodestar—an approach the Supreme Court has repeatedly rejected. *Id*. at 550-51 ("This method [the *Johnson* factors] 'gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.") (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, (1986)); *see also Wade v. Colaner*, 2020 WL 5479625, *9 (D.N.J. Dec. 28, 2010) ("[T]he *Johnson* factors were developed by the Fifth Circuit for purposes of calculating a fee award, not fee enhancements"); *Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, 2023 WL 112429, at *10-11 (S.D.N.Y. Jan. 5, 2023) (in lodestar cases a multiplier is warranted only in "extraordinary circumstances" and cannot be based on "[f]actors that have already been subsumed in the lodestar calculation.").

BHO argues that "time and labor," "skill," "experience, reputation and ability," "novelty and complexity," and the contingent nature of the representation warrant a multiplier. Dkt. 328 at pp. 16-19. All of these have been resoundingly and repeatedly rejected as a basis for enhancing lodestar. *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) ("[B]ecause the time and labor spent by class counsel were 'subsumed' within this lodestar figure, they could not justify an upward multiplier."); *Blum v. Stenson*, 465 U.S. 886, 898–99, (1984) ("The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates."); *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) ("We hold that enhancement for contingency is not permitted under the fee-shifting statutes at issue").

-20-

More fundamentally, BHO's multiplier request is—at its core—a demand that the Court award them an unreasonable fee. That is, they ask for $6.2 million not because it is the product of reasonable hours spent litigating the *Montera* case to judgment, but because they have decided, in their own self-serving and subjective judgment, they "deserve" that amount—even if it is unreasonable. This is improper. Indeed, as Mr. Tasher explains, it is virtually unheard of for counsel to take the position that the reasonableness of their lodestar is irrelevant, and they should be awarded an unreasonable fee using a multiplier. Tasher Decl. ¶ 42. Simply put, it would be unprecedented for the Court to hold that fees will be awarded using the lodestar method, reduce Class Counsel's lodestar based on unreasonable and excessive billing (as it must in this case, for the reasons explained above), but then give Class Counsel a multiplier to bring the award up to their unreasonable request.

After a 40% reduction, BHO's lodestar in this case is $1,787,757.54.

### D.    Lynch Carpenter, LLP

The Lynch Carpenter firm seeks $392,392.50 in fees for its work—effectively all of which was spent on the *Mullins* action. Lynch Carpenter's fees should be apportioned among the 11 related cases, and then reduced by 40% due to partner-heavy and excessive time.

As an initial matter, in what can only be described as a shocking act of chutzpah, Mr. Carpenter—who had not worked on these cases since 2020—includes in his fee petition 13.7 hours to fly to San Francisco to observe one day of trial on May 25, 2022. Mr. Carpenter's desire to observe the trial proceedings may be understandable, but it is unreasonable for Premier to pay him over $10,000 to do so when his presence in the back of the courtroom for one day obviously did not contribute to the outcome. The Court should subtract $10,275 from the lodestar.

For the reasons stated above, the remaining work of Lynch Carpenter was spent on discovery in the *Mullins* case. Accordingly, it should be apportioned among the 11 related cases. This reduces Lynch Carpenter's lodestar to $34,737.95.

As explained more fully in the Tasher Declaration, that amount should be further reduced by 40% for top-heavy administration of work and excessive hours. For example, Mr. Carpenter claims to have spent 87.5 hours (generating fees of $65,625) on the deposition of Katrina Taft—

-21-

an ancillary witness who did not testify at trial, and whose deposition lasted less than three hours. Tasher Decl. ¶ 90(b). Most of Mr. Carpenter's narratives for this task are identical: "evaluated document production and identified relevant documents for Taft deposition," a task more suited to an associate than a senior partner. Moreover, Mr. Carpenter's time entries for this task are baffling. He has four separate billing entries on 6/4/14, totaling 13.4 hours, all with the same canned narrative described above. No paying client would accept a bill like this—much less pay a senior partner $65,000 to prepare for and take a three-hour deposition of an inconsequential witness.

After appropriate reduction, Carpenter Lynch's lodestar is $20,842.77.

## III. PLAINTIFF'S REQUESTED EXPENSES ARE UNREASONABLE

As explained in greater detail in the Tasher and Swaney Declarations, the expenses requested by Class Counsel are excessive and require significant reduction.

### A. Plaintiff Cannot Recover Expenses for *Mullins*-Specific Expert Discovery

Class Counsel seeks to recover fees and deposition costs for several experts who were not used or disclosed in the *Montera* action: Dr. Graboff, Dr. Silbert, Dr. Willis, and Mr. Keegan. There is no basis for Plaintiff to recover costs associated with experts who had nothing to do with her case. Similarly, Class Counsel seeks to recover costs associated with experts Colin Weir and Hal Poret in connection with the *Mullins* action. Although those experts did provide opinions in *Montera*, their opinions were entirely new and based on new and different work specific to the New York class. There is no basis for Plaintiff to recover costs relating to those experts' opinions in *Mullins*. *See* Swaney Decl. ¶¶ 9-11.

### B. Plaintiff's Remaining Experts' Fees Should Be Substantially Reduced

Like attorneys' fees, expert fees must be "reasonable." *See*, *e.g.*, *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 2016 WL 5341247, at *5 n.6 (E.D. Cal. Sept. 21, 2016) ("Though the courts have not developed case law on expert fees as thoroughly as they have for attorney fee calculations, the statutory standard is the same for both. Both awards must be 'reasonable' when the court determines they are 'appropriate.'"). Many of Plaintiffs' experts' fee records suffer from the same problems as Class Counsel's over-billing and insufficient time

records. For example, the minimum time increment used by Plaintiff's expert Timothy McAlindon appears to be 0.5 hours (though the vast majority of his invoices are rounded to the full hour). *See, e.g.*, Dkt. 328-8 at pp. 41-44. McAlindon's "invoices" frequently provide no description whatsoever of how he spent those hours-long intervals, making it impossible to assess whether his fees were reasonable. McAlindon himself questioned the reasonableness of his fees, repeatedly asking Class Counsel: "seem reasonable?" *See id.* at pp. 42, 44.

Other records Class Counsel submitted in connection with their expert fee requests do not add up. For example, Class Counsel seek $73,691.80 for Weir's fees, but provided only one $5,000 invoice for Weir dated 2017. Similarly, Class Counsel provided only $28,673.50 of invoices for Graboff (while seeking $40,612.50 in fees), and only $37,655.00 in invoices for Silbert (while seeking $58,592.50 in fees). Thus, even if the court is inclined to award any of Plaintiffs' experts' fees, they should be substantially reduced.

### C. Plaintiff Should Not Recover Deposition Costs for Class Representatives Other Than Montera and Fishon

Plaintiff further seeks to recover costs for the depositions of class representatives in the related pending actions, even though those depositions were not obtained for use in this case and are irrelevant to his action. Because these class representatives were deposed in connection with their own respective cases, not this action, Plaintiff cannot recover costs for these depositions.

### D. Plaintiff's Extravagant Expenses Should Be Reduced

Class Counsel's extravagant expenses—including luxury hotel accommodations and gourmet dinners—warrant an across-the-board reduction in their claimed expenses. Courts uniformly disallow such lavish lifestyle expenses that would never be reimbursable from paying clients. *NAACP v. E. Ramapo Cent. Sch. Dist.,* 2020 WL 7706783, at *11 (S.D.N.Y. Dec. 29, 2020) ("[W]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist their extravagances upon their unsuccessful adversaries.")

For example, Class Counsel's receipts confirm that they opted to stay at luxury hotels, often paying over $1,000 a night. *See* Tasher Decl., ¶ 138; *Grace*, 2021 WL 1222193, at *6

(finding the per-night rate for Hotel Adagio in San Francisco, the exact hotel Class Counsel used for many of the class representative depositions, to be "unreasonable") (*see* Dkt. 328-12 at pp. 14-15); *Arredondo v. Delano Farms Co.*, 2017 WL 4340204, at *9 (E.D. Cal. Sept. 29, 2017) (finding "$600 per night" to be "unreasonable" cast serious doubt on the reasonableness of the firm's cost billing").

Class Counsel also attempts to shift the cost of dining and alcohol at top-end restaurants to Premier, frequently spending hundreds of dollars to eat at the luxury restaurants. *See e.g.*, Dkt. 328-12, p. 6 ($324 at Pabu for two dinners); p. 17 ($514.08 at Izakaya Hon for Waygu steaks); p. 18 ($303.32 and Chao Pescao); Dkt. 328-15, p. 125 (30% of cost of meal is alcohol). These expenses are unreasonable. *See Grace*, 2021 WL 1222193, at * 6 ("excessive meal expenses" properly excluded from reimbursable costs); *Arredondo v. Delano Farms Co.*, 2017 WL 4340204, at *9 (E.D. Cal. Sept. 29, 2017) (finding "dinner at The Waterfront at a rate of approximately $92 per person" unreasonable).

Class Counsel also seek reimbursement from Premier for every sundry or fringe expense they encountered over this decade-long litigation, including boba and coffee runs dating back to 2013. *See e.g.*, Dkt. 328-12 (frequent entries for Starbucks, Boba Guys, Peets, Specialty's Cafe, Philz Coffee, Blue Bottle Coffee, Dunkin, Red Bay Coffee). Class Counsel even tries to bill Premier for hundreds of dollars in laundry expenses incurred during trial—even though they apparently traveled back home to San Diego that same day. *See* Dkt. 328-15, pp. 190, 251-52. Courts routinely disallow such expenses. *ING Glob. v. UPS Oasis Supply Corp.*, 2014 WL 4090552, at *10 (S.D.N.Y. Aug. 19, 2014) (no "authority indicating that these sorts of incidental expenses are considered reasonable"); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 2018 WL 5848994, at *15 (W.D. Miss. Nov. 7, 2018) ("'laundry' is not a reasonable expense billable to a client, let alone to the other party in litigation").

As explained in the Tasher Declaration, this is not an exhaustive list of Class Counsel's extravagant spending. *See* Tasher Decl., ¶ 127. Rather it is a sampling of luxury travel and dining that they attempt to shift to Premier. These entries justify an across-the-board reduction to Class Counsel's claimed expenses. *See Yamanouchi Pharma. Co. v. Danbury Pharma., Inc.,* 51

F.Supp.2d 302, 309 (S.D.N.Y.1999) ("An attorney and a client can make any arrangement vis-a-vis staffing of a case or the quality of the accoutrements furnished in the course of that service, but whether a court in law and equity can pass that along in toto to a losing adversary, that is what discretion is for.").

### E.    Plaintiff's Remaining Expenses Should Be Apportioned Across the 11 Pending Related Actions

With few exceptions, the remaining requested expenses that are properly recoverable here must be apportioned among all the related actions. "Where litigation costs are incurred in connection with more than one proceeding, the district court should allocate the costs." *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 411-12 (8th Cir. 2014). "[T]he court has broad discretion in determining whether, and on what conditions, to apportion costs." *Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139, 1143 (N.D. Cal. 2010); *Winter*, 739 F.3d at 412 (apportionment proper when several cases are consolidated for discovery but tried separately); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 763-64 (8th Cir. 2006) (same).

*Marmo* is analogous and instructive. There, as here, several cases were "consolidated for discovery and pretrial purposes . . . but each case [was] to be tried individually." 457 F.3d at 753. The first case proceeded to trial, and the jury returned a verdict for the plaintiff. *Id.* at 755. Plaintiff then sought various costs, including $129,914.47 in "exemplification and photocopy costs." *Id.* at 763. "Because this case was one of thirteen consolidated for pretrial purposes, the district court apportioned these costs among the thirteen cases," reasoning that these materials would "be useful in the other twelve cases." *Id.* The Eighth Circuit held that this apportionment was "equitable," reasoning that the "plaintiffs in each of these cases have incurred costs, and the district court may not award Marmo costs for expenses that other plaintiffs incurred. Moreover, the apportionment reduced the risk of duplicative cost recovery." *Id.* at 764.

The same logic must apply here. Virtually all the expenses Class Counsel ask this Court to reimburse in this action are attributable to discovery, expert consulting, and travel that will be used across all the related pending actions (*i.e.*, other plaintiffs with the same claims). The fact that Class Counsel agreed to share fact discovery across the related actions weighs heavily in

favor of apportionment across those actions. To the extent there are expenses that were not specific to the Montera case (e.g., trial transcripts), they should be apportioned across the eleven related actions. A detailed explanation of the apportionment of various expenses is included in the Swaney Declaration at ¶¶ 9-19.

**CONCLUSION**

For the foregoing reasons, the Court should reduce the amount of Class Counsel's total lodestar to $2,406,809. This constitutes approximately 29% of the judgment amount (exclusive of prejudgment interest), which aligns with the Ninth Circuit's 25% benchmark for reasonable fees.

Dated:  May 4, 2023                                    VENABLE LLP

                                                       By: /s/ Steven E. Swaney
                                                            STEVEN E. SWANEY

                                                       Attorneys for Defendant
                                                       PREMIER NUTRITION COMPANY, LLC