# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

MARY BETH MONTERA, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

PREMIER NUTRITION CORPORATION
f/k/a JOINT JUICE, INC.,

Defendant.

Case No. 3:16-CV-06980 RS
Honorable Richard Seeborg, U.S.D.J.

SECOND SUPPLEMENTAL EXPERT
WITNESS DECLARATION OF
**STEVEN A. TASHER, ESQ.**

1.   I was asked to prepare a brief response to the Declaration of Richard M. Pearl ("Pearl Decl.") (ECF No. 334-8).  While this is not a general rebuttal of everything therein, or Class Counsel's response, this is to address certain fundamental methodological flaws in Pearl's approach and to explain Mr. Pearl's significant credibility issues.[1]

2.   First, Mr. Pearl's analysis ignores the whole point of the lodestar method, which is to "approximate[ ] the fee that the prevailing attorney would have received [for] representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  Nowhere does Mr. Pearl state that paying clients would approve Class Counsel's fee request.  He cannot—because no paying client would.  That Mr. Pearl does not—and cannot—opine that a reasonable client would pay Class Counsel's fee is unsurprising, because he has no experience as a paying client.

3.   That Mr. Pearl's opinion contradicts the purpose of the lodestar method is further demonstrated by his suggestion that the Court cannot and should not review how counsel staffed and litigated a case.[2]  This is, again, inconsistent with the requirements of the lodestar method—*i.e.*, evaluating what a reasonable, paying client would pay.  Indeed, Mr. Pearl's suggestion that the Court cannot question Class Counsel's staffing decisions would render the entire lodestar test irrelevant by removing any objectivity from it.  *See Homeaway.com, Inc. v. City of New York*, 523

---

[1] While Pearl delves into questions of law (such as which party bears the burden and whether they met it, *see* Pearl Decl. at ¶ 34, or whether something is "legally…supportable", *id.* at ¶ 72), I will not address those issues as they are inappropriate for an expert.  In *Connecticut Mun. Electric Energy Coop. v. National Union Fire Ins. Co.*, 2021 WL 4170757 at *2 (D. Conn. Sept. 14, 2021), the Court held that a fee expert's comments as to burden of proof on fees constituted "conclusions of law that instruct the trier of fact on the law."  As such, these "opinions" were excluded. *Gordon v. Los Angeles Unified Sch. Dist.*, 2019 WL 2511936 at 13 (C.D. Cal., Slip Copy, June 17, 2019) ("stri[king] the Pearl Declaration … because it contained improper legal argument").

[2] Pearl Decl., ¶ 78.

F. Supp. 3d 573 (S.D.N.Y. 2021) ("[R]easonableness is objective … [t]he test is whether the [party seeking fees] spent[t] the minimum necessary to litigate the case effectively.").

4.      Similarly, Mr. Pearl is wrong that the reasonableness of the lodestar somehow differs between plaintiffs and defendants.  The same principles apply to both.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("[O]ur case law construing what is a 'reasonable' fee applies uniformly to all [federal fee-shifting statutes].").  *Homeaway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573 (S.D.N.Y. 2021) ("[R]easonableness is objective … [t]he test is whether the [party seeking fees] spent[t] the minimum necessary to litigate the case effectively.")  Moreover, it is nonsense to suggest that plaintiffs do not care about the cost of litigation—they absolutely do— and I was responsible for ensuring that the costs were reasonable even in matters where my company was on the plaintiff's side.  Moreover, these same reasonableness principles apply with equal force to big and small firms.  I know, because I hired many boutique and small firms to handle matters for Wyeth and Case Medical.  These firms do not charge the same rates as big firms[3], yet they were expected to—and did—delegate work to associates.  Look no further than Iredale & Yoo in this case, which delegated work appropriately.  Whether it is clear to Mr. Pearl, paying clients expect small firms to do this.  No paying client would pay $1,000 per hour for document review just because the client hired a small firm to do the work—yet Pearl rubber stamps that as "reasonable" here.

5.      Another example of Mr. Pearl's flawed approach to the lodestar analysis is his misleading characterization of my approach as a "defense-oriented perspective."[4]  This is untrue.

---

[3] *Lussenhop v. Clinton County, NY*, 558 F. Supp. 2d 247, 265 (N.D.N.Y. 2008) ("a reasonable hourly rate [for a solo practitioner] should not be based upon the rates that 'Hughes Hubbard' would charge its corporate clients."). *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 299 (E.D.N.Y. 20120 ("hourly rates tend to be higher at large firms to compensate for higher overhead costs").
[4] See *Pearl Decl.*, ¶¶ 92-93.

Unlike Mr. Pearl, I have been a paying client of legal services at three separate businesses, purchasing legal services around the world (including in California) over several decades (both as a plaintiff and defendant, and of both large and small firms). During my service on Wyeth's Law and Regulatory Review Committee (a senior-level management committee that evaluated all of the company's liabilities, reserves, and litigations), I supervised not only the defense of many of the company's litigation, but also the prosecution of them where Wyeth was a plaintiff.[5] Thus, rather than bringing a "defense-oriented perspective" to my review of legal fees, I bring a "paying client's perspective" to my review. I look at the fees objectively, based upon my having had to pay for legal services for decades, and evaluate how I would objectively look at them if I received a bill and had to pay it.

6.      Mr. Pearl's lack of understanding about how businesses work (misleadingly suggesting that businesses only defend litigation) underscore his lack of experience about how paying clients operate in the real world. As a result, Mr. Pearl misses the boat on my criticisms of Class Counsel's fee petition, because he never has been a paying client and has zero understanding of how paying clients operate or what they pay for in the real world:

a.      Conceding Class Counsel's top-heavy administration of the work (67% by BHO and 95% by Carpenter), Pearl provides no substantive rebuttal other than he is unsure if top-heavy administration is more costly (it is), and fails to address the fact that the tasks performed by

---

[5] For example, I supervised litigation Wyeth brought against parties who stole its critical trade secrets, successfully imposing injunctive relief (which was sustained on appeal). *Wyeth v. Natural Biologics, Inc.*, 395 F.3d 897 (8th Cir. 2005). I supervised many patent and trademark prosecutions Wyeth brought against infringers of the company's intellectual property. As the head of Wyeth's Global Real Estate Department, I supervised the litigation Wyeth brought regarding construction or defect related claims for many of our distribution facilities around the world. I was also responsible for bringing litigation against Wyeth's insurance companies when they refused to pay defense costs.

senior partners here simply do not warrant $1,000 per hour timekeepers to perform (like document review, preparing outlines, research and briefing), and paying clients would not pay for that.[6]

b.      Pearl's assertion that "pyramidal staffing pattern" is limited to insurance companies and big law firms (Pearl Decl. ¶ 80) is nonsense.  I paid for large and small firms over several decades (without insurance input).  Delegation of work applies universally to firms big and small—so that a paying client receives the benefit of a fair rate for the requisite experience and skill level of each particular timekeeper working on their matter.

c.      Pearl's unsupported statement that firms in the Bay Area charge for travel time is directly in contrast to my own experience, both in the Bay Area and around the country: clients do not pay for non-working travel time.  Mr. Pearl even concedes that "clients…limit it". *Id.*, ¶ 73.  If the lodestar is based upon what clients do (which it is, *see Perdue v. Kenny A*, *supra*) then it matters that clients do not pay for travel time.

d.      Similarly, BHO's size is irrelevant to whether Class Counsel's "disbursements further reflect a 'spare no expense' approach". *Id.*, ¶ 89.  What matters is the fact that no paying client would tolerate the litany of $1,000+ per night hotel rooms for people to sit in the back of a courtroom and take notes or approve of the multiple Wagyu/alcohol dinners.  Class Counsel's response (in its Reply Brief at p. 14) contains one of the most tone-deaf lists of excess I have seen—their sole excuse for the $500+ dinner with multiple Wagyu orders and alcohol is that it was for seven people.  This is another reason why paying clients would not pay for three additional timekeepers to sit in the back of the courtroom and take notes—it unreasonably increases both fees *and* expenses).  Pearl's response is not substantive.

---

[6] Interestingly, while the O'Reardon Declaration endeavors to criticize my Declaration paragraph by paragraph, it is only Paragraph 90 that appears in his "hit" list.  Conveniently missing are ¶¶ 77-89 and 91-94 – which identified the various pleadings, projects, and tasks that were not delegated appropriately.

e.      Finally, Mr. Pearl cherry-picks one case to try and argue that BHO is entitled to make a profit of 5-10x prevailing market rates for contract attorneys, when the whole of authority (and my practical experience paying for them for decades) contradict him, both in New York and California.  Just in the Bay Area alone, Judge Tigar disagrees.[7]  This is another example of Mr. Pearl not letting the facts get in the way of his rubber-stamping another fee petition.

7.      Consequently, even when Class Counsel has already conceded that it overstaffed and overbilled the matter, just "not to a degree that would matter" (see Tasher Decl., ¶ 40(a)), Pearl simply rubber-stamps the conceded overbilling and supports Class Counsel's making up any reductions through a multiplier.  Pearl Decl., ¶ 86 ("if the Court reduces their hours or rates, a multiplier … should be applied to bring their fee to what they request").  In other words, for Pearl, reasonableness does not matter so much as the end result.

8.      That Mr. Pearl incorrectly characterizes my analysis as "defense oriented" betrays a second core flaw of Pearl: his own naked bias. I reviewed submissions by Mr. Pearl in 101 reported federal cases, and in every single one of those cases Mr. Pearl sought to justify the fees being requested, without exception. I have not found a single instance in which Mr. Pearl has critiqued fees or opined that a fee request was unreasonable.  Only someone who approaches a fee matter with a pre-determined bias can reach the same conclusion every single time.[8]

9.      A hallmark of an expert's obligation is objectivity—to reliably apply principles to the facts of the instant case.  This is why, for example, after reviewing the evidence I concluded that Iredale & Yoo's lodestar was reasonable and does not warrant any reduction, but that BHO's

---

[7] *In Re Wells Fargo & Co. Shareholder Lit.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020) (Judge Tigar found that 2020 rates for contract attorneys are "between $35 and $50 per hour" and applied $42.50 for their document review work).
[8] Mr. Pearl also vacillates between suggesting that my criticisms are not specific enough (*see* Pearl Decl. at ¶¶ 22-24) and that they are too granular (see ¶ 21, referring to "more specific objections").  Effectively, Pearl is baselessly arguing "heads I win, tails you lose".

lodestar is unreasonable and warrants a 40% across-the-board reduction.  By contrast, Mr. Pearl's Declaration is one general net opinion that rubber-stamps Class Counsel's fee petition as reasonable—just as he does every single time he is engaged as a fee expert.[9]

10.    Moreover, Mr. Pearl does not support his conclusion with any substantive or objective analysis of any factors.  As this Honorable Court previously acknowledged, the "Ninth Circuit … requires 'considering some or all of the twelve relevant criteria set forth in *Kerr v. Screen Extras Guild Inc.*'"  *Carter v. Caleb Brett, LLC*, 2015 WL 1938431 (N.D. Cal. Apr. 28, 2015) (Seeborg, J.).  Yet Pearl does not once acknowledge the *Kerr* factors.  This is a systemic issue with Mr. Pearl's *modus operandi*, as other courts have found.  *Johnson v. In Suk Jun*, 2020 WL 6507995, at *9 (N.D. Cal. Nov. 5, 2020) (Pearl's declaration and the Real Rate Report failed to consider the nature of work done and the skill or reputation of the attorneys in each case—in other words—Pearl's declaration failed to apply the *Kerr* factors to form his opinions).

11.    In contrast to Pearl, I examined the relevant *Kerr* factors[10], which are the same factors fee-paying clients use to evaluate fees when reviewing invoices.  Because Pearl ignores any objective or substantive analysis of the required *Kerr* factors, he does not evaluate the "time and labor required", or the "skill requisite to perform the legal services properly", the complexity of the case, or any other required *Kerr* factors.

12.    Perhaps the most glaring example of Mr. Pearl's bias is his fabrication concerning the *DeMaria* case in which I previously offered opinions, which the Court's decision agreed with in full.  *DeMaria* was a settled case that was compensated under the percentage-of-the-fund

---

[9] I note that in at least 52 of those 101 cases, Mr. Pearl's opinion was wholly ignored, stricken, or deemed to have limited persuasive value.

[10] See, *e.g.*, Class Counsel's billing judgment (See Tasher Decl., ¶¶ 38-49, 120-133), the time and labor required (*Id.*, ¶¶ 50-69), the skills required to litigate the case properly (*Id.*, ¶¶ 77-105), and customary charges in the locality for similar services (*Id.* at ¶¶ 106-119), among other *Freeman/Kerr* factors.  See Tasher Decl., ¶ 32 (propriety of fee evaluated under *Freeman/Kerr* factors).

method, not the lodestar.[11]  Nevertheless, while Mr. Pearl tries to paint *DeMaria* as a less-complex case than this one, Mr. Pearl is dead wrong.  Had he read that Declaration, Mr. Pearl would have seen that Class Counsel in *DeMaria* "reviewed over 19 million records of claims data" whose coding is "extremely complex and required knowledgeable Counsel" to review.[12]  *Montera* did not require Class Counsel to review even close to 19 million documents.  *DeMaria* had multiple firms because (unlike this case) lead counsel was not in the forum.  As a result, local counsel (whose rates were nearly half that of lead counsel) took the lead on the discovery tasks, document processing, legal research, and briefing, so that nearly half the hours were incurred by the firm whose top hourly rate was $550 per hour.  Put simply, unlike here, Class Counsel in *DeMaria* delegated all the work they should have to the less-costly firm.  As a result, I found that Class Counsel in *DeMaria* had exercised good billing judgment, just the opposite from here.[13]

13.     It is incumbent upon an expert analyzing fees to be able to reach two different conclusions on two completely separate cases based upon the facts of each case.  This is because every case is different, and careful consideration of class counsel's billing judgment and billing practices must be evaluated.  I endeavored to do so, and respectfully to provide the Court with my decades of experience paying for legal services (both as plaintiff and defendant, of firms large and small, and of firms all around the world—including many in the Bay Area and in New York).

---

[11] 2016 U.S. Dist. LEXIS 143941 at *1.

[12] Tasher Decl. in DeMaria at p. 10.

[13] When the facts warrant, Mr. Pearl positively comments on whether "efficient division of labor between the two law firms" existed "and within each law firm."  *See*, Pearl Declaration in *Stonebrae L.P. v. Toll Bros. Inc.*, Case No. 3:08-cv-002211-EMC (N.D. Cal.) (ECF No. 257) at ¶ 17.  As the facts do not support his pre-determined opinions here, he terms the duplication of efforts "[N]ecessary duplication" without support.  *Pearl Decl.*, ¶ 38.  I note that Courts have reduced Pearl's own hours for being "excessive and duplicative" of co-counsel.  *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 992 (N.D. Cal. 2005) ("[t]he Court finds that Pearl's hours are not compensable because they are excessive and duplicative" of co-counsel).  *See*, also, *Marbled Murrelet v. Pacific Lumber*, 163 F.R.D. 308, 326 (N.D.Cal.1995) (finding Pearl's hours "excessive, and hence unreasonable" and duplicative of work co-counsel could have performed).

14.    Put simply, Mr. Pearl lacks that experience as a paying client and, thus, cannot competently opine on "the fee the prevailing party would have received from a paying client." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("At bottom, the goal of the lodestar figure is to roughly approximate the fee the prevailing party would have received from a paying client.") (cited in Plaintiff's motion, ECF 328 at p. 10), nor can he competently opine on whether Class Counsel's ask represents the "least amount necessary to litigate the case effectively". *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 552 F.3d 182, 184 (2nd Cir. 2007) (the lodestar is "what a reasonable, paying client … who wishes to pay the least amount necessary to litigate the case effectively … would be willing to pay"). And Mr. Pearl's one-size-fits-all rubber stamp approach, offers little of substance or insight into what paying clients choose to pay, is contrary to the role of an objective expert in the area of fee litigation.

15.    All of my opinions herein are to a reasonable degree of professional certainty. I reserve the right to supplement my opinions should any additional information come available. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 9, 2023
      Warren, New Jersey

                                    */s/ Steven A. Tasher*
                                      Steven A. Tasher, Esquire
                                      Wyatt Partners
                                      P.O. Box 358
                                      Berkeley Heights, NJ 07922
                                      stasher@wyattpartners.com