UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY BETH MONTERA,

    Plaintiff,

    v.

PREMIER NUTRITION CORPORATION,

    Defendant.

Case No. 16-cv-06980-RS

**ORDER GRANTING RENEWED MOTION FOR ATTORNEY FEES AND EXPENSES**

## I. INTRODUCTION

After obtaining a jury verdict in the amount of $12,895,454.90, Plaintiff filed a motion for attorney fees, expenses, and service awards. A prior order first determined that Plaintiff's attorney fees would be subject to fee-shifting, and then concluded that the lodestar method (rather than the percentage-of-the-fund method) would be used to calculate the attorney fee award. *See* Dkt. 320, at 4–7. The motion was denied in relevant part, and Plaintiff was permitted the opportunity to bring a renewed motion along with further documentation to assist in the lodestar analysis. That renewed motion is now pending here, and for the reasons articulated below, the motion will be granted. Plaintiff will be awarded attorney fees in the amount of $6,853,502.78 and nontaxed expenses in the amount of $1,072.126.04.

## II. LEGAL STANDARD

Under New York General Business Law §§ 349 and 350 (the statutory bases of this class action), the court "may award reasonable attorney's fees to a prevailing plaintiff." N.Y. Gen. Bus.

Law §§ 349(h), 350-e(3). The decision to award fees is "left to the discretion of the trial court in all circumstances." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 280 (S.D.N.Y. 2014) (quoting *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 54 (2d Cir. 1992)). These types of fee-shifting statutes require fees to be calculated using the lodestar method, which involves multiplying "the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Generally, "the award of fees should cover 'every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (quoting *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)). The party applying for fees bears the burden of establishing its entitlement to the award, "[b]ut trial courts need not, indeed should not, become green-eyeshade accountants" in reviewing such requests. *Fox v. Vice*, 563 U.S. 826, 838 (2011). As the Supreme Court has advised, "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Id.* As such, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

## III. DISCUSSION

As with Plaintiff's first motion, the parties here take very different positions on how fees should be calculated and, consequently, the amount to which Plaintiff is entitled. Plaintiff requests an award of $6,942,943.50 in fees and $1,072,126.04 in nontaxed expenses. Dkt. 334 ("Reply"), at 15.[1] While this amount represents Plaintiff's counsel's lodestar, Plaintiff also notes that this constitutes roughly one-third of the total recovery (when added to the jury verdict amount). Plaintiff represents this lodestar was calculated by sifting through billing records dating back to

---

[1] Plaintiff initially requested $7,201,393.50 in fees and $1,073,123.10 in expenses, but she has since withdrawn various items in response to arguments raised in Defendant's opposition. *See* Reply at 6, 11–12, 14–15.

the start of this litigation and excluding, *inter alia*, time entries that "expressly referred to a task that did not benefit *Montera* — even if that same time entry also . . . [included] work that benefitted *Montera*." Dkt. 328, at 15. Defendant, on the other hand, contends Plaintiff is entitled only to $2,406,809.00 in fees and that the request for reimbursed expenses should be cut substantially. Such reductions are warranted, Defendant argues, because Plaintiff should not be able to recover the full value of work done prior to the commencement of this suit; rather, those fees and costs should be apportioned among the related cases in this litigation. In addition, Defendant argues the lodestar should be reduced by another 40% to account for various billing errors and inflated costs it identifies.[2]

The first (and most consequential) area of disagreement between the parties involves the treatment of pre-*Montera* work. To examine this, a brief procedural recap is in order. While the immediate case (*Montera*) was filed in December 2016, the origins of this litigation date to 2012, when Plaintiff's counsel first began investigating Defendant's marketing of Joint Juice. Dkt. 328-1 ("First O'Reardon Decl.") ¶ 7. An initial complaint was filed in March 2013 on behalf of a nationwide class. *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS (N.D. Cal. filed Mar. 21, 2013). Extensive fact and expert discovery proceeded in *Mullins*, along with heavily briefed motion practice. In 2016, Premier's motion for summary judgment was denied, and a class of California consumers was certified. However, plaintiffs' attempt to certify a nationwide or multistate class was rejected.

Subsequently, Plaintiff's counsel filed ten new suits on behalf of Joint Juice purchasers seeking to represent single-state classes. This included *Montera*, which was filed on behalf of New York purchasers. These cases were stayed from February 2017, pending the *Mullins* trial, until September 2018, after the trial was postponed and *Mullins* was dismissed. All of the state classes were then certified in December 2019. *See* Dkt. 79. Finally, on November 2, 2021, *Montera* was

---

[2] Defendant does not challenge the requested fee award for Iredale & Yoo, APC. That request is reasonable, and it will be granted. As such, this discussion focuses on the disputed fee requests of Blood Hurst & O'Reardon, LLP, and Lynch Carpenter, LLP.

selected as the first case to proceed to trial. *See* Dkt. 98. That trial commenced in May 2022 and the jury returned a verdict for Plaintiff on June 7, 2022. While *Montera* moved toward trial, *Mullins* was working its way through the appeals process,[3] and two related actions were filed in Alameda County Superior Court. *See Bland v. Premier Nutrition Corp.*, No. RG19002714 (Cal. Super. Ct. filed Jan. 15, 2019); *Sonner v. Premier Nutrition Co., LLC*, No. RG20072126 (Cal. Super Ct. filed Sept. 1, 2020).

Both parties appear to be in agreement that Plaintiff's counsel's costs incurred after November 2, 2021, are presumptively recoverable. Defendant argues that work done *before* this date, however, "should be apportioned evenly among the . . . related cases," since "very little work was done exclusively on *Montera* before that date." Dkt. 331 ("Opp."), at 10. Plaintiff responds that this approach is unfair, given the extent to which materials produced before that date (and even before *Montera* was filed) contributed substantially to the trial and the pretrial motion practice in this case. For instance, Plaintiff's motion for class certification in this case leaned heavily on the prior certification of the California class in *Mullins*. Similarly, the experts retained in connection with class certification in *Mullins* provided Plaintiff's counsel "the foundation to adapt, change and refine [their] theories," and helped them retain additional experts "that were ultimately used in connection with trial" in *Montera*. First O'Reardon Decl. ¶ 11; *see, e.g.*, *id.* ¶¶ 7, 9, 10, 13–19. As such, Plaintiff contends apportionment is inappropriate here.

Plaintiff's position is persuasive. Before December 2016, Plaintiff's counsel had already undertaken a substantial amount of work that facilitated a successful outcome in *Montera*. *See Soler v. Cnty. of San Diego*, No. 14cv2470-MMA (RBB), 2021 WL 2515236, at *7 (S.D. Cal. June 18, 2021). For instance, class certification required only minimal relitigation in *Montera* given the plaintiff's earlier success on this issue in *Mullins*. Since this case was filed, *Montera*,

---

[3] Somewhat confusingly, the *Mullins* action is also referred to (including by the Ninth Circuit) as *Sonner*, due to the substitution of a new lead plaintiff in 2014. *See* No. 13-cv-01271-RS, Dkt. 62; *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). For clarity, this order refers to the case as *Mullins*, consistent with its caption in the Northern District.

*Mullins*, and the related cases have in many respects been handled jointly, given the similarity of issues between them all. Many orders and motions have been filed in and applied across all of the related cases. It is clear, then, that *Mullins* is closely related to *Montera*, such that the two "can even be viewed as a continuum of proceedings necessary to achieve the relief finally granted." *See G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 908 (9th Cir. 1998), *vacated*, 526 U.S. 1061 (1999), *and opinion reinstated*, 204 F.3d 941 (9th Cir. 2000).

Notably, too, *Mullins* was originally brought on behalf of a nationwide class (of which the named Plaintiff here would presumably be a member). It was only after three years of litigation — which included extensive discovery and motion practice — that the need for a separate, New York-specific suit arose. In other words, Plaintiff's counsel did not set out with the idea that this action would be fought on multiple fronts. That the litigation has since been balkanized in this way does not justify apportioning the costs among the related cases. *Cf.* Reply at 15 ("Demanding 11 victories for cost recovery is unfair."). By the same token, the fact that the pre-November 2021 work stemmed from and/or benefitted the related cases does not *ipso facto* require apportionment among the cases, and Defendant cites to no binding authority requiring as much.[4] *See Armstrong*, 318 F.3d at 972 (affirming district court decision allowing recovery of fees incurred in connection with filing of an amicus brief in a separate case); *Welton v. Osborn*, 124 F. Supp. 2d 1114, 1120–21 (S.D. Ohio 2000). While relying on cutoff dates as a proxy for recoverable fees is certainly a reasonable approach, apportionment is simply not justified, and the Court will credit Plaintiff's counsel's representations that they have fully excluded hours that did not benefit this case or that specifically benefitted another case. *See McNamara v. Infusion Software, Inc.*, No. CV-17-04026-PHX-SPL, 2020 WL 4921984, at *5 (D. Ariz. Aug. 21, 2020). It should go without saying,

---

[4] The primary case on which Defendant relies to support its apportionment argument — *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. ML 18-02814 AB (PVCx), 2021 WL 3163799 (C.D. Cal. July 22, 2021) — is both nonbinding and factually distinguishable. Another nonbinding case Defendant cites, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748 (8th Cir. 2006), supports the notion that apportionment among related cases *may* be appropriate, but not that it is required. *Id.* at 763–64.

however, that Plaintiff's counsel will not be entitled to receive duplicative recovery should any of the other related cases be litigated successfully.[5] *See Welton*, 124 F. Supp. 2d at 1121 n.9.

In addition to the apportionment arguments, Defendant maintains that a 40% reduction is necessary to account for various and sundry errors included in Plaintiff's fee request. These include, among others, "top-heavy administration of work, block-billing, billing in quarter-hour increments, overstaffing, billing for non-working travel," and billing at current rather than historic rates. Opp. at 2; *see also* Dkt. 331-2. None of these arguments are particularly potent. The hours of work submitted by Plaintiff's counsel and the structure of their practice appear reasonable, and in any event their professional judgment in these areas is entitled to deference. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Plaintiff's counsel's billing practices are not anomalous, and the rates sought are consistent with those of many similar firms in this District. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017). While in some instances a fee award should be based on historic rather than current rates, "district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates to adjust for inflation and loss of the use funds." *Gates*, 987 F.2d at 1406; *see Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283–84 (1989). The fact that Plaintiff's counsel has prosecuted this case for a decade without receiving compensation clearly militates in favor of exercising this discretion. Finally, Defendant astutely caught several billing errors submitted by Blood Hurst & O'Reardon, LLP ("BHO"), and Plaintiff has since withdrawn this time (totaling roughly $258,000) from the fee request. However, to account for any additional undetected billing errors, BHO's lodestar will be reduced by 1.5%.[6]

---

[5] While Defendant intimates that apportionment is necessary because Plaintiff's counsel will otherwise "face very little risk if they do not prevail" in the related cases, Opp. at 8, this argument is misplaced. For one thing, litigating the related cases will require Plaintiff's counsel to take on the risk of nonpayment for many additional hours of work should they not prevail. Further, as the discussion above suggests, it would be unfair to require Plaintiff's counsel to augment its risk by making complete fee recovery contingent on ten more victories.

[6] Plaintiff has also withdrawn from the fee request 13.7 hours billed by Lynch Carpenter, LLP,

Defendant's objections to the requested expenses are similarly unpersuasive. It argues first that numerous costs — including certain expert fees and deposition costs — should be apportioned or excluded because they were not incurred as part of *Montera*. For the same reasons that attorney fees will not be apportioned here, neither will these expenses. Defendant otherwise denigrates Plaintiff's counsel's "extravagant expenses," namely certain hotel and meal expenses. Opp. at 23–24. Upon inspection, none of these expenses can fairly be considered overly opulent (especially in a city as expensive as San Francisco). To the extent one meal was mistakenly duplicated, Plaintiff has withdrawn that request; Plaintiff's counsel has also agreed to withdraw another $598 in disputed food and coffee expenses. Reply at 14–15. No further reduction is necessary, and the request will be granted in full.

## IV. CONCLUSION

The motion for attorney fees and expenses is granted as follows:

- Attorney fees are awarded in the amount of $6,853,502.78.
    - BHO is awarded $5,873,274.28;
    - Lynch Carpenter, LLP, is awarded $382,018.50; and
    - Iredale & Yoo, APC, is awarded $598,210.00.
- Nontaxed expenses are awarded in the amount of $1,072,126.04.
    - BHO is awarded $1,039,423.44;
    - Lynch Carpenter, LLP, is awarded $8,709.80; and
    - Iredale & Yoo, APC, is awarded $23,992.80.
- Consistent with the prior order, these amounts are subject to fee-shifting and shall be paid *in addition to* the judgment amount, rather than drawn from the judgment amount.
- Any motion or stipulation for attorney fees and costs incurred in litigating the prior and current fee motions must be filed no later than October 6, 2023.

---

after Defendant argued Mr. Carpenter's time spent at trial should not be recoverable. Reply at 12. However, since Defendant identifies no *errors* in the firm's billing (unlike with BHO's billing), Lynch Carpenter's lodestar will not be reduced.

**IT IS SO ORDERED**.

Dated: August 7, 2023

_____
RICHARD SEEBORG
Chief United States District Judge