**FAEGRE DRINKER BIDDLE & REATH LLP**
DAVID J.F. GROSS (SBN 290951)
*david.gross@faegredrinker.com*
AARON D. VAN OORT (*Pro Hac Vice*)
*aaron.vanoort@faegredrinker.com*
 CHAD DROWN (*Pro Hac Vice*)
*chad.drown@faegredrinker.com*
KATE S. RAZAVI (*Pro Hac Vice*)
*kate.razavi@faegredrinker.com*
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000 | Fax:  (612) 766-1600

DAVID A. BELCHER (SBN 330166)
*david.belcher@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel:  (310) 203-4000 | Fax: (310) 229-1285

KATLYN M. MOSELEY (*Pro Hac Vice*)
*katlyn.moseley@faegredrinker.com*
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005
Tel:    (202) 842-5000 | Fax: (202) 842-8465

Attorneys for Defendant
PREMIER NUTRITION COMPANY, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-cv-06980-RS<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES ON APPEAL AND CROSS-APPEAL**<br><br>**CLASS ACTION**<br><br>Date:         January 30, 2025<br>Time:         1:30 PM<br>Judge:        Hon. Richard Seeborg<br>Courtroom:   3 – 17th Floor<br><br>[Filed Concurrently with Belcher Decl, In Support of Opposition to Plaintiff's Motion for Appellate Fees]<br><br>Complaint Filed:  December 5, 2016 |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.     The Court should reduce Class Counsel's lodestar by 25 percent. .................................... 2

     A.    Billing in quarter-hour increments overstated the time worked.............................. 2

     B.    Partner-heavy billing inflated the amount charged. ................................................ 3

II.    The Court should not increase the fee award by any multiplier. ..................................... 6

     A.    It is doubtful that a lodestar multiplier is authorized by the New York GBL, and one has never been used to award attorneys' fees under the GBL.................. 6

     B.    Regardless, a multiplier should not be awarded here because it would result in inappropriate double-counting. ........................................................................ 7

CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*515 Ave. I Corp. v. 515 Ave. I Tenants Corp.*,
   2010 WL 4904671 (N.Y. Sup. Ct. Dec. 1, 2010).........................................................................4

*1097 Holding LLC v. Ballesteros*,
   2008 WL 1869735 (N.Y. Civ. Ct. Apr. 8, 2008) .....................................................................2

*Ass'n of Holocaust Victims v. Bank Austria Creditanstalt AG*,
   2005 WL 3099592 (S.D.N.Y Nov. 17, 2005) .........................................................................5

*Baker v. Health Mgmt. Sys., Inc.*,
   772 N.E.2d 1099 (N.Y. 2002) ...............................................................................................6

*Beastie Boys v. Monster Energy Co.*,
   112 F. Supp. 3d 31 (S.D.N.Y. 2015)......................................................................................3

*Bell v. Helmsley*,
   2003 WL 21057630 (N.Y. Sup. Ct. Mar. 27, 2003) ..............................................................3

*Blum v. Stenson*,
   465 U.S. 886 (1984)...............................................................................................................9

*In re Bolar Pharm. Co., Inc., Sec. Litig.*,
   800 F. Supp. 1091 (E.D.N.Y. 1992) ......................................................................................9

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008)..................................................................................................5

*Chambers v. Whirlpool Corp.*,
   980 F.3d 645 (9th Cir. 2020)..................................................................................................8

*Day v. SBC Disability Income Plan*,
   2008 WL 2783482 (N.D. Cal. July 17, 2008).........................................................................5

*Diamond v. Diamond*,
   120 N.E.2d 819 (N.Y. 1954)..................................................................................................1

*Diaz v. Audi of Am., Inc.*,
   873 N.Y.S.2d 308 (N.Y. App. Div. 2008) ............................................................................8

*Edwards v. Ford Motor Co.*,
   727 F. App'x 233 (9th Cir. 2018) ..........................................................................................9

*Edwards v. Mid-Hudson Valley Fed. Credit Union*,
   2023 WL 5806409 (N.D.N.Y. Sept. 7, 2023) ........................................................................7

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
2023 WL 112429 (S.D.N.Y. Jan. 5, 2023)..................................................................................... 8

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).......................................................................................................... 8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................................. 1, 4

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*,
2009 WL 466136 (S.D.N.Y. Feb. 25, 2009) ............................................................................... 2

*Millea v. Metro-N.R.R. Co.*,
658 F.3d 154 (2d Cir. 2011) ........................................................................................................ 7

*Murphy v. Celestron Acquisition, LLC*,
2024 WL 1221963 (N.D. Cal. Mar. 20, 2024).......................................................................... 3, 5

*Nichols v. Noom, Inc.*,
2022 WL 2705354 (S.D.N.Y. July 12, 2022) .............................................................................. 7

*Orser v. Wholesale Fuel Distribs.-CT, LLC*,
108 N.Y.S.3d 675 (N.Y. Sup. Ct. 2018), *aff'd*, 105 N.Y.S.3d 137 (N.Y. App.
Div. 2019) ................................................................................................................................. 4, 7

*Ousmane v. City of New York*,
2009 WL 722294 (N.Y. Sup. Ct. Mar. 17, 2009) ................................................................. 2, 3, 8

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)..................................................................................................................... 7

*Pickett v. 992 Gates Ave. Corp.*,
979 N.Y.S.2d 853 (N.Y. App. Div. 2014) ................................................................................... 6

*Rodriguez v. Barrita, Inc.*,
53 F. Supp. 3d 1268 (N.D. Cal. 2014) (Seeborg, J.)................................................................. 8, 9

*Saul v. Cahan*,
61 N.Y.S.3d 116 (N.Y. App. Div. 2017) ..................................................................................... 6

*State Farm Fire & Cas. v. Parking Sys. Valet Serv.*,
926 N.Y.S.2d 541 (N.Y. App. Div. 2011) ................................................................................... 6

*Sykes v. Mel Harris & Assocs., LLC*,
2016 WL 3030156 (S.D.N.Y May 24, 2016).............................................................................. 7

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Dem. Repub.*,
2012 WL 5816878 (S.D.N.Y. Nov. 14, 2012) .......................................................................... 2, 3

*Ulin v. ALEA-72 Inc.*,
  2011 WL 4974282 (N.D. Cal. Oct. 19, 2011)................................................................................ 2

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007)........................................................................................... 3, 5

**Statutes, Rules & Regulations**

N.Y. Gen. Bus. Law § 349(h) ........................................................................................ 1, 5, 6

N.Y. Gen. Bus. Law § 350-e(3) ..................................................................................... 1, 5, 6

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

**INTRODUCTION**

On appeal, Class Counsel recorded a lodestar fee amount of $618,970. The Court should (1) reduce that amount by 25% because it is inflated by multiple improper billing practices and (2) deny any multiplier as unsupported by New York law. The Court should thus award no more than $464,225.50.

Starting with the lodestar, Class Counsel billed in quarter-hour increments (inflating the recorded time), used 100% partner time and 0% associate time (inflating the billed amount), and listed large blocks of time accompanied by generic descriptions that prevent oversight. For combined practices like these, this Court and New York courts have reduced lodestars by up to 40%. Here, the Court should conservatively reduce the lodestar by 25%.

Having reduced the lodestar, the Court should not increase it with a multiplier. It is doubtful whether a multiplier is even permitted. Class Counsel are claiming fees under New York's General Business Law (GBL), and they do not cite any case that has ever awarded a multiplier under that statute. Their contrary claim is based on misapplying cases reviewing common-fund fee awards from class action settlements. Outside class settlements, New York follows the "American Rule," which provides that each party "ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Statutory authority is "construed strictly," not expansively, *Diamond v. Diamond*, 120 N.E.2d 819, 820–21 (N.Y. 1954), and while the GBL authorizes courts to "award reasonable attorney's fees to a prevailing plaintiff," N.Y. Gen. Bus. Law §§ 349(h), 350-e(3), it does not expressly authorize a lodestar multiplier. Hence the lack of precedent ever awarding one. This Court should not be the first to award a lodestar multiplier under the GBL. That is particularly so because the lodestar already takes into account all the factors that Class Counsel invoke to justify a multiplier, including skill, high stakes, and contingency (reflected in their high hourly rates) and complexity and size (reflected in their large number of hours).

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

**ARGUMENT**

**I.      The Court should reduce Class Counsel's lodestar by 25 percent.**

When fees are sought under the lodestar method, the court "scrutinizes the hours billed in the case and multiplies that amount by a reasonable hourly rate." *See Ousmane v. City of New York*, 2009 WL 722294, at *9–10, *15 (N.Y. Sup. Ct. Mar. 17, 2009) (awarding fees using the lodestar method after making reductions for "excessive, unnecessary, and duplicative work"). Here, Class Counsel's lodestar is inflated in two ways: they billed in quarter-hour increments (causing overstated hours), and they used 100% partner and 0% associate time (causing bloated rates). In addition, they used block billing accompanied by generalized descriptions, making precise review impossible. The Court should therefore exercise its discretion and conservatively reduce the lodestar by 25 percent.

**A.      Billing in quarter-hour increments overstated the time worked.**

The first problem with the lodestar is that Class Counsel billed in quarter-hour increments, which results in an overstatement of the time actually worked.

New York Courts, this Court, and the Ninth Circuit have all recognized that "[b]illing in 15-minute increments 'adds an upward bias in virtually all cases.'" *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Dem. Repub.*, 2012 WL 5816878, at *4, *11 (S.D.N.Y. Nov. 14, 2012) (quoting *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (applying 30% reduction to lodestar based in part on billing in 15-minute increments). As this District has stated, "[q]uarter-hour billing has been held to be deficient because it does not reasonably reflect the number of hours actually worked." *Ulin v. ALEA-72 Inc.*, 2011 WL 4974282, at *4 (N.D. Cal. Oct. 19, 2011) (cleaned up). The factual record in this case supports that common conclusion. *See* Dkt. 331 at 14 (citing Tasher Decl. ¶¶ 118–19 (opining that billing in quarter-hour increments "is not standard practice in the legal community" and "obviously overstates the amount of time")).

Faced with quarter-hour billing, courts commonly reduce either the hours directly or the lodestar total by 20% or more. *See, e.g.*, *1097 Holding LLC v. Ballesteros*, 2008 WL 1869735, at *6 (N.Y. Civ. Ct. Apr. 8, 2008) (reducing number of hours from 125.75 to 95 based, in part, on

the attorney's billing in 15-minute increments); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948–49 (9th Cir. 2007) ("The district court reasonably concluded that [plaintiff's counsel's] practice of billing by the quarter-hour resulted in a request for excessive hours. . . . We therefore affirm the district court's [20%] reduction for quarter-hour billing."); *Thai-Lao Lignite*, 2012 WL 5816878, at *4, *11 (applying 30% reduction to lodestar based in part on billing in 15-minute increments).

### B.      Partner-heavy billing inflated the amount charged.

The second problem with the lodestar is that Class Counsel used 100% partner and 0% associate time—and out of 822.25 total hours, only 37 were performed by a paralegal. L. Hurst Decl. ¶ 33. By billing 785.25 hours at partner rates ranging from $660–$960, Class Counsel substantially inflated the lodestar.

New York courts have reduced lodestars based on associate-to-partner imbalances far less extreme than 100% to 0%. *See, e.g.*, *Bell v. Helmsley*, 2003 WL 21057630, at *4 (N.Y. Sup. Ct. Mar. 27, 2003) (reducing the number of "partner hours" based on finding that case was staffed "top-heavy with chieftains, i.e. partners" despite "no justification for dedicating so much partner time" to the case); *see also Ousmane*, 2009 WL 722294, at *10 (reducing billed hours based, in part, on the firm's having billed at "attorneys' rates for non-legal work"); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) (noting that there is "ample authority . . . for reducing a fee award where the legal hours recorded by plaintiffs' counsel fell unusually heavily on partners with high hourly rates") (collecting cases).

This Court has done the same. *See, e.g.*, *Murphy v. Celestron Acquisition, LLC*, 2024 WL 1221963, at *6 (N.D. Cal. Mar. 20, 2024) (imposing a reduction based on "the disproportionate partner time" in plaintiff's billings because "senior partners were performing work that associates are ordinarily given the opportunity to conduct, such as initial drafting and research").

Although Class Counsel's block billing and limited descriptions make review difficult, it is still obvious that they used partners for large amounts of associate work. For example, they used partners billing $810 per hour to perform more than 40 hours of work summarizing trial transcripts, totaling over $35,000 for this work alone. *See* Declaration of David A. Belcher ("D. Belcher Decl."), Ex. 1 (Transcript Entry Appendix) at 2 (collecting entries, totaling 45 hours, that

involve review or summary of transcripts). On November 17, 2022, for example, a partner spent five hours summarizing trial transcripts. *See* L. Hurst Decl. Ex. 2 at 4 (11/17/22 entry); *see also id.* (11/18/22 entry logging eight hours summarizing trial transcripts and working on opening brief). Counsel's time records contain other, similar examples.[1] This is not reasonable. *See 515 Ave. I Corp. v. 515 Ave. I Tenants Corp.*, 2010 WL 4904671, at *9 (N.Y. Sup. Ct. Dec. 1, 2010) (reducing attorney's fees where "virtually all of the time" was billed at the partners' rate given that there was no reason why "virtually all of the services required the attention of the more experienced attorneys with the higher billing rates"). No client would pay partners for transcript summaries, and "[h]ours that are not properly billed to one's *client* are also not properly billed to one's *adversary.*" *Hensley*, 461 U.S. at 434 (citation omitted); *Orser v. Wholesale Fuel Distribs.-CT, LLC*, 108 N.Y.S.3d 675, 681, 685–86 (N.Y. Sup. Ct. 2018) (same), *aff'd*, 105 N.Y.S.3d 137 (N.Y. App. Div. 2019).

The associate work performed by partners also extended to many other tasks, such as basic research and pulling reports. For example, on November 9, 2022, a partner logged seven hours to "research case law and legislative history on 349 and 350; review pleadings relevant to appeal; review JJ's reply ISO mtn to designate; [and] pull and review Judicial Center reports on CAFA and effect of diversity consumer protection actions in federal court." L. Hurst Decl. Ex. 2 at 3–4 (11/09/2022 entry). On November 18, 2022, a partner spent eight hours on the following: "work on opening brief/summarize trial transcript of McAlindon". *Id.* at 4. On February 3, 2023, a partner logged 5.75 hours to excerpt the record and draft an index, plus discuss and revise the opening brief. *Id.* at 8. Much of this work was self-evidently associate work.

A great deal more work was also almost certainly associate work, but generic narratives conceal the extent. For example, Ms. Hurst logged nearly 100 hours to work described simply as

---

[1] *See, e.g.*, L. Hurst Decl. Ex. 2 at 4 (11/14/2022 Hurst entry logging six hours reviewing the trial transcripts and exhibits to gather facts for the summary of the case and summary of facts); *id.* (11/16/2022 Hurst entry logging three hours reviewing trial transcripts); *id.* at 5 (11/21/2022 Hurst entry logging three hours on review or summary of trial transcripts and work on opening brief); *id.* (11/22/2022 Hurst entry logging two and three-quarter hours on review or summary of trial transcripts); *id.* (11/30/2022 Hurst entry logging six hours on review or summary of trial transcripts); *id.* (12/01/2022 Hurst entry logging six hours on review or summary of trial transcripts, exhibits, and demonstratives).

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

"work on the opening brief." *See generally* D. Belcher Decl., Ex. 2 ("Work on Opening Brief" Entry Appendix) at 2 (collecting entries, totaling 96 hours, that involve some variation of "work on opening brief").[2] Without more detail, there is no way to understand what part of this work was basic drafting, hunting for supporting factual or legal citations, or higher-level partner work.

When block billing and insufficient descriptions prevent effective review, courts commonly reduce the lodestar in response. *See, e.g.*, *Day v. SBC Disability Income Plan*, 2008 WL 2783482, at *3 n.6 (N.D. Cal. July 17, 2008) (ruling that the "use of block billing further supports the reduction" of the lodestar given that counsel's request for fees "provide[d] scant detail on the amount of time billed related to particular projects . . . because he lump[ed] together multiple tasks"); *Welch*, 480 F.3d at 948 (noting that a block bill format "makes it more difficult to determine how much time was spent on particular activities" and so a "district court may properly impose a reduction for block billing . . . .").

Here, if associates billing at half the partner rate had performed even half of the 782.25 hours of attorney time recorded by Class Counsel, that alone would reduce the lodestar by 25%.

\* \* \*

The combined effect of Class Counsel's quarter-hour billing and use of 100% partner and 0% associate time was to significantly overstate their lodestar, making it not "reasonable" under the GBL. N.Y. Gen. Bus. Law §§ 349(h), 350-e(3). Precedent would allow this Court to reduce the lodestar by as much as 40%. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (noting that district courts have "a great deal of discretion in determining the reasonableness" of attorney's fees and making adjustments to the lodestar "to account for other factors which are not subsumed within it"); *see also, e.g.*, *Welch*, 480 F.3d at 948 (permitting the district court to impose a 20% reduction for quarter-hour and block billing); *Murphy*, 2024 WL 1221963, at *6 (applying a 40% total reduction based on block billing, vague time entries, concerns regarding staffing, references to unrelated work, potentially duplicative or inefficient

---

[2] To be clear, this appendix does *not* include entries that, for example, logged "research for opening brief" or "discuss[ion] [of] opening brief." Instead, this appendix, and the corresponding total, rely exclusively on entries that say some variation of "work on opening brief" with no additional detail.

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

billings, and balancing the equities); *Ass'n of Holocaust Victims v. Bank Austria Creditanstalt AG*, 2005 WL 3099592, at *7 (S.D.N.Y Nov. 17, 2005) (reducing attorneys' fee award by 25% "to account for . . . instances of block billing, vagueness, and excess"). Here, the Court should conservatively reduce the claimed lodestar of $618,970 by 25% and award no more than $464,225.50.

## II.    The Court should not increase the fee award by any multiplier.

After reducing the lodestar, the Court should not increase the fee award by any multiplier. It is doubtful that a multiplier is ever allowed for fee awards under New York's GBL. In all events, a multiplier is not appropriate here because the lodestar already compensates for all the factors Class Counsel rely on to claim more.

### A.    It is doubtful that a lodestar multiplier is authorized by the New York GBL, and one has never been used to award attorneys' fees under the GBL.

To start, "New York public policy disfavors any award of attorneys' fees to the prevailing party in a litigation." *Saul v. Cahan*, 61 N.Y.S.3d 116, 118–19 (N.Y. App. Div. 2017) (quoting *Pickett v. 992 Gates Ave. Corp.*, 979 N.Y.S.2d 853, 854 (N.Y. App. Div. 2014)). Statutes like the GBL that go against this principle "are in derogation of common law" and thus "must be strictly construed." *Id.* (quoting *State Farm Fire & Cas. v. Parking Sys. Valet Serv.*, 926 N.Y.S.2d 541, 545 (N.Y. App. Div. 2011)). And while the GBL permits (but does not require) courts to award "reasonable" attorney's fees to a prevailing plaintiff, N.Y. Gen. Bus. §§ 349(h), 350-e(3), it does not explicitly authorize courts to enlarge such fees using a multiplier. "[A]bsent *explicit* statutory authority," New York courts do not award fees. *See Baker v. Health Mgmt. Sys., Inc.*, 772 N.E.2d 1099, 1104 (N.Y. 2002). It is therefore quite likely that the New York Court of Appeals, if directly faced with the question, would hold that multipliers **cannot** be awarded under the GBL. This Court must therefore hold the same.

What is certain is that no New York case **has** awarded a lodestar multiplier under the GBL's fees provision. When Class Counsel claim that multipliers are routinely approved in cases "**involving** [the] GBL," Pl.'s Br. 17–18 (emphasis added), they are being misleading because none of their cited cases awarded attorneys' fees **under** the GBL. They all awarded fees under

6

class action settlement agreements instead and used a high-level lodestar method simply to "cross check" whether the percentage of the common fund class counsel requested was "reasonable." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (cross-checking a request for one-third of the fund); *see also Edwards v. Mid-Hudson Valley Fed. Credit Union*, 2023 WL 5806409, at *12–13 (N.D.N.Y. Sept. 7, 2023) (using a high-level lodestar to "cross-check" a request for 33.33% of the class settlement fund); *Sykes v. Mel Harris & Assocs., LLC*, 2016 WL 3030156, at *15–16 (S.D.N.Y May 24, 2016) (using a high-level lodestar to cross-check a request for 24% of the class settlement amount).

This Court should not be the first ever to hold that a multiplier may be used to increase fees awarded under the GBL.

**B.      Regardless, a multiplier should not be awarded here because it would result in inappropriate double-counting.**

Even if the GBL permitted a lodestar multiplier (it does not), a multiplier would not be appropriate here because all the factors Class Council invoke to claim one are already accounted for by the lodestar itself.

Under New York and federal law, there is a strong presumption that the lodestar is sufficient. *See, e.g.*, *Orser*, 108 N.Y.S.3d at 681–82 (explaining that "the lodestar methodology results in a 'presumptively reasonable fee'"); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542–43 (2010) (explaining that there is a "strong presumption that the lodestar method yields a sufficient fee" (cleaned up)). Consistent with that presumption, a multiplier is permitted only "in extraordinary circumstances" where counsel has "identif[ied] a factor that the lodestar does not adequately take into account and prov[en] with specificity that an enhanced fee is justified." *Perdue*, 559 U.S. at 546.

Moreover, courts cannot increase a lodestar "based upon factors already included in the lodestar calculation itself because doing so effectively double-counts these factors." *Orser*, 108 N.Y.S.3d at 681–82 (quoting *Millea v. Metro-N.R.R. Co.*, 658 F.3d 154, 166–76 (2d Cir. 2011)); *see also Perdue*, 559 U.S. at 546 ("[F]actors subsumed in the lodestar calculation cannot be used

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

as a ground for increasing an award above the lodestar."). The factors already included in the lodestar calculation are comprehensive and include:

> (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved.

*Diaz v. Audi of Am., Inc.*, 873 N.Y.S.2d 308, 311 (N.Y. App. Div. 2008).

All the factors Class Counsel cite in support of a multiplier—the "novelty and difficulty of the issues," "the skill required," "the amount involved and results obtained," and "the contingent nature of the fees," Pl. Br. 16–25—are *already* reflected in the lodestar calculation, *see Diaz*, 873 N.Y.S.2d at 311. They cannot, therefore, justify a multiplier. *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2023 WL 112429, at *10–11 (S.D.N.Y. Jan. 5, 2023) (clarifying that in lodestar cases a multiplier is warranted only in "extraordinary circumstances" and cannot be based on "[f]actors that have already been subsumed in the lodestar calculation" (quotations omitted)).

Consistent with New York law, this Court has previously recognized that "the skill of counsel, the difficulty and novelty of the underlying legal issues, and the contingent nature of the fee award are already baked into the unadorned lodestar." *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1287 (N.D. Cal. 2014) (Seeborg, J.) (applying California law which, like New York, prohibits double-counting of factors already reflected in the hourly rate and time spent to justify a lodestar multiplier). Thus, the Court declined to apply a multiplier in cases when, as here, "skill is evidenced by . . . **sizeable hourly rates**." *Id.* (emphasis added); *see also Ousmane*, 2009 WL 722294, at *15 ("The quality and significance of the work are factors that have already been taken into consideration 'by allowing counsel to recover **generous hourly fees**.'") (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 56 (2d Cir. 2000)) (emphasis added).

Similarly, this Court has held that the complexity of a case is also not a reason for a multiplier because the "difficulty and novelty of the underlying legal issues are reflected in the **significant number of hours** logged over the course of this litigation, and in the skill (and thus

8

**the rate**) of the attorneys working on plaintiff's behalf." *Rodriguez*, 53 F. Supp. 3d at 1287 (emphases added); *see also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) ("[B]ecause the time and labor spent by class counsel were subsumed within this lodestar figure, they could not justify an upward multiplier." (cleaned up)); *Blum v. Stenson*, 465 U.S. 886, 898–99, (1984) ("The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates.").

Finally, this Court has explained that "the lodestar also accounts for the contingent nature of this case" and "reflects," through rates and hours, the risk Class Counsel undertook in "litigating this complex case from start to finish" and "achiev[ing] a result that benefits both its client and the general public." *Rodriguez*, 53 F. Supp. 3d at 1287; *see also In re Bolar Pharm. Co., Inc., Sec. Litig.*, 800 F. Supp. 1091, 1097 (E.D.N.Y. 1992) (rejecting argument that a multiplier was warranted "because the litigation was undertaken on a contingency basis," based on the court's view that counsel "presumably considered" the "[r]isk of failure" before taking the case and took it "into account in the billable hours and fee rates used to calculate the lodestar"); *Edwards v. Ford Motor Co.*, 727 F. App'x 233, 236 (9th Cir. 2018) (affirming district court's denial of plaintiff's request for a 1.5 times contingency multiplier because counsel's average hourly rate already compensated for contingent risk).

In short, all the factors Class Counsel cite to justify increasing their lodestar are already accounted for in the lodestar by their high rates and many hours. To increase the lodestar further would be double counting and would produce an unreasonable fees award. The Court should therefore deny any multiplier.

## CONCLUSION

For the reasons set forth above, Premier respectfully requests the Court to reduce Class Counsel's lodestar calculation to no more than $464,225.50 and not to increase it with a multiplier.

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

Date: December 16, 2024

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Aaron D. Van Oort*
Aaron D. Van Oort
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000

David A. Belcher
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California  90067
Telephone: (310) 203-4000

Attorneys for Defendant
PREMIER NUTRITION CORPORATION

DEFENDANT'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXED EXPENSES
CASE NO. 3:16-CV-06980-RS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

_s/ David A. Belcher_
David A. Belcher

Attorneys for Defendant
PREMIER NUTRITION CORPORATION

11