BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-CV-06980 RS<br><br>**MONTERA'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES AND NON-TAXED EXPENSES ON APPEAL AND CROSS APPEAL**<br><br>**CLASS ACTION**<br><br>**Date:      January 30, 2025**<br>**Time:      1:30 p.m.**<br>**Judge:     Richard Seeborg**<br>**Courtroom: 3, 17th Floor**<br><br>Complaint Filed:      December 5, 2016 |

BLOOD HURST & O' REARDON, LLP

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.   The Lodestar Is Reasonable and Should Not Be Reduced......................................2

    A.   Appeals Require Partner-Level Work ...........................................................2

    B.   Billing in 15-Minute Increments Did Not Increase the Lodestar ...............6

II.  The Court Should Award a 1.5 Multiplier...............................................................8

    A.   New York Authorizes Multipliers as Part of the Lodestar Method
        to Determine a Reasonable Fee Award...........................................................8

    B.   The Court Should Enhance the Lodestar for the Fees on Appeal ..............9

CONCLUSION ...................................................................................................................13

BLOOD HURST & O' REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beastie Boys v. Monster Energy Co.*,
  112 F. Supp. 3d 31 (S.D.N.Y. 2015)..................................................................................4

*Bobol v. HP Pavilion Mgmt.*,
  No. C 04 00082 JW (RS), 2006 U.S. Dist. LEXIS 21125
  (N.D. Cal. Apr. 10, 2006) ...................................................................................................6

*Diaz v. Audi of Am., Inc.*,
  873 N.Y.S.2d 308 (N.Y. App. Div. 2008) .......................................................................10

*Doe v. MacLeod*,
  No. 18-cv-03191, 2024 U.S. Dist. LEXIS 56288
  (C.D. Ill. Mar. 28, 2024) ....................................................................................................7

*Edwards v. Mid-Hudson Valley Fed. Credit Union*,
  No. 1:22-cv-00562-TJM-CFH , 2023 U.S. Dist. LEXIS 158085
  (N.D.N.Y. Sept. 7, 2023) ....................................................................................................9

*Garcia v. Resurgent Capital Servs.*,
  No. C-11-1253 EMC , 2012 U.S. Dist. LEXIS 123889
  (N.D. Cal. Aug. 30, 2012) ...................................................................................................5

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019).............................................................................................8

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974)............................................................................................10

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*,
  No. 05 Civ. 6757 (LTS) (MHD), 2009 U.S. Dist. LEXIS 31940
  (S.D.N.Y. Feb. 23, 2009) ....................................................................................................4

*In re Marriage of Shaban*,
  88 Cal. App. 4th 398 (2001) .........................................................................................2, 3

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008).................................................................................3, 4, 5, 7

*Murphy v. Celestron Acquisition, LLC*,
  No. 5:20-cv-03642-EJD , 2024 U.S. Dist. LEXIS 49710
  (N.D. Cal. Mar. 20, 2024)...................................................................................................5

BLOOD HURST & O' REARDON, LLP

*Nichols v. Noom, Inc.*,
No. 20CV-3677 (KHP), 2022 U.S. Dist. LEXIS 123146
(S.D.N.Y. July 12, 2022) ...................................................................................9

*Ousmane v. City of N.Y.*,
No. 402648/04, 2009 N.Y. Misc. LEXIS 574
(N.Y. Mar. 17, 2009)........................................................................................10

*Penton v. Johnson*,
No. 2:11-cv-00518-DJC-KJN , 2024 U.S. Dist. LEXIS 205632
(E.D. Cal. Nov. 12, 2024) ..............................................................................4, 7

*Plavin v. Grp. Health Inc.*,
35 N.Y.3d 1 (N.Y. App. Div. 2020)...................................................................5

*Rahmey v. Blum*,
466 N.Y.S.2d 350 (N.Y. App. Div. 1983) ................................................ 3, 8, 10, 12

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
281 F. Supp. 3d 833 (N.D. Cal. 2017)...............................................................7

*Rodriguez v. Barrita, Inc.*,
53 F. Supp. 3d 1268 (N.D. Cal. 2014)..............................................................12

*Sykes v. Mel Harris & Assocs., LLC*,
No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566
(S.D.N.Y. May 24, 2016) ..................................................................................9

*Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*,
No. 10 Civ. 05256 (KMW (DF), 2012 U.S. Dist. LEXIS 164261
(S.D.N.Y. Nov. 14, 2012) .................................................................................5

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007)..........................................................................6, 7

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997)............................................................................11

**Statutes**

N.Y. GBL § 349...........................................................................................5, 8, 9

N.Y. GBL § 350.............................................................................................5, 8

BLOOD HURST & O' REARDON, LLP

00221557

**INTRODUCTION**

Montera's request for attorney fees on appeal should be granted in full. Montera's counsel worked hard and smart and were remarkably successful against the distinguished appellate specialists Premier hired to overturn the jury verdict and this Court's judgment against it. Because of her counsel's tremendous work on Premier's cross-appeal, its liability for falsely advertising Joint Juice is affirmed by the Ninth Circuit. Because of her counsel's exemplary work on Montera's appeal, the Ninth Circuit remanded Premier's due process challenge to statutory damages and, if Montera's pending motion is granted, the damages to the New York class will increase 10-fold.

Premier does not challenge that Montera is entitled to attorney fees on appeal, that the overall hours her counsel worked on the appeals and derivative motions is reasonable, that counsel's hourly rates are appropriate, or that the expenses are justified.

As such, Premier's request for a 25% across-the-board reduction in the lodestar rings hollow. It argues the lodestar should be slashed because Montera should have used lower-paid associates against Premier's appellate specialists who are renowned for "winning reversal of adverse jury verdicts in both federal and state courts." https://www.faegredrinker.com/en/professionals/v/van-oort-aaron-d#tab-Overview. Montera efficiently litigated the appeals chiefly with just one partner. The decision was successful, and, in any event, staffing decisions of this nature are entitled to great deference. Premier's request for a 25% haircut because of quarter-hour billing should also be rejected out of hand. Premier must (but does not) identify *any* problematic billing entries—not a single instance where Montera's counsel rounded up a short task (e.g., reading an email) to 15 minutes. Montera's counsel does not bill for such short tasks, meaning their lodestar is already understated.

The 1.5 multiplier is justified to fully account for the extraordinary results achieved on appeal, the exemplary skill required, and the contingent nature of

BLOOD HURST & O' REARDON, LLP

00221557

counsel's fees. New York courts (as well as the Ninth Circuit and the Supreme Court) recognize that when the lodestar does not adequately take into account such factors, the lodestar may be enhanced to arrive at a reasonable fee award. Even Premier acknowledges this precept.

Premier states that the multiplier may not double count factors the lodestar fully accounts for (a point not contested), and then concludes a multiplier cannot be awarded here. Premier reaches its conclusion without reasons. It does not explain why here Montera has double counted. It does not respond to Montera's analysis and evidence showing that the unadorned lodestar in this case does not fully account for the results achieved, the skill required, and the contingency fees. If there were ever circumstances justifying the modest multiplier requested, these appeals are it. The Court should award attorney fees on appeal in the full amount requested by Montera.

## ARGUMENT

### I.    The Lodestar Is Reasonable and Should Not Be Reduced

#### A.    Appeals Require Partner-Level Work

For the appeals and motion practice in the Ninth Circuit, Premier sidelined its trial counsel and hired appellate specialists, Aaron Van Ort and Mark Taticchi, partners from Faegre Drinker's Minneapolis and Washington D.C. offices. And yet, Premier asserts Montera could have faced its appellate specialists and litigated the appeals using associates for at least 50% of the work on the appeals. Oppo. at 5. It wrongly argues that Montera's partner-heavy billing requires a 25% reduction in counsel's lodestar.

First, appellate work by its nature requires attorneys—usually partners—with years of experience and knowledge of appellate practice. Appellate briefing requires exhaustive research and analysis, strategic planning, and very careful drafting. "For better or worse, appellate briefs receive greater judicial scrutiny than trial level points and authorities, …." *In re Marriage of Shaban*, 88 Cal. App. 4th 398, 409 (2001). Appellate work with its focus on the examination of error has a different orientation

Blood Hurst & O' Reardon, LLP

2                                Case No. 3:16-cv-06980-RS

than trial work and "is most assuredly not the recycling of trial level points and authorities." *Id*. at 408. "[A]ppellate practice entails rigorous original work in its own right." *Id*. at 410. The Ninth Circuit similarly recognizes that trial work such as "preparing summary judgment motions and appeals are not commensurate tasks, ...." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008).[1] Premier's argument that Montera should have heavily relied on associates, while it used appellate specialists, is hardly worthy of comment.

Premier's main gripe concerns nine billing entries totaling 45 hours in which Leslie Hurst (Montera's primary attorney on the appeals), spent time reading the record and summarizing parts of it. Belcher Decl., Ex. 1. It goes without saying that the attorney who crafts the arguments, writes the appellate briefs, and faces the panel for oral argument must intimately know the record on appeal.

Ms. Hurst necessarily reviewed the trial transcript, the trial exhibits and the orders and rulings challenged on appeal. She summarized and took notes on key witness testimony because she knew (or discovered as she read) what testimony was relevant to the issues on appeal or was testimony she wanted to use to describe the trial to the Ninth Circuit. Supp. Hurst Decl., ¶¶ 2–3. Premier is wrong that this work should have been done by an associate. Employing an associate to first review the record on appeal would have been duplicative and increased the lodestar to no benefit. *Id*., ¶ 3; *see also Moreno*, 534 F.3d at 1114–15 ("lead counsel [could] doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely.").

Second, Premier cites no case where a court has reduced attorney fees *on an appeal* for "partner-heavy" billing. The cases relied upon by Premier involved pre-trial work where the court found that tasks which did not "require[] particularly

---

[1]    New York looks to federal cases in determining reasonable attorney fees under the lodestar/multiplier method. *See, e.g.*, *Rahmey v. Blum*, 466 N.Y.S.2d 350, 356–59 (N.Y. App. Div. 1983).

BLOOD HURST & O' REARDON, LLP

00221557

sophisticated or complex lawyering," such as reviewing discovery responses and writing letters, had been overstaffed with multiple partners. *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, 2009 U.S. Dist. LEXIS 31940, at * 10–11 (S.D.N.Y. Feb. 23, 2009). In *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015), also cited by Premier, the court noted that commonly "with respect to discovery and other pretrial tasks, that associates shoulder much of the work, … and that partners take lead roles as to projects for which their expertise adds value."

Premier is also wrong that 100% of the time on the appeals was incurred by partners. In addition to their paralegal, when practicable Ms. Hurst enlisted Jennifer MacPherson, who was "of counsel" for BHO, to help with legal research and oral argument preparation. Hurst Decl., ¶ 13. Ms. MacPherson spent over 80 hours on the appeals. *Id.*, ¶ 33. "[I]t is entirely natural to have multiple attorneys involved in preparation for appellate argument." *Penton v. Johnson*, 2024 U.S. Dist. LEXIS 205632, at *4–5 (E.D. Cal. Nov. 12, 2024).

Third, Premier is blind to the nature of small firms where partner involvement is essential. Premier's counsel, Faegre Drinker, is an enormous firm with 16 offices in the United States and over 1,200 attorneys and consulting professionals. Its corridors are doubtless lined with associates and its business model depends on heavy associate involvement. Montera's counsel, Blood Hurst & O'Reardon, LLP ("BHO"), is a small firm that fluctuates between six and seven attorneys, including two to three associates. In small firms, the partners necessarily conduct the bulk of the legal work.

Regardless, the cost effectiveness of BHO's small-firm model and whether a large firm, like Faegre Drinker, could have litigated the appeals for less is not a proper consideration in determining a fee award. "While it is appropriate to consider the skill required to perform a task [citation], the district court may not set the fee based on speculation as to how other firms would have staffed the case." *Moreno*, 534 F.3d at 1114. The court should focus on the "statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do" consumer protection work. *Id.* at

BLOOD HURST & O' REARDON, LLP

00221557

1115; *see also Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 9 (N.Y. App. Div. 2020) (discussing provision of reasonable attorney fees to encourage of private enforcement of GBL §§ 349 and 350).

Fourth, Premier identifies 18 time entries that it contends are impermissibly vague or block billed. Opp. at 4–5; Belcher Decl., Ex. 2. The time entries of Ms. Hurst are not "block billed" and in any event block billing is not prohibited. Block billing is when the attorney "record[s] the total number of hours they spent on the matter each day, without breaking out the time they spent on separate tasks." *Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic,* 2012 U.S. Dist. LEXIS 164261, at *32 (S.D.N.Y. Nov. 14, 2012). "Block-billing is not inappropriate per se when the party seeking fees meets the basic requirements of 'listing his hours and identifying the general subject matter of his time expenditures.'" *Garcia v. Resurgent Capital Servs.*, 2012 U.S. Dist. LEXIS 123889, at *23 (N.D. Cal. Aug. 30, 2012) (quoting *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)). The key is whether the overall time spent on the task is reasonable.

Here, Premier identifies 96 hours Ms. Hurst billed to "work on opening brief." Belcher Decl., Ex. 2. The entries are not unduly vague; they sufficiently describe the work done. Premier does not contend the time spent on the opening brief was unreasonable. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112.

Further, "[w]hen district courts apply discounts to block-billings, [] they may not apply across-the-board discounts, but must identify the hours which are being discounted as block-billings." *Murphy v. Celestron Acquisition, LLC*, 2024 U.S. Dist. LEXIS 49710, at *15 (N.D. Cal. Mar. 20, 2024) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)). Premier's request to slash Montera's fees across the board because of 18 purported block-billed entries should be denied. Opp. at 5.

BLOOD HURST & O' REARDON, LLP

00221557

BLOOD HURST & O' REARDON, LLP

**B.    Billing in 15-Minute Increments Did Not Increase the Lodestar**

Premier also argues for a 25% lodestar reduction because counsel billed in 15-minute increments. It asserts (without evidence) that billing in 15-minute increments "result[ed] in an overstatement of the time actually worked." Opp. at 2.

Billing in 15-minute increments may add an upward bias when tasks that take a short amount of time, for instance reading an email or leaving a telephone message, are rounded up to 15 minutes. However, when such tasks are not billed and when the total number of hours is reasonable, "there is no cause to assume that the quarter hour billing increments resulted in a net increase to a degree that would warrant further adjustment." *Bobol v. HP Pavilion Mgmt.*, 2006 U.S. Dist. LEXIS 21125, at *16–18 (N.D. Cal. Apr. 10, 2006). Thus, in *Bobol*, there was no reduction for 15-minute billing based on evidence that counsel "simply [did] not [] bill at all for short tasks that would not warrant a quarter-hour entry." *Id.* at *16. In contrast, in *Welch*, the district court's reduction was affirmed because the "district court expressly correlated its reduction for quarter hour billing to [counsel's] actual over-billing." 480 F.3d at 949. In other words, the court identified the phone calls and emails counsel billed at 15 minutes "that likely took a fraction of the time." *Id.*

Here, Premier has not identified a single problematic entry. There are none. As is their general practice, for work on the appeals, Montera's counsel did not bill for reading emails, for reading and tracking court filings and communications, or for the countless short discussions between counsel that did not warrant a 15-minute billing. Supp. Hurst Decl., ¶ 4; *see also* Hurst Decl., Ex. 3 (time entries). Counsel also excluded time spent by attorneys who worked fewer than ten hours on the appeals, excluded research conducted for the appeals if the research was conceivably used in contemporaneous briefing in the related state cases against Premier, and excluded hours spent by co-counsel. Hurst Decl., ¶ 33. By excluding this time, Montera's counsel have already understated their lodestar. There is no call for further reduction for billing in 15-minute increments when Premier has not identified any problematic time

entries. *See Penton*, 2024 U.S. Dist. LEXIS 205632, at *4–5 (that plaintiff's counsel utilized quarter-hour billing was not a sufficient basis to reduce attorney's fees); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) ("Defendants have not identified any time entries where quarter-hour billing resulted in an inflation of hours"); *cf. Doe v. MacLeod*, 2024 U.S. Dist. LEXIS 56288, at *35 (C.D. Ill. Mar. 28, 2024) ("courts in the Seventh Circuit have found that billing in quarter-hour increments is acceptable if reasonable").[2]

Premier concludes that the "combined effect" of quarter-hour billing and partner staffing is an overstated lodestar and that "[p]recedent would allow this Court to reduce the lodestar by as much as 40%." Opp. at 5. Actually, precedent requires that except for small reductions "no greater than 10 percent" the court must explain the reduction with specificity. *Moreno*, 534 F.3d at 1112. The court must identify the problematic hours and "explain how or why the reduction fairly balances those hours" that were improperly billed. *Welch*, 480 F.3d at 948 (cleaned quote). Here, Premier has not identified a single billing entry inflated by quarter hour billing. And the appeals were appropriately litigated by a partner with appellate experience.

Finally, Premier's arguments regarding "top-heavy" work, block billing and billing in 15-minute increments should sound familiar—Premier made the same arguments in its opposition to Montera's request for fees incurred at the trial level. The Court found that "[n]one of these arguments are particularly potent. The hours of work submitted by Plaintiff's counsel and the structure of their practice appear

---

[2]   Premier identifies *no* entries that were overbilled due to quarter-hour billing. Even if Premier showed that *every* single entry was overbilled by the maximum possible amount—9 minutes (the difference between quarter-hour and tenth-hour increments)—the theoretical maximum inflation in this case would amount to a 4.05% overstatement, far below Premier's requested 25% reduction. The worst-case rounding occurs when a task takes just over 6 minutes (a tenth-hour increment) and is rounded up to 15 minutes, resulting in a 9-minute (0.15-hour) overstatement. Plaintiff's counsel's 822.25 billed hours consist of 222 time entries. If every one of those entries was maximally overstated, the total overstatement would be 33.3 hours, which represents only 4.05% of the total time billed.

BLOOD HURST & O' REARDON, LLP

00221557

reasonable, and in any event their professional judgment in these areas is entitled to deference." Dkt. 346 at 6 (citing *Moreno*, 534 F.3d at 1112). Premier's request for an across the board 25% reduction in the lodestar should be rejected.

## II.    The Court Should Award a 1.5 Multiplier

### A.    New York Authorizes Multipliers as Part of the Lodestar Method to Determine a Reasonable Fee Award

As this Court previously found, when attorney fees are provided by statute, New York determines a reasonable fee award using the lodestar/multiplier method. Dkt. 346 at 7. Under the lodestar method, multipliers are used when the unadorned lodestar does not account for the special circumstances of the case, be it the result achieved, the skill required, the extreme risk, or some other factor. *Rahmey v. Blum*, 466 N.Y.S.2d 350, 358 (N.Y. App. Div. 1983); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (discussing lodestar/multiplier method).

Premier posits—without authority—that in determining a reasonable fee award under GBL §§ 349 and 350, multipliers are not permitted. It reasons that although GBL §§ 349 and 350 expressly authorize the award of reasonable attorney fees, the statutes do not expressly authorize using a multiplier to adjust the lodestar. Opp. at 6.

Premier misapprehends the lodestar method. GBL §§ 349 and 350 authorize reasonable attorney fees to a prevailing plaintiff and New York uses the lodestar/multiplier method to determine the amount of fees to which the plaintiff is entitled. Under the lodestar/multiplier method, a court starts with the unadorned lodestar and adjusts the lodestar up (or down) to arrive at a reasonable fee given the circumstances of the case. *Rahmey*, 466 N.Y.S.2d at 358. There is nothing in particular about GBL §§ 349 or 350 that alters the lodestar/multiplier method of determining a reasonable fee award.

BLOOD HURST & O' REARDON, LLP

00221557

Premier next states that no court has approved a multiplier under GBL §§ 349 or 350, except in the context of a class action settlement. It advises the Court it "should not be the first." Opp. at 7.

Premier does not contend that the considerations courts use to determine reasonable attorney fees are different in the settlement context. The considerations are the same. And although Premier denigrates Montera's authorities, the fact is that at least three New York district courts have approved fee awards in cases alleging violation of GBL § 349 where the approved fee resulted in multipliers of 2.3, 2.88 and 3.3, showing that the courts did not believe that GBL § 349 prohibits the use of multipliers to determine a reasonable fee award.[3]

New York law without doubt authorizes courts to adjust the lodestar to arrive at a reasonable fee award. The question here is whether the 1.5 multiplier requested is appropriate under the circumstances of this case.

### B.   The Court Should Enhance the Lodestar for the Fees on Appeal

The unadorned lodestar presumptively yields a reasonable fee. However, as even Premier concedes, "in extraordinary circumstances" where counsel has "identif[ied] a factor that the lodestar does not adequately take into account" an enhanced lodestar is awarded to provide the reasonable fee award to which the prevailing plaintiff is entitled. Opp. at 7 (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010) (affirming rule that lodestar "may be increased due to superior performance and results").

---

[3]   *Edwards v. Mid-Hudson Valley Fed. Credit Union*, 2023 U.S. Dist. LEXIS 158085, at *35–36 (N.D.N.Y. Sept. 7, 2023) (in settlement involving GBL § 349, approving multiplier of 2.3 finding "[t]his multiplier is within the range of accepted multipliers for this Circuit."); *Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at *32–33 (S.D.N.Y. July 12, 2022) (in settlement involving GBL § 349, multiplier of 2.88 "is fully consistent with that found to be reasonable in other cases in this Circuit."); *Sykes v. Mel Harris & Assocs., LLC*, 2016 U.S. Dist. LEXIS 74566, at *48 (S.D.N.Y. May 24, 2016) (in settlement involving GBL § 349, multiplier of 3.3, "is consistent with other cases in the Second Circuit").

BLOOD HURST & O' REARDON, LLP

00221557

Premier argues a multiplier is inappropriate here because factors subsumed in the lodestar cannot be used as grounds for an enhancement. It contends that the bases for Montera's multiplier are already included in the lodestar calculation. Opp. at 7–8.

The factors relevant to the lodestar calculation "may have been subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Rahmey*, 466 N.Y.S.2d at 358. Indeed, the factors significantly overlap.[4] This is logically so because in both determining the lodestar (hours reasonably expended at a reasonable hourly rate) and in adjusting the lodestar, the goal is the same—the "computation of a reasonable fee award." *Id.*

But, when the unadjusted lodestar does not adequately take into account what New York calls "more subjective factors," such as stellar results, extraordinary skill, or the contingent nature of the work, the lodestar is enhanced to provide reasonable attorney fees to the prevailing plaintiff. *Ousmane v. City of N.Y.*, 2009 N.Y. Misc. LEXIS 574, at *24 (N.Y. Mar. 17, 2009) (multipliers are awarded "based on certain more subjective factors" including quality of representation, risk of success and difficulty of the case).

---

[4]     The factors considered in determining the lodestar include: "(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved." *Diaz v. Audi of Am., Inc.,* 873 N.Y.S.2d 308, 311 (N.Y. App. Div. 2008).

In enhancing the lodestar, New York looks to the factors first suggested in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), which are: (1) the novelty and difficulty of the questions presented; (2) the skill requisite to perform the legal services properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) whether the fee is fixed or contingent; (5) time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the amount involved and the results obtained; (8) the undesirability of the case; and (9) awards in similar cases. *Rahmey,* 466 N.Y.S.2d at 358.

BLOOD HURST & O' REARDON, LLP

00221557

The Ninth Circuit likewise recognizes that the reasons for a multiplier—e.g., skill, quality, complexity and results—are in many cases adequately included in the lodestar. But, "[w]hile these factors are ordinarily reflected in the lodestar, the Supreme Court has recognized that in exceptional cases, quality of representation and exceptional results can, in fact, warrant an adjustment to the lodestar." *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997). In *Wing,* the Ninth Circuit affirmed a 3.8 multiplier based on class counsel's "first-rate job," their sheer endurance and the exceptional results obtained, especially "in light of the quality of opposition counsel." *Id*.

The modest multiplier Montera requests is not based on factors already adequately reflected in the lodestar. The lodestar does not adequately account for the exceptional results obtained, the skill required, and the contingent nature of the fees.

The results of Montera's counsel's work on the appeals is remarkable. In defeating Premier's cross-appeal, the Ninth Circuit affirmed Premier's liability for falsely advertising Joint Juice. To win this affirmance, Montera prevailed on 18 of the 19 issues and sub-issues raised by Premier, losing only prejudgment interest. In every other respect, Montera obtained affirmance of every order and ruling of the district court challenged by Premier, from pre-trial, throughout trial, and post-trial.

Equally important, Montera prevailed on her appeal. Because of this, the amount of statutory damages Premier owes the New York class is pending reconsideration and will be heard by this Court contemporaneous with this motion. If the statutory damages are increased from $8.3 million to $83 million, this exceptional result and 10-fold increase Montera's counsel obtained for the class amply justifies the modest multiplier.

The skill required to obtain these stellar results on appeal are also not adequately reflected in the unadorned lodestar. Premier's appeal raised difficult and creative issues, including issues new to the appeal like its First Amendment free speech argument. App. Dkt. 29 at 44. But most of all was the skill required to succeed

BLOOD HURST & O' REARDON, LLP

00221557

against the quality of Premier's appellate counsel. As shown, Aaron Van Oort and Mark Taticchi are pedigreed appellate specialists brought in from Minneapolis and Washington D.C. Opening Brf. at 22–23. Mr. Van Oort clerked for Justice Scalia, is the co-chair of Faegre Drinker's appellate advocacy group, is an editor of the Eight Circuit's 2022 Appellate Practice Manual, and has argued over 50 appeals in 10 of the 13 U.S. Courts of Appeal. *Id.* Mr. Van Oort was backed not only by Mr. Taticchi (a former clerk for Justice Kennedy and in 2024 voted "Ones to Watch" for appellate practice) (*id.* at 23), but also by the abundant resources and legions of attorneys available at a 1,200-attorney firm like Faegre Drinker.

The skill Montera's appellate counsel exhibited is not adequately reflected in the lodestar. For instance, the hourly rate of Ms. Hurst, Montera's primary counsel on the appeals, is $810. That is at the far low end of Faegre Drinker's rates. In 2023, Faegre Drinker obtained court approval of "5% discounted" hourly rates for its partners ranging from $775 to $1,065. Hurst Decl., ¶ 30. Awarding a modest multiplier here will better represent the reasonable value of the services rendered by Montera's counsel.

Finally, when plaintiff prevails in federal court on state law claims, the district court applies "'the more generous provisions of state law in calculating a fee award, such as a multiplier for contingent fee risk.'" *Rodriguez v. Barrita, Inc.,* 53 F. Supp. 3d 1268, 1286 (N.D. Cal. 2014) (citation omitted). New York considers contingent fee risk in awarding a multiplier. *Rahmey*, 466 N.Y.S.2d at 359 ("a contingency adjustment may be appropriate in some cases to entice private firms to undertake difficult cases in which victory is uncertain.").

Montera's counsel's hourly rates do not take into account contingent fee risk. Hurst Decl., ¶ 31. This is also supported by again comparing Montera's counsel's rates to the higher non-contingent rates of Premier's counsel. *Id.*, ¶ 30. If Montera's counsel had factored in contingent risk to their hourly rates, their rates would be higher, not

BLOOD HURST & O' REARDON, LLP

00221557

lower than defense counsel's non-contingent rates. Thus, the contingent fee risk also supports the 1.5 multiplier requested.

Montera's counsel worked hard and smart on the appeals and obtained a remarkable result for class members. A 1.5 multiplier results in a fee award that appropriately compensates counsel for their work and results achieved.

## CONCLUSION

Appellant and cross-appellee Mary Beth Montera respectfully requests that the court issue an order granting attorney fees on appeal in the amount of $928,455 and non-taxed expenses in the amount of $3,053.39.

Respectfully submitted,

Dated: January 14, 2025

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:          *s/  Timothy G. Blood*
                  TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA  92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

REPLY ISO ATTORNEY FEES AND NON-TAXED EXPENSES ON APPEALS

BLOOD HURST & O' REARDON, LLP

00221557

*Additional Attorneys for*
*Plaintiff / Appellant / Cross-Appellee*

BLOOD HURST & O' REARDON, LLP

14    Case No. 3:16-cv-06980-RS

00221557

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 14, 2025.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

REPLY ISO ATTORNEY FEES AND NON-TAXED EXPENSES ON APPEALS

BLOOD HURST & O' REARDON, LLP

00221557