BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

MARY BETH MONTERA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,

Defendant.

Case No. 3:16-CV-06980 RS

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION ON REMAND TO REASSESS STATUTORY DAMAGES AWARD**

**CLASS ACTION**

Date: January 30, 2025
Time: 1:30 p.m.
Judge: Honorable Richard Seeborg
Courtroom: Courtroom 3, 17th Floor

Complaint Filed: December 5, 2016

## TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

I. New York Procedural Rule § 901 Is Not Relevant to The Due Process Analysis ........ 2

II. GBL §§ 349/350 Do Not Prohibit Statutory Damages in Class Actions ........ 4

A. The Express Terms and Legislative Goals of §§ 349 and 350 ........ 5

B. Premier's New Interpretation of §§ 349/350 Is Improper on Remand ........ 7

III. *Wakefield* Rejected Use of the Punitive Damages Test for Statutory Damages ........ 10

IV. Under *Wakefield*, The Award of Statutory Damages Does Not Violate Due Process ........ 11

A. Given the Legislature's Deterrence Goals, Statutory Damages Do Not Violate Due Process ........ 11

B. Given the Legislature's Punitive Goals, Statutory Damages Do Not Violate Due Process ........ 13

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beslity v. Manhattan Honda*, 467 N.Y.S.2d 471 (App. Div. 1983) ........ 6

*Guzman v. Polaris Indus.*, 49 F.4th 1308 (9th Cir. 2022) ........ 7

*Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2022 U.S. Dist. LEXIS 233783 (S.D. Fla. Dec. 30, 2022) ........ 12

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) ........ 9

*Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024) ........ *passim*

*People v. Galindo*, 38 N.Y.3d 199 (N.Y. App. 2022) ........ 7

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 422 F.3d 949 (9th Cir. 2005) ........ 9, 10

*Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1 (App. Div. 2020) ........ 6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........ 2, 6

*Simply Lite Food Corp. v. Aetna Cas. & Sur. Co. of Am.*, 666 N.Y.S.2d 714 (App. Div. 1997) ........ 14

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (2020) ........ 7

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ........ 1, 13

*St. Louis, I. M. & S. R. Co. v. Williams*, 251 U.S. 63 (1919) ........ 11

*U.S. v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006) ........ 9

BLOOD HURST & O' REARDON, LLP

*U.S. v. Thrasher*,
483 F.3d 977 (9th Cir. 2007) ........ 9

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109, 1122 (9th Cir. 2022) ........ *passim*

**Statutes**

C.P.L.R. § 901(b) ........ *passim*

N.Y. GBL § 349 ........ *passim*

N.Y. GBL § 349(h) ........ *passim*

N.Y. GBL § 350 ........ *passim*

N.Y. GBL § 350-e ........ 5, 14, 15

## INTRODUCTION

The Ninth Circuit remanded this case for one reason: to "reassess Premier's substantive due process challenge to the award of statutory damages in light of the factors identified in *Wakefield*." *Montera*, 111 F.4th at 1043. Premier refuses to accept reality. Instead, according to Premier, *Wakefield* and *Montera* affirmed this Court's prior due process analysis. Premier goes even further. Based on its new-found interpretation of GBL §§ 349 and 350, Premier argues the class plaintiffs are not entitled to statutory damages at all, only actual damages.

Premier's opposition is grounded on three fundamental misstatements. One, Premier reasserts the arguments under C.P.L.R. § 901(b) it made in round one, declaring that § 901(b)—a general state rule of class procedure—is relevant to whether due process limits the statutory damages provided by GBL §§ 349 and 350. Wrong. *Montera* rejected this very argument, directing the Court on remand to look to the goals of GBL §§ 349 and 350, which are the substantive statutes that provide the statutory damages.

Two, Premier devises a brand-new interpretation of GBL §§ 349 and 350, announcing that the class is entitled to only actual damages, or at most something less than treble actual damages. According to Premier, as a matter of substantive law and express legislative command, §§ 349 and 350 preclude aggregated statutory damages in federal court and limit damages—even for individual plaintiffs—to three times actual damages. Premier's reading obviates the express terms of GBL §§ 349 and 350, which provide all prevailing plaintiffs the greater of actual damages or statutory damages. Something *Montera* already confirmed. Premier's new interpretation is directly contrary to its prior position in this Court and on appeal that the class is *entitled* to statutory damages under §§ 349/350, subject only to due process limits.

Three, according to Premier, this Court's use of the punitive damages due process test is appropriate under *Wakefield* for assessing statutory damages. Wrong. *Wakefield* expressly "decline[d] to apply the Supreme Court's tests developed in the line of cases including *BMW of North America*, 517 U.S. 559, and *State Farm*, 538 U.S. 408, outside the context of a jury's award of punitive damages[.]" 51 F.4th at 1122. *Montera* affirmed that in *Wakefield*: "We declined to endorse the application of the *State Farm* factors outside of the punitive damages context[.]" 111

F.4th at 1041.

Aside from these three fundamental misconceptions, Premier has little to say about the applicable *Wakefield* factors. It tries to convince the Court that awarding the class the lower actual damages sufficiently meets both the compensatory and deterrent goals of §§ 349/350 statutory damages. Montera presented uncontroverted evidence that this is false. Premier has no evidence this is true, falling far short of "meet[ing] the exacting *Williams* standard." *Id.* at 1121, 1123.

Premier also argues that awarding the class anything over actual damages will be a "purely punitive" award that violates its due process because Premier did nothing wrong and Joint Juice is effective as it advertised. As the jury found and the Ninth Circuit affirmed, Joint Juice is not effective, and Premier is liable for false advertising. Premier is also wrong on the law. Even when statutory damages are largely punitive (that is not the case here), they do not necessarily violate due process because legislatures are empowered to prescribe purely punitive penalties for statutory violations. Besides, here, Premier's violation of New York law was perpetrated for over a decade, was orchestrated by its senior officers and directors, continued when Premier knew Joint Juice was falsely advertised, and would still be going on today except that retailers refused to keep selling Joint Juice. Premier's conduct exemplifies the very reason the New York Legislature deemed GBL § 350 and its higher statutory damages necessary.

Under the correct *Wakefield* analysis, the $83 million in statutory damages provided by New York law is not extremely disproportionate to Premier's offense such that the Court should reduce the amount the Legislature deemed necessary to achieve compensatory, deterrent and punitive goals of statutory damages. Premier's due process challenge should be denied.

## ARGUMENT

### I. New York Procedural Rule § 901 Is Not Relevant to The Due Process Analysis

Premier begins with an argument rejected by the Ninth Circuit in *Montera*. Premier argues—once again—that the relevant statute for the Court's due process analysis is a New York rule of procedure, C.P.L.R. § 901(b). Premier acknowledges that as a state rule of procedure, § 901(b) does not apply in these federal proceedings. *See Shady Grove*, 559 U.S. 393, 403–08 (2010). It nonetheless asserts that *Montera* ruled that the substantive goals of § 901(b) are relevant to the

Court's due process reassessment.

*Montera* ruled the opposite. *Montera* ruled that this Court improperly based its initial due process determination on § 901(b). *Montera* ruled that legislative goals relevant to due process are the Legislature's goals in enacting GBL §§ 349 and 350, the statutes that authorize the statutory damages at issue. 111 F.4th at 1041 n.13. Not § 901(b).

A short reminder of Premier's prior arguments may be helpful. From the get-go, Premier told this Court that the New York Legislature's "substantive intent" in enacting C.P.L.R. § 901(b) was all important in determining the constitutionality of aggregated statutory damages under GBL §§ 349/350. Dkt. 280 at 4. Adopting the dissent's position in *Shady Grove*, Premier urged the Court to consider the "substantive goals" underlying procedural rule § 901(b), and thereby find that the aggregated statutory damages provided by §§ 349 and 350 were unconstitutionally excessive considered in light of the goals § 901(b). *Id.* at 3–6.

This Court was initially convinced by Premier. It ruled that the due process analysis "in this case must start with a discussion about the availability of statutory damages in a class action under New York law [§ 901(b)]." Dkt. 293 at 6. Following Premier's cue, the Court believed that a due process challenge to GBL §§ 349/350 statutory damages obligated it to look to the Legislators' intent in enacting rule of procedure § 901(b), which the Court described as "a means to a manifestly substantive end." *Id.* at 7 (quoting dissenting opinion in *Shady Grove*).

In vacating and remanding, the Ninth Circuit resolved this issue. First, *Montera* confirmed that in *Shady Grove*, "the Supreme Court held that because § 901(b) is procedural, not substantive, it has no application in federal diversity suits such as this." 111 F. 4th at 1038 n.8.

Second, the Ninth Circuit held that the relevant statutory goals in the Court's due process analysis on remand are the Legislature's goals in enacting GBL §§ 349 and 350, *not* the goals of § 901(b).

> *Wakefield* instructed trial courts to consider whether "aggregation [of statutory damages] has resulted in extraordinarily large awards wholly disproportionate to the goals of the statute" and whether the award "greatly outmatch[es] any statutory compensation and deterrence goals." [citation] Here, the district court considered the New York Legislature's goals in barring aggregate damages in class actions pursuant to § 901(b) and concluded that the Legislature's intent to limit aggregation of

BLOOD HURST & O' REARDON, LLP
00222321

> statutory penalties supported reducing the total damages award. With the benefit of *Wakefield*, the relevant statutory goals for the district court to consider on remand include the Legislature's "compensation and deterrence" goals in enacting GBL §§ 349 and 350—the statutes that authorized the statutory damages at issue.

*Id.* at 1041 n.13. The goals of § 901(b), substantive or otherwise, are not relevant here.

By first inverting sentences and then adding words that do not exist in *Montera*, Premier contends that in Footnote 13, the Ninth Circuit:

> [D]irected this Court to consider "the Legislature's 'compensation and deterrence goals' in enacting General Business Law §§ 349 and 350,' alongside its goals 'in barring aggregate damages in class actions pursuant to § 901(b). … The Ninth Circuit held that the relevant statutory goals 'include' the goals of GBL §§ 349 and 350, not that they are *limited* to those goals.

Oppo. at 12 (italics Premier's). Premier three times promotes its fabricated reading of Footnote 13. *Id*. at 1, 9.[1]

The unaltered Footnote 13 has one rational reading. In light of *Wakefield*, the Ninth Circuit is directing this Court on remand to look to the statutory goals of GBL §§ 349 and 350, which statutory goals *include* "compensation and deterrence," as well as other goals, such as punishing businesses which "under-cut ethical merchants[.]" Dkt. 365-1 at 1.

The relevant statutory goals are not those embodied in C.P.L.R. § 901(b). Premier's repeated citations to and reliance upon § 901(b), and its verbatim quotes from the *Shady Grove* dissent characterizing § 901(b), are not relevant and only invite the Court to again err. The Court's reassessment of Premier's due process challenge to aggregated statutory damages must look to the "goals in enacting GBL §§ 349 and 350—the statutes that authorized the statutory damages at issue." *Montera*, 111 F. 4th at 1041 n.13.

## II. GBL §§ 349/350 Do Not Prohibit Statutory Damages in Class Actions

Perhaps recognizing that § 901(b) is not relevant, Premier turns to the relevant statutes: GBL

[1] This is not the first time Premier has made questionable modifications of text. In its briefing on appeal, Premier replaced the key phrase of GBL § 349(h) with ellipses. Judge Hamilton stated that Premier's quote that "cut out the reference to violation on the issue of whether it's per person or per violation" was as an "extraordinary bit of editing." App. Dkt. 77-2 at 41:14–19; *id*. at 42:8 ("I don't understand your editing."). Judge Christen commented: "For what it's worth as feedback, I noted the same ellipses." *Id*. at 42:15–16.

BLOOD HURST & O' REARDON, LLP

§§ 349 and 350. It argues that the Legislature intended that "actual damages alone to be available" in a class action because it determined that providing aggregated statutory damages under §§ 349 and 350 "would produce excessively harsh results." Oppo. at 15. Premier posits that as a matter of substantive law, §§ 349 and 350 preclude statutory damages in class actions—even in federal court. *Id*. It concludes that under §§ 349/350, the Court can award the class only actual damages.

GBL §§ 349 and 350 do not say this. Nor does the legislative history support Premier's re-writing of New York law. In addition, Premier's new interpretation of §§ 349 and 350 is directly contrary to its prior position, was not raised on appeal, is contrary to the holdings in *Montera,* and cannot be raised on remand.

**A. The Express Terms and Legislative Goals of §§ 349 and 350**

The express terms of GBL §§ 349 and 350 do not prohibit statutory damages to plaintiffs who use class action procedure. The statutes are silent regarding class actions. Without limitation, § 350-e permits all prevailing plaintiffs "to recover his or her actual damages or five hundred dollars, whichever is greater[.]" Without limitation, § 349(h) permits all prevailing plaintiffs "to recover his or her actual damages or fifty dollars, whichever is greater[.]" Premier's assertion that §§ 349 and 350 "limit[] the substantive remedies available" (Oppo. at 16) in class actions, is belied by the statutes' express terms.

Premier cites a letter from a Senate Standing Committee expressing support for amendments to GBL §§ 349(h) and 350-e that add a private right of action and provide prevailing plaintiffs the greater of actual or statutory damages, and attorney fees.

The legislative history submitted by Premier confirms that the Legislature added a private right of action, the greater of actual or statutory damages, and attorney fees "to increase the effectiveness of consumer protection laws which prohibit deceptive acts and practices in commerce. The bill permits individuals who are aggrieved by these acts or practices to sue for damages, costs and reasonable attorneys' fees." Dkt. 371-4 (§§ 349/350 legislative material) at 17. Private enforcement of §§ 349 and 350 brought New York in line with the majority of other states (*id*. at 18) and was necessary because "the limited resources of the Attorney General, makes it virtually impossible for the Attorney General to provide more than minimal enforcement. This bill enables

BLOOD HURST & O' REARDON, LLP
00222321

consumers to protect themselves instead of being forced to rely on publicly-funded governmental agencies" (*id*. at 17–18), and "will add a strong deterrent against deceptive practices." *Id*. at 40. The Legislature envisioned that adding private enforcement of GBL §§ 349/350 "could constitute a savings to the state by relieving the Attorney General from prosecuting cases for which he is responsible and could additionally reduce his caseload by deterring business from engaging in deceptive acts or practices." *Id*. at 18. The amendments also meant that "a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection." *Id*. at 41; *see also Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 9 (App. Div. 2020) and *Beslity v. Manhattan Honda*, 467 N.Y.S.2d 471, 474 (App. Div. 1983).

Premier points to a "compromise" reached to address consumer groups who viewed "statutory damages … an integral part of a 'private right of action' because actual damages to consumers are often diminimus" and business interests that "fear[ed] that a class action for statutory damages would be sought under this section." Dkt. 371-4 at 11. The compromise was not to expressly eliminate a class's ability to ever bring statutory damages claims under §§ 349 and 350.

As *Wakefield* instructs, the Court is "constrained by a statute's language and [should] interpret statutes with awareness that [the drafters] could have enacted limits as to damages, including in large class action litigation, provided discretion to courts to award damages within a given range, or limited liability in any number of ways." 51 F.4th at 1124. As *Shady Grove* instructs: "The manner in which the law could have been written has no bearing; what matters is the law the legislature *did* enact." 559 U.S. at 403 (cleaned up, emphasis original). GBL §§ 349 and 350 do not limit statutory damages in class actions, leaving applicable class action procedural rules to control.

The practical result is that in New York state court, although §§ 349/350 otherwise provide statutory damages, the generally applicable procedural rule § 901(b) remains operative, barring class action procedures to plaintiffs seeking statutory damages. However, in federal court, under the Rules Enabling Act and *Shady Grove*, Rule 23 class procedures apply, permitting aggregation of statutory damages claims. In accordance with the express terms of GBL §§ 349 and 350, in federal court, all prevailing plaintiffs (including plaintiffs aggregated under Rule 23) are entitled to statutory damages.

In round-one, the Court stated that it seemed arbitrary that GBL §§ 349/350 permit statutory damages to class plaintiffs in federal court while statutory damages are denied to class plaintiffs in New York state court. Seemingly anomalous results, however, are not uncommon when state law is applied in federal courts. For example, the Court may recall that in the Joint Juice California case, the Ninth Circuit held that the peculiarities of federal equitable jurisdiction precluded the California class from seeking UCL restitution in federal court even though the same class could seek UCL restitution in state court. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (2020); *see also Guzman v. Polaris Indus.*, 49 F.4th 1308 (9th Cir. 2022).

In any event, if the New York Legislature was bothered by this anomaly, it has had 15 years since *Shady Grove* (and 20 years since most class actions are litigated in federal court under the Class Action Fairness Act) to amend GBL §§ 349/350 to expressly preclude statutory damages as a remedy to class plaintiffs in all courts. It has not done so. The legislature is presumed to be aware of the state of the law in enacting or amending statutes. *People v. Galindo*, 38 N.Y.3d 199, 205 (N.Y. App. 2022). Since *Shady Grove*, the New York Legislature amended GBL § 349 five times (in 2011, 2013, 2014, 2019 and 2024). It amended GBL § 350 twice (in 2014 and 2023) (*see* amendment history). Yet it has taken no steps to amend §§ 349 or 350 to preclude the remedy of statutory damages to class plaintiffs as a matter of New York substantive law such that statutory damages could not be obtained in federal court on a classwide basis. Premier is wrong that the "New York Legislature commanded" (Oppo. at 23) as a matter of substantive law that class plaintiffs are limited to actual damages under §§ 349/350.

Finally, a brief word regarding Premier's application of *Shady Grove*. Premier states that *Shady Grove* did not address the situation where "substantive state law limit[ed] remedies available for a particular cause of action." Oppo. at 16. Montera agrees. However, Premier then wrongly concludes that *Shady Grove* does not apply here because §§ 349/350, as a matter of substantive law, limit the remedy of statutory damages to class plaintiffs. *Id.* GBL §§ 349/350 do no such thing.

**B. Premier's New Interpretation of §§ 349/350 Is Improper on Remand**

Premier's current statutory interpretation—that GBL §§ 349 and 350 preclude statutory damages to class plaintiffs in state *and* federal courts—is directly contrary to its prior position, is

counter to the law of the case established in *Montera* and exceeds the Ninth Circuit's mandate on remand.

In its first due process challenge, Premier took the position that in accordance with *Shady Grove,* "statutory damages for GBL §§ 349 and 350 are available in class actions in federal court, even though they are not available in class actions in state court." Dkt. 280 at 3. Premier acknowledged that the class was entitled to statutory damages in this case, arguing only that the aggregated amount of statutory damages violated due process. *Id*.

Premier's position was the same on appeal. It argued that the aggregated statutory damages due here to class members should be reduced in accordance with due process principles. It did *not* argue that GBL §§ 349/350 as a matter of substantive law permit the class actual damages only. App. Dkt. 29 at 70–77.

*Montera* found that "GBL §§ 349 and 350 require courts to award the greater of actual damages or statutory damages" and that statutory damages due to the class are greater than actual damages. 111 F.3d at 1027. The Ninth Circuit also "affirm[ed] the district court's … initial calculation of statutory damages" (*id*. at 1043), in the amount totaling $91,436,950. *Id*. at 1039 ($50 per violation under § 349 and $500 per violation under § 350). As to Premier's due process challenge, *Montera* vacated the statutory damages award and remanded one question only: "we remand for the district court to consider in the first instance whether the statutory damages award violates due process under *Wakefield*." *Id.* at 1041. *See also id.* at 1043 ("We vacate the damages award and remand with direction to reassess Premier's substantive due process challenge to the award of statutory damages in light of the factors identified in *Wakefield*.").

Premier's new interpretation—that GBL §§ 349/350 permit the class only actual damages—violates the law of the case doctrine.

> The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case. The doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition.

BLOOD HURST & O' REARDON, LLP

*U.S. v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007).

Here, the Ninth Circuit determined that "GBL §§ 349 and 350 *require* courts to award the greater of actual damages or statutory damages," (111 F.4th at 1027, emphasis added) and affirmed the district court's initial calculation of $91 million in statutory damages due to the class under GBL §§ 349 and 350. *Id*. at 1025, 1043. In accordance with the law of the case, the Court is precluded from adopting Premier's new interpretation that §§ 349 and 350 do not permit the class statutory damages.

Similarly, the related "rule of mandate" doctrine precludes the Court from considering Premier's new statutory interpretation on remand. When the Ninth Circuit remands an issue to the district court, the district court is limited to answering only the remanded issue. "A district court, on remand, has a duty to follow this court's instructions as to how the case is to proceed." *U.S. v. Montgomery*, 462 F.3d 1067, 1072 (9th Cir. 2006). "The court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id*. (cleaned up). The district court should follow the Ninth Circuit's mandate and "'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.'" *Thrasher*, 483 F.3d at 981 (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255–56 (1895)).

For instance, in *Thrasher*, the Ninth Circuit remanded with instruction that the district court determine if counsel's decision to not call a certain witness constituted ineffective assistance of counsel. 483 F.3d at 982. On remand, appellant argued it was denied effective assistance of counsel for an additional reason, which the district court refused to consider because it exceeded the mandate. *Id*. at 983. The Ninth Circuit affirmed the district court's decision. "The plain language of the disposition precluded the district court from considering any other arguments concerning [counsel's] effectiveness." *Id*. In *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 422 F.3d 949, 966 (9th Cir. 2005), the Ninth Circuit "affirmed the district court's judgment in all respects but for the constitutionality of the punitive damages award." On remand, the district court correctly refused to consider new issues raised by defendant. "Our [remand from

the appeal] was clear. We finally adjudicated all issues except for, and remanded only for consideration of, the constitutional implications of the punitive damages awards." *Id.* at 967.

Here, the mandate is equally clear. The Court is directed "to reassess Premier's substantive due process challenge to the award of statutory damages in light of the factors identified in *Wakefield*." 111 F.4th at 1043. Premier's new argument, that §§ 349/350 preclude statutory damages to the class, exceed *Montera*'s mandate and is not properly considered on remand.

## III. *Wakefield* Rejected Use of the Punitive Damages Test for Statutory Damages

Premier asserts that the due process analysis endorsed in *Wakefield* includes the *Williams* and *Six Mexican Workers'* factors, ***and*** the punitive damages test from *BMW* and *State Farm*.

Premier belittles Montera for "suggesting that the Ninth Circuit held the Supreme Court's punitive damages [test] to be irrelevant." Oppo. at 19. It flatters the Court that its prior due process analysis applying the punitive damages test to statutory damages was correct, and thus, the Court can simply "reaffirm its holding … because every consideration this Court relied on was affirmed and reinforced by *Wakefield*[.]" *Id.* at 2. Premier itself relies chiefly on punitive damages cases and ad nauseum cants the ratio of actual to statutory damages. Premier is wrong. The punitive damages test does not apply to statutory damages.

Premier latches onto a similar overarching goal of the due process analysis of punitive damages and the due process analysis of aggregated statutory damages. As *Wakefield* noted, statutory damages have punitive goals (in addition to compensatory and deterrence goals), and to the extent statutory damages surpass purely compensatory and deterrence goals, the "consideration of an award's reasonableness and proportionality to the violation and injury takes on a heightened constitutional importance." 51 F.4th at 1122–23. Thus, akin to the proportionality and reasonableness standard for punitive damages, statutory damages implicate due process limits "when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits." *Id.* at 1123. However, the analyses are critically different because the factors considered in the proportionality and reasonableness inquiry differ; and naturally so. Punitive damages are determined post-trial by a jury purely to punish. Statutory damages are predefined by a legislature with the due process inquiry considering the importance of

BLOOD HURST & O' REARDON, LLP
00222321

the conduct the statute prohibits and the broader, multifaceted statutory goals, which may include compensation, deterrence, or incentivizing enforcement. *See* Mot. at 6–7 (discussing public interest goals of §§ 349/350).

Aside from the overarching considerations of proportionality and reasonableness, Premier is wrong that *Wakefield* adopted the punitive damages test. *Wakefield* instructed courts to apply "the *Williams* constitutional due process test to aggregated statutory damages" (*id.* at 1121), and for "further guidance" directed courts to *Six Mexican Workers*. *Id*. at 1123. *Wakefield* expressly stated:

> [W]e decline to apply the Supreme Court's tests developed in the line of cases including *BMW of North America*, 517 U.S. 559, and *State Farm*, 538 U.S. 408, outside the context of a jury's award of punitive damages, …

*Id*. at 1122.

*Montera* affirmed that in *Wakefield*: "We declined to endorse the application of the *State Farm* factors outside of the punitive damages context[.]" 111 F.4th at 1041. And even Premier in its briefing to the Ninth Circuit in *Montera* wrote that "this Court has declined to adopt for statutory damages cases the framework used for punitive damages[.]" App. Dkt. 29 at 74.

The Court should hence ignore Premier's many citations to punitive damages cases. It must ignore as irrelevant Premier's put-up outrage that statutory damages are 57 times greater than actual damages. In *Williams,* the Court held that the statutory penalty which was 113 times greater than actual damages did *not* violate due process. "When the penalty is contrasted with the overcharge possible in any instance it of course seems large, but, as we have said, *its validity is not to be tested in that way*." 251 U.S. 63, 67 (1919) (emphasis added). The Court should decline Premier's invitation to apply the wrong due process test on remand.

## IV. Under *Wakefield*, The Award of Statutory Damages Does Not Violate Due Process

Premier's remaining arguments are sparce and lack support.

### A. Given the Legislature's Deterrence Goals, Statutory Damages Do Not Violate Due Process

Premier argues that the Court should award only actual damages. It asserts that awarding class members their actual damages will cover both the compensatory and deterrent components of statutory damages. It reasons that any for-profit company would be deterred by having to refund

consumers the higher retail price, not just the wholesale price. Oppo. at 17. Premier's argument oversimplifies deterrence as a uniform principle rather than a company-specific inquiry. Deterrence depends on factors unique to the defendant, such as its profitability, pricing structures, and the economic impact of statutory damages relative to its conduct. Besides, Premier presents no evidence on the retail to wholesale price differential for Joint Juice, precluding the Court from evaluating its argument and the asserted deterrent effects on Premier.

Premier next asserts that providing attorney fees is additional deterrence such that awarding the class any amount over actual damages will violate due process. *Id*. The Court should not re-write §§ 349/350. The statutes entitle prevailing plaintiffs the greater of actual or statutory damages, *plus* attorney fees, because the Legislature determined that a private right of action, damages and attorney fees were needed "to add a strong deterrence against deceptive business practice." *Montera*, 111 F.4th at 1040. Besides, Premier is appealing the award of attorney fees. Appeal No. 23-16162.

Premier contends that its wealth and the wealth of its parent, BellRing Brands, is not relevant to deterrence. It has no authority so holding. In contrast, Montera provides authority where courts considered defendant's corporate wealth relevant to their conclusion that statutory damages were necessary to deter defendant from repeating the misconduct. Mot. at 8. For instance, in *Havana Docks Corp. v. Carnival Corp.*, the court denied defendants' due process challenge to aggregate statutory damages, found that an award of over $100 million was "certainly reasonable" and that a lower award "would not effectively serve a deterrent purpose, since a lesser award could conceivably be considered merely a cost of doing business." 2022 U.S. Dist. LEXIS 233783, at *19 (S.D. Fla. Dec. 30, 2022). Montera also presented evidence that given Premier's corporate wealth and assets, the statutory damages sought here may have little or no deterrent effect. *See* Mot. at 7–9. In fact, BellRing Brands recently confirmed that the Joint Juice cases will not have "a material adverse effect on its consolidated financial condition, results of operations or cash flow." Dkt. 364-5 at 64.

GBL §§ 349 and 350 "authorize statutory damages to encourage private enforcement and to add a strong deterrent against deceptive business practices." *Montera*, 111 F.4th at 1040 (cleaned up). Montera's evidence shows why the Court should not disrupt the already minimal deterrent

effect of statutory damages against an inveterate corporate player like Premier. There is absolutely no call to find that statutory damages in this case violate due process.

**B. Given the Legislature's Punitive Goals, Statutory Damages Do Not Violate Due Process**

Premier argues that any award over actual damages is purely punitive and that a statutory damages award that includes any punitive component is unconstitutional.

First, as shown above, the statutory amounts set in §§ 349 and 350 have a very important and significant deterrence component; they are not purely punitive as Premier says.

Second, even when statutory damages are largely punitive (that is not the case here), it does not follow that they violate due process. "[J]ust because an aggregate award becomes predominantly punitive does not render it constitutionally unsound." *Wakefield*, 51 F.4th at 1124. "Legislatures are empowered to prescribe purely punitive penalties for violations of statutes." *Id*. at 1123. Statutory damages, even those that are predominantly punitive, violate due process only when the aggregate award "is *extremely* disproportionate to the offence." *Id*. (emphasis in original).

Premier argues the aggregate award sought here, $83 million, is extremely disproportionate to its offence by pointing to factors from punitive damages cases. Joint Juice did not physically harm its users, Premier just took money from its victims in small amounts (it didn't take houses or retirement funds), and its victims were not proven to be financially vulnerable. Oppo. at 21–22. Premier draws these considerations directly from *State Farm*, 538 U.S. at 419, and other punitive damages cases. *Wakefield* "decline[d] to apply" *BMW* and *State Farm* "outside the context of a jury's award of punitive damages …" 51 F.4th at 1122. This Court should also so decline.

Premier next asserts that its repeated violations over a decade are of no import because regulators never told it to stop and *Montera* is the first determination of its liability. Oppo. at 22. GBL §§ 349/350 do not award statutory damages only against repeat violators—statutory damages are available to every prevailing plaintiff and against every company that violates these statutes. As to Premier's long term and repeated deception, this Court found:

> The conduct at issue here certainly involved repeated actions, namely the choice to continue marketing its product as containing joint health benefits. Despite the arrival of numerous studies pointing to a lack of benefits from glucosamine and chondroitin

> in the dosage at issue, Premier Nutrition continued to market its product not just to people seeking joint health benefits, but more specifically to people seeking joint pain and arthritis relief. Defendant also encouraged customers to make repeat purchases, recommending that they drink a bottle a day, and with packaging that recommended purchasing on a weekly or monthly basis, depending on the size of the pack.

Dkt. 293 at 10. Premier's repeated and long-lasting deception weighs against any due process reduction.

Premier next argues the jury did not find its deception was intentional or willful. Oppo. at 23. It even asks that the Court "expressly find that this is not a case of willfully or knowingly false representations." *Id*.

The jury did not make a finding of intent because intent is not required for liability under §§ 349 or 350. *Simply Lite Food Corp. v. Aetna Cas. & Sur. Co. of Am.*, 666 N.Y.S.2d 714, 715 (App. Div. 1997). However, evidence showing intent was presented, with this Court finding: "As for the intentionality of the act, Plaintiff put on evidence that Defendant was aware of the changing tide in the science yet continued without hesitation." Dkt. 293 at 10. The *Montera* court wrote: "Premier was aware of the studies concluding that glucosamine and chondroitin have no effect on joint health but continued to sell—and increased its marketing of—Joint Juice to arthritis and joint-pain sufferers." 111 F.4th at 1026 (citing trial evidence); *see also* Mot. at 13–15 (citing evidence).

Premier again misconstrues §§ 349/350, wrongly asserting that "the *most* New York law would allow a court to award in an *individual* case is treble [actual] damages for the most egregious conduct." Oppo. at 23 (emphasis original). It concludes that therefore the Court should award the class less than treble actual damages because its conduct was not so bad. *Id*.

GBL §§ 349 and 350 *do not* limit either individual or class plaintiffs to treble actual damages. Prevailing plaintiffs are entitled to "the greater of actual damages or statutory damages of $50 or $500, respectively." *Montera*, 111 F.4th at 1027. In situations where plaintiffs have large actual damages (greater than the statutory damages) and prove intent, separate provisions permit "three times the actual damages" up to $10,000 or $1,000, respectively. GBL §§ 350-e and 349(h). For example, if defendant's intentional deception harms plaintiffs in the amount of $4,000, plaintiffs may be awarded up to $10,000 per violation. GBL § 350-e. This alternate remedy, useful when

actual damages are greater than statutory, does *not* limit the class plaintiffs here to three times actual damages. Premier has no authority for its manifestly wrong reading of §§ 350-e and 349(h).

Finally, Premier fights again with the jury's factual findings and verdict, arguing that Montera's scientific evidence regarding Joint Juice's inefficacy was not strong and Premier should have won. It asks that "this Court in its own review should expressly find that the evidence could have been sufficient to support a finding of efficacy." Oppo. at 23. It asserts that its false advertising was not egregious, more of a misunderstanding, such that awarding class members the statutory damages provided by statute is unconstitutional.

Space does not permit Montera to discuss her copious scientific evidence (bioavailability studies, clinical trials and treatment guidelines) which (considered by the jury) all concluded that glucosamine and chondroitin, separate or in combination, are wholly ineffective for joint health. Nor was the evidence mixed, as Premier would have it. By 2010 at the latest, the consensus among *independent* scientists was that neither glucosamine nor chondroitin had any positive effect on osteoarthritis or joint health. Dkt. 260 at 299:22–23, 309:3–311:11, 312:6–11, 313:1–12. This contrasted with "industry studies" (trials funded, designed and/or reviewed by glucosamine corporations) which uniformly found glucosamine to be effective. *Id*. at 297:10–298:20; *see also id*. at 317:12–13.

When measured as directed by *Wakefield*, *Williams*, *Six Mexican Workers*, and *Montera*, this is not the very rare case where aggregated statutory damages are so extraordinarily large that they are wholly disproportionate to the goals of GBL §§ 349/350 and Premier's conduct in violating the statutes.

**CONCLUSION**

Montera respectfully requests that the Court grant the motion and award statutory damages in the amount of $83,124,500.

Respectfully submitted,

Dated: January 16, 2025

By: *s/ Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)

THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 16, 2025.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O' REARDON, LLP

17 Case No. 3:16-cv-06980-RS
00222321
PLAINTIFF'S REPLY ISO MOTION TO REASSESS STATUTORY DAMAGES AWARD