UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY BETH MONTERA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PREMIER NUTRITION CORPORATION,<br><br>　　　　Defendant. | Case No.  16-cv-06980-RS<br><br>**ORDER AWARDING STATUTORY DAMAGES OF $8.3 MILLION ON REMAND** |

## I.  INTRODUCTION

This long-running dispute over Defendant Premier Nutrition's discontinued product, Joint Juice, returns on remand from the Ninth Circuit. After a nine-day trial in 2022, a jury found Premier liable to a class of New York purchasers for deceptive advertisement of Joint Juice. In particular, the jury found Premier had violated New York General Business Law ("GBL") Sections 349 and 350, which impose statutory damages of $50 and $500, respectively, or actual damages, whichever is greater. N.Y. Gen. Bus. L. §§ 349(h), 350-e. Mary Beth Montera, representing the class, sought an aggregated statutory damages award based on both statutes, amounting to $550 per violation, for a total award of approximately $91 million. Premier raised a substantive due process challenge to that award. At that point, the Ninth Circuit had not yet addressed whether aggregated statutory damages awards were subject to constitutional limits, and if so, how to evaluate those challenges. Based on the limited appellate guidance and analogizing to cases reducing punitive damages, Montera's statutory damages award was reduced to $50 per violation for a total of approximately $8.3 million.

Two months after final judgment was entered in this matter, the Ninth Circuit decided *Wakefield v. ViSalus, Inc.*, confirming statutory damages awards can raise constitutional problems and clarifying the approach to evaluating such awards. 51 F.4th 1109, 1043 (9th Cir. 2022). Without addressing the merits of the $8.3 million award, the panel in this matter remanded with instructions to evaluate Premier's due process challenge under the test articulated in *Wakefield*. *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1043 (9th Cir. 2024).

Montera now contends she and the other purchasers are entitled to an award of $83,124,500, or $500 per violation under GBL § 350. Premier re-raises its constitutional challenge to the award, advancing a new argument based on the legislative history of the relevant New York statutes. Because Montera would be barred from seeking class-wide statutory damages in New York state court, Premier concludes the class is entitled to only actual damages. For the following reasons, the class is entitled to some statutory damages, but $83 million is so large as to violate Premier's right to substantive due process. Accordingly, Plaintiffs are awarded $8,312,450 in statutory damages.[1]

## II. BACKGROUND

The procedural background of this case, which spans nine years, is set out in greater detail in previous orders. *See, e.g.*, Dkt. 320. To summarize briefly, a class of New York state consumers, represented by Mary Beth Montera, filed suit against Premier Nutrition, claiming the company had misrepresented the benefits of its product, Joint Juice. Montera's theory of liability relied on New York General Business Law Sections 349 and 350, which protect consumers from deceptive business practices and false advertising, respectively.

The nine-day jury trial was held from May 23 through June 7, 2022. The jury determined both that Premier Nutrition engaged in deceptive acts and practices in violation of GBL § 349 and engaged in deceptive or misleading advertising in violation of GBL § 350. The jury further

---

[1] Defendant's Request for Judicial Notice, Dkt. 371, is granted. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."). Plaintiff is incorrect in arguing § 901(b) is entirely irrelevant to the remand analysis mandated by the Ninth Circuit. *See infra* Section IV.A.i. Therefore, given Defendant's showing of authenticity and relevance, the request for judicial notice of legislative history is granted.

determined that Premier Nutrition had sold 166,249 units of Joint Juice in New York during the Class Period.

GBL §§ 349 and 350, by their plain text, require courts to award the greater of actual damages or statutory damages of $50 or $500, respectively. GBL §§ 349(h), 350-e. The jury determined the class's actual damages were approximately $1.4 million, or the retail cost of every unit of Joint Juice sold in the state during the class period. Based on the statute, Montera sought $550 per violation, or unit sold, to recover under both §§ 349 and 350. In its challenge to Montera's requested statutory damages award, Premier did not assert that the per-violation amount under either statute was unconstitutional. Instead, Premier argued that an aggregated award of $91,436,950 violated its right to substantive due process and the award should be reduced to $50 per unit sold—the amount available under GBL § 349 only.

Premier's proposed reduction was granted and Montera was awarded $8.3 million in statutory damages. This reduction was awarded due to concerns about the arbitrariness arising from New York's statutory limit on aggregate recovery. New York law provides that statutory damages are not an available remedy in class actions unless the New York Legislature expressly authorizes them. *See* N.Y. C.P.L.R. § 901(b) ("[A]n action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."). Without constitutional limits on aggregate statutory damages, the same case for the same class could result in $1.4 million, if filed in New York state court, or $91 million, if filed in federal court. Therefore, this court found a reduction was warranted.

Premier appealed the final judgment as well as numerous underlying orders. Montera appealed only the grant of a reduction to the award of statutory damages. On appeal, the Ninth Circuit panel affirmed decisions on all issues raised except for the award of prejudgment interest, owing to the Court's determination that statutory damages were punitive rather than compensatory in nature. *Montera*, 111 F.4th at 1043. Most notably for this motion, the panel also vacated and remanded the award of statutory damages under GBL § 349. *Id.* The panel directed this Court to "reassess Premier's substantive due process challenge to the award of statutory damages in light of

the factors identified in *Wakefield*" and award statutory damages accordingly. *Id*. The panel did not address the constitutionality of the $8.3 million award. *See id.*

### III.  LEGAL STANDARD

Aggregated statutory damages awards are, in certain extreme circumstances, subject to constitutional due process limitations. *Wakefield*, 51 F.4th at 1121. *Wakefield* instructed courts to consider whether "aggregation [of statutory damages] has resulted in extraordinarily large awards wholly disproportionate to the goals of the statute" and whether the award "greatly outmatch[es] any statutory compensation and deterrence goals." *Id.* at 1122 (extending *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919)).

Beyond *Williams*'s guideposts, courts can also look to the factors articulated in *Six (6) Mexican Workers v Ariz. Citrus Growers* for "further guidance" in determining whether statutory damages are disproportionately punitive in the aggregate. *Wakefield*, 51 F.4th at 1123 (citing 904 F.2d 1301 (9th Cir. 1990)). *Six Mexican Workers* adopted a seven factor test: "1) the amount of award to each plaintiff, 2) the total award, 3) the nature and persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case." 904 F.2d at 1309 (quoting *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir. 1985)).

The Ninth Circuit declined to apply the Supreme Court's line of cases regarding constitutional limits on punitive damages to statutory damages. *Wakefield*, 51 F.4th at 1122-23. However, the *Wakefield* court used the line of cases on punitive damages to underscore "where statutory damages no longer serve purely compensatory or deterrence goals, consideration of an award's reasonableness and proportionality to the violation and injury takes on heightened constitutional importance." *Id.* (examining *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

In sum, courts must consider the magnitude of the aggregated award in relation to the statute's goals of compensation, deterrence, and punishment and to the proscribed conduct. *Id*. The "public importance and deterrence goals" are also articulated in terms of: (i) the public interest;

(ii) the opportunities for committing the offense; and (iii) the need for securing uniform adherence to the statute," as laid out in *Williams*, 251 U.S. at 67. Because both the *Wakefield* court and the panel in this matter remanded before reaching the merits of these awards, there is a dearth of appellate authority on how to reduce aggregated statutory damages awards once a constitutional issue is identified.

## IV. DISCUSSION

Plaintiff argues the class is entitled to $83 million, or $500 per violation under GBL § 350. Because Montera seeks recovery under only § 350, the question of double recovery under both provisions is now moot. In its renewed constitutional challenge, Defendant mines the legislative history of § 901(b) and GBL §§ 349 and 350 to argue the class is entitled only to actual damages.

### A. Constitutional Question under *Wakefield*

The analysis must first begin with the application of *Wakefield* to Montera's requested $83 million award. "Only very rarely will an aggregated statutory damages award meet the exacting *Williams* standard and exceed constitutional limitations where the per-violation amount does not." *Wakefield*, 51 F.4th at 1123–24 (9th Cir. 2022) (citing *Williams*, 251 U.S. at 67). An overapplication of the *Williams* test to reduce statutory awards would subvert the punitive goals of the legislature. *See id.* However, Defendant argues this is in fact that rare situation where "a largely punitive per-violation amount results in an aggregate that is gravely disproportionate to and unreasonably related to the legal violation committed." *Id.*

The statutory language of § 349 clearly directs the award of actual damages or $50, whichever is greater. Section 350 imposes a larger minimum amount of $500. However, the aggregation of damages that would otherwise be impossible in New York state court under § 901(b) can balloon these minimum awards beyond their intended purpose. Although the statute's language is clear, this is the uncommon case where the constitution must limit damages "so severe and oppressive' as to no longer bear any reasonable or proportioned relationship to the 'offense.'" *Wakefield*, 51 F.4th at 1123–24 (9th Cir. 2022) (quoting *Williams*, 251 U.S. at 67). The goals of the statutes in question serve as the starting point for determining whether the $83 million has lost

touch with the legislative purpose.

  *i.*  *Relevant Statutes*

  Montera contends § 901(b) is entirely irrelevant to the analysis on remand. Plaintiff relies on the United States Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co* and portions of the Ninth Circuit's opinion in this matter remanding the issue of statutory damages. *See* 559 U.S. 393, 398 (2010). First, the Ninth Circuit notes: "In *Shady Grove*…, the Supreme Court held that because § 901(b) is procedural, not substantive, it has no application in federal diversity suits such as this." *Montera*, F.4th at 1038, fn. 8. Then, the panel noted "the relevant statutory goals for the district court to consider on remand *include* the Legislature's compensation and deterrence goals in enacting GBL §§ 349 and 350— the statutes that authorized the statutory damages at issue." *Id.* (quotations and citations omitted) (emphasis added). Premier has the better reading of "include," and therefore § 901(b) has some role in determining the statutory goals. Despite Montera's arguments, nowhere in the appellate opinion does the panel reject any consideration of 901(b). Therefore, the New York legislature's explicit concern about the punitive nature of aggregated statutory damages does some work to differentiate this case from *Wakefield* and other TCPA awards. However, 901(b) is not determinative, and the analysis of statutory goals must focus primarily on GBL §§ 349 and 350.

  *ii.*  *Statutory Goals*

  The award must be proportional with the goals of the statutes imposing damages. Premier argues that any award greater than actual damages for a class would subvert the statutory goals and thus raise a constitutional problem because the New York legislature did not imagine §§ 349 or 350 could award aggregate statutory damages. Defendant's briefing on this matter attempts to make an end run around *Shady Grove* by smuggling in § 901(b) via the legislative history of §§ 349 and 350. *See* 559 U.S. at 398. While it is true § 901(b) existed during the enactment of §§ 349 and 350, Defendant's interpretation transforms § 901(b) from procedural to substantive using the supposed intent of §§ 349 and 350's enactors. In today's textualist world of statutory interpretation, the statements of individual legislators, no matter their prominence in passing

legislation, cannot override the plain text of a statute. *See, e.g.*, *Avella v. City of New York*, 80 N.E.3d 982, 987 (N.Y. 2017) ("When interpreting a statute, our primary consideration is to discern and give effect to the Legislature's intention. The text of a statute is the clearest indicator of such legislative intent and courts should construe unambiguous language to give effect to its plain meaning." (internal quotation marks and citations omitted)).

Premier's text-based argument hinges only on the *omission* of a specific provision allowing for aggregate statutory damages. Montera replies the New York legislature could have easily amended §§ 349 and 350 to prohibit aggregate statutory damages after the Supreme Court decided *Shady Grove*, and its failure to do so implies the legislature has now *allowed* for class-wide damages. The actual text of the statutes offers clarity where these academic debates around statutory interpretation fall short. Given §§ 349 and 350's plain language, which does not address aggregate damages, Defendant's argument that §§349 and 350 *prohibit* the provision of class-wide statutory damages must be rejected.

Because the statutes do not completely foreclose aggregated statutory damages, the focus then turns to Plaintiffs' requested award of $83 million. Premier renews its constitutional challenge to an award of that size. Here, where the statutory language does not explicitly outline the goals in enacting the statutes, the legislative history offers insight.

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. Section 350 specifically addresses false advertising but otherwise has the same broad scope and standard for recovery as § 349. *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999); *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). GBL §§ 349 and 350 allow for the greater of actual damages or statutory damages. Section 349(h) provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. Law § 349(h). Section 350-e similarly states that "[a]ny person who has been injured by reason of any

violation of [this section] may bring . . . an action to recover his or her actual damages or five hundred dollars, whichever is greater." *Id.* § 350-e.

The legislature added private rights of action, including the right to seek injunctive relief and damages, to both provisions in 1980, after recognizing the limited ability of the New York State Attorney General adequately to police false advertising and deceptive trade practices. *See Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020); *Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 467 N.Y.S.2d 471, 474 (App. Term 1983). The legislature authorized statutory damages to "encourage private enforcement" and to "add a strong deterrent against deceptive business practices." *Beslity*, 467 N.Y.S.2d at 474 (quoting Mem. of Gov. Carey, On Approving L.1980, chs. 345 and 346, 1980 N.Y. Sess. Laws 1867 (June 19, 1980)). In 2007, the Legislature increased the statutory damages amount in § 350-e from $50 to $500 because "[c]urrent limits [were] too low to be effective." N.Y. State Senate Introducer's Mem. in Support for Bill No. S4589.

Given this history and the plain text of the statutes, the legislature enacted §§ 349 and 350 in their current form to compensate injured consumers and deter future wrongdoing. However, as per *Wakefield*, the statute's potential punitive goals must also be considered. 51 F.4th at 1124. On appeal in this matter, the Ninth Circuit acknowledged the resemblance of §§ 349 and 350's statutory damages to punitive damages. *See Montera*, F.4th at 1043; *see also Wakefield*, 51 F.4th at 1123 (concluding the TCPA's floor, as opposed to a range of damages, reflected a legislative intent to punish violations, as well as deter future infringement and compensate for harm). Therefore, Premier cannot argue that once an award becomes *at all* punitive, it exceeds the goals of the New York legislature. Even a predominantly punitive award is not necessarily constitutionally unsound. *See Wakefield*, 51 F.4th at 1124. The New York legislature, in setting a minimum amount of damages as opposed to a range, intended to punish false and misleading advertisement of products. Based on the legislative history and form of the statutory damages, §§ 349 and 350 are designed to punish misconduct, compensate consumers, and deter future violations.

   *iii.*  *Magnitude of the award*

The analysis then turns to the magnitude of the award, in particular its proportionality to the statutory goals outlined above. Premier persuasively argues Montera's requested award is disproportionate to the goals of the statute, particularly in light of the conduct at issue. The $83 million requested by Montera is so large as to become entirely untethered from the statutory goals.

It is clear an $83 million award would more than compensate the class for its purchases of Joint Juice, as the jury determined actual damages were about $1.4 million. Therefore, the magnitude of the award should be examined in light of the deterrence and punitive goals. Premier argues the actual damages and attorney's fees award are on their own sufficient to achieve any deterrence goal. Premier argues actual damages at $1,488,078.49, or the full retail price of every unit sold during the class period, far exceeds Premier Nutrition's total revenue and is many multiples of Premier Nutrition's profits, which are reduced by costs of materials and production. Premier contends the award of $6,853,502.78 in attorney's fees and $1,072,126.04 in costs makes the deterrent effect of the verdict even higher. As Premier see it, no for-profit company would fail to be deterred by losing $9,413,707.31 in total damages and fees in addition to losing all the money it spent to produce the product.

On deterrence, while there are important public interest concerns in protecting New York consumers, the opportunities for committing this offense are not unlimited. In this matter, Premier has ceased to sell Joint Juice. Montera argues the size of Premier's parent company and Premier's own statements about the damage wrought by this litigation show Premier has not been deterred in future deceptive conduct. While it is true Premier may have ceased selling Joint Juice for unrelated reasons and may deceptively market and sell other products in the future, Montera's award stretches far beyond what is necessary to deter this conduct. Therefore, an $83 million award would be largely punitive. Given § 901(b)'s background limitation on class-wide recovery in New York state courts, Montera's requested $83 million becomes so punitive as to raise a constitutional concern. *Contra Wakefield*, 51 F.4th at 1124 (noting Congress enacted the TCPA with the background knowledge class action recovery was possible, thus implying a predominantly punitive award would not exceed the statutory goals).

*iv.   Additional Factors from* Six Mexican Workers

Although the magnitude of the aggregated award is arguably determinative in evaluating Premier's constitutional challenge, additional factors provided in *Six Mexican Workers* bolster the conclusion this statutory damages award is subject to constitutional limitations. *See* 904 F.2d at 1309.

    a.   Amount Award to Each Plaintiff

Montera's requested $83 million in total recovery would result in an award of $1,765 per household. Plaintiff relies on other cases approving larger per member awards. *See Gessele v. Jack in the Box, Inc*., No. 3:14-CV-01092-HZ, 2023 U.S. Dist. LEXIS 54892, at *37–38 (D. Or. Mar. 30, 2023) (rejecting a due process challenge to an average statutory penalty award of $2,000 per class member); *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907 (8th Cir. 2012) (aggregated statutory damages award of $222,000, comprised of $9,250 per violation which resulted in an average award of $37,000 per plaintiff, did not violate due process). Although Montera's cited cases are not entirely analogous given the relevant statutes, this factor does not necessarily weigh in favor of a reduction.

    b.   Culpability

Premier's culpability is mixed. The conduct at issue here involved repeated actions, namely the choice to continue marketing its product as containing joint health benefits. Premier, on remand, cannot erase the evidence and findings of the trial on its responsibility. Despite the arrival of numerous studies pointing to a lack of benefits from glucosamine and chondroitin in the dosage at issue, Premier Nutrition continued to market its product not just to people seeking joint health benefits, but more specifically to people seeking joint pain and arthritis relief. Defendant also encouraged customers to make repeat purchases, recommending that they drink a bottle a day, and with packaging that recommended purchasing on a weekly or monthly basis, depending on the size of the pack. As for the intentionality of the act, Plaintiff presented evidence that Defendant was aware of the changing tide in the science yet continued its marketing. Without making a specific finding on culpability, the jury found Premier liable for its deceptive advertising and

Premier has offered no reason on remand to upset that determination.

### c. Nature of the Violations

The violations at issue here were substantive, not merely technical. Premier continued to market and sell Joint Juice, despite evidence the product did not function as promised. The harm to consumers, however, was economic and not physical. As discussed in the previous constitutional challenge, there is no allegation that Joint Juice caused physical harm to any consumer. The harm here was wasted money. Additionally, lead plaintiff Beth Montera and others certainly suffered from disappointment and lost hope due to this product. Class members based reasonable hopes on Joint Juice's promises. And while Premier may not have targeted people with financial vulnerability, it did target people suffering from joint issues seeking relief. Taken with Premier's culpability, these economic and intangible harms again lead to a mixed result on Premier's overall reprehensibility.

Both parties agree there are no such similar cases awarding damages, given § 901(b)'s bar on class-wide recovery in state court. The final factor allows trial courts to examine the circumstances of each case. On balance, the *Six Mexican Workers* factors relevant here support the conclusion there is a due process issue with Montera's $83 million requested award.

### B. Reducing the Award

The test provided in *Wakefield* and the additional factors in *Six Mexican Workers* illuminate the threshold question of constitutionality. However, the Ninth Circuit has not provided further guidance on how to reduce an award once a due process problem is identified. A survey of other circuits similarly offers little guidance. *See, e.g.*, *Golan v. Veritas Ent., LLC*, No. 4:14CV00069 ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017), *aff'd sub nom. Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (affirming the reduction to $32,424,930 in damages, a total of $10 per call rather than the TCPA's standard of $500, without further reasoning).

The parties themselves do not offer persuasive principles in reducing the award. Defendant recommends "looking out over the crowd" at this novel party and picking out its preferred

legislative history to reduce the award to $1.6 million, or actual damages. Plaintiffs focus much of their briefing on rebutting the threshold constitutional problem but acknowledged at oral argument that there is no reason why any particular number below $83 million would be improper.

*Wakefield*'s warning against overstepping the role of the judiciary looms large at this stage. When a legislature codifies minimum damages in statutory text, courts "are constrained by a statute's language and interpret statutes with awareness that [the legislature] could have enacted limits as to damages, including in large class action litigation, provided discretion to courts to award damages within a given range, or limited liability in any number of ways." *Wakefield*, 51 F.4th at 1123–24.

Balancing the clear minimums set by GBL §§ 349 and 350 against the constitutional issue posed by a statutory damages award under § 350, Montera is entitled to $8.3 million or aggregate statutory damages under § 349 alone. $50 per violation more closely hews to the compensatory, deterrence, and punitive goals of the statutes. Consumers of Joint Juice will be adequately compensated, far above the purchase price of each bottle of Joint Juice. As Defendant has vehemently argued, even the award of actual damages per violation would deter future conduct, given the loss of revenue from the sale as well as the loss from producing the product in the first instance. Montera contends Premier and its parent company are so wealthy as to render such a punishment ineffective. However, $8.3 million in damages for sales of $1.4 million of a now discontinued product is a proportionate penalty, punishing past conduct and deterring future violations.

## V.  CONCLUSION

Considering the proportionality of an aggregated award of statutory damages to the goals of GBL §§ 349 and 350, $83 million is grossly punitive and thus wholly disproportionate to the legislative goals. Given this due process concern with such a large award, the proper amount in aggregated statutory damages is $8,312,450.

**IT IS SO ORDERED**.

ORDER AWARDING STATUTORY DAMAGES ON REMAND
CASE NO. 16-cv-06980-RS
12

Dated: March 10, 2025

_____
RICHARD SEEBORG
Chief United States District Judge