BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated, | Case No. 3:16-CV-06980 RS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC., | **CLASS ACTION** |
| Defendant. | Date: December 4, 2025<br>Time: 1:30 p.m.<br>Judge: Honorable Richard Seeborg<br>Courtroom: Courtroom 3, 17th Floor |
| | Complaint Filed: December 5, 2016 |

*(left margin, vertical)* BLOOD HURST & O' REARDON, LLP

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION...................................................................................1

II.     SUMMARY OF THE LITIGATION .................................................2

        A.      The Federal Complaints, Summary Judgment and Class Certification ...................2

        B.      The California State Actions, the First Two Appeals and Class Certification in California.................................................3

        C.      The *Montera* Trial .........................................................................4

        D.      The *Montera* Post-Trial Appeals and Subsequent Remand Proceedings.................5

        E.      Issue Preclusion Following *Montera*.........................................6

        F.      Discovery and Trial Preparations .................................................6

        G.      Settlement Negotiations .................................................................7

III.    THE SETTLEMENT ............................................................................7

        A.      The Class ...........................................................................................7

        B.      The Settlement Benefits for Class Members ...............................7

                1.      Cash Benefits.................................................................7

                        a.      Identified Class Members ..............................8

                        b.      Claim-In Class Members ...............................8

                2.      Pro Rata Adjustments, Supplemental Claims and Cy Pres ...........................9

                3.      Class Notice and Settlement Administration .............9

                        a.      The Forms of Class Notice .........................10

                        b.      The Dissemination of Class Notice ..........10

        C.      Attorneys' Fees and the Class Representative Service Award .............11

        D.      Release of Claims and Dismissal of Pending Appeals.............11

IV.     AFFIRMATION OF CLASS CERTIFICATION.........................12

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL .......12

        A.      The Relief Provided for the Class is Exceptional ...................13

                1.      Class Members Are Entitled to the Full Judgment Amount ...................13

BLOOD HURST & O' REARDON, LLP

i

00228900

2.    The Expense and Delay of Further Litigation ...............................................15

B.    The Settlement Was Reached Through Arm's-Length Negotiations.......................16

C.    The Extent of Discovery and Stage of Proceedings .................................................17

D.    The Experience and Views of Counsel ....................................................................18

E.    The Service Awards and Attorneys' Fees and Expenses Are Prima Facie Fair, Reasonable, and Accurate to Permit Notice to be Sent............................................18

VI.    CLASS NOTICE SHOULD BE APPROVED ....................................................................19

VII.    PROPOSED SCHEDULE OF EVENTS ............................................................................21

VIII.    CONCLUSION .................................................................................................................21

BLOOD HURST & O' REARDON, LLP

00228900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Browne v. Am. Honda Motor Co.*,
No. CV 09-06750 MMM (DTBx), 2010 U.S. Dist. LEXIS 145475
(C.D. Cal. July 29, 2010) ................................................................. 15

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ......................................................... 17

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................... 13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ........................................................................ 19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................. 12, 18, 20

*Kim v. Space Pencil, Inc.*,
No. C 11-03796 LB2012 U.S. Dist. LEXIS 169922
(N.D. Cal. Nov. 28, 2012) ............................................................... 15

*Lane v. Facebook*,
696 F.3d 811 (9th Cir. 2011) ........................................................... 15

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ..................................................... 17

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ........................................................... 19

*Montera v. Premier Nutrition*,
No. 16-cv-06980-RS, 2025 U.S. Dist. LEXIS 43184
(N.D. Cal. Mar. 10, 2025) .................................................................. 5

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024) (*Montera I*) .............................. *passim*

*Montera v. Premier Nutrition Corp.*,
No. 23-16162, 2025 U.S. App. LEXIS 1812 (9th Cir. Jan. 28, 2025) (*Montera II*) ........... 5, 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................ 19

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) ............................................... 2

BLOOD HURST & O' REARDON, LLP

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

00228900

*Mullins v. Premier Nutrition Corp.*,
  Case No. 3:13-cv-01271-RS ........................................................................... 2, 3

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 12, 17

*Officers for Justice v. Civ. Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982)....................................................................... 12, 13

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)........................................................... 13, 18, 19, 20

*Sonner v. Premier Nutrition Co.*,
  971 F.3d 834 (9th Cir. 2020)...............................................................*passim*

*Sonner v. Premier Nutrition Corp.*,
  49 F.4th 1300 (9th Cir. 2022)................................................................. 4

**Rules**

Fed. R. Civ. Proc. 23 ........................................................................... 12, 20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O' REARDON, LLP

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2025, at 1:30 p.m., in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Richard Seeborg, and pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff, individually and on behalf of the certified Class, hereby moves for preliminary approval of the Settlement Agreement.

Plaintiff respectfully moves this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving and directing notice as set forth in the Class Notice Program, a summary of which is attached as Exhibit H to the Settlement Agreement; (3) approving the form and content of the Class Notice attached as Exhibits C, D, E, F, and G to the Settlement Agreement; (4) appointing JND as Settlement Administrator; and (5) scheduling a hearing to consider entry of a final order approving the Settlement.

This unopposed motion is based upon this notice of motion, Plaintiff's memorandum in support of the motion, the declarations of Timothy G. Blood and Jennifer Keough, and all supporting exhibits, the complete file and record in this action, and such oral argument as the Court may consider in deciding this motion.

Respectfully submitted,

Dated: October 20, 2025

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)

By:         *s/ Timothy G. Blood*
            TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After twelve years of active litigation in trial and appellate courts, Plaintiffs are pleased to present for preliminary approval this portion of a $90 million non-reversionary cash settlement that will fully resolve all ten of the "Joint Juice" cases pending in California and federal courts.[1] The combined resolution represents the largest settlement ever of a dietary supplement false advertising case.

Here, Plaintiff moves for preliminary approval of the *Montera* case, which covers members of the New York class of purchasers. For this potion, Defendant will pay more than $19 million. This represents a full satisfaction of the *Montera* judgment, including post judgment interest and attorneys' fees. In other words, a 100% recovery.

To put the $90 million total in perspective, the retail value of Joint Juice sold by Defendant during the class periods was $63.4 million. This settlement represents an aggregate recovery of 142% of the product's retail sales.

The companion settlement covers the two certified California classes (*Sonner* and *Bland*) and the additional seven certified single-state classes (the "Multistate Settlement"). That settlement is concurrently presented for approval to the Alameda County Superior Court before Judge Michael Markman.

The amount of the *Montera* Settlement reflects the amount needed to satisfy the judgment, which totals $19,160,186.47. With the addition of post judgment interest, it consists of the statutory damages awarded to the New York class after trial ($9,139,664.55), attorneys fees and expenses already awarded ($9,992,227.92), and the class representative service amount awarded ($28,294.00). In exchange, the claims in *Montera* will be fully and finally released and both parties will dismiss their pending appeals.[2]

---

[1]    Unless otherwise stated, the capitalized terms are the same as set forth in the concurrently filed Stipulation of Settlement ("Settlement Agreement" or "SA").

[2]    The parties are finalizing the stipulation of settlement and exhibits for the Multistate Settlement. Copies of those documents will be provided to this Court once executed. In summary, the Multistate Settlement establishes a non-reversionary, all-cash settlement fund totaling

1

1    Consistent with the Court's determination, Class Members are entitled to $50 for each unit

2  of Joint Juice purchased during the Class Period. The per-unit awards will be adjusted, as necessary,

3  to fully distribute the Settlement's Net Fund to Class Members.

4    By this unopposed motion, Plaintiff respectfully requests that the Court grant preliminary

5  approval of the Settlement and enter the [Proposed] Preliminary Approval Order, which: (1) grants

6  preliminary approval of the Settlement; (2) approves and directs notice as set forth in the Class

7  Notice Program; (3) approves the form and content of the Class Notice; (4) appoints JND as

8  Settlement Administrator; and (5) schedules a hearing to consider entry of a final order approving

9  the Settlement.

10  **II.    SUMMARY OF THE LITIGATION**

11    The epic litigation that resulted in this settlement occurred over twelve years in federal and

12  California trial courts and courts of appeal. The Court is very familiar with this case, as it has

13  presided over the Joint Juice litigation since March 2013, and many of the Court's nineteen orders

14  published to Lexis and Westlaw detail its lengthy history. Pertinent points are summarized below.

15    **A.    The Federal Complaints, Summary Judgment and Class Certification**

16    The litigation began on March 20, 2013, when Vincent Mullins filed a class action complaint

17  against Premier in the United States District Court for the Northern District of California (the

18  "District Court") captioned *Mullins v. Premier Nutrition Corp.*, Case No. 3:13-cv-01271-RS, on

19  behalf of himself and consumers who purchased Joint Juice nationwide. On September 12, 2014,

20  Kathleen Sonner substituted for Vincent Mullins and became the named plaintiff in the *Mullins*

21  action. *Mullins,* ECF No. 64.

22    Following discovery and other motion practice, the District Court denied Premier's motion

23  for summary judgment. *Mullins v. Premier Nutrition Corp.,* 178 F. Supp. 3d 867 (N.D. Cal. 2016).

24  Sonner moved to certify a nationwide or multistate class. In April 2016, after multiple rounds of

25

26  $70,839,813.53. Using the same class notice, automatic award distribution, and claims processes
    proposed here, that Multistate Settlement will provide consumers from the other certified classes

27  with cash awards exceeding 150% of the average retail price of Joint Juice, subject to substantial
    pro rata increases and a no-proof requirement for up to six claimed units. These amounts account in

28  part for interest accrued during the lengthy duration of this case.

BLOOD HURST & O' REARDON, LLP

briefing, the District Court granted certification of a California class but denied certification of a nationwide or multi-state class. *Mullins*, ECF No. 137.

Plaintiffs responded by filing separate, state-specific actions against Premier covering purchasers in Connecticut (*Lux*), Florida (*Caiazzo*), Illinois (*Dent*), Maryland (*Spencer*), Massachusetts (*Schupp*), Michigan (*Simmons*), New York (*Montera*), and Pennsylvania (*Ravinsky*). All were filed in the District Court and related to *Mullins*. Declaration of Timothy G. Blood ("Blood Decl."), ¶ 11. In 2019, the District Court certified classes in each of these actions. *Id.*, ¶ 12.

### B.    The California State Actions, the First Two Appeals and Class Certification in California

While the above listed state-wide actions were being filed and certified, the California class (*Mullins/Sonner*) had significantly progressed and was approaching trial before this Court. Shortly before trial, plaintiff Sonner narrowed the requested relief to equitable remedies under the UCL and CLRA to obtain a bench trial. The District Court dismissed the case with prejudice, holding that Sonner had an adequate remedy at law via damages under the CLRA. Sonner appealed. The Ninth Circuit affirmed, but ruled  that federal courts lack equitable jurisdiction over claims for restitution where an adequate legal remedy exists, even in a diversity case applying California substantive law. *Sonner v. Premier Nutrition Co.*, 971 F.3d 834 (9th Cir. 2020) ("*Sonner I*").

Sonner promptly refiled in Alameda Superior Court, again seeking equitable restitution under the UCL and CLRA. Her complaint covered the same class period as her prior, certified federal case. Blood Decl., ¶ 14.

Separately, in January 2019—while *Sonner I* was on appeal in the Ninth Circuit—Patricia Bland filed a class action complaint in Alameda Superior Court covering the post-*Sonner* class period. Edward White was added as a second named plaintiff in *Bland* and in September 2020, the court certified the *Bland* class of California purchasers with the class period beginning June 21, 2016. Blood Decl., ¶ 15.

Returning to *Sonner* (now in state court), Premier sought to have the case removed to this federal court, and when that did not work, Premier asked this Court to enjoin Sonner's state court action. The Court denied the motion and Premier appealed. The Ninth Circuit affirmed the denial of

BLOOD HURST & O' REARDON, LLP

an injunction, leaving Sonner able to pursue her claims for equitable restitution in state court. *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300 (9th Cir. 2022) ("*Sonner II*"). Blood Decl., ¶ 16.

Premier then asked the California court to dismiss *Sonner*, arguing res judicata resulted from *Sonner I* and barred Sonner from proceeding in *any* court. In May 2023, the California court denied Premier's motion as to the UCL claim, but granted the motion as to the CLRA claim. Challenging the denial, Premier filed a writ petition in the California Court of Appeal which was denied in March 2024. While the writ petition was pending, the superior court certified the *Sonner* class in November 2023. Blood Decl., ¶ 17.

At that point, plaintiffs had eight certified classes in federal court and two certified classes in California state court. These classes covered nine states—the same state classes now included in the settlements. Blood Decl., ¶ 18.

### C.    The *Montera* Trial

Meanwhile, in this Court, plaintiffs were again preparing for trial; this time in *Montera* (New York purchasers), alleging Premier's Joint Juice advertising violated New York's false advertising and unfair business practice laws. Blood Decl., ¶ 19.

The trial lasted nine days. Montera called eight witnesses to testify. As expert witnesses, Montera called: Dr. Timothy McAlindon (rheumatologist and researcher), Dr. Michael Dennis (consumer surveys), Dr. Derek Rucker (marketing and advertising), and Colin Weir (damages). Montera called four lay witnesses: Montera, Lance Palumbo (Joint Juice Brand Director), Darcy Horn Davenport (V.P. of Marketing, President of Premier, CEO), and Nicholas Stiritz (Director of Marketing). Montera introduced 84 exhibits. Blood Decl., ¶ 20.

Premier called five witnesses. Three expert witnesses: Dr. Stuart Silverman (internal medicine, rheumatology), Hal Poret (consumer surveys), and Dr. William Choi (damages). And two lay witnesses: Dr. Kevin Stone (the former CEO and developer of Joint Juice) and Donna Imes (Premier's director of sales for Costco). Premier introduced 26 exhibits. Blood Decl., ¶ 21.

The jury returned a verdict in favor of Montera and the New York class, finding that Premier falsely advertised Joint Juice and that Joint Juice was valueless for its advertised purpose. The jury determined actual damages were about $1.4 million. *Montera*, ECF No. 268. This Court entered

judgment and awarded statutory damages of $8,312,450, or $50 for each of the 166,249 units of Joint Juice sold to New York Class Members during the Class Period. *Id.*, ECF Nos. 293–294. The Court also determined that Plaintiff's Counsel's attorneys' fees and expenses were properly fee-shifted under the GBL and paid by Premier on top of the class judgment amount and, together with taxable costs, awarded $7,980,084.56 in fees and expenses, and a $25,000 service award to the Class Representative. *Id.*, ECF Nos. 314, 320, 346.

### D.    The *Montera* Post-Trial Appeals and Subsequent Remand Proceedings

Premier appealed the verdict, final judgment and numerous underlying orders. Plaintiff appealed the grant of a reduction to the award of statutory damages. The Ninth Circuit affirmed the jury verdict and judgment, reversing only the Court's award of pre-judgment interest, and without addressing the merits of the Court's $8.3 million award, vacated and remanded for further consideration of the due process limit to statutory damages in light of an intervening Ninth Circuit decision clarifying the approach to evaluating such awards. *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024) (*Montera I*). In a separate opinion, the Ninth Circuit affirmed the District Court's order awarding attorney fees and expenses, and thereafter, taxed Plaintiff's appeal costs ($1,120.90) against Premier and transferred to this Court, Plaintiff's Counsel motion for attorneys' fees and non-taxable expenses for prevailing on appeal. *Montera v. Premier Nutrition Corp.,* 2025 U.S. App. LEXIS 1812 (9th Cir. Jan. 28, 2025) (*Montera II*). Following briefing, this Court awarded Plaintiff's Counsel $931,508.39 in fee-shifted fees and expenses for prevailing on appeal. *Montera*, ECF No. 381. Premier's en banc petition following *Montera I* was denied; its motion to stay the mandate pending its petition for writ of certiorari was denied; and its petition for writ of certiorari in the United States Supreme Court is currently stayed and will be dismissed if this Settlement is effectuated. Blood Decl., ¶ 25.

On remand from *Montera I*, Plaintiff moved for statutory damages of $83,124,500, or $500 per unit sold. Premier argued the actual damages of $1,488,078.49—a full retail price refund—and the award of attorneys' fees were sufficient to achieve any deterrence goal, including because that amount was many multiples of its revenue or profits. This Court determined that the proper amount in aggregated statutory damages is $8,312,450. *Montera v. Premier Nutrition*, 2025 U.S. Dist.

1    LEXIS 43184, at *21 (N.D. Cal. Mar. 10, 2025). Both Parties again appealed to the Ninth Circuit.

2    Those appeals will also be dismissed if this Settlement is effectuated. Blood Decl., ¶ 26.

3    **E.    Issue Preclusion Following *Montera***

4    While *Montera* was on appeal, plaintiffs prepared *Bland* and *Sonner* for trial in California

5    Superior Court. Trial commenced on August 6, 2024. However, on the first day of trial, the Ninth

6    Circuit issued *Montera I*. The court promptly stayed the trial to allow briefing on the issue preclusive

7    effect of *Montera I*. Plaintiffs filed motions for issue preclusion in the California court

8    (*Sonner/Bland*), and in this Court, where *Dent* (the Illinois class) was next slated for trial. Blood

9    Decl., ¶ 27.

10    On May 2, 2025, this Court granted in part the motion for issue preclusion in *Dent*. On May

11    14, 2025, the California court granted the motion for issue preclusion in *Sonner/Bland* and set trial

12    on the remaining issues. Blood Decl., ¶ 28. In their orders granting issue preclusion, both courts

13    encouraged the parties to discuss settlement, and the California court ordered mediation with the

14    Honorable Brad Seligman. After a full day of mediation with Judge Seligman—the sixth mediator

15    in the litigation—both parties subsequently accepted the mediator's proposal. *Id.*

16    **F.    Discovery and Trial Preparations**

17    Plaintiff's Counsel *inter ali*a (1) conducted and defended 64 depositions, including those of

18    Premier's corporate designees, its CEO (on two occasions and as a live witness at trial), current and

19    former marketing, operations, and science employees, and scientific, marketing and damages-

20    related experts; (2) reviewed over 500,000 pages of documents produced by Premier; and (3) served

21    36 subpoenas on third parties with involvement in marketing and retail sales who produced

22    thousands of pages of documents. Plaintiff's Counsel in turn responded to discovery served on

23    plaintiffs, defended the depositions of the current and former named plaintiffs whose testimony was

24    used throughout the litigation, and worked with more than eleven of their own expert witnesses and

25    additional consultants to prepare for class certification, summary judgment, and trials, including

26    preparing and exchanging expert reports and conducting and defending expert depositions. Forty-

27    eight expert reports or declarations were exchanged by the parties at various stages of the litigation.

28    Blood Decl., ¶ 29.

*Blood Hurst & O' Reardon, LLP*

6                                    Case No. 3:16-cv-06980-RS

1  Plaintiffs prepared for trial three times. In 2017, plaintiffs' counsel prepared the *Sonner* case

2  for trial before it was dismissed by the District Court just weeks before trial was set to begin. In

3  2022, Plaintiff's Counsel prepared and tried *Montera* for nine days before a jury in the District

4  Court. In 2024, the parties started trial in the *Bland* and *Sonner* state actions, but the trial was stayed

5  on the first day because the *Montera I* decision was issued the morning of trial. Trial in *Bland* and

6  *Sonner* was to reconvene in late fall 2025. The jury trial in *Dent* was scheduled to begin in this Court

7  in February 2026. Blood Decl., ¶ 30.

8  **G.    Settlement Negotiations**

9  Settlement negotiations were prolonged and hard-fought. All told, the parties participated in

10  seven formal mediations and numerous informal negotiations with six mediators: Martin Quinn,

11  Esq. (JAMS, 2013), Hon. Carl West (Ret.) (JAMS, 2015), Hon. Layn Phillips (Ret.) (Phillips ADR,

12  2020), Scott S. Markus, Esq. (Signature Resolution, 2024), Hon. James Reilly (2024), and Hon.

13  Brad Seligman (2025). These mediation sessions took place with fully informed parties, before and

14  after various milestones in the litigation: class certification, summary judgment, trial and appeals.

15  Following a full-day mediation with Judge Seligman on June 23, 2025, a mediator's proposal was

16  conveyed and subsequently accepted by both parties. Blood Decl., ¶ 31.

17  **III.    THE SETTLEMENT**

18  **A.    The Class**

19  This Settlement covers the certified class of New York purchasers to whom notice of

20  pendency was distributed pre-trial: All persons who purchased Joint Juice in New York from

21  December 5, 2013 to December 28, 2021, inclusive of those dates. SA, § I.9; Blood Decl., ¶ 35.

22  **B.    The Settlement Benefits for Class Members**

23  **1.    Cash Benefits**

24  Class Members are eligible to receive cash payments of $50 for each Joint Juice Unit they

25  purchased during the Class Period. The per-unit payment amount of $50 may be increased, if

26  necessary, to ensure the entire Net Fund[3] is distributed to the Class. No money will revert to Premier.

27

28  [3]    The "Net Fund" in essence is the Class Judgment Amount this Court awarded plus $827,214.55 in statutory, post-judgment interest through October 20, 2025 (for a combined total of

BLOOD HURST & O' REARDON, LLP

The method of disbursement depends on whether the Class Member can be identified through Retail Purchase Records ("Identified Class Members") or, where there are no purchase records, must submit a Claim ("Claim-In Class Members").

### a.    Identified Class Members

Identified Class Members are people whose identities and purchase histories can be determined from Retail Purchase Records. SA, § II.B.1.a(i). Retail Purchase Records consist of sales records obtained from Premier and the four major retailers of Joint Juice—Costco, Sam's Club, Walmart, and Amazon—which together account for over 80% of the Joint Juice sales at issue. SA, § I.52; Blood Decl., ¶ 40. No other club store or online retailer (i.e., retailers likely to possess contact information or purchase histories for individual Class Members) sold any significant amount of Joint Juice to Class Members. *Id.*

Identified Class Members will automatically receive a Cash Payment of $50 for each Joint Juice Unit they purchased, as reflected in the Retail Purchase Records. No Claim Form or other action is required to receive this payment. SA, § II.B.1.a.

If an Identified Class Member believes the Retail Purchase Records do not capture all their Joint Juice purchases during the Class Period, they may submit a Claim Form for additional payments. Class Members who provide Proof of Purchase will receive an additional Cash Payment of $50 per unit based on the number of Joint Juice Units shown in the Proof of Purchase. Those who do not have Proof of Purchase may still claim additional reimbursement for up to six additional Joint Juice Units, with Cash Payments again awarded at $50 per unit. SA, § II.B.1.a(ii). The Claim Form is very simple and only requires the Class Member to write-in the number of units they believe they purchased. SA, Ex. I.

### b.    Claim-In Class Members

All other Class Members (i.e., those who cannot be identified from Retail Purchase Records) may submit the simple Claim Form to receive reimbursement for their Joint Juice purchases. SA, §§ II.B.1.b, II.C.2, and Ex. I thereto.

---

$9,139,664.55) less notice and settlement administration expenses. SA, §§ I.11, I.34.

BLOOD HURST & O' REARDON, LLP

Like Identified Class Members, Claim-In Class Members who provide Proof of Purchase will receive a Cash Payment of $50 per unit based on the number of units shown in the Proof of Purchase. Those without Proof of Purchase may claim reimbursement for up to six Joint Juice Units, with Cash Payments also calculated at $50 per unit. *Id.* Based on retail sales data that Plaintiff's expert analyzed and testified about at trial, the average Class Member purchased about 3.5 units. Blood Decl., ¶ 39. Thus, without submitting proof, Claim-In Class Members are eligible to receive $300 and, as discussed below, potentially up to seven times that amount.

### 2.    Pro Rata Adjustments, Supplemental Claims and Cy Pres

If the total amount owed to Class Members is greater than the Net Fund, Cash Payments will be reduced on a pro rata basis. SA, § II.D.2.a.

If the total amount owed is less than the Net Fund, Cash Payments will be increased by up to seven times the originally calculated amount to distribute the entire Net Fund to Class Members. *Id*. at § II.B.2.b.

If the Net Fund is still not exhausted after the seven times upward adjustment, supplemental notice will be disseminated and the Claim Deadline will be extended by 30 days to allow additional Class Members to submit Claims. *Id*. at § II.B.2.c. If money remains after the supplemental period, all Cash Payments will be further increased on a pro rata basis until the Net Fund is fully distributed to Class Members. *Id*. at §§ II.B.2.c. and I.6.

In short, the Net Fund will be distributed to Class Members to the fullest extent possible. The only amount that may go to a cy pres recipient is the amount from uncashed checks. *Id*. at § II.B.2.f. Even then, the Settlement Administrator will send reminder emails to urge Class Members to deposit their checks to ensure that they receive as much of the Net Fund as possible. *Id*.

### 3.    Class Notice and Settlement Administration

The cost of class notice and settlement administration will be paid before the Net Fund is distributed to Class Members. SA, § II.A.4.a.

The Parties have developed a robust Class Notice Program with the assistance of JND Legal Administration ("JND" or "Settlement Administrator"), a firm specializing in class action notice plans. *See* Declaration of Jennifer Keough Regarding Notice Plan ("Keough Decl."), ¶¶ 1, 3–11.

JND is particularly well suited to administer notice of the Settlement because it previously disseminated the pre-trial class notice in this case. *Id.*, ¶ 1.

The Class Notice Program informs Class Members of their rights and benefits under the Settlement and satisfies due process requirements. It includes a comprehensive, multi-faceted plan for delivery by email, U.S. mail, Internet, social media, press release, and a Settlement Website.

### a.    The Forms of Class Notice

The forms of Class Notice include a Long Form Notice, Email Notice, Postcard Notice, Internet Banner Advertisements with hyperlinks to the Settlement Website, and a Press Release disseminated in connection with the Publication Notice. SA, § II.E.1, Exhibits C, D, E, F, G, and H (Class Notice Program Summary); Keough Decl., ¶ 16. The Parties used the model class notice forms developed by the Federal Judicial Center and the Impact Fund's Notice Project in developing the informative and clear Long Form Notice, Email Notice, and Postcard Notice. Blood Decl., ¶ 54; *see also* https://noticeproject.org/.

A dedicated Settlement Website will provide Class Members with comprehensive information about the Settlement, including a description of the litigation, the settlement relief, important dates and deadlines, and Class Members' legal rights. Claim Forms and opt-out requests may be submitted through the website. As the settlement progresses, the Settlement Website will post updates on the settlement status, and include relevant pleadings and settlement-related documents, including the Settlement Agreement and its exhibits, the Long Form Notice, Court orders, and the motion for final approval. It will also list a toll-free telephone number maintained by the Settlement Administrator. SA, § II.E.1.

### b.    The Dissemination of Class Notice

`    Direct Notice will be sent to all Class Members whose names and contact information can be identified through Retail Purchase Records. The Direct Notice will be sent via email (Email Notice) or, if no email address is available, by U.S. Mail (Postcard Notice) to the physical address on file. SA, § II.E.2.a(i). Retailers responsible for over 80% of the sales at issue have been subpoenaed and are providing the Class Member contact information and purchase history data they have available. Blood Decl., ¶ 56. Direct Notice will be sent to all Class Members for whom these

BLOOD HURST & O' REARDON, LLP

1  retailers provide contact information. Before sending Direct Notice, the Settlement Administrator

2  will update email and mail addresses using industry-standard methods. SA, §§ II.e.2.a(iv)-(v);

3  Keough Decl., ¶¶ 25–27, 34. Direct Notices returned with forwarding information will be resent,

4  and addresses for Direct Notices returned as undeliverable will be updated using customary address

5  tracing methods. SA, § II.E.2.a(v); Keough Decl., ¶ 34.

6  Publication notice will supplement direct notice through a combination of print and online

7  media, including the Press Release, Internet Banner Advertisements, sponsored search engine text

8  ads (e.g., Google, Yahoo, Bing), and other forms of online and contextual advertising, all employing

9  accepted reach methodology. SA, § II.E.2.b. In addition, the Long Form Notice and other settlement

10  documents will be posted on the Settlement Website. *Id.*, § II.E.2.c. A toll-free telephone hotline

11  will be publicized and the Long Form Notice and Claim Form will also be sent via electronic or

12  regular mail to any Class Member upon request. *Id*., § II.E.2.d-e.

13  Notice to public officials required by the Class Action Fairness Act ("CAFA") will be sent

14  in accordance with the provisions of that Act. Keough Decl., ¶ 20.

15  **C.     Attorneys' Fees and the Class Representative Service Award**

16  Plaintiff's Counsel seek only the Attorneys' Fees and Expenses previously awarded by this

17  Court and the Ninth Circuit, plus post judgment interest. SA, §§ I.2, II.I.1. Under the Settlement,

18  Montera will also receive payment of the Class Representative Service Award previously awarded

19  by this Court, plus post judgment interest. SA, §§ I.17, II.I.2.

20  **D.     Release of Claims and Dismissal of Pending Appeals**

21  Once this and the Multistate Settlement become final, and in exchange for Premier's

22  payment of $19,160,186.47, consisting of the Class Judgment Amount, Attorneys' Fees and

23  Expenses and the Class Representative Service Award (including post-judgment interest on these

24  amounts through October 20, 2025), Plaintiff and the Class will fully release their claims against

25  Premier and other Released Parties. SA, §§ I.47–50, II.H. Plaintiff and Premier will also dismiss

26  with prejudice their respective appeals pending in the Ninth Circuit, Appeal Nos. 25-2133 and 25-

27  1743. SA, § II.A.5. Premier will dismiss with prejudice its petition for writ of certiorari pending in

28  the U.S. Supreme Court, No. 24-999. *Id.*

BLOOD HURST & O' REARDON, LLP

## IV.    AFFIRMATION OF CLASS CERTIFICATION

While not necessary, the parties ask that the Court affirm certification of the Class for settlement purposes. The Class is the same as that previously certified by this Court, affirmed by this Court in its denial of Premier's pre-and post-trial motions for de-certification, and affirmed by the Ninth Circuit on appeal. *See Montera,* ECF Nos. 79, 180, and 293; *Montera,* 111 F.4th at 1043.

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Trial courts have broad discretion in considering class action settlement approval. *Officers for Justice v. Civ. Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). In so doing, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004).

Rule 23(e) sets forth the following factors to consider in evaluating whether the proposed settlement is fair, reasonable, and adequate: (a) the class representatives and class counsel have adequately represented the Class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the Class is adequate, taking into account: (i) the costs, risks, and delay of continued litigation and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member Claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (d) the proposal treats class members equitably relative to each other.

Additional factors used to evaluate the fairness of a class action settlement include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining the finding of liability through appeals and other review; (4) the risks of establishing damages; (5) the amount offered in Settlement; (6) the extent of discovery completed and the stage of the proceedings; (7) the experience and view of counsel; (8) the reaction

BLOOD HURST & O' REARDON, LLP

00228900

of the class members to the proposed settlement and (9) the reasonableness of the relief provided by the settlement agreement in light of the best possible recovery. *Officers for Justice*, 688 F.2d at 625; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "The relative degree of importance to be attached to any particular factor will depend . . . [on] the unique . . . circumstances [of each] case." *Officers for Justice*, 688 F.2d at 625.

### A.    The Relief Provided for the Class is Exceptional

#### 1.    Class Members Are Entitled to the Full Judgment Amount

First and foremost, the Settlement should be preliminarily approved because the monetary relief is exceptional. Class Members are entitled to their portion of the full judgment amount previously determined by the Court; that is $50 for each Joint Juice Unit sold during the Class Period plus post-judgment interest, for a total of $9,139,664.55. *Montera*, ECF Nos. 268, 293–294, 391; Blood Decl., ¶ 37. The full retail value of all Joint Juice Units sold during the Class Period is only $1,488,078.49, meaning the Class Judgment Amount is over ***six times greater*** than total retail sales. *Montera*, ECF Nos. 268, 391 at 9.

When possible, Cash Payments to Class Members are automatic. Class Counsel has subpoenaed data from the largest retailers of Joint Juice. Class Members who can be identified through these Retail Purchase Records will receive automatic Cash Payments calculated based on the number of units reflected in those records and paid at $50 per unit purchased. SA, § II.B.1.a(i). No claim form or action is required. *Id.*

Class Members who are not identified through retailer records—or who believe they purchased more units than are reflected in the Retail Purchase Records—can submit a simple Claim Form online, which requires just writing the total number of units purchased and checking a box to receive a physical or electronic check. SA, Ex. I. Proof of purchase is not required to receive reimbursement of $50 per unit for up to six units purchased—which Plaintiff's expert testified at trial, exceeds the average number of units purchased per Class Member. Class Members who do provide proof of purchase will receive the same $50 award for every unit they can document. SA,

BLOOD HURST & O' REARDON, LLP

§§ II.B.1.a(ii), II.B.1.b. In short, the same per-unit payment formula applies uniformly to all Class Members.

Class Counsel anticipate that the Net Fund available to pay Class Members will exceed the Cash Payments as initially calculated. Blood Decl., ¶¶ 3, 46. To ensure the Net Fund is fully distributed to Class Members, the Settlement establishes a structured distribution process.

First, the Settlement Administrator will calculate each Participating Class Member's Cash Payment using the $50 per-unit formula. If this calculation leaves money in the Net Fund, the per-unit payments will be increased by up to seven times, with the exact multiplier determined to bring the total payout as close as possible to the Net Fund balance. SA, § II.B.2.b.

Second, if increasing the per-unit payments up to seven times still leaves money in the Net Fund, supplemental notice will be disseminated and the Claim Deadline will be extended for 30 days. All Class Members—except those who submitted a Claim Form by the original deadline—will have another opportunity to participate. SA, § II.B.2.c.

Third, after the close of the supplemental claim period, the Settlement Administrator will recalculate all Cash Payments from both the initial and supplemental claims using the applicable per-unit multiplier, and then distribute those amounts to Participating Class Members. SA, § II.B.2.d.

If any funds remain after this process (e.g., from uncashed checks or undeliverable electronic payments), no amount will revert to Premier. Instead, all residual funds will be distributed *cy pres* to the Rheumatology Research Foundation (the "Foundation"). SA § II.B.2.f. The Foundation is a 501(c)(3) non-profit established by the American College of Rheumatology in 1985 and is the nation's largest private funder of rheumatology research and training. Its mission is to advance education and research into the causes, prevention, and treatment of rheumatic diseases—including osteoarthritis—by supporting rheumatology professionals and early-career investigators. *See* https://www.rheumresearch.org. There is a direct and meaningful nexus between the Foundation's work and the interests of the Class: Plaintiff alleged that Joint Juice was falsely advertised as relieving the symptoms of osteoarthritis, and the product was marketed to individuals suffering from

BLOOD HURST & O' REARDON, LLP

osteoarthritis and its symptoms, including joint pain and stiffness. Blood Decl., ¶ 46; *see Lane v. Facebook*, 696 F.3d 811, 821 (9th Cir. 2011).

### 2.    The Expense and Delay of Further Litigation

The Settlement is also fair considering the expense and delay of continued litigation.

Absent this Settlement, Premier would have continued pursuing its various appeals. Currently pending is Premier's Writ of Certiorari in the U.S. Supreme Court. Although Montera believes that in all likelihood the petition would have been denied, if granted, the parties would have embarked on a labyrinth of appeals and further litigation, including: (i) briefing the merits of Premier's petition for certiorari, which conceivably could have resulted in; (ii) further briefing and argument in the Ninth Circuit on Premier's motion to certify questions to the New York Court of Appeals, (iii) briefing in the New York Court of Appeals on whether certification is proper and should be accepted by that court, (iv) briefing in the New York Court of Appeals on merits of the certified questions; and (v) further briefing in the Ninth Circuit in light of New York's answers on the certified questions.

In addition, absent this Settlement, Premier would have pursued its pending appeal in the Ninth Circuit regarding the Court's reduction of the statutory damages provided by New York law on due process grounds and Montera would have pursued her cross-appeal. Pursuing these appeals would have taken another two years or more and again significantly increased litigation costs.

Moreover, after years of delay caused by appeals, Class Members might not recover more than what this Settlement provides them now: $50 per unit which amount exceeds 550% of the retail price paid ($8.95). Blood Decl., ¶¶ 38, 62; *see also Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475, at *40 (C.D. Cal. July 29, 2010) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."); *Kim v. Space Pencil, Inc.*, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, . . .").

BLOOD HURST & O' REARDON, LLP

**B.    The Settlement Was Reached Through Arm's-Length Negotiations**

The Settlement was reached after arm's-length negotiations conducted intermittently throughout the life of the litigation—before and after class certification, summary judgment, trial and appeals to the Ninth Circuit. There were seven formal mediation sessions with six mediators. These negotiations were contentious and preceded by extensive mediation briefing.

The first mediation took place on December 3, 2013, before discovery began in earnest, with Martin Quinn, Esq. at JAMS. The second was on April 9, 2015, after substantial discovery, but before class certification or summary judgment rulings, before the Honorable Carl West (Ret.) at JAMS.

The third mediation occurred on September 24, 2020, before the Honorable Layn Phillips (Ret.). By then, Premier's motion for summary judgment had been denied, *Montera* had been certified, and the Ninth Circuit had dismissed the California action in *Sonner I* for lack of equitable jurisdiction. *Montera* and the related cases had been litigated for seven years. Yet, the mediation was unsuccessful and it terminated after half a day. Blood Decl., ¶ 66.

Nearly four years passed before the next mediation. By that point, the *Montera* trial had taken place and oral argument before the Ninth Circuit in *Montera I* was completed. The timing therefore presented a natural opportunity for resolution. Blood Decl., ¶ 67. Nonetheless, mediation before Scott S. Markus, Esq. at Signature Resolution on April 8, 2024, was neither successful nor productive. *Id.*

The next mediations were held shortly before the *Bland/Sonner* trial was scheduled to begin in Alameda Superior Court. On June 24 and July 10, 2024, the parties participated in sessions before the Honorable James Reilly. The sessions were unsuccessful.

On August 6, 2024, the Ninth Circuit issued its decision in *Montera I*, affirming the District Court on all points raised by Premier, except for the award of prejudgment interest and remanding the statutory damages award. *Montera*, 111 F. 4th 1018. Even then, settlement did not follow and hard-fought litigation continued. Premier sought en banc review (denied), moved to stay the mandate (denied), filed a petition for writ of certiorari in the U.S. Supreme Court (pending), and opposed plaintiffs' motions for application of issue preclusion.

1    In the orders granting issue preclusion, both this Court and separately Judge Markman of

2   Alameda Superior Court, encouraged the parties to discuss settlement. Shortly after, the seventh

3   mediation occurred by order of Judge Markman before the Honorable Brad Seligman on June 23,

4   2025. At the end of the full-day mediation, Judge Seligman delivered his mediator's proposal, which

5   the parties subsequently accepted. Blood Decl., ¶ 70.

6    It is difficult to overstate the contentiousness of the litigation and settlement negotiations.

7   This history demonstrates that the Settlement is the product of hard-fought, arm's-length

8   negotiations between experienced counsel, strongly supporting a finding that it is fair, reasonable,

9   and adequate and merits preliminary approval.

10   **C. The Extent of Discovery and Stage of Proceedings**

11   The extent of discovery taken and the stage of the proceedings also supports the Settlement.

12  This factor "evaluates whether the parties have sufficient information to make an informed decision

13  about settlement." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015). "A

14  settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."

15  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528; *see also Campbell v. Facebook, Inc.*, 951 F.3d

16  1106, 1122 (9th Cir. 2020).

17   That standard is readily met here. The Settlement was reached after years of discovery,

18  summary judgment, class certification, expert analysis, a full jury trial, pre- and post-trial motions

19  (including motions to decertify) and multiple appeals.

20   Hard numbers attest to the extensive discovery and factual development completed before

21  settlement. Plaintiffs' counsel *inter al*ia (1) conducted and defended 64 depositions; (2) reviewed

22  over 500,000 pages of documents produced by Premier; and (3) served 36 subpoenas on third parties

23  and reviewed thousands of pages of third-party documents. The named plaintiffs in all the cases

24  were deposed. Montera also testified at trial. Plaintiffs worked with eleven of their own expert

25  witnesses and additional consultants to prepare for class certification, summary judgment, and trial.

26  Expert discovery was conducted repeatedly: first for the original 2017 trial set in *Mullins/Sonner*,

27  then again in *Montera* in 2022, and once more before the *Bland/Sonner* 2024 trial. Both parties'

28  experts testified at the *Montera* trial. Blood Decl., ¶¶ 5, 29–30, 72.

BLOOD HURST & O' REARDON, LLP

The Settlement was therefore reached only after full investigation, extensive discovery, expert development, trial and multiple appeals. This factor strongly supports preliminary approval.

### D.    The Experience and Views of Counsel

In evaluating fairness, courts consider whether the settlement was negotiated by experienced counsel at arm's-length. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]").

In evaluating the fairness, courts should give significant weight to the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Class Counsel, who are highly experienced in prosecuting consumer protection class actions, believe the Settlement is fair, reasonable and adequate. The relief provided to Class Members—the judgment amount of $50 per unit plus interest (which greatly exceeds full refunds), and increased as necessary to fully distribute the Net Fund—represents an exceptional result. Nothing reverts to Premier. The considered judgment of experienced counsel strongly supports granting preliminary approval. Blood Decl., ¶¶ 7, 74, and Exhibit B thereto (Class Counsel's firm resume).

### E.    The Service Awards and Attorneys' Fees and Expenses Are Prima Facie Fair, Reasonable, and Accurate to Permit Notice to be Sent

Although not ruled upon until the final approval stage, this District encourages plaintiff's counsel to include information about the fees and expenses they intend to request. *See* N.D. Cal, Procedural Guidance for Class Action Settlements, at Par. 6.

BLOOD HURST & O' REARDON, LLP

1    The reasonableness standard is readily met. The Attorneys' Fees and Expenses were already

2    thoroughly briefed, opposed by Premier, and approved by this Court and the Ninth Circuit under the

3    applicable New York fee shifting statutes and lodestar method. *Montera*, ECF Nos. 320, 346. Under

4    the Settlement, Plaintiff's Counsel will receive the fee and expense amounts already awarded in this

5    case. SA, §§ I.2, II.I.1; *see also Montera v. Premier Nutrition Corp.*, 2025 U.S. App. LEXIS 1812

6    (9th Cir. Jan. 28, 2025) (affirming award of pre-appeal fees and expenses); *Montera*, ECF No. 357

7    (taxed costs on appeal); *Id.*, ECF No. 381 (fees and non-taxed expenses for prevailing on the

8    *Montera I* appeal); *Id.*, ECF No. 389 (taxed cost for prevailing on the *Montera II* appeal). Separate

9    and apart from the fee and expense proposal, the Class will also receive the full Class Judgment

10   Amount plus post judgment interest, minus the costs of administration.

11   The service award to Montera is the same. Following briefing and evidence submitted, the

12   Court awarded a service award to Montera. *Montera*, ECF No. 320. The Settlement provides that

13   Montera will receive that service award. SA, §§ I.17, II.I.2.

14   Nonetheless, Class Members will be given the opportunity to object to these fee and expense

15   awards. The motion for attorneys' fees and expenses will be filed 40 days before the deadline to

16   object to the Settlement. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir.

17   2010). Finally, the Court can be assured that Plaintiff's Counsel is not and will not seek

18   compensation in the *Bland/Sonner* Multistate Settlement for any time or expense covered by the

19   *Montera* fee and expense awards. Blood Decl., ¶ 50.

20   **VI.    CLASS NOTICE SHOULD BE APPROVED**

21   The threshold class notice test is whether the distribution method is "reasonably calculated"

22   to apprise the class of the pendency of the action, the proposed settlement, and the class members'

23   rights to opt-out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting

24   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The court retains discretion

25   over the mechanics of the notice process, which are subject only to the broad "reasonableness"

26   standards imposed by due process. *Mullane*, 339 U.S. at 314-15. This Circuit considers settlement

27   notice "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert

28   those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563

00228900

F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Hanlon*, 150 F.3d at 1025 (notice should provide class members with the opportunity to opt-out and pursue other recovery opportunities). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

In accordance with the Federal Judicial Center's class notice guidelines and utilizing the model forms created by the Impact Fund's Notice Project, the proposed Long Form Notice is carefully written in plain language and satisfies due process. It includes: (1) basic information about the Action; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Premier related to the Action will be released if the Class Member does not opt-out; (6) the names of Class Counsel and information regarding attorneys' fees, expenses, and the service award; (7) the Final Approval Hearing date; (8) an explanation that each Class Member has the right to appear at the Final Approval Hearing; and (9) the Settlement Website address and a toll-free number where additional information can be obtained. SA, Ex. C. The Long Form Notice provides Class Members with sufficient information written in plain English to make an informed decision on whether to object to or opt-out of the Settlement. It satisfies the content requirements of Rule 23. *Rodriguez*, 563 F.3d at 962.

The proposed dissemination of the Class Notice also satisfies all due process requirements. As discussed in § III.B.3 above, the Class Notice Program is multifaceted. *See also* SA, Ex. H (Class Notice Program Summary). Direct Notice by email or mail will be sent to as many Class Members as possible using subpoenaed retailer sales data. Direct Notice will be supplemented with publication notice via the Internet Banner Advertisements using a New York state targeted digital media campaign. To inform Class Members who might have moved out of New York, a nationwide digital campaign will supplement the New York geotargeted efforts. Publication Notice will also be sent out via a press release. The Long Form Notice also will be posted in English and Spanish on

BLOOD HURST & O' REARDON, LLP

00228900

the Settlement Website and a toll-free telephone line will be publicized with pre-recorded information and live operators. *See generally* Keough Declaration.

The contents and dissemination of Class Notice Program constitutes the best notice practicable and fully complies with Rule 23's requirements.

## VII.  PROPOSED SCHEDULE OF EVENTS

Based upon the estimated time needed to initiate Class Notice, Montera requests that the Court set the Final Approval Hearing for at least 141 days after the preliminary approval order, or as soon thereafter as the Court's schedule permits. The proposed settlement-related dates are:

| EVENT | DEADLINE |
|---|---|
| Dissemination of Class Notice ("Class Notice Date") | Within sixty (60) days from entry of the Preliminary Approval Order |
| Opening brief in support of motion for attorneys' fees, expenses and service award | No later than forty (40) days before the Objection Date |
| Opening brief in support of final approval | No later than forty (40) days before the Final Approval Hearing |
| Deadline for objections ("Objection Date"), opt-outs, and notices of appearance | Sixty (60) days after the Notice Date |
| Reply brief in support of motions for fees, expenses, and service award, and final approval | Seven (7) days prior to the Final Approval Hearing |

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion and enter the concurrently submitted proposed order, which: (1) grants preliminary approval of the Settlement; (2) approves and directs notice as set forth in the Class Notice Program; (3) approves the form and content of the Class Notice; (4) appoints JND as Settlement Administrator; and (5) schedules a hearing to consider entry of a final order approving the Settlement.

Respectfully submitted,

Dated: October 20, 2025

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:        *s/ Timothy G. Blood*
        TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619/762-1910
619/756-6991 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 3:16-cv-06980-RS

00228900

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 20, 2025.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O' REARDON, LLP

00228900