BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY BETH MONTERA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER NUTRITION CORPORATION f/k/a JOINT JUICE, INC.,<br><br>Defendant. | Case No. 3:16-CV-06980 RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW**<br><br>**CLASS ACTION**<br><br>Date:        May 7, 2026<br>Time:       1:30 p.m.<br>Judge:     Honorable Richard Seeborg<br>Courtroom:  Courtroom 3, 17th Floor<br><br>Complaint Filed:        December 5, 2016 |

*(margin, vertical)* BLOOD HURST & O' REARDON, LLP

00233556

Case No. 3:16-cv-06980-RS

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................................1

II. PROCEDURAL HISTORY ..........................................................................................2

III. THE SETTLEMENT AGREEMENT............................................................................3

IV. THE PRELIMINARY APPROVAL ORDER ...............................................................4

V. THE STANDARDS FOR FINAL APPROVAL ...........................................................4

VI. THE SETTLEMENT MERITS FINAL APPROVAL....................................................6

    A.    The Previously Certified Class Remains Appropriate, and Class Counsel and the Class Representative Have Adequately Represented the Class ...........................6

    B.    The Settlement Avoids Further Appellate Proceedings, Expense, and Delay ..........7

    C.    The Settlement Provides for Payment of the Full Judgment Amount Plus Interest to the Class ...........................................................................................................7

    D.    The Extent of Discovery, Stage of Proceedings, and Arm's Length Negotiations .........................................................................................................10

    E.    The Experience and Views of Counsel ...................................................................11

    F.    The Reaction of Class Members Favors Final Approval ........................................11

    G.    Class Notice Satisfied the Requirements of Due Process .......................................12

VII. CONCLUSION ..........................................................................................................14

BLOOD HURST & O' REARDON, LLP

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

00233556

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................................. 6

*Cabrera v. Google LLC*,
No. 5:11-cv-01263-EJD, 2025 U.S. Dist. LEXIS 169496
(N.D. Cal. Aug. 29, 2025) ............................................................................................... 7, 9

*Churchill Village, LLC v. GE*,
361 F.3d 566 (9th Cir. 2004) ............................................................................................ 11

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 5, 6

*In re Coll. Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025) ................................................................................ 9

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......................................................................................................... 12

*Franco v. E-3 Sys.*,
No. 19-cv-01453-HSG, 2021 U.S. Dist. LEXIS 107399
(N.D. Cal. June 8, 2021) ..................................................................................................... 6

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477
(N.D. Cal. Apr. 22, 2010) .................................................................................................. 12

*Johns v. Bayer Corp.*,
No. 09cv1935, 2013 U.S. Dist. LEXIS 14933
(S.D. Cal. Feb. 1, 2013) ..................................................................................................... 13

*In re Juul Labs, Inc.*,
No. 19-md-02913-WHO, 2024 U.S. Dist. LEXIS 45697
(N.D. Cal. Mar. 14, 2024) ............................................................................................. 8, 12

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................................... 7

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................................................ 11

BLOOD HURST & O' REARDON, LLP

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

00233556

BLOOD HURST & O' REARDON, LLP

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024) ............................................................................................. 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................................ 12

*Nachsin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011) .............................................................................................. 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 11

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ............................................................................................ 5, 6

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................................. 11

*Perks v. ActiveHours, Inc.*,
No. 5:19-cv-05543-BLF, 2021 U.S. Dist. LEXIS 57272
(N.D. Cal. Mar. 25, 2021) .................................................................................................... 9

*Plumbers v. Caredx, Inc.*,
No. 22-cv-03023-TLT, 2025 U.S. Dist. LEXIS 258237
(N.D. Cal. Dec. 4, 2025) ................................................................................................. 8, 10

*Rodriguez v. West Publ'g Co.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................................ 5

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ....................................................................................... 12

*Sparkman v. Comerica Bank*,
No. 2:24-cv-01206-DJC-CKD, 2025 U.S. Dist. LEXIS 80649
(E.D. Cal. Apr. 23, 2025) .................................................................................................... 13

*Taylor v. Google*
LLC, No. 20-cv-07956-VKD, 2026 U.S. Dist. LEXIS 46054
(N.D. Cal. Mar. 5, 2026) ..................................................................................................... 11

*In re TD Ameritrade Account Holder Litig.*,
No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222
(N.D. Cal. Sept. 12, 2011) ..................................................................................................... 5

*In re Telescopes Antitrust Litig.*,
No. 5:20-cv-03639-EJD, 2025 U.S. Dist. LEXIS 70066
(N.D. Cal. Apr. 11, 2025) ..................................................................................................... 9

Case No. 3:16-cv-06980-RS

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

00233556

*Warner 1v. Toyota Motor Sales, U.S.A., Inc.*,
    No. CV 15-2171 FMO, 2017 U.S. Dist. LEXIS 77576
    (C.D. Cal. May 21, 2017)......................................................................................................... 12

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    No. 20-md-02966-RS, 2025 U.S. Dist. LEXIS 214508
    (N.D. Cal. Oct. 27, 2025) .......................................................................................................9

*Yamagata v. Reckitt Benckiser, LLC*
    (N.D. Cal. 2021) ................................................................................................................... 10

*Yun-Fei Lou v. Am. Honda Motor Co.*,
    No. 16-cv-04384-JST, 2025 U.S. Dist. LEXIS 89346
    (N.D. Cal. May 9, 2025)..........................................................................................................8

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ................................................................ 13

**Secondary Sources**

*Manual for Complex Litigation (Fourth)* § 21.62 (2004).................................................................5

4 William B. Rubenstein, et al., *Newberg on Class Actions* § 13:42 (5th ed.) ...............................5

**Rules**

Fed. R. Civ. P.
    23 .............................................................................................................................*passim*
    23(c)(2)(B) ....................................................................................................................... 12, 13
    23(e) ................................................................................................................................2, 4, 8
    23(e)(1)(C) ............................................................................................................................. 5
    23(e)(2).................................................................................................................................. 4, 5
    23(e)(2)(A) .............................................................................................................................. 7
    23(e)(2)(B) ............................................................................................................................ 10
    23(e)(2)(C)(i)........................................................................................................................... 7
    23(e)(2)(C)–(D)........................................................................................................................ 9

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

00233556

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on **May 7, 2026**, at **1:30 p.m.**, in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and hereby does move for an order granting final approval of class action settlement.

This motion is based on this notice, the memorandum of points and authorities, the Declarations of Timothy G. Blood, Jennifer Keough and Eryn Marchiolo, the complete file and record in this action and the related actions,[1] and such other evidence and argument as may be presented at or before the hearing on this motion.

This Motion and its supporting documents are concurrently posted on the settlement website (www.JointJuiceSettlement.com). The pleadings and other records in this litigation may be examined online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, between 9:00 a.m. and 1:00 p.m., Monday through Friday, excluding Court holidays.

Pursuant to the Court's Preliminary Approval Order (Dkt. No. 409), which is also available to view at www.JointJuiceSettlement.com, Class Members may object to this Motion by mailing or submitting a letter to the Clerk of Court, 450 Golden Gate Avenue, San Francisco, CA 94201-3489 on or before the objection deadline, **April 6, 2026**.

To be considered by the Court, the written objection must include the following information:

(a) a heading which refers to the Action (*Montera v. Premier Nutrition Corp.*, Case No. 3:16-cv-06980-RS (N.D. Cal.)); (b) the objector's full name, address, telephone number and email address (if any), and, if represented by counsel, the name, address, email address, and telephone number of his/her counsel; (c) a statement under oath that the objector is a Class Member; (d) a statement whether the objector intends to

---

[1]    *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS (N.D. Cal); *Caiazzo v. Premier Nutrition Corp.*, No. 3:16-cv-06685-RS (N.D. Cal.); *Ravinsky v. Premier Nutrition Corp.*, No. 3:16-cv-06704-RS (N.D. Cal.); *Sandoval v. Premier Nutrition Corp.*, No. 3:16-cv-06708-RS (N.D. Cal.); *Lux v. Premier Nutrition Corp.*, No. 3:16-cv-06703-RS (N.D. Cal.); *Dent v. Premier Nutrition Corp.*, No. 3:16-cv-06721-RS (N.D. Cal.); *Avery v. Premier Nutrition Corp.*, No. 3:16-cv-06980-RS (N.D. Cal.); *Spencer v. Premier Nutrition Corp.*, No. 3:16-cv-07090-RS (N.D. Cal); *Trudeau v. Premier Nutrition Corp.*, No. 3:17-cv-00054-RS (N.D. Cal.).

00233556

appear at the Final Approval Hearing (currently scheduled April 30, 2026, at 1:30 p.m.), either in person or through counsel; (e) a statement of the objection and the specific grounds supporting the objection; (f) a statement whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (g) copies of any papers, briefs, or other documents upon which the objection is based; (h) identification of the case name, case number, and court for any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a proposed class action settlement; and (i) the objector's handwritten, dated signature (the signature of objector's counsel, an electronic signature, and the annotation "/s" or similar annotation will not suffice).

*See* Dkt. No. 409, ¶ 6. Pursuant to the Court's Order, absent good cause shown and found by the Court, objections will not be considered that are not timely or otherwise compliant with the terms stated above, any such objection shall be deemed to have been waived. *Id.*, ¶¶ 6–7.

Respectfully submitted,

Dated: March 20, 2026                    BLOOD HURST & O'REARDON, LLP

By:          *s/ Timothy G. Blood*
             TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

00233556

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff submits this memorandum in support of the Motion for Final Approval of Class Action Settlement.[2] The Declaration of Timothy G. Blood ("Blood Final Approval Decl.") in support of this motion is concurrently filed.

## I.    INTRODUCTION

After more than a decade of litigation—including a jury trial, post-trial proceedings, and multiple appeals—Plaintiff and Defendant reached a settlement that is effectively a satisfaction of the judgment Plaintiff obtained and resolves the remaining appellate proceedings in this Action. Plaintiff now seeks final approval of the Settlement.[3]

This Action has already been litigated to judgment. Following a jury verdict in favor of the Class, this Court entered judgment awarding statutory damages, which was affirmed on appeal and reaffirmed on remand. The Settlement provides for payment of that judgment, together with post-judgment interest and the Court-awarded attorneys' fees and expenses. In that respect, the Settlement does not compromise the Class's recovery; it ensures that the recovery already obtained is paid promptly and without further litigation.

At the time of settlement, significant appellate proceedings remained pending, including Premier's petition for certiorari in the United States Supreme Court and cross-appeals concerning this Court's post-remand order. Absent settlement, those proceedings would have result in additional delay and further litigation. The Settlement resolves those proceedings and provides for prompt and certain payment to the Class.

The Settlement also includes a distribution plan designed to maximize the amount of money delivered to Class Members. Using retail purchase data obtained through third-party subpoenas, a substantial number of Class Members will be sent cash payments without submitting a claim. Other

---

[2]    All capitalized terms have the same meaning as defined in the Stipulation of Settlement (Dkt. No. 402-2) ("Settlement Agreement" or "SA"), unless otherwise stated.

[3]    The companion *Bland* and *Sonner* "Multistate Settlement" presented for approval to Judge Michael Markman covers the nine classes from eight states that were previously certified in this Court and state court. On January 8, 2026, Judge Markman granted preliminary approval of the Multistate Settlement. The final approval hearing is set for May 5, 2026, at 10:00 a.m.

Blood Hurst & O' Reardon, LLP

00233556

BLOOD HURST & O' REARDON, LLP

Class Members may submit simple claim forms without proof of purchase for a baseline number of units. As a result, the Settlement ensures that the judgment amount is distributed efficiently and with minimal burden.

On December 5, 2025, after briefing and a hearing, the Court granted preliminary approval of the Settlement, finding that it would likely be able to approve the Settlement as fair, reasonable, and adequate. Dkt. No. 409. The Court also approved the form and method of notice.

The Class Notice Program has now been implemented in accordance with the Court's order. *See* Declaration of Jennifer M. Keough Regarding Class Notice Program and Settlement Administration ("Keough Declaration"), ¶¶ 5, 35. Approximately 12,500 Class Members received Direct Notice telling them about the settlement and that they will be automatically sent their settlement Cash Payments. *Id.*, ¶¶ 8–10. Class Notice was also disseminated through targeted internet advertising and other publication methods designed to reach additional purchasers. *Id.*, ¶¶ 10–24. The claims deadline remains fifty-nine days away, and approximately 11,500 claims have already been submitted. *Id.*, ¶ 32. Based on the amount of automatic payments to Identified Class Members and the current rate of Claims, the individual Cash Payment awards are expected to be approximately $50 per unit as stated in the Class Notice. *Id.*, ¶¶ 6, 32. The reaction of the Class further supports approval. As of March 20, 2026, no objections and only seven requests for exclusion have been received. *Id.*, ¶¶ 29, 31; Keough Decl., ¶¶ 29, 31; Declaration of Timothy G. Blood in Support of Final Approval Motion ("Blood Final Approval Decl."), ¶ 4.

Finally, the Settlement is part of a broader $90 million non-reversionary resolution of the Joint Juice actions. While the Court need not rely on comparisons to other settlements given that this Settlement provides for payment of the judgment, that context further confirms the substantial relief obtained.

In light of the procedural posture of this case and the relief provided, the Settlement satisfies Rule 23(e) and should be finally approved.

## II.   PROCEDURAL HISTORY

The Motion for Preliminary Approval and the Declaration of Timothy G. Blood in Support of Preliminary Approval describe in detail the lengthy procedural history of this Action, including

00233556

the jury trial, post-trial proceedings, appellate rulings, and the extensive settlement negotiations that culminated in the Settlement Agreement. *See* Dkt. Nos. 402, 402-1. Rather than repeat those details here, they are incorporated by this reference and summarized below.

The Joint Juice litigation has lasted thirteen years and has been extensively litigated at every stage. The case proceeded through fact and expert discovery, class certification, summary judgment, a jury trial, post-trial motions, and multiple appeals. The parties engaged in extensive discovery, including dozens of depositions, numerous third-party subpoenas, and the production of hundreds of thousands of pages of documents, as well as expert discovery involving multiple testifying experts.

Following trial, the jury returned a verdict in favor of the Class, and this Court entered judgment awarding statutory damages. That judgment was affirmed on appeal. On remand this Court reaffirmed the Class's entitlement to the statutory damages award. The parties thereafter engaged in further appellate proceedings, including cross-appeals and a petition for certiorari. The Settlement was reached against this backdrop, after years of hard-fought litigation and only after the Class had prevailed at trial and on appeal.

## III.    THE SETTLEMENT AGREEMENT

The Settlement Agreement provides for a non-reversionary fund consisting of the Class's judgment, together with post-judgment interest, attorneys' fees and expenses previously awarded by the Court, and the Class Representative service award. *See* SA, § I.56. The total Settlement Amount of $19,160,186.47 reflects the full satisfaction of those amounts and resolves all remaining appellate proceedings in this action. *See* SA at p.6.

Class Members will receive $50 Cash Payment awards for every Joint Juice Unit purchased during the Class Periods. Payments will be sent to the more than 12,500 Class Members identified in retailer records without the need to submit a claim. These "Identified Class Members" will automatically receive more than $50 for each purchase reflected in the retail sales records. SA, § II.B.1.a(i). All Class Members, including the Identified Class Members, may claim reimbursement for up to six purchases without proof of purchase, for a total of up to $300. Because the average Class Member purchased about 3.5 units, this structure allows recovery—without receipts—for

BLOOD HURST & O' REARDON, LLP

00233556

roughly each unit they likely purchased. However, those with proof of purchase may claim refunds for as many units as they have proofs of purchase.

No portion of the Settlement will revert to Defendant. Any funds remaining after calculated valid claims will be distributed to Identified Class Members and Claimants by increasing awards as needed to ensure full distribution of the Net Fund. Any *cy pres* amount will be limited to uncashed checks and paid to the Rheumatology Research Foundation. SA, § II.D.2.f.; *see also* Declaration of Eryn Marchiolo in Support of Cy Pres Designation of the Rheumatology Research Foundation, ¶ 2 (the Foundation is the nation's largest private funding source of rheumatology research and training). Even then, before any *cy pres* distribution, reminder emails will be sent urging Class Members to cash their checks. SA, § II.B.2.f.

## IV.   THE PRELIMINARY APPROVAL ORDER

After briefing, a hearing, and due consideration, on December 5, 2025, the Court entered the Preliminary Approval Order. Dkt. No. 409. The Court analyzed the requirements of Fed. R. Civ. P. Rule 23, found that it would likely be able to approve the Settlement under Rule 23(e)(2) and preliminarily approved the Settlement as fair, reasonable, and adequate. *Id*. at 2. The Court further found that the Settlement "substantially fulfills the purposes and objectives of the class action" and provides substantial relief to the Class in light of the risks, burdens, costs, and delay associated with continued litigation and appeal. *Id.*

The Court also found that the Settlement is the result of arm's-length negotiations between experienced counsel, provides adequate relief to the Class, and treats Class Members equitably relative to each other, while satisfying all applicable requirements of Rule 23 and due process. *Id.* at 2–3.

In addition, the Court approved the form and method of the Class Notice and the Class Notice Program, finding that they constitute the best notice practicable under the circumstances and fully satisfy the requirements of due process and Rule 23. *Id.* at 7.

## V.   THE STANDARDS FOR FINAL APPROVAL

Pursuant to Rule 23(e), after directing notice to settlement class members in a reasonable manner and prior to granting final approval of a proposed settlement, the Court must conduct a

fairness hearing and determine whether the settlement's terms, as a whole, are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (the court's role is to determine whether the settlement is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned"); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion."); *see generally Manual for Complex Litigation (Fourth)* § 21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 13:42 (5th ed.). In making its determination, "[i]t is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222, at \*11–12 (N.D. Cal. Sept. 12, 2011) (citing *Officers for Justice*, 688 F.2d at 625).

Judicial policy strongly favors the settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.

As part of the preliminary approval process, the Court has already considered the factors set forth in Rule 23(e)(2) for making the "fair, adequate and reasonable" determination: (a) the class representatives and class counsel have adequately represented the Class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the Class is adequate, taking into account: (i) the costs, risks, and delay of continued litigation and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member Claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (d) the proposal treats class members equitably relative to each other.

The Court also considered additional factors that Courts in the Ninth Circuit use as guideposts when evaluating the fairness of a class action settlement: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount achieved or recovered in resolution of the action; (5) the extent of discovery completed, and the stage of the proceedings;

BLOOD HURST & O' REARDON, LLP

00233556

BLOOD HURST & O' REARDON, LLP

(6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *See Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Each of these factors supports approval of the Settlement.

## VI.    THE SETTLEMENT MERITS FINAL APPROVAL

The Motion for Preliminary Approval, the Declaration of Timothy G. Blood in Support of Motion for Preliminary Approval, Plaintiff's Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Award for the Class Representative, and accompanying declarations and documents describe in detail why the above-described factors used to evaluate the fairness of a class action settlement weigh in favor of approval and are incorporated by this reference. *See* Dkt. Nos. 402, 402-1, 402-2.

Rather than repeat what was previously briefed in detail, each fairness factor is briefly addressed below. *See Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2021 U.S. Dist. LEXIS 107399, at *14 (N.D. Cal. June 8, 2021) (granting final approval and noting "no facts have changed that would affect the Court's previous findings in its preliminary approval order"). Because Class Notice had not been disseminated, the only approval factor not entirely addressed in previous filings is the reaction of the Class Members to the proposed Settlement. That factor is now discussed in § VI.F below.

### A.    The Previously Certified Class Remains Appropriate, and Class Counsel and the Class Representative Have Adequately Represented the Class

The Class in this Action was previously certified for litigation purposes, Class Counsel and the Class Representative were previously appointed and litigated the Action through trial, judgment, and appeal. *See* Blood Preliminary Approval Decl., ¶¶ 8–30; *see also* Dkt Nos. 296-1 and 328-1 (prior declarations also reciting the history of the litigation). The Ninth Circuit affirmed this Court's class certification rulings. *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1025 (9th Cir. 2024). The same Class, Class Counsel, and Class Representative remain for purposes of the Settlement.

Nothing about the Settlement alters the definition of the Class or the basis on which it was certified. Nor have any facts or circumstances changed that would call into question the Court's prior certification rulings or the adequacy of Class Counsel and the Class Representative. Accordingly, the requirements of Rule 23 continue to be satisfied, including Rule 23(e)(2)(A).

**B.      The Settlement Avoids Further Appellate Proceedings, Expense, and Delay**

The Settlement is also fair in light of the expense and delay of continued appellate litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

Absent settlement, Premier would have continued pursuing its pending appeals, including its petition for certiorari in the Supreme Court. While Plaintiff believes the petition would likely have been denied, there remained a possibility of further proceedings. If certiorari had been granted, the parties could have faced additional briefing and argument, including potential proceedings in the Ninth Circuit and certification-related proceedings before the New York Court of Appeals, followed by further appellate litigation depending on the outcome of those proceedings.

In addition, Premier appealed this Court's post-remand order addressing statutory damages, and Plaintiff filed a cross-appeal. Those appeals presented additional issues for resolution by the Ninth Circuit and the potential for further remand proceedings. Continuing to litigate these matters would have required substantial additional time and expense and would have delayed recovery for the Class.

Even after further years of litigation, Class Members may not have recovered more than what the Settlement provides now—payment based on $50 per unit, which amount exceeds 550% of the average retail price paid ($8.95). *See* Blood Preliminary Approval Decl., ¶¶ 38, 62. The Settlement secures that recovery without further delay or risk.

Under these circumstances, the Settlement reasonably resolves the remaining appellate proceedings and supports final approval.

**C.      The Settlement Provides for Payment of the Full Judgment Amount Plus Interest to the Class**

The relief provided here strongly supports approval. *See In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587–88 (N.D. Cal. 2015); *Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2025

Blood Hurst & O' Reardon, LLP

00233556

U.S. Dist. LEXIS 169496, at \*19–20 (N.D. Cal. Aug. 29, 2025) (non-reversionary fund of 13.9% to 18.9% of claimed damages was substantial and supported final approval); *Plumbers v. Caredx, Inc.*, No. 22-cv-03023-TLT, 2025 U.S. Dist. LEXIS 258237, at \*25–26 (N.D. Cal. Dec. 4, 2025) (approving settlement of 5% of possible recovery and noting that courts "routinely approve of similar settlement amounts"); *Yun-Fei Lou v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2025 U.S. Dist. LEXIS 89346, at \*16–17 (N.D. Cal. May 9, 2025) ("Although not articulated as a separate factor in Rule 23(e), '[t]he relief that the settlement is expected to provide to class members is a central concern.'") (quoting Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). The Settlement provides for payment of the full judgment previously determined by the Court, together with post-judgment interest. Class Members are entitled to $50 for each Joint Juice unit sold during the Class Period, resulting in a total Class Judgment Amount of $9,139,664.55. *See* Blood Preliminary Approval Decl., ¶¶ 3, 23, 37–38, 58, 62. That amount substantially exceeds the total retail value of Joint Juice units sold during the Class Period, which was $1,488,078.49. *Id.*, ¶ 22; *see also* Dkt. Nos. 268 (Jury Verdict), 391 (Order Awarding Statutory Damages of $8.3 Million on Remand) at 9.

The Settlement also includes a distribution plan designed to deliver that recovery to Class Members equitably, efficiently, and with minimal burden. *See In re Juul Labs, Inc.*, No. 19-md-02913-WHO, 2024 U.S. Dist. LEXIS 45697, at \*380–81 (N.D. Cal. Mar. 14, 2024).

First, payments will be sent directly to Class Members whose identity and purchase histories have been identified. *See* SA, § II.B.1.a(i). Class Counsel obtained purchase data from major retailers through subpoenas, and the more than 12,500 Class Members identified through those sales records will receive automatic cash payments based on the number of units reflected in those records. *See* Keough Decl., ¶ 6. No claim form or other action is required. *See* SA, § II.B.1.a(i).

Second, Class Members who are not identified through retailer records—or who believe they purchased additional units—may submit a simple claim form requiring only the number of units purchased and a selection of payment method. *See* SA, § II.B.1.b and Ex. I. Proof of purchase is not required to receive $50 per unit for up to six units, which exceeds the average number of units purchased per Class Member based on trial evidence. *See* Blood Preliminary Approval Decl., ¶ 39.

Class Members who provide proof of purchase will receive the same $50 per unit payment for all documented purchases. *See* SA, §§ II.B.1.a(ii), II.B.1.b. Cash Payment awards will be adjusted pro rata, as necessary, to ensure full distribution of the Net Fund and any amount remaining from uncashed award checks will be distributed *cy pres*. *Id.*, § II.B.2.f.[4]

In all cases, the same per-unit payment formula applies uniformly to all Class Members. *See* SA, § II.B.1.c. These features ensure that the judgment amount is distributed in a pro rata manner that is both efficient and equitable, and support approval under Rules 23(e)(2)(C)–(D). *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-RS, 2025 U.S. Dist. LEXIS 214508, at *17 (N.D. Cal. Oct. 27, 2025) (pro rata distribution is equitable); *In re Telescopes Antitrust Litig.*, No. 5:20-cv-03639-EJD, 2025 U.S. Dist. LEXIS 70066, at *23 (N.D. Cal. Apr. 11, 2025) (pro rata allocation tied to the volume of class member's purchases is equitable); *Cabrera*, 2025 U.S. Dist. LEXIS 169496, at *21–22 (same). Moreover, payment of the previously awarded service award to the Class Representative is reasonable and does not constitute inequitable treatment of class members. *See Perks v. ActiveHours, Inc.*, No. 5:19-cv-05543-BLF, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021) (citing *Rodriguez*, 563 F.3d at 958–59); Dkt. No. 320 at 8 (the Court's Oct. 18, 2022, order granting the Plaintiff's requested $25,000 service award); Dkt. No. 296-4 (Declaration of Mary Beth Montera); *see also* Dkt. No. 410 at 5–6 (Plaintiff's Feb. 25, 2026, motion requesting the previously awarded service award); *In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959, 993 (N.D. Cal. 2025) (approving service awards of $5,000 to $125,000 as reasonable and of a magnitude similar to awards other courts have found appropriate).

Although the Settlement provides for payment of the judgment and thus does not depend on comparisons to other cases, the relief obtained here compares favorably to other dietary supplement

---

[4] The Parties propose that any remaining funds be distributed to the Rheumatology Research Foundation. *See Nachsin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) (*cy pres* recipient should be related to the nature of the lawsuit and the class members). As discussed at preliminary approval, the Rheumatology Research Foundation is a 501(c)(3) non-profit established by the American College of Rheumatology in 1985 and is the nation's largest private funder of rheumatology research and training. Its mission is to advance research and education concerning the causes, prevention, and treatment of rheumatic diseases, including osteoarthritis. *See* Marchiolo Declaration, ¶¶ 2, 4–5, 7. Given the nature of the claims in this Action, there is a direct and meaningful nexus between the Foundation's work and the interests of the Class.

false advertising settlements. As explained in the preliminary approval briefing, this Settlement is part of a broader $90 million non-reversionary resolution of the Joint Juice actions, which exceeds the total retail value of the product sold during the relevant class periods. *See* Blood Preliminary Approval Decl., ¶ 3 ("$90 million is 142% of the total retail sales of Joint Juice at issue.").

For example, in *Yamagata v. Reckitt Benckiser, LLC* (N.D. Cal. 2021), a $50 million settlement involved more than $358 million in product sales, representing approximately 14% of total sales. By contrast, the combined $90 million recovery here represents 140% of total retail sales at issue. Other dietary supplement settlements have resulted in smaller recoveries, lower per-unit payments, and more restrictive claims requirements. *See* Blood Preliminary Approval Decl., ¶¶ 60–61.

The release provided in exchange for this relief limited only to claims, with the exception of those for personal injury, arising out of the conduct at issue and based "only on" the "same factual predicate of those claims in this Action, specifically that Joint Juice was misleadingly marketed, promoted or sold." *See* SA, § I.48; The scope of the release is thus appropriately limited. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018).

The relief obtained here is exceptional and supports final approval.

**D.    The Extent of Discovery, Stage of Proceedings, and Arm's Length Negotiations**

The extent of discovery completed, the stage of the litigation, and the parties' considerable mediation efforts also support this Settlement. *See Plumbers*, 2025 U.S. Dist. LEXIS 258237, at *19–20 ("the Court must consider whether counsel had sufficient information to make an informed decision about the merits of the case"); Fed. R. Civ. P. 23(e)(2)(B) (whether "the proposal was negotiated at arm's length"). As explained above and in previous briefing, the Settlement was reached after more than a decade of litigation, including extensive discovery, summary judgment, class certification, expert analysis, a jury trial, pre- and post-trial motions (including motions to decertify, for judgment on the pleadings, and a new trial) and multiple appeals. *See* Blood Preliminary Approval Decl., ¶¶ 5, 9–31, 72–73.

The Settlement was reached only after these proceedings and after the parties engaged in settlement discussions with the assistance of multiple, experienced mediators. *See* Blood

BLOOD HURST & O' REARDON, LLP

00233556

Preliminary Approval Decl., ¶¶ 64–71; *Taylor v. Google* LLC, No. 20-cv-07956-VKD, 2026 U.S. Dist. LEXIS 46054, at *40 (N.D. Cal. Mar. 5, 2026) (mediation before experienced neutrals over an extended period of time supported approval). Given the extent of the litigation and the procedural posture of the case, the parties had a well-developed understanding of the issues at the time of settlement. This factor strongly supports final approval.

### E.   The Experience and Views of Counsel

Class Counsel have decades of experience prosecuting complex consumer protection class actions, including cases involving false advertising and dietary supplements, and believe this Settlement represents an excellent result for the Class. *See* Blood Preliminary Approval Decl., ¶¶ 32–34 and Ex. B thereto (Class Counsel's firm resume); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (noting the experience of plaintiffs' counsel and that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness") (citation omitted).

### F.   The Reaction of Class Members Favors Final Approval

A favorable reaction by class members to the proposed settlement supports final approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

The reaction here has been positive. Following a comprehensive notice program with class notice delivered directly to over 12,500 Class Members, no objections have been received, and only seven Class Members—approximately 0.06% of the Identified Class Members—have opted out. *See* Keough Decl., ¶ 29. Meanwhile, thousands of Class Members have submitted claims. *Id.*, ¶ 32.

This is a very positive reaction to the Settlement. *See, e.g.*, *In re Mego*, 213 F.3d at 459 (where just a "handful" objected, "[t]he reaction of the class members to the proposed settlement further supports the conclusion that … the Settlement was fair, adequate and reasonable"); *Churchill Village, LLC v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class action settlement where forty-five objections were received out of 90,000 notices); *In re Omnivision*, 559

BLOOD HURST & O' REARDON, LLP

00233556   PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

F. Supp. 2d at 1043 ("objections from only 3 out of 57,630 potential Class Members who received the notice" shows the class favors the settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *40 (N.D. Cal. Apr. 22, 2010) ("only 101 out of the over 24,000 who received notice have elected to opt out of the Settlement Class ... which is a further indication of the fairness of the Settlement."); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171 FMO (FFMx), 2017 U.S. Dist. LEXIS 77576, at *25 (C.D. Cal. May 21, 2017) (22 objections out of 2.6 million noticed class members found to be "extremely low"). By any standard, the lack of objection of the Class Members here favors approval of the Settlement. *Id.*

### G.   Class Notice Satisfied the Requirements of Due Process

The notice provided to the Class satisfies Rule 23 and due process. Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While actual notice is not required, the notice must be reasonably calculated to apprise the Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) ("Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice."); *Juul Labs*, 2024 U.S. Dist. LEXIS 45697, at *367–68 (approving as the best notice practicable a class notice plan involving direct notice for whom addresses were available, online publication notice, and settlement website).

As the Court found in its Preliminary Approval Order, the Parties' proposed Class Notice Program complies with Rule 23 and affords due process to the Class. Dkt. No. 409, ¶ 22. Now that the Settlement Administrator has completed the Class Notice Program, the Court should find that the Class received appropriate notice.

The notice was written in plain language and clearly informed Class Members of the nature of the action, the terms of the Settlement, and their rights, including the right to object or request exclusion. The Court previously approved the form and manner of notice, which was based on the Federal Judicial Center's illustrative notices and the Impact Fund's Notice Project templates. *See*

BLOOD HURST & O' REARDON, LLP

00233556

https://www.impactfund.org/notice-project (last visited Mar. 18, 2026); *Sparkman v. Comerica Bank*, No. 2:24-cv-01206-DJC-CKD, 2025 U.S. Dist. LEXIS 80649, at *4–5, n.2 (E.D. Cal. Apr. 23, 2025) (class notices utilizing model forms developed by the Impact Fund's Notice Project were adequate and contained the information required by Rule 23(c)(2)(B)); http://www.fjc.gov/ (last visited Mar. 18, 2026); *see also* Fed. R. Civ. P. 23 Advisory Committee Notes (2003) ("The Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms."); *Johns v. Bayer Corp.*, No. 09cv1935, 2013 U.S. Dist. LEXIS 14933, at *6 (S.D. Cal. Feb. 1, 2013) ("the form and information contained within the notice is based on and consistent with the Federal Judicial Center's notices and satisfy the requirements of Rule 23 and due process").

The multi-faceted Class Notice Program included both direct and publication notice, satisfying all due process requirements. From third-party discovery obtained by Plaintiffs, approximately 12,500 Class Members received direct notice by email or mail. Keough Decl., ¶¶ 8–10. Class Notice was also widely disseminated through a multi-pronged online advertising campaign that alone reached more than 70% of likely Class Members and involved targeted search engine, social media advertising, and press releases delivering millions of digital impressions to potential Class Members. *Id.*, ¶¶ 11–27, 34. The campaign used demographic, geographic, and behavioral targeting to reach potential Class Members in New York and included a broader AI-driven nationwide component to reach individuals who may have relocated. *Id.*, ¶ 16. Publication notice also included English- and Spanish-language press releases and an internet search campaign. *Id.*, ¶¶ 18–22. In addition, the Settlement Website provides access to the Long Form Notice in English and Spanish, and a toll-free number with an automated response system is available to answer questions. *Id.*, ¶¶ 22–25. As of the date of the Keough Declaration, the press release alone was picked up 553 times with a potential audience of 97.3 million. *Id.*, ¶ 21. On October 30, 2025, the Settlement Administrator also served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with no objection or other correspondence received as of March 18, 2026. *Id.*, ¶ 4.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPRKVAL

00233556

BLOOD HURST & O' REARDON, LLP

The content and dissemination of the Class Notice Program constitute the best notice practicable under the circumstances and fully comply with Rule 23 and due process requirements.

## VII.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Respectfully submitted,

Dated: March 20, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:          s/  Timothy G. Blood
           TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

IREDALE & YOO, APC
EUGENE G. IREDALE (75292)
105 W. F Street, Floor 4
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
egiredale@iredalelaw.com

LYNCH CARPENTER, LLP
TODD D. CARPENTER (234464)
9171 Towne Centre Drive, Suite 180
San Diego, CA  92122
Tel: 619/762-1910
724/656-1556 (fax)
todd@lcllp.com

*Additional Attorneys for Plaintiff*

14                    Case No. 3:16-cv-06980-RS
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

BLOOD HURST & O' REARDON, LLP

00233556

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

Executed on March 20, 2026.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O' REARDON, LLP

00233556

15                                      Case No. 3:16-cv-06980-RS
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL